## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket<br><br>No. 3:12-CV-01893-MAS-TJB<br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF <u>DEFENDANTS' JOINT MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................. 1

BACKGROUND .............................................................................. 4

    A.    THE NEW JERSEY TAX SALE LAW ............................................. 4

    B.    PLAINTIFFS' ALLEGATIONS ..................................................... 6

ARGUMENT .................................................................................. 9

I.    PLAINTIFFS' ANTITRUST CLAIMS SHOULD BE DISMISSED. .......... 9

    A.    Plaintiffs' Sherman Act and New Jersey Antitrust Claims Fail to State a Claim. ..................................................................... 9

        1.    Plaintiffs Must Plead Specific Facts Supporting Their Antitrust Conspiracy Claims. .................................................. 10

        2.    The Complaint Does Not Plausibly Allege a Conspiracy Affecting Any of the Six Auctions Involving Plaintiffs' Liens. ..................................................................................... 14

        3.    The Complaint Does Not Plausibly Allege a Single Agreement Among All of the Individual Defendants. ............. 15

        4.    Plaintiffs Fail Sufficiently to Allege That Each Defendant Participated in the Purported Conspiracy or How It Did So. ........................................................................................ 20

        5.    Plaintiffs' References to Guilty Pleas and Other Extraneous Allegations Do Not Rescue Their Pleading Defects. ............................................................................... 22

    B.    Plaintiffs' Sherman Act and New Jersey Antitrust Act Claims Are Barred By the Filed Rate Doctrine. ........................................ 24

    C.    Plaintiffs' Sherman Act and New Jersey Antitrust Act Claims Should Be Dismissed for Failure to Allege Antitrust Standing. ........ 28

D.      Plaintiffs' Claim For a Declaratory Judgment Should Be Dismissed As Duplicative of their Sherman Act Claim. ................... 33

II.     PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED. ........ 33

A.      The Fourth Claim For Relief Should Be Dismissed Because § 54:5-52 Does Not Create a Cause of Action. ..................................... 33

B.      The Second, Third And Fifth Claims For Relief Must Be Dismissed Pursuant To N.J.S.A. § 54:5-52. ....................................... 35

1.      The Tax Sale Law Creates an Irrebuttable Presumption of Validity in the Absence of Fraud. ............................................ 36

2.      Plaintiffs Have Not Adequately Pled That Their TSCs Were Procured by Fraud. .......................................................... 37

C.      The Third Claim For Relief Should Be Dismissed Because Plaintiffs Have Failed to Allege a Violation of § 54:5-63.1. ............. 41

D.      The Fifth Claim For Relief For Unjust Enrichment Should Be Dismissed For Failure To State a Claim. ............................................ 44

III.    MANY OF PLAINTIFFS' CLAIMS ARE TIME BARRED. .................... 45

A.      The Applicable Limitations Periods. ................................................... 46

B.      Plaintiffs Have Not Pleaded Facts Sufficient To Toll the Statutes of Limitations Under the Doctrine of Fraudulent Concealment. ....................................................................................... 47

CONCLUSION .................................................................................................... 50

KL3 2918231.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999), *abrogated on other grounds*,
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..................................................................13

*Alban v. BMW of N. Am., LLC*,
Civ. No. 09-5398 (DRD), 2010 WL 3636253
(D.N.J. Sept. 8, 2010) ...........................................................46

*Amari v. Radio Spirits, Inc.*,
219 F. Supp. 2d 942 (N.D. Ill. 2002)....................................33

*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
596 F. Supp. 2d 842 (D.N.J. 2008)....................................12

*Arista Records LLC v. Lime Group LLC*,
532 F. Supp. 2d 556 (S.D.N.Y. 2007) ................................21

*AT&T Corp. v. JMC Telecom, LLC*,
470 F.3d 525 (3d Cir. 2006) ..............................................25

*ATD-Am. Co. v. Krueger Int'l, Inc.*,
No. 12-00032, 2012 WL 1382472 (E.D. Pa. Apr. 20, 2012) ............................33

*Baer v. Chase*,
392 F.3d 609 (3d Cir. 2004) ..............................................46

*Barry L. Kahn Defined Benefit Pension Plan v. Twp. of Moorestown*,
243 N.J. Super. 328 (Ch. Div. 1990) .............................34, 36

*Barton & Pittinos*, *Inc. v. SmithKline Beecham Corp.*,
118 F.3d178(3d Cir. 1997) ...........................................30, 31

*In re Bath & Kitchen Fixtures Antitrust Litig.*,
No. 05-cv-00510 MAM, 2006 WL 2038605 (E.D. Pa. July 19, 2006)..............17

iii

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................10, 11, 23

*Bosland v. Warnock Dodge, Inc.*,
   197 N.J. 543 (2009) .....................................................................43

*Brunswick Corp. v. Pueblo Bowl-O-Mat Inc.*,
   429 U.S. 477 (1977).....................................................................29

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ......................................................27 n.5

*Byrnes v. DeBolt Transfer, Inc.*,
   741 F.2d 620 (3d Cir. 1984) ........................................................47

*Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd.*,
   366 N.J. Super. 323 (App. Div. 2004) .........................................4

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   261 F. Supp. 2d 188 (E.D.N.Y. 2003) .........................................16

*Cmty. Dev. Co. v. Seaside Gardens, Inc.*,
   7 N.J. 153 (1951) .........................................................................34, 36, 38

*Daniel Boone Area Sch. Dist. v. Lehman Bros.*,
   187 F. Supp. 2d 400 (W.D. Pa. 2002)..........................................35 n.7

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) ........................................................28

*Dewey v. Volkswagen AG*,
   558 F. Supp. 2d 505 (D.N.J. 2008)..............................................37, 40 n.10

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011) .........................................45

*Disenos Artisticos E Industriales, S.A. v. Work*,
   676 F. Supp. 1254 (E.D.N.Y. 1987) ............................................35

*Donachy v. Intrawest U.S. Holdings, Inc.*,
   No. 10-4038, 2012 WL 869007 (D.N.J. Mar. 14, 2012) ..............13

iv

*In re Elec. Carbon Prods. Antitrust Litig.*,
   333 F. Supp. 2d 303 (D.N.J. 2004) ...................................................................20

*In re Ernie Haire Ford, Inc.*,
   459 B.R. 824 (Bankr. M.D. Fla. 2011) ............................................................12

*Ethypharm S.A. France v. Abbott Laboratories*,
   ___ F.3d ___, 2013 WL 238794 (3d Cir. Jan. 23, 2013) .......................30, 31, 32

*In re Fertilizer Antitrust Litig.*,
   No. MF-75-1, 1979 WL 1690 (E.D. Wash. Sept. 14, 1979) ............................49

*In re Flonase Antitrust Litig.*,
   692 F. Supp. 2d 524 (E.D. Pa. 2010) ................................................................45

*In re Fla. Cement & Concrete Antitrust Litig.*,
   746 F. Supp. 2d 1291 (S.D. Fla. 2010) .............................................................19

*Fla. Seed Co. v. Monsanto Co.*,
   105 F.3d 1372 (11th Cir. 1997) ........................................................................32

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...................................................................38-39, 48

*Franklin Collection Serv., Inc. v. Kyle*,
   955 So. 2d 284 (Miss. 2007) ........................................................................35 n.7

*Garden State Inv. v. Zaleski*,
   No. F-24480-09, 2010 WL 4904987
   (N.J. Super. Ct. App. Div. Dec. 3, 2010) .........................................................34

*Glushakow v. Boyarsky*,
   No. 11-2917 (JLL), 2011 WL 6020550 (D.N.J. Dec. 1, 2011) .......................39

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................23

*Gutman v. Howard Sav. Bank*,
   748 F. Supp. 254 (D.N.J. 1990) ...................................................................40 n.10

*Hawaii v. Standard Oil Co.*,
   405 U.S. 251 (1972) ..........................................................................................28

KL3 2918231.1

*Hinchliffe v. Loughlin*,
  126 N.J.L. 132 (1941) .................................................................34, 36

*Hinds Cnty. v. Wachovia Bank N.A.*,
  620 F. Supp. 2d 499 (S.D.N.Y. 2009) .............................................23

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010) ............................................................18

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ........................................10, 14, 19, 23

*In re Ins. Brokerage Antitrust Litig.*,
  MDL No. 1663, 2006 WL 2850607 (D.N.J. Oct. 3, 2006),
  *aff'd in part*, 618 F.3d 300 (3d Cir. 2010) ............................18, 19, 20

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  768 F. Supp. 2d 961 (N.D. Iowa 2011) ...........................................18

*Jackson v. HSBC Bank USA*,
  393 N.J. Super. 1 (App. Div. 2007) ........................................44 n.14

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .........................................................11

*Kokins v. Teleflex, Inc.*,
  621 F.3d 1290 (10th Cir. 2010) ................................................37 n.9

*Lewis v. Casey*,
  518 U. S. 343 (1996) .................................................................15, 28

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) ..............................................................39

*Love v. Mail on Sunday*,
  No. CV057798ABCPJWX, 2006 WL 4046180
  (C.D. Ca. Aug. 15, 2006) ...........................................................11-12

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
  998 F.2d 1144 (3d Cir. 1993) ..........................................................29

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004) .....................................................12, 48

vi

*Marcus v. AT&T Corp.*,
   138 F.3d 46 (2d Cir. 1998) ...............................................................................25

*McCray v. Fid. Nat'l Title Ins. Co.*,
   682 F.3d 229 (3d Cir. 2012), *cert. denied*, 2013 WL 598864 (Feb. 19,
   2013) ................................................................................................................25

*Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
   458 F. Supp. 2d 474 (E.D. Mich. 2006) ...........................................................21

*Montich v. Miele USA, Inc.*,
   849 F. Supp. 2d 439 (D.N.J. 2012) ...................................................................13

*Murdock v. E. Coast Mortg. Corp.*,
   Civ. No. 10-4717, 2012 WL 2344515 (D.N.J. June 20, 2012)..........................47

*In re N.J. Title Ins. Litig.*,
   683 F.3d 451 (3d Cir. 2012) .......................................................................24, 25

*New Jersey v. One (1) Ford Van*,
   154 N.J. Super. 326 (App. Div. 1977) .........................................................43 n.13

*Pennsylvania v. Lake Asphalt & Petroleum Co.*,
   610 F. Supp. 885 (M.D. Pa. 1985)....................................................................48

*Pennsylvania v. Milk Indus. Mgmt. Corp.*,
   812 F. Supp. 500 (E.D. Pa. 1992).....................................................................48

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
   998 F.2d 1192 (3d Cir. 1993) ....................................................................26 n.5

*Pietrangelo v. NUI Corp.*,
   No. Civ. 04-3223 (GEB), 2005 WL 1703200 (D.N.J. July 20, 2005) ..............12

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
   828 F.2d 211 (4th Cir. 1987) ............................................................................48

*In re Princeton Office Park, L.P.*,
   423 B.R. 795 (Bankr. D.N.J. 2010) ..........................................................44 n.14

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-MD-02002, 2012 WL 1137100 (E.D. Pa. Apr. 4, 2012).......................49

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-MD-2002, 2012 WL 6645533 (E.D. Pa. Dec. 20, 2012) ................ 49-50

*Raum v. City of Bellevue*,
   286 P.3d 695 (Wash. Ct. App. 2012) ................................................... 35

*Robbins v. Oklahoma*,
   519 F.3d 1242 (10th Cir. 2008) ......................................................... 11

*Robinson v. Johnson*,
   313 F.3d 128 (3d Cir. 2002) .............................................................. 47

*Rolo v. City Inv. Co. Liquidating Trust*,
   155 F.3d 644 (3d Cir. 1998) .............................................................. 13

*Rotella v. Wood*,
   528 U.S. 549 (2000) ......................................................................... 14

*S. Broward Hosp. Dist. v. MedQuist Inc.*,
   516 F. Supp. 2d 370 (D.N.J. 2007), *aff'd in part*,
   258 F. App'x 466 (3d Cir. 2007) ........................................................ 38

*S.D. Collectibles, Inc. v. Plough, Inc.*,
   952 F.2d 211 (8th Cir. 1991) ............................................................. 32

*Santos v. United States*,
   559 F.3d 189 (3d Cir. 2009) .............................................................. 48

*SAS Puerto Rico v. Puerto Rico Tel. Co.*,
   48 F.3d 39 (1st Cir. 1995) ................................................................. 32

*Shaw v. Hous. Auth. of Camden*,
   No. 11-4291, 2012 WL 3283402 (D.N.J. Aug. 10, 2012) ....................... 11

*SigmaPharm, Inc. v. Mut. Pharm. Co.*,
   454 F. App'x 64 (3d Cir. 2011) ......................................................... 30

*Simon v. Chi. Title Ins. Co.*,
   363 N.J. Super. 582 (App. Div. 2003) .................................................. 4

*St. Clair v. Citizens Fin. Grp.*,
   340 F. App'x 62 (3d Cir. 2009) ......................................................... 10

KL3 2918231.1

*State v. LaBella*,
    88 N.J. Super. 330 (Essex Cnty. Ct. 1965) ........................................................43

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ....................................................................30, 45

*Stolow v. Greg Manning Auctions, Inc.*,
    258 F. Supp. 2d 236 (S.D.N.Y. 2003) ..............................................................40

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. MDL 1827, 2010 WL 2629728 (N.D. Cal. June 29, 2010) ........................21

*In re Travel Agent Comm'n Antitrust Litig.*,
    MDL Docket No. 1561, 2007 WL 3171675
    (N.D. Ohio Oct. 29, 2007) .................................................................................23

*Tredennick v. Bone*,
    323 F. App'x 103 (3d Cir. 2008) ......................................................................20

*Tredennick v. Bone*,
    647 F. Supp. 2d 495 (W.D. Pa. 2007) , *aff'd*,
    323 F. App'x 103 (3d Cir. 2008) ......................................................................13

*United States v. Sargent Elec. Co.*,
    785 F.2d 1123 (3d Cir. 1986) ....................................................................19 n.4

*Uricoli v. Bd. of Trs.*,
    91 N.J. 62 (1982) ....................................................................................43 n.13

*US LEC Commc'ns LLC v. Qwest Commc'ns Co.*,
    No. 10-4106 (JBS/JS), 2011 WL 2474262 (D.N.J. June 20, 2011) ..................33

*Utilimax.com, Inc. v. PPL Energy Plus, LLC*,
    378 F.3d 303 (3d Cir. 2004) ......................................................................24, 25

*Varsolona v. Breen Capital Serv. Corp.*,
    180 N.J. 605 (2004) ................................................................................44 n.14

*W. Penn Allegheny Health Sys. Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) ................................................................................30

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) ........................................................................28

ix

*Winoff Indus. v. Stone Container Corp. (In re Linerboard Antitrust Litig.),*
　　305 F.3d 145 (3d Cir. 2002) ...............................................................47

**STATUTES**

15 U.S.C. § 15 (2006) ...............................................................28, 46

15 U.S.C. § 16(i) (2006) ...............................................................50 n.15

N.J.S.A. 2A:14-1 ...............................................................46

N.J.S.A. 54:5-1 ...............................................................4

N.J.S.A. 54:5-6 ...............................................................5

N.J.S.A. 54:5-19 ...............................................................5, 26

N.J.S.A. 54:5-25 ...............................................................5

N.J.S.A. 54:5-26 ...............................................................5

N.J.S.A. 54:5-27 ...............................................................5

N.J.S.A. 54:5-28 ...............................................................26

N.J.S.A. 54:5-31 ...............................................................26

N.J.S.A. 54:5-32 ...............................................................5, & n.2, 26

N.J.S.A. 54:5-34 ...............................................................5

N.J.S.A. 54:5-46 ...............................................................5

N.J.S.A. 54:5-47 ...............................................................5, 26

N.J.S.A. 54:5-51 ...............................................................6, 27

N.J.S.A. 54:5-52 ...............................................................*passim*

N.J.S.A. 54:5-54 ...............................................................6

N.J.S.A. 54:5-58 ...............................................................6, 41

N.J.S.A. 54:5-60 ...............................................................6, 42 n.12

N.J.S.A. 54:5-61 ..................................................................................42 n.12

N.J.S.A. 54:5-63.1 ................................................................................41 n.11

N.J.S.A. 54:5-86 ..........................................................................................6

N.J.S.A. 54:5-86 ..........................................................................................6

N.J.S.A. 54:5-104.64 ...................................................................................6

N.J.S.A. 56:9-14 .........................................................................................46

## RULES

Fed. R. Civ. P. 8(a).........................................................................11, 15, 38

Fed. R. Civ. P. 9(b) .............................................................................*passim*

Fed. R. Evid. 302 .....................................................................................37 n.9

## OTHER AUTHORITIES

R. Mark Isaac & James M. Walker, *Information and Conspiracy in Sealed
Bid Auctions*, 6 J. Econ. Behavior & Org. 139 (1985) .......................................16

## PRELIMINARY STATEMENT

New Jersey's 566 municipalities depend on property tax revenues to provide necessary services to their communities.  To ensure that this revenue stream is not disrupted by delinquent taxpayers, New Jersey has created a comprehensive statutory scheme that permits municipalities to sell delinquent tax liens in the form of Tax Sale Certificates ("TSCs") to private buyers.  TSC purchasers ensure that municipalities receive the tax revenue they are due and assume the risk of deferred payment or non-payment by delinquent taxpayers.  In exchange, New Jersey law provides the purchasers with the right to collect interest at a rate set at tax lien auctions conducted by each of New Jersey's municipalities and a right to pursue foreclosure if the delinquent taxpayer fails to pay.  Because of the value of this arrangement to municipalities, and to encourage timely payment, the default rate of interest to be received by the TSC purchasers is set by statute at 18% unless it is bid down at the tax lien auctions.

The five named Plaintiffs—a trust, a corporation, a couple and two individuals—failed to pay their property taxes.  As a result, five municipalities sold six TSCs associated with their properties at six public auctions between 2004 and 2008.  Four of the Plaintiffs still have not paid their overdue taxes.  All five Plaintiffs allege that the TSCs associated with their properties were sold at the 18% statutory default rate, identify the Defendant who allegedly purchased the lien, and

make a conclusory allegation that the 18% interest rate was "artificially inflated pursuant to the conspiracy alleged herein."  None of the five, however, sets forth any well-pleaded allegations of wrongdoing with respect to the particular auctions at which the tax liens on their properties were sold.  Nevertheless, they allege that there was collusion at the six auctions and purport to assert claims for violation of Section 1 of the Sherman Act and the New Jersey Antitrust Act, as well as several other statutory and common law causes of action.

Plaintiffs seek to represent a "class" of thousands of other New Jersey property owners who failed to pay taxes and as to whose properties TSCs were sold at thousands of auctions held by 566 municipalities between January 1, 1998 and February 28, 2009.  Plaintiffs point to the fact that eleven of the Defendants have pled guilty to colluding in connection with "certain" New Jersey tax lien auctions during parts of the putative class period.  None of those guilty pleas relates specifically to any of the particular auctions at which Plaintiffs' tax liens were purchased.

Plaintiffs pursue a high risk strategy in pleading their antitrust claims:  the only conspiracy they allege is a vast and implausible conspiracy encompassing forty-eight defendants and thousands of separate auctions that took place over an eleven-year period.  As discussed below, Plaintiffs' failure to allege any wrongdoing with respect to the particular auctions at which the tax liens on their

properties were sold and their overreaching and implausible attempt to plead a single overarching conspiracy affecting thousands of auctions over an eleven-year period each independently dooms their antitrust claims.

In addition, Plaintiffs' claims should be dismissed because: (a) they cannot overcome the "filed rate" bar and do not meet the standing requirement that circumscribes the ability of private plaintiffs to seek damages for alleged antitrust violations; (b) their state law statutory claims are improperly based on one provision of the Tax Sale Law that is merely an evidentiary presumption and another provision that prohibits fees and charges not at issue here; (c) they fail to set forth well-pleaded allegations of fraud to overcome the statutory presumption against challenging a tax lien more than two years after its issuance or to toll the statutes of limitations that would otherwise bar the untimely claims of multiple Plaintiffs; and (d) their unjust enrichment and declaratory judgment claims are, respectively, derivative and duplicative of otherwise flawed claims.

In short, the Complaint is not tenable and should be dismissed.[1]

---

[1]    Defendants leave for another day—if that day should ever come—the insurmountable problems Plaintiffs will face in attempting to proceed on behalf of a single class of delinquent taxpayers claiming to have been damaged at thousands of different auctions in 566 different locales spanning an eleven-year time period. Plaintiffs' proposed class purports to include tens of thousands of different and
(continued…)

3

KL3 2918231.1

## BACKGROUND

The Complaint alleges violations of the federal and state antitrust laws (First and Second Claims), the New Jersey Tax Sale Law (Third and Fourth Claims), and tag-along claims for unjust enrichment and declaratory judgment (Fifth and Sixth Claims).  Each of these six claims is set against the backdrop of a comprehensive statutory scheme governing the sale of municipal tax liens in New Jersey.

### A.     THE NEW JERSEY TAX SALE LAW

"Municipalities depend on the collection of property taxes and other assessments to fund the many services provided to residents." *Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd.*, 366 N.J. Super. 323, 335 (App. Div. 2004) (citation and quotation marks omitted).   To facilitate the collection of unpaid taxes, New Jersey has created a "comprehensive" statutory scheme, Compl. ¶ 136, to govern virtually every aspect of the "creation, enforcement and collection of liens."  N.J.S.A. 54:5-1, *et seq.*(2002) (hereinafter "Tax Sale Law"); *see also, e.g.*, *Simon v. Chi. Title Ins. Co.*, 363 N.J. Super. 582, 587 (App. Div. 2003) ("It is . . . in the public interest to encourage parties to purchase tax title liens to enable municipalities to receive their lost tax revenues.").

---

unique pieces of real property, TSCs purchased at interest rates ranging from the statutory default of 18% all the way down to 0%, and scores of defendants.

The Tax Sale Law provides that, when property taxes are assessed, they become a continuous tax lien on the property until they are paid.  N.J.S.A. 54:5-6.  If property taxes remain in arrears for a certain period of time, a municipal officer, also known as a tax collector, holds a public auction to sell a TSC related to the property.  N.J.S.A. 54:5-19.  Before the auction is conducted, the tax collector must provide (a) written notice to the owners of the property and (b) notice to the public in local newspapers and other public places.  N.J.S.A. 54:5-25–54:5-27.

Under the regulatory regime set forth in the Tax Sale Law, all TSCs are offered for sale at the statutory default interest rate of 18% per annum, unless that rate is reduced during the auction process.  The tax collector is directed to award the TSC to the lowest bidder.  N.J.S.A. 54:5-32.[2]  If there are no bids on a particular lien at an auction, the TSC is retained by the municipality at the statutory default rate of 18% interest.  N.J.S.A. 54:5-34.

A private party awarded a TSC at auction pays the purchase price to the tax collector in exchange for the TSC, which is issued in the form prescribed by statute.  *See* N.J.S.A. 54:5-46, 54:5-47, 54:5-52.  The purchaser must file the TSC reflecting the interest rate at which it was purchased with the municipality within

---

[2]     If a bidder offers to buy a TSC at an interest rate of 0%, another bidder may bid a rate of 0% plus a premium to be paid to the municipality over and above the purchase price.  N.J.S.A. 54:5-32.  The TSC must then be sold to the bidder that offers the highest premium.  *Id.*

90 days.  N.J.S.A. 54:5-51.  Upon filing the TSC with the local governmental authority, the TSC holder is entitled to pay any subsequent taxes on the property that are not timely paid by the property owner.  N.J.S.A. 54:5-60.  Any such payments "by statute carry an 18% interest rate."  Compl. ¶ 145.

A property owner may redeem a TSC by paying the redemption price to the tax collector prior to the expiration of the redemption period.  N.J.S.A. 54:5-54.  The redemption price is the sum of (i) the TSC purchase price plus the interest, (ii) any subsequent taxes paid by the holder of the TSC including interest, and (iii) certain penalties, expenses and fees where applicable.  N.J.S.A. 54:5-58, 54:5-60.

If a property owner fails to redeem a TSC within two years from the date of the purchase, the TSC holder may institute an action to foreclose the right of the owner to redeem and to obtain ownership of the property in fee simple.  N.J.S.A. 54:5-86, 54:5-104.64.  The property owner, however, may redeem at any point until a final judgment is issued by a court.  N.J.S.A. 54:5-86.

### B.  PLAINTIFFS' ALLEGATIONS

The five named Plaintiffs are real property owners who failed to pay various municipal taxes related to their properties.  Compl. ¶¶ 17-27.  Their delinquencies resulted in tax liens against their respective properties that were sold at auctions pursuant to the comprehensive statutory scheme described above.  *Id*.  Four of the five named Plaintiffs still have not paid their overdue taxes.  *Id.*

Each Plaintiff alleges that its TSC was sold at 18% (which is not, in and of itself, evidence of collusion) and identifies the date and location of the auction and the Defendant who purchased the lien. *Id*. ¶¶ 17, 19, 21, 24, 26.  But no Plaintiff sets forth any specific allegations of wrongdoing with respect to the auction at which its tax lien was sold (e.g., which Defendants allegedly colluded or the rates for any other TSCs sold at those auctions).  Each Plaintiff nevertheless asserts in conclusory terms that the interest rate on the TSC(s) for their properties was "artificially inflated pursuant to the conspiracy alleged herein." *Id.* at ¶¶ 18, 20, 22, 25, 27.

The Complaint alleges that Defendants engaged in a single "overarching statewide conspiracy" involving twenty-eight corporate entities, seventeen individuals, two trustees, one religious non-profit organization, and countless unnamed co-conspirators. *Id.* ¶¶ 1, 9, 132.  According to the Complaint, these forty-eight Defendants and their numerous unnamed "co-conspirators" agreed to rig the bids for TSCs at thousands of tax lien auctions that took place across the entire state of New Jersey over an eleven-year period from January 1998 through February 2009. *Id.* ¶¶ 1, 197.[3]  The Complaint provides no specifics as to when, where, how, or among whom the purported overarching statewide conspiracy

---

[3]     The Complaint alleges that each of the State's 566 municipalities held auctions "at least once a year" over an eleven-year period.  Compl. ¶¶ 1,142, 197.

KL3 2918231.1

began.  Nor does it describe how specific Defendants joined, managed, organized, or maintained such a vast and long-lived conspiracy.  Although the alleged single overarching conspiracy is implausible on its face, Plaintiffs also fail to allege that any such conspiracy affected every lien purchased over the eleven-year period. *See, e.g.*, *id.* ¶154 (alleging that the conspiracy "impacted liens").

The Complaint's brief descriptions of seven "example" auctions that are purportedly "representative" of the alleged conspiracy, *id.* ¶ 154, are similarly devoid of any specifics suggestive of an overarching agreement reaching from one auction to another, much less an agreement spanning thousands of separate auctions over an eleven-year period.  Different sets of Defendants allegedly attended each of the seven auctions, and many of the forty-eight Defendants are not alleged to have participated in *any* of these auctions.  *Id.* ¶ 154; *see also id.* ¶ 38 ("not every Defendant attended every tax lien auction in the State of New Jersey during the Class Period").  Furthermore, none of the seven "representative" auctions involves any of the named Plaintiffs or the sale of TSCs with respect to their unpaid taxes.  Even as to Defendants who are mentioned with respect to the representative auctions, the Complaint does not differentiate among them, and fails to provide specifics about when, where, or how individual Defendants participated in the alleged bid-rigging.

8

Nor do any of the guilty pleas entered by certain Defendants reference any of the auctions relating to the Plaintiffs or describe with any particularity a continuous and overarching conspiracy among the forty-eight Defendants affecting auctions throughout New Jersey. *Id*. ¶¶ 166-81. Instead, the plea-related charging documents quoted in the Complaint state that some of the Defendants conspired to submit non-competitive bids at "*certain* public auctions for tax liens conducted by municipalities within the District of New Jersey." *Id*. ¶ 170 (emphasis added).

Plaintiffs allege that the Defendants "discontinued their collusive activities with respect to tax lien auctions in New Jersey by around February 2009," over three years before the first class action complaint was filed on March 13, 2012. *Id*. ¶¶ 163, 166.

## ARGUMENT

### I.   PLAINTIFFS' ANTITRUST CLAIMS SHOULD BE DISMISSED.

#### A.   Plaintiffs' Sherman Act and New Jersey Antitrust Claims Fail to State a Claim.

Plaintiffs have failed adequately to allege viable federal or state antitrust claims. As set forth below, the pleading requirements for a Sherman Act claim are rigorous. Plaintiffs have failed to satisfy those requirements for four reasons: (1) Plaintiffs do not adequately allege a conspiracy affecting the six specific auctions at which their liens were sold; (2) Plaintiffs have not plausibly pled a massive overarching conspiracy to restrain trade at every tax lien auction during the

9

putative eleven-year class period; (3) Plaintiffs' improper and non-specific collective-pleading as to multiple Defendants fails to connect each Defendant to any alleged conspiracy; and (4) Plaintiffs' references to governmental proceedings and other extraneous allegations are insufficient to rescue their defective allegations.  Accordingly, both their state and federal antitrust claims should be dismissed.  *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n.2 (3d Cir. 2009) (because "the New Jersey Act itself mandates that it shall be construed in harmony with the ruling judicial interpretations of comparable Federal antitrust statutes, . . . state law antitrust claims are only viable if the corresponding federal claims are sufficient.") (citations and internal quotation marks omitted).

### 1. Plaintiffs Must Plead Specific Facts Supporting Their Antitrust Conspiracy Claims.

The Supreme Court has recognized that "antitrust discovery can be expensive" and "the success of judicial supervision in checking discovery abuse has been on the modest side."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).  The Court has therefore urged district courts to "to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Id.* at 558 (citation and internal quotation marks omitted); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) ("Plaintiffs' obligation to show the existence of a horizontal agreement is not only an ultimate burden of proof but also bears on their pleadings.").

KL3 2918231.1

To survive a motion to dismiss under Fed. R. Civ. P. 8(a), Plaintiffs'

"[f]actual allegations must be enough to raise a right to relief above the speculative

level. . . ." *Twombly*, 550 U.S. at 555.  Plaintiffs bear the burden of alleging an

antitrust conspiracy that is not just "conceivable" but "plausible." *Id.* at 570.  To

state a plausible antitrust conspiracy, moreover, Plaintiffs must do more than offer

"labels and conclusions" and "a formulaic recitation of the elements of a cause of

action." *Id.* at 555.  Instead, they must allege "enough factual matter (taken as

true) to suggest that an agreement was made." *Id.* at 556.  At a minimum, Rule

8(a) requires Plaintiffs to "answer the basic questions" of "who, did what, to whom

(or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042,

1048 (9th Cir. 2008).

Additionally, "[e]ven under the most liberal notice pleading requirements

. . . , a plaintiff must differentiate between defendants." *Shaw v. Hous. Auth. of

Camden*, No. 11-4291 (RMB/AMD), 2012 WL 3283402, at *2 (D.N.J. Aug. 10,

2012) (citation omitted) (dismissing complaint as to defendants who were listed

only by name and title as parties to action and not mentioned elsewhere in the

complaint).  This pleading burden is not satisfied where a complaint simply uses

either "the collective term 'Defendants' or a list of the defendants named

individually but with no distinction as to what acts are attributable to whom . . . ."

*Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also, e.g.*, *Love v.*

*Mail on Sunday*, No. CV057798ABCPJWX, 2006 WL 4046180, at *15 (C.D. Ca. Aug. 15, 2006) (dismissing conspiracy claim where, among other things, complaint failed "to differentiate among the various different defendants and their alleged roles"). Collective-style allegations fail to provide "a reasonable basis from which [the court] can infer [a] defendant's liability," *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 835 (Bankr. M.D. Fla. 2011), and "are so general that they fail to put each defendant on notice of the claims against them." *Pietrangelo v. NUI Corp.*, No. Civ. 04-3223 (GEB), 2005 WL 1703200, at *10 (D.N.J. July 20, 2005).

Here, the Complaint must also meet the requirements of Fed. R. Civ. P. 9(b) because Plaintiffs assert that the Defendants engaged in "fraudulent concealment of their unlawful scheme" and "[m]ade material misrepresentations that were false with the intent to deceive that they were bidding competitively. . . ." Compl. ¶¶ 187, 229. Where plaintiffs "allege that the defendants accomplished the goal of their [antitrust] conspiracy through fraud, the [] Complaint is subject to Rule 9(b)." *Lum v. Bank of Am.*, 361 F.3d 217, 228 (3d Cir. 2004), *abrogated on other grounds by Twombly*; *see also Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 877-82 (D.N.J. 2008) (allegations of "[f]raudulent [c]oncealment" require the entire antitrust conspiracy to be pled with particularity). For this reason as well, the Complaint must detail with particularity "the who, what, when, where, and how" of the alleged conspiracy and of the

alleged fraudulent conduct. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999), *abrogated on other grounds*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Collective-style pleading also fails to satisfy Rule 9(b). "Where allegations of fraud are brought against multiple defendants, the complaint must plead with particularity . . . the [specific] allegations of fraud applicable to each defendant." *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038 (RMB/KMW), 2012 WL 869007, at *2 (D.N.J. Mar. 14, 2012) (quoting *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005)). "A complaint that 'lumps' together numerous defendants does not provide sufficient notice of which defendants" allegedly engaged in the fraudulent conduct. *Tredennick v. Bone*, 647 F. Supp. 2d 495, 501 (W.D. Pa. 2007) , *aff'd*, 323 F. App'x 103 (3d Cir. 2008).

Finally, "[a] complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff[s]" under Rule 9(b). *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012). This action is one between individual Plaintiffs and each Defendant unless and until the putative class is certified. Accordingly, the Complaint must allege "what happened to a specific plaintiff," not to New Jersey property owners in general or putative class members not identified in the Complaint. *See Rolo v. City Inv. Co. Liquidating Trust*, 155 F.3d 644, 658-59 (3d Cir. 1998) (finding that putative class action plaintiffs failed

to plead fraud with particularity where complaint only alleged what happened to

"most purchasers" and not plaintiffs specifically), *abrogated on other grounds*,

*Rotella v. Wood*, 528 U.S. 549 (2000).

> **2.     The Complaint Does Not Plausibly Allege a Conspiracy
> Affecting Any of the Six Auctions Involving Plaintiffs'
> Liens.**

To state a claim under the Sherman Act, a plaintiff must allege (1) that each

defendant was a party to a contract, combination or conspiracy (2) that imposed an

unreasonable restraint on trade, and (3) antitrust injury, "which is . . . injury of the

type the antitrust laws were intended to prevent and [] that flows from that which

makes defendants' acts unlawful."  *In re Ins. Brokerage Antitrust Litig.*, 618 F. 3d

at 315, 315 n.9 (internal citations, quotation marks and numbering omitted).

Plaintiffs have failed to allege these elements with respect to the auctions that

allegedly injured them.

The five Plaintiffs allege that liens "associated with" their respective

properties were sold at six different auctions.  Compl. ¶¶ 17-26.  However, they

fail to offer *any* plausible allegations of a conspiracy that affected these six

auctions, let alone well-pleaded allegations as to the who, what, when, where and

how of any such conspiracy, or proximate causation or damages.  With respect to

each of the six auctions, Plaintiffs allege the attendance of only the single

Defendant who purchased the Plaintiff's lien (or in the case of the Schmidts, the

two Defendants who purchased the two liens).  As to these particular auctions, there is no allegation that any other Defendant was present, let alone that all Defendants (or some unidentified subset) agreed not to compete for the lien on the Plaintiff's property.  There is also no overlap or connection alleged between the six auctions involving Plaintiffs' TSCs and the seven supposedly "representative" auctions described later in the Complaint.  *Compare* Compl. ¶¶ 17-27 *with* ¶154; *cf. Lewis v. Casey*, 518 U. S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (citations and internal quotation marks omitted).  Nor are any specific facts alleged as to each Plaintiff that could establish proximate cause or damages.  Instead, Plaintiffs merely make the conclusory assertion that "[a]s a result of the Defendants' anticompetitive conduct, the interest rate associated with the TSC on the [Plaintiff's] Property was artificially inflated, and Plaintiff [] has been damaged thereby."  Compl. ¶¶ 18, 20, 22, 25.  These allegations fail to satisfy Rule 8(a), let alone the more demanding requirements of Rule 9(b).

### 3.    The Complaint Does Not Plausibly Allege a Single Agreement Among All of the Individual Defendants.

In an apparent attempt to overcome their inability to allege any conspiratorial conduct at the six specific auctions that affected their properties,

Plaintiffs resort to conclusory assertions of an "overarching statewide conspiracy" that allegedly affected thousands of auctions occurring throughout the class period. *See* Compl. ¶¶ 1, 146, 147, 197. Significantly, Plaintiffs never attempt to allege a number of smaller conspiracies relating only to specific auctions. Instead, Plaintiffs stake their antitrust claims solely on allegations of a single vast and continuous conspiracy. *See id*.

Plaintiffs face a heavy burden in attempting to plead a single overarching conspiracy among forty-eight defendants to rig the bids at thousands of auctions over an eleven-year period. Even a single non-cooperating bidder can cause a cartel to break down. *See, e.g.*, *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 224 (E.D.N.Y. 2003); R. Mark Isaac & James M. Walker, *Information and Conspiracy in Sealed Bid Auctions*, 6 J. Econ. Behavior & Org. 139, 151-52 (1985). As a result, the type of massive conspiracy that Plaintiffs attempt to allege would have required extensive coordination among a large number of potential bidders who attended auctions in ever-changing combinations. Plaintiffs bear the burden of alleging specific facts sufficient to demonstrate the plausibility of such a conspiracy. *See supra* pp. 10-14.

Plaintiffs fail to meet this burden. Most notably, Plaintiffs lump all of the Defendants together and fail to allege (i) when, where, and how the purported conspiracy began; (ii) when, where, and how the Defendants coordinated the

16

conspiracy from auction-to-auction; or (iii) when, where, and how the Defendants managed and maintained the conspiracy over a span of eleven years.  Plaintiffs' antitrust claims should be dismissed for these reasons alone.  *See, e.g.*, *In re Bath & Kitchen Fixtures Antitrust Litig.*, No. 05-cv-00510 MAM, 2006 WL 2038605, at *5 (E.D. Pa. July 19, 2006) ("[A]n antitrust plaintiff must provide the defendants some minimal factual background regarding how any alleged conspiracy was formed.").

Plaintiffs mention only a handful of the 6,000 auctions that occurred during the relevant period, and they discuss only seven auctions with any specificity at all. *See* Compl. ¶¶ 17-27, 154.  Even as to these seven so-called "representative" examples of bid-rigging, Plaintiffs fail to offer any well-pleaded allegations that link them together as part of a continuous conspiracy, let alone to any of the five named Plaintiffs.  With respect to each "representative" auction, the Complaint makes only a conclusory allegation of a narrow agreement reached shortly before that particular auction by certain undifferentiated bidders who attended that auction to "'pick' the liens on which they would each bid," and does not allege that any of those "agreements" or auctions concerned liens on any named Plaintiff's property. *Id.* ¶ 154(a).  Furthermore, Plaintiffs never allege that the attendees at these seven auctions agreed to rig the bids at any *future* auction, much less to do so on a continuous basis.  Nor would any such allegation be plausible, given the absence of

17

any apparent way of knowing which bidders would be present at future auctions or which properties would be auctioned.  Indeed, the Complaint explicitly alleges that a different group of Defendants—and in each instance only a small fraction of the Defendants named in the Complaint—attended each of the "representative" auctions.  *See id*. ¶ 154 (identifying a different combination of Defendants as attendees at each auction).

Named Plaintiffs' allegations concerning the auctions of their own TSCs and the seven "representative" auctions thus fall far short of supporting the type of vast and continuous conspiracy alleged in the Complaint.  Courts have dismissed similar conspiracy claims where, as here, the specific facts alleged in the complaint at most relate to discrete and episodic instances of collusion.  *See, e.g.*, *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc*., 602 F.3d 237, 256 (3d Cir. 2010) (affirming complete dismissal of an "overarching conspiracy" claim because "the amended complaint cannot be fairly understood to allege the existence of several unconnected, bilateral" conspiracies); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2006 WL 2850607, at *12 (D.N.J. Oct. 3, 2006), *aff'd in part*, 618 F.3d 300 (3d Cir. 2010) (finding that plaintiffs failed to plead sufficient facts to establish a "[g]lobal [c]onspiracy" of bid-rigging where plaintiffs merely alleged "collusion between a limited subset of brokers and insurers"); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011)

18

(dismissing all antitrust claims because plaintiffs failed to plead facts "from which inferences of a wider conspiracy can be drawn from guilty pleas to separate bilateral conspiracies"); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1319 (S.D. Fla. 2010) (dismissing complaint where "the allegations do not plausibly support the entire statewide, ten-Defendant, two-product conspiracy alleged by Plaintiffs").

   *In re Insurance Brokerage Antitrust Litigation* is illustrative of these cases. 2006 WL 2850607.  There, plaintiffs attempted to plead a single conspiracy among thirty-five entities to rig bids for financial products sold to municipalities.  *Id.* at *12.  Although the complaint alleged "collusion between a limited subset of brokers and insurers," the court held that "the pleadings must identify the purported subset of conspirators in this conduct and the nature and scope of each alleged conspirator's role."  *Id.*  The court dismissed the plaintiffs' conspiracy claim because the plaintiffs failed to "explain how such a large and diverse group of Defendants acted, combined or conspired as a part of a single conspiracy."  *Id.*[4]

---

[4]      Even in the context of criminal conspiracy prosecutions, courts have held that the government cannot support an overarching, all-encompassing conspiracy by relying on allegations of disconnected agreements.  *See, e.g.*, *United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1131 (3d Cir. 1986) (on review of a dismissal of a criminal indictment, concluding that there was no single antitrust conspiracy where "separate bid-rigging meetings were held with respect to each facility . . . , the allocation of business among the bid-riggers was made on a facility-by-facility basis," and "not all the conspiring personnel knew each other . . .").

KL3 2918231.1

Likewise here, to the extent there are any non-conclusory facts alleged, Plaintiffs have failed to allege the "who, what, when, where, and how" of a single overarching conspiracy.

>    **4.    Plaintiffs Fail Sufficiently to Allege That Each Defendant Participated in the Purported Conspiracy or How It Did So.**

A plaintiff asserting a bid-rigging conspiracy must allege specific facts describing the "nature and scope of each alleged conspirator's role." *In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *12. "Simply using the global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient." *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 312 (D.N.J. 2004) (quotations omitted); *see also Tredennick v. Bone*, 323 F. App'x 103, 105 (3d Cir. 2008) ("[W]here multiple defendants are involved, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

Plaintiffs make a number of collective allegations that lump all Defendants together, but Plaintiffs fail to make individualized allegations concerning when each Defendant joined the conspiracy or how it did so. For most of the forty-eight Defendants, the only purported connection to the alleged conspiracy is the fact that they attended one of the seven "representative" auctions or purchased one of the named Plaintiffs' liens. *See* Compl. ¶¶ 17-27, 154. But the Complaint offers no specifics about each distinct Defendant's role at these auctions. Instead, Plaintiffs

attempt to cast a wide and indiscriminate net over numerous corporate entities and individuals without offering any defendant-by-defendant allegations of misconduct.

Plaintiffs' wholesale failure to describe how each distinct Defendant participated in the alleged overarching decade-long conspiracy provides an independent basis for dismissing Plaintiffs' antitrust claims.  *See Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 577 (S.D.N.Y. 2007) (dismissing complaint where plaintiff did "not allege any facts identifying which record companies were actually approached" or "whether any of the companies were aware of each other's actions"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 1827, 2010 WL 2629728, at *7 (N.D. Cal. June 29, 2010) ("[A]n antitrust plaintiff must specifically plead how each individual defendant joined the alleged price fixing conspiracy"); *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to any individual [] defendant."); *see also supra* pp. 11-14 (describing additional cases which hold that collective-style pleading does not satisfy Rules 8(a) and 9(b)).

### 5.   Plaintiffs' References to Guilty Pleas and Other Extraneous Allegations Do Not Rescue Their Pleading Defects.

Plaintiffs attempt to bolster their thinly-pleaded conspiracy allegations with references to the Department of Justice investigation of bid-rigging in connection with New Jersey tax lien auctions, the guilty pleas that certain individuals and entities have entered in connection with that investigation, and the fact that certain Defendants are members of a tax liens trade association.  None of these allegations overcomes the defects in Plaintiffs' conspiracy allegations.

First, the guilty pleas cited in the Complaint do not support Plaintiffs' attempt to plead an "overarching statewide conspiracy" among all Defendants as to all auctions throughout New Jersey for more than a decade.  Compl. ¶ 154.  Nor does any guilty plea reflect an admission as to any of the specific auctions at which the five named Plaintiffs' TSCs were sold.  The quoted charging documents instead reflect that each Defendant who pled guilty was charged with submitting "non-competitive and collusive bids at *certain* public auctions for tax liens conducted by municipalities within the District of New Jersey."  Compl. ¶¶ 166-81 (emphasis added).  Furthermore, the plea agreements entered into by a minority of the Defendants provide no basis for inferring that all forty-eight Defendants entered into the alleged conspiracy.  "[E]ven where some competitors have admitted" to violating the antitrust laws, "it is not reasonable to infer that" other

defendants "had done likewise." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007).

Second, the mere fact that the Department of Justice has served subpoenas on certain entities does not support an inference that those entities conspired. *See, e.g.*, Compl. ¶ 181. Under settled law, a government investigation "carries no weight in pleading an antitrust conspiracy claim." *In re Graphics Processing Units*, 527 F. Supp. 2d at 1024; *see also In re Travel Agent Comm'n Antitrust Litig.*, MDL Docket No. 1561, 2007 WL 3171675, at *11-12 (N.D. Ohio Oct. 29, 2007) (DOJ investigation is "not only completely immaterial to plaintiff's claim, but is also arguably prejudicial and these paragraphs will be stricken from the complaint") (citation and internal quotation marks omitted).

Finally, although Plaintiffs allege that several Defendants have attended meetings of the National Tax Liens Association ("NTLA"), *see* Compl. ¶ 164, they fail to describe a single instance of misconduct at such meetings. The mere fact that several Defendants belong to a trade association does not support Plaintiffs' conspiracy allegations. *See Twombly*, 550 U.S. at 567 n.12 (rejecting contention that defendants' common membership in trade union plausibly suggests conspiracy); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 349 (same); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009) (same).

KL3 2918231.1

**B.     Plaintiffs' Sherman Act and New Jersey Antitrust Act Claims Are
Barred By the Filed Rate Doctrine.**

Plaintiffs' antitrust claims also should be dismissed because they are

foreclosed by the filed rate doctrine, which precludes antitrust claims premised

upon rates filed with a government agency.  The interest rates on TSCs that form

the basis for Plaintiffs' antitrust claims are the result of an auction process

expressly prescribed by a "comprehensive" regulatory regime, and the rates must

be filed with the appropriate municipality to be effective.  *See* Compl. ¶¶ 6, 136.

Plaintiffs' antitrust claims thus fall squarely within the ambit of the filed rate

doctrine.

The controlling law in this Circuit is clear.  The filed rate doctrine precludes

antitrust suits that are "based on rates . . . filed with federal or state agencies." *In re*

*N.J. Title Ins. Litig.*, 683 F.3d 451, 454 (3d Cir. 2012).  "Under the filed rate

doctrine, a plaintiff may not sue . . . based on rates that, though alleged to be the

result of anti-competitive conduct, were filed with the . . . agency responsible for

overseeing such rates."  *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 378 F.3d

303, 306 (3d Cir. 2004).  The doctrine and its strict application are due to the

concern that "federal courts are ill-equipped to engage in the rate making process."

*In re N.J. Title Ins. Litig.*, 683 F.3d at 457.

The sole criterion for application of the filed rate doctrine is that the

challenged rates were filed with a governmental body.  "[T]he culpability of the

defendant's conduct" is irrelevant.  *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998); *see also McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 238 (3d Cir. 2012), *cert. denied*, 2013 WL 598864 (Feb. 19, 2013) ("[T]he Supreme Court has never indicated that the filed rate doctrine requires a certain type of agency approval or level of regulatory review."); *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 533, n.11 (3d Cir. 2006) (citing *Maislin Indus. v. Primary Steel, Inc.*, 497 U.S. 116, 128 (1990) (even where the operation of the filed rate doctrine has "harsh effects," courts "have consistently adhered to it")).  Where, as here, the rate is the outcome of a process that is prescribed by a comprehensive regulatory regime, the filed rate doctrine is implicated and erects an insurmountable barrier to that claim.  *In re N.J. Title Ins. Litig.*, 683 F.3d at 457.  Moreover, the doctrine applies regardless of whether the regulatory process involves a rate that is set by a government entity or a "market based" rate that is derived through an auction process and subsequently filed.  *See, e.g.*, *Utilimax.com*, 378 F.3d at 306.

In this case, Plaintiffs allege that the "New Jersey Tax Sale Law establishes a comprehensive scheme to govern the creation, enforcement and collection of liens for unpaid [real property] taxes and other municipal liens on real property." Compl. ¶ 136 (citation and internal quotation marks omitted).  That "comprehensive scheme" mandates that "each of New Jersey's 566 municipalities must hold auctions for outstanding liens on real property at least once a year." *Id.*

¶ 142.  At those auctions, which are held by the municipalities in accordance with state law, participants can bid to obtain liens at the statutorily-prescribed default rate of 18% or can place a bid for such liens at a lower interest rate.  *See* N.J.S.A. 54:5-32.  Winning bids are determined by the government official who presides over the auction.  *See* N.J.S.A. 54:5-19, 54:5-31.  Alternatively, the government official presiding at the auction "may adjourn the sale in his discretion, either for want of bidders or at the request of persons interested, or for any other reason satisfactory to him . . . ."  N.J.S.A. 54:5-28.

When a municipality awards a lien through the auction process, and authorizes the recipient to receive interest at the prescribed rate, that party "receives a TSC as evidence of the lien."  Compl. ¶ 140.  The content of the TSC is specifically set forth in the statute.  *See* N.J.S.A. 54:5-47 (stating the "form and content" of a TSC).  The municipality must certify in the TSC that the lien has been sold to the person or entity that acquired it.  *Id.*  The TSC also memorializes *the rate at which the lien was purchased*, and provides the name of the municipality that sold it, the name of the purchaser, the amount and composition of the lien, and a description of the real property.  *See* Sample TSC attached hereto as Exh. A; *see also* N.J.S.A. 54:5-47.[5]  Each TSC and the rate at which it was

---

[5]    Because this entire lawsuit is predicated on TSCs the Court properly may consider a sample TSC in connection with Defendants' Rule 12 motion without (continued…)

purchased at auction must then be filed or "recorded with the clerk or register of deeds to preserve the lien holder's interest."  Compl. ¶ 6; N.J.S.A. 54:5-51.[6]

Accordingly, Plaintiffs' antitrust claims are precisely the type of claims that the Third Circuit has held are barred by the filed rate doctrine.  Plaintiffs challenge rates that were set by a "comprehensive" government process and that were filed with the relevant government entity.  Compl. ¶ 6.  Plaintiffs seek damages based on the allegation that they were harmed by rates that are too high (including any rates in excess of 0%, *see* Compl. ¶ 197), and ask this Court to conclude for each unique property that some rate other than the rate filed with the relevant municipality should have applied.  Under controlling Third Circuit precedent, such an exercise is precluded by the filed rate doctrine.

---

converting it to a motion for summary judgment.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment") (citations and internal quotation mark omitted).  Moreover, the Court may consider matters of public record, such as TSCs, in connection with a motion to dismiss, without converting that motion into a summary judgment motion.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[6]     The TSC attached as Exhibit A, for example, reflects the applicable interest rate and includes a bar code and stamp confirming that it was filed with the County Clerk for Somerset County, New Jersey.

KL3 2918231.1

**C.    Plaintiffs' Sherman Act and New Jersey Antitrust Act Claims Should Be Dismissed for Failure to Allege Antitrust Standing.**

Plaintiffs' antitrust claims should also be dismissed because Plaintiffs lack antitrust standing.  First, as explained above, Plaintiffs have not plausibly alleged collusion or wrongful conduct at the particular auctions at which their liens were sold.  That alone defeats standing.  *See, e.g.*, *Lewis*, 518 U.S. at 357 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured. . . ."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) (stating that a "plaintiff . . . must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants") (citation and internal quotation marks omitted).  Second, as we now explain, Plaintiffs are not consumers or competitors in the relevant markets defined in the Complaint—namely the "markets with respect to the sale of TSCs in the State of New Jersey during the Class Period."  Compl. ¶ 208.  Thus, they have not suffered antitrust injury and do not have standing to bring these claims.

The Sherman Act does not provide a remedy for all harms "that might conceivably be traced to an antitrust violation*." Hawaii v. Standard Oil Co*., 405 U.S. 251, 263 n. 14 (1972); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) ("[W]hile the United States is authorized to sue anyone violating the federal antitrust laws, a private plaintiff must demonstrate

'standing.'").  Instead, Section 4 of the Clayton Act limits private antitrust actions to "any person injured in his business or property by reason of anything forbidden in the antitrust laws."  15 U.S.C. §15 (2006).  Under Section 4, an antitrust plaintiff must establish standing by showing "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat Inc.*, 429 U.S. 477, 489 (1977).

Applying those limitations, the Third Circuit has held that a district court should apply a five-factor test to determine whether a plaintiff has established antitrust standing:

> (1) the causal connection between the antitrust violations and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993) (citing *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538 (1983) ("*AGC*")).  The second factor, "antitrust injury, is a necessary but insufficient condition of antitrust standing."

29

*Ethypharm S.A. France v. Abbott Laboratories*, ___ F.3d ___, 2013 WL 238794, at *5 (3d Cir. Jan. 23, 2013) (citation omitted).  Where, as here, antitrust injury is lacking, the court "need not address the remaining *AGC* factors."  *Id.*

The Third Circuit has explained that two categories of plaintiffs have standing to bring antitrust claims: (1) "consumers and competitors in the restrained market," and (2) "those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends."  *W. Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010).  As that Court recently ruled, the second category does "not extend[] . . . beyond cases in which both plaintiffs and defendants are in the business of selling goods or services *in the same relevant market*, though they may not directly compete against each other."  *Ethypharm*, 2013 WL 238794, at *9 (emphasis in original).  In other words, a plaintiff who does not, in some way, sell or purchase goods or services in the relevant market lacks standing to bring an antitrust claim, regardless of what injuries he may have suffered.  *See SigmaPharm, Inc. v. Mut. Pharm. Co.*, 454 F. App'x 64, 68 (3d Cir. 2011) ("Mere injury resulting from conduct that violated the antitrust laws is insufficient to confer antitrust standing."); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 927 (3d Cir. 1999) ("If the injury is not of the requisite type, even though the would-be plaintiff may have suffered an injury as a result of conduct that violated the antitrust laws, he or she

30

has no standing to bring a private right of action under the antitrust laws to recover for it.") (citing *Barton & Pittinos*, *Inc. v. SmithKline Beecham Corp.*, 118 F.3d178, 181(3d Cir. 1997)).

Here, Plaintiffs lack standing for the same reasons that the plaintiffs lacked standing in the leading Third Circuit cases, *Barton & Pittinos* and *Ethypharm*: they do not allege that they are either competitors or consumers in the market alleged in the Complaint.  The Complaint defines the relevant market as the market for TSCs in New Jersey:  "Defendants have combined and conspired to rig bids and allocate markets with respect to the *sale of TSCs* in the State of New Jersey during the Class Period."  Compl. ¶ 208 (emphasis added).  Nothing in the Complaint alleges that Plaintiffs are either competitors or customers in that market. *See Ethypharm*, 2013 WL 238794, at *8 ("Indeed, Ethypharm's own Complaint defines the relevant market in this case as the sale of fenofibrate productions in the United States. . . . When looking through that market lens, Ethypharm does not and cannot compete with Abbott"); *Barton & Pittinos,* 118 F.3d at 182 (Alito, J.) (holding that because "B&P never 'sold' or 'distributed' any vaccine to anyone . . . it is plain that B&P was not a competitor in the market for sales of the vaccine"). To the contrary, it is undisputed that Plaintiffs are not "competitors" of any of the Defendants:  Plaintiffs do not claim ever to have sought to buy anything at a TSC auction.

KL3 2918231.1

Nor can the delinquent taxpayers be considered "customers" in the TSC market.  Plaintiffs never participated in a TSC auction or engaged in any transactions with Defendants.  *See SAS P.R. v. P.R Tel. Co.*, 48 F.3d 39, 44 (1st Cir. 1995) (dismissing antitrust claim on standing grounds because "the presumptively proper plaintiff is a customer who obtains services in the threatened market" and plaintiff failed to plead receipt of services); *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) (dismissing antitrust claim because plaintiffs were not customers in the "relevant antitrust market"); *S.D. Collectibles, Inc. v. Plough, Inc.*, 952 F.2d 211, 213 (8th Cir. 1991) (dismissing antitrust claim on standing grounds because a broker of a product is not a consumer in the market for that product).

Plaintiffs also cannot establish standing by contending that their harm was "inextricably intertwined" with the antitrust conspiracy.  The Third Circuit has limited this exception only to cases where "both plaintiffs and defendants are in the business of selling goods or services in the same relevant market," even if plaintiffs' injuries are allegedly inextricably intertwined with defendants' conduct. *Ethypharm*, 2013 WL 238794, at *9 (emphasis in original).  Plaintiffs do not meet this narrow standard.

### D.    Plaintiffs' Claim For a Declaratory Judgment Should Be Dismissed As Duplicative of their Sherman Act Claim.

The Federal Rules permit parties to plead their claims in the alternative, but redundant pleading is not permitted.  *See US LEC Commc'ns LLC v. Qwest Commc'ns Co.*, No. 10-4106 (JBS/JS), 2011 WL 2474262, at *4 (D.N.J. June 20, 2011) (distinguishing alternative pleading from redundant pleading).  Accordingly, because Plaintiffs' sixth claim for a declaratory judgment is wholly duplicative of their first claim, their sixth claim should be dismissed.  Compl. ¶¶ 236-238; *ATD-Am. Co. v. Krueger Int'l, Inc.*, No. 12-00032, 2012 WL 1382472, at *11 (E.D. Pa. Apr. 20, 2012) (dismissing declaratory judgment claim that duplicated breach of contract claims asserted against same defendant); *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (dismissing declaratory judgment claim and noting that "[w]here the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serves no useful purpose") (citation and internal quotation marks omitted).

## II.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED.

### A.    The Fourth Claim For Relief Should Be Dismissed Because § 54:5-52 Does Not Create a Cause of Action.

Plaintiffs' fourth claim for relief for a purported violation of § 54:5-52 of the Tax Sale Law should be dismissed because there is no right of action under that section.  By its plain terms, § 54:5-52 merely creates an evidentiary presumption:

> The certificate of sale shall be presumptive evidence in all courts in all proceedings by and against the purchaser, his representatives, heirs, and assigns, of the truth of the statements therein, of the title of the purchaser to the land therein described, and the regularity and validity of all proceedings had in reference to the sale. After two years from the record of the certificate of sale, no evidence shall be admitted in any court to rebut the presumption, unless the holder thereof shall have procured it by fraud, or had previous knowledge that it was fraudulently made or procured.

N.J.S.A. 54:5-52 (set forth in its entirety).

This evidentiary presumption cannot be read to create a cause of action. Justice Case of the New Jersey Supreme Court explicitly observed that § 54:5-52 "is a statute upon the admission of evidence, not upon pleading." *Cmty. Dev. Co. v. Seaside Gardens, Inc.*, 7 N.J. 153, 158 (1951) (Case, J., dissenting). There is no reported decision alleging, much less sustaining, a cause of action brought under § 54:5-52, and the statute has been invoked only as an evidentiary presumption. *See, e.g.*, *Hinchliffe v. Loughlin*, 126 N.J.L. 132 (1941) (addressing statutory presumption created by § 54:5-52); *Garden State Inv. v. Zaleski*, No. F-24480-09, 2010 WL 4904987 (N.J. Super. Ct. App. Div. Dec. 3, 2010) (per curiam) (same).

Far from creating a right of action against the purchaser of a TSC, as discussed below, § 54:5-52, was designed "to protect the purchaser of [the] Tax Sale Certificate." *Barry L. Kahn Defined Benefit Pension Plan v. Twp. of Moorestown*, 243 N.J. Super. 328, 341 (Ch. Div. 1990). More broadly, it is well-

34

established that statutory evidentiary presumptions do not give rise to independent causes of action. *See, e.g.*, *Disenos Artisticos E Industriales, S.A. v. Work*, 676 F. Supp. 1254, 1266 (E.D.N.Y. 1987) (sections 1065 and 1115(b) of the Lanham Act give rise to a conclusive presumption of trademark validity but not an independent cause of action); *Raum v. City of Bellevue*, 286 P.3d 695, 705-06 (Wash. Ct. App. 2012) (statute established a rebuttable evidentiary presumption applicable to certain firefighter occupational disease claims but did not create a new cause of action).[7]

## B.   The Second, Third And Fifth Claims For Relief Must Be Dismissed Pursuant To N.J.S.A. § 54:5-52.

Plaintiffs' state law claims for violations of the New Jersey Antitrust Act (Second Claim) and the Tax Sale Law (Third Claim) and for unjust enrichment (Fifth Claim) also fail due to a fundamental pleading deficiency:  the absence of well-pleaded allegations of fraud sufficient to overcome the statutory presumption of validity.[8]

---

[7]     *Cf. Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 294 (Miss. 2007) ("The violation of a rule of evidence does not, standing alone, create a cause of action."); *Daniel Boone Area Sch. Dist. v. Lehman Bros.*, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002) ("negligence *per se* is not a distinct cause of action in tort, but rather an evidentiary presumption" under Pennsylvania law).

[8]     Even if § 54:5-52 provided a right of action—which it clearly does not— Plaintiffs' Fourth claim for relief would also have to be dismissed for the reasons set forth in this section.

KL3 2918231.1

### 1.    The Tax Sale Law Creates an Irrebuttable Presumption of Validity in the Absence of Fraud.

Section 54:5-52 of the New Jersey Tax Sale Law applies "in all courts in all proceedings by and against the purchaser[,]" N.J.S.A. 54:5-52, and "is designed to protect the purchaser of a Tax Sale Certificate." *Barry L. Kahn Defined Benefit Pension Plan*, 243 N.J. Super. at 341.  It protects the purchaser by creating an evidentiary presumption that "[a]fter two years from the record of the certificate of sale, no evidence shall be admitted in any court to rebut the presumption" of, among other things, "*the regularity and validity of all proceedings had in reference to the sale*," unless the TSC holder "procured it by fraud, or had previous knowledge that it was fraudulently made or procured." N.J.S.A. 54:5-52 (emphasis added).

For example, in *Seaside Gardens*, a property owner filed a complaint seeking to have a TSC set aside and declared void.  7 N.J. at 155.  The TSC holder moved to dismiss for failure to state a claim based on the presumption in § 54:5-52.  *Id.* at 156.  After determining that the complaint was filed more than two years after the TSC was recorded, the New Jersey Supreme Court dismissed the complaint for failure to sufficiently allege fraud to rebut the presumption of validity.  *Id.* at 157-58; *see also Hinchliffe*, 126 N.J.L. at 133 (dismissing an action based on § 54:5-52 where action was filed more than two years after the TSC was recorded and property owner failed to establish fraud).

Here, each of Plaintiffs' state law claims is a challenge to the "regularity and validity" of the tax sale proceedings—some of which date back eight years and all of which took place more than two years before the first complaint in this consolidated action was filed.  Compl. ¶ 163 (alleging that Defendants discontinued "their collusive activities with respect to tax lien auctions in New Jersey by around February 2009"); Complaint, *Boyer v. Stein*, No. C-014007-12 (N.J. Super. Ct. Ch. Div. Hunterdon County) (first-filed Complaint, filed on Mar. 13, 2012).  Therefore, in the absence of well-pleaded fraud allegations, Plaintiffs' state law claims are barred by § 54:5-52.[9]

### 2.  Plaintiffs Have Not Adequately Pled That Their TSCs Were Procured by Fraud.

To allege fraud under § 54:5-52, Plaintiffs must meet the pleading requirements of Rule 9(b) with respect to each named Plaintiff and each Defendant individually.  *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) ("[C]ommon law fraud claims are, of course, subject to the pleading

---

[9]     The presumption applies to Plaintiffs' New Jersey state law claims even though this action has been brought in federal court.  Fed. R. Evid. 302 provides: "In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision."  *See also, e.g.*, *Kokins v. Teleflex, Inc.,* 621 F.3d 1290, 1302 (10th Cir. 2010) (holding that Colorado state law presumption that product made more than ten years ago was not defective bore on element or claim or defense as to which state law supplies rule of decision).  Here, § 54:5-52 provides a defense to Plaintiffs' state law claims for relief, and thus the presumption should be applied in accordance with Fed. R. Evid. 302.

KL3 2918231.1

requirements of [Rule] 9(b).”); *see also Seaside Gardens*, 81 A.2d at 15

(explaining that to plead fraud under § 54:5-52, the allegations must satisfy the

particularity requirements that apply to “any cause of action the genesis of which is

fraud”); *supra* pp. 12-14.

Here, the only allegations specific to each named Plaintiff are the date and

location of the tax sale at which the lien(s) for its delinquent taxes were sold, the

name of the TSC purchaser, and the rate of redemption reflected on the TSC for

the lien.  There are no specific allegations about any of the auctions at which any

of Plaintiffs’ tax liens were sold, such as who attended the auction other than the

TSC purchaser, what other liens were sold at the auction and at what rate(s), or any

alleged deceptive conduct or agreement to restrain competition at that particular

auction.  For this reason alone, Plaintiffs have failed sufficiently to allege fraud

with particularity and thus to overcome the hurdle of § 54:5-52.

Plaintiffs also have failed adequately to allege the hallmark of any fraud

claim:  the existence of a material misrepresentation or omission.  The Complaint’s

only reference to a misrepresentation is the conclusory allegation that Defendants

“made material misrepresentations that were false with the intent to deceive that

they were bidding competitively, as statutorily required, at the auctions for

municipal tax liens.”  Compl. ¶ 229.a.  Not only is this conclusory allegation

insufficient to survive a motion to dismiss under Rule 8(a), *see, e.g., Fowler v.*

38

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss"), but it falls far short of Rule 9(b), which requires that "the subject and nature of each misrepresentation . . . be adequately pled." *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 384 (D.N.J. 2007) (citation omitted), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007).  Plaintiffs have not identified a single speaker or source of any false statement, the time and place where any false statement was made, or the content of any false statement.  *See, e.g.*, *Glushakow v. Boyarsky*, No. 11-2917 (JLL), 2011 WL 6020550, at *3 (D.N.J. Dec. 1, 2011) (explaining that to establish fraud plaintiffs must allege "what specific misrepresentation(s) or omissions were made by which Defendants [and] when and where such false statements or omissions were made, whether oral or written").

Any attempt to plead fraud-by-omission also would fail because Plaintiffs have not alleged that Defendants had a duty to disclose material information: "where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (citations omitted). Plaintiffs do not allege that any Plaintiff had a "special relationship" with any Defendant or that any Defendants omitted information necessary to make a

39

previous statement true.  Although the Complaint contains generalized allegations that Defendants purchased TSCs at public auctions, the mere participation in an auction does not give rise to a duty to disclose.  *See Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236, 248 (S.D.N.Y. 2003) (dismissing fraud claim where plaintiff alleged that defendants engaged in bid-rigging at public postage stamp auction because plaintiff failed to plead that defendants withheld material information that they had a duty to disclose).[10]

Because each of Plaintiffs' state law claims is based on alleged bid-rigging at tax sales, each claim is a challenge to the regularity and validity of the tax sale proceedings.  Plaintiffs' failure to rebut the presumption set forth in § 54:5-52 by adequately alleging that the TSCs were fraudulently procured precludes them from challenging the regularity and validity of the TSCs and tax sales at which their liens were sold.  Accordingly, Plaintiffs' state law claims should be dismissed.

---

[10]     In addition to a material misrepresentation or omission, Plaintiffs must also adequately plead knowledge or belief by the Defendants of the falsity of the representation or omission, an intention that Plaintiffs rely on the misrepresentation or omission, reasonable reliance on the misrepresentation or omission by the Plaintiffs, and resulting damages.  *See Dewey*, 558 F. Supp. 2d at 526 (citation omitted).  Plaintiffs' failure to allege a misrepresentation or omission negates the other elements of fraud, and Plaintiffs also have failed to plead how they "acted upon the fraud or misrepresentation complained of" in order to plead the "detrimental reliance element . . . with particularity."  *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257-58 (D.N.J. 1990).

### C.    The Third Claim For Relief Should Be Dismissed Because Plaintiffs Have Failed to Allege a Violation of § 54:5-63.1.

Plaintiffs' third claim for relief also should be dismissed because the Complaint fails to allege a violation of § 54:5-63.1 of the Tax Sale Law (the "forfeiture provision").  The forfeiture provision provides for the forfeiture of a TSC when a TSC holder "knowingly charges or exacts any fee or charge in connection with the redemption" that is "in excess of the amounts permitted by chapter five" of the Tax Sale Law.[11]  Here, Plaintiffs have not alleged that Defendants charged any fees in excess of the amounts permitted by chapter five; instead, they merely allege that Defendants charged the interest rates shown on the face of their TSCs.

Chapter five permits TSC holders to collect "the sum paid at the sale, with interest from the date of sale at the rate of redemption for which the property was sold," N.J.S.A. 54:5-58, i.e., the amount and the interest rate shown on the face of the TSC.  Chapter five also permits TSC holders to collect "expenses incurred by the purchaser as hereinafter provided, and subsequent municipal liens."  *Id.* Although the latter charges arise after an auction and thus are not reflected on the

---

[11]    "Any holder of a tax sale certificate . . . who knowingly charges or exacts any fee or charge in connection with the redemption of any tax sale certificate owned by him, in excess of the amounts permitted by chapter five of Title 54 of the Revised Statutes, shall forfeit such tax sale certificate to the person who was charged such excessive or unlawful fee . . . ." N.J.S.A. 54:5-63.1.

41

face of a TSC, the Tax Sale Law allows the recovery of such charges if the TSC holder files an affidavit detailing the amount of any allowable expenditures that were "actually disbursed" by the TSC holder.[12]

The forfeiture provision applies only when a TSC holder charges sums "in excess of the amounts permitted" by chapter five.  Accordingly, it applies only to charges that exceed either (1) the interest rate or lien amount shown on the face of the TSC, or (2) the fees permitted by statute and set forth in an affidavit filed with the relevant municipal authority.  Here, Plaintiffs do not allege that Defendants charged any such excess sums.  To the contrary, Plaintiffs allege only that Defendants have collected interest at the rates reflected on the face of the TSCs.

There is no support in the statute for imposing a forfeiture when the TSC holder charges the interest rate permitted on the face of a TSC.  As discussed above, the forfeiture provision provides for a forfeiture only if a lienholder charges amounts "in excess of the amounts permitted by chapter five."  Plaintiffs nevertheless urge this Court to re-write the statute to apply to charges "in excess of

---

[12]    *See* N.J.S.A. 54:5-60 (allowing recovery of "subsequent taxes, municipal liens and charges, and interest and costs thereon, actually paid" as reflected in affidavit); 54:5-61 ("expenses . . . actually paid" for necessary recording, advertising and service fees); 54:5-62 ("fees or expenses" must be identified in "affidavits showing the amount or amounts of such expenses actually disbursed or incurred").  Section 54:5-61 also entitles the TSC holder to collect penalties on the principal amount of the TSC.  N.J.S.A. 54:5-61 (2% on principal amounts over $200, 4% on amounts over $5,000, and 6% on amounts over $10,000).

KL3 2918231.1

those permitted by chapter five *or state or federal antitrust laws*."  If that was what the legislature had intended, however, it would have said so explicitly.  But nothing in chapter five says anything of the kind.  Thus, under the plain terms of the statute, Plaintiffs have failed to state a claim for relief.  *See Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 553 (2009) (observing that a statute's plain language should be given its ordinary meaning).  Furthermore, the fact that the forfeiture provision imposes the punitive remedy of forfeiture "militates strongly against" reading an unwritten cause of action into the statute.  *See State v. LaBella*, 88 N.J. Super. 330, 338 (Essex Cnty. Ct. 1965) ("It is a basic rule of statutory construction that a statute creating a forfeiture is penal in nature and must be strictly construed.") (citing Sutherland, *Statutory Construction* §§ 5603-04 (3d ed. 1943)).[13]

In addition, no court has ever suggested that the forfeiture provision allows a taxpayer to challenge the conduct at an auction or the interest rate set forth on the face of the TSC.  To the contrary, all reported cases addressing the forfeiture provision involved claims that the defendant charged either an interest rate greater than the rate reflected on the face of the TSC or an expense not authorized by the

---

[13]    *See also Uricoli v. Bd. of Trs.*, 91 N.J. 62, 76 (1982) (stating that forfeiture is a "penalty"); *New Jersey v. One (1) Ford Van*, 154 N.J. Super. 326, 332 (App. Div. 1977) ("The courts will not search for a construction to bring about a forfeiture; nor will a constrained construction be indulged in order to create a forfeiture.") (citations omitted).

KL3 2918231.1

statute.[14]  If the forfeiture provision in fact had created a cause of action for

something more than that, the case law doubtless would have made that clear in the

more than fifty years that have elapsed since its enactment.  As far as Defendants

are aware, no court has ever done so.

Simply stated, Plaintiffs are challenging the validity of the tax sale process,

not the imposition of an unauthorized fee in connection with redemption.

Therefore, Plaintiffs' third claim for relief should be dismissed.

### D.   The Fifth Claim For Relief For Unjust Enrichment Should Be Dismissed For Failure To State a Claim.

Plaintiffs' unjust enrichment claim cannot survive the dismissal of Plaintiffs'

statutory claims because it is derivative of their claims for relief under the antitrust

laws and the Tax Sale Law.  Unjust enrichment "based upon a predicate wrong,

such as a tort, breach of contract or other wrongful conduct such as an antitrust

---

[14]      For example, in *In re Princeton Office Park, L.P.*, the property owner alleged that even though the TSC was purchased at (and thus reflected) a 0% interest rate, the TSC holder improperly charged an interest rate of 18% at redemption.  *See In re Princeton Office Park, L.P.*, 423 B.R. 795, 808 (Bankr. D.N.J. 2010).  Similarly, the property owners in *Varsolona v. Breen Capital Serv. Corp.*, 180 N.J. 605, 626-28 (2004), alleged, among other things, that they were improperly charged an interest rate in excess of the 18% interest rate reflected on the face of the TSC because the methodology used for compounding resulted in a charge of 18.25%, and also because they were charged fees that were not authorized by the statute, such as bad check fees.  In *Jackson v. HSBC Bank USA*, 393 N.J. Super. 1, 4 (App. Div. 2007), the property owners challenged the TSC holder's ability to charge document preparation fees and late fees that were not provided for under the Tax Sale Law.

violation, . . . is known as parasitic." *In re Flonase Antitrust Litig.*, 692 F. Supp.

2d 524, 542 n.13 (E.D. Pa. 2010).  Here, Plaintiffs allege that Defendants have

unjustly benefitted from "ill-gotten gains" derived from their "unlawful conduct."

Compl. ¶¶ 223-34.  Such a parasitic unjust enrichment claim must be dismissed

where the corresponding "wrongful conduct" has not been sufficiently alleged.

*See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171

F.3d 912, 937 (3d Cir. 1999) (dismissing unjust enrichment claim that was

derivative of tort claims because there was "no justification for permitting

plaintiffs to proceed on their unjust enrichment claim once we have determined

that the District Court properly dismissed the traditional tort claims");  *In re*

*Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011) (New

York state claims that were subject to dismissal could not be the basis for a

parasitic unjust enrichment claim).

As described above, Plaintiffs have failed to allege a violation of the

antitrust laws or the Tax Sale Law—the predicate wrongs alleged in Complaint.

Accordingly, Plaintiffs' parasitic unjust enrichment claim for relief should be

dismissed.

III.    **MANY OF PLAINTIFFS' CLAIMS ARE TIME BARRED.**

Finally, many of Plaintiffs' claims are also barred by applicable statutes of

limitations.  Plaintiffs allege a conspiracy affecting auctions dating back to 1998.

45

As the Complaint implicitly acknowledges, many of the claims of both the putative class and named Plaintiffs are time barred unless the doctrine of fraudulent concealment tolled the statutes of limitations.  *See* Compl. at ¶¶ 187-194. Plaintiffs, however, have failed to plead facts (as opposed to mere conclusions) sufficient to satisfy rigorous pleading requirements for fraudulent concealment in this Circuit.

### A.      The Applicable Limitations Periods.

Under both section 4B of the Clayton Act and § 56:9-14 of the New Jersey Antitrust Act, an antitrust claimant has four years in which to bring a claim. *See* 15 U.S.C. § 15b, N.J.S.A. 56:9-14.  New Jersey's six year limitations period applies to claims for unjust enrichment under New Jersey law, *Alban v. BMW of N. Am., LLC*, Civ. No. 09-5398 (DRD), 2010 WL 3636253, at *12 (D.N.J. Sept. 8, 2010), and to Plaintiffs' claims under the Tax Sale Law (to the extent they have any private right of action at all), s*ee Baer v. Chase*, 392 F.3d 609, 621-22 (3d Cir. 2004); s*ee generally* N.J.S.A. 2A:14-1.

Accordingly, absent well-pleaded allegations of fraudulent concealment, Plaintiffs' antitrust claims predicated on auctions that occurred prior to March 13, 2008—four years prior to the filing of the first complaint in this case—are time-barred.  Likewise, Plaintiffs' claims under the Tax Sale Law and for unjust enrichment based on auctions that occurred before March 13, 2006—six years

prior to the filing of the first complaint—are time-barred.  When, as here, a

complaint makes clear that a claim falls in whole or in part outside the limitations

period, dismissal on a Rule 12 motion is required.  *See Robinson v. Johnson*, 313

F.3d 128, 135 & n.3 (3d Cir. 2002).

### B.   Plaintiffs Have Not Pleaded Facts Sufficient To Toll the Statutes of Limitations Under the Doctrine of Fraudulent Concealment.

The doctrine of fraudulent concealment is an "extraordinary remedy" that

should be applied only "sparingly," and thus one seeking to invoke the doctrine

"bears a heavy burden."  *Murdock v. E. Coast Mortg. Corp.*, Civ. No. 10-4717,

2012 WL 2344515, at *6 (D.N.J. June 20, 2012).  A plaintiff wishing to avail

himself of the doctrine must allege facts sufficient to establish "(1) fraudulent

concealment; (2) failure on the part of the plaintiff to discover his cause of action

notwithstanding such concealment; and (3) that such failure to discover occurred

notwithstanding the exercise of due care on the part of the plaintiff."  *Winoff Indus.*

*v. Stone Container Corp. (In re Linerboard Antitrust Litig.)*, 305 F.3d 145, 160 (3d

Cir. 2002).  Each of those three elements must be supported by allegations

satisfying the particularity requirements of Rule 9(b), *see Byrnes v. DeBolt*

*Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984).

To satisfy the Rule 9(b) standard, a complaint either may describe "the

circumstances of the alleged fraud with precise allegations of date, time, or place"

or may use "some [other] means of injecting precision and some measure of

substantiation into . . . allegations of fraud." *Lum*, 361 F.3d at 224.  At a

minimum, *"*[p]laintiffs . . . must allege who made a misrepresentation to whom and

the general content of the misrepresentation." *Id*.  Because bid-rigging is not

inherently self-concealing, *Pennsylvania v. Milk Indus. Mgmt. Corp.*, 812 F. Supp.

500, 504 (E.D. Pa. 1992), Plaintiffs in this case must allege that they were

"actively misled" by the Defendants in order to toll the applicable statute of

limitations, *see Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009).

Plaintiffs have failed, however, to allege any misrepresentation (or indeed

any representation) by Defendants to Plaintiffs, much less active concealment.  The

best Plaintiffs can muster is the factually unsupported allegation that "Defendant

Mooring denied the existence of the conspiracy, and as recently as 2010,

Defendants Mooring and Xspand were touting their rigorous antitrust training

practices." Compl. ¶ 189.  But this allegation is plainly inadequate.  Besides being

too conclusory to be credited, *see Fowler*, 578 F.3d at 210-11, mere denials of

alleged collusive activity as a matter of law are insufficient to constitute acts of

concealment for purposes of tolling the statute of limitations.  *See, e.g.*,

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19

(4th Cir. 1987); *Pennsylvania v. Lake Asphalt & Petroleum Co.*, 610 F. Supp. 885,

888-89 (M.D. Pa. 1985).

KL3 2918231.1

Plaintiffs' assertion that Defendants "failed to disclose" their alleged wrongful conduct to Plaintiffs, *see* Compl. ¶ 189, is similarly unavailing.  In the absence of some fiduciary obligation or other affirmative obligation to disclose, silence on the part of Defendants cannot support a claim of fraudulent concealment.  *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-02002, 2012 WL 1137100, at *4, n.7 (E.D. Pa. Apr. 4, 2012) (citing cases holding that "[m]ere silence, in the absence of a duty to speak, is not ordinarily sufficient").

*In re Fertilizer Antitrust Litigation* is directly on point.  There, the court held that "[b]ids that had the appearance of regularity and their submission, which allegedly inferred that the bids were complete and regular, are not affirmative acts aimed at fraudulent concealment of anticompetitive conduct; such acts are at best passive conduct of concealment, if not simply silence."  No. MF-75-1, 1979 WL 1690, at *8 (E.D. Wash. Sept. 14, 1979).  Such allegations of silence, the court concluded, were not enough to permit plaintiffs to avail themselves of the doctrine of fraudulent concealment in the absence of an affirmative duty to disclose.  *Id.*

Plaintiffs' claim of fraudulent concealment also is deficient because the Complaint is devoid of any allegation that Plaintiffs exercised due diligence.  A "[p]laintiff who fails to allege any due diligence is virtually foreclosed from invoking the fraudulent concealment doctrine."  *In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-2002, 2012 WL 6645533, at *9 (E.D. Pa. Dec. 20,

2012).  Here, there are no facts alleged in the Complaint that would give rise to a plausible inference that Plaintiffs exercised due diligence.

In the absence of allegations that satisfy the elements of fraudulent concealment, the applicable statutes of limitations cannot be tolled.  Accordingly, the antitrust claims brought on behalf of Plaintiffs Gila Bauer, Frances and Donald Schmidt, Son, Inc., and the state claims of Bauer and Son (in part) should be dismissed.  *See* Compl. ¶¶ 17 (Gila Bauer – December 30, 2005), 24 (the Schmidt Plaintiffs – October 19, 2007), 26 (Son – June 29, 2004 and June 29, 2006).[15]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all claims for relief set forth in the Complaint, and grant such other relief as the Court may deem just and proper.

Dated:  March 8, 2013
     Atlantic City, New Jersey

---

[15]     Even were Plaintiffs to argue that the tolling provision of Section 5(i) of the Clayton Act, 15 U.S.C. § 16(i) (2006), has been triggered by the filing of criminal informations against certain Defendants named in the Complaint, Compl. ¶¶ 166-79, that argument—which we would dispute—would do little to change the statute of limitations' analyses above.  First, section 5(i) tolls only Sherman Act claims, and does not affect claims under New Jersey state law, including the New Jersey Antitrust Act.  Second, the first-filed criminal information referenced in the Complaint is dated August 23, 2011.  Even if this information were to be found to have triggered tolling here, all Sherman Act claims predicated on auctions prior to August 23, 2007 still would be time-barred (i.e*.,* claims brought on behalf of Plaintiffs Gila Bauer and Son, Inc.).

50

Respectfully Submitted,

COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM, P.A.

 /s/ William J. Hughes, Jr. (WH-1924)
William J. Hughes, Jr.
1125 Atlantic Avenue
Atlantic City, NJ  08401
Tel:  (609) 572-7512
WHUGHES@cooperlevenson.com


KRAMER LEVIN NAFTALIS &
FRANKEL LLP

Eric A. Tirschwell (*pro hac vice*)
Michael J. Dell (*pro hac vice* pending)
Jennifer L. Rochon (*pro hac vice*)
Jade A. Burns (*pro hac vice*)
1177 Avenue of the Americas
New York, NY  10036
Tel:  (212) 715-9100
etirschwell@kramerlevin.com


*Counsel for Defendants M.D. Sass
Municipal Finance Partners I, L.P.,
M.D. Sass Municipal Finance Partners
II, L.P., M.D. Sass Municipal Finance
Partners III, LLC, Municipal Finance
Partners IV, LLC, M.D. Sass Municipal
Finance Partners V, LLC, M.D. Sass
Municipal Finance Partners VI, LLC,
M.D. Sass Tax Lien Management LLC,
and M.D. Sass Investor Services, Inc.*

MORGAN, LEWIS & BOCKIUS LLP

 /s/ R. Brendan Fee (RF-4838)
Steven A. Reed (*pro hac vice*)
R. Brendan Fee (RF-4838)
1701 Market Street
Philadelphia, PA  19103-2921
Tel:  (215) 963-5000
sreed@morganlewis.com


Scott A. Stempel (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 739-3000
sstempel@morganlewis.com


*Counsel for Defendants Royal Tax Lien
Services, LLC, Royal Bancshares of
Pennsylvania, Inc. and Royal Bank
America*

MASELLI WARREN, P.C.

  /s/  Perry S. Warren (PW-3509)
Perry S. Warren
David Fornal (DF-5578)
600 Alexander Road, Suite 3-4A
Princeton, NJ 08540
Tel:  (609) 452-8411
pwarren@maselliwarren.com

COVINGTON & BURLING LLP

Robert D. Wick (*pro hac vice*)
Jason C. Raofield (*pro hac vice*)
Henry B. Liu
Jonathan D. Cohen
1201 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 662-6000
rwick@cov.com

*Counsel for Defendant Plymouth Park
Tax Services, LLC*

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

  /s/ James E. Cecchi
James E. Cecchi
Zachary S. Bower
5 Becker Farm Rd.
Roseland, NJ 07068
Tel:  (973) 994-1700
jcecchi@carellabyrne.com

*Counsel for Defendants BBX Capital
Corporation and Fidelity Tax, LLC*

ROETZEL & ANDRESS

  /s/ Patricia B. Fugée (02317-1990)
Patricia B. Fugée
One SeaGate, Suite 1700
Toledo, OH 43604
Tel: 419.242.7985
pfugee@ralaw.com

Donald S. Scherzer (*pro hac vice*)
Amanda M. Knapp (*pro hac vice*)
1375 East Ninth Street
One Cleveland Center, Ninth Floor
Cleveland, OH  44114-1788
Tel: (216) 623-0150
dscherzer@ralaw.com

*Counsel for Defendant American Tax
Funding, LLC*

JACOBS & BARBONE, P.A.

  /s/ Michael F. Myers
Michael F. Myers
Edwin J. Jacobs, Jr.
1125 Pacific Avenue
Atlantic City, NJ 08401
Tel: (609) 348-1125
jacobsbarbone@comcast.net

*Counsel for Defendants Joseph Wolfson,
Richard Simon Trustee, and Betty Simon
Trustee, LLC.*

BELLIN & ASSOCIATES LLC

 /s/ Aytan Y. Bellin (AB-0123)
Aytan Y. Bellin
85 Miles Avenue
White Plains, NY 10606
Tel:  (914) 358-5345
Aytan.bellin@bellinlaw.com


SCHLAM STONE & DOLAN LLP

Jeffrey M. Eilender
John M. Lundin
26 Broadway
New York, New York 10004
Tel:  (212) 344-5400
JME@schlamstone.com

*Counsel for Defendant Mooring Tax*
*Asset Group, LLC*

53

# EXHIBIT A

# CERTIFICATE OF SALE

### FOR UNPAID MUNICIPAL LIENS

| CERTIFICATE |
| --- |
| No.  04-074 |

I, _____ Janet E. Kelk _____, COLLECTOR OF TAXES of the taxing district of the Borough _____ of _____ Somerville _____ and State of New Jersey, do hereby certify that on the 6th day of _____ October _____ 2004 at a public sale of lands for delinquent municipal liens, pursuant to the Revised Statutes of New Jersey, 1937, Title 54, Chapter 5, and the amendments and supplements thereto I sold to _____ Crusader Servicing Corporation _____ whose address is _____ 179 Washington Lane, Jenkintown, PA 19046 _____ for One hundred forty three thousand one hundred eighty three and 47 cents, the land in said taxing district described as Block No. _____ 1 _____ Lot No. _____ 4.01 _____ and known as _____ 50 Kirby Ave, Somerville, NJ 08876 _____, on the tax duplicate thereof and assessed thereon to _____ Kirby Ave Realty c/o L. Berger _____

## THE AMOUNT OF THE SALE WAS MADE UP OF THE FOLLOWING ITEMS:

| | AMOUNT | INTEREST | TOTAL |
| --- | --- | --- | --- |
| **Taxes For:** 2003 | | | |
| **Other Municipal Charges (Liens)** | 118,836.89 | 24,246.58 | 143,083.47 |
| **Sewer Service Charges** | | | |
| **Water Service Charges** | | | |
| **Assessments For Improvements** | | | |
| | | **TOTAL COSTS OF SALE** | 100.00 |
| | | **TOTAL AMOUNT OF SALE** | 143,183.47 |

BRETT A. RADI COUNTY CLERK
SOMERSET COUNTY, NJ
2004 NOV 09 11:22:23 AM
BK:5669 PG:3115-3117
INSTRUMENT # 2004093336

2004093336

| PREMIUM (IF ANY) PAID $ | na |
| --- | --- |

Said sale is subject to redemption on repayment of the amount of sale, together with interest at the rate of _____ 18% _____ per centum per annum from the date of sale, and the costs incurred by the purchaser as defined by statute. The sale is subject to municipal charges accruing after _____ 12-31-2003 _____, _____; municipal authority charges accruing after _____ 12-31-2003 _____, _____ and assessment installments not yet due, amounting to _____ na _____ dollars and interest thereon.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _____ 8th _____ day of _____ October _____, 2004 _____

STATE OF NEW JERSEY
COUNTY OF: Somerset

*Janet E. Kelk*
Janet E. Kelk, CMFO/CTC, COLLECTOR OF TAXES

BE IT REMEMBERED, that on this _____ 12th _____ day of _____ October _____ 2004 _____ before me a _____ Notary Public _____ of New Jersey, personally appeared _____ Janet E. Kelk _____ the Collector of Taxes of the taxing district of _____ Somerville _____ in the County of _____ Somerset _____, who, I am satisfied, is the individual described herein, and who executed the above Certificate of Sale; and I having made known to him the contents thereof, he thereupon acknowledged to me that he signed, sealed and delivered the same as his voluntary act and deed, for the uses and purposes therein expressed.

Prepared By: *Janet E. Kelk*
Janet E. Kelk, CMFO/CTC , PREPARER

*Shirley Sibilia*
SHIRLEY SIBILIA
NOTARY PUBLIC OF NEW JERSEY NOTARY PUBLIC
My Commission Expires July 18, 2006

NOTE: NJSA 46:15-3 requires that all signatures appearing on the certificate, those of the officer and the Notary Public who takes this acknowledgement, and the preparer shall be printed, typed or stamped underneath such signature the name of the person that signed.

DLGS Rev. 10/99