# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket<br><br>No. 3:12-CV-01893-MAS-TJB<br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF
## M.D. SASS DEFENDANTS' MOTION TO DISMISS

KL3 2917356.3

i

## TABLE OF CONTENTS

|  | Page |
|---|---|
| THE M.D. SASS DEFENDANT ALLEGATIONS | 1 |
| ARGUMENT | 4 |
| CONCLUSION | 6 |

The Joint Motion to Dismiss highlights the multiple pleading deficiencies that support dismissal of all claims as to all Defendants. This separate motion is submitted to highlight the Complaint's pleading deficiencies as to each of the eight separate M.D. Sass corporate defendants: M.D. Sass Municipal Finance Partners I, L.P. ("M.D. Sass I"), M.D. Sass Municipal Finance Partners II, L.P. ("M.D. Sass II"), M.D. Sass Municipal Finance Partners III, LLC ("M.D. Sass III"), Municipal Finance Partners IV, LLC ("M.D. Sass IV"), M.D. Sass Municipal Finance Partners V, LLC ("M.D. Sass V"), M.D. Sass Municipal Finance Partners VI, LLC ("M.D. Sass VI"), M.D. Sass Tax Lien Management LLC. ("M.D. Sass Tax Lien Management"), and M.D. Sass Investor Services, Inc. ("M.D. Sass").

**THE M.D. SASS DEFENDANT ALLEGATIONS**

As explained in greater detail in the Joint Motion to Dismiss, the five named Plaintiffs allege in conclusory fashion that at six different auctions their tax liens were purchased "at 18% interest pursuant to the conspiracy alleged herein." Compl. ¶¶ 17-27. Only three of the five named Plaintiffs allege that an M.D. Sass entity purchased their particular liens—but in each case, it is the same entity— M.D. Sass V. Compl. ¶¶ 19 (Davies), 21 (Jacobs) and 24 (Schmidts). No Plaintiff alleges that any other M.D Sass entity purchased their respective liens.

Later in the Complaint, Plaintiffs include fourteen paragraphs about M.D. Sass entities and former employees. Compl. ¶¶ 67-81. As to M.D. Sass I, II,

1

III, IV, V and VI, the Complaint alleges as to each, in conclusory fashion, that it "purchased TSCs at public auctions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein." Compl. ¶¶ 69-74. Nowhere does the Complaint include any individualized or particularized allegation that any of these M.D. Sass entities—M.D. Sass I, II, III, IV or VI—ever entered into an unlawful agreement or purchased a single tax lien in an illegal manner.

Plaintiffs also name as Defendants two other M.D. Sass entities: M.D. Sass and M.D. Sass Tax Lien Management. Compl. ¶¶ 67, 68. Plaintiffs allege that these two entities "participated in tax lien auctions" by purchasing (either directly or through a subsidiary) "TSCs at public auctions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein." *Id.* As to M.D. Sass Tax Lien Management, the Complaint alleges that it "acts as the general partner to" M.D. Sass I, II, III, IV, V and VI. Compl. ¶ 68. As to M.D. Sass, the Complaint claims that certain alleged former officers or employees—including one individual who allegedly had "primary responsibility for M.D. Sass' tax liens business" (defendant Jessani) and another individual who allegedly "oversaw, supervised and directed the purchase of TSCs by M.D. Sass in the State of New Jersey" (defendant Hruby) —"participated in, had knowledge of, and/or specifically authorized M.D. Sass' participation in the conspiracy alleged herein" and "personally attended public tax lien auctions in the State of New Jersey and

2

colluded with other bidders at these auctions during the Class Period." Compl. ¶¶ 67-68, 76-77.

The Complaint alleges that Defendants Jessani and Hruby, along with two other alleged former M.D. Sass employees and "Sass" (defined collectively to include all eight M.D. Sass entity defendants, Compl. ¶ 75), would "agree prior to the beginning of the auctions at which they were present[] which liens each of the Defendant auction attendees would be allocated." Compl. ¶ 80. The Complaint does not in any way connect any of these individual alleged former M.D. Sass employees to any of the auctions at which the named Plaintiffs' TSCs were sold.

The Complaint references seven "example" auctions, and claims that the collective Defendant "Sass" was present and colluded at each one with other Defendants, but does not specify which if any of the eight different entities comprising "Sass" is alleged to have been involved. Compl. ¶ 154. Other paragraphs similarly refer to defendant "Sass" without any differentiation. *Id.* ¶¶ 149, 155.

Last, the Complaint states that a single alleged former M.D. Sass employee, Stephen Hruby, pled guilty to violating the Sherman Act. Compl. ¶ 176. But the cited charging document references no specific auction—and certainly not any of the auctions at which the named Plaintiffs' TSCs were sold—alleging instead without any specificity that he entered into a conspiracy from December

3

2002 until February 2009 to submit "non-competitive and collusive bids at *certain* public auctions for tax liens conducted by municipalities within the District of New Jersey." *Id.* (emphasis added).[1]

## ARGUMENT

As set forth in the Joint Motion to Dismiss (at 10-14), in order to survive dismissal of a complaint, Plaintiffs must establish their own individual standing to bring their claims for relief and also must satisfy the pleading requirements of Fed. R. Civ. P. 8(a) and 9(b). Among other things, these pleading fundamentals require that Plaintiffs sufficiently allege that they personally have been injured by the actions of specific Defendants and also require that they differentiate among Defendants by not "lumping" them together. Plaintiffs' conclusory and collective pleading as to the eight M.D. Sass entities fails to satisfy these requirements.

First, the Complaint fails to allege *any* specific conduct (much less wrongful conduct) as to M.D. Sass I, M.D. Sass II, M.D. Sass III, M.D. Sass IV,

---

[1] The Complaint references a civil case in Illinois involving four of the eight M.D. Sass entities named as defendants here and allegations relating to tax lien auctions in Cook County. Compl. ¶¶ 182-86. The Complaint misdescribes the dispute there, which related to a "single simultaneous bidder rule" unique to Cook County. More importantly, these paragraphs about entirely unrelated auctions in another state add nothing to the analysis of whether Plaintiffs adequately have alleged their claims as to collusion at New Jersey tax lien auctions. The jury's verdict in the Cook County case is on appeal in the Seventh Circuit.

4

M.D. Sass VI, and M.D. Sass Tax Lien Management. The only defendant-specific factual allegations as to each of these entities occurs in the section of the Complaint dedicated to briefly describing each Defendant. *See* Compl. ¶¶ 68-72, 74. While the Complaint alleges some minimal background information, such as place of business and formation date, the only conduct specifically attributed to these six entities is the single conclusory allegation that each "purchased TSCs at public auctions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein." *Id.* This is insufficient to establish standing or state a claim for relief as to any of these six defendants.[2]

As to M.D. Sass V, the only additional allegations are that this corporate entity purchased the liens of three of the named Plaintiffs at an 18% rate of redemption. But there are no non-conclusory allegations that M.D. Sass V did anything wrong at any of these auctions, and an interest rate on a single lien at the statutory default rate of 18% is not in and of itself indicative of collusion or wrongdoing. As the Joint Motion to Dismiss makes clear, the Complaint also fails to plausibly allege the who, what, when and where of any agreement to collude at

---

[2] Plaintiffs' naming of all six M.D. Sass entities that ever purchased tax liens illustrates the problems and abuses of Plaintiffs' conclusory group pleading approach. Defendant M.D. Sass I ceased purchasing new tax liens in 1997, prior to the beginning of the putative class period and years before any named Plaintiffs' tax liens were purchased, and so could never be a part of this case. The same is true of defendant M.D. Sass III, which purchased only a limited number of tax liens in Asbury Park directly from the municipality *and not at auction*.

any of the named Plaintiffs' auctions. Joint Motion to Dismiss, at 14-15. Accordingly, Plaintiffs also fail to establish standing or state a claim as to M.D. Sass V.

As to M.D. Sass (as well as the seven other M.D. Sass entities), the Complaint does not plausibly or specifically connect M.D. Sass to any of the six auctions at which named Plaintiffs' tax liens were sold, and as shown in the Joint Motion (at 14-15) the Complaint also does not adequately allege the single overarching conspiracy. The same standing and pleading deficiencies therefore require dismissal as to M.D. Sass.

Finally, the Complaint is not saved as to any M.D. Sass entity by virtue of the collective pleading allegations as to "Sass." None of those allegations properly or plausibly attributes any wrongful conduct to or differentiates among any of the individual M.D. Sass Defendants.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Motion to Dismiss, the eight M.D. Sass Defendants respectfully request that the Court dismiss all claims for relief against them with prejudice.


Dated:  March 8, 2013
        Atlantic City, New Jersey

Respectfully Submitted,

COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM, P.A.

  /s/ William J. Hughes, Jr. (WH-1924)
William J. Hughes, Jr.
1125 Atlantic Avenue
Atlantic City, NJ  08401
Tel:  (609) 572-7512
WHUGHES@cooperlevenson.com


KRAMER LEVIN NAFTALIS &
FRANKEL LLP

Eric A. Tirschwell (*pro hac vice*)
Michael J. Dell (*pro hac vice* pending)
Jennifer L. Rochon (*pro hac vice*)
Jade A. Burns (*pro hac vice*)
1177 Avenue of the Americas
New York, NY  10036
Tel:  (212) 715-9100
etirschwell@kramerlevin.com

*Counsel for Defendants M.D. Sass Municipal Finance Partners I, L.P., M.D. Sass Municipal Finance Partners II, L.P., M.D. Sass Municipal Finance Partners III, LLC, Municipal Finance Partners IV, LLC, M.D. Sass Municipal Finance Partners V, LLC, M.D. Sass Municipal Finance Partners VI, LLC, M.D. Sass Tax Lien Management LLC, and M.D. Sass Investor Services, Inc.*

7