## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket No. 3:12-CV-01893-MAS-TJB |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PHOENIX FUNDING'S AND BENEDICT CAIOLA'S MOTION TO DISMISS THE COMPLAINT

---

**WALDER, HAYDEN & BROGAN, P.A.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 992-5300
Attorneys for Defendants
Phoenix Funding, Inc. and Benedict Caiola

Of Counsel and on the Brief
Justin P. Walder
Shalom D. Stone
Robert J. Donaher

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**..............................................................................1

**THE COMPLAINT'S ALLEGATIONS AGAINST PHOENIX AND CAIOLA** ............................................................................................................ 2

**ARGUMENT** ..................................................................................................... 6

    **THE COMPLAINT LACKS THE SPECIFIC FACTUAL ALLEGATIONS NECESSARY TO SUPPORT THE CONCLUSION THAT DEFENDANTS PHOENIX OR CAIOLA JOINED AN OVERARCHING, 11-YEAR, 6,000-AUCTION CONSPIRACY.**.................. 6

**CONCLUSION** ..................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ..................................................................................... passim

In re Parcel Tanker Shipping Servs. Antitrust Litigation,
    541 F. Supp. 2d 487 (D. Conn. 2008) ................................................................. 9

In re Travel Agent Comm'n Antitrust Litigation,
    583 F.3d 896 (6th Cir. 2009) ............................................................................. 9

MDNet, Inc. v. Pharmacia Corp.,
    147 Fed. Appx. 239 (3rd Cir. 2005) ................................................................... 6

Total Benefits Planning Agency v. Anthem Blue Cross and Blue Shield,
    552 F.3d 430 (6th Cir. 2008) ............................................................................. 9

Tredennick v. Bone,
    647 F. Supp. 2d 495 (W.D. Pa. 2007),
    aff'd, 323 Fed. Appx. 103 (3d Cir. 2008) .......................................................... 7

**Statutes**

15 U.S.C. §1 ........................................................................................................... 4

**Rules**

Fed. Civ. R. P. 12(b)(6) ..................................................................................... 1, 11

Fed. Civ. R. P. 8(a) ............................................................................................ 1, 11

Fed. Civ. R. P. 9(b) ............................................................................................ 1, 11

Fed. R. Evid. 201(b)(2) .......................................................................................... 4

## PRELIMINARY STATEMENT

Defendants Phoenix Funding, Inc. ("Phoenix") and Benedict Caiola ("Caiola") have recently been dragged into this enormous, consolidated antitrust class action conspiracy case, without plaintiffs having alleged when, how, or through whom Phoenix or Caiola joined that conspiracy.

What is the plaintiffs' alleged factual basis for including Phoenix in the 11-year, state-wide, 48-member conspiracy to fix interest rates at 6,000 auctions?  A single auction, 13 years ago, at which Phoenix purchased two Tax Sale Certificates ("TSCs"), neither of which involved the named plaintiffs.  Neither Twombly[1] nor Rule 9(b) is satisfied by such pleadings.

And what is the plaintiffs' alleged factual basis for including Caiola in that overarching conspiracy?  Nothing at all.

Unlike other defendants, neither Phoenix nor Caiola have been charged with any criminal offense.  Unlike other defendants, neither Phoenix nor Caiola are alleged to have attended all – or even most – of the tax lien auctions during the Class Period.

Defendants Phoenix and Caiola therefore move to dismiss the Complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558-59 (2007).

In addition to the arguments below, defendants Phoenix and Caiola join in the Defendants' Joint Motion to Dismiss. The arguments set forth in the Memorandum of Law in support of that Joint Motion ("Joint Memorandum") are incorporated herein by reference.

### THE COMPLAINT'S ALLEGATIONS AGAINST PHOENIX AND CAIOLA

Although the plaintiffs' Consolidated Master Class Action Complaint ("Complaint") spans 79 pages and 238 paragraphs, there is little mention of either Phoenix or Caiola, and virtually no allegations against them with any factual specificity.

The Complaint alleges that the 48 defendants (and countless unnamed co-conspirators, Complaint at ¶132) collectively "engaged in an **overarching** conspiracy during the Class Period that included allocating which TSC each conspirator would bid on and hence 'win' at an auction." Complaint at ¶9 (emphasis added). As set forth in the Joint Memorandum, however, the Complaint fails to include any facts to support the allegation that the 48 defendants engaged in an "overarching" conspiracy that spanned 11 years, 566 municipalities, and 6,000 auctions.

The Complaint's sole allegations as to Phoenix and Caiola are even more conclusory and less specific than the allegations as to many other defendants, and date back to June 2000 – almost 13 years ago. The Complaint repeats the generic

mantra that Phoenix and Caiola, together with the other defendants, "participated in an illegal agreement and/or understanding ... to rig bids for municipal tax liens at public tax lien auctions throughout the State of New Jersey which they attended during the Class Period." Id. at ¶¶43, 56, 63, 79, 83, 88, 97, 104, 111, 121, 125, 129.   But the only allegations specific to Phoenix and Caiola are as follows:

> 108. Defendant **Benedict Caiola** is an individual residing at 191 Glen Road, Mountainside, New Jersey. Defendant **Caiola** is the President of **Phoenix Funding**. Defendant **Caiola** attended public TSC auctions throughout the State of New Jersey during the Class Period and participated in the conspiracy alleged herein.
>
> 109. Specifically, Defendants **Phoenix Funding and Caiola** participated in an illegal agreement and/or understanding with Defendants CCTS, Farber, Butler, Plymouth Park, Crusader, Stein, Jeffrey, Mooring, Sass, Jessani, Hruby, Rothman, BankAtlantic, Branse, Deluca, ATF, De Laurentis, Simon, Wolfson, Fountain of Life, Esposito, Boudwin, Collins, May, Pisciotta, to rig bids for municipal tax liens at public tax lien auctions throughout the State of New Jersey which they attended during the Class Period. Not every Defendant attended every tax lien auction in the State of New Jersey during the Class Period....
>
> 110. As a result of this agreement and/or understanding, the Defendants, including **Phoenix Funding and Caiola**, would, among other things, agree prior to the beginning of the auctions at which they were present, which liens each of the Defendant auction attendees would be allocated. Such representatives of **Phoenix Funding** who would engage in such discussions and agreements and/or understandings with other Defendants were defendant **Benedict Caiola and Phoenix Funding** employee Geza Eckert....
>
> . . .

3

154. ... a few representative auctions demonstrate the way the conspiracy functioned and impacted the market for TSCs in the state....

    a. Defendants attending an auction in Lincoln Park, New Jersey on June 28, 2000 agreed, prior to the auction, to "pick" the liens on which they would each bid prior to the auction. Defendants Sass, Crusader, **Phoenix Funding** and Rothman all selected certain liens, and each such bid was ultimately "won" by the selecting Defendant despite the presence of other attendees at the auction. At least 15 TSCs were up for auction, and all were sold at the statutory maximum bid of 18 percent.

Complaint at ¶¶ 108-110, 154 (emphases added).

    Significantly, some allegations in the Complaint concern defendants ***other than*** Phoenix and Caiola.  For example:

- The Complaint alleges that 11 of the defendants – eight individuals and three entities – pleaded guilty to violating the Sherman Act (15 U.S.C. §1) and admitted to participating in a conspiracy to rig bids at New Jersey tax lien auctions.  Complaint at ¶¶ 11, 40, 59, 77, 81, 85, 119, 123, 127, 131, 166, 170-180.  It is undisputed and a matter of public record, Fed. R. Evid. 201(b)(2), that neither Phoenix nor Caiola has been charged with any criminal offense, let alone pled guilty.

- The Complaint alleges that "[o]ften, the largest bidders - Plymouth Park, Sass, Crusader, BankAtlantic, and ATF - would have first picks

4

over the liens up for auction." Complaint at ¶110. Neither Phoenix nor Caiola are mentioned.

- The Complaint alleges that defendants Sass and Crusader brought new lien purchasers into the conspiracy. Complaint at ¶152. Neither Phoenix nor Caiola are mentioned.

- The Complaint alleges that, at some auctions, defendant Collins was a "conduit of information" from the "larger" lien investors ("like [defendants] Crusader, Sass, Plymouth Park, BankAtlantic, and ATF") to "smaller" participants such as defendants Farber and Butler. Complaint at ¶156. Neither Phoenix nor Caiola are mentioned.

- The Complaint acknowledges that Phoenix and Caiola did not attend every tax lien auction in New Jersey during the Class Period. Complaint at ¶38 ("While not every Defendant attended every tax lien auction in the State of New Jersey during the Class Period, the largest Defendants - Plymouth Park, Sass, Crusader, BankAtlantic, and ATF - attended most, if not all auctions during the Class Period….").

- The Complaint alleges that the Sass Defendants have a history of collusion in tax lien auctions outside New Jersey. Complaint at ¶¶182-186. Neither Phoenix nor Caiola are alleged to have bid at tax

lien auctions outside New Jersey, let alone been involved in collusion at such auctions.  <u>Id.</u>

## ARGUMENT

**THE COMPLAINT LACKS THE SPECIFIC FACTUAL ALLEGATIONS NECESSARY TO SUPPORT THE CONCLUSION THAT DEFENDANTS PHOENIX OR CAIOLA JOINED AN OVERARCHING, 11-YEAR, 6,000-AUCTION CONSPIRACY.**

Under Rule 8(a), the plaintiffs must allege an antitrust conspiracy that is not just "conceivable" but "plausible."  <u>Twombly</u>, 550 U.S. at 570.  The plaintiffs, therefore, must do more than offer "labels and conclusions" and "a formulaic recitation of the elements of a cause of action."  <u>Id.</u> at 555.  Rather, the plaintiffs must allege "enough factual matter (taken as true) to suggest that an agreement was made."  <u>Id.</u> at 556.  <u>See generally</u> Joint Memorandum at 10-12.

The Complaint must also meet the requirements of Rule 9(b).  <u>See</u> Joint Memorandum at 12-14.  Thus, the Complaint must set forth, with particularity, "the who, what, when, where, and how" of the alleged conspiracy and the alleged conduct.  <u>Id.</u>  Moreover, the Complaint must satisfy Rule 9(b) with respect to **each defendant**.  <u>Id.</u>  <u>See</u> <u>MDNet, Inc. v. Pharmacia Corp.</u>, 147 Fed. Appx. 239, 245 (3rd Cir. 2005) ("When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant."); <u>Tredennick v. Bone</u>, 647 F. Supp. 2d 495, 501 (W.D. Pa. 2007),

aff'd, 323 Fed. Appx. 103 (3d Cir. 2008) ("A complaint that 'lumps' together numerous defendants does not provide sufficient notice of which defendants" allegedly engaged in the fraudulent conduct).

In this case, the Complaint not only lacks specific factual assertions that plausibly support the *existence* of an overarching conspiracy, see Joint Memorandum at Point I(A)(3), but the Complaint also lacks specific factual allegations that plausibly support the notion that defendants Phoenix or Caiola *were a part of* such a conspiracy.  Id. at Point I(A)(4).

Although the Complaint repeats (and repeats and repeats) the conclusory assertion that Phoenix and Caiola "participated in an illegal agreement and/or understanding," the Complaint nonetheless fails to allege any facts to support that naked conclusion.  Nowhere does the Complaint divulge, for example, which person(s) on behalf of Phoenix (on the one hand) and which other conspirator(s) (on the other hand) allegedly entered into such an "agreement or understanding" – or when, or where, or how.  Indeed, the Complaint fails to allege any specific communication – conspiratorial or otherwise – between Phoenix (or Caiola) and any other defendant.

There is only one tax lien auction mentioned in the Complaint in which Phoenix is alleged to have participated.  According to the Complaint, Phoenix attended an auction in Lincoln Park, New Jersey, almost 13 years ago, and

allegedly bought two liens at an 18% interest rate, pursuant to a collusive agreement with three other defendants (Sass, Crusader, and Rothman). Complaint at ¶154(a). There is no suggestion in the Complaint that any of the named plaintiffs owned any of the liens auctioned that day. Id. There is no suggestion that Phoenix agreed that day to enter into an "illegal agreement and/or understanding" to fix interest rates at any auction **other than** the Lincoln Park auction. Id. And as to Caiola, there is no suggestion that he was even at the Lincoln Park auction, or ever discussed that auction with any other defendant. Id. In sum, the allegations concerning Lincoln Park – a single auction, some 13 years ago, at which Phoenix purchased two TSCs, neither of which involved a named plaintiff – are insufficient to tie Phoenix (or Caiola) to the overarching conspiracy as alleged in the Complaint.

Twombly and its progeny make clear that a complaint alleging an antitrust conspiracy will be dismissed unless it contains specific allegations tying ***each defendant*** to the alleged conspiracy.

> The complaint here furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place.... [A] defendant seeking to respond to Plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin.

Twombly, 550 U.S. at 565, n. 10 (internal citations omitted). In Twombly itself, for example, the Supreme Court criticized the complaint because, "[a]part from

identifying a seven-year span in which the § 1 violations were supposed to have occurred…[,] the pleadings mentioned no specific time, place or person involved in the alleged conspiracies…." <u>Id.</u>

> The Sixth Circuit rejected a pleading with similar shortcomings:

> > The allegations in the amended complaint fall significantly short of the required pleading threshold…. [N]owhere did Plaintiffs allege when Defendants joined the Anthem conspiracy, where or how this was accomplished, and by whom or for what purpose…. The time period for the conspiracy is generally stated as 'since September 2004,' but Plaintiffs give no explanation of where or when during this multiple-year time frame any unlawful agreements or understandings might have occurred. Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*…. Plaintiffs only offer bare allegations without any reference to the 'who, what, where, when, how or why.'

<u>Total Benefits Planning Agency v. Anthem Blue Cross and Blue Shield</u>, 552 F.3d 430, 436-437 (6th Cir. 2008).  <u>See also</u> <u>In re Travel Agent Comm'n Antitrust Litigation</u>, 583 F.3d 896, 910 (6th Cir. 2009) (dismissing antitrust complaint under <u>Twombly</u>; complaint "[did] not cite any specific meetings that involved [the] two remaining defendants"); <u>In re Parcel Tanker Shipping Servs. Antitrust Litigation</u>, 541 F. Supp. 2d 487, 491-492 (D. Conn. 2008) ("[T]he complaint alleges general conspiratorial activity without reference to specific actions by a particular defendant at a particular time…. No where does the complaint cite to specific wrongful acts of specific defendants…. This lack of specifics with respect to the

acts of a particular defendant or defendants renders the complaint inadequate after [*Twombly*].”).

In this case, the Complaint fails to allege when, or how, or through whom, Phoenix (or Caiola) joined the alleged 11-year, 48-member conspiracy to rig thousands of auctions in 566 municipalities.  The Complaint also fails to allege that Phoenix (or Caiola) ever purchased a TSC on property owned by a named plaintiff. The Complaint also fails to specify any collusive communication between Phoenix (or Caiola) and any other defendant (except as to one 13-year-old auction).

Unlike other defendants, neither Phoenix nor Caiola has been charged with any criminal offense.   Unlike other defendants, neither Phoenix nor Caiola is alleged to have attended all – or even most – of the tax lien auctions during the Class Period.  Since the allegations concerning the June 2000 Lincoln Park auction are the only specific factual allegations in the Complaint concerning Phoenix or Caiola, and since those allegations are clearly insufficient to sustain plaintiffs’ conclusion that Phoenix and Caiola entered into the alleged overarching conspiracy, the Complaint should be dismissed as to Phoenix and Caiola.

## **CONCLUSION**

For the reasons set forth above, the Complaint fails to satisfy Rules 8(a), 9(b), and 12(b)(6).   As a result, and for the additional reasons set forth in the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss, the Complaint should be dismissed as to defendants Phoenix and Caiola.

WALDER, HAYDEN & BROGAN, P.A.
5 Becker Farm Road
Roseland, New Jersey 07068
Attorneys for defendants
Phoenix Funding, Inc. and Benedict Caiola

By:    */s/ Shalom D. Stone*
       SHALOM D. STONE

Dated: March 8, 2013