UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| *IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION* | Master Docket No. 3:12-CV-1893-MAS-TJB<br><br>**Oral Argument Requested** |

**BRIEF OF DEFENDANTS ROYAL TAX LIEN SERVICES, LLC, ROYAL BANCSHARES OF PENNSYLVANIA AND ROYAL BANK AMERICA IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED MASTER CLASS ACTION COMPLAINT**

Scott A. Stempel (*pro hac vice*)
sstempel@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 739-3000
Facsimile: (202) 739-3001

Steven A. Reed (*pro hac vice*)
sreed@morganlewis.com
R. Brendan Fee  (RF-4838)
bfee@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:  (215) 963-5000
Facsimile:   (215) 963-5001

*Counsel for the Defendants*
**ROYAL TAX LIEN SERVICES, LLC, ROYAL BANCSHARES OF PENNSYLVANIA, INC. AND ROYAL BANK AMERICA**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND ............................................................................................2

LEGAL ARGUMENT .......................................................................................................5

I.    Plaintiffs' Complaint Fails to Plausibly Allege Claims Against RBA and RBSP as a Matter of Law. ..........................................................................5

    A.    The Complaint Fails to Adequately Allege That RBSP or RBA Directly Participated In The Alleged Conspiracy ..............................5

    B.    The Complaint Fails to Allege Facts Sufficient to Pierce the Corporate Veil ........................................................................................6

II.    The Complaint Fails to Plead Facts Plausibly Demonstrating that RTLS Participated in the Purported Conspiracy. .........................................11

CONCLUSION ................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Bell, Inc. v. Fed'n of Tel. Workers of Pa.*,
　736 F.2d 879 (3d Cir. 1984) ................................................................................... 7

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*,
　456 U.S. 556 (1982) ............................................................................................. 13

*Arch v. Am. Tobacco Co.*,
　984 F.Supp. 830 (E.D. Pa. 1997) ......................................................................... 11

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ............................................................................................. 13

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 554 (2007) ............................................................................................. 13

*CCPI Inc. v. Am. Premier, Inc.*,
　967 F. Supp. 813 (D. Del. 1997) ............................................................................ 1

*Craig v. Lake Asbestos of Quebec, Ltd.*,
　843 F.2d 145 (3d Cir. 1988) ................................................................................... 8

*Flores v. HSBC ABC Co. 1-10*,
　2012 U.S. Dist. LEXIS 90673 (D.N.J. June 28, 2012) ......................................... 7

*Fowler v. UPMC Shadyside*,
　578 F.3d 203 (3d Cir. 2009) ............................................................................ 6, 11

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
　2004 U.S. Dist. LEXIS 29586 (D.N.J. Oct. 26, 2004) .......................... 7, 8, 9, 10

*In re Burlington Coat Factory Secs. Litig.*,
　114 F.3d 140 (3d Cir. 1997) ................................................................................... 4

*In re Chocolate Confectionary Antitrust Litig.*,
　641 F. Supp. 2d 367 (M.D. Pa. 2009) .................................................................... 7

*In re Latex Gloves Prods. Liab. Litig.*,
　2001 U.S. Dist. LEXIS 12757 (E.D. Pa. Aug. 22, 2001) ...................................... 9

*In re Pa. Title Ins. Antitrust Litig.*,
  648 F. Supp. 2d 663 (E.D. Pa. 2009)............................................................5, 6

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  566 F. Supp. 2d 363 (M.D. Pa. 2008)...............................................................5

*In re Tutu Wells Contamination Litig.*,
  909 F. Supp. 1005 (D.V.I. 1995).....................................................................10

*McCray v. Fid. Nat'l Title Ins. Co.*,
  636 F. Supp. 2d 322 (D. Del. 2009) ............................................................5, 6

*Noto v. Cia Secula di Armanento*,
  310 F. Supp. 639 (S.D.N.Y. 1970) .................................................................10

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001)....................................................................7, 8, 9

*Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*,
  836 F.2d 173 (3d Cir. 1988)...........................................................................12

*Slack v. Suburban Propane Partners, L.P.*,
  2010 U.S. Dist. LEXIS 135530 (D.N.J. Dec. 22, 2010) ...................................8

*Wrist Worldwide Trading GMBH v. MV Auto Banner*,
  2011 U.S. Dist. LEXIS 35722 (D.N.J. Mar. 30, 2011) ......................................9

# INTRODUCTION

Plaintiffs' Consolidated Master Class Action Complaint ("Complaint" or "CMCAC") relies entirely on conclusory allegations and indiscriminate group pleading in an effort to attribute the guilty pleas of wholly distinct individuals and corporate entities to Defendants Royal Tax Lien Services, LLC ("RTLS"), Royal Bancshares of Pennsylvania, Inc. ("RBSP") and Royal Bank America ("RBA") and to thereby impose upon those Defendants the significant burden and cost of antitrust litigation.  Such generalized allegations, which one court in this Circuit described as "simply cry[ing] 'antitrust' or 'Sherman Act' in a crowded courtroom…occupy[ing] [their] opponents[,]" *CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 816 (D. Del. 1997), embody precisely the type of pleading strategy that the Supreme Court, the Third Circuit and innumerable trial courts have found to be impermissible.

Plaintiffs' claims against RTLS, RBSP and RBA are defective as a matter of law and should be dismissed for the following reasons:

First, Plaintiffs have failed to come forward with factual allegations sufficient to give rise to a plausible inference of liability on the part of RBSP or RBA, the direct and indirect parents of RTLS and Crusader Servicing Corporation ("Crusader").  Plaintiffs have not pleaded – nor could they ever plead – that either RBSP or RBA are liable for the antitrust conspiracy they posit on a theory of direct

involvement, which, in this Circuit, requires facts demonstrating that those companies *themselves* entered into unlawful agreements.  Nor have Plaintiffs alleged facts sufficient to pierce the corporate veil as to RBSP and RBA.  Instead, with respect to RBSP and RBA, Plaintiffs simply allege partial ownership, and rely upon conclusory assertions of domination and control coupled with factually unsupported claims of activity consistent with normal interaction among related companies.  Such allegations simply are not enough to establish an alter ego relationship and thus to impose liability on RBSP and RBA.

Second, Plaintiffs' allegations concerning RTLS's supposed participation in the alleged bid-rigging conspiracy are too conclusory and too few to give rise to a plausible inference of liability.  That obvious and dispositive defect cannot be overcome by Plaintiffs' improper grouping of RTLS with separate and distinct persons and legal entities who have entered guilty pleas.  Nearly identical efforts to use generic catch-all allegations to disguise otherwise inadequate pleading are routinely rejected and Plaintiffs' allegations as to RTLS should be no exception.

## FACTUAL BACKGROUND

Plaintiffs bring this putative class action asserting federal and state antitrust claims and claims under New Jersey state law against dozens of Defendants arising out of a supposed bid-rigging conspiracy with respect to tax sale certificates ("TSCs") sold at auctions throughout New Jersey.  *See* CMCAC at ¶¶ 1, 9.  The

details of Plaintiffs' conspiracy allegations, and the reasons that those allegations are defective as a matter of law as to all Defendants, are described in Defendants' Joint Brief in Support of Motion to Dismiss (Docket No. 174) (hereinafter, "Joint Brief"), which is incorporated herein by reference.

Among the Defendants Plaintiffs have named in this action is RBSP, a publicly traded Pennsylvania corporation. CMCAC at ¶ 47. RBSP is the parent company of Defendant RBA, and, according to Plaintiffs, RBSP and RBA share a common chairman and board of directors. *Id.* at ¶ 48. RBA owns 60 percent of Defendant Crusader and 60 percent of RTLS. *Id.* at ¶¶ 49, 50. The remaining interests in Crusader and RTLS allegedly were owned by Defendant Robert Stein ("Stein"), *see id.*, who pleaded guilty to rigging "certain" of the thousands of municipal auctions that took place during the time period covered by Plaintiffs' Complaint. *Id.* at ¶¶ 117, 174. In the Complaint, Plaintiffs refer to Crusader, RTLS, RBSP and RBA collectively as the "Crusader Defendants" or as "Crusader" without distinguishing among them. *Id.* at ¶ 51.

Plaintiffs allege no facts suggesting that RTLS participated in the alleged conspiracy they posit, and they group RTLS with Crusader in an implicit attempt to attribute Crusader's guilty plea to RTLS (despite the fact that RTLS did not exist until 2006). Plaintiffs, however, ignore the content of Crusader's plea agreement with the Department of Justice Antitrust Division, which states that the

Justice Department "will not bring criminal charges against…RTLS." *See* Crusader Plea Agreement attached as Ex. "A" at ¶ 2.[1]

Plaintiffs' allegations as to RBSP and RBA are equally sparse. Aside from mere partial (and, in the case of RBSP, indirect) ownership of RTLS and Crusader, Plaintiffs premise their claims primarily on the conclusory allegation that RBSP and RBA "directly or through a subsidiary and/or affiliate under [their] control purchased TSCs at public auctions" pursuant to the alleged conspiracy. CMCAC at ¶¶ 47-48. Plaintiffs also offer the factually unsupported allegations that RBSP and RBA "dominated and controlled the finances and decision making processes" of Crusader and RTLS and that major TSC purchases by those entities were funded by and needed the approval of RBSP and RBA. *Id.* at ¶¶ 47, 54.

Such allegations are plainly inadequate to support claims against RTLS, RBA and RBSP, and Plaintiffs' claims against those entities should be dismissed as a matter of law.

---

[1] The Court may consider Crusader's plea agreement for purposes of this motion as Plaintiffs "explicitly rel[y] upon [it] in the complaint" at Paragraph 179. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 140, 1426 (3d Cir. 1997).

# LEGAL ARGUMENT

## I. Plaintiffs' Complaint Fails to Plausibly Allege Claims Against RBA and RBSP as a Matter of Law

### A. The Complaint Fails to Adequately Allege That RBSP or RBA Directly Participated in the Alleged Conspiracy

The Complaint is devoid of specific allegations of fact sufficient to establish separate direct involvement by RBSP or RBA in the purported bid-rigging scheme, which forecloses Plaintiffs from proceeding on claims against those two entities. "To state a claim against parent corporations, plaintiffs must set forth facts establishing the parent corporations' direct and independent participation in the alleged conspiracy." *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009). Allegations of knowledge by a parent of anticompetitive activity by a subsidiary, or even allegations of approval of that conduct by a parent company, are insufficient to establish direct liability. *See id.* at 688 (allegations of "[a]pproval and assent" by parent corporation held inadequate to establish direct antitrust liability); *see also In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376 (M.D. Pa. 2008) ("Knowledge of the existence of an agreement" to restrain competition by subsidiary does not plausibly establish liability on part of parent.). Indeed, "[w]ithout some averment that the corporate parent defendants directly entered into agreements, . . . the plaintiffs have not alleged enough to establish that the corporate parent defendants entered into a conspiracy." *McCray v. Fid. Nat'l Title Ins. Co.*, 636 F. Supp. 2d 322, 335 (D.

Del. 2009).

Plaintiffs' Complaint alleges no facts suggesting that RBA or RBSP knew of or approved of the supposed anticompetitive conduct. But even if Plaintiffs' conclusory allegation that RBA and RBSP "approved" or "authorized" or "funded" the alleged wrongful acts, CMCAC at ¶¶ 47, 54, are credited – which, Third Circuit law says they should not be – those allegations are insufficient to state a claim against either RBSP or RBA. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (conclusory allegations should be given no weight for purposes of assessing the plausibility of a plaintiff's claims). Rather, to state a claim against RBA and RBSP on a direct liability theory, Plaintiffs must allege facts giving rise to particular agreements reached by RBA and RBSP specifically, which they have not done and simply cannot do. *McCray*, 636 F. Supp. 2d at 334-35. Accordingly, to the extent they are predicated on a theory of direct liability, Plaintiffs' claims against RBA and RBSP fail as a matter of law and must be dismissed.

### B. The Complaint Fails to Allege Facts Sufficient to Pierce the Corporate Veil

It is a "general principle of corporate law deeply 'ingrained in our economic and legal systems'" that "a parent corporation . . . is not liable for the acts of its subsidiary." *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 687. Put differently, "[t]he corporate form was created to allow shareholders to invest

without incurring personal liability for the acts of the corporation. These principles are equally applicable when a shareholder is, in fact, another corporation, and hence, mere ownership of a subsidiary does not justify the imposition of liability on the parent." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001); *see also Am. Bell, Inc. v. Fed'n of Tel. Workers of Pa.*, 736 F.2d 879, 887 (3d Cir. 1984) ("The district court, to the extent it applied a theory of corporate veil piercing, apparently did so only because of the parent-subsidiary relationship. This is not enough.").

Only in rare circumstances, where the subsidiary is the mere alter ego of the parent, will the court pierce the corporate veil to impose liability on the parent for the actions of the subsidiary. *See Flores v. HSBC, ABC Co. 1-10*, 2012 U.S. Dist. LEXIS 90673, at *17 (D.N.J. June 28, 2012) ("Piercing the corporate veil is an extraordinary measure."). "[A]n alter ego relationship must exceed the usual supervision that a parent exercises over a subsidiary[,]" and thus, "mere 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures' do not establish an alter ego relationship." *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 384 (M.D. Pa. 2009). Instead, to pierce the corporate veil, a plaintiff must allege that the parent intimately controls the day to day operations of the subsidiary. *In re Bulk [Extruded]*

*Graphite Prods. Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29586, at *19 (D.N.J. Oct. 26, 2004).

To ascertain whether a subsidiary is the alter ego of a parent, courts in the Third Circuit consider a variety of factors, including "gross undercapitalization, failure to observe corporate formalities, non-payment of dividends, [ ], siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder." *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (internal ellipses and quotation marks omitted).

Here, Plaintiffs' Complaint pleads none of those things with respect to either RBSP or RBA. As to RBA, Plaintiffs offer little beyond the fact that it held a partial ownership interest in Crusader and RTLS, which alone plainly is not enough to trigger alter ego liability. *Pearson*, 247 F.3d at 484. The factually unsupported allegations that RBA "dominated and controlled" the finances and decision-making processes of both entities, *see* CMCAC at ¶¶ 47, 54, adds nothing. *See Slack v. Suburban Propane Partners, L.P.*, 2010 U.S. Dist. LEXIS 135530, at *43-44 (D.N.J. Dec. 22, 2010) (holding it is not enough to allege without factual support that parent company "dominates" business affairs of subsidiary, or that parent company "approved, authorized, enabled and/or ratified" subsidiary's

allegedly unlawful conduct); *see also Wrist Worldwide Trading GMBH v. MV Auto Banner*, 2011 U.S. Dist. LEXIS 35722, at *18-19 (D.N.J. Mar. 30, 2011) (without allegations supporting factors needed to pierce corporate veil, mere allegations that parent "dominated and controlled" subsidiary are insufficient).  Plaintiffs' assertion that all major tax lien purchases of Crusader or RTLS needed the approval of the board of RBA, *see* CMCAC at ¶ 54, also is of no moment.  At most, such allegations suggest usual "supervision of the subsidiary's finance and capital budget decisions," *In re Latex Gloves Prods. Liab. Litig.*, 2001 U.S. Dist. LEXIS 12757, at *11 (E.D. Pa. Aug. 22, 2001), and they do not as a matter of law establish alter ego liability.  *See In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29586, at *19 (involvement by parent in "major capital investments" does not establish alter ego liability).  Plaintiffs, therefore, have not alleged facts sufficient to pierce the corporate veil as to RBA.

Plaintiffs' allegations with respect to RBSP are even more attenuated because Plaintiffs allege no direct corporate relationship between RBSP and either Crusader or RTLS.  Instead, Plaintiffs contend that RBSP "*through its wholly owned subsidiary* defendant [RBA] owned a 60 percent equity interest in defendants Crusader and RTLS."  CMCAC at ¶ 47 (emphasis added).  But if, as the Third Circuit has held, mere ownership is insufficient to pierce the corporate veil, *see Pearson*, 247 F.3d at 484, indirect ownership cannot possibly provide a

proper basis for imposition of liability on RBSP. In a situation like this, Plaintiffs need to pierce not one but two corporate veils in order to reach RBSP – the corporate veil of Crusader or RTLS plus the corporate veil of RBA. *See In re Tutu Wells Contamination Litig.*, 909 F. Supp. 1005, 1009 n.4 (D.V.I. 1995) ("Plaintiffs would, at a minimum, have to pierce the corporate veils of [intermediate subsidiaries] ESSOSA and EIA before this court could extend liability to [ultimate shareholder] Exxon."); *Noto v. Cia Secula di Armanento*, 310 F. Supp. 639, 645 n.12 (S.D.N.Y. 1970) (stating that in order to reach indirect corporate parent, "one must pierce not one but many corporate veils"). Given that Plaintiffs' boilerplate allegations of domination and control are legally insufficient to pierce one corporate veil, *i.e.*, the one separating Crusader and RTLS from RBA, it is axiomatic that those same conclusory assertions are insufficient to impose alter ego liability upon the indirect parent of those entities, RBSP.

This essential missing link cannot be forged by Plaintiffs' allegations that RBSP's chairman and board members respectively are chairman and board members of RBA. *See* CMCAC at ¶ 48. As a threshold matter, this allegation is a *non sequitur* because Plaintiffs do not claim that any of those individuals holds a position with Crusader or RTLS. But even if they did, "[t]here is commonly overlap between the corporate officers and directors of a parent and its subsidiary, and such overlap 'do[es] not alone establish an alter-ego relationship.'" *In re Bulk*

*[Extruded] Graphite Prods. Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29586, at *18 (quoting *Arch v. Am. Tobacco Co.*, 984 F.Supp. 830, 837 (E.D. Pa. 1997)). This allegation, at most, reflects ordinary interaction between affiliated corporate entities and is inadequate to pierce the corporate veil. Thus, Plaintiffs cannot establish liability of RBSP or RBA under an alter ego theory, which as a matter of law requires dismissal of the claims asserted against those entities.

## II. The Complaint Fails to Plead Facts Plausibly Demonstrating that RTLS Participated in the Purported Conspiracy

In addition to the reasons set forth in Defendants' Joint Brief, Plaintiffs' claims against RTLS fail for the separate and independent reason that the Complaint is devoid of plausible factual allegations that would give rise to an inference that RTLS participated in the supposed conspiracy that provides the underpinning for each of Plaintiffs' causes of action.[2] The only allegation in Plaintiffs' Complaint that pertains to RTLS specifically is the conclusory assertion that "RTLS purchased TSCs at public actions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein." CMCAC at ¶ 50. Under the Third Circuit's formulation of the controlling pleading standard, that conclusory allegation should be disregarded for purposes of determining the sufficiency of Plaintiffs' pleading as to RTLS. *See Fowler*, 578 F.3d at 210-11.

---

[2] RTLS, RBSP and RBA incorporate by reference the arguments advanced in the Defendants' Joint Brief, each of which independently bar Plaintiffs' claims against those entities.

Once that conclusory language is stripped from the Complaint, it is apparent that there are no well-pleaded factual allegations plausibly suggesting that RTLS participated in the alleged bid-rigging conspiracy. In the absence of such allegations, dismissal of the Complaint as to RTLS is warranted. *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 182 (3d Cir. 1988) ("A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action.").

Plaintiffs cannot sidestep this dispositive defect in their claims against RTLS by attempting to group RTLS with Crusader. *See, e.g.*, CMCAC at ¶ 51 (referring to RTLS as "Crusader" or being among "Crusader Defendants"). For the reasons set forth in Section I.A.4 of Defendants' Joint Brief, such indiscriminate, catch-all allegations plainly do not suffice to state a viable claim. *See* Docket No. 174 at pp. 20-21. (citing cases)

Nor can Plaintiffs salvage their defective claims against RTLS by referring to the guilty pleas of Stein or Crusader. *See* CMCAC at ¶¶ 174, 179. While Plaintiffs say that Stein owned a minority stake in RTLS, *see id.* at ¶ 50, the Complaint fails to even include an allegation – let alone support with allegations of fact giving rise to a plausible inference of liability – that, in connection with the "certain auctions" Stein admitted to rigging, he was acting as an agent of RTLS. Plaintiffs likewise have not pleaded any facts suggesting that Stein was acting with

the apparent authority of RTLS when he engaged in the conduct giving rise to his plea. *See Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556, 568-69 (1982). Plaintiffs' allegation that "Stein oversaw the purchase of TSCs on behalf of 'Company 1' – *presumably* defendants Crusader and RTLS[,]" CMCAC at ¶ 174 (emphasis added), is nothing more than a conclusory statement that is entitled to no weight under the controlling pleading standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Besides being of no consequence legally, Plaintiffs' use of the word "presumably" reveals that it has only supposition from the Stein guilty plea, *but no facts* that would justify permitting Plaintiffs to launch into costly and burdensome antitrust discovery with respect to RTLS. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 558-59 (2007) (recognizing the often crippling cost and burden of antitrust discovery).

Furthermore, the details of Crusader's plea agreement undermine, rather than support, Plaintiffs' claims against RTLS. First, Crusader's plea agreement is limited to the time period before RTLS was even in existence, *i.e.*, September 2006, *see* CMCAC at ¶ 50, and thus the plea cannot possibly be of any relevance to the post-2006 conduct of RTLS. *See* Ex. A at ¶ 1. Second, the plea agreement expressly states that the Department of Justice will *not* bring criminal charges against RTLS. *See id.* at ¶ 2. Thus, Crusader's plea agreement lends no support to Plaintiffs' deficient allegations against RTLS.

Because Plaintiffs' claims against RTLS rest exclusively on conclusory allegations, factually unsupported inferences, and pure speculation, those claims fail to satisfy the applicable pleading standards and should be dismissed.

## CONCLUSION

For the reasons set forth herein and in the Defendants' Joint Brief, Defendants RTLS, RBSP and RBA respectfully request that the Court dismiss all claims asserted against them in the Complaint with prejudice.

                              Respectfully submitted,

Dated: March 8, 2013

/s/ R. Brendan Fee
Steven A. Reed (*pro hac vice*)
sreed@morganlewis.com
R. Brendan Fee (RF-4838)
bfee@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

         -and-

Scott A. Stempel (*pro hac vice*)
sstempel@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Counsel for Defendants,*
Royal Tax Lien Services, LLC, Royal Bancshares of Pennsylvania, Inc. and Royal

Bank America

-15-

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2013, a true and correct copy of the foregoing Brief of Defendants Royal Tax Lien Services, LLC, Royal Bancshares of Pennsylvania and Royal Bank America in Support of Their Motion to Dismiss Plaintiffs' Consolidated Master Class Action Complaint was filed electronically with the Court, and served on counsel of record via electronic filing.

/s/  R. Brendan Fee
*Counsel for Defendants*

Royal Tax Lien Services, LLC, Royal Bancshares of Pennsylvania, Inc. and Royal Bank America