**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket<br><br>No. 3:12-CV-01893-MAS-TJB |

**MEMORANDUM OF LAW IN SUPPORT**
**OF AMERICAN TAX FUNDING, LLC, BBX CAPITAL**
**CORPORATION, FIDELITY TAX, LLC, AND PLYMOUTH**
**PARK TAX SERVICES' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................. i

INTRODUCTION ................................................................................... 1

FACTUAL BACKGROUND ...................................................................... 3

ARGUMENT ......................................................................................... 6

I.     PLAINTIFFS HAVE FAILED TO PLEAD AN ANTITRUST CLAIM AGAINST THE MOVING DEFENDANTS (COUNTS I AND II) ............................................................................. 6

     A.    Plaintiffs Fail To Plead Facts Connecting The Moving Defendants To The Alleged Conspiracy. ............................... 6

     B.    Plaintiffs Fail To Plead Facts Connecting The Moving Defendants To A Narrower Alternative Conspiracy ......................... 15

II.    PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT THEIR REMAINING STATE LAW CLAIMS AGAINST THE MOVING DEFENDANTS (COUNTS III, IV, and V) ............................... 18

CONCLUSION ..................................................................................... 19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allee v. Medrano*,
  416 U.S. 802 (1974)...................................................................................17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................12, 13

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) .................................................................7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) .................................................................17

*Hinds County v. Wachovia Bank N.A.,*
  620 F. Supp. 2d 499 (S.D.N.Y. 2009.....................................................14

*In re Elec. Carbon Prods. Antitrust Litig.*,
  333 F. Supp. 2d 303 (D.N.J. 2004).......................................................7

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ...................................................................11

*In re Franklin Mut. Funds Fee Litig.*,
  388 F. Supp. 2d 451 (D.N.J. 2005).............................................16, 17, 18

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007)...............................................13

*In re Ins. Brokerage Antitrust Litig.*,
  MDL No. 1663, 2006 WL 2850607 (D.N.J. Oct. 3, 2006) ......................7, 13, 15

*In re Lehman Bros. Sec. & ERISA Litig.*,
  684 F. Supp. 2d 485 (S.D.N.Y. 2010) ..................................................17

*In re Refrigerant Compressors Antitrust Litig.*,
  No. 2:09-md-0242, 2012 WL 2114997 (E.D. Pa. June 11, 2012).............13, 14

ii

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827, 2010 WL 2629728 (N.D. Cal. June 29, 2010)........................14

*Jung v. Ass'n of Am. Med. Colls.*,
   300 F. Supp. 2d 119 (D.D.C. 2004)....................................................................13

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .............................................................................7

*Lewis v. Casey*,
   518 U.S. 343 (1996)....................................................................................16, 17

*Ramos v. Patrician Equities Corp.*,
   765 F. Supp. 1196 (S.D.N.Y. 1991) ...................................................................17

*Zavala v. Wal-Mart Stores, Inc.*,
   393 F. Supp. 2d 295 (D.N.J. 2005)......................................................................8

**STATUTES**

N.J. Stat. Ann. § 56:9-18...........................................................................................7

Defendants American Tax Funding, LLC ("ATF"), BBX Capital Corporation ("BBX") and Fidelity Tax LLC (together with BBX, "BankAtlantic"), and Plymouth Park Tax Services, LLC ("Plymouth Park," and together with ATF and BankAtlantic, the "Moving Defendants") submit this memorandum in support of their motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). The Moving Defendants have joined in the Joint Motion to Dismiss that advances grounds for dismissal that are common to the broader set of defendants. This separate brief addresses independent reasons why the Complaint should be dismissed as to the Moving Defendants even if it is sustained against other defendants.

## **INTRODUCTION**

The Moving Defendants that join in this motion – ATF, BankAtlantic, and Plymouth Park – are differently situated than all other defendants in this action. As to these defendants, Plaintiffs' allegations boil down to the following proposition: the Moving Defendants must have participated in a bid-rigging conspiracy because several *other* defendants have pleaded guilty to bid-rigging. Under settled law, however, Plaintiffs' mere hunch that the Moving Defendants must have done what others did fails to state a claim for relief.

In contrast to many of the other defendants, the Moving Defendants have not pleaded guilty or admitted to engaging in any misconduct whatsoever.

1

Furthermore, Plaintiffs do not allege that any of the defendants who have pleaded guilty have identified the Moving Defendants as participants in a bid-rigging conspiracy, even though they specifically make such allegations against other defendants.  Plaintiffs must therefore identify something *other* than a guilty plea that allegedly ties the Moving Defendants to an antitrust conspiracy.

Plaintiffs have not remotely met that burden.  Although Plaintiffs assert in conclusory terms that the Moving Defendants participated in an "overarching statewide conspiracy," the actual facts alleged in the Complaint indicate only that the Moving Defendants were participants at tax lien auctions.  Plaintiffs fail to identify what, when, where, or how the Moving Defendants allegedly participated in an antitrust conspiracy.  They also fail to identify a single discussion, meeting, or agreement between a Moving Defendant and any other defendant.  Indeed, all that Plaintiffs offer against the Moving Defendants are a few formulaic assertions that they apparently cut-and-pasted into the description of all forty-eight defendants named in the Complaint.

If Plaintiffs wish to drag the Moving Defendants into a potentially massive antitrust case, they cannot rely on mere push-button pleading; nor can they rely on indiscriminate attempts to tar the Moving Defendants with guilty pleas entered by unrelated parties.  That, however, is all that Plaintiffs do with respect to the Moving Defendants.  The law is clear that these sorts of general and conclusory

2

assertions fail to state a claim for relief.  The claims against the Moving Defendants therefore should be dismissed.

## FACTUAL BACKGROUND

Plaintiffs allege an "overarching statewide conspiracy" to rig the bids for tax sale certificates at auctions occurring between 1998 and 2009.  (Compl. ¶ 1.)  The centerpiece of Plaintiffs' allegations consists of references to guilty pleas in which eleven defendants admitted that they "participat[ed] in a statewide conspiracy to rig bids at public municipal tax lien auctions in the State of New Jersey."  (*Id.* ¶ 11.)  Based on little more than the guilty pleas entered by those defendants, Plaintiffs allege – primarily based on "information and belief" – that the Moving Defendants also participated in the alleged conspiracy.  (*Id.* ¶¶ 2, 43, 88, 97.)

Although the Complaint asserts in conclusory terms that the Moving Defendants "participated in an illegal agreement and/or understanding" with other defendants (*id.* ¶¶ 43, 88, 97), it pleads no specific facts to support that conclusion. Plaintiffs do not allege, for example, that the Moving Defendants or any of their employees have pleaded guilty or admitted any wrongdoing; nor do they allege that any of the defendants who have pleaded guilty have implicated the Moving Defendants in an antitrust conspiracy.  To the contrary, the Complaint specifically lists the defendants who allegedly have been implicated by parties who pleaded

guilty, and the Moving Defendants are conspicuously absent from that list. (*Id.* ¶ 159.)

Plaintiffs' allegations against the Moving Defendants consist almost entirely of generic assertions that are made in verbatim form about all forty-eight defendants named in the Complaint. The following chart illustrates the formulaic and indiscriminate nature of these allegations:

| Allegations About Other Defendants | Allegations About the Moving Defendants |
|---|---|
| **Paragraphs 38, 56, 63, 79, 83, 104, 109, 117, 121, 125, 129**: <br><br> "[***Insert defendant's name***] participated in an illegal agreement and/or understanding with Defendants … to rig bids for municipal tax liens at public tax lien auctions throughout the State of New Jersey which they attended during the Class Period." | **Paragraph 43, 88, 97**: <br><br> "[**Moving Defendants**] participated in an illegal agreement and/or understanding with Defendants … to rig bids for municipal tax liens at public tax lien auctions throughout the State of New Jersey which they attended during the Class Period." |
| **Paragraphs 39, 57, 64, 80, 84, 105, 110, 118, 122, 126, 130**: <br><br> "As a result of this agreement and/or understanding, the Defendants, including [***insert defendant's name***], would, among other things, agree prior to the beginning of the auctions at which they were present, which liens each of the Defendant auction attendees would be allocated. Often, the largest bidders – Plymouth Park, Sass, Crusader, BankAtlantic, and ATF – would have first picks over the liens up for auction." | **Paragraph 44, 89, 98**: <br><br> "As a result of this agreement and/or understanding, the Defendants, including [**Moving Defendants**], would, among other things, agree prior to the beginning of the auctions at which they were present, which liens each of the Defendant auction attendees would be allocated. Often, the largest bidders – Plymouth Park, Sass, Crusader, BankAtlantic, and ATF – would have first picks over the liens up for auction." |

| **Paragraphs 59, 66, 81, 90, 99, 106, 111, 119, 123, 127, 131, 159**: | **Paragraph 46, 90, 99**: |
|---|---|
| "Further, witnesses to the conspiracy have identified defendant [**insert defendant's name**] as participating in the conspiracy alleged herein." | "Further, witnesses to the conspiracy have identified defendant [**Moving Defendants**] as participating in the conspiracy alleged herein." |

Apart from these types of push-button allegations, the only allegations directed at the Moving Defendants consist of bare-bones assertions that ATF and Plymouth Park attended two of the seven so-called "representative" auctions that the Complaint identifies as "rigged." (Compl. ¶ 154.) But after asserting that ATF and Plymouth Park were *present* at these auctions, the Complaint fails to plead any specific facts indicating that they were involved in the alleged *rigging* of those auctions. Moreover, the Complaint fails to assert that any of the Moving Defendants attended an auction that allegedly affected a named Plaintiff. (*Id.* ¶¶ 17-27, 154.)

The allegations about BankAtlantic are even thinner: Plaintiffs fail to allege that BankAtlantic attended a single one of the auctions identified in the Complaint. Plaintiffs thus attempt to link BankAtlantic to an "overarching statewide conspiracy" without identifying a single occasion on which it was present at an auction that allegedly involved collusion.

Nowhere in the Complaint do Plaintiffs offer any well-pleaded factual allegations describing what the *Moving Defendants* supposedly did to violate the

antitrust laws.  Indeed, in contrast to the allegations made about other defendants, Plaintiffs do not identify a single meeting, discussion, or communication that a Moving Defendant allegedly had with another defendant.

## ARGUMENT

## I.   PLAINTIFFS HAVE FAILED TO PLEAD AN ANTITRUST CLAIM AGAINST THE MOVING DEFENDANTS (COUNTS I AND II).

The Complaint makes a series of vague and general assertions that the Moving Defendants participated in a state-wide antitrust conspiracy, but the actual facts alleged in the Complaint fail to support that conclusion.   Once the Complaint's conclusory assertions are stripped away, the remaining allegations establish little more than the fact that the Moving Defendants participated in an industry in which certain *other* defendants have admitted engaging in unlawful conduct.  These allegations fall far short of implicating the Moving Defendants in an antitrust conspiracy.

### A.   Plaintiffs Fail To Plead Facts Connecting The Moving Defendants To The Alleged Conspiracy.

A plaintiff who seeks to assert antitrust conspiracy claims against multiple defendants must make distinct allegations against each defendant sufficient to show "that each individual defendant joined the conspiracy and played some role in it." *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311 (D.N.J. 2004) (quotations omitted).  As to each such defendant, moreover, the allegations must answer the "basic questions" of "who, did what, to whom (or with whom),

6

where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). "Simply using the global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient." *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2006 WL 2850607, at *12 (D.N.J. Oct. 3, 2006) (quotations omitted); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012) (the complaint "must be specific enough to establish the relevant who, what, where, when, how or why" of the antitrust conspiracy) (quotations omitted).[1]

Plaintiffs fail to satisfy any of these requirements with respect to the Moving Defendants. Although the Complaint vaguely asserts that ATF, BankAtlantic, and Plymouth Park "participated in an illegal agreement and/or understanding" with other defendants (Compl. ¶¶ 43, 88, 97), the same boilerplate assertion is made in verbatim terms about all of the forty-eight defendants named in the Complaint. As to the Moving Defendants, moreover, the Complaint is wholly lacking in any specifics to support these assertions. For example, although the Complaint identifies eleven defendants who "have admitted to participating in a statewide conspiracy" (*id.* ¶ 11), it fails to allege when, where, or how the Moving

---

[1] The elements of a claim under the New Jersey Antitrust Act are identical to the Federal antitrust laws. *See* N.J. Stat. Ann. § 56:9-18 ("This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it.").

Defendants supposedly participated in such a conspiracy.  Nor does the Complaint describe a single discussion, meeting, or agreement between the Moving Defendants and other named defendants.

Only three allegations in the Complaint purport to offer any specificity with respect to the Moving Defendants, but none of these allegations supports the conclusion that the Moving Defendants participated in an antitrust conspiracy.

First, the Complaint identifies by name the employees who allegedly participated in the acquisition of tax liens for the Moving Defendants.  (*Id*. ¶ 42, 92, 86.)  It then makes a boilerplate assertion "on information and belief" that the employees who participated in acquiring liens also participated in "agreements and/or understandings with the other Defendants."  (*Id.* ¶¶ 2, 44, 89, 98.)[2] Precisely the same assertions are made with respect to all other corporate defendants: the Complaint identifies by name the employees who allegedly participated in acquiring liens and then asserts "on information and belief" that

---

[2]      Plaintiffs state that their "information and belief" is based on: (1) press releases, news articles, and other media reports, (2) filings with the Securities and Exchange Commission, (3) pleadings from the criminal proceedings of the defendants who pleaded guilty, (4) documents received in response to New Jersey Open Records Act Requests, (5) interviews with unnamed witnesses, and (6) review of certain business records.  (Compl. ¶ 2.)  Because Plaintiffs do not allege that *any* of these sources provided specific information connecting ATF, BankAtlantic, or Plymouth Park to the alleged conspiracy, the "information and belief" allegations lend no support to the claims asserted against the Moving Defendants.  *See Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 315 (D.N.J. 2005).

each such employee also participated in "agreements and/or understandings with the other Defendants." (*See id.* ¶¶ 2, 57, 64, 80, 105, 110, 118.)

These vague and formulaic allegations indicate only that Plaintiffs harbor an across-the-board suspicion that any employee who played a substantial role in acquiring tax liens for a defendant must have entered into "agreements and/or understandings" with other defendants.   Furthermore, as to the Moving Defendants, these allegations are further eroded by the absence of any specifics as to (i) where, when or with whom the identified employees allegedly entered into "agreements and/or understandings," or (ii) the contents of the alleged "agreements and/or understandings."[3]  Plaintiffs' reflexive allegations about "agreements and/or understandings" thus lend no support to the conclusion that the Moving Defendants participated in a bid-rigging conspiracy.[4]

---

[3]      For example, the Complaint states that "BankAtlantic's tax lien business was run primarily by Defendants Gray I. Branse and Michael G. Deluca," and then asserts in conclusory fashion that these two employees "participated in the conspiracy."  (Compl. ¶¶ 92, 95-96.)  Plaintiffs plead no facts whatsoever in support of the assertion that Branse and Deluca participated in a conspiracy; the only apparent basis for this allegation is Plaintiffs' understanding that these are the employees who ran BankAtlantic's tax liens business.

[4]      Plaintiffs fare no better with their cut-and-pasted allegations that certain employees of the Moving Defendants were terminated "as a result of their participation in the conspiracy."  (Compl. ¶¶ 2, 42, 95-96.)  Once again, these allegations are made "on information and belief" and are made in cookie-cutter fashion against the employees of numerous defendants.  (*See, e.g., id.* ¶¶ 60, 76, 81.)  Furthermore, as to Plymouth Park, Plaintiffs fail to identify a single specific employee who allegedly was terminated; instead, they vaguely assert that "[s]ome or all of these employees" were terminated as a result of participation in the alleged conspiracy.  (*Id.* ¶ 42.)  Plaintiffs' extraordinarily vague allegation against Plymouth Park confirms that Plaintiffs have no qualms about making a boilerplate (continued…)

Second, the Complaint asserts "on information and belief" that "witnesses to the conspiracy have identified defendant [ATF, BankAtlantic, and Plymouth Park] as participating in the conspiracy alleged herein."  (*Id.* ¶¶ 2, 46, 90, 99.)  Once again, the same allegation is made in verbatim terms about all other corporate defendants.  (*See id.* ¶¶ 59, 66, 81, 106, 111, 119, 123, 127, 131, 159.)  As to the Moving Defendants, moreover, these boilerplate allegations fail to identify (i) the names of the supposed witnesses to the conspiracy, (ii) when, where, or how the witnesses observed the alleged "participat[ion] in the conspiracy," or (iii) what the Moving Defendants were observed to be doing.[5]

Plaintiffs' failure to provide so much as a description of the nameless witnesses who supposedly observed the Moving Defendants stands in contrast to the witnesses described in paragraph 159 of the Complaint.  There, the Complaint states that "witnesses *who pleaded guilty to the conspiracy*" have identified five specific defendants as conspirators.  (*Id.* ¶ 159, emphasis added.)[6]  The Moving

---

"termination" allegation even when they have no factual support for such an allegation.

[5]     Furthermore, as to Plymouth Park, the Complaint fails to name any individual employee allegedly identified by a "witness to the conspiracy." (Compl. ¶ 46.)  Although Plaintiffs do give employee names in the case of ATF and BankAtlantic (*id.* ¶¶ 2, 90, 99), it appears that they once again have reflexively named – on "information and belief" – the same employees they identified as the defendant's key employees involved in the acquisition of tax liens.

[6]     The Complaint also identifies an alleged agent of ATF who "admitted to participating in a conspiracy in another jurisdiction concerning tax liens." (Compl. ¶ 87.)   Because the Complaint does not offer any link between the other (continued…)

Defendants are not identified among the defendants allegedly implicated by these witnesses, and no similar description of the witnesses who supposedly observed the Moving Defendants appears in the Complaint.  (*Id*.)  The Moving Defendants are thus left to wonder whether Plaintiffs have actually located a witness who allegedly observed them or whether they merely assumed "on information and belief" that such witnesses must exist.  (*Id.* ¶ 2.)

Third, the Complaint identifies seven specific auctions that allegedly are "representative" of the conspiracy.  (Compl. ¶ 154.)  According to the Complaint, ATF and Plymouth Park attended two of these seven auctions, and BankAtlantic did not attend a single one of them.  (*Id*.)  Far from supporting Plaintiffs' allegations that the Moving Defendants participated in the alleged conspiracy, these allegations actually undermine the conclusion that the Moving Defendants were involved.

According to the Complaint, each of the "representative" auctions offered the Moving Defendants a golden opportunity to obtain liens at highly profitable interest rates, and the Moving Defendants could have had their pick of these liens

---

jurisdiction and New Jersey, these allegations are insufficient to support Plaintiffs' claims against ATF.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) ("Allegations of anticompetitive wrongdoing in Europe … is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.' … Without an adequate allegation of facts linking transactions in Europe to transactions and effects here, plaintiffs' conclusory allegations do not 'nudge [their] claims across the line from conceivable to plausible.'").

if they had attended these auctions.  (*See id.* ¶¶ 1, 149, 151, 154.)  The Complaint

nevertheless acknowledges that the Moving Defendants failed to attend a large

majority of these auctions:  five out of seven for ATF and Plymouth Park, and

seven out of seven for BankAtlantic.  (*Id.* ¶ 154.)  It makes little sense to suggest

that the Moving Defendants participated in an "overarching statewide conspiracy,"

yet nevertheless bypassed most of the "representative" opportunities to profit from

that conspiracy.

It bears emphasis that BankAtlantic is not alleged to have attended a single

auction identified anywhere in the Complaint.  Plaintiffs' attempt to implicate

BankAtlantic in a bid-rigging conspiracy without identifying any auctions that

BankAtlantic so much as attended is extraordinary.  At a minimum, it falls well

short of the basic pleading requirements established by *Twombly*.

Plaintiffs' allegations that ATF and Plymouth Park attended two of seven

"representative" auctions are further undermined by the absence of any specifics as

to what those Defendants allegedly *did* at those auctions.  For example, the

Complaint provides no details about when, where, or what ATF and Plymouth

Park allegedly communicated to any other participant at those auctions.  Instead,

the Complaint merely asserts that an undifferentiated group of "defendants" agreed

to "'pick' the liens on which they would each bid prior to the auction."  (Compl. ¶

154(e).)  Plaintiffs' failure to offer individualized allegations about how either *ATF*

12

*or Plymouth Park* allegedly participated in an antitrust conspiracy requires dismissal of their claims.  *See In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *12 (dismissing antitrust claim where plaintiffs failed to describe "the nature and scope of each alleged conspirator's role"); *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) (plaintiffs cannot merely "alleg[e] that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations").[7]

In sum, Plaintiffs fail to offer any factual support for their conclusory allegations that the Moving Defendants participated in an antitrust conspiracy.  The well-pleaded factual allegations in the Complaint indicate only that the Moving Defendants participated in an industry in which certain other defendants have admitted to wrongdoing.  Under settled law, this is not enough to embroil the Moving Defendants in an antitrust conspiracy.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (requiring district courts "to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" (quotations omitted)); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-0242, 2012 WL 2114997, at *3 (E.D. Pa. June 11, 2012) (allowing antitrust claims

---

[7]     Plaintiffs also allege that Plymouth Park has been subpoenaed by a Federal grand jury investigating the conspiracy alleged in the Complaint.  (Compl. ¶ 46, 181.)   As explained in defendants' Joint Memorandum of Law, this allegation "carries no weight in pleading an antitrust conspiracy claim." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007); *see also* Joint Mem. of Law at 23.

against two defendants who pleaded guilty, but dismissing claims against other defendants); *Hinds County v. Wachovia Bank N.A.,* 620 F. Supp. 2d 499, 512-13 (S.D.N.Y. 2009) (dismissing bid-rigging claims against the majority of the defendants where the plaintiffs alleged that one defendant admitted to wrongdoing); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2010 WL 2629728, at *7 (N.D. Cal. June 29, 2010) (dismissing price-fixing claims against individual defendant where the allegations against that defendant were conclusory).

*Hinds County*, 620 F. Supp. 499, is illustrative of these cases.  There, the plaintiffs attempted to allege a single conspiracy among forty defendants to rig bids and allocate the market for municipal derivative securities.   *Id.* at 505.  To support their allegations of conspiracy, the plaintiffs relied on an ongoing Department of Justice ("DOJ") investigation into the municipal derivatives industry, including one defendant's participation in the DOJ's corporate leniency program.  *Id.* at 509-10.  The court nevertheless dismissed the claims against many of the defendants because the "allegations merely aver that these [] Defendants were involved in the sale of municipal derivatives, not that they were involved in a conspiracy."  *Id.* at 512.  The court also held that one defendant's "participation in the leniency program cannot be taken as a factual averment making a finding of a conspiracy more plausible" as to the other defendants.  *Id.* at 515.

14

Likewise here, the Moving Defendants' mere participation in a market in which other defendants have pleaded guilty is insufficient to state an antitrust claim against them.   The claims asserted against the Moving Defendants should therefore be dismissed.

### B.    Plaintiffs Fail To Plead Facts Connecting The Moving Defendants To A Narrower Alternative Conspiracy.

Plaintiffs' allegations against the Moving Defendants are further weakened by the vast and sprawling nature of the alleged conspiracy.   According to the Complaint, forty-eight defendants and dozens of unnamed co-conspirators agreed to rig the bids at thousands of auctions that took place over an eleven-year period. (Compl. ¶ 1.)  To implicate the Moving Defendants in such a colossal conspiracy, Plaintiffs must allege certain minimum facts about each defendant's participation in the conspiracy:   they must allege when, where, how, and who allegedly participated.   *See supra* at 7; *In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *12 (complaint must allege "the nature and scope of each alleged conspirator's role").

Plaintiffs do not come close to alleging the minimum facts necessary to tie the Moving Defendants to the massive conspiracy alleged in the Complaint.   Nor have Plaintiffs attempted to tie the Moving Defendants to a narrower, alternative conspiracy directed at particular auctions.   The sole conspiracy alleged in the Complaint is an "overarching statewide conspiracy" allegedly affecting thousands

of auctions over an eleven-year period.  (Compl. ¶¶ 1, 147.)  Furthermore, even if Plaintiffs had attempted to plead a narrower alternative conspiracy, the allegations of the Complaint would fail to implicate the Moving Defendants in any such conspiracy for two fundamental reasons.

*First*, Plaintiffs fail to allege specific facts connecting the Moving Defendants to a single instance of bid-rigging.  As discussed above, the Complaint fails to allege that BankAtlantic attended *any* of the auctions identified in the Complaint.  And although the Complaint alleges that ATF and Plymouth Park attended two such auctions, it provides no specifics as to when, where, how, or who at ATF or Plymouth Park allegedly engaged in wrongdoing at those auctions. *Supra* at 12-13.

*Second*, Plaintiffs lack Article III standing to sue the Moving Defendants for participating in a narrow conspiracy directed at particular auctions because they do not allege that *the Moving Defendants* attended any of the auctions that allegedly injured *Plaintiffs*.

To establish standing to sue a particular defendant, "at least one named plaintiff must be able to allege injury traceable" to the defendant in question.  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005).[8]  Here,

---

[8]    *See also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered (continued…)

Plaintiffs do not allege that they were injured by an auction allegedly attended by a Moving Defendant.  The Complaint identifies six distinct auctions at which liens allegedly were purchased on properties owned by Plaintiffs, but does not allege that ATF, BankAtlantic, or Plymouth Park attended any of those auctions. (Compl. ¶¶ 17-27.)  Plaintiffs thus lack standing to assert an alternative antitrust claim against the Moving Defendants.  *See Franklin Mut. Funds Fee*, 388 F. Supp. 2d at 462 (dismissing claims for lack of standing where the named plaintiffs failed to link their injury to a specific defendant); *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991) (dismissing claims for lack of standing where there was "no sufficient allegation that *these* defendants injured plaintiffs" (emphasis added)).[9]

by other, unidentified members of the class to which they belong and which they purport to represent" (quotations omitted)); *Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("Standing cannot be acquired through the back door of a class action."); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) ("Article III standing" requires there to "be at least one named plaintiff who can assert a claim directly against that defendant."); *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 490-91 (S.D.N.Y. 2010) (Article III standing "cannot be dispensed with by styling the complaint as a class action.").

[9]     Plaintiffs' sixth claim for relief (declaratory judgment) is derivative of their federal antitrust claims.  It therefore fails for the reasons set forth above.  *See* Joint Mem. of Law at 32-33.

17

## II.   PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT THEIR REMAINING STATE LAW CLAIMS AGAINST THE MOVING DEFENDANTS (COUNTS III, IV, and V).

In addition to their antitrust claims, Plaintiffs assert that the Moving Defendants (1) violated multiple provisions of the New Jersey Tax Lien Law and (2) owe Plaintiffs for unjust enrichment.  (Compl. ¶¶ 219-35.)  These claims should be dismissed against the Moving Defendants because Plaintiffs lack standing to assert them.

As noted above, Article III standing requires each named plaintiff to allege an injury traceable to the conduct of a particular defendant.  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 461.  Because Plaintiffs do not allege that any of the Moving Defendants purchased a tax sale certificate associated with a property owned by a Plaintiff, Plaintiffs lack standing to assert their state-law claims against the Moving Defendants.  *Supra* at 17.

18

## <u>CONCLUSION</u>

For the foregoing reasons, all asserted claims against the Moving Defendants should be dismissed.


Dated:  March 8, 2013

        Respectfully Submitted,


        MASELLI WARREN, P.C.

        /s/  Perry S. Warren
        Perry S. Warren
        David Fornal
        600 Alexander Road, Suite 3-4A
        Princeton, New Jersey 08540
        (609) 452-8411
        pwarren@maselliwarren.com

        COVINGTON & BURLING LLP

        /s/  Robert D. Wick
        Robert D. Wick
        Jason C. Raofield
        Henry B. Liu
        Jonathan D. Cohen
        1201 Pennsylvania Avenue NW
        Washington, DC 20004
        Tel: (202) 662-6000
        rwick@cov.com

        *Attorneys for Defendant Plymouth Park Tax Services, LLC*

ROETZEL & ANDRESS

/s/ Patricia B. Fugée
Patricia B. Fugée
One SeaGate, Suite 1700
Toledo, OH 43604
Tel: 419.242.7985
Fax: 419.242.0316

Donald S. Scherzer
Amanda M. Knapp
1375 E. Ninth Street
One Cleveland Center
Ninth Floor
Cleveland, OH 44114
(212) 623-0150

*Attorneys for American Tax Funding, LLC*


CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

/s/ James E. Cecchi
James E. Cecchi
Zachary S. Bower
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for BBX Capital Corporation
and Fidelity Tax, LLC*

20