**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. | Master Docket No. 3:12-CV-01893-MAS-TJB |
|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF INTERIM CLASS COUNSEL AS SETTLEMENT CLASS COUNSEL, AND DEFERRAL OF CLASS NOTICE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND........................................................ 3

    I.      STATUS OF THIS LITIGATION................................................................ 3

    II.     THE SETTLEMENT AGREEMENT ......................................................... 5

          A.     The Proposed Settlement ................................................................ 5

          B.     Dismissal With Prejudice and Release of Claims........................... 6

          C.     Notice .............................................................................................. 7

ARGUMENT ................................................................................................................... 8

    I.      THE COURT SHOULD PRELIMINARILY APPROVE THE
          SETTLEMENT AGREEMENT ................................................................. 8

          A.     Class Action Settlement Procedure................................................. 9

          B.     The Settlement Is Fair, Reasonable, and Adequate ...................... 10

    II.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................... 14

          A.     The Settlement Class Is Numerous ............................................... 15

          B.     There Are Common Questions of Law and Fact ........................... 15

          C.     The Named Plaintiffs' Claims Are Typical ................................... 16

          D.     The Named Plaintiffs Will Fairly and Adequately Represent
               the Interests of the Settlement Class ............................................. 17

          E.     The Proposed Settlement Class Satisfies Rule 23(b)(3) ............... 18

    III.    THE COURT SHOULD APPOINT PLAINTIFFS'
          INTERIM CLASS COUNSEL AS SETTLEMENT CLASS
          COUNSEL ................................................................................................ 20

    IV.    THE COURT SHOULD DEFER NOTICE....................................................... 21

CONCLUSION............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992) .............................................................12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................14, 18

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006)...............................................................17

*Behrend v. Comcast Corp.*,
  655 F.3d 182 (3d Cir. 2011), *rev'd on other grounds by Comcast Corp. v. Behrend*,
  No. 11–864, 2013 WL 1222646 (U.S. Mar. 27, 2013) .........................18

*Bellows v. NCO Fin. Sys.*,
  No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008).........12

*E.E.O.C. v. Com. of Pa.*,
  772 F. Supp. 217 (M.D. Pa. 1991) *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738
  (3d Cir. 1992).....................................................................................11

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)...............................................................13

*Gates v. Rohm and Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008)........................................................12

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982).............................................................................16

*Gomez v. Rossi Concrete Inc.*,
  08-cv-1442-BTM-CAB, 2011 WL 666888 (S.D. Cal. Feb. 17, 2011) ....................................22

*Hanlon v. Palace Entm't Holdings, LLC*,
  No. 11-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) .........................9

*In re Air Cargo Shipping Services Antitrust Litig.*,
  MDL. No. 1775.....................................................................................21

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*,
  418 F.3d 277 (3d Cir. 2005)...............................................................14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995).................................................................8, 9, 13

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009)...........................................................................19

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) .......................................................10, 13

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002)...........................................................................19

*In re Mid-Atlantic Toyota Antitrust Litig.*,
   564 F. Supp. 1379 (D. Md. 1983) ..................................................................10

*In re Motor Fuel Temperature Sales Practices Litig.*,
   258 F.R.D. 671 (D. Kan. 2009).......................................................................13

*In re New Jersey Tax Sales Certificates Antitrust Litigation*,
   No. 3:12-cv-1893-MAS-TJB ............................................................................3

*In re Processed Egg Prod. Antitrust Litig.,*
   MDL No. 2002 ................................................................................................21

*In re Processed Egg Prods. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012).......................................................................7

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)...........................................................................22

*In re Sch. Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1990)......................................................................8, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827 (N.D. Cal. May 3, 2010) (order granting preliminary approval of
   partial class settlement and deferring notice "[t]o avoid the possible duplication of
   class notices") ................................................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)..........................................................8, 13, 15, 16

*Janovici v. DVI, Inc.*,
   No. Civ-A-2:03-cv-04795-LD, 2003 WL 22849604 (E.D. Pa. Nov. 25, 2003) ....................22

*Jones v. Commerce Bancorp, Inc.*,
   No. 05-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) .......................................17

*Meijer, Inc. v. 3M*,
   Civ. No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ...........................23

*Moskowitz v. Lopp*,
128 F.R.D. 624 (E.D. Pa. 1989) ...........................................................................15

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................12

*O'Brien v. Brain Research Labs, LLC*,
No. 12-204, 2012 WL 3242365 (D.N.J. Aug. 8, 2012) ..................................19, 20

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) ...............................................................................................9

*Rutter & Witbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) ...........................................................................12

*Smith v. Prof'l Billing & Mgmt. Servs.*,
Civ. No. 06-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ...............................9

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ................................................................................15

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1876 (2012) ..................18, 19

*Weiss v. Mercedes-Benz of N. Am. Inc.*,
899 F. Supp. 1297 (D. N.J. 1995) ........................................................................13

*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D. Colo.1997) ............................................................................12

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) ...............................................................................................8

*Zinberg v. Wash. Bancorp, Inc.*,
138 F.R.D. 397 (D.N.J. 1990) ..............................................................................15

**STATUTES**

Section 1 of the Sherman Act, 15 U.S.C. § 1 .................................................................3

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* at 11.41 (4th ed. 2002)...........11

Fed. R. Civ. P. 23(a)(4) .................................................................................................17

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................23

Fed. R. Civ. P. 23(e) .................................................................................................14, 23

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................21

Federal Rule of Civil Procedure 23 ...................................................................1, 2, 9, 14

Fifth Amendment ........................................................................................................22

Rule 23(a) ...........................................................................................................14, 15, 16, 17

Rule 23(a)(3)'s ...........................................................................................................16

Rule 23(a) and 23(b)(3) ...............................................................................................20

Rule 23(a)'s ...........................................................................................................15, 16

Rule 23(b) ...........................................................................................................14

Rule 23(b)(3) ...................................................................................................... passim

Rule 23(c)(1)(B) ...........................................................................................................20

Rule 23(c)(2) ...........................................................................................................22, 23

Rule 23(c)(3) ...........................................................................................................23

Rule 23(e)(1) ...........................................................................................................22

Rule 23(g) ...........................................................................................................20, 21

Rule 23's ...........................................................................................................14

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move for preliminary approval of the class settlement reached with Defendant Robert E. Rothman.  Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for Preliminary Approval of the Proposed Settlement with Defendant Robert E. Rothman, Preliminary Certification of the Proposed Settlement Class, Appointment of Plaintiffs' Interim Class Counsel as Settlement Class Counsel, and Deferral of Class Notice.

## PRELIMINARY STATEMENT

The proposed Settlement Agreement Between Plaintiffs and Robert E. Rothman ("Settlement Agreement"), attached as Exhibit A to the Declaration of Seth Gassman ("Gassman Decl.") filed concurrently herewith, is the culmination of nearly a year of litigation and extensive settlement discussions regarding antitrust claims asserted against Mr. Rothman and other Defendants.  This settlement resolves all federal and state-law claims brought by Plaintiffs against Mr. Rothman, which allege that he and the other Defendants engaged in a statewide conspiracy to unlawfully manipulate interest rates associated with tax sale certificates ("TSCs") sold at public auctions throughout New Jersey.  The Settlement Agreement obligates Mr. Rothman to cooperate with Plaintiffs in their continued litigation against other Defendants and to pay $200,000 in exchange for a release of the putative settlement class ("Settlement Class") members' federal antitrust and related state-law claims.  Mr. Rothman has also agreed to offer discounted redemption of certain TSCs as part of the Settlement Agreement.

The Settlement Agreement provides for extensive cooperation with Plaintiffs regarding the antitrust conspiracy alleged in the complaint.  Specifically, Mr. Rothman has agreed to cooperate with Plaintiffs on an "as-requested" basis in the prosecution of this action by providing information and documentation relating to the existence, scope, and implementation of the

1

conspiracy alleged in the Complaint.   Mr. Rothman has already begun to provide his cooperation, including the provision of meaningful assistance to Plaintiffs in drafting their Consolidated Complaint.  Plaintiffs anticipate that his continued cooperation over the course of this litigation will prove invaluable to the putative class in understanding and proving the alleged conspiracy.  While the cooperation is the primary consideration for the release of claims against Mr. Rothman, the $200,000 settlement fund and the value represented by the discount redemption offer significant benefit to the class here.

The Settlement resulted from protracted arm's-length negotiations by experienced counsel committed to the interests of their respective clients.  If approved, the Settlement will provide significant benefits to members of the Settlement Class in exchange for dismissal of the claims against Mr. Rothman with prejudice.  Interim Class Counsel believe that the proposed settlement with Mr. Rothman is fair, reasonable, and adequate and is in the best interests of the Named Plaintiffs and the members of the Settlement Class.  The proposed Settlement Class satisfies the requirements of Rule 23 and Plaintiffs' Interim Class Counsel are well qualified to serve as Settlement Class Counsel.

Finally, because of the number of Defendants in this action, and the value of the cash component of Mr. Rothman's settlement agreement is relatively small in comparison to the cost of notice, deferring notice at this time will avoid inefficient, duplicative, and confusing notices and will preserve additional funds for distribution to the Settlement Class.  This Court therefore should enter the proposed Preliminary Approval Order while deferring class notice and distribution of the settlement fund until the aggregate proceeds from Mr. Rothman's settlement agreement and settlements with other Defendants amount to at least $1,000,000 (excluding

notice costs), or for two years following the entry of the proposed Preliminary Approval Order, whichever is earlier.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   STATUS OF THIS LITIGATION

This litigation arises from an alleged conspiracy to rig auctions of TSCs in New Jersey. In March 2012, Mr. Rothman pleaded guilty in this Court to participating in a conspiracy to rig certain bids and allocate certain customers at public tax lien auctions, in violation of Section 1 of the Sherman Act.   The investigation by the United States Department of Justice (Antitrust Division) remains active and additional pleas or indictments are expected.

On March 13, 2012, plaintiff Jeanne Van Duzer Lang Boyer filed a class action in New Jersey state court against Mr. Rothman and other Defendants, alleging various state antitrust violations.   Defendants timely removed the action to the United States District Court for the District of New Jersey, where it was assigned to the Honorable Judge Freda L. Wolfson. Following removal, several additional plaintiffs filed substantively similar federal class actions against Mr. Rothman and other Defendants, asserting various federal and state law claims.   All plaintiffs alleged generally that Mr. Rothman and various alleged co-conspirators engaged in a statewide conspiracy to unlawfully manipulate interest rates associated with TSCs sold at public auctions throughout the state of New Jersey.   Consol. Compl. ¶ 1.   According to Plaintiffs, Mr. Rothman's actions violated Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state laws.   *Id.*

In June 2012, Judge Wolfson entered an order consolidating eight of the federal class actions.   In September 2012, the consolidated proceeding, captioned *In re New Jersey Tax Sales Certificates Antitrust Litigation*, No. 3:12-cv-1893-MAS-TJB, was reassigned to this Court.

Plaintiffs' Interim Class Counsel and Mr. Rothman (through counsel) began settlement negotiations in June 2012.  Gassman Decl. ¶ 3.  At in-person and telephonic meetings, the terms of the settlement were vigorously negotiated among sophisticated counsel experienced in antitrust law and class actions.  Gassman Decl. ¶ 5.  Plaintiffs and Mr. Rothman finalized their settlement on December 20, 2012 and executed the Settlement Agreement.  Gassman Decl. ¶ 7; Gassman Decl. Ex. A.   Immediately upon finalizing the agreement, Mr. Rothman began providing cooperation to assist Plaintiffs in drafting their Consolidated Complaint. Gassman Decl. ¶ 8.  Since that time, through his counsel, he has provided additional cooperation, and Interim Class Counsel anticipate that he will continue to do so.  Gassman Decl. ¶ 9.

Plaintiffs' Consolidated Complaint was filed on December 21, 2012.  Consol. Compl., December 21, 2012, Docket No. 113.  Pursuant to the terms of the Settlement Agreement, the Consolidated Complaint was not served on Mr. Rothman.  Gassman Decl. Ex. A. at ¶¶ 25, 36.  On February 12, 2013, Mr. Rothman deposited a monetary payment of $200,000 into an interest-bearing, U.S. Treasury guaranteed escrow account, representing payment in full.  Gassman Decl. ¶ 10.  Plaintiffs notified this Court of the proposed settlement on January 29, 2013.  *See* Letter from Bruce Greenberg Regarding Settling Defendants, Jan. 29, 2013, Docket No. 176.

On March 8, 2013, the non-settling Defendants filed motions to dismiss the Consolidated Complaint, which are now pending before this Court[1].   Because the proposed Settlement Agreement provides that all proceedings as to Mr. Rothman shall be stayed pending preliminary approval and final approval of the agreement, and that Plaintiffs agree that they "shall not pursue the Action" against Mr. Rothman, he did not file an answer or a motion to dismiss the

---

[1] Plaintiffs have reached settlements with ten Defendants, not including Mr. Rothman. Plaintiffs will file a motion for preliminary approval of these settlements at a later date.

Consolidated Complaint.  *See* Letter from Bruce Greenberg Regarding Settling Defendants, Jan. 29, 2013, Docket No. 176.

## II.    THE SETTLEMENT AGREEMENT

The Settlement Agreement is the product of extensive negotiations involving experienced counsel over the course of several months.  Gassman Decl. ¶ 5.  The Settlement Agreement provides for a release of Settlement Class members' claims in exchange for a meaningful cash payment and cooperation with Plaintiffs regarding the bid-rigging claims asserted in their operative Complaint.  The key components are discussed below.

### A.    The Proposed Settlement

This settlement agreement resolves all claims against Mr. Rothman for his part in the alleged conspiracy to manipulate interest rates associated with TSCs sold at public auctions in New Jersey during the period January 1, 1998 through February 28, 2009.  Gassman Decl. Ex. A at ¶¶ 5, 17, 44-46.  The proposed Settlement Class is defined as:

> All persons who owned real property in the State of New Jersey who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above zero percent.

Gassman Decl. Ex. A at ¶ 17.

The primary component of Mr. Rothman's settlement agreement is the extensive cooperation he has agreed to provide the putative class in litigating their claims against the remaining Defendants.  Mr. Rothman agreed to provide (and will continue to provide) Plaintiffs with substantial and valuable cooperation in the prosecution of the case against the remaining Defendants. Gassman Decl. Ex. A at ¶ 23.  His obligations, to be performed subject to the DOJ's approval, include: (i) providing a full account of all known facts relevant to this litigation, including his relevant knowledge of the industry and market participants; (ii) producing relevant

documents relating to TSC purchases and damages, as well as documents sufficient to evidence collusive meetings and how the conspiracy was formed, implemented, and enforced; (iii) making himself available for interviews and depositions; (iv) using reasonable efforts to make individuals who purchased TSCs on his behalf available for interviews or depositions; and (v) making himself available to testify at trial. Gassman Decl. Ex. A at ¶ 23.

In addition, Mr. Rothman has agreed to a monetary payment of $200,000, which Mr. Rothman deposited into a U.S. Treasury guaranteed escrow account on February 12, 2013, representing payment in full.   Gassman Decl. ¶ 10.  In addition to that lump-sum payment, Mr. Rothman agreed to additional relief in connection with certain TSCs acquired during the class period.   Specifically, as to *all* TSCs acquired during the Class Period that Mr. Rothman possessed at the time of settlement, and "that were purchased at auction at an interest rate above zero percent such that no premium was paid," Mr. Rothman agreed:  (1) not to initiate any foreclosure proceedings until 60 days after final approval of the Settlement, and (2) within 30 days after final approval of the Settlement, to offer to redeem those TSCs to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 10% of the accrued interest amount.  Gassman Decl. Ex. A at ¶ 22. This offer represents substantial value to the property owners of allegedly colluded TSCs currently held by Mr. Rothman.

**B.    Dismissal With Prejudice and Release of Claims**

In exchange for these significant benefits to Settlement Class members, the Settlement Agreement provides that all participating members in the Settlement Class will fully release Mr. Rothman and the related entity, Rothman Realty Corp., from all federal and state law claims relating in any way to his conduct concerning any agreements to rig bids or allocate tax liens in connection with the auction of TSCs in New Jersey during the Class Period.  Gassman Decl. Ex.

A at ¶¶ 44-46.  The release does not, however, include claims against Mr. Rothman relating to payment disputes, physical harm, bodily injury, claims against any non-settling Defendant (should any exist as none have been raised), or claims of Settlement Class members outside of the Class Period.  Gassman Decl. Ex. A at ¶ 47.

### C.    Notice

Plaintiffs propose, with Mr. Rothman's consent, that class notice be deferred.  *See infra* at Part VI.  Accordingly, any distribution of the settlement funds would also be deferred, such that at the time of distribution, there will be additional settlement funds from other settling defendants to distribute.  Gassman Decl. Ex. A at ¶ 34.

Deferring allocation of settlement funds is a common practice in cases where claims against other defendants remain.  *See* Manual for Complex Litigation (Fourth), § 21.651 (2011); *In re Processed Egg Prods. Antitrust Litig*., 284 F.R.D. 249, 276 (E.D. Pa. 2012) (quoting 1 A. Conte & H. Newberg, Class Actions § 12:35 (5th ed. 2011)) ("The plan of allocation is usually submitted with the settlement agreement for consideration at the settlement hearing, though it may be deferred until a later date with court approval.").  Given the requirements of notice and a fair allocation, piecemeal distribution of each settlement will be expensive, inefficient, and time-consuming.  Indeed, deferral would permit distribution of the settlement proceeds paid by Mr. Rothman to be combined with the distribution of additional settlement class funds in this case: at this time, ten other Defendants have already notified this Court of their settlements, and Plaintiffs' Interim Class Counsel expect additional settlements in the near future.  *See* Letter from Bruce Greenberg Regarding Settling Defendants, Mar. 8, 2013, Docket No. 176; Letter from Bruce Greenberg Enclosing Settlement Agreements, Mar. 19, 2013, Docket No. 200; Gassman Decl. Ex. A at ¶ 23.  Combining the distribution of the proceeds of Mr. Rothman's

settlement agreement with those for as many defendants as possible will allow the parties to avoid unnecessary out-of-pocket costs as well as multiple confusing distributions.  It will also reduce the burden on the Court of overseeing several rounds of distributions.  Thus, to avoid confusion to class members, and to facilitate the full understanding of relief afforded by the litigation, Plaintiffs propose deferring notice until the aggregate proceeds from Mr. Rothman's settlement agreement and settlements with other Defendants amount to at least $1,000,000 (excluding notice costs), or for two years following the entry of the proposed Preliminary Approval Order, whichever is earlier.  Until that time, any settlement funds not used to pay prior out-of-pocket expense or future litigation costs will accrue interest for the benefit of the class. Gassman Decl. Ex. A at ¶ 21.

## ARGUMENT

### I.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT

Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the burden on judicial resources.  As a result, "[c]ompromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  This is "particularly [true] in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the court "encourage[s] settlement of complex litigation 'that otherwise could linger for years'").  The proposed Settlement Agreement here meets all the requirements for preliminary approval by the Court.

### A.      Class Action Settlement Procedure

Federal Rule of Civil Procedure 23 sets forth a procedure and specific criteria for class action settlement approval. *Smith v. Prof'l Billing & Mgmt. Servs*., Civ. No. 06-4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007). That approval procedure includes three distinct steps:

1.      Preliminary approval of the proposed settlements.

2.      Dissemination of notice of the settlements to all affected class members.

3.      A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlements, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlements.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *In re GMC*, 55 F.3d at 785; *Hanlon v. Palace Entm't Holdings, LLC*, No. 11-987, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (explaining that at the preliminary approval phase, the "court must only 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms'" (quoting Manual for Complex Litigation (Fourth), § 21.632 (2011))). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Smith*, 2007 WL 4191749, at *1 (internal quotation marks omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.*

By way of this motion, Plaintiffs respectfully request that the Court take the first steps in the settlement approval process and certify the proposed Settlement Class, preliminarily approve the Settlement Agreement with Mr. Rothman, and appoint Plaintiffs' Interim Class Counsel as Class Counsel for these settlements. While consideration of the requirements for final approval

is unnecessary at this stage, all of the relevant factors weigh in favor of the settlements proposed here. The proposed Settlement Agreement is fair, adequate, and reasonable. Therefore, the Court should preliminarily approve the settlement and certify a settlement class.

**B.  The Settlement Is Fair, Reasonable, and Adequate**

This Settlement Agreement represents the culmination of extensive and intensive arm's-length negotiations over the course of several months. Gassman Decl. ¶ 5. Plaintiffs were represented in the settlement negotiations by a team of attorneys who have had considerable experience in federal antitrust class actions, and who are therefore well versed in the issues. Gassman Decl. ¶ 4. Mr. Rothman was similarly represented by counsel with extensive experience defending federal antitrust class actions. The settlement negotiations were contested and conducted in the utmost of good faith. Gassman Decl. ¶ 6.

Through those extensive discussions, counsel for both parties were able to craft an appropriate Settlement Agreement given the case alleged.

The primary consideration for Mr. Rothman's settlement agreement was the substantial cooperation he has pledged to continue to provide. Courts have approved early settlements, such as this one, because of their many benefits to the class and their supportive nature to uncovering the participants involved in an alleged conspiracy. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). Mr. Rothman's cooperation here represents considerable value to the putative Settlement Class, because it has and will continue to save time, reduce costs, and provide access to information and documents regarding the bid-rigging conspiracy that might otherwise not be readily available to Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement").

With respect to the monetary consideration contained in the Settlement Agreement, there are two distinct benefits to the Settlement Class.  First, Mr. Rothman agreed to make a lump sum payment available to all members of the class.  Gassman Decl. Ex. A at ¶ 21.  The lump sum payment of $200,000 was arrived at following extensive negotiations between the parties as to the damage inflicted by Mr. Rothman's conduct to the proposed settlement class, as well as the fact that he faced joint and several liability for the other defendants' conduct.  Second, Mr. Rothman agreed to additional relief related to *all* TSCs purchased during the putative class period that he retained at the time the Settlement Agreement was executed.  Gassman Decl. Ex. A at ¶ 22.  Specifically, with respect to the TSCs in his possession, Mr. Rothman agreed:  (1) not to initiate any foreclosure proceedings until 60 days after final approval of the Settlement, and (2) within 30 days after final approval of the Settlement, to offer to redeem those TSCs to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 10% of the accrued interest amount.  Gassman Decl. Ex. A at ¶ 22.

Given these benefits, the proposed Settlement Agreement falls well within the range of reasonableness.  Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class is presented for court approval."  Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* at 11.41 (4th ed. 2002).  Counsel's judgment that the settlement is fair and reasonable is entitled to great weight.  *See E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991) *aff'd sub nom*. *Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to  the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." (internal quotation marks omitted)); *accord Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal. Dec. 2, 2008); *Rutter & Witbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288-89 (D. Colo.1997).

The benefits to the Settlement Class are reasonable and fair given the inherent risks of continued litigation.  The value of a cooperation-focused settlement at this early stage of litigation is particularly high, when numerous procedural steps remain, including pending motions to dismiss, class certification, *Daubert* motions, summary judgment, trial, and any appeals.  Each of those stages presents litigation risk, which the Settlement Agreement not only avoids, but which the cooperation provided will be pivotal in addressing.  Absent the settlement, Plaintiffs understand that Mr. Rothman would contest Plaintiffs' claims.

Finally, this early settlement should help to expedite the litigation of this case, while not prejudicing any of the remaining Defendants.  "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).  Courts regularly approve partial settlement prior to decision on the certification of a litigation class.  *See Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 436 (E.D. Pa. 2008) (concluding that "it is proper for the Court to preliminarily certify the settlement classes at this juncture, provided that the grant of preliminary approval is without prejudice to the defenses and

positions of the non-settling Defendants as to any issue, including certification of the litigation classes"); *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671 (D. Kan. 2009).

Here, where Mr. Rothman is one of two very early settlements, the significant value of this "ice breaker" or early settlement greatly increases the likelihood of future settlements:

> The Court also notes that this settlement has significant value as an 'icebreaker' settlement—it is the first settlement in the litigation--and should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations.

*In Re Linerboard*, 292 F. Supp. 2d at 643 (citing *In re Corrugated Container Antitrust Litig*., MDL No. 310, 1981 U.S. Dist. LEXIS 11004, at *19 (S.D. Tex. Jan. 27, 1981)). Granting preliminary approval of the Rothman settlement will not adversely affect the remainder of the case or unfairly prejudice the settlement class members' claims against the non-settling Defendants.[2] On the contrary, the settlement will speed the resolution of the case by removing a defendant and by providing Plaintiffs with additional information vital to proving their case, thereby reducing the need for extensive discovery.

The Third Circuit has "explicitly recognized with approval" the "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Id.* at 595 (quotation marks omitted); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297 (D. N.J. 1995) (burden on crowded court dockets to be considered).[3] Continued litigation of this case

---

[2]    The settlement agreement specifically provides that Mr. Rothman's purchase of TSCs during the Class Period shall remain in the case for the purposes of joint and several liability.

[3]    *See also In re Warfarin*, 391 F.3d at 535 ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re GMC*, 55 F.3d at 784 ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Sch.*

would be long, complex, expensive, and a burden to this Court's docket, yet another factor favoring approval. This case promises to be extensively and contentiously litigated—indeed, the Court has before it twelve motions to dismiss the Plaintiffs' Consolidated Complaint (as well as two Answers to that Complaint). *See* Docket Nos. 130, 165, 173, 174, 177, 178, 180, 182, 185-188, 191, 193. Approving the Settlement Agreement will not only begin to reduce that litigation burden but will provide Plaintiffs with the benefit of Mr. Rothman's continued and valuable cooperation. The Court should therefore grant the motion for preliminary approval of the proposed Settlement Agreement.

## II.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court should preliminarily certify the proposed Settlement Class because it meets all applicable requirements of Federal Rule of Civil Procedure 23. Certification of a settlement class is appropriate where the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are satisfied. *See* Fed. R. Civ. P. 23(e). In addition, a settlement class must satisfy one of the three subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). In analyzing Rule 23's elements, this Court "may take the terms of the proposed settlement into consideration. The central inquiry . . . is the adequacy of representation." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 300 (3d Cir. 2005).

Certification of a settlement class seeking damages outside the limited fund context requires satisfaction of the requirements of Rule 23(b)(3). *Amchem Prods.*, 521 U.S. at 614; *id.* at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the

---

*Asbestos Litig.*, 921 F.2d at 1333 (the court "encourage[s] settlement of complex litigation that otherwise could linger for years").

proposal is that there be no trial.  But other specifications of the rule . . . demand undiluted . . . attention in the settlement context.").  In other words, the Court must be satisfied that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

###### A.      The Settlement Class Is Numerous

The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement.  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, although the exact number of potential members of the Settlement Class is unknown, Plaintiffs estimate that there are several thousand potential class members based on the number of TSCs that may have been affected by the alleged conspiracy during the class period.  Gassman Decl. ¶ 12. Thus, the numerosity requirement is satisfied.  *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990); *see also Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989)("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity.") (citation omitted).

###### B.      There Are Common Questions of Law and Fact

The proposed Settlement Class also satisfies Rule 23(a)'s commonality requirement.  "[A] finding of commonality does not require that all class members share identical claims."  *In re Warfarin*, 391 F.3d at 530 (quotation marks omitted).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted).

15

Here, there are common questions of law and fact that go to the central issue in this matter—that is, whether the Defendants engaged in a conspiracy to manipulate interest rates associated with TSCs sold at public auctions throughout the State of New Jersey, thereby injuring Plaintiffs when they paid more in interest payments than they would have paid absent the alleged bid-rigging conspiracy.

The allegations of the bid-rigging conspiracy give rise to numerous common questions of law or fact:

a.   Whether Defendants conspired with others to fix bids and allocate TSCs at auctions in New Jersey, in violation of the Sherman Act and New Jersey's Antitrust Act;

b.   Whether Defendants' conduct had the anticompetitive effect of reducing and unreasonably restraining the market for the purchase of TSCs;

c.   The names of the individuals and entities who participated in the anticompetitive scheme;

d.   The duration of the anticompetitive scheme;

e.   The effect of Defendants' conduct and the extent of injuries sustained; and

f.   The amount of damages the anticompetitive scheme caused members of the class.

These questions revolve around the existence, scope, effectiveness, and implementation of Defendants' conspiracy and are central to the claims of each member of the Settlement Class. Thus, the proposed Settlement Class satisfies the commonality requirement.

## C.   The Named Plaintiffs' Claims Are Typical

The proposed Settlement Class also satisfies Rule 23(a)'s typicality requirement.  The commonality and typicality requirements of Rule 23(a) "tend to merge."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Rule 23(a)(3)'s "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Warfarin*, 391 F.3d at 531

(quotation marks omitted).  "A named Plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 WL 2085357, at *3 (D.N.J. July 16, 2007).

In this case, the claims of the Named Plaintiffs—Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Arlene Davies, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.—are typical of the claims of the proposed Settlement Class members because they all arise from the same bid-rigging conspiracy that gives rise to the claims of the class.  Plaintiffs assert the same legal claims on behalf of themselves and the proposed class; namely, that they sustained damages as a result of Defendants' common course of conduct in violation of the antitrust laws.  Defendants' bid-rigging scheme for TSCs is the basis for the claims of every Named Plaintiff and putative class member.  These similarities satisfy Rule 23(a) typicality.

### D.    The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Settlement Class

The Named Plaintiffs will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quotation marks omitted).  Here, the interests of the Named Plaintiffs and the putative Settlement Class members are aligned because they all suffered similar injury in the form of inflated interest rates due to the alleged collusion at TSC auctions.  By proving their own claims, the Named Plaintiffs would necessarily help to prove the claims of their fellow putative Settlement Class members.  Gassman Decl. ¶ 13.  In addition, the Named Plaintiffs have no interests that are antagonistic to the Class.  Gassman Decl. ¶ 14.  Further, Interim Class

17

Counsel are experienced class-action litigators familiar with the legal and factual issues involved, and they have competently and aggressively prosecuted this complex case.  Gassman Decl. ¶ ¶ 4, 15.  Thus, for settlement purposes, the adequacy requirement is satisfied.

### E.   The Proposed Settlement Class Satisfies Rule 23(b)(3)

The proposed Settlement Class also satisfies the requirements of Rule 23(b)(3)—predominance and superiority.  Rule 23(b)(3) provides that a class may be certified if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.   Common Questions of Law and Fact Predominate

First, the common questions identified above predominate over individual questions in this case.  "Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods.*, 521 U.S. at 625.  "The focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011) (explaining that to show that common questions predominate with respect to antitrust injury, plaintiffs must "demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members"), *cert. denied*, 132 S. Ct. 1876 (2012); *Behrend v. Comcast Corp.*, 655 F.3d 182, 197 (3d Cir. 2011), *rev'd on other grounds by Comcast Corp. v. Behrend*, No. 11–864, 2013 WL 1222646 (U.S. Mar. 27, 2013).  However, "approval of settlement class actions is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be

settled."  4 Newberg on Class Actions § 11:41 (4th ed. 2012); *see also, e.g.*, *Sullivan*, 67 F.3d at 298 (certifying a settlement class despite the fact that variances in state law would likely have defeated predominance if the class was being certified for trial).

Here, Plaintiffs will necessarily focus on the conduct of the Defendants, rather than the conduct of individual class members, to demonstrate that the bid-rigging conspiracy existed. Proof of how Defendants implemented and enforced their conspiracy will be common for all Settlement Class members, because it will be predicated on establishing the existence of Defendants' conspiracy to manipulate TSC interest rates across New Jersey during the relevant class period.  *Sullivan*, 667 F.3d at 298; *see, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 268 (3d Cir. 2009) (finding predominance by determining that the elements of a Sherman Act violation for concerted anticompetitive activity focused on "the conduct of the defendants"); *see also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002) ("[C]ommon issues [ ] predominate here because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did.") (citation & quotations omitted).  As a result, common issues relating to the existence and effect of the alleged conspiracy to manipulate TSC interest rates predominate over any questions arguably affecting individual class members.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Class adjudication of Plaintiffs' claims here would be superior to individual trials, and joinder of all Settlement Class members is impracticable.  The class action mechanism is superior to its alternatives, particularly with respect to settlements, because it ensures that the claims of the absent class members will be resolved efficiently.  *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, at

*9 (D.N.J. Aug. 8, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy"). And "[i]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure § 1781 at 254-55 (3d ed. 2004).

Absent class certification, many members of the proposed Settlement Class here would go uncompensated because they would lack adequate monetary incentives to pursue their claims individually. *See O'Brien*, 2012 WL 3242365, at *9 (finding superiority because, *inter alia*, it was "not apparent that the money potentially recoverable by an individual class member as compared to the cost to pursue recovery through a lawsuit is sufficient to make individual litigation a realistic possibility"). The prosecution of separate actions by individual members of the proposed class would impose heavy burdens on the courts and the Defendants, and would create a risk of inconsistent rulings, which further favors class treatment. Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Therefore, a class action is the superior method of adjudicating the claims raised in this case.

Because the proposed Settlement Class meets the requirements of Rule 23(a) and 23(b)(3), it should be certified.

## III. THE COURT SHOULD APPOINT PLAINTIFFS' INTERIM CLASS COUNSEL AS SETTLEMENT CLASS COUNSEL

Rule 23(c)(1)(B) states that an order certifying a class action "must appoint class counsel under Rule 23(g)." The court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge

of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

On October 22, 2012, after considering competing motions, the Court appointed Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP as Interim Class Counsel, and Lite DePalma Greenberg, LLC as Interim Liaison Counsel. Order of Oct. 22, 2012, Docket No. 109. The work done by Interim Class Counsel since their appointment provides a substantial basis for a finding that they satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as Settlement Class Counsel. Gassman Decl. ¶ 15. These firms have "performed a great deal of work investigating the facts underlying these cases and have otherwise prepared these cases for a putative class action"; and they have negotiated and executed settlement agreements with ten other Defendants. Gassman Decl. ¶ 15; *see also* Memorandum Opinion of Oct.22, 2012, Docket No. 108; Letter from Bruce Greenberg Regarding Settling Defendants, Mar.8, 2013, Docket No. 176; Letter from Bruce Greenberg Enclosing Settlement Agreements, Mar. 19, 2013, Docket No. 200. Accordingly, Interim Class Counsel should be appointed as Settlement Class Counsel.

## IV.   THE COURT SHOULD DEFER NOTICE

Plaintiffs seek (with Mr. Rothman's consent), Gassman Decl. ¶ 18, this Court's approval to defer class notice of this partial settlement until the aggregate proceeds from Mr. Rothman and settlements with other Defendants amount to at least $1,000,000, or for two years following the entry of the proposed Preliminary Approval Order, whichever is earlier. Such joint notice will increase efficient use of the settlement fund paid by Mr. Rothman, and avoid unnecessary confusion to the class. *See In re Air Cargo Shipping Services Antitrust Litig.*, MDL. No. 1775, 06-md-1775 (E.D.N.Y. 2011) (granting preliminary approval to the settlement with El Al Israel Airlines Ltd. while finding that class counsel has proposed to submit notice plans at a later date); *In re Processed Egg Prod. Antitrust Litig.*, MDL No. 2002, 08-md-2002 (E.D. Pa. Oct. 23, 2009)

(granting preliminary approval of settlement with defendant Sparboe while noting that plaintiffs were not seeking approval of a form and notice plan at the time); *cf. Janovici v. DVI, Inc.*, No. Civ-A-2:03-cv-04795-LD, 2003 WL 22849604 (E.D. Pa. Nov. 25, 2003) (noting that multiple notices with differing deadlines "certainly could have created confusion among potential class members"); *Gomez v. Rossi Concrete Inc.*, 08-cv-1442-BTM-CAB, 2011 WL 666888 (S.D. Cal. Feb. 17, 2011) (noting possibility that multiple notices may "create confusion for potential class members"). Indeed, deferral would permit the combination of several settlement class notices in this case: at this time, ten other Defendants have already notified this Court of their settlements, and Plaintiffs' Interim Class Counsel expect additional settlements in the near future. Gassman Decl. ¶ 17. Combining the notice of the settlement with Mr. Rothman with those for as many other defendants as possible will avoid unnecessary costs as well as duplicative and confusing notices. *Id.* It will also reduce the burden on the Court of overseeing several rounds of class notice. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal. May 3, 2010) (order granting preliminary approval of partial class settlement and deferring notice "[t]o avoid the possible duplication of class notices").

Rule 23(c)(2) provides that class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2). Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]." Fed. R. Civ. P. 23(e)(1). "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment." *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

Mr. Rothman has agreed to supply Interim Class Counsel with the names and addresses of potential Settlement Class members within 30 business days after the entry of the proposed Preliminary Approval Order. Gassman Decl. Ex. A at ¶ 40. Interim Class Counsel has also agreed to undertake all reasonable efforts to obtain the names and addresses of potential Settlement Class members from the non-settling Defendants and other sources. *Id.* at ¶ 51.

Plaintiffs agree to provide proper notice and will detail all notice requirements in a subsequent motion to be filed with this Court. The precise contours and content of that notice will necessarily be determined based on the terms of the settlements that have been preliminarily approved. Consistent with the requirements of Rule 23(c)(2), the notice will state "in plain, easily understood language" information about:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In addition, consistent with Rule 23(e) and due process, the notice will inform class members about the settlement's general terms, that the class members can seek complete information from the court files; and that any class member may appear and be heard at a Fairness Hearing. *See Meijer, Inc. v. 3M*, Civ. No. 04-5871, 2006 WL 2382718, at *10 (E.D. Pa. Aug. 14, 2006). "Although the notice need not be unduly specific, the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Id.* (internal quotation marks omitted).

The Plaintiffs respectfully request that the Court defer finalizing the form of notice until such time as the additional settlements are presented to the Court.

## CONCLUSION

For the foregoing reasons, the Parties respectfully ask the Court (1) to certify the proposed Settlement Class, (2) to preliminarily approve the Settlement, (3) to appoint Interim Class Counsel as Settlement Class Counsel, (4) to defer the dissemination of class notice until the aggregate proceeds from Mr. Rothman and the settlements with other Defendants amount to at least $1,000,000, or for two years following the entry of the proposed Preliminary Approval Order, whichever is earlier.

Dated: April 4, 2013                    Respectfully submitted,

                                        **LITE DePALMA GREENBERG, LLC**
                                          */s/ Bruce D. Greenberg*
                                           Bruce D. Greenberg
                                        Steven J. Greenfogel
                                        Two Gateway Center, Suite 1201
                                        Newark, New Jersey 07102-5003
                                        (973) 623-3000

                                        *Interim Liaison Counsel*

**HAGENS BERMAN SOBOL**          **HAUSFELD LLP**
**SHAPIRO**                      Michael D. Hausfeld *(admitted pro hac vice)*
**LLP**                          James Pizzirusso *(admitted pro hac vice)*
Steve W. Berman *(admitted pro hac vice)*   Seth R. Gassman *(admitted pro hac vice)*
1918 Eighth Avenue, Suite 3300   1700 K Street, NW, Suite 650
Seattle, WA 98101                Washington, DC 20006
Telephone: (206) 623-7292        Tel: 202-540-7200
Facsimile: (206) 623-0594        Fax: 202-540-7201
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL**
**SHAPIRO LLP**
Jason A. Zweig *(admitted pro hac vice)*
New York, NY 10119555 Fifth Avenue,
17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980

Email: jasonz@hbsslaw.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

IN RE NEW JERSEY TAX
SALES CERTIFICATES
ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Notice of Motion of Plaintiffs' Motion for Preliminary

Approval of Settlement, Preliminary Certification of Settlement Class, Appointment of Interim

Class Counsel as Settlement Class Counsel, and Deferral of Class Notice; Memorandum of Law

in support thereof; Declaration of Seth Gassman in support thereof  and accompanying exhibit;

proposed form of Order; and Certificate of Service were electronically filed and served upon all

counsel via the court's CM/ECF filing system

**LITE DePALMA GREENBERG, LLC**

Date:  April 4, 2012

_/s/ Bruce D. Greenberg_____
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

_Interim Liaison Counsel_