Basilis N. Stephanatos, PhD, JD
Plaintiff, Pro Se
P.O. Box 0520
Tenafly, New Jersey 07670-0520
Phone: (973) 897-8162/Fax: (973) 810-0440
bstephanatos@gmail.com

April 12, 2013

The Honorable Michael A. Shipp, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & Courthouse
402 East State Street
Room 2020
Trenton, New Jersey 08608

Phone-Chambers: (609) 989-2009
Fax: (609) 989-0463

RECEIVED

APR 1 7 2013

AT 8:30_____M
WILLIAM T. WALSH, CLERK

William T. Walsh, Clerk of the Court
U.S. District Court
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07101

Clerk's Office Tel.: *Phone (973) 645-3730*

RE:   Request for Judicial Notice

*In re New Jersey Tax Sales Certificates Antitrust Litigation*
Master Docket No. 3:12-CV-01893-MAS-TJB

And

*Stephanatos v. Wayne Township, American Tax Funding, et al*
Case No. 02:12-cv-01793-FSH-PS

I am submitting one (1) original of a **Request for Judicial Notice** pursuant to
Federal Rule of Evidence 201, of court documents, administrative findings and other
public documents associated with the case No. 02:12-cv-01793-FSH-PS and the
defendants' American Tax Funding, LLC, Matthew A. Marini and Justin F.
Weisenbacher filings with the Florida Secretary of State.  These documents are publicly

1

available and easily verified.  Via separate cover I submitted a courtesy copy of this request to the judges' chambers.

Respectfully Submitted,

Basilis N. Stephanatos, PhD, JD
Plaintiff Pro Se

cc:    All counsel of record
       The Hon. Michael A. Shipp, U.S. Judge, Trenton, NJ
       The Hon. Tonianne J. Bongiovanni, U.S. Magistrate Judge, Rm. 6052, Trenton, NJ
       The Hon. S. Faith Hochberg, U.S. Judge, Newark, NJ

RECEIVED

APR 1 7 2013

AT 8:30_____M
WILLIAM T. WALSH, CLERK

Basilis N. Stephanatos, PhD, JD
Plaintiff, Pro Se
P.O. Box 0520
Tenafly, NJ 07670-0520
Ph.: (973) 897-8162
Fax: (973) 810-0440
Email: bstephanatos@gmail.com

RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

APR 1 7 2013

AT 8:30_____M
WILLIAM T. WALSH, CLERK

|  |  |
|---|---|
| In re New Jersey Tax Sales Certificates Antitrust Litigation | ) ) ) ) ) Master Docket No. 3:12-CV-01893-MAS-TJB ) ) ) ) ) |

**REQUEST FOR JUDICIAL NOTICE**

Plaintiff, Basilis N. Stephanatos, Pro Se, hereby requests the Court to take Judicial Notice, pursuant to Federal Rule of Evidence 201, of court documents, administrative findings and other public documents associated with the case **Stephanatos v. Wayne Township, American Tax Funding, et al,** case No. 02:12-cv-01793-FSH-PS. These court documents are publicly available and easily verified.

## I.   BACKGROUND

Plaintiff has filed the following antitrust claims against the defendants in both the **Stephanatos v. Wayne Township, American Tax Funding, et al,** case and in this present case.

Antitrust Claim #1: Beginning as early as January 1, 1998 through the present, defendants and their co-conspirators engaged in a continuing contract, combination or

1

conspiracy with respect to the sale of Tax Sale Certificates in the State of New Jersey in unreasonable restraint of trade and commerce in violation of Section One of the Sherman Act, 15 U.S.C. § 1.

Antitrust Claim #2: Beginning as early as January 1, 1998 through the present, defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Tax Sale Certificates in the State of New Jersey in monopolization, attempts to monopolize, and conspiring to monopolize trade and commerce in violation of Section Two of the Sherman Act, 15 U.S.C. § 2.

As a result of defendants' unlawful conduct, Plaintiff has been injured in his businesses and property in that he has paid more interest than he should have in the absence of defendants' unlawful conduct.  The defendants committed numerous other state and federal law violations, including the forceful taking of his business and home while appeals were pending, causing him millions of dollars in damages for a small amount of questionable taxes.  These additional claims are not part of these antitrust claims, however they do provide evidence of racketeering and criminal and conspiratory activities by these defendants.  Plaintiff has filed a 20-count complaint against the defendants in the U.S. District Court in Newark, New Jersey in March 2012; to date, none of the claims have been dismissed by the Newark court and in fact, the federal court in that case denied requests by these defendants to submit summary judgment motion or to dismiss the entire action.

The plaintiff requests this court to take judicial notice of ***Stephanatos*** materials:

2

- Pleadings, motion papers, proceedings, orders and exhibits from ***Stephanatos v. Wayne Township, American Tax Funding, et al.***, case No. 02:12-cv-01793-FSH-PS.

The ***Stephanatos*** materials are relevant to this and other plaintiffs' request that this court denies these defendants' Motion to Dismiss.  The plaintiff believes the court should be aware of the developments in the ***Stephanatos*** case, including the filing of detailed factual information regarding the conspiratory and anti-competitive acts of the defendants.

The court should also note that Judge Hochberg and Magistrate Judge Shwartz have not dismissed to date a single claim against the defendants; more than twenty (20) claims have been filed against them and additional claims will be filed as soon as Judge Hochberg allows me to do so.  The court should also note that Judge Hochberg and Magistrate Judge Shwartz denied a request by the defendants to file motions for summary judgment.  **These defendants continue to refuse to respond or to otherwise answer to the very specific factual allegations of the Plaintiff**; instead they make general derogatory remarks about school taxes without mentioning that Plaintiff's home had been affected by flooding that reduced its value and had been over assessed by the Wayne Township by over forty (40) percent.  Due to this over assessment, all assessments and liens were invalid as a matter of law.

The plaintiff also requests the court to take judicial notice of certain filings of the defendants with the Florida Secretary of State, evidencing conscious decisions by the defendants to mislead the public authorities regarding their organization, and/or to avoid taxation and/or to hide their assets and/or for money laundering and/or for racketeering

3

activities.   The court should also take notice that the insurance companies of the defendants have refused to both defend and indemnify the claims against them.

## II.   DISCUSSION

Both at common law and under the Federal Rules, most proof is presented by means of testimonial evidence or by the offering documentary evidence.  But there is an exception to the requirement that a party who relies on a certain proposition must prove it; judicial notice.  Rule 201 of the Federal Rules of Evidence governs judicial notice, providing that facts noticed may not be subject to reasonable dispute and specifying certain procedural requirements that must be followed.

Rule 201(b) permits a district court to take judicial notice, **at any stage of the proceedings**[1], of facts that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Fed. R. Evid. 201(b), Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

For the court to take judicial notice, the adjudicative facts cannot be disputed. *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). "Judicial notice

---

[1] See *Fed. R. Evid. 201(d).* Timing. The court may take judicial notice at any stage of the proceeding.

4

is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties." *General Elec. Capital v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). Judicial notice "substitutes the acceptance of a universal truth for the conventional method of introducing evidence." Id. The court can take judicial notice of filings in other proceedings to establish the fact of such litigation and related filings. *Opoka v. Immigration & Naturalization Service,* 94 F.3d 392, 395 (7th Cir. 1996) (*citing United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation.")). Court documents from another case may be used to show that the document was filed, that party took a certain position, and that certain judicial findings, allegations or admissions were made. *General Elec. Capital v. Lease Resolution*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records. . . . Like other court records, judicial approval of a class action settlement is an appropriate subject for judicial notice because it is a source whose accuracy cannot reasonably be questioned.") (internal quotations and citations omitted)).

Facts also may be shown to be subject to judicial notice, after the opposing party has had an opportunity to proffer contradictory evidence.[2] For example, the Third Circuit has held this rule to permit judicial notice of properly authenticated documents filed with the SEC. See *Oran v. Stafford*, 226 F.3d 275, 289 (3rd Cir. 2000). In taking judicial notice of these documents, the Court may rely upon them "to determine what the

---

[2] *See* Fed. R. Evid. 201; *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 332 (1949); William J. Flittie, *Judicial Notice in the Trial of Complex Cases,* 31 Sw. L.J. 819, 829–39 (1978).

documents stated." *Id.* (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991)). See also *Bulatov v. Hendricks,* U.S. District Court-NJ, Docket No. 2:11-cv-00845-FSH, "*This Court will take judicial notice of the dockets of this and other federal courts in cases related to this Petition.*"

Similarly, a court may take judicial notice of executive and agency determinations. *See Waid v. Merrill Area Public Schools,* 130 F.3d 1268, 1272 (7th Cir. 1997) (discussing court's discretion to take judicial notice of agency fact finding). The court in *Opoka v. I.N.S.* explained: This court . . . has the power, in fact the obligation, to take judicial notice of the relevant decisions of courts and administrative agencies, whether made before or after the decision under review.

Determinations to be judicially noticed include proceeding[s] in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue. 94 F.3d at 394 (internal quotations and citation omitted). "[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." Id. (taking judicial notice of immigration service's decision to suspend deportation to appellant-alien's wife).

In *re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1331 (3rd Cir. 2002) (finding that judicial notice could be properly taken with respect to "three different categories of *documents* [which] included: (1) documents relied upon in the Complaint ([including the defendant's] press releases); (2) documents filed [by the defendant] with the SEC; and (3) stock price data compiled by [a reliable financial] news service") (emphasis supplied); accord *Jackson v. Broad. Music, Inc.,* 2006 U.S. Dist. LEXIS 3960, at *18

(S.D.N.Y. Jan. 31, 2006) ("the court may take judicial notice of public *records* and of '*admissions in pleadings* and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action' without converting the motion into one for summary judgment") (emphasis supplied, quoting *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002), and citing *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005)).

Conversely, judicial notice is improper if a legitimate question exists as to the underlying source of the information. See *Hinton v. Dep't of Justice*, 844 F.2d 126 (3d Cir. 1988); see also *Oneida Indian Nation of New York v. State of N.Y.*, 691 F.2d 1070 (2d Cir. 1982). Thus, while matters of which judicial notice may be taken include facts capable of immediate and certain verification by resort to sources whose accuracy is beyond dispute, accord *Dashiell v. Meeks*, 396 Md. 149, 174-75 (2006), accurate records or other sources of a judicially-noticed fact must necessarily exist and be known to the court to enable even the very consideration of whether the fact is amenable to judicial notice. Cf. *State v. Green*, 890 So. 2d 1283 (Fla. Dist. Ct. App. 2d Dist. 2005).

Judicial notice generally doesn't extend to the truth of the matters that were asserted in the other judicial proceeding. *General Elec. Capital v. Lease Resolution*, 128 F.3d 1074 (7th Cir. 1997) (noting that the court cannot generally take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed); *see also Opoka v. I.N.S.*, 94 F.3d 392, 395 (7th Cir. 1996) (*citing Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document

7

filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings. ")); *see also* Charles Alan Wright & Kenneth A. Graham, Jr., FEDERAL PRACTICE & PROCEDURE § 5106 (Supp. 2001) (stating that court should distinguish between taking judicial notice of the truth of some extrajudicial fact recited in a court record and the use of those facts for some purposes that does not depend on the truth of the facts recited); ***ABN AMRO, Inc. v. Capital Int'l Ltd.***, No. 04-C-3123, 2007 WL 845046, *9 (N.D. Ill. March 16, 2007) ("Typically, . . . because of the indisputability requirement, the notice of a court order is limited to the purpose of recognizing the judicial act or litigation filing; judicial notice is generally not for the truth of the matters asserted in a court document."). Taking judicial notice of a fact simply because it was found to be true in a previous action would render the doctrine of collateral estoppel superfluous. ***General Elec. Capital v. Lease Resolution***, 128 F.3d 1083 (citation omitted)".

Judicial notice may be taken of the contents of public record disclosure documents filed with the Securities and Exchange Commission if the content isn't subject to dispute. *See* ***Hernandez v. Midland Credit Mgmt., Inc.,*** No. 04-C-7844, 2006 WL 695451, *4 (N.D. Ill. March 14, 2006) (taking judicial notice of SEC filings where no dispute existed). In ***Hennessy v. Penril Datacomm Networks, Inc.,*** 69 F.3d 1344 (7th Cir. 1995), an employment discrimination case, the district court was attempting to determine the size of the defendant corporation to assess the applicability of a punitive damages cap under the 1991 Civil Rights Act. Id. At 1354. The court analyzed the propriety of taking judicial notice of the company's 10-K form filed with the SEC to determine the size of the company. Id. In affirming the district court's refusal to

8

take judicial notice, the court reasoned that given the "considerable argument over the significance of the 10-K form, the judge properly found that its contents were subject to dispute." Id. The court explained that "the question . . . was not capable of accurate and ready determination by resort to the 10-K" because the form covered three divisions of the company, two that weren't involved in the case. Id. at 1354-1355.

### III.   CONCLUSION

Accordingly, the court should take judicial notice the documents identified by the plaintiff that were filed in judicial and administrative proceedings involving Stephanatos, American Tax Funding, LLC[3], Robert A. Del Vecchio and other defendants, including the courts' determinations, findings and outcomes in those proceedings.

Exhibit A includes a summary of the factual allegations in support of violations of the U.S. Antitrust Laws (Sections 1 and 2 of the Sherman Act).   Exhibit B includes excerpts from filings of the defendants with the Florida Secretary of State[4].   The existence of these public documents and their content are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.   What the court can't do is accept as true the facts found by these courts or administrative agencies. The court isn't prevented from considering the opinions and determinations to the extent they constitute persuasive authority.

---

[3] The corporate holding company of this entity is: American Tax Holding, LLC a Florida registered company whose sole owner is Matthew A. Marini.
[4] These defendants have submitted similar fillings in many other states, including: New Jersey, Connecticut, Kentucky, New York, Delaware, Michigan, California, Texas and other states.

The plaintiff asks the court to take judicial notice of the facts in Matthew A. Marini's and Justin F. Weisenbacher's 2000-2013 fillings with the Florida Department of State regarding American Tax Funding, LLC, American Tax Funding Servicing, LLC, Firefox, LLLP, Pilot Management, LLC and the numerous other entities created by these two defendants.  These filing show that the owner of these entities is Matthew A. Marini and to a certain extent Justin F. Weisenbacher and these entities have been owner-managed rather than manager-managed.    The filings also show the numerous fraudulent and misleading information provided to the Florida Secretary of State by these two defendants.

Because there is no discernible dispute in the facts as relied upon by the plaintiff, the court should take judicial notice of such facts.  The court should take judicial notice of the documents' existence, the content of the documents, and undisputed facts contained therein, but should decline to take notice of findings of fact from the proceedings or admissions made by the parties as being asserted for their truth to the extent the findings or admissions are subject to dispute.

## IV.    RELIEF REQUESTED

For the reasons set forth above, the court should GRANT plaintiff's requests to take judicial notice.


Dated: April 12, 2013

Respectfully submitted,

10

---

Basilis N. Stephanatos, PhD, JD
Plaintiff Pro Se
PO Box 0520
Tenafly, NJ 07670-0520
Tel. (973) 897-8162
Fax: (973) 810-0440
bstephanatos@gmail.com

cc:    All counsel of record
The Hon. Michael A. Shipp, U.S. Judge, Trenton, NJ
The Hon. Tonianne J. Bongiovanni, U.S. Magistrate Judge, Rm. 6052, Trenton, NJ
The Hon. S. Faith Hochberg, U.S. Judge, Newark, NJ

11

Basilis N. Stephanatos, PhD, JD
Plaintiff, Pro Se
P.O. Box 0520
Tenafly, NJ 07670-0520
Ph.: (973) 897-8162
Fax: (973) 810-0440
Email: bstephanatos@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
|  | ) Master Docket No. 3:12-CV-01893-MAS-TJB |
|  | ) |
|  | ) [ Proposed] **ORDER GRANTING REQUEST** |
|  | ) **FOR JUDICIAL NOTICE IN SUPPORT OF** |
| In re New Jersey Tax Sales | ) **OPPOSITION TO DEFENDANT'S MOTION** |
| Certificates Antitrust Litigation | ) **TO DISMISS** |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

Plaintiff, Basilis N. Stephanatos, Pro Se, having moved this court for an order

granting his Request for Judicial Notice in Support of Opposition to Defendant's Motion

to Dismiss and for good cause appearing, and **IT IS HEREBY ORDERED**:

Pursuant to Fed. R. Evid. 201, this court will take judicial notice of the following

documents:

| **EXHIBIT** | **DOCUMENT DESCRIPTION** | **PAGE NOS.** |
|---|---|---|
| Exhibit A | FACTUAL BACKGROUND PROVIDING ALLEGATIONS OF SHERMAN ACT VIOLATIONS BY THE |  |

| | | |
|---|---|---|
| | DEFENDANTS FROM THE CASE No. 02:12-cv-01793-FSH-PS | |
| Exhibit B | FLORIDA DEPARTMENT OF STATE FILINGS BY MATTHEW A. MARINI AND JUSTIN F. WEISENBACHER, AS OWNERS OF THE DEFENDANTS | |
| Case No. 02:12-cv-01793-FSH-PS | Pleadings, motion papers, proceedings, orders and exhibits from *Stephanatos v. Wayne Township, American Tax Funding, et al.*, case No. 02:12-cv-01793-FSH-PS | |

**IT IS SO ORDERED.**

**Dated: April _____, 2013**

                                                    _____
                                                    **MICHAEL A. SHIPP**
                                                    **United States District Judge**

<u>**VERIFICATION OF BASILIS NICHOLAS STEPHANATOS**</u>

I, Basilis Nicholas Stephanatos, hereby declare as follows:

1. I am over the age of eighteen and otherwise competent to testify.

2. I HEREBY DECLARE, UNDER PENALTIES OF PERJURY, THAT I HAVE READ THE FOREGOING AND THE FACTUAL ALLEGATIONS ARE, TO THE BEST OF MY KNOWLEDGE AND BELIEF, TRUE AND ACCURATE.   I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE WILLFULLY FALSE, I AM SUBJECT TO PUNISHMENT.  28 U.S.C. §1746.

Date: April 12, 2013

By:_____

Basilis N. Stephanatos, PhD, JD

**EXHIBIT A**

**FACTUAL BACKGROUND PROVIDING ALLEGATIONS OF SHERMAN ACT**

**VIOLATIONS BY THE DEFENDANTS**

**FROM THE CASE No. 02:12-cv-01793-FSH-PS**

## **FACTUAL BACKGROUND**

1.      Plaintiff, Basilis N. Stephanatos ("Plaintiff" or "Dr. Stephanatos"), a natural person, is a homeowner and taxpayer resided at 687 Indian Road, Wayne, New Jersey, 07470.  Dr. Stephanatos owned a residential real estate property located at the 687 Indian Road address since 1995.  Dr. Stephanatos is a U.S. Citizen and holds a PhD in Engineering and a J.D.  His current address is: P.O. Box 0520, Tenafly, New Jersey 07670-0520.  His phone number is: (973) 897-8162 and his fax number is: (973) 810-0440.

2.      Defendant American Tax Funding, LLC ("ATF") and American Tax Funding Real Property, LLC ("ATFRP") are private entities organized under the laws of the State of Florida.  Its principal business address is listed as being at 345 Jupiter Lakes Boulevard, in Jupiter, Florida 33458-7100.  Its phone number is (561) 842-2955 and the listed fax number is (561) 842-2946.  The holding entity of these two corporations is American Tax Holding, LLC also organized under the laws of the State of Florida.  The sole owner of these entities is Matthew A. Marini, a resident of Florida.

3.      ATF engages in the purchasing and servicing of delinquent municipal real estate tax lien sales. Originally formed in 1997 as Transamerica Municipal Finance (TMF), a division of Transamerica Corporation. [1]  In August 2000 the founders (Mathew A. Marini and Justin F. Weisenbacher) completed a form of a management buyout of TMF, creating ATF.  ATF currently buys and services real estate tax liens in over 14 states.  Many ATF tax liens are secured by either Wells Fargo Foot Hill  (now Wells

---

[1] "Company Overview of American Tax Funding, LLC". Bloomberg Business Week. Retrieved June 8, 2012.

Fargo Capital Services) or the Harris Nesbitt Corporation (now BMO Capital Markets Corporation). The process of <u>privatizing</u> the municipal tax foreclosures process and outsourcing to out of state third party, for-profit, private companies has drawn criticism from housing advocates who argue that a for-profit tax foreclosure process leads to more foreclosures, displacement and vacancy. These are "private takings" that are prohibited by federal law, as the Court has been extensively briefed by Dr. Stephanatos.

4.     This defendant(s) has a number of subsidiaries, including, ATFH Real Property, LLC, Reoco, LLC, American Tax Funding Servicing, LLC, American Tax Holding, LLC, and other entities listed below. It appears that the holding or managing entity is American Tax Holding, LLC a Florida –registered company. Its owner is Matthew A. Marini; this information is based on the filings with the Florida Department of State. Source:

http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults/EntityName/America n%20Tax%20Holding/Page1

5.     The CEO of the defendants is Matthew A. Marini. He appears to be the sole or majority owner of these entities. His current managers appear to be Tadgh F. Macaulay[2], and Brian Lynch. Macaulay[3] is also listed as a Kentucky legislative agent. Other officers of the defendant(s) are:  Justin Francis Weisenbacher (past president- he left in 2012 after the initiation of the criminal and civil action against these entities), Neil

---

[2] Home Number: (561) 691-5038
115 Evergrene Pkwy
Palm Beach Gardens, FL 33410-1538

[3] **Tadgh Macaulay** was born in 1972. Tadgh currently lives in Palm Beach Gardens, Florida. Before that, he lived in Jupiter, FL from 2006 to 2012. Before that, he lived in Palm Beach Gardens, FL from 2003 to 2008.  Source: http://www.mylife.com/tadghmacaulay.

2

Harreveld, Jeffrey Michael Levine, Gene Stix Weil, John Demarinas, Tammy Katz (controller-VP and VP at ATFS, LLC), and John Joseph Nelligan.

6.     Another former VP of the defendant is Neil Harreveld (he was a VP of ATF from April 2001 through February 2009; he then left [4]ATF and joined another defendant, XSPAND/J.P. Morgan Securities. Source: LinkedIn profile of Neil Harreveld).

7.     Defendant Neil Harreveld conspired with the other defendants named herein to rig the markets and to divvy up the markets to limit the competition so that he obtains the maximum rate of 18 percent.  He never competed with the other defendants in the markets he agreed not to bid and they never competed or bid in markets that were under his control.

8.     He writes the following in his LinkedIn online profile:

**_Vice President_**

**_J.P. Morgan Securities_**

_2009 – June 2010 (1 year)_

_XSPAND is a subsidiary of JPMorgan Chase & Co. We purchase, finance and collect real estate tax liens for local governments and to provide them with innovative and cost effective asset management solutions designed to accelerate the recognition of much needed budget revenue. Transforming real estate tax liens into revenue on behalf of our government clients is XSPAND's corporate focus. Since its inception our firm has provided over $4 billion in revenue to local governments through our purchasing and financing of these under-utilized assets. My 13+ years in this field with the experience of working with over 600 different taxing authorities in 21 states along with JP Morgan's financial resources makes for a reliable, and stable source for local government revenue enhancement._

---

[4] The Director of Systems at American Tax Funding, LLC, Gary W. Winslow, also left the company in July 2012.  He was responsible for developing and maintaining the applications for tax lien tracking, foreclosure tracking, web extraction, administered the databases, and many other applications.

**_Consultant_**

**_XSPAND / JP Morgan_**

_March 2009 – December 2009 (10 months)_

_Through the strength and experience of the nation's largest Tax Lien Servicer and purchaser, I am able to help provide innovative, cost-effective revenue enhancement solutions to local governments throughout the United States through the purchasing and or servicing of their real estate receivables portfolios_

Defendant Neil Harreveld is now the executive director at Tower Capital Management LLC in Morristown, New Jersey.  In his web pages, he writes the following:

- **_Tower Capital Management LLC_**

  _Just closed a $21,000,000 transaction with Monroe County, NY. Find out how your receivables can mean real revenue for your local government today, call 1-800-581-0616 to find out more!_

  **_About Tower Capital Management LLC_**

  **_Over the past ten years, our team has managed the process that has provided local governments across the country with over $5 billion of revenue._**

  _Our management team is the most experienced group of professionals in the tax lien monetization industry allowing us to provide the most innovative and cost-effective programs for our municipal partners._

9.      Other associated defendants included Dutton Mill Services, LLC, American Tax Funding Servicing, LLC, Jmj Properties, LLC, Marin Properties, LLC, Reoco, LLC, Tobano Realty, LLC, Dutton Mill Capital, LLC, Jokane Realty, LLC, Mj Acquisitions, LLC, and many others.

10.      Defendant Brian Lynch was working with Marini and Weisenbacher at Transamerica Finance Corporation.  He later worked for M Credit, Inc. (f/k/a Transamerica Finance Corporation (Municipal Finance Division)).  According to his

4

LinkedIn profile, he was responsible for "Managed the overall liquidation and disposition of an assigned real estate secured tax lien portfolio and REO portfolio spanning 21 States." While Marini and Weisenbacher left Transamerica Finance Corporation in 1999., Brian Lynch stayed until 2008 when he joined American Tax Funding, LLC as VP and State and REO Manager[5]. According to his LinkedIn profile[6], Brian Lynch is "*Responsible for the direct management and acquisition of a $70M+ real estate secured tax lien portfolio in CT and NJ. Manage and oversee the REO (Real Estate Owned) department.*" This Defendant was responsible for signing all the contract forms for the sale of Dr. Stephanatos' home.

11. Defendant Brian Lynch was working closely with Paul Safran[7] while at M Credit, Inc. Safran was the Director of Operations, Vice-President and Counsel for Transamerica Finance Corporations' Municipal Finance Division: Transamerica Business Credit Corporation/M Credit, Inc., where he had direct legal and business oversight over all of the Company's assets. Paul Safran's duties at Transamerica and M Credit, included, among other things, conducting negotiations, drafting and/or reviewing all documentation concerning the acquisition, financing or sale of bulk assets to/from Municipalities/Purchasers/Sellers; management of all aspects of the collection, preservation and disposition of the Company's portfolio, supervision of all due diligence

---

[5] It is important to note, though, that Brian Lynch was listed as the VP in M Credit, Inc and M Credit IV, Inc corporate fillings in Florida and Arizona at the same time he was working for American Tax Funding in 2008, 2009 and 2010. M Credit was dissolved in 2010.

[6] http://www.linkedin.com/profile/view?id=36772395&authType=name&authToken=zUdq&trk=prof -sb-browse_map-name

[7] Paul Safran, Florida Attorney, Office 3111 Stirling Road Ft. Lauderdale, FL 33312 Tel: 954-364-6029 Fax: 954.985.4176, Paul Safran psafran@becker-poliakoff.com

and risk management functions, supervision and monitoring of all foreclosure and quiet title actions, direct supervision and oversight over the acquisition, maintenance, and disposition of all REO properties, consisting of over 750 properties in numerous states.

12.    Based on the filings with the Florida Secretary of State, Matthew A. Marini and Justin F. Weisenbacher appear to be the two main owners of the above corporate entities; they created the numerous corporations after they left Transamerica in 2000. Marini appears to have the largest owner share and he is listed as the CEO in most of the transactions of the above companies.  (He also held the role of the EVP while with Transamerica).  Based on the various filings with the Secretary of State of Florida, the companies are "manager-managed" as opposed to member-managed.  However, it appears that the only members (or owners) of the companies are Marini and Weisenbacher.  The latter has left the president spot at American Tax Funding, LLC (this occurred in May 2012).  Perhaps the only owner of the entities is Matthew A. Marini.

13.    In a manager-managed LLC, the members of an LLC select the managers of the company.  A member of an LLC may be selected to act as manager of the company, or as part of an appointed management team.  The managers of a manager-managed LLC are responsible for handling the company's daily affairs.  Most LLCs that employ a manager-managed business structure use outside parties to manage the company's daily affairs.  Here, Defendants Marini and Weisenbacher have created tens of corporate entities that have these two defendants as their managers.  They are listed as the owners of these entities.  Therefore, although they state in the corporation papers that these are "manager-managed" LLCs, in reality they are operating as

6

"member-managed" LLCs[8].  All these entities do use the same "office space", i.e. either the home of Weisenbacher or Marini or the home of their wives or daughters.

14.    It is also important to note that the person who actually receives email communications for ATF and ATFS is Justin F. Weisenbacher himself at Justin@atfs.com.  Thus, if the Court looks at the information provided to the Florida Secretary of State about these entities and the facts that they operate out of their own homes and respond to the emails, the owners of these entities are also the managers and they have total and complete control over the management and operations of these entities.  Justin F. Weisenbacher writes in his LinkedIn profile that he is an "expert on Tax Liens".  Therefore, he is not only the owner, but also he is the manager and the expert on the operations of the corporate defendants.  Marini and Weisenbacher are nothing but the alter ego of the corporate entities.

15.    Here one of two individuals holds the ownership of all of the stock; the entities use of the same business or office; there is a commingling of funds or assets; there diversion or misuse of corporate funds or property to buy properties and personal items for Marini's and Weisenbacher's families;  there is a complete disregard of corporate formalities; there is a failure to keep minutes and adequate records; there is the absence of corporate assets or inadequate capitalization; and, the corporations are

---

[8] In New Jersey, it is generally accepted that the veil of an LLC can be pierced. *See generally Brown-Hill Morgan, LLC v. Lehrer,* A-1069-08T3, 2010 WL 3184340, at *12 (N.J. Super. Ct. App. Div. Aug. 12, 2010); *Operative Plasterers & Cement Masons Int'l Ass'n LocalS v. AGJ Canst., LLC,* No. 08-6163 (RMB), 2009 WL 2243900 (D.N.J. July 24, 2009); *D.R. Horton Inc.- N.J. v. Dynastar Dev., L.L.C.,* 2005 WL 1939778 (N.J. Super. Ct. Law Div. 2005); 49 N.J. Prac., Business Law Deskbook § 3:35 (2011-2012 ed.); *accord Chadwick Farms Owners Ass'n,* 166 Wash. 2d at 202 ("Members of a limited liability company who fraudulently attempt to use the provisions of the act to avoid liability and members who wind up a limited liability company improperly expose themselves to individual liability .... ").

conducting personal business of the shareholder. Further, the application of the alter ego doctrine does not require a showing of actual fraud and can be satisfied by evidence that adherence to the corporate fiction would promote injustice. Therefore, M. A. Marini and J. F. Weisenbacher are the alter ego of these entities and the Plaintiff should be allowed to amend his complaint to add all these defendants as individually liable for the damages of ATF and Robert A. Del Vecchio.

16.     Following the dramatic events of June 28, 2011, Weisenbacher either resigned or was removed as president of American Tax Holding(s), LLC or American Tax Funding, LLC on or about December 2012-this is the date of filing of the federal class action against American Tax Funding and other entities/individuals. This information was obtained online from LinkedIn where defendant Weisenbacher has voluntarily posted his resume and from defendants' filings with the Florida Secretary of State.[9]

*17.*     Weisenbacher, in automated in responses to emails send to his former email address at ATF (i.e., at Justin@atfs.com), he writes the following:

> *i will no long be checking this email, please email* brian@atfs.com

---

[9] **Justin F. Weisenbacher's Overview from LinkedIn**
Current
- President at Firefox LLLP

Past
- President at American Tax Holdings
- SVP & General Manager at Transamerica
- VP New Business Programs at Dynex Capital

*please note my personal email address to send all non ATF related emails.*

*thanks*

*buytaxes@aol.com*

18.     He then created another entity, named Firefox, LLLP on May 8, 2012, two months after the federal lawsuit against him was filed by Dr. Stephanatos.  The corporate address is listed as 101 Harbor Way, Hobe Sound, FL 33455.  This is the address of his former home that he sold in September 2012 to David Stone for $2,000,060.

19.     Defendant Weisenbacher lists himself as "president at Firefox, LLLP" although he is the only member of that entity.  Firefox, LLLP is being managed by the sole partner, Pilot Management, LLC; this is another entity created that same day, May 8, 2012, by Weisenbacher[10].  He is the sole member (owner) of Pilot Management, LLC. The business address of this entity is also listed as the former home address of defendant Weisenbacher.  He sold this property in September 2012 for a little more than $2,000,000 to David Stone.  Source: www.zillow.com and Martin County, Florida Property Search results.

20.     Weisenbacher is also listed as the "authorized representative" of the "sole general partner" of Firefox, LLLP.

21.     Weisenbacher is also listed as the owner of Pilot Management, LLC.  This information was obtained from the Florida Secretary of State online records at http://search.sunbiz.org/Inquiry/CorporationSearch/.

---

[10] Based on defendant's filings with the Florida Secretary of State.

22.     In the filing papers with the Florida Secretary of State, Defendant Justin Weisenbacher listed as his email address the same one he had with American Tax Funding Servicing, LLC, i.e., Justin@atfs.com.  Defendant Weisenbacher also listed himself as the registered agent of Pilot Management, LLC having its mailing and principal address the 101 Harbor Way, Hobe Sound, FL 33455, i.e., the former home of Weisenbacher.  This is fraudulent information because Weisenbacher no longer lives there.  He had bought that home on July 23, 2004 but he sold it to David Stone in September 2012.

23.     A search of the Martin County property records indicates that Weisenbacher is the owner of the property located at 18898 SE JUPITER INLET WAY, TEQUESTA FL 33469.  He bought the property on September 25, 2012.  The total market value of the property is listed at $670,000.00.  Source:  http://fl-martin-appraiser.governmax.com/propertymax/rover30.asp?sid=E7F07DE0303B4E4FA92C0F5E9952D910.

24.     Mathew A. Marini is the second owner (perhaps he is the only remaining owner of these entities and he may have bought out Justin Weisenbacher) of the entities mentioned above.  He is the co-manager of these LLCs (American Tax Funding, LLC, American Tax Holding, LLC, American Tax Funding Servicing, LLC, American Tax Holdings, LLC, etc.) along with Justin F. Weisenbacher.  Exhibit B shows the known entities owned by Matthew A. Marini.

25.     Marini also owns a large number of other entities along with his wife, Donna L. Marini.  The rest of the Marini family also participates in these activities.

10

26.     In a filing with the Florida Secretary of State for the entity American Tax Holding, LLC, both Marini and Weisenbacher are listed as the managers of the entity. In February 17, 2009, Marini indicated that he changed his address from 2305 River Woods Drive, Naperville, IL 60565[11] to 291 Caravelle Drive, Jupiter, FL 33458. Marini purchased the Caravelle Drive home on September 22, 2008. Source: www.Zillow.com

27.     Marini is the single owner of Dutton Mill Capital, LTD, registered in Illinois. The annual revenues are listed as $61,000 in 2011. Matthew Marini is listed as the owner, while Claude McAdams is listed as the vice-president.

28.     In February 2013, Mathew Marini, 57, created a number of other companies, listing as his daughter, Dana E. Marini, 28, as the co-manager and/or co-owner. These entities names are: NSPS Holdings, LLC[12] (its address is 19619 Trails End Terrace, Jupiter, FL 33458-2439), North Shore Payroll Solutions, LLC (19619 Trails End Terrace, Jupiter, FL 33458-2439 whose registered agent is M. A. Marini located at 8818 SE North Passage Way, Tequesta, FL 33469), North Shore Insurance Solutions, LLC (19619 Trails End Terrace, Jupiter, FL 33458[13]), Martin Family Management, LLC[14] (8818 SE North Passage Way, Tequesta, FL 33469[15]), Martin Family Investments I and II, LLLP (8818 SE North Passage Way, Tequesta, FL 33469-1808[16]). The creation of

---

[11] This home was listed for sale by the Marini in February 2012 and it was sold in July, 2012 for $578,000. The Marini sold this home and purchased two other homes in Florida in 2012.
[12] NSPS Holdings, LLC is listed as the managing member/manager of a number of entities created by Donna L. and Matthew A. Marini, including North Shore Payroll Solutions, LLC.
[13] This single family home was purchased in in April or May 7, 2012 for $403,000. Source: Zillow and property appraiser for Palm Beach County, FL at http://www.co.palm-beach.fl.us/papa/Asps/PropertyDetail/PropertyDetail.aspx?parcel=00424027060050050&.
[14] The only member of this entity is Mathew A. Marini, whose address is the same as the LLc's.
[15] Some of the addresses provided in the filings with the Florida Secretary of State are incorrect, mixing the Tequesta and Jupiter locations with the street locations.
[16] This single family home was purchased by Matthew and Donna L. Marini in January 19, 2012 for $617,000. Source:Zillow online and http://fl-martin-

these entities is in the same style and format as the creation of the tax lien purchasing business that Marini and Weisenbacher started in circa 2000: Marini and Weisenbacher create holding companies that "manage" all other entities. In essence, however, there are only two individuals who manage all the operations, i.e., the owners of these entities: Marini and Weisenbacher. Marini is the accountant and banker; while Weisenbacher is the "tax lien expert" (this is how he calls himself in the LinkedIn resume that he has posted on the internet).

29.    The creation of so many corporate entities is for Marini and Weisenbacher to avoid paying taxes and/or to shield themselves from judgment creditors and/or to do money laundering. As the court can see, these entities have Matthew A. Marini and Justin F. Weisenbacher as the owners. In their various state corporate filings they note that these entities are "manager-managed" companies but in reality they are managed by the two owners. They are in fact "owner-managed" and Marini and Weisenbacher are liable individually for the damages these entities and their agents or assigns caused.

30.    It appears that Matthew A. Marini and Justin F. Weisenbacher are leaving the tax lien business and started businesses inside their homes. These new business are in other areas, such as accounting, insurance, investment clubs, etc. These activities coincide with the federal law suit filed against American Tax Funding, LLC, American Tax Holdings, LLC, etc. It is also evident that the Marini's and Weisenbacher recently bought homes in the Florida area.

---

appraiser.governmax.com/propertymax/rover30.asp?sid=E7F07DE0303B4E4FA92C0F5E9952D910.   Both homes purchased by the Marini's are within 9 minutes from each other, in the area of Jupiter, FL. This is address also listed for one of M. A. Marini's daughter, Katherine Marini.

31.     Matthew A. Marini's daughter, Dana E. Marini[17] has also participated in the scheme.  She has close relationships with the other conspirators, such Plymouth Park Tax Services, LLC (also known as XSPAND, a division of JP Morgan Chase).  She is listed as the owner of many properties in the Florida area, including the property located at 6255 Lucerne Street, Jupiter, FL (parcel control number 30-42-41-15-01-027-0120, NORTH PALM BEACH HEIGHTS LT 12 BLK 27) and the one located at 19619 Trails End Terrace, Jupiter, FL 33458-2439.

32.     Another daughter of Matthew Marini, Megan Marini, also participated in this conspiracy from May 2008 through 2010 when she serviced many accounts for American Tax Funding, LLC.

33.     It is also important to note that Matthew Marini gave money from these entities to his wife Donna Marini who invested them in two restaurants in the Jupiter area.  These restaurants (Wine Down, LLC and Wine Down Two, LLC) "failed and ceased operations" according to Florida Department of State fillings by Donna Marini and her son Mike Marini.

34.     The lawyer (also a defendant in this action for committing fraud, defamation, conspiracy and other offenses against Plaintiff) for this entity is Robert A. Del Vecchio, Esq., 405 Lafayette Avenue, P.O. Box 561, Hawthorne, New Jersey

---

[17] **Dana E. Marini** was born in 1984.  Dana currently lives in Jupiter, Florida. Before that, Dana lived in Jupiter, FL from 2007 to 2008.  Before that, Dana lived in Naperville, IL in 2003.

Dana E Marini is related to Matthew Marini, who is 57 years old and lives in Jupiter, FL. Dana E Marini is also related to Donna L. Marini, who is 59 years old and lives in Jupiter, FL.  Her sisters include Megan (who lives in NYC) and Katherine Marini (who lives in Florida).

Source: http://www.mylife.com/c-33703249058

07507, Phone (973) 423-9035, fax: (973) 423-9036. ATF purchased the illegal liens levied onto Plaintiff's homestead property. ATF and Del Vecchio also fraudulently and criminally falsified a certification to the Morris County Clerk that Plaintiff had no possessory interests in his home and hired the Passaic County Sheriff to act as an agent for the enforcement of a void and/or voidable court order. Robert Del Vecchio has purchased tax liens for himself and for his trust fund Robert Del Vecchio Pension Trust, LLC.

35.    Del Vecchio is also the lawyer for Plymouth Park Tax Services and Xspand. J.P Morgan Chase and its subsidiaries, **Plymouth Park Tax Services and Xspand**, recently <u>**admitted their guilt**</u> in rigging delinquent property tax liens in 33 states- including New Jersey. JPMorgan **Chase** & Co. has agreed to pay $211 million after admitting one of its divisions rigged dozens of bidding competitions to win **business from state and local governments. At the same time,** JPMorgan **Chase** & Co. has announced that it is leaving the tax lien purchasing business. This announcement coincided with the finding that the Federal Bureau of Investigation begun its investigation of Xspand and other tax lien purchasers.

36.    Since at least the beginning of 1998 continuing through the present, the defendants Robert Del Vecchio, Robert Del Vecchio Pension Plan, LLC, American Tax Funding, LLC, Atfh Real Property, LLC, American Tax Holding, LLC,[18] American Tax

_____

[18] On February 1, 2013, in a court filing in the case *In re New Jersey Tax Sales Certificates Antitrust Litigation.,* Master Docket No. 3:12-CV-01893-MAS-TJB, Mrs. Patricia B. Fugee, Attorney for Defendant American Tax Funding, LLC stated that "Pursuant to Federal Rule of Civil Procedure 7.1, Defendant American Tax Funding, LLC hereby states that it is a wholly owned subsidiary of American Tax Holdings, LLC." It is important to note that the corporation registration information for American Tax Holdings, LLC indicates that it was established few months ago. It is Dr. Stephanatos' position that these defendants are

Funding Servicing, LLC, and other related entities such as Dutton Mill Services, LLC who are among the largest purchasers of TSCs in the State of New Jersey, entered in an illegal agreement, combination or conspiracy whereby they would ensure there was little to no bidding at the auctions.  Prior to each auction, the defendants would meet and allocate amongst themselves the delinquent property tax obligations up for auction, and agree to refrain from bidding on those which were not allocated to them. This resulted in there being only one bid at the auction, and therefore, the opening bid became the winning bid.  This would ensure that the delinquent property tax obligation, whether that "obligation" was constitutional or legal or unlawful, carried the maximum interest rate allowed – 18% – to the benefit of the defendants and to the detriment of the property owner.  As a result of the defendants' illegal conduct alleged herein, Dr. Stephanatos have paid, tens of thousands of dollars in interest which has been artificially inflated due to the defendants' illegal conduct.

37.     Defendant Harreveld, after he left American Tax Funding in 2009, he conspired with ATF, Marini and Weisenbacher to split the tax lien markets.  He worked for XSPAND and JP Morgan Securities and then he became an executive at Tower Capital Management, LLC.  He conspired with ATF and XSPAND/JP Morgan Securities to allocate the Monroe County, NY and several Connecticut towns to himself where the other co-conspirators would not bid on the tax lien packages offered by these towns.  In return, he would not bid on the other tax lien markets where ATF and XSPAND or MD SASS would participate.

---

attempting to hide their assets across state borders by creating a large number of entities.  I would advise the Court to order an immediate seizure and/or attachment of the assets of these entities and the seizure of the assets of their owners, shareholders, and officers as they represent the alter ego of these entities.

15

38.     The defendants obtain the so called "lines of credit" from Hedge Funds, investment funds, individual investors, and the large commercial banks or their subsidiaries, including, but not limited to: Wells Fargo, Wells Fargo Foothill, LLC, Wells Fargo Capital Finance, LLC, Bank of America, JP Morgan Chase, BMO Capital Markets Corp. (formerly known as the Harris Nesbitt Corporation), and others. These lenders would become "secured parties" in these transactions, the loans being guaranteed by these tax liens.

39.     The defendants petition to the municipalities to consent to the "*Collateral Assignment of Tax Liens*". See for example letter in Exhibit D from Justin Weisenbacher, President, American Tax Funding, LLC to the Mayor of Danbury, CT, dated January 2005, requesting the consent of the Danbury city counsel to the collateral assignment of tax liens to Harris Nesbitt Corporation as Collateral Agent for the secured parties. The Harris Nesbitt Corporation is now doing business as BMO Capital Markets, Inc. In Exhibit D, one of the co-conspirators, Justin Weisenbacher, president of ATF and other entities writes: "*As discussed, we are going through a refinance of our business to increase our total credit facility by bringing on an additional lender, Harris Nesbitt. Our existing relationship with Wells Fargo Foothill is excellent and will continue.*"

40.     A sample agreement for the "assignment of municipal tax liens" is enclosed in Exhibit B between the City of Danbury and American Tax Funding, LLC.

41.     Exhibit F includes a purchase agreement between the City of Rochester and American Tax Funding. It is important for the Court to read the sections of the agreement that deal with the representations of the city and ATF, LLC. Both parties

16

make warranties that they will not violate any state or federal law.  As the Court will see

from the facts of this case, these defendants have violated a large number of state and

federal laws.  An excerpt from that agreement is presented below:

> (d) No Proceedings. There are no proceedings or investigations pending
> or threatened in writing against it before any court, regulatory body,
> administrative agency or other governmental instrumentality (i) asserting the
> invalidity of any of the Transaction Documents, (ii) seeking to prevent the
> consummation of any of the transactions contemplated by any of the Transaction
> Documents, or (iii) seeking any determination or ruling that could reasonably be
> expected to materially and adversely affect the validity or enforceability of any of
> the Transaction Documents.

> Section 4.02. Representations and Warranties of the City with respect to
> the Tax Liens.

> (iv) the sale of such Tax Lien by the City did not violate, contravene or
> conflict with any federal, state, special or local law, statute, rule, regulation or
> ordinance, or any order, ruling or decision of any federal, state or local court,
> administrative agency or regulatory body, or any contractual or other restriction,
> limitation or encumbrance, in each case applicable to the City, and was effected
> in full compliance with all applicable Laws;

> (v) the amounts secured by such Tax Lien were validly levied by the City
> in accordance with all provisions of federal, state and local laws, statutes, rules,
> regulations and ordinances, and all orders, rulings and decisions of any federal,
> state or local court, administrative agency or regulatory body, in each case
> applicable to the City;

> (vi) such Tax Lien is a legal, valid, binding and enforceable lien on the
> related Property;

> Section 5.02. Indemnity by the Buyer. The Buyer agrees to indemnify and
> hold harmless the City and its officials, employees and agents for losses, costs
> and expenses arising out of or relating to:

> (a) Any breach of the Buyer's representations, warranties and covenants
> set forth in this purchase and sale agreement; and

> (b) Any claims or litigation brought against the City solely out of the
> violation of this Agreement or any applicable law with respect to the Buyer's

> *collection or enforcement of the Tax Liens caused by the Buyer's gross*
> *negligence or willful misconduct.*

42.     A Tax Sale Certificate was issued with respect to Plaintiff's residential

property in September 2005, certificate #2310 from Wayne Township for $880.00, and

such Tax Sale Certificate was purchased by one of the defendants pursuant to the

conspiracy alleged herein. Dr. Stephanatos disputed the amount of the tax that he

allegedly owed; that dispute has yet to be resolved.

43.     The certificate may have been purchased by Robert A. Del Vecchio and

then re-sold it to American Tax Funding, LLC. At one moment in 2010 he said to Judge

McVeigh: "if I do not foreclose, I will lose my premium which is $20,000."

44.     Apparently, the defendants paid a "premium" of $20,000 to $30,000 to

secure the eighteen percent (18.00 %) interest rate for subsequent taxes. According to

this scheme that the Municipality of Wayne has knowingly and intentionally participated,

they over-assess the homeowner's property and if the homeowner refuses to pay the

excess or and/or unlawful charges, then the Wayne Township files the unlawful liens on

the property. The Wayne Township then continues to insist that the liens are lawful,

despite the fact they know that the properties are over-assessed and that the

assessments are unlawful. This is what they did to Dr. Stephanatos (See Docket, Civil

Action No. 02:12-cv-01793 (FSH-PS)).

45.     Wayne Township then sold the illegal liens to American Tax Funding,

Robert Del Vecchio, and others, who blackmail the homeowners into paying these

unlawful charges. The exact nature of the agreements between Wayne Township and

American Tax Funding or Robert A. Del Vecchio is not known at this time, but it should

be similar to the ones presented herein.

18

46.     Exhibit A shows the "Tax Lien Assignment List" by American Tax Funding, LLC. The Exhibit was obtained from the web pages of this defendant and should be allowed into evidence as a self-authenticating document pursuant to *Fed. R. Evid.* 902. The document indicates that most of the assignments carry an interest rate of eighteen percent (18%), which is the maximum statutory interest in New Jersey. The defendants managed to obtain these maximum interest rates by participating in this conspiratory scheme to limit competition by "bidding" extremely high "premiums" (for example they "bid"[19] a premium of $20,000 to $30,000 for Dr. Stephanatos' certificate that was a mere $880.00) to eliminate, reduce or stiffen the "competition". Dr. Stephanatos disputed and continues to dispute that he owed any money to the municipality, as his property was intentionally over-assessed by the municipal defendants by over forty percent. More information will of course be discovered as we proceed into the discovery process.

47.     The defendants obtain these certificates from the various townships under agreements such as the one found in Attachment B. That document was obtained from the City of Danbury Tax Collector's office.

48.     Exhibit C contains the "procedures for bidding at tax sales in New Jersey", obtained from the City of Camden.

49.     Since, in New Jersey, tax liens have first priority against all other liens, save subsequent municipal tax liens. N.J. STAT. ANN. § 54:5-9; *see also id.* at § 54:5-29, the defendants have developed a scheme where they would  retain their right of first refusal by paying a "premium" to the municipality. Under this scheme, the municipality

---

[19] No evidence has been submitted to date that a bidding ever took place.

will not issue a new tax sale certificate, but instead would attach the subsequent taxes to the original tax sale certificate.

50.     It should be noted that although the statutes state that 0 percent bids will not be accepted, here, American Tax Funding, LLC and its co-conspirators, accomplishes or agents did offer a rate of 0 percent. After that, the defendant end up paying $20,000 to $30,000 premium for a certificate that was only $880.00. This is highly suspicious, as the procedures indicate that the "premium" shall be bid at $100.00 increments. The details of what happened and the exact written agreement municipal tax collector and ATF/Del Vecchio is not known at this time. This information will be revealed upon examination of the defendants' documents and other records.

51.     These defendants rely on the fact that a property owner does not know the procedures and does not redeem the certificate within two years from its issuance; then they have "purchased via the high premium" the right of first refusal for the subsequent taxes without having to bid on the new taxes. They now can charge 18 percent for the subsequent year taxes, because nobody of the other co-conspirators will bid on the subsequent taxes.

52.     It is very important to note that should the lien holder does not foreclose the property within a five year time frame from the date of the purchase of the lien certificate, then, the "premium" is forfeited by the municipality. Since the original certificate was purchased in 2005, the forfeiture date was in late 2010. The property was not foreclosed until 2011. Thus, the defendants forfeited the $20,000-$30,000 "premium" they had paid to the municipality. The forfeiture of this sizable amount of money is perhaps the reason the ATF/Del Vecchio defendants intentionally decided to

violate a number of other state laws that were protecting Plaintiff's interests (such as the Forceful Entry and Detainer Law) so that they end up recovering their forfeited premium through the sale of Plaintiff's property.

53.  Thus, the scheme that these individuals (ATF, LLC and its parent and other affiliates, XSPAND, LLC, etc.) have developed is to pay a very high premium for obtaining the "right" to charge 18 percent interest rate for any subsequent taxes.  It appears that the municipalities do not perform tax sales for the new taxes of subsequent years, but they add these taxes to the original certificate.  Thus, there is no competition for the subsequent taxes, allowing the defendants to charge the maximum 18 percent initial statutory rate.  The defendants also do not send notices to the homeowners to redeem the 0 interest rate original certificate.  These acts most certainly violate the anti-trust provisions of the Sherman Act because the defendants have created a monopoly in this area by manipulating the statutory and procedural scheme.

54.   *In re Princeton Office Park, L.P*, 423 B.R. 795, 804 (Bankr. D.N.J. 2010), the court found that the entity acquiring a tax sale certificate did not qualify as the holder of a tax claim.  In interpreting pertinent provisions of New Jersey law, the court found that the outstanding taxes were satisfied upon payment of the sum for the tax sale certificate and the purchaser of the tax sale certificate acquired a completely new debt secured by a statutory lien against the real estate. *Id.*  A further significant point under the New Jersey statutory scheme **is that the real property owner can redeem the tax sale certificate by payment of the amount paid for the tax sale certificate and *not* the amount of the prior, delinquent taxes**. *Id.*; *accord, In re Burch*, 10-11360-JHW, 2010 WL 2889520 (Bankr. D.N.J. July 15, 2010).

55.     These defendants demanded from Dr. Stephanatos payment of $65,000 in unlawful taxes, and interest and penalties, notwithstanding the fact that the only money that had to be redeemed by Dr. Stephanatos was the original certificate for $880.00. See N.J.S.A. 54:5-54, entitled "Right of Redemption by owner, person having interest." These acts add to their conspiratory scheme to extort property from Dr. Stephanatos.

56.     As a result of the defendants' conduct alleged herein, the interest rate associated with Plaintiff's delinquent tax obligation was artificially inflated and Plaintiff was damaged thereby.  The defendants also fraudulently indicated to the state court that Dr. Stephanatos had to pay $65,000 or so in taxes and interest and penalty and did not reveal to the court that only the face value of the certificate had to be redeemed.

57.     Plaintiff was faced with the prospect of foreclosure on his property by one of the defendants (American Tax Funding, LLC) due to the TSC associated with his property.  The unconstitutional acts of the defendants in foreclosing and forcibly taking his homestead property have been detailed in Plaintiff's complaint for violation of his legal rights by the defendants filed in March 2012, as was supplemented by his numerous submissions to the Newark District Court through November 2012.

### ALLEGED VIOLATIONS OF SECTION TWO OF THE SHERMAN ACT

58.     Beginning as early as January 1, 1998 through the present, defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Tax Sale Certificates in the State of New Jersey in monopolization, attempts to monopolize, and conspiring to monopolize trade and commerce in violation of Section Two of the Sherman Act, 15 U.S.C. § 2.

22

59.     Section 2 of the Sherman Act prohibits monopolization, attempts to monopolize, and conspiring to monopolize.  Any such act constitutes a felony.  A monopoly conviction requires proof of the individual having intent to monopolize with the power to monopolize, regardless of whether the individual actually exercised the power. Congress designed these federal antitrust laws to eradicate certain frequently used anticompetitive practices.

60.     Section 2 applies to all types of unilateral conduct by firms, and thus covers a vast range of activities.  It is primarily aimed at preventing injury to competition accomplished through exclusion of rivals.

61.     Certain types of vertical agreements, such as exclusive dealing and tying as alleged in my complaint between Del Vecchio, Wayne Township Tax Collector, American Tax Funding, LLC and others, are actionable under both sections 1 and 2.

62.     Accordingly, "the effects of exclusionary conduct are always *indirect*: by excluding a rival, or impairing its ability to compete effectively . . . the predator hopes to obtain power over price or influence some other dimension of competition."

63.     The "first prong of *Brooke Group*'s[20] test requires little adaptation for the predatory-bidding context.  A plaintiff must prove that the alleged predatory bidding led to below-cost pricing of the predator's outputs."[21]  Because of the risk of "chilling procompetitive behavior with too lax a liability standard," "only higher bidding that leads to below-cost pricing in the relevant output market will suffice as a basis for liability for predatory bidding."[22]  With regard to the second prong of the *Brooke Group* test, a

---

[20] *See* Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209 (1993).
[21] Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc., 549 U.S. 312, 314 (2007).
[22] *Id.*

"predatory-bidding plaintiff also must prove that the defendant has a dangerous probability of recouping the losses incurred in bidding up input prices through the exercise of monopsony power."[23]  As with predatory pricing, the recoupment prong requires "a close analysis of both the scheme alleged by the plaintiff and the structure and conditions of the relevant market." *Id.* at 326 (quoting Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 226 (1993)).

64.    Here, American Tax funding "bid"(?)[24] extremely high "premiums" to secure an 18 percent interest on subsequent liens.  They end up losing the premium and as a result they intentionally violated a number of other state laws so that they recover their lost "premium".

## ADDITIONAL CRIMINAL ACTS COMMITTED BY DEL VECCHIO, AMERICAN TAX FUNDING, LLC AND OTHER DEFENDANTS

65.    Robert A. Del Vecchio committed a number of other crimes against Plaintiff: by making an ex-parte fraudulent certification to a Mercer County Clerk in May 2011 (Dr. Stephanatos' home was located in Passaic County;  Del Vecchio made the conscious decision to file his fraudulent certification in a Mercer County Clerk, in violation of state law) that Plaintiff had no possessory interests in his home; he then hired his friends Passaic County officers Lucas and D'Agostino (he resides in the same town as Del Vecchio) to perform an unlawful eviction from Plaintiff's home and committed a forceful entry in violation of the New Jersey Forceful Entry statutes, he lied to judge McVeigh that Plaintiff owed $65,000 in taxes without revealing to the Judge

---

[23] *Id.*
[24] There is no evidence provided to date that any bidding took place.

McVeigh that Plaintiff was in dispute with Wayne Township due to the over-assessment

of his property and that the taxes allegedly "owed" (Plaintiff disputes that he owed any

taxes to the Township) were significantly less; Del Vecchio continued to feed Judge

McVeigh on an ex-parte basis lies and fabrications (such as that Plaintiff had not paid

taxes since 1993).

66.     These are the same practices that Del Vecchio has used throughout his

area of fraudulent activities (Townships of Wayne, Borough of Fort Lee, his home town

of Hawthorne, New Jersey, and many other municipalities).  For example, on

September 28, 2010, Robert Del Vecchio purchased Tax Sale Certificate #2010-04,

from the Town of Hawthorn, NJ, charging more than 20 percent interest.  He received

more than $4,200 in interest alone when the property owner redeemed the certificate on

August 6, 2012.  This interest is in excess of twenty percent.  There are numerous

instances like that available and known to the Plaintiff that will be provided to the Court

at trial.

67.     Robert Del Vecchio also served as a lawyer for defendants American Tax

Funding, LLC and American Tax Holdings, LLC and Plymouth Park Tax Services, LLC (

a subsidiary of J.P Morgan Chase).  Del Vecchio reached an agreement with these

defendants not to bid for himself or the Del Vecchio Pension Trust and would instead

allow American Tax Funding or American Tax Holdings or Plymouth Park Tax Services,

LLC to charge the 18 percent or greater rate onto the tax lien certificate.  In exchange,

Del Vecchio would represent these defendants in any foreclosure and other legal

proceedings.  Del Vecchio would also make false certifications to the courts and clerks

of the courts that the property owners have no possessory interests in their homes so

that these conspirators would seize homeowners' property, enriching themselves and causing many millions in property and business damages to homeowners, including the Plaintiff.

68.     Del Vecchio and American Tax Funding, LLC met in person or communicated through the internet, email, voice mail, fax or telephone communications numerous times during this period to discuss their parallel conduct, to form a strategy for defrauding Plaintiff of his property;

69.     The purpose of all the communications between the defendants was to facilitate the conspiracy.

70.     As part of their conspiratory scheme, these defendants make false representations to the municipalities, such as the following excerpt from their web pages (http://www.atfs.com/about.asp):

*Over the years the ATF team has dealt with every facet of the tax lien business, from multimillion dollar bulk purchases to individual lien assignments involving small investors. Through all its endeavors a few simple principals have guided it:*

*To deal fairly and honestly with everyone in the community;*

*To always surpass the expectations of our partners;*

*To be firm but compassionate with delinquent taxpayers*

*If you're a municipal official searching for new ways to generate revenue a good place to start is our "For Governments" page. If you're an investor looking for tax lien or real estate assets to purchase, please visit our "For Investors" page. To learn more*

*about our company and how we can help your business or municipality, please feel free to contact us.*

71.     At other situations, such as the ones presented in Exhibit G for the bulk purchase of tax liens by XSPAND Bear Sterns (now owned by JP Morgan Chase), the issue was brought up by Director Keysa as to why there was no-collusion requirement in the RFP package or the sale agreement.  It is noteworthy that Director's Keysa's question was never really answered by James Tuppen.  What they did was to only ask bids from only two bidders.  This is another way that the politically-connected tax lien companies such as the defendants obtain business form the municipalities.

72.     American Tax Funding, LLC has acknowledged that it is under criminal investigation by the FBI into defendant's antitrust conspiracy.  As indicated earlier, 11 individuals and companies have already pled guilty to conspiracy charges filed against them by the United States.

## SUBSEQUENT CONSPIRATORIAL ACTS OF THE DEFENDANTS TO FORCE DR. STEPHANATOS OUT OF HIS HOME AND PLACE OF BUSINESS

73.     I will include below a summary of the subsequent conspiratory acts of the defendants so that the Court sees the magnitude of the criminal activities of American Tax Funding, Del Vecchio, Weisenbacher, Brian Lynch, and others.

74.     Dr. Stephanatos was not personally liable for the property taxes and no personal judgment could have been issued against him.  Only an *in rem* proceeding could have been legally instituted to take title from him and to force him out of his residence.  However, **according to New Jersey law only the municipality can institute an "in rem" proceeding.  The municipally held liens can be foreclosed by**

27

municipalities under the *In Rem* Tax Foreclosure Act codified in *N.J.S.A.* 54:5-104.29 *et seq.* However, a private entity, such as ATF and Del Vecchio, is not allowed by New Jersey law to perform *in rem* foreclosures.

75.    What these defendants did, then, was to treat the real estate taxes as a personal debt and they used the "*in personam*" foreclosure proceedings that are applicable to debtor-creditor residential mortgage proceedings or in situations where a person is personally liable for a debt. However, according to New Jersey law "**A tax against real estate is not a debt of the owner**; *it is not founded on a contract express or implied but is an imposition against the property and **no personal liability attaches.**" (emphasis added) *Francis Realty Co. v. Newark*, 16 N.J. Misc. 328, 330 (Essex Co. Cir. Ct. 1938). This position is supported by *Rothman v. River Edge,* 149 N.J.Super. 435, 374 A.2d 36 (App.Div. 1977), certif. den., 75 N.J. 19, 379 A.2d 250 (1977) in that court's statement that the *unpaid taxes could not result in a judgment against the taxpayers but shall be a lien against the premises.* [149 *N.J. Super.* at 442, 374 A.2d 36].

76.    Thus, because the real estate taxes were not a personal debt of the Plaintiff and no personal liability attaches, these defendants could not have used the residential mortgage foreclosure proceedings or the "*in personam*" foreclosure proceedings to determine ownership and possession of the land and actual possession of the land. This could only have happened through an "*in rem*" proceeding and that proceeding could have only been conducted by municipalities under the *In Rem* Tax Foreclosure Act codified in *N.J.S.A.* 54:5-104.29 *et seq.* Thus, the actions of the defendants are thoroughly unlawful and also prohibited by the Public Use Clause of the Federal and State Constitutions. These irregularities also raise issues of Taking of

28

Private Property without Due Process of Law, i.e., a Due Process 14th Amentment violation.

77. The "private taking" that was conducted by the defendants is prohibited by the federal constitution as the Court has already been extensively briefed. The Public Use Clause provides that "*one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation is paid.*" *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984) (quoting *Thompson v. Consol. Gas Corp.*, 300 U.S. 55, 80 (1937)). Because a private taking cannot be constitutional even if compensated, *"[a] plaintiff that proves that a government entity has taken its property for a private, not a public, use is entitled to an injunction against the unconstitutional taking, not simply compensation."* *Carole Media LLC v. N.J. Transit Corp.*, 550 F.3d 302, 308 (3d Cir. 2008).

78. Here, there is no dispute that Plaintiff's property was taken for a private purpose;

**79.** The defendants knew that the above statutes protect Plaintiff's right to remain in actual possession of his residence. Specifically, *N.J.S.A.* **2A:39-7 says that title shall not be an issue since Plaintiff was in continuous possession of his residence for 16 years.** *N.J.S.A.* **2A:39-7 Title not inquired into; defense of 3 years possession.** *Title shall not be an issue in any action commenced under this chapter. 3 years peaceable possession by the defendant shall be a defense to the action.*

80. The above New Jersey state law specifically applies to Dr. Stephanatos, because Dr. Stephanatos was in possession of this home continuously since 1995 and

it was being used as his residence. In May 2011, following the fraudulent issuance of a judgment by a Mercer County Court that had no jurisdiction over neither the Plaintiff nor his residence, Dr. Stephanatos became at least a "tenant at sufferance".[25] Dr. Stephanatos also had significant possessory interest, including the filing of a Suit to Vacate the Tax Deed[26], the filing of two appeals, the possession of a business in the premises (*Metropolitan Environmental Services, PC* and Metropolitan Environmental Services), and the right to buy back the rights to the property. See *N.J.S.A.* 54:5-104.100. This state law is consistent with the legislative findings in *N.J.S.A. 2A:18-61.1a.*

### N.J.S.A. 2A:18-61.1a. Findings

*The Legislature finds that:*

*a. Acute State and local shortages of supply and high levels of demand for residential dwellings have motivated removal of blameless tenants in order to directly or indirectly profit from conversion to higher income rental or ownership interest residential use.*

---

[25] **Tenant at Sufferance**

Tenant who stays in an apartment after her tenancy has ended without permission from the landlord.

[26] Plaintiff had filed a suit to vacate the tax deed (Passaic County, Law Division L-2973-11). That suit was filed within the statutory period of three months. Due to the fraudulent issuance of an ex-parte writ of possession and the wrongful interference by the defendants of Plaintiff's legal rights, the Law Division did not hear that lawsuit.

In *Bardon v. Land & River Improvement Co.*, 157 U.S. 327 (1895), the U.S. Supreme Court said that even after the expiration of the statutory period, **the deed could be attacked on the ground of want of power to levy the taxes and the power to sell by reason of payment of taxes, lack of jurisdiction in the taxing officers, or the like.** *Bardon, supra* at 334.

Here, the Plaintiff in fact alleges that no taxes were due to the Wayne Township and the Township did not have the power to sell his homestead property due to the above-mentioned constitutional violations. Plaintiff also alleges that his federal rights of equal protection and due process have been violated.

*b. This has resulted in unfortunate attempts to displace tenants employing pretexts, stratagems or means other than those provided pursuant to the intent of State eviction laws designated to fairly balance and protect rights of tenants and landlords.*

*c. These devices have circumvented the intent of current State eviction laws by failing to utilize available means to avoid displacement, such as:* **protected tenancies; rights to purchase; rent affordability protection; full disclosures relevant to eviction challenges; and stays of eviction where relocation is lacking.**

81.     The applicable statutes here are the so called Summary Dispossess Act statutes. The Summary Dispossess Act, N.J.S. 2A:18-53 *et seq.* was enacted in 1951 and amended in 1983 and 1991.   Since enactment of the Anti-Eviction Act, *N.J.S.A. 2A:18-61.1 et seq.*, the Summary Dispossess Act has been understood to cover the eviction of nonresidential tenants and residential tenants not covered by the Anti-Eviction Act. This is a very critical issue for the Court to note. Source: STATE OF NEW JERSEY, NEW JERSEY LAW REVISION COMMISSION, Final Report Relating to Landlord and Tenant Law, February 10, 2012

82.     This Court should also compare the law of the state of New York, where similar process must be followed, i.e., the issue of actual possession must be decided by a Law Division Judge, after an owner (a tax sale purchaser) has met the conditions for taking possession.

83.     Based on New Jersey and New York law, including the law of all other states, to remove a person in actual possession, the owner must occupy the premises himself (this was not the case here as ATF did not take actual possession of the premises and only took constructive possession) or no rent was being paid or for breach of the peace.  In other words, only after they met few exceptions (such as not paying

31

rent, etc.) and through an Order from a Law Division Judge could have allowed these defendants to enter Dr. Stephanatos' property and to remove him from his dwelling.

84.     The defendants intentionally did not follow the Anti-Eviction Act, *N.J.S.A. 2A:18-61.1 et seq.*, and the Summary Dispossess Act, <u>*N.J.S. 2A:18-53*</u> *et seq.* and refused to follow the Unlawful and Forceful Entry and Detainer statutes of the state of New Jersey, and they willfully lied to the Mercer County Clerk in May 2011 that there were no persons in the premises (see Exhibit E for the willful misrepresentation by Robert Del Vecchio that no persons with possessory interests were present at the residence of Dr. Stephanatos) protected by either the Anti-Eviction Act *N.J.S.A. 2A:18-61.1 et seq.*, or the Summary Dispossess Act, *N.J.S.A. 2A:18-53 et seq.*

85.     These criminals (especially Robert Del Vecchio, Esq who is a lawyer in New Jersey) knew that this was a residential property and they knew that they had to comply with the Unlawful Entry and Wrongful Entry statutes – but they knowingly decided not to comply with the state law.  This way they managed to fool the sheriff (there is significant evidence, however, that Del Vecchio, D'Agostino and Lucas formed a conspiracy to violate the legal rights of the Plaintiff) to perform an unlawful search and unlawful entry and to forcefully remove Dr. Stephanatos from his lawfully-occupied residence on June 28, 2011 and end up destroying his business.

86.     The remedy for a violation of this statute is provided for by *N.J.S.A. 2A:39-8*, stating that a plaintiff who is successful under the act "shall be entitled to possession of the real property and shall recover all damages proximately caused by the unlawful entry and detainer including court costs and reasonable attorney's fees." In those

instances where return to possession would not be appropriate, a successful plaintiff shall be awarded treble damages. *N.J.S.A. 2A:39-8.*

87.     In most states, including New Jersey, "it is immaterial in a suit for forcible entry and detainer whether plaintiff has the legal right of possession, and **the action lies so long as the plaintiff had peaceful prior possession and was forcibly put out of that possession by the defendant, even if the plaintiff was devoid of any of the muniments of title or was a trespasser.**" *35A Am. Jur. 2D Forcible Entry and Detainer* § 18 (2001). See, e.g., *Allen v. Harris*, 755 S.W.2d 393, 395 (Mo. Ct. App. 1988) ("In an action of forcible entry and detainer, the sole issue is a question of actual possession, and not the right of possession, since one may be wrongfully in possession, yet he cannot be dispossessed against his will."); *Floro v. Parker*, 205 So. 2d 363, 365-66 (Fla. Dist. Ct. App. 1967) (holding legal right of possession "immaterial" in an action for forcible entry and detainer).

88.     There is no dispute about the following key facts, each of which are easily capable of accurate and ready determination by resort to the certified common level ratios whose authenticity and accuracy cannot be reasonably questioned.

• Plaintiff's property was assessed by the Wayne Township Assessor at $237,000 from 1995 through 2011;

• The average common level ratio in Wayne Township from 1995 through 2011 is 50 percent;

• Based on an average common level ratio of 50 percent, and an assessed value of $237,000, the Assessor valued Plaintiff's property at $237,000/0.50 =

$474,000;  this is the "true value" used by the Assessor in determining Plaintiff's assessed valuation;

- The actual value of Plaintiff's property in 2011 has been established at $330,000 based on the sale of the property in December 2011;  thus, the Assessor's "true value" was forty percent (40%) greater than the actual value of Plaintiff's property; this overvaluation resulted in forty percent (40%) more taxes being levied onto Plaintiff's property;

- In May 1995, the Plaintiff bought the property for $237,000; this is evidence of the fair market value or true value of the property in that year;

- In 1996, the Assessor, however, despite having knowledge of this true value, assessed Plaintiff's property as if his property was valued at $475,000; this is impermissible over assessment because it exceeds the common level ratio by more than 15 percent;  this over assessment was void ab initio according to New Jersey law (see case law below);

- This over-assessment of Plaintiff's property continued from 1996 through 2011, resulting in more than $45,000 in unlawful charges onto Plaintiff's property.  As a result, Plaintiff did not owe any money to the municipality.

- Further proof of the negligence or deliberate indifference of the municipal defendants is provided by the fact that as of today's date, the municipal defendants have not revised the assessment of the 687 Indian Road property, despite having proof of the fair market value of the property.

**The New Jersey Court *In Village of Ridgefield Park et al., v. Bergen County Board of Taxation et al.*, 62 N.J.Super. 133, 162 A.2d 132 said that *any assessment***

*levied in violation of the constitutional mandate of uniformity is absolutely void Ab initio.*

89.     Plaintiff's allegations are that the municipal defendants have violated their authority under the state constitution by imposing unequal and discriminatory taxes under the home rule charter that are prohibited by the state constitution's uniformity clauses, including the prohibition against local taxes (see **N.J. Const., Article IV, Section VII, par. 9**[27]).

90.     As Plaintiff has alleged in his complaint, "*the taxes required to be raised by the general school law for the support of the free public schools of the State are State taxes for the use of the State.*" **Society, &c., v. Paterson, 89 N.J.L. 208, reversing 88 N.J.L. 123.** The taxing district is therefore the state and the taxes are raised for the use of the State. As such, they have to be uniform throughout this taxing district, i.e., the State. However, there is significant inequality among the similarly situated homeowners across the state and this violates the equal protection clause of the 14th Amendment to the federal constitution, and the equal protection guarantee of the New Jersey constitution. However, the municipal defendants are refusing to obey the constitutional mandate and they have been using the Tax Sale statutes to blackmail

---

[27] *Another uniformity provision is Article IV, Section VII, paragraph 9, the prohibition of "private, local or special laws."* This provision, located in the article on the legislative branch, prohibits laws that are not of general application, **i.e., laws that apply to some but not all similarly-situated parties or parts of the state, such as in one municipality but not elsewhere.** It explicitly applies to laws relating to taxation and to the public schools. Here, the state is forcing Plaintiff to pay 89 percent of the state school taxes, while is forcing the City of Paterson (a city with population of almost 150,000 people) to pay only 6 percent of the public school taxes. In essence, the state has created different private, local or special laws for homeowners living in Wayne Township and different laws for homeowners living in Paterson or elsewhere. This is prohibited by Art. IV, Section VII, par. 9.

the homeowners into paying exorbitant amounts of money to enrich themselves and without providing commensurate services to the homeowners.

**No Title was ever vested in the municipal defendants, because no sale was ever conducted of Plaintiff's property prior to the seizing of his residence on June 28, 2011**

91.     The Supreme Court of Louisiana in **A. Remy Fransen, Jr. and Allain F. Hardin v. City of New Orleans, et al., 988 So.2d 225 (2008),** also quoted the following:

*Lands are not forfeited by the non-payment of taxes. The State, by such omission, acquires no title to them. Taxes, like a judgment of a court of record, are a mere lien upon the land, to be enforced in both instances by a sale, **and the title passes, and can pass, by such sale alone.** There can be no redemption by the owner until after a sale, for the reason that until that time the title is still in him, and there is nothing to be redeemed.  After they are due and before the sale, he may pay the taxes and discharge the lien, but there is in no sense a redemption. The State, or other authority imposing the taxes, may become the purchaser at the sale, but until they are so purchased no title to the land vests in such authority. Until there be a sale, every vestage [sic] of title remains in the individual, and the lands are subject to a mere lien for the taxes. It need not be argued that the sale is in no sense a forfeiture.*

3 PROJECT OF A CONSTITUTION FOR THE STATE OF LOUISIANA WITH NOTES AND STUDIES 200-203 (1954) (*quoting Comm'rs of Miami County v. Wan-zoppe-che*, 3 Kan. 3[64, 370-371] (1865)).

92.    Plaintiff concurs with this opinion and asserts that no title was ever passed to the defendants because there was never a sale prior to entering his residence and their acts were that of a trespasser.  Although the property is "sold" as evidenced by a tax sale certificate, *N.J.S.A. 54:5-46*, a tax sale certificate is not an outright conveyance, and the certificate holder does not have title to the land. *Savage v. Weissman*, 355 N.J. Super. 429, 436 (App. Div. 2002); *Township of Jefferson v. Block 447A, Lot I0*, 228 N.J. Super. 1, 4 (App. Div. 1988); *Gasorek v. Gruber*, 126 N.J. Super. 511, 515 (App. Div. I974). The certificate holder succeeds to the lien interest of the taxing district. *Weissman*, supra, 355 N.J. Super. at 436; *Township of Jefferson*, supra, 288 N.J. Super. at 4; *Manning v. Kasdin*, 97 N.J. Super. 406, 417 (App. Div. 1967), certif. denied, 51 N.J. 182 (1968).

93.    Furthermore, Plaintiff was in continuous possession of his residence since 1995 and his possessory interests were protected by the Forceful Entry and Detainer statutes of New Jersey.  In addition, the Township could not commit a "private taking" that is prohibited by federal law.  All the defendants' actions were in violation of clearly established constitutional law that is far superior to any statutory law rights that the defendants may claim that they possessed.

## EFFECT/DAMAGES

94.    Defendants' conspiracy to rig bids and allocate the market for TSCs auctioned in New Jersey during this period, resulted in harm to Plaintiff because it resulted in them having to pay artificially inflated interest with respect to their delinquent tax obligation, or, has resulted in an artificially inflated interest being associated with the

delinquent tax obligation they are legally required to repay and are part of the lien that has been placed on the property of Plaintiff.

95.     As a direct and proximate result of defendants' and their co-conspirators unlawful contract, combination, and conspiracy, Plaintiff was injured and financially damaged in their business and property by having to pay more interest with respect to their delinquent tax obligation than they would have absent defendants' and their co-conspirators' unlawful activities. The total amount of damages is presently estimated to be in the many millions of dollars, as has been provided in the March 2012 complaint and subsequent submissions to the Court.

Dated: April 12, 2013

Respectfully submitted,

Basilis N. Stephanatos, PhD, JD
Plaintiff Pro Se
PO Box 0520
Tenafly, NJ 07670-0520
Tel. (973) 897-8162
Fax: (973) 810-0440
bstephanatos@gmail.com

cc:        All counsel of record
           Honorable Michael A. Shipp
           Honorable Faith Hochberg

## VERIFICATION OF BASILIS NICHOLAS STEPHANATOS

I, Basilis Nicholas Stephanatos, hereby declare as follows:

1. I am over the age of eighteen and otherwise competent to testify.

2. I certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated.  Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

3. I HEREBY DECLARE, UNDER PENALTIES OF PERJURY, THAT I HAVE READ THE FOREGOING THE FACTUAL ALLEGATIONS ARE, TO THE BEST OF MY KNOWLEDGE AND BELIEF, TRUE AND ACCURATE. I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE WILLFULLY FALSE, I AM SUBJECT TO PUNISHMENT. 28 U.S.C. §1746.

Date: April 12, 2013

By:_____

Basilis N. Stephanatos, PhD, JD

**EXHIBIT B**

**FLORIDA DEPARTMENT OF STATE FILINGS BY MATTHEW A. MARINI AND**

**JUSTIN F. WEISENBACHER**

L0000007577

**THE UNITED STATES CORPORATION COMPANY**

ACCOUNT NO. :   072100000032

REFERENCE :   746197    4386205

AUTHORIZATION :

COST LIMIT :   $ PPD

------------------------------------------------------------

ORDER DATE :   June 27, 2000

ORDER TIME :   1:49 PM

ORDER NO.   :   746197-010

CUSTOMER NO:   4386205

CUSTOMER:   Brien J. Nagle, Esq
            Nagle & Higgins, P.c.

            Suite 260
            1755 Park Street
            Naperville, IL  60563

------------------------------------------------------------

            DOMESTIC FILING

      NAME:   AMERICAN TAX FUNDING, LLC

                                    100003306691--0
                                     -06/27/00--01066--018
      EFFECTIVE DATE:                 ****125.00  ****125.00

_____ ARTICLES OF INCORPORATION
_____ CERTIFICATE OF LIMITED PARTNERSHIP
XX ARTICLES OF ORGANIZATION

PLEASE RETURN THE FOLLOWING AS PROOF OF FILING:

_____   CERTIFIED COPY
XX_____   PLAIN STAMPED COPY
_____   CERTIFICATE OF GOOD STANDING

CONTACT PERSON:  Pollye Janisse - EXT. 1154
                        EXAMINER'S INITIALS:

FILE 2ND

FILED
00 JUN 27  PM 4: 21
SECRETARY OF STATE
TALLAHASSEE FLORIDA

# ARTICLES OF ORGANIZATION FOR FLORIDA LIMITED LIABILITY COMPANY

**ARTICLE I - Name:**
The name of the Limited Liability Company is:

American Tax Funding, L L C

**ARTICLE II - Address:**
The mailing address and street address of the principal office of the Limited Liability Company is:

1080 Fairview Lane
Singer Island, Florida   33404

**ARTICLE III - Registered Agent, Registered Office, & Registered Agent's Signature:**

The name and the Florida street address of the registered agent are:

Corporation Service Company
_____
Name

1201 Hays Street
_____
Florida street address (P.O. Box NOT acceptable)

Tallahasse,                    FL  32301
_____
City, State, and Zip

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 608, F.S..*

*Patricia A. Pipito* as its agent
_____
Registered Agent's Signature

**Article IV - Management (Check box if applicable.)**
☐ The Limited Liability Company is to be managed by one manager or more managers and is, therefore, a manager - managed company.

FILED
00 JUN 27 PM 4:21
SECRETARY OF STATE
TALLAHASSEE FLORIDA

(An additional article must be added if an effective date is requested)

*Matthew A. Marini*
_____
Signature of a member or an authorized representative of a member.

(In accordance with section 608.408(3), Florida Statutes, the execution
of this document constitutes an affirmation under the penalties of perjury
that the facts stated herein are true.)

American Tax Holding, L L C
By:   Matthew A. Marini, Member
_____
Typed or printed name of signee

FILING FEES:
$ 100.00  Filing Fee for Articles of Organization
$  25.00  Designation of Registered Agent
$  30.00  Certified Copy (OPTIONAL)
$   5.00  Certificate of Status (OPTIONAL)

L 0 0 0 0 0 0 0 7578

**CSC**

**THE UNITED STATES CORPORATION** C O M P A N Y

```
ACCOUNT NO. :  072100000032

    REFERENCE :  746197    4386205

AUTHORIZATION : _ _

    COST LIMIT :  $ PPD
```
--------------------------------------------------------------

```
ORDER DATE :  June 27, 2000

ORDER TIME :   1:50 PM

ORDER NO.  :  746197-015

CUSTOMER NO:   4386205

CUSTOMER:  Brien J. Nagle, Esq
           Nagle & Higgins, P.c.

           Suite 260
           1755 Park Street
           Naperville, IL  60563
```

*FILE 3 RD*

--------------------------------------------------------------

DOMESTIC FILING

```
    NAME:    AMERICAN TAX FUNDING
             SERVICING, LLC
```

300003306693--4
-06/27/00--01066--019
****125.00  ****125.00

```
    EFFECTIVE DATE:
```

```
_____  ARTICLES OF INCORPORATION
_____  CERTIFICATE OF LIMITED PARTNERSHIP
XX ARTICLES OF ORGANIZATION

PLEASE RETURN THE FOLLOWING AS PROOF OF FILING:

_____     CERTIFIED COPY
XX_____   PLAIN STAMPED COPY
_____     CERTIFICATE OF GOOD STANDING

CONTACT PERSON:  Pollye Janisse - EXT. 1154
                       EXAMINER'S INITIALS:  _____
```

00 JUN 27 PH 4 23
SECRETARY OF STATE
TALLAHASSEE FLORIDA
*FILED*

W 6/27

# ARTICLES OF ORGANIZATION FOR FLORIDA LIMITED LIABILITY COMPANY

**ARTICLE I - Name:**
The name of the Limited Liability Company is:

American Tax Funding Servicing, L L C

**ARTICLE II - Address:**
The mailing address and street address of the principal office of the Limited Liability Company is:

1080 Fairview Lane
Singer Island, Florida 33404

**ARTICLE III - Registered Agent, Registered Office, & Registered Agent's Signature:**

The name and the Florida street address of the registered agent are:

Corporation Service Company
_____
Name
1201 Hays Street
_____
Florida street address (P.O. Box NOT acceptable)
Tallahasse,            FL  32301
_____
City, State, and Zip

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 608, F.S..*

*Patricia A. Pigults* as its agent
_____
Registered Agent's Signature

**Article IV - Management (Check box if applicable.)**
☐ The Limited Liability Company is to be managed by one manager or more managers and is, therefore, a manager - managed company.

(An additional article must be added if an effective date is requested)

*Matthew A. Marini*
_____
Signature of a member or an authorized representative of a member.

(In accordance with section 608.408(3), Florida Statutes, the execution of this document constitutes an affirmation under the penalties of perjury that the facts stated herein are true.)

American Tax Holding, L L C
By: Matthew A. Marini, Member
_____
Typed or printed name of signee

**FILING FEES:**
$ 100.00  Filing Fee for Articles of Organization
$  25.00  Designation of Registered Agent
$  30.00  Certified Copy (OPTIONAL)
$   5.00  Certificate of Status (OPTIONAL)

*FILED 00 JUN 27 PM 4: 28 SECRETARY OF STATE TALLAHASSEE FLORIDA*

# 2013 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

**DOCUMENT# L00000007576**

**Entity Name:** AMERICAN TAX HOLDING, LLC

**FILED**
**Apr 03, 2013**
**Secretary of State**

**Current Principal Place of Business:**

345 JUPITER LAKES BLVD #300
JUPITER, FL 33458

**Current Mailing Address:**

345 JUPITER LAKES BLVD #300
JUPITER, FL 33458

**FEI Number:** 65-1021334                                  **Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

MARINI, MATTHEW A.
345 JUPITER LAKES BLVD #300
JUPITER, FL 33458 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:   **MATTHEW A. MARINI**                                              04/03/2013

       Electronic Signature of Registered Agent                                        Date

## Manager/Member Detail Detail :

| Title | MGR | | Title | MGR |
|---|---|---|---|---|
| Name | MARINI, MATTHEW A | | Name | WEISENBACHER, JUSTIN |
| Address | 345 JUPITER LAKES BLVD. #300 | | Address | 345 JUPITER LAKES BLVD. #300 |
| City-State-Zip: | JUPITER FL 33458 | | City-State-Zip: | JUPITER FL 33458 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 608, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: MATTHEW MARINI                          MANAGER                    04/03/2013

       Electronic Signature of Signing Manager/Member Detail                                 Date

DEC 29 2004  3:40 PM FR HOLLAND & KNIGHT 305 7897799 TO 27486#888060#000 P.01

L0000 0007577

Division of Corporations

# Florida Department of State
### Division of Corporations
#### Public Access System

---

Electronic Filing Cover Sheet

---

**Note: Please print this page and use it as a cover sheet.** Type the fax audit
number (shown below) on the top and bottom of all pages of the document.

(((H04000255182 3)))

**Note:** DO NOT hit the REFRESH/RELOAD button on your browser from this
page. Doing so will generate another cover sheet.

---

To:
    Division of Corporations
    Fax Number     : (850)205-0383

From:
    Account Name   : JAM MARK LIMITED
    Account Number : I20000000112
    Phone          : (305)789-7758
    Fax Number     : (305)789-7799

## LIMITED LIABILITY AMENDMENT

### AMERICAN TAX FUNDING, L L C

| Certificate of Status | 1 |
|---|---|
| Certified Copy | 1 |
| Page Count | 04 |
| Estimated Charge | $60.00 |

Electronic Filing Menu.        Corporate Filing.        Public Access Help.

https://efile.sunbiz.org/scripts/efilcovr.exe

DEC 29 2004  3:40 PM FR HOLLAND & KNIGHT 305 7897799 TO 27486#888060#000 P.02
FAX AUDIT NO. H04000255182 3

## AMENDED AND RESTATED

## ARTICLES OF ORGANIZATION

## OF

## AMERICAN TAX FUNDING, LLC

---

The undersigned, pursuant to the provisions of Sections 407 and 411 of the Florida Limited Liability Company Act, as amended (*Florida Statutes*, Sections 608.401, *et seq.*), adopts the following Amended and Restated Articles of Organization of American Tax Funding, LLC, a limited liability company (the "Company") having its original articles of organization filed with the Florida Department of State on June 27, 2000. The following Amended and Restated Articles of Organization amends and restates the provisions of the Company's original articles of organization in their entirety. The undersigned confirms that these Amended and Restated Articles of Organization were duly adopted by a Written Consent In Lieu of Special Meeting of the Sole Member of the Company on December 23, 2004:

### ARTICLE I - NAME

The name of the limited liability company (the "LLC") is:

AMERICAN TAX FUNDING, LLC

### ARTICLE II – MAILING AND STREET ADDRESS
### OF THE PRINCIPAL OFFICE OF THE LLC

The mailing and street address of the principal office of the LLC is:

630 US Highway 1, Suite 300
North Palm Beach, Florida 33408

### ARTICLE III – NAME AND STREET ADDRESS
### OF INITIAL REGISTERED AGENT

The name and street address of the registered agent of the LLC for service of process in the State of Florida is:

Justin Weisenbacher
630 US Highway 1, Suite 300
North Palm Beach, Florida 33408

FILED
2004 DEC 29 AM 10: 02
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

DEC 29 2004  3:40 PM FR HOLLAND & KNIGHT 305 7897799 TO 27486#880060#000 P.03

FAX AUDIT NO. H04000255182 3

## ARTICLE IV – MANAGEMENT

The LLC is a manager-managed company.

**IN WITNESS WHEREOF**, the undersigned has executed these Amended and Restated Articles of Organization as of the 23 day of December, 2004.

Justin Weisenbacher, President

FILED
2004 DEC 29  AM 10: 02
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

FAX AUDIT NO. H04000255182 3

DEC 29 2004  3:41 PM FR HOLLAND & KNIGHT 305 7897799 TO 27486#888060#000 P.04
FAX AUDIT NO. H04000255182 3

## STATEMENT OF REGISTERED AGENT

The undersigned hereby accepts his appointment as the registered agent for American Tax Funding, LLC in the State of Florida.  The undersigned is familiar with, and accepts, the obligations of registered agent in the State of Florida as provided in Florida Statutes, Chapter 608.

Justin Weisenbacher

# 2465434_v2

FILED
2004 DEC 29 AM 10: 02
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

** TOTAL PAGE.04 **

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L13000030138
FILED 8:00 AM
February 27, 2013
Sec. Of State
stoner

## Article I

The name of the Limited Liability Company is:

NORTH SHORE PAYROLL SOLUTIONS, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

19619 TRAILS END TERRACE
JUPITER, FL.   33458

The mailing address of the Limited Liability Company is:

19619 TRAILS END TERRACE
JUPITER, FL.   33458

## Article III

The purpose for which this Limited Liability Company is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The name and Florida street address of the registered agent is:

MATTHEW A MARINI
8818 SE NORTH PASSAGE WAY
TEQUESTA, FL.   33469

Having been named as registered agent and to accept service of process for the above stated limited
liability company at the place designated in this certificate, I hereby accept the appointment as registered
agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes
relating to the proper and complete performance of my duties, and I am familiar with and accept the
obligations of my position as registered agent.

Registered Agent Signature:   MATTHEW A. MARINI

# Article V

The name and address of managing members/managers are:

L13000030138
FILED 8:00 AM
February 27, 2013
Sec. Of State
stoner

Title:  MGR
NSPS HOLDINGS, LLC
19619 TRAILS END TERRACE
JUPITER, FL.   33458

Signature of member or an authorized representative of a member

Electronic Signature: D. L. MARINI

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

# Certificate of Limited Partnership

A12000000085
FILED
**February 14, 2012**
Sec. Of State
tcline

Name of Limited Partnership:

MARTIN FAMILY INVESTMENTS, LLLP

Street Address of Limited Partnership:

8818 S.E. NORTH PASSAGE WAY
JUPITER, FL. 33469

Mailing Address of Limited Partnership:

8818 S.E. NORTH PASSAGE WAY
JUPITER, FL. 33469

The name and Florida street address of the registered agent is:

MATTHEW MARINI
8818 S.E. NORTH PASSAGE WAY
JUPITER, FL. 33469

I certify that I am familiar with and accept the responsibilities of registered agent.

Registered Agent Signature: MATTHEW MARINI

The name and address of all general partners are:

Title: G
MARTIN FAMILY MANAGEMENT LLC
8818 S.E. NORTH PASSAGE WAY
JUPITER, FL. 33469

This Limited Partnership is a Limited Liability Limited Partnership.

Signed this Fourteenth day of February, 2012

I (we) declare the I (we) have read the foregoing and know the contents thereof and that the facts stated herein are true and correct.

General Partner Signature: ALFREDO R. TAMAYO, AUTHORIZED REP

The individual(s) signing this document affirm(s) that the facts stated herein are true and the individual(s) is/are aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.

**BUREAU VERITAS**

Raritan Center, 160 Fieldcrest Avenue
Edison, NJ 08837

Docket # 02.12-cv-...

TO:

William T. Walsh
Clerk of the Court
Martin Luther King, Jr. Federal Bldg
50 Walnut Street
Room 4015
Newark, NJ 07101

U.S. Courthouse



U.S. POSTAGE PAID
EDGEWATER, NJ
APR 15 20/13
AMOUNT
**$3.12**
0004316-04

1000

07101