## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION** | Civil Action<br><br>Master Docket No. 3:12-CV-01893(MAS)(TJB) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANT MTAG SERVICES LLC'S MOTION TO DISMISS

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

*Interim Liaison Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .............................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................. 3

LEGAL ARGUMENT ....................................................................... 4

I.      STANDARD OF REVIEW ................................................ 4

II.     PLAINTIFFS' COMPLAINT PROPERLY STATES A CLAIM
THAT DEFENDANT MTAG IS LIABLE AS A SUCCESSOR TO
DEFENDANT MOORING'S ILLEGAL ACTS ................................ 5

       A.     The Complaint Sufficiently Alleges that MTAG is Liable as a
Successor Corporation. .......................................... 5

       B.     The Asset Purchase Agreement Submitted With MTAG's
Motion Conclusively Establishes that MTAG Expressly
Assumed Liabilities from Mooring. ......................... 8

       C.     MTAG Has Failed to Present Any Basis for Avoiding the Plain
Text of the Assumption of Liability Term in the Asset Purchase
Agreement. ...........................................................12

       D.     Plaintiffs' Alter Ego Claims Cannot Be Dismissed Absent The
Opportunity for Additional Discovery. ...................21

III.    IN THE ALTERNATIVE, BECAUSE MTAG INTRODUCED
MATTERS OUTSIDE THE PLEADINGS, ITS MOTION SHOULD
BE TREATED AS ONE FOR SUMMARY JUDGMENT, WHICH
MUST BE DENIED DUE TO LACK OF DISCOVERY AND
DISPUTED ISSUES OF MATERIAL FACT....................................22

IV.    PLAINTIFFS INCORPORATE THE ARGUMENTS IN THE
OPPOSITION TO THE JOINT DEFENSE BRIEF AND THE
OPPOSITION TO MOORING'S MOTION TO DISMISS...............25

CONCLUSION .............................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alston v. Parker*,
     363 F.3d 229 (3d Cir. 2004)................................................................9

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 265 (1986) .................................23

*Bell Atlantic Corp. v. Twombly*,
     550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..............................4, 8

*Dent v. Beazer Materials & Servs.*,
     156 F.3d 523 (4th Cir. 1998)............................................................10

*Grayson v. Mayview State Hosp.*,
     293 F.3d 103 (3d Cir. 2002)..............................................................9

*Harris, MDM Assocs. v. Johns Bros. Energy Tech.*,
     59 Va. Cir. 295 (Va. Cir. Ct. 2002) ...............................................12, 13

*Harris v. T.I., Inc.*,
     413 S.E.2d 605, 243 Va. 63 (Va. 1992).............................................passim

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*,
     425 U.S. 738, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976) ....................................8

*In re Burlington Coat Factory Sec. Litig.*,
     114 F.3d 1410 (3d Cir. 1997).............................................................22

*Johnson v. RAC Corp.*,
     491 F.2d 510 (4th Cir. 1974).............................................................23

*Lindsey v. Prive Corp.*,
     161 F.3d 886 (5th Cir. 1998).............................................................20

*Lum v. Bank of America*,
     361 F.3d 217 (3d Cir.2004)................................................................4

*Marathon Oil Co. v. Tex. City Terminal Ry. Co.*,
164 F. Supp. 2d 914 (S.D. Tex. 2001) ............................................................21

*New York v. Hill*,
528 U.S. 110, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000) ...................................8

*Phat Van Le v. Univ. of Medicine & Dentistry of N.J.*,
379 Fed. Appx. 171, 2010 U.S. App. LEXIS 9767, 2010 WL 1896415
(3d Cir., May 12, 2010) ...................................................................................23

*Plott v General Motors Corp., Packard Elec. Div.*,
71 F.3d 1190,1195 (6th Cir. 1995), *cert. den.*, 517 U.S. 1157, 116 S. Ct.
1546, 134 L. Ed. 2d 649 (1996) ......................................................................23

*Richmond v. Madison Management Group, Inc.*,
918 F.2d 438 (4th Cir. 1990)............................................................................7

*Sahu v. Union Carbide Corp.*,
418 F. Supp. 2d 407 (S.D.N.Y. 2005) ............................................................21

*Saudi Am. Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.)*,
558 F.3d 234 (3d Cir. 2009).............................................................................20

*Schoenbaum v. Firstbrook*,
405 F.2d 215 (2d Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S. Ct. 1747,
23 L. Ed. 2d 219 (1969) ..................................................................................22

*Sherwin-Williams Co. v. ARTRA Group, Inc.*,
125 F. Supp. 2d 739 (D. Md. 2001).................................................................17

*States Roofing Corp. v. Bush Constr. Corp.*,
15 Va. App. 613 (Va. Ct. App. 1993)..............................................................13

*States Roofing Corp. v. Bush Constr. Corp.*,
426 S.E.2d 124 (Va. Ct. App. 1993) ..........................................................12, 13

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(d) ..................................................................................4, 21, 23

Fed. R. Civ. P. 56(a) ...........................................................................................23

Fed R. Civ. P. 9(b) ..............................................................................................21

Fed R. Civ. P. 12(b)(6)......................................................................................4, 23

Fed. R. Civ. P. 56.................................................................4, 21, 22, 23

Fed R. Civ. P. 56(f).......................................................................23, 24

## PRELIMINARY STATEMENT

Defendant MTAG Services, LLC's ("MTAG") Motion to Dismiss represents a novel attempt to evade responsibility for its role in a bid-rigging conspiracy that detrimentally affected thousands of New Jersey property owners. Despite its explicit agreement to assume responsibility for its predecessor entity Defendant Mooring Tax Asset Group, LLC ("Mooring"), a key participant in the illegal scheme, MTAG now asserts that it is not liable for Mooring's conduct. Even putting aside the procedural improprieties of MTAG's motion, as discussed *infra*, MTAG is wrong.

MTAG attached an April 15, 2010 Asset Purchase Agreement ("Asset Purchase Agreement") to its brief which, MTAG contends, governs MTAG's purchase of certain Mooring assets. *See* Doc. No. 182-4. Aside from the fact that it is improper to consider such extrinsic evidence on a Motion to Dismiss, the Asset Purchase Agreement reveals that it contains an *express* assumption of liability clause.[1] It is axiomatic that a successor is liable for its predecessor's wrongdoing

---

[1] The Asset Purchase Agreement provides in relevant part that, as consideration for the transfer of purchased assets, the buyer (MTAG) assumes, among other things:

> 27.17% of all liabilities and obligations of Seller [Mooring] for... any fines, penalties, damages or other wares payable by or assessed against Seller [Mooring], arising out of or relating to any pending, threatened or prospective judicial or administrative investigation or proceeding arising out of or relating to the conduct of the Business prior to the Closing Date [of the purchase agreement.]

1

where the instrument of succession contains an express assumption of liability clause like the one here. *See* Section II.B, *infra.* MTAG, therefore, is liable for Mooring's participation in the conspiracy.

Despite this express assumption of liability, MTAG nevertheless makes two arguments in an attempt to evade liability. Both contentions fail.

*First*, MTAG asserts that a four-prong test exists for successor liability, and that Plaintiffs have failed to show that all four-prong are satisfied. In so arguing, MTAG  ignores the disjunctive relationship of the four-prong test. Because at least one of the prongs is satisfied, MTAG remains responsible for Mooring's unlawful conduct.

*Second*, MTAG argues that the assumption of liability clause is simply an indemnification clause that creates an obligation to reimburse and defend Mooring, but does not expose MTAG to direct liability. Assuming it is proper to consider such an argument on a Motion to Dismiss, this assertion is contrary to the plain language of the Asset Purchase Agreement. Where, as here, a successor expressly agrees to "assume[] . . . liability" of its predecessor, the law is clear that the successor is directly liable for its predecessor's wrongdoing prior to the agreement. Thus, MTAG's Motion to Dismiss should be denied.

---

Asset Purchase Agreement, Section 4 at p. 3-4 (emphasis added). Business is specifically defined to include "interests in tax liens" in the Asset Purchase Agreement. *Id*. at 1

2

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their Consolidated Master Class Action Complaint, Doc. 113 ("Complaint") on December 21, 2012. The Complaint alleges that "Defendant MTAG was organized in 2010 as the successor of, and to acquire the tax lien servicing business and related assets of defendant Mooring, and for all intents and purposes is the alter ego of defendant Mooring." Compl. ¶ 61. The Complaint alleges that Mooring participated in "an illegal agreement and/or understanding" with several other Defendants "to rig bids for municipal tax liens at public tax lien auctions throughout the State of New Jersey which they attended during the Class Period." Compl. ¶ 64.

The Complaint also alleges, among other things, that Defendant Mooring attended a tax lien auction on December 20, 2006, and that collusion occurred in connection with that the auction when Mooring bidders conspired with several identified co-defendants to "'pick' the liens on which they would each bid prior to the auction." Compl. ¶ 154(e). James Meeks served as Mooring's president and Lambrose Xethalis was Mooring's director of acquisitions with responsibilities for selecting and purchasing tax liens for Mooring during the class period. Compl. at ¶ 60. Meeks and Xethalis participated in discussions and agreements with co-defendants prior to the beginning of the auctions at which they were present. During these pre-auction discussions, the bidders reduced or eliminated

3

competitive bids by allocating liens up for auction to certain cartelists. Compl. ¶ 64. This pre-auction "picking" ensured that the lien which had been allocated was sold during the auction at the highest interest rate possible to the cartelist designated as the pre-determined winner of the bid. Compl. ¶ 64.

## LEGAL ARGUMENT

## I.    STANDARD OF REVIEW

Plaintiffs establish the proper standard of review applicable to this case in Class Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss, filed concurrently. The same standard exists here. As Plaintiffs explain there, a motion to dismiss should be granted only if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

It is also axiomatic that, "[i]n deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004) (citation omitted).  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## II.    PLAINTIFFS' COMPLAINT PROPERLY STATES A CLAIM THAT DEFENDANT MTAG IS LIABLE AS A SUCCESSOR TO DEFENDANT MOORING'S ILLEGAL ACTS.

### A.    The Complaint Sufficiently Alleges that MTAG is Liable as a Successor Corporation.

The parties do not dispute that MTAG was formed after the applicable Class Period. *See, e.g.,* Compl. ¶ 61. Plaintiffs' claims against MTAG are based on MTAG's acquisition of certain assets from Mooring, as well as the liabilities attendant to those assets, including Mooring's liability for the antitrust and related claims alleged in the Complaint. *See* Compl. ¶¶ 60, 61, 64, 154(e). Even without relying on the contracts submitted with MTAG's motion, Plaintiffs' Complaint properly states a claim that MTAG is liable as a successor to Mooring based on its acquisition of Mooring's assets. While Plaintiffs dispute the propriety of reviewing MTAG's submitted Asset Purchase Agreement prior to any discovery having taken place, *see* Section III, *infra*, the materials appended to MTAG's motion conclusively demonstrate that MTAG expressly acquired certain liabilities from Mooring, including the liability for the allegations detailed in the Complaint.

MTAG asserts that because it was formed after the Class Period identified in Plaintiffs' Complaint, it cannot be liable for the acts of Mooring, notwithstanding its purchase of Mooring's assets and assumption of liabilities. Def. Mem. of Law in Support of Motion to Dismiss, Doc. 182-1 ("Def. Brief"), p. 20. This argument fails as a matter of law.

As set forth above, the Complaint includes factual allegations that: (1) Mooring participated in an unlawful statewide conspiracy, including through participating in discussions and agreements with co-conspirators to rig bids for tax liens throughout the State of New Jersey; and (2) MTAG acquired certain assets from Mooring in 2010. Despite these allegations, MTAG argues, that, under Virginia law,[2] a purchasing company does not take on the liability of the selling company. *See* Def. Brief, at 26. As MTAG acknowledges, however, there are four commonly-recognized exceptions to that common law rule:

> In order to hold a purchasing corporation liable for the obligations of the selling corporation, it must appear that (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or de facto merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, *or* (4) the transaction is fraudulent in fact.

*Harris v. T.I., Inc.*, 413 S.E.2d 605, 243 Va. 63, 69 (Va. 1992) (emphasis in original), *cited in* MTAG Brief at 27.[3]

---

[2] MTAG argues that because both Mooring and MTAG are organized under the laws of Virginia, Virginia law should govern any determination of MTAG's successor liability. Def. Brief, at 10. While Plaintiffs do not concede that Virginia law trumps Third Circuit precedent on this issue, it makes no difference because the same test (and conclusion) apply under either standard.

[3] The Third Circuit recognizes the same four basic exceptions to the general rule of successor non-liability. *Alcoa v. Beazer East, Inc*., 124 F.3d 551, 565 (3d Cir. 1997) ("[T]here are four exceptions to this general rule of successor non-liability: (1) where the purchaser of assets expressly or impliedly assumes the liabilities of the transferor; (2) where the transaction amounts to a de facto merger; (3) where

In its brief, MTAG *omits* the "or" prior to the fourth exception identified in *Harris* and argues that Plaintiffs need to meet all four prongs. Def. Brief, at 35. But this "or" was *emphasized* by the Virginia Supreme Court and clarifies that each exception is separate and independent. *Harris*, 413 S.E.2d at 609; *see also*, *Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 450 (4th Cir. 1990) ("[T]he purchaser of assets can assume such liability either expressly or by implication."). Accordingly, to prove successor liability, Plaintiffs need only state a claim that MTAG is liable as a successor to Mooring under *one* of the four prongs. Although Plaintiffs' Complaint alleges several grounds for MTAG's successor liability, here, Plaintiffs' allegations meet the first prong of the four part test because MTAG expressly or impliedly agreed to assume such liabilities. *See* Compl. ¶ 61.

Again ignoring the standard on a Motion to Dismiss, MTAG argues at length that Plaintiffs misconstrued the exact relationship between it and Mooring in the Complaint. Def. Brief, at 7-8, 20, 25. Because antitrust plaintiffs must rely on the limited information available to them when preparing allegations against alleged

the purchasing corporation is merely a continuation of the transferor corporation; and (4) where the transaction is fraudulently intended to escape liability."). Some courts do not distinguish between "or" and "and" when listing the four exceptions to successor liability. Although the Third Circuit in *Alcoa* uses the word "and" when detailing the four exceptions, the court considered the exceptions to be separate and independent. *See Alcoa*, 124 F.3d at 565 (finding liability under the first exception and therefore not considering the possible application of the other three exceptions).

conspirators, however, "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); *see also Twombly*, 550 U.S. at 558 (citing *Poller*, 368 U.S. at 473) (noting that courts "should be cautious before dismissing an antitrust complaint in advance of discovery…").

Using the limited information available, Plaintiffs alleged *inter alia* that MTAG acquired certain New Jersey tax lien assets from Mooring. As recognized by the Virginia Supreme Court and the Third Circuit, business entities may "expressly or impliedly" assume liabilities in connection with the sale of assets, such as in the purchase agreement described in *Harris*. *Harris*, 243 Va. 63. Plaintiffs' allegations can be plausibly read that MTAG, in purchasing Moore's assets, also agreed to assume such liabilities.

**B.    The Asset Purchase Agreement Submitted With MTAG's Motion Conclusively Establishes that MTAG Expressly Assumed Liabilities from Mooring.**

Even if Plaintiffs failed to adequately plead MTAG's liability as a successor corporation in their initial Complaint (without the benefit of discovery), MTAG has attached the applicable Asset Purchase Agreement to its motion.[4] This

---

[4] At the very least, MTAG's Motion to Dismiss *with prejudice* should be denied. Dismissal with prejudice is a "harsh remedy[,]" *New York v. Hill*, 528 U.S. 110, 118, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000), and is only appropriate if

8

Agreement clearly identifies the liabilities that MTAG assumed (including for those alleged in the underlying Complaint) and lends further support to the factual allegations in the Complaint. Thus, based on MTAG's own submission, its Motion should be denied.

MTAG's Asset Purchase Agreement includes a term titled "Assumed Liabilities," which states in relevant part:

> In consideration for the transfer of the Purchased Assets, Buyer [MTAG] **hereby assumes** … (iv) **27.17% of all liabilities and obligations of Seller** [Mooring] **for** investigation and defense costs and expenses (including fees and expenses of counsel and other professionals), any obligations to indemnify employees, officers, directors, agents or others **and any fines, penalties, damages or other wares payable by or assessed against Seller** [Mooring], **arising out of or relating to any pending, threatened or prospective judicial or administrative investigation or proceeding arising out of or relating to the conduct of the Business prior to the Closing Date** (net of any amounts paid by Meeks or Buyer pursuant to the Indemnity Agreement in respect of the same Liability)….

Asset Purchase Agreement, Doc. 182-4, ("Asset Purchase Agreement), Section 4 at 3-4 (emphasis added). The Asset Purchase Agreement goes on to identify the specific Mooring liabilities that were not being assumed by MTAG, as follows:

> [A]all other liabilities and obligations of Seller are not being assumed and shall be retained by Seller [Mooring], including

---

amendment would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Should the Court not grant the Motion, Plaintiffs should be afforded an opportunity to amend their Complaint to further plead MTAG's assumption of liabilities based on the Agreement which Plaintiffs have only now seen for the first time.

liabilities and obligations (i) for taxes, penalties and related obligations of any nature; and (ii) for breaches or violations of any contract (including any Assumed Contract) occurring on or prior to the Closing Date (all of which are referred to herein as the "Retained Liabilities").

Asset Purchase Agreement, Section 4 at 4.

Section 4 of the Asset Purchase Agreement contains a clear and unequivocal assumption of a certain percentage of Mooring's liabilities by MTAG. The phrase "27.17% of **all liabilities and obligations** of Seller [Mooring] for … any fines, penalties, damages, or other wares … arising out of or relating to the conduct of the Business" is more than broad enough to encompass the claims alleged in the Plaintiffs' Complaint. *Ibid.* (emphasis added); *see Alcoa*, *supra*, 124 F.3d at 567 (holding purchaser's agreement to "assume[] all of the liabilities and obligations of [seller] of whatsoever nature" broad enough to encompass CERCLA liabilities); *Caldwell Trucking*, 421 F.3d at 242-43 (purchaser's agreement to assume "any and all liabilities and obligations" broad enough to encompass liability for contribution at third party disposal sites).

In both the Third Circuit, as shown by *Caldwell*, and the Fourth Circuit, courts are directed to examine assumption of liability and indemnification terms to determine whether they are "either specific enough to include … liability or general enough to include any and all … liability." *Dent v. Beazer Materials & Servs.*, 156 F.3d 523, 534 (4th Cir. 1998) (internal quotation omitted). While this

line of cases specifically focused on the implied or express assumption of environmental liabilities, the same reasoning should apply to MTAG's assumption of liability for the antitrust and related claims stated in Plaintiffs' Complaint.

The "Assumed Liabilities" term in the Asset Purchase Agreement includes legal or antitrust claims, as well as "fines, penalties, damages or other awards … arising out of or relating to any pending, threatened or prospective judicial or administrative investigation or proceeding." Asset Purchase Agreement, Section 4, at 3-4. Further, the "Assumed Liabilities" term specifically refers to liabilities "arising out of or relating to the conduct of the Business **prior to** the Closing Date," which includes any claims arising during the Class Period identified in the Complaint. MTAG's assumption of a percentage of Mooring's antitrust liability is further evidenced by the "Retained Liabilities" identified in the Asset Purchase Agreement, which are limited to obligations related to taxes and breach of contract.

Given the broad assumption of liability contained in the Asset Purchase Agreement, the Court should deny MTAG's Motion if it determines that it is appropriate to review the Asset Purchase Agreement, or any other extrinsic document, in the first instance.

**C.    MTAG Has Failed to Present Any Basis for Avoiding the Plain Text of the Assumption of Liability Term in the Asset Purchase Agreement.**

Despite the plain language of the Agreement, MTAG nevertheless raises three arguments in an attempt to circumvent its express assumption of Mooring's liabilities. All of these arguments are unsupported by the facts or the cases cited in MTAG's brief, however, and it remains liable as a successor to Mooring.

**1.    Because MTAG Expressly Assumed a Certain Percentage of "All" Mooring's Liabilities, the Percentage of Total Assets Purchased is Not Relevant to MTAG's Successor Liability.**

MTAG first argues that Virginia law limits successor liability only to sales in which the seller transfers "all" of its assets to the purchaser. Def. Brief, at 25-26. Thus, because it only purchased some assets, MTAG argues it is not liable. *Id.* The three cases MTAG cites in support of its argument, *Harris, MDM Assocs. v. Johns Bros. Energy Tech.*, 59 Va. Cir. 295 (Va. Cir. Ct. 2002), and *States Roofing Corp. v. Bush Constr. Corp.*, 426 S.E.2d 124 (Va. Ct. App. 1993), do not hold that successor liability occurs only when the seller transfers "all" of its assets in circumstances present here. *See* Def. Brief, at 26. Indeed, contrary to MTAG's assertions, the cases demonstrate that the percentage of assets acquired is not relevant when a purchase agreement includes an express assumption of liability.

In *Harris*, for example, the Virginia Supreme Court, while examining an express assumption of liability term in an asset purchase agreement, focused solely

12

on the assumption of liability term to determine what liabilities the purchaser acquired – not whether the purchaser acquired all of the seller's assets. *Harris*, 243 Va 63 at 69-70 ("None of the other provisions provide for, or even refer to, the assumption of liabilities, contractual or otherwise."). The *Harris* Court held that by the terms of this agreement, the purchasing company assumed the seller's contractual liabilities, but not its product liabilities. *Id.* Only after determining that there was no express assumption of products liability was it necessary for the *Harris* court turn to the remaining three exceptions to the successor non-liability rule. *Id.* at 70. *Harris*, therefore, demonstrates that it is the assumption of liability that matters, rather than the percentage of acquisition.

The holding in *States Roofing Corp.*, in which a successor which acquired all of the assets of a selling company was found to have assumed the selling company's liabilities, also is not applicable here because the court relied on an "implied agreement." *States Roofing Corp. v. Bush Constr. Corp.*, 15 Va. App. 613, 618 (Va. Ct. App. 1993). An express assumption of liability clause exists here. Nor does *MDM Assocs.* support MTAG's position. There, a Virginia Circuit Court held that the plaintiff *did* adequately state a claim that the defendant impliedly assumed its liabilities, notwithstanding a purchase agreement term expressly *disclaiming* such an assumption of liability, based on the defendant's post-transaction conduct. *See* 59 Va. Cir. at 302.

13

MTAG does not cite, and Plaintiffs are not aware of, a case like the one at bar where a company has a broad assumption of liability clause but, because it did not purchase 100% of the assets, was held not bound by the clause. Indeed, such a holding would be illogical. In effect, MTAG seeks to have this Court rewrite express assumption of liability terms in purchase agreements negotiated by business entities in arm's-length transactions so that they have no effect unless there is a complete transfer of assets. Such a holding would render the specific clause in the Asset Purchase Agreement by which MTAG assumed a portion of Mooring's liabilities meaningless. This clearly is not the law in Virginia or the Third Circuit, and would result in untenable consequences for business entities negotiating the distribution of their assets and liabilities.

> **2. MTAG's Express Assumption of Mooring's Liabilities is Clear and Unambiguous, Irrespective of any Related Indemnification Term.**

MTAG next argues for an interpretation of the "Assumed Liabilities" provision in the Asset Purchase Agreement that is contrary to the plain text of the document. MTAG contends that the "Assumed Liabilities" provision merely serves as an indemnification term, intended only to provide for a private allocation of risk between Mooring and MTAG. Def. Brief, at 30-31.

The Asset Purchase Agreement clearly states that "Buyer [MTAG] **hereby assumes** … (iv) **27.17% of all liabilities and obligations of Seller** [Mooring] …"

14

Asset Purchase Agreement, at 3-4 (emphasis added). The Asset Purchase Agreement itself includes a separate indemnification term titled "Retained Liabilities Not Assumed; Indemnification." *Id.* at 4.

In an effort to avoid the unambiguous "Assumed Liabilities" provision, MTAG offers extrinsic evidence in the form of declarations of the two parties to the Asset Purchase Agreement (again ignoring the standard on a Motion to Dismiss), both asserting that the "Assumed Liabilities" term was intended only to reflect the parties' indemnification rights in a separate Indemnification Agreement. *See* Declaration of James P. Meeks, Doc. 182-2 ("Meeks Decl.") at ¶¶ 31-37; Declaration of John Jacquemin, Doc. 182-4 ("Jacquemin Decl.") at ¶ 11.

It is well-established that when the text of a contractual term is "clear and unambiguous," however, courts "determine its meaning by looking to the language itself, without resort to extrinsic evidence." *Alcoa*, 124 F.3d at 566; *see also*, *Caldwell Trucking*, 421 F.3d at 244 ("[W]e cannot ignore the express language of the contract."). Moreover, even if the extrinsic evidence proffered by MTAG is considered without the ability of Plaintiffs to take further discovery on this issue, it does not alter the plain meaning of the "Assumed Liabilities" term in the Asset Purchase Agreement.

Again, the cases cited by MTAG do not support its claim that the assumption of liability term and indemnification term in the Asset Purchase

15

Agreement are somehow mutually exclusive. In *Caldwell Trucking*, the Third Circuit examined a contract term in which the purchaser agreed to "assume and become liable for … and to indemnify" the seller from and against all liabilities. *Caldwell Trucking*, 421 F.3d at 242. Like MTAG, the purchasing company insisted that "it agreed only to indemnify [the seller] rather than stand in its shoes and assume the obligation." *Id.* at 244. The Third Circuit disagreed, and found that the applicable contract term "has a more expansive scope than a mere indemnification provision…. It provides that [the purchaser] will '**assume and become liable for**' and 'hold [the purchaser] harmless from and against any and all liabilities….'" *Id.* at 243 (emphasis added).

The Third Circuit also examined a compound assumption of liability/indemnification term in *Alcoa*, which provided that the purchaser "*does hereby assume all of the liabilities and obligations of* [seller] *of whatsoever nature, and does hereby agree to indemnify and hold harmless* [seller] …" *Alcoa*, 124 F.3d at 566 (emphasis in original). The court held that the purchaser was liable because it assumed all of the seller's liabilities pursuant to the terms of the purchase agreement. *Id.* at 565. The Third Circuit disagreed with the contention of the purchaser in *Alcoa* that it agreed only to indemnify the seller, and not to assume its liabilities. The court stated:

> Beazer's assumption of "all of the liabilities and obligations of [ALT] whatsoever" is clear and unambiguous. Although the

16

provision goes on to additionally provide indemnification for liabilities arising out of liquidation, **the compound nature of the provision in no way detracts from the clarity of the assumption of liabilities language**.

*Alcoa*, 124 F.3d at 566 (emphasis added).

The Fourth Circuit's analysis of the compound assumption of liability and indemnification term would be no different, as "the Fourth Circuit has adopted the Third Circuit's method for determining the validity of pre-CERCLA assumption and indemnification agreements…." *Sherwin-Williams Co. v. ARTRA Group, Inc.*, 125 F. Supp. 2d 739, 756 (D. Md. 2001) (citing *Dent,* 156 F.3d at 534).

The Asset Purchase Agreement entered into by Mooring and MTAG does not contain a combined assumption of liability and indemnification term like the contracts described in *Caldwell Trucking* and *Alcoa*, and in fact includes a separate indemnification term. Nonetheless, MTAG argues that the "Assumed Liabilities" provision in the Asset Purchase Agreement tracks the first section of a separate Indemnity Agreement executed by Mooring and MTAG, and that the similarity between these two terms indicates that the Asset Purchase Agreement was intended to provide indemnification rights only. Meeks Decl. ¶ 35; Indemnity Agreement, Doc. 182-13, at 1.  MTAG is wrong.

As the case law emphasizes, the interrelated nature of the "Assumed Liabilities" and indemnification provisions with the corresponding contracts "in no way detracts from the clarity of the assumption of liabilities language." *Alcoa*, 124

17

F.3d at 566. The Asset Purchase Agreement states that MTAG "hereby assumes" a certain percentage of Mooring's liabilities, and MTAG is bound by the express terms of its own agreement. The parties' contractual allocation of how and when their respective responsibilities would be paid by means of a separate indemnification agreement does not alter or supersede MTAG's express assumption of Mooring's liabilities.

In a related argument, MTAG asserts that because the Asset Purchase Agreement limits MTAG to liabilities "payable by or assessed against" Mooring, it cannot be held liable or named as a party to this action, as no judgment has been entered against Mooring. Def. Brief, at 31; Meeks Decl. ¶30. MTAG's interpretation of the term is inconsistent with its obligation to assume liabilities "arising out of or relating to any **pending, threatened or prospective** judicial administrative investigation or proceeding …." Asset Purchase Agreement at 4 (emphasis added). MTAG's responsibility for liabilities arising out of "pending, threatened or prospective" judicial or administrative proceedings runs counter to its claim that it may be held liable only upon the entry of a final judgment against Mooring.

Further, this exact argument was considered and rejected in *Caldwell Trucking*, where the court noted that, due to the compound assumption of liability/indemnification term, "there is more involved here" than in the usual

18

indemnity situation where an indemnitor is liable only after a judgment has been entered against it. *Caldwell Trucking*, 421 F.3d at 244:

> Rexon is a party to this suit and its defense has been financed by Pullman. It is obvious, therefore, that it had notice of the claim and participated in the proceedings establishing liability on the part of both Rexon and Pullman. In effect, the two-step process that ordinarily would be accomplished by the use of third-party complaints was consolidated into one.

*Id*. The court declined to construe ambiguities in the indemnification term against the indemnitee, noting that "the Agreement was negotiated at arms length between the representatives of sophisticated business entities." *Ibid.* (*quoting SmithKline*, 89 F.3d at 161 n.3).

As a party to this action, MTAG has an opportunity to participate in the proceedings. The same law firms represent Mooring and MTAG in their respective defenses to Plaintiffs' Complaint. *See* MTAG Motion to Dismiss Plaintiffs' Complaint, Doc. 182; Mooring Motion to Dismiss Plaintiffs' Complaint, Doc. 186.[5] MTAG states that the Asset Purchase Agreement and related documents "were an arm's length deal designed to accomplish a legitimate corporate goal." Def. Brief, at 45. MTAG has assumed a percentage of Mooring's liabilities, and

---

[5] This raises potential conflict concerns given that Mooring and MTAG argue the plain text of their agreement does not reflect their actual intent as one may have a claim against the other.

should remain as a proper party to this case, regardless of when its obligation to indemnify Mooring arises.[6]

### 3. Plaintiffs State Claims Against MTAG as the Successor to Mooring's Liabilities, and Do Not Claim Third-Party Beneficiary Status.

MTAG also claims that Plaintiffs are prohibited from stating claims against it, because the Asset Purchase Agreement disclaims any intent to create third party beneficiaries to that contract. Def. Brief, at 41. Plaintiffs do not assert rights as third-party beneficiaries to the Asset Purchase Agreement. Rather, Plaintiffs' claims against MTAG are premised on MTAG's express assumption of liabilities from Mooring.

MTAG cannot rely on the disclaimers of third-party beneficiaries to avoid the clear assumption of liability term in the Asset Purchase Agreement. *See Saudi Am. Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.)*, 558 F.3d 234, 241 (3d Cir. 2009) ("'[G]eneral, boilerplate language' prohibiting third-party actions 'must yield to the specific direction' of separate contractual provisions granting third

---

[6] For this same reason, MTAG's alternative argument to bifurcate proceedings until Mooring's obligations have been determined has no merit.  *See* Def. Brief at 37-39.  MTAG has explicitly assumed responsibility for its predecessor's role in a long-running conspiracy, and should not be permitted to further delay restitution for its victims.  Defendants also cite no Third Circuit law holding that bifurcation is appropriate in similar successor liability cases. *See* Def. Brief at 38 (incorrectly citing *Lindsey v. Prive Corp.*, 161 F.3d 886 (5th Cir. 1998) as a Third Circuit case).

parties enforceable rights in assumed liabilities") (quoting *Caldwell Trucking*, 421 F.3d at 245).

### D.   Plaintiffs' Alter Ego Claims Cannot Be Dismissed Absent The Opportunity for Additional Discovery.

In addition to properly stating a claim against MTAG for successor liability, Plaintiff's Complaint also alleges that MTAG remains, "for all intents and purposes," the "alter ego of defendant Mooring." MTAG asserts that Plaintiffs must specify facts showing a basis for a claim of domination, control, and attendant fraud under the strict standard for piercing the corporate veil and under Rule 9(b). Def. Brief, at 21-23. MTAG's argument is, at best, premature because the discovery process has not yet commenced in this case. Plaintiffs must be permitted an opportunity to explore through discovery whether MTAG, in addition to being a successor in liability to Mooring, is also Mooring's alter ego. *See Sahu v. Union Carbide Corp.*, 418 F. Supp. 2d 407, 416 (S.D.N.Y. 2005) (plaintiffs granted sixty days for additional discovery related to investigating corporate veil-piercing; *Marathon Oil Co. v. Tex. City Terminal Ry. Co.*, 164 F. Supp. 2d 914, 918 (S.D. Tex. 2001) (dismissal appropriate only if plaintiffs fail to "develop evidence supporting the viability" of a piercing theory "after a reasonable time for discovery has elapsed."). Thus, to the extent that MTAG's argument applies, Plaintiffs are entitled to investigate the relationship between MTAG and Mooring

through the discovery process before this Court can determine whether MTAG serves as Mooring's alter ego.

## III. IN THE ALTERNATIVE, BECAUSE MTAG INTRODUCED MATTERS OUTSIDE THE PLEADINGS, ITS MOTION SHOULD BE TREATED AS ONE FOR SUMMARY JUDGMENT, WHICH MUST BE DENIED DUE TO LACK OF DISCOVERY AND DISPUTED ISSUES OF MATERIAL FACT.

Under Rule 12(d), a motion such as MTAG's that presents matters outside the pleading must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The only exception to this general rule, whereby "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment," does not hold here. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citations omitted).

Plaintiffs' Complaint makes no references to the Asset Purchase Agreement, Indemnification Agreement, or other contracts appended to MTAG's motion. These contracts were in the sole custody and possession of MTAG, Mooring, and the declarants, and were not available to Plaintiffs. Further, it cannot be argued that the opinions and interpretations of the contracts included in the Meeks and Jacquemin declarations, with which Plaintiffs strongly disagree, can properly be considered as matters within the pleadings for purposes of a motion to dismiss. *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir. 1968), *cert. denied*, 395

22

U.S. 906, 89 S. Ct. 1747, 23 L. Ed. 2d 219 (1969) ("Since the facts in such a case are exclusively in the possession of the defendants, summary judgment should not ordinarily be granted where the facts alleged by the plaintiff provide a ground for recovery, at least not without allowing discovery in order to provide plaintiff the possibility of counteracting the effect of defendants' affidavits.").

Because MTAG has introduced matters outside the pleadings, to the extent it seeks to consider them in evaluating MTAG's Motion to Dismiss, its motion should instead be treated as one for summary judgment under Rule 56, and Plaintiffs are entitled to "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Phat Van Le v. Univ. of Medicine & Dentistry of N.J.*, 379 F. App'x 171, 2010 U.S. App. LEXIS 9767, 2010 WL 1896415, *4 (3d Cir. May 12, 2010) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). Federal courts have found that "reasonable opportunity" includes the right to conduct discovery concerning the issues raised in the motion. *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974) (providing "right in the opposing party to file counter affidavits or to pursue reasonable discovery."). Thus, if this Court decides to treat MTAG's motion as a

motion for summary judgment, then this Rule 56(f) motion must be denied or stayed, because Plaintiffs have had no opportunity for discovery.[7]

Moreover, to prevail on a motion for summary judgment, MTAG must "show[] that there is no genuine dispute as to any material fact…." Fed. R. Civ. P. 56(a). As explained above, the Asset Purchase Agreement clearly shows that MTAG expressly agreed to assume a portion of Mooring's liabilities. However, MTAG points to the same document in support of its claim that it did *not* assume Mooring's liabilities. If MTAG's motion is not denied, the Court is faced with a significant dispute of material fact (*i.e.*, MTAG's assumption of Mooring's liabilities under the Asset Purchase Agreement), that cannot be resolved on a motion for summary judgment prior to the commencement of discovery.

Because MTAG has submitted matters outside the pleadings in support of its motion to dismiss, if the Court does not deny MTAG's motion to dismiss the Complaint, the motion should be treated as one for summary judgment. Further, this Rule 56(f) motion should be denied or stayed, because Plaintiffs have had no

---

[7] In contrast to a motion under Fed. R. Civ. P. 12(b)(6), which tests the sufficiency of the claims on the face of the complaint, federal courts have consistently held that a plaintiff is entitled to discovery in advance of a motion for summary judgment under Fed. R. Civ. P. 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d. 265 (1986); *Celotex*, 477 U.S. at 317; *Weir*, 773 F.2d at 1081; *Plott v General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190,1195 (6th Cir. 1995), *cert. den.,* 517 U.S. 1157, 116 S. Ct. 1546, 134 L. Ed. 2d 649 (1996).

opportunity for discovery, and because there are genuine disputes of material fact that cannot be resolved in MTAG's premature motion.

## IV.   PLAINTIFFS   INCORPORATE   THE   ARGUMENTS   IN   THE OPPOSITION   TO   THE   JOINT   DEFENSE   BRIEF   AND   THE OPPOSITION TO MOORING'S MOTION TO DISMISS.

To the extent that MTAG incorporates the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss, Doc. 174-1, and the Memorandum of Law in Support of Defendant Mooring Tax Asset Group LLC's Motion to Dismiss, Doc. 186-1, *see, e.g.,* Def. Brief at 18, Plaintiffs hereby incorporate by reference their legal memorandum filed in opposition to those motions.

<u>CONCLUSION</u>

For all of the reasons set forth herein, the motion to dismiss Plaintiffs' Complaint as against Defendant MTAG Services, LLC should be denied.

<u>Dated:</u> May 15, 2013

Respectfully submitted,

**LITE DEPALMA GREENBERG, LLC**
   */s/ Bruce D. Greenberg*
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

25

*Interim Liaison Counsel*

Andrew R. Wolf, Esq.
Henry P. Wolfe, Esq.
Daniel I. Rubin, Esq.
The Wolf Law Firm, LLC
1520 U.S. Hwy 130 – Suite 101
North Brunswick, NJ  08902
Tel: (732) 545-7900
Fax: (732) 545-1030

*On Brief*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman *(admitted pro hac vice)*
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig *(admitted pro hac vice)*
One Penn Plaza, 36th Floor
New York, NY 10119
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**HAUSFELD LLP**
Michael D. Hausfeld *(admitted pro hac vice)*
James Pizzirusso *(admitted pro hac vice)*
Seth R. Gassman *(admitted pro hac vice)*
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel: 202-540-7200
Fax: 202-540-7201

*Interim Class Counsel*

26