**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket<br><br>No. 3:12-CV-01893-MAS-TJB |
|---|---|

**REPLY MEMORANDUM OF LAW IN SUPPORT OF AMERICAN TAX FUNDING, LLC, BBX CAPITAL CORPORATION, FIDELITY TAX, LLC, AND PLYMOUTH PARK TAX SERVICES' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM AGAINST THE MOVING DEFENDANTS. ........ 2

A. Plaintiffs Must Plead Specific Facts Indicating That Each Distinct Defendant Joined The Alleged Conspiracy. ........ 2

B. Plaintiffs Do Not Adequately Allege That The Moving Defendants Joined The Alleged Conspiracy. ........ 3

1. Plaintiffs' Rote Recitation Of Certain Boilerplate Allegations Offered Against Every Defendant Does Not Tie The Moving Defendants To A Conspiracy. ........ 4

2. Plaintiffs' Allegations That The Moving Defendants Attended A Small Minority Of The Allegedly Rigged Auctions Does Not Tie Them To A Conspiracy. ........ 8

3. The Mere Allegation That A Moving Defendant Received A Subpoena Does Not Salvage Plaintiffs' Claims. ........ 9

C. Plaintiffs Lack Standing To Assert Antitrust Claims Against The Moving Defendants. ........ 11

II. PLAINTIFFS LACK STANDING TO ASSERT THEIR NON-ANTITRUST CLAIMS AGAINST THE MOVING DEFENDANTS. ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Attanasio v. Cmty. Health Sys., Inc.*,
863 F. Supp. 2d 417 (M.D. Pa. 2012)....................5

*In re Blood Reagents Antitrust Litig.*,
756 F. Supp. 2d 623 (E.D. Pa. 2010)....................11

*Brown v. Metro. Gov't of Nashville & Davidson Cnty.*,
No. 11-5339, 2012 WL 2861593 (6th Cir. Jan. 9, 2012) ....................4

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ....................8

*In re Florida Cement & Concrete Antitrust Litig.*,
746 F. Supp. 2d 1291 (S.D. Fla. 2010)....................10

*Gibson Guitar Corp. v. Viacom Int'l Inc.*,
No. CV 12-10870 DDP, 2013 WL 877967 (C.D. Cal. Mar. 8, 2013)....................6

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007)....................10

*Hinds Cnty. v. Wachovia Bank, N.A.*,
700 F. Supp. 2d 378 (S.D.N.Y. 2010) ....................11

*In re Ins. Brokerage Antitrust Litig.*,
MDL No. 1663, 2007 WL 1100449 (D.N.J. Apr. 5, 2007)....................11

*In re Ins. Brokerage Antitrust Litig.*,
MDL No. 1663, 2006 WL 2850607 (D.N.J. Oct. 3, 2006) ....................9

*Jung v. Ass'n of Am. Med. Colls.*,
300 F. Supp. 2d 119 (D.D.C. 2004)....................2, 3

*In re Processed Egg Prods. Antitrust Litig.*,
902 F. Supp. 2d 704 (E.D. Pa. 2012)....................2

*Starr v. Sony BMG Entm't*,
592 F.3d 314 (2d Cir. 2010) ....................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
MDL No. 1827, 2010 WL 2629728 (N.D. Cal. June 29, 2010)...........................3

**INTRODUCTION**

Plaintiffs' Opposition highlights the fundamental differences between Plymouth Park, ATF, and BankAtlantic (the "Moving Defendants") and the other defendants in this action. With respect to the other defendants, Plaintiffs point to guilty pleas or specific witnesses who allegedly implicate the defendants in a bid-rigging conspiracy. As to the Moving Defendants, by contrast, Plaintiffs have no guilty pleas to rely upon; they cannot identify a single witness who allegedly implicates the Moving Defendants; and they cannot point to a single meeting or communication that a Moving Defendant allegedly had with another defendant.

Instead of alleging specific *facts* that connect the Moving Defendants to an antitrust conspiracy, Plaintiffs offer only vague and formulaic assertions that they cut-and-paste from defendant to defendant throughout the Complaint. Once these push-button allegations are set aside, Plaintiffs are left with only a bald assertion that the Moving Defendants *must* have been part of the alleged conspiracy because they "attended the very same auctions" as the other defendants. Under settled law, however, a defendant's mere presence at a public auction is not enough to implicate the defendant in an antitrust conspiracy. Here, moreover, Plaintiffs allege that Plymouth Park and ATF attended only two of the thirteen auctions identified in the Complaint, and they fail to allege that BankAtlantic attended a single one of those auctions.

For these reasons, as more fully set forth below, the antitrust claims against the Moving Defendants should be dismissed. Plaintiffs' non-antitrust claims against the Moving Defendants should be dismissed because Plaintiffs lack Article III standing to assert them.

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM AGAINST THE MOVING DEFENDANTS.

#### A. Plaintiffs Must Plead Specific Facts Indicating That Each Distinct Defendant Joined The Alleged Conspiracy.

Plaintiffs acknowledge that, to survive a motion to dismiss, the Complaint must adequately "allege that each individual defendant joined the conspiracy and played some role in it." Plaintiffs' Opposition ("Opp.") at 30 n.100 (citation and quotations omitted). Accordingly, Plaintiffs must make distinct allegations against each defendant that "plausibly suggest that each individual defendant agreed to participate in the conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 902 F. Supp. 2d 704, 710 (E.D. Pa. 2012). Simply "using the term 'defendants' to apply to numerous parties without any specific allegations" is insufficient. *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004); *see also* Mem. in Supp. of the Moving Defendants' Mot. to Dismiss ("Mot.") at 6-7.

Plaintiffs' assertion that they need not "offer every detail of every conspiratorial meeting" is irrelevant. Opp. at 25. Although Plaintiffs are not required to describe each and every conspiratorial act, Plaintiffs must plead facts

sufficient to show that each "'individual defendant was a participant in the conspiracy in the first instance.'" Opp. at 30 n.100 (quoting *Jung*, 300 F. Supp. 2d at 164 n.27); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2010 WL 2629728, at *7 (N.D. Cal. June 29, 2010) (a plaintiff "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it" (citation and quotations omitted)).

As explained below, Plaintiffs have failed to satisfy these basic pleading requirements with respect to the Moving Defendants, let alone the more demanding Rule 9(b) requirements that apply to Plaintiffs' claims under Third Circuit law. *See* Mem. in Supp. of Joint Mot. to Dismiss at 12-14.

### B. Plaintiffs Do Not Adequately Allege That The Moving Defendants Joined The Alleged Conspiracy.

Although Plaintiffs have much to say about the *other* defendants in their 80-page opposition to the motions to dismiss, they have remarkably little to say about the Moving Defendants. *See* Opp. at 39-42. Rather, as confirmed by the Opposition, Plaintiffs' attempt to implicate the Moving Defendants in an antitrust conspiracy rests entirely on (1) rote recitation of certain boilerplate allegations made in verbatim form against every defendant, (2) allegations that the Moving Defendants were present at a small minority of the auctions that allegedly were rigged, and (3) a bald and unsubstantiated assertion that the Moving Defendants

are targets of a criminal investigation by the Department of Justice ("DOJ"). None of these allegations properly states an antitrust claim against the Moving Defendants.

**1. Plaintiffs' Rote Recitation Of Certain Boilerplate Allegations Offered Against Every Defendant Does Not Tie The Moving Defendants To A Conspiracy.**

As shown in the Moving Defendants' opening brief, the Complaint lacks any specific allegations connecting Plymouth Park, ATF, or BankAtlantic to the alleged conspiracy. Instead, the only allegations offered against the Moving Defendants consist of vague and formulaic assertions made in verbatim form against every defendant. *See* Mot. at 4-5, 8-11. These allegations, moreover, are offered against the Moving Defendants only on "information and belief," without any pretense that Plaintiffs possess any actual facts that implicate Plymouth Park, ATF, or BankAtlantic in a bid-rigging conspiracy. *See id*. at 8-9 & n.2.[1]

With two exceptions, Plaintiffs' Opposition essentially abandons any attempt to defend these push-button allegations as a basis for implicating the Moving Defendants in an antitrust conspiracy. The two exceptions are Plaintiffs'

---

[1] The fact that Plaintiffs' allegations against the Moving Defendants are made only on "information and belief" further erodes the probative value of those allegations. *See Brown v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 11-5339, 2012 WL 2861593, at *4 (6th Cir. Jan. 9, 2012) ("Brown's allegation, based solely on 'information and belief,' that the MGNDC defendants and Fried conspired to discriminate against him were too conclusory and vague to state a claim for relief under the *Twombly/Iqbal* standard.").

allegations (1) that unnamed "witnesses to the conspiracy" allegedly observed the Moving Defendants participating in the conspiracy, and (2) that the Moving Defendants terminated one or more employees "as a result of their participation in the alleged conspiracy." *See* Opp. at 40-42. Neither allegation makes any difference here.

Plaintiffs' "witnesses-to-the-conspiracy" allegations are defective for all of the reasons stated in the Moving Defendants' opening brief, which Plaintiffs studiously ignore. *See* Mot. at 10-11. For example, as to the Moving Defendants, the Complaint says nothing whatsoever about who the supposed "witnesses to the conspiracy" are or what they allegedly observed the Moving Defendants doing. *See id.* at 10. The allegations are entirely generic, consisting solely of rote recitation of a template allegation that Plaintiffs offer against every defendant.[2] The total lack of any differentiation or detail in these repetitive allegations robs them of any value in stating a claim against the Moving Defendants. *See Attanasio v. Cmty. Health Sys., Inc.*, 863 F. Supp. 2d 417, 425 (M.D. Pa. 2012) ("Plaintiffs' allegations establishing employer control by WVHCS and later CHS are effectively identical. This forecloses the possibility that these pleadings are

---

[2] *See* Mot. at 10. In the case of several *other* defendants, Plaintiffs assert that the defendants were identified as conspirators by "witnesses who pleaded guilty to the conspiracy." (Compl. ¶ 159.) By contrast, Plaintiffs say nothing at all about the anonymous witnesses who, "on information and belief," supposedly observed the Moving Defendants "participating in the conspiracy." (*Id.* ¶¶ 2, 46, 90, 99).

particularized and demonstrates that these allegations are devoid of any actual factual support."); *Gibson Guitar Corp. v. Viacom Int'l Inc.*, No. CV 12-10870 DDP, 2013 WL 877967, at *2 (C.D. Cal. Mar. 8, 2013) ("[I]t does not appear plausible to the court that the role of each Defendant in the allegations would be identical.").

Plaintiffs fare no better with their allegation that certain employees of the Moving Defendants were terminated from employment "as a result of their participation in the conspiracy." (Compl. ¶ 42; *id.* ¶¶ 95-96.) Once again, the Complaint makes clear that Plaintiffs simply cut-and-pasted a template allegation made against other defendants into their allegations against the Moving Defendants, without any individualized basis for doing so. (*See, e.g.*, *id.* ¶¶ 42, 55, 60, 76, 81, 95, 96, reciting parallel allegations about terminated employees.)

The termination allegations made against Plymouth Park illustrate the point. Those allegations fail to name a single specific employee who allegedly was terminated from employment. Instead, Plaintiffs merely identify five employees who allegedly oversaw Plymouth Park's tax liens business and then reflexively assert that "[s]ome or all of these employees were terminated by Plymouth Park as a result of their participation in the conspiracy alleged herein." (Compl. ¶ 42.) As Plaintiffs' guarded reference to "some or all" of the identified employees makes clear, Plaintiffs do not even know that any of the five employees have been

terminated, much less that they were terminated "as a result of their participation in the conspiracy." Indeed, Plaintiffs openly admit in their Opposition that they are "*not [] able to state, at this stage of the proceedings, which of these employees were terminated by Plymouth*." Opp. at 40 (emphasis added).

In light of Plaintiffs' stunning admission that they cannot name a single Plymouth Park employee who actually was terminated, it borders on the sanctionable that they nevertheless asserted in the Complaint that "some or all" of the five identified Plymouth Park employees were terminated based on their participation in the conspiracy. At the very least, Plaintiffs' admission reveals the termination allegations for what they are: a product of Plaintiffs' unadorned speculation that what is true of other defendants must also be true of the Moving Defendants.[3]

Furthermore, as weak as the "termination" allegations are against Plymouth Park and BankAtlantic, Plaintiffs lack even *that* basis for tying ATF to the alleged conspiracy. Plaintiffs do not allege that ATF terminated any of its employees, and

[3] It makes no difference that Plaintiffs purport to identify two employees who allegedly were terminated by BankAtlantic. The Complaint identifies only two BankAtlantic employees who allegedly participated in the tax liens business, and after identifying these two employees, it reflexively treats these individuals as synonymous with BankAtlantic when making template allegations about BankAtlantic's conduct. (*See, e.g.*, Compl. ¶¶ 92, 95-96.) Plaintiffs plead no specific facts in support of their conclusory allegation that either of these employees ever participated in a conspiracy.

the Opposition all but abandons any suggestion that Plaintiffs have stated a claim against ATF specifically. *See* Opp. at 42.

**2. Plaintiffs' Allegations That The Moving Defendants Attended A Small Minority Of The Allegedly Rigged Auctions Does Not Tie Them To A Conspiracy.**

The Complaint identifies a total of thirteen auctions that allegedly were rigged: seven so-called "representative" auctions and six additional auctions that allegedly injured the named Plaintiffs. (Compl. ¶¶ 17-27, 154.) Yet Plaintiffs allege that Plymouth Park and ATF attended only *two* of these thirteen auctions and do not allege that BankAtlantic attended a single one of them. *See* Mot. at 11-12.[4] Plaintiffs nevertheless maintain that they successfully stated an antitrust claim against the Moving Defendants because they alleged that those Defendants "attended the very same auctions" that certain other defendants allegedly rigged. *See* Opp. at 39.

Plaintiffs' argument misses the mark. Mere attendance at a public auction is hardly a basis for implicating a party in an antitrust conspiracy. Furthermore, Plaintiffs' failure to allege that Plymouth Park and ATF so much as *attended*

---

[4] Plaintiffs argue that their failure to identify BankAtlantic as a participant in any of the "representative" auctions was an "inadvertent omission." Opp. at 19 n.72. It is well settled "that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation and quotations omitted). Plaintiffs must therefore seek leave to amend their Complaint to correct any inadvertent "omission" in the Complaint.

eleven out of thirteen "rigged" auctions – or that BankAtlantic attended *any* of those auctions – strongly undermines any inference that those Defendants joined the alleged conspiracy. It makes little sense to suggest that the Moving Defendants participated in an "overarching statewide conspiracy," yet nevertheless bypassed the vast majority of their opportunities to purchase liens at rigged prices. *See* Mot. at 11-12.

Finally, when Plaintiffs' conclusory allegations against the Moving Defendants are stripped away, the remaining allegations indicate only that ATF and Plymouth Park were *present* at two out of thirteen identified auctions – not that they *rigged* those actions. *See* Mot. at 12-13. Under settled law, mere proximity to alleged wrongdoing is not sufficient to implicate a defendant in an antitrust conspiracy. *See id*. at 13-14; *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2006 WL 2850607, at *12 (D.N.J. Oct. 3, 2006) ("[W]hile these allegations may demonstrate an 'opportunity to conspire,' they fall short of averring actual concert of action among the Defendants.").

**3. The Mere Allegation That A Moving Defendant Received A Subpoena Does Not Salvage Plaintiffs' Claims.**

Plaintiffs assert in their Opposition that the Moving Defendants are "under investigation by the U.S. DOJ for participating in the conspiracy" (Opp. at 39), but the Complaint makes clear that the Opposition is vastly overstating matters. The only substantive allegation that appears in the Complaint is an allegation that *one*

of the Moving Defendants – Plymouth Park – received a subpoena from DOJ in June 2009, near the time DOJ began its investigation. (*See* Compl. ¶¶ 46, 158 n.1, news article noting the 2009 subpoena.)

Plaintiffs' reference to a subpoena that Plymouth Park received more than four years ago, when DOJ blanketed most of the industry with an initial wave of subpoenas, does not salvage their position. Even under ordinary circumstances, the existence of a DOJ investigation "carries no weight in pleading an antitrust conspiracy claim." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007). Here, DOJ's investigation is even less probative. Plaintiffs do not allege that DOJ has uncovered any misconduct by the Moving Defendants, that DOJ is expected to charge any of those Defendants, or that it is seeking further information from them. Under these circumstances, Plymouth Park's receipt of an early subpoena indicates little more than the fact that it was a prominent industry participant at the time of the initial wave of subpoenas. *See In re Florida Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1316 (S.D. Fla. 2010) ("The Court need not take judicial notice of these CIDs because they do not make the allegations contained in the DSCAC more plausible.").[5]

[5] The cases relied on by Plaintiffs are distinguishable. In each of the cases cited by Plaintiffs, the existence of the government investigation was overshadowed by numerous other specific allegations of conspiratorial conduct. Here, by contrast, Plaintiffs fail to offer any factual support for their conclusory allegations that the Moving Defendants participated in an antitrust conspiracy. *See* (continued…)

### C. Plaintiffs Lack Standing To Assert Antitrust Claims Against The Moving Defendants.

The Complaint should also be dismissed because Plaintiffs fail to allege that the Moving Defendants had anything to do with the auctions that allegedly injured them. *See* Mot. at 16-17. Although Plaintiffs allege that Plymouth Park and ATF were present at two of the so-called "representative" auctions, none of the liens on Plaintiffs' properties were purchased at those auctions. (*See* Compl. ¶¶ 17-27, 154.) Plaintiffs do not allege that the Moving Defendants even attended – much less rigged – the auctions that actually affected them.

In the absence of an allegation that the Moving Defendants rigged the auctions that affected the named Plaintiffs, Plaintiffs could establish Article III standing to sue the Moving Defendants only by alleging (1) that there was an overarching conspiracy to rig *all* tax lien auctions in New Jersey, and (2) that the Moving Defendants joined this overarching conspiracy. *See* Mot. at 15-17; *see also In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 1100449, at *19 (D.N.J. Apr. 5, 2007) (noting that plaintiffs' standing to assert "bid-rigging

---

*Starr v. Sony BMG Entm't*, 592 F.3d 314, 323-24 (2d Cir. 2010) (government investigation was only one of seven allegations considered by the court); *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 632 (E.D. Pa. 2010) (government investigation was considered in conjunction with "triple-digit percentage increases in prices, closely aligned cancellations of contracts with group purchaser organizations, and substantially improved profit margins"); *Hinds Cnty. v. Wachovia Bank, N.A.*, 700 F. Supp. 2d 378, 396-97 (S.D.N.Y. 2010) (government investigation was considered along with "numerous collusive transactions" and "specific examples of collusive communications").

allegations … are dependent upon … whether a global conspiracy may be inferred”).

Plaintiffs fail to allege either of those things. *See* Mot. at 15-16. Rather than mounting a serious argument that they have adequately alleged a conspiracy affecting *all* tax lien auctions over an eleven-year period, Plaintiffs assert that “there is no requirement [], at this stage” that they must “set out and plead the precise contours of the conspiracy.” Opp. at 31. Although that might be true in the abstract, Plaintiffs *are* required to plead a connection between the Moving Defendants and the auctions that actually affected them. Plaintiffs have not done so here. They do not allege that the Moving Defendants participated in a *narrow* conspiracy that affected the auctions that allegedly injured them, nor do they adequately allege that the Moving Defendants joined a *massive* conspiracy affecting all auctions throughout the State. *See* Mot. at 15-16. Plaintiffs thus lack standing to assert their antitrust claims against the Moving Defendants. *See id.*

## II. PLAINTIFFS LACK STANDING TO ASSERT THEIR NON-ANTITRUST CLAIMS AGAINST THE MOVING DEFENDANTS.

As the Moving Defendants showed in their opening brief, Plaintiffs lack Article III standing to assert the non-antitrust claims set forth in Counts III, IV, and V of the Complaint against the Moving Defendants because they fail to allege that any of those Defendants purchased a lien on any of Plaintiffs’ properties. *See* Mot.

at 18. Plaintiffs are utterly silent in response. Counts III, IV, and V should therefore be dismissed against the Moving Defendants for lack of standing.

## CONCLUSION

For the foregoing reasons, all claims asserted against the Moving Defendants should be dismissed.

Dated: June 26, 2013

Respectfully Submitted,

MASELLI WARREN, P.C.

/s/ Perry S. Warren
Perry S. Warren
David Fornal
600 Alexander Road, Suite 3-4A
Princeton, New Jersey 08540
(609) 452-8411
pwarren@maselliwarren.com

COVINGTON & BURLING LLP

/s/ Robert D. Wick
Robert D. Wick
Jason C. Raofield
Henry B. Liu
Jonathan D. Cohen
1201 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 662-6000
rwick@cov.com

*Attorneys for Defendant Plymouth Park Tax Services, LLC*

ROETZEL & ANDRESS

/s/ Patricia B. Fugée
Patricia B. Fugée
One SeaGate, Suite 1700
Toledo, OH 43604
Tel: 419.242.7985
Fax: 419.242.0316

Donald S. Scherzer
Amanda M. Knapp
1375 E. Ninth Street
One Cleveland Center
Ninth Floor
Cleveland, OH 44114
(212) 623-0150

*Attorneys for American Tax Funding, LLC*

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

/s/ James E. Cecchi
James E. Cecchi
Zachary S. Bower
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

*Attorneys for BBX Capital Corporation and Fidelity Tax, LLC*

**CERTIFICATE OF SERVICE**

I, Perry S. Warren, certify that on this 26th day of June 2013, I electronically filed the foregoing Reply Memorandum of Law with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following individuals:

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (admitted pro hac vice)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

HAGENS BERMAN SOBOL SHAPIRO LLP
Jason A. Zweig (admitted pro hac vice)
One Penn Plaza, 36th Floor
New York, NY 10119

HAGENS BERMAN SOBOL SHAPIRO LLP
Jennifer F. Connolly (admitted pro hac vice)
629 K Street, NW, Suite 300
Washington, DC 20006

HAUSFELD LLP
Michael D. Hausfeld (admitted pro hac vice)
James Pizzirusso (admitted pro hac vice)
Seth R. Gassman (admitted pro hac vice)
1700 K Street, NW, Suite 650
Washington, DC 20006

LITE DEPALMA GREENBERG, LLC
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003

/s/ Perry S. Warren