COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
1125 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401
(609) 572-7512

*Attorneys for M.D. Sass Defendants*

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| *In re New Jersey Tax Sales Certificates Antitrust Litig.* | : : : : : : | Master Docket No. 3:12-cv-01893-MAS-TJB |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF <u>DEFENDANTS' JOINT MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................1

ARGUMENT ..........................................................................................2

I.  PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO
    STATE PLAUSIBLE ANTITRUST CLAIMS ...................................2

    A.  Plaintiffs' Antitrust Claims Fail To State A Plausible
        Conspiracy, Let Alone the "Overarching" Conspiracy Alleged ...........3

        1.  Plaintiffs Fail Adequately To Allege Their Conspiracy
            Claims .......................................................................4

        2.  Plaintiffs Concede That They Have Failed To Allege The
            Overarching Conspiracy Alleged in Their Complaint ...............7

    B.  Plaintiffs' Complaint Fails Sufficiently To Plead Their Fraud-
        Based Antitrust Claim Under Rule 9(b) .................................9

II. PLAINTIFFS LACK ANTITRUST STANDING .........................................12

III. PLAINTIFFS' TIME-BARRED CLAIMS SHOULD BE DISMISSED ......15

IV. THE FILED RATE DOCTRINE BARS PLAINTIFFS' CLAIMS ..............19

V.  PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS
    DUPLICATIVE OF THEIR SHERMAN ACT CLAIM ...............................22

VI. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED ...........23

    A.  Plaintiffs' Fourth Claim For Relief Should Be Dismissed
        Because No Independent Cause of Action Exists Under
        N.J.S.A. § 54:5-52 ..........................................................23

    B.  Plaintiffs' Second, Third and Fifth Claims Must Be Dismissed
        Because Plaintiffs Have Not Pled Fraud with Particularity ...............25

C.    Plaintiffs' Third Claim for Relief Fails to State a Cause of
      Action Under N.J.S.A. § 54:5-63.1 ....................................................28

D.    Plaintiffs Fail to State a Claim for Unjust Enrichment ......................30

CONCLUSION .....................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
   596 F. Supp. 2d 842 (D.N.J. 2008) ....................................................................10

*Assoc. Gen. Contractors v. Ca. State Council of Carpenters*,
   459 U.S. 519 (1983)............................................................................................14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................*passim*

*Blue Shield of Va. v. McCready*,
   457 U.S. 465 (1982)......................................................................................14, 15

*Cmty. Dev. Co. v. Seaside Gardens*,
   7 N.J. 153 (1951) ..........................................................................................24, 25

*Comcast Corp. v. Behrend*,
   133 S.Ct. 1426 (2013)........................................................................................22

*Donarchy v. Intrawest U.S. Holdings, Inc.*,
   No. 10-4038, 2012 WL 869007 (D.N.J. Mar. 14, 2012) ...................................11

*Dungan v. Morgan Drive-Away, Inc.*,
   570 F.2d 867 (9th Cir. 1978)..............................................................................16

*Dworman v. Mayor & Bd. of Aldermen*,
   370 F. Supp. 1056 (D.N.J. 1974) .......................................................................23

*Ethypharm S.A. France v. Abbott Labs.*,
   707 F.3d 223 (3d Cir. 2013) ........................................................................13, 14

*Exhibitors' Service, Inc. v. Am. Multi-Cinema, Inc.*,
   788 F.2d 574 (9th Cir. 1986)..............................................................................15

*Gallo v. PHH Mortgage Corp.*,
   No. 12-1117, 2012 U.S. Dist. LEXIS 182954 (D.N.J. Dec. 31, 2012)...............22

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
   602 F.3d 237 (3d Cir. 2010) ("*Hess*")..............................................................8, 9

*Hyland v. Kirkman*,
    204 N.J. Super. 345 (Ch. Div. 1985)...................................................................25

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)...................................................................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................7

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................6

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)....................................................................5, 6

*In re Ins. Brokerage Antitrust Litig.*,
    No. MDL 1663, 2006 WL 2850607 (D.N.J. Oct. 3, 2006)...........................6, 10

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
    768 F. Supp. 2d 961 (N.D. Iowa 2011) ............................................................9

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
    998 F.2d 1144 (3d Cir. 1993) ....................................................................12

*In re N.J. Title Ins. Litig.*,
    683 F.3d 451 (3d Cir. 2012)....................................................................21

*In re Processed Egg Prods. Antitrust Litig.*,
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ............................................................26

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ............................................................7

*Jackson v. HSBC Bank*,
    922 A.2d 750 (N.J. Super. Ct. App. Div. 2007) ................................................29

*Kelly v. Kosuga*,
    358 U.S. 516 (1959)...................................................................................30

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)...................................................................................15

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3d Cir. 2011) .......................................................................28

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) .......................................................................28

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004) ................................................................10, 11

*McCray v. Fid. Nat'l Title Ins. Co.*,
  682 F.3d 229 (3d Cir. 2012) .....................................................................19

*Murdock v. E. Coast Mortg. Corp.*,
  No. 10-4717, 2012 WL 2344515 (D.N.J. June 20, 2012)...........................17

*Nantahala Power & Light Co. v. Thornburg*,
  476 U.S. 953 (1986).................................................................................21

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F.3d 1046 (6th Cir. 2011) ..................................................................26

*Novell, Inc. v. Microsoft Corp.*,
  505 F.3d 302 (4th Cir. 2007)....................................................................13

*Pennsylvania v. Milk Indus. Mgmt. Corp.*,
  812 F. Supp. 500 (E.D. Pa. 1992) .............................................................17

*Pereira v. Azevedo*,
  No. 12-907, 2013 WL 1655988 (D.N.J. Apr. 17, 2013) .............................30

*Pietrangelo v. NUI Corp.*,
  No. 04-3223, 2005 WL 1703200 (D.N.J. July 20, 2005) .............................7

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
  828 F.2d 211 (4th Cir. 1987) ....................................................................18

*Powell v. McCormack*,
  395 U.S. 486 (1969)..................................................................................22

*Prudential Ins. Co. v. U.S. Gypsum Co.*,
  828 F. Supp. 287 (D.N.J. 1993) ................................................................17

*Reading Int'l, Inc. v. Oaktree Cap. Mgmt.*,
  317 F. Supp. 2d 301 (S.D.N.Y. 2003) .................................................................15

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998) ................................................................................11

*Serpa Corp. v. McWane, Inc.*,
  199 F.3d 6 (1st Cir. 1999) ...................................................................................15

*SigmaPharm, Inc. v. Mut. Pharm. Co.*,
  454 F. App'x 64 (3d Cir. 2011) ...........................................................................12

*Simon v. Deptford Twp.*,
  272 N.J. Super. 21 (N.J. Super. Ct. App. Div. 1994) ..........................................25

*Square D Co. v. Niagara Frontier Tariff Bureau Inc.*,
  476 U.S. 409 (1986) ......................................................................................19, 21

*Steamfitters Local Union No. 429 Welfare Fund v. Philip Morris, Inc.*,
  171 F.3d 912 (3d Cir. 1999) ................................................................................12

*St. Clair v. Citizens Fin. Grp.*,
  340 F. App'x 62 (3d Cir. 2009) ...........................................................................12

*Texas v. Allan Constr. Co.*,
  851 F.2d 1526 (5th Cir. 1988) .............................................................................18

*Town of Norwood v. New Eng. Power Co.*,
  202 F.3d 408 (1st Cir. 2000) ...............................................................................19

*U.S. v. Bathon*,
  No. 13-CR-30025, slip op. (S.D. Ill. Mar. 1, 2013) (Exhibit B) .........................22

*U.S. v. Bathon*,
  No. 13-CR-30025, slip op. (S.D. Ill. Apr. 22, 2013) (Exhibit A) .......................22

*Utilimax.com v. PPL Energy Plus, LLC*,
  378 F.3d 303 (3d Cir. 2004) ..........................................................................20, 21

*W. Penn Allegheny Health Sys. Inc. v. UPMC*,
  627 F.3d 85 (3d Cir. 2010) ..................................................................................12

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) ..............................................................................26

**STATUTES**

15 U.S.C. §12 .....................................................................................................17

15 U.S.C. § 16(i) ...........................................................................................16, 17

N.J.S.A. § 1:1-1 ..................................................................................................28

N.J.S.A. § 54:5-19 ..............................................................................................20

N.J.S.A. § 54:5-31 ..............................................................................................20

N.J.S.A. § 54:5-47 .........................................................................................20, 21

N.J.S.A. § 54:5-51 .........................................................................................20, 21

N.J.S.A. § 54:5-52 .......................................................................................*passim*

N.J.S.A. § 54:5-54 ..............................................................................................14

N.J.S.A. § 54:5-63.1 ...........................................................................23, 28, 29, 30

N.J.S.A. § 54:5-101 ............................................................................................24

N.J.S.A. § 56:8-1 et seq. ....................................................................................27

N.J.S.A. §56:9-12 ...............................................................................................17

N.J.S.A. § 56:9-15 .........................................................................................16, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 .................................................................................................26

Fed. R. Civ. P. 9(b) .....................................................................9, 10, 11, 25, 26

## PRELIMINARY STATEMENT

We demonstrated in the moving papers that each of Plaintiffs' claims is subject to dismissal as defectively pled, and Plaintiffs' response confirms the point:

- Plaintiffs' antitrust claims lack the fundamental factual support required under federal pleading standards to establish the single, overarching conspiracy pled in their complaint.  Plaintiffs now attempt to excuse this failure by suggesting they have alleged a series of independent conspiracies, which taken together support an allegation of an "overarching" conspiracy claim.  The Third Circuit has squarely rejected this tactic.

- As non-participants in the market purportedly affected by the Complaint's alleged bid-rigging scheme, Plaintiffs lack antitrust standing.

- Plaintiffs' allegations relating to tolling and fraudulent concealment fail to rebut the conclusion that their antitrust claims are long-since time-barred.

- Plaintiffs' conclusory argument that the filed rate doctrine is inapplicable is simply wrong, and that doctrine is an independent basis barring their claims.

- Plaintiffs' state-law claims: (1) purport to create causes of action where none exist; (2) seek remedies that find no support in the statutory framework; and (3) are precluded by N.J.S.A. § 54:5-52.

Recognizing these fatal deficiencies, Plaintiffs resort to rhetoric.  Plaintiffs mention no fewer than 23 times the federal indictments and guilty pleas against some of the Defendants, as if they cure Plaintiffs' lack of standing or substitute for factual allegations of the purported overarching antitrust conspiracy alleged in this class action.  There may be no dispute that there was *some* wrongdoing in *some* tax lien auctions by *some* Defendants at *some* times over the purported 11-year class period.  But Plaintiffs' opposition goes too far.  They take facially limited conduct with respect to a few auctions and conjure up a unified single class-wide

conspiracy by all Defendants to rig thousands of tax lien auctions in each of New Jersey's 566 municipalities over an alleged 11-year class period.  It is this claim that – on its face – lacks plausibility.  It is this claim that lacks factual and legal support.  Because Plaintiffs make no serious effort to support the actual antitrust claim that is alleged in the Complaint, that claim must be dismissed.

Plaintiffs fare no better with their New Jersey state law claims, in which they attempt to create causes of action where none exist.  And, even to assert their state claims, Plaintiffs must overcome a statutory presumption that the challenged sales are valid by showing the tax sale certificates ("TSCs") were obtained through fraud.  Yet, they do not come close to pleading with particularity the elements of common law fraud.  While Plaintiffs grasp at the brass ring of forfeiture, the statute on which they rely restricts that remedy to the limited circumstance, inapplicable here, where taxpayers are charged amounts exceeding what is permitted by New Jersey's tax sale law.

The Complaint is fatally flawed and warrants dismissal in its entirety.

## ARGUMENT

## I.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO STATE PLAUSIBLE ANTITRUST CLAIMS

As established in the Motion to Dismiss, the Complaint does not satisfy the stringent pleading requirements under the Federal Rules.  Plaintiffs' Opposition fails to overcome this hurdle:  it relies on the outdated notice pleading rule, namely

that Defendants have been sufficiently apprised of the claims asserted against them.  But these pleading efforts fail to satisfy the hurdles erected by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the prism through which antitrust conspiracy allegations are to be evaluated.  The Complaint is bereft of factual support needed to plausibly allege an overarching conspiracy among all Defendants to rig all tax lien auctions held in New Jersey for 11 years.

Indeed, Plaintiffs implicitly concede that they have not adequately alleged the "overarching" conspiracy on which the entirety of their complaint rests by belatedly arguing (contrary to their own Complaint and the law of this Circuit) that it is sufficient for Plaintiffs to allege a series of more limited conspiracies with no factual linkage.  The Third Circuit has unambiguously rejected this tactic.

### A. Plaintiffs' Antitrust Claims Fail To State A Plausible Conspiracy, Let Alone the "Overarching" Conspiracy Alleged

In *Twombly,* the Supreme Court clearly explained that with respect to antitrust conspiracy claims, mere "notice pleading" is no longer sufficient.  Instead, the Supreme Court stressed that to survive dismissal, an antitrust plaintiff alleging an unlawful conspiracy *must* set forth sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" – that is, facts that will "nudge[] their claims across the line from conceivable to plausible . . . ."

*Twombly*, 550 U.S. at 556, 570.[1]  Here, Plaintiffs make a giant and impermissible speculative leap, taking evidence that *some* defendants may have engaged in conspiracies to rig *certain* bids at *certain* auctions and manufacturing a claim that *all* defendants engaged in an overarching conspiracy to rig *all* bids at *all* tax lien auctions in New Jersey over the past 11 years.  *Twombly* precludes this leap.

### 1.    *Plaintiffs Fail Adequately To Allege Their Conspiracy Claims*

While Plaintiffs pay lip service to *Twombly*'s standard, *see* Opposition to Motion to Dismiss ("Opp.") at 19-20, the arguments mustered in support of their allegations ignore altogether the teachings of that decision.  Plaintiffs' citation to more than 100 paragraphs of the Complaint listing the numerous Defendants and describing the alleged conduct in skeletal, boilerplate fashion, Consolidated Master Class Action Complaint ("Compl.") ¶¶ 28-131, and their laborious description of New Jersey's tax lien auction process, *id.* ¶¶ 136-145, do nothing to clothe Plaintiffs' claims with the factual support required by *Twombly*.  Similarly, the Complaint's discussion of seven supposedly "representative" examples of bid-

---

[1] Adherence to this standard is particularly important here, where Plaintiffs assert factually barren antitrust claims (putative class claims subject to potential trebling) against 48 Defendants.  As the *Twombly* Court found, a more stringent pleading standard serves both fundamental fairness and judicial economy, for "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings" and "only by taking care to require allegations that reach the level suggesting conspiracy . . . [can we] hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence."  *Id.* at 559.

rigging are insufficient because it provides no non-conclusory allegations of how those auctions were the product of the overarching conspiracy alleged or which, if any, of the Defendants participated therein.  The Complaint further fails to tie those "representative" auctions to any named Plaintiff or to any of the other thousands of auctions during the allegedly "continuous" conspiracy.  There are simply no facts alleged anywhere to support the notion that all Defendants agreed to a unified bid-rigging scheme, and then adhered to the conspiracy over an 11-year period, concerning tax liens on thousands of unique properties offered at thousands of individual auctions with tens of thousands of liens sold at varying interest rates.

Sprinkling the Complaint with conclusory references to "agreements," "conspiracy," "combinations" or "understandings" among certain Defendants does not satisfy Plaintiffs' burden.  Such buzzwords are legal conclusions parading as allegations of fact, and should be ignored when evaluating the adequacy of complaint allegations.  *See Twombly*, 550 U.S. at 557 ("[T]erms like 'conspiracy' or even 'agreement' are border-line: they might well be sufficient in conjunction with a more specific allegation . . . but a court is not required to accept such terms as a sufficient basis for a complaint.") (alterations in original).[2]

_____

[2] *See also id.* at 564 (where "a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions"); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 (3d Cir. 2010) ("Because these conclusory averments do not 'show[]' but merely 'assert[]' plaintiffs' entitlement to relief, they cannot carry plaintiffs' pleading burden.") (alterations in original).

Plaintiffs' repeated references to facially limited guilty pleas by some Defendants likewise fail to satisfy *Twombly*'s requirement that the conspiracy, as alleged, be supported in its entirety by factual pleading.  While the pleas may evidence some misconduct by *certain* Defendants concerning *certain* auctions at *certain* times during the putative class period, they are legally insufficient to support an overarching statewide conspiracy involving all auctions over an 11-year period and actors that have not been implicated in those pleas.[3]  *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("[E]ven where some competitors have admitted to meeting to fix prices . . . it is not reasonable to infer that another competitor . . . had done likewise."); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 341 (finding allegations of certain conspiracies cannot support claims of conspiracy as to other defendants).[4]

---

[3] Only 11 of the 48 Defendants have entered pleas, and those pleas are expressly alleged only to have related to charges of submitting "non-competitive and collusive bids at *certain* public auctions for tax liens" in New Jersey during a portion of the putative class period.  *See* Compl. ¶¶ 166-81 (emphasis added).

[4] Nor do Plaintiffs gain traction by alleging that "trade association meetings provided additional opportunities to conspire."  Opp. at 8-9.  Allegations of the *opportunity* to conspire are patently insufficient to make out a Sherman Act claim. *See, e.g.*, *Twombly*, 550 U.S. at 567 n.12; *In re Ins. Brokerage Antitrust Litig.*, No. MDL 1663, 2006 WL 2850607, at *12 (D.N.J. Oct. 3, 2006) ("[W]hile these allegations may demonstrate an 'opportunity to conspire,' they fall short of averring actual concert of action among the Defendants."); *In re Graphics Processing Units*, 527 F. Supp. 2d at 1023 (attendance at industry events is presumed legitimate; without more not a basis to infer conspiracy).

The Complaint further lacks any factually sufficient allegations of conduct by *each* Defendant allegedly comprising an unlawful conspiracy. This "shotgun-style" antitrust claim lacks plausibility and fails the *Twombly* pleading test. *Pietrangelo v. NUI Corp.,* No. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) (granting dismissal because allegations referring to all defendants collectively "are so general that they fail to put each defendant on notice of the claims against them"). An antitrust plaintiff must afford at least some factual explication of the conduct of each and every Defendant and the connection to the alleged conspiracy. *See* Joint Motion to Dismiss ("Mot. to Dismiss") at 20-21. Plaintiffs fail to address, much less distinguish, Defendants' cited authority.[5]

### 2. *Plaintiffs Concede That They Have Failed To Allege The Overarching Conspiracy Alleged in Their Complaint*

---

[5] Plaintiffs offer distinguishable cases from other circuits or pre-*Twombly* decisions to excuse their pleading defects. *See* Opp. at 26-27. For example, in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010), the court found that although the complaint referenced a corporate family by one name, it contained sufficient allegations concerning, *inter alia*, the employees engaged in meetings on behalf of the corporate families, and that participants did not know the corporate affiliations and did not distinguish between the entities within the corporate family. *Id.* at 1019. Likewise, Plaintiffs' citation to *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009), is misleading: there the court noted that the first complaint had been dismissed because, like here, each defendant's role was not pled in sufficient detail. *Id.* at 1183. The amended complaint survived because it added substantial detail regarding, *inter alia*, the implementation of the conspiracy by subsidiaries and distributors within a corporate family, and that participants did not know the corporate affiliations or distinguish between the entities within a corporate family. *Id.* at 1184-85. The Complaint here contains no such detailed allegations.

Implicitly conceding they have failed adequately to plead the overarching conspiracy alleged in the Complaint, Plaintiffs argue that they need not "set out and plead the precise contours of the conspiracy," and suggest that they may have shown several limited conspiracies.  Opp. at 31.  Citing no Third Circuit authority, Plaintiffs urge the Court to defer the issue of whether the conduct they allege comprises a single conspiracy, or numerous smaller conspiracies, to a later day.

The Third Circuit has squarely rejected this position.  In *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237 (3d Cir. 2010) ("*Hess*"), antitrust plaintiffs "tried to hedge their bets" by arguing that "even if they have not adequately alleged an overarching conspiracy between and among" all of the Defendants, "they have at least adequately alleged several bilateral . . . conspiracies," which should be sufficient to allow the complaint to go forward.  *Id.* at 256.  The Third Circuit found that it "need not weigh in on the alternative theory the Plaintiffs now press, for even assuming it is legally viable or even relevant here, the Plaintiffs cannot pursue it under the circumstances of this case because the amended complaint cannot be fairly understood to allege the existence of several unconnected, bilateral [conspiracies]. . . ."  *Id.*  In sum, the Third Circuit held that the *Hess* plaintiffs, like Plaintiffs here, were "bound by the four corners of their amended complaint, which clearly seeks to allege one conspiracy to which [all defendants] were parties.  *To the extent the Plaintiffs are recasting their*

8

*allegations in an effort to circumvent a motion to dismiss, we must reject that approach.*"  *Id.* at 257 (emphasis added).  This Court, too, should reject Plaintiffs' suggestion to recast their conspiracy allegations.  Unsurprisingly, Plaintiffs fail even to mention, much less distinguish, *Hess* in their Opposition.

Compounding this pleading failure, Plaintiffs make no attempt to establish a "'larger picture' from which inferences of a wider conspiracy can be drawn."  *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011).  Plaintiffs fail to tether the suggested individual conspiracies in a way that plausibly establishes the "larger picture" of the alleged overarching conspiracy.  As the Complaint sounds in a single overarching conspiracy to rig bids in all New Jersey tax lien auctions, they are required to allege sufficiently the conspiracy they have pled.  Having failed to do so, Plaintiffs' antitrust claims must be dismissed.[6]

### B.    Plaintiffs' Complaint Fails Sufficiently To Plead Their Fraud-Based Antitrust Claim Under Rule 9(b)

Plaintiffs concede that where an antitrust claim "sounds in fraud," the heightened pleading requirements of Rule 9(b) apply.  *See* Opp. at 18.  Plaintiffs' attempts to evade this elevated pleading burden are ineffectual and are belied by the Complaint, for even a cursory reading reveals that Plaintiffs' entire theory rests on allegations of fraud.  Indeed, Plaintiffs repeatedly allege that Defendants

---

[6] The New Jersey Antitrust Act is to be construed in parallel with the Sherman Act. *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 (3d Cir. 2009).  Thus, Plaintiffs' claim under the New Jersey antitrust laws should also be dismissed.

"engage[d] in . . . [a] fraudulent scheme," which they claim amounted to "material misrepresentations that were false with the intent to deceive that they were bidding competitively." *Id.* ¶¶ 191, 229; *see also id.* ¶¶ 187, 189.

In light of these allegations, Plaintiffs' argument that their antitrust claims do not "sound in fraud" is disingenuous. To the extent Plaintiffs' claims rely on notions of fraud, they must be pled with particularity, detailing the "date, time or place" of the fraud or "provid[ing] an alternative means of injecting precision and some measure of substantiation" into their allegations.[7] *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004); *see also Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 878 (D.N.J. 2008).[8]

---

[7] The Court should reject Plaintiffs' attempt to avoid Rule 9(b)'s heightened pleading requirements by arguing their allegations of fraud are limited to their claims under the New Jersey Tax Lien Law and their reliance on a fraudulent concealment theory. Opp. at 22. Under Plaintiffs' own reasoning, the Complaint should not be "dismembered" in this manner. *See id.* at 18, 29-30. Indeed, all of Plaintiffs' claims are premised on the identical alleged "fraudulent scheme."

[8] Plaintiffs' attempts to distinguish *Lum* and *Animal Science Products* fall flat. Plaintiffs argue this case differs from *Lum* because whereas there the "defendants carried out their antitrust conspiracy through fraud," here they claim only to allege fraud in the concealment of the conspiracy. *See* Opp. at 23. This argument misrepresents *Lum* holding, for as this Court has held: "In *Lum*, the Court did not limit its holding to instances in which fraud is the necessary element of a claim, but stated more generally that Plaintiffs' claims are subject to Rule 9(b) because Plaintiffs were 'alleging that the defendants carried out [the alleged] plan, scheme, and conspiracy *through fraud*.'" *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2006 WL 2850607, at *11. Likewise, Plaintiffs' claims that Defendants fraudulently failed to disclose that the interest rates on their TSCs were the product of a conspiracy is directly analogous to plaintiffs' allegations in *Animal Science Products* that the failure to disclose that the prices were the product of a conspiracy

10

Plaintiffs make no genuine effort to argue that the Complaint complies with Rule 9(b), nor could they.  The Complaint specifies no date, time or place of any agreement to launch the overarching conspiracy, nor does it inject precision into its allegations, plead specific allegations of fraud applicable to each Defendant, or even plead any misrepresentations as to any Plaintiff.  Mot. to Dismiss at 12-14; *see Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) ("[F]ailure to plead fraud with particularity with respect to what happened to a specific plaintiff prevents the defendants from being able to prepare a defense as to this particular allegation of fraud."); *Donarchy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2012 WL 869007, at *2 (D.N.J. Mar. 14, 2012) (dismissing complaint that failed to "plead with particularity . . . the . . . allegations of fraud applicable to each defendant").[9]  Framing this case as a putative class action – in addition to its numerous substantive deficiencies – does not satisfy this burden.[10]

---

was akin to fraud.  *See* Opp. at 24.  Plaintiffs' efforts to distinguish the case are fruitless, as is their characterization of the on-point authority as "an outlier."  *Id.*

[9] While Plaintiffs rely on a panoply of cases arising in the typical antitrust context where the market was commoditized and each consumer was affected in the same manner, these cases lend them no support.  Here, unlike in Plaintiffs' cases, each consumer, alleged conspirator and property subject to a New Jersey tax lien is diverse, and each element of the alleged conspiracy will be subject to intense and individualized fact-finding.

[10] *Rolo*, 155 F.3d at 659 ("The class must . . . be certified before it may become a class action.  Until the putative class is certified, the action is between [the plaintiffs] and the defendants . . . [and] the . . . Complaint must be evaluated as to these particular plaintiffs."); *Lum*, 361 F.3d at 225-26 (allegations of statements to putative "class" insufficient as complaint alleged none made to named plaintiff).

## II.   PLAINTIFFS LACK ANTITRUST STANDING

As demonstrated in Defendants' opening brief (Mot. to Dismiss at 28-32), Plaintiffs lack standing to assert their federal and state antitrust claims because they are not participants in the market alleged in the Complaint—the auction market for "the sale of TSCs in the State of New Jersey."  Compl. ¶ 208.  Plaintiffs did not buy or sell anything in the tax lien auctions that were allegedly rigged.

In their opposition, Plaintiffs argue they have antitrust standing because there is a "direct causal connection" between the alleged bid-rigging and their injuries.  Opp. at 48-49.  But "directness of the injuries"– although one factor the courts consider in assessing antitrust standing, *see In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993) – does not establish the necessary element of antitrust injury, without which there is no antitrust standing.[11]

Under clear Third Circuit precedent, which Plaintiffs fail to acknowledge, antitrust injury is limited to (1) "consumers and competitors in the restrained market," and (2) "those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends."  *W. Penn Allegheny Health Sys. Inc. v.*

---

[11] *See SigmaPharm, Inc. v. Mut. Pharm. Co.*, 454 F. App'x 64 (3d Cir. 2011) ("Mere injury resulting from conduct that violated the antitrust laws is insufficient to confer antitrust standing."); *Steamfitters Local Union No. 429 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 927 (3d Cir. 1999) ("If the injury is not of the requisite type, even though the would-be plaintiff may have suffered an injury as a result of conduct that violated the antitrust laws, he or she has no standing to bring a private right of action under the antitrust laws to recover for it.").

*UPMC*, 627 F.3d 85, 102 (3d Cir. 2010).  Recently, the Third Circuit clarified that this second category is narrow, and does "not extend[] . . . beyond cases in which both plaintiffs and defendants are in the business of selling goods or services *in the same relevant market*, though they may not directly compete against each other." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 237 (3d Cir. 2013).  Thus, a plaintiff who does not sell or purchase goods or services in the relevant market lacks standing to bring an antitrust claim.[12]

Although Plaintiffs did not participate in the market for the "purchase of TSCs" alleged in the Complaint, they nonetheless assert they are "consumers" in that market because they are "purchasers (that is, redeemers) of their TSCs directly from Defendants."  Opp. at 52.  Even accepting that dubious logic, three of the four named Plaintiffs did not redeem the TSCs; thus they do not qualify as "consumers" and lack antitrust standing because they have not purchased anything from anyone. In any event, Plaintiffs' effort to cast redeemers as "consumers" in the market for TSCs is unavailing because those taxpayers are not purchasing TSCs and thus are not consumers of the restrained product in the market Plaintiffs allege. Redemptions involve the payment of the outstanding tax debt, plus the required

---

[12] Plaintiffs' assertion that status as a consumer or competitor is not a "necessary condition" for antitrust standing, Opp. at 51, is based on decisions from other circuits that take a broader view of antitrust standing, and *dicta* from a Third Circuit case pre-dating *Ethypharm*.  *See, e.g., Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 309 (4th Cir. 2007) (noting Third Circuit's adherence to the strict "consumer-or-competitor" standard later reaffirmed in *Ethypharm*).

interest penalty, *to the municipality*, *see* N.J.S.A. § 54:5-54, not "directly [to] Defendants," as Plaintiffs suggest in their opposition.  Opp. at 52.  In recasting their Complaint, Plaintiffs now concede that the payments of interest (the allegedly restrained product) are not made directly to the alleged conspirators, but indirectly, as mandated by statute, to the municipality.  This indirectness also deprives them of antitrust standing.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977); *Assoc. Gen. Contractors v. Ca. State Council of Carpenters*, 459 U.S. 519 (1983).

Plaintiffs' argument that they have antitrust standing because their injuries are "inextricably intertwined" with Defendants' alleged anti-competitive conduct is squarely at odds with the Third Circuit's decision in *Ethypharm*, which restricted this category to "cases in which both plaintiffs and defendants are in the business of selling goods or services *in the same relevant market*."  *Ethypharm*, 707 F.3d at 237.  Thus, just as in *Ethypharm*, Plaintiffs' "argument that [their] injuries are inextricably intertwined with [Defendants'] conduct . . . fails for the same reason [their] argument that [they are] [] competitor[s] fails."  *Id.*

Contrary to Plaintiffs' assertion, *Ethypharm*'s narrow view of this exception is consistent with *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982).  There, the Court found the plaintiff had antitrust standing because she, unlike Plaintiffs, was a participant (a consumer) in the alleged market, and found she had standing "[a]s a consumer of psychotherapy services [who was] entitled to financial benefits under

14

the Blue Shield plan." *Id.* at 480. [13]  Thus, *McCready* is consistent with the result

that a non-market participant, like Plaintiffs here, cannot suffer an antitrust injury.

## III.  PLAINTIFFS' TIME-BARRED CLAIMS SHOULD BE DISMISSED

As shown in our opening brief, Plaintiffs' antitrust claims are barred by the

applicable four year statute of limitations.  Plaintiffs attempt unsuccessfully to

avoid this fact by invoking various tolling doctrines, none of which applies.

While Plaintiffs are correct that, in a properly alleged continuing conspiracy,

the limitations period runs from the commission of the last overt act in furtherance

of the conspiracy, that "does not permit the plaintiff to recover for the injury

caused by old overt acts outside the limitations period."  *Klehr v. A.O. Smith Corp.*,

521 U.S. 179, 189 (1997).  The claims of several named Plaintiffs (and a large

portion of the putative class) are based on purported injuries caused by allegedly

rigged bids at auctions that took place more than four years before this action was

---

[13] Courts denying standing have expressly distinguished *McCready* on the ground
that that plaintiff was a consumer in the relevant market.  *See Serpa Corp. v.
McWane, Inc.*, 199 F.3d 6, 13 (1st Cir. 1999) ("[W]hile standing in *McCready* was
conferred to a plaintiff who was only derivatively injured, the plaintiff was a
consumer in the market directly affected by the antitrust violation."); *Exhibitors'
Service, Inc. v. Am. Multi-Cinema, Inc.*, 788 F.2d 574, 579 (9th Cir. 1986) ("as a
Blue Shield subscriber, McCready clearly qualified as a consumer of services in
the restrained market"); *see also Reading Int'l, Inc. v. Oaktree Cap. Mgmt.*, 317 F.
Supp. 2d 301, 312 n.5 (S.D.N.Y. 2003) ("in *Blue Shield of Virginia v. McCready*,
the Supreme Court held that although the plaintiff, a consumer of psychotherapy
services, was not a competitor in the health insurance market, she was clearly a
consumer in the relevant market, and was therefore 'within that area of the
economy endangered by that breakdown of competitive conditions. . . .'").

filed.  *See, e.g.,* Compl. ¶ 26 (TSC auctions on June 29, 2004 and June 29, 2006);

*id.* ¶ 24 (TSC auction on October 19, 2007).  Those Plaintiffs could not recover

alleged damages, even if they had adequately alleged a single on-going conspiracy.

      Plaintiffs also invoke the doctrine of statutory tolling under Section 16(i) of

the Clayton Act and Section 15 of the New Jersey Antitrust Act – which tolls the

statute of limitations from the time the government "institutes" or "commences"

proceedings to enforce the antitrust law.  *See* 15 U.S.C. § 16(i); N.J.S.A. § 56:9-15.

Contrary to Plaintiffs' claim, initiation of a federal investigation is not a "civil or

criminal" proceeding that tolls the limitations period.  Under Clayton Act Section

16(i), it is the indictment that is "the operative 'institution' of proceedings."

*Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 871 (9th Cir. 1978) (tolling

limitations statute at start of investigation "would introduce great uncertainty in

fixing the time at which the suspension period commences").[14]  No indictment has

been filed in this case.  A criminal information was filed against one defendant on

August 23, 2011, but even assuming the filing of that information tolled the statute

of limitations, Plaintiffs' claims based on conduct prior to August 23, 2007 (*i.e.*,

more than 4 years before the first criminal information) would still be time-barred.

      Statutory tolling also does not save Plaintiffs' time-barred claims under the

New Jersey Antitrust Act.  First, Section 16(i) of the Clayton Act only tolls claims

---

[14] Plaintiffs' Opposition reinforces this point.  *See* Opp. at 69 ("Although Plaintiffs
do not know the precise date, the federal investigation here began in 2009.").

arising under the federal antitrust laws. *See* 15 U.S.C. §12, 16(i). Second, Section 15 of the New Jersey Antitrust Act only tolls private actions during and one year following a civil or criminal proceeding "commenced by the State." *See* N.J.S.A. § 56:9-15. Plaintiffs cite to no case in which Section 15 was applied to toll a claim under the New Jersey Antitrust Act during the pendency of federal litigation.[15]

Plaintiffs' final attempt to resurrect their barred claims relies on the doctrine of fraudulent concealment. If adequately shown, that doctrine tolls the statute of limitations until plaintiffs "discover[] the cause of action or discover[] facts that reasonably put [them] on notice of it." *Prudential Ins. Co. v. U.S. Gypsum Co.*, 828 F. Supp. 287, 301 (D.N.J. 1993). To invoke fraudulent concealment Plaintiffs "bear[] a heavy burden," under which they must, at a minimum, demonstrate that either (1) the alleged conspiracy was self-concealing, or (2) the Defendants actively misled them. *Murdock v. E. Coast Mortg. Corp.*, No. 10-4717, 2012 WL 2344515, at *6 (D.N.J. June 20, 2012).

As explained in our opening brief, bid-rigging is not inherently self-concealing, *Pa. v. Milk Indus. Mgmt. Corp.*, 812 F. Supp. 500, 504 (E.D. Pa. 1992),

---

[15] Elsewhere in the New Jersey Antitrust Act, the term "the State" is used unambiguously to describe the state of New Jersey, the Attorney General of New Jersey, and the political subdivisions and public agencies of New Jersey. *See* N.J.S.A. §56:9-12 ("The State and any of its political subdivisions and public agencies shall be deemed a person within the meaning of this section. The Attorney General, on behalf of the State or any of its political subdivisions or public agencies, or the political subdivision or public agency at the direction of or with the permission of the Attorney General, may institute an action . . . .").

and Plaintiffs have not alleged specific facts showing that the conspiracy alleged in the Complaint was self-concealing.[16]  Unlike a price-fixing agreement that is struck in secret and implemented through private price negotiations, the conspiracy that Plaintiffs' skeletal allegations conjure was open and apparent.  According to Plaintiffs, "[t]he auctions are open to the public," Compl. ¶ 141, and "[c]onversations allocating the liens would take place. . . in person at the auction prior to the beginning of the action. . . .  Sometimes the meeting would take place in the actual auction room . . . ." *id.* ¶ 149.

Plaintiffs may invoke the fraudulent concealment doctrine only if they establish Defendants actively misled them.  The Complaint does not allege any active concealment or deception by Defendants.  Plaintiffs allege only that Defendants failed to state that bids they submitted were the result of a conspiracy and that one Defendant denied the existence of the conspiracy.  *See* Compl. ¶¶ 187-194.  These allegations are plainly insufficient to plead fraudulent concealment. *See Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-219 (4th Cir. 1987) ("To permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid

---

[16] *See Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1531 (5th Cir. 1988) ("[W]e reject the State's contention that because the bid-rigging conspiracy was inherently self-concealing, it need not prove affirmative acts of concealment.").

inquiry would effectively nullify the statute of limitations in these cases.  It can hardly be imagined that illegal activities would ever be so gratuitously revealed.").

Because Plaintiffs have not adequately alleged even the most basic facts needed to toll the statute of limitations, any claims premised on auctions that took place prior to March 13, 2008, four years before the commencement of this action, should be dismissed as a matter of law.

## IV.   THE FILED RATE DOCTRINE BARS PLAINTIFFS' CLAIMS

Plaintiffs' claims also are foreclosed by the filed rate doctrine.  Plaintiffs argue the filed rate doctrine does not apply because, in their view, the rates set through the "comprehensive scheme" of the New Jersey Tax Sale Law ("TSL") were not subject to sufficient scrutiny.  Opp. at 79.  But regulatory scrutiny is not a requirement for the filed rate doctrine to apply, and Plaintiffs cite no cases holding otherwise.  Indeed, as the Third Circuit recently stressed, "the Supreme Court has never indicated that the filed rate doctrine requires a certain type of agency approval or level of regulatory review."  *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 238 (3d Cir. 2012).  In fact, the Court explained that the filed rate doctrine applies "whenever tariffs have been filed."  *Square D Co. v. Niagara Frontier Tariff Bureau Inc.*, 476 U.S. 409, 417 n.19 (1986).[17]  Plaintiffs do not

---

[17] *See also Town of Norwood v. New Eng. Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) ("It is the filing of the tariffs, and not any affirmative approval or scrutiny by the agency, that triggers the filed rate doctrine.").

contest that TSCs containing each lien's rate were filed with the appropriate municipality as required by the TSL. *See* N.J.S.A. § 54:5-51, N.J.S.A. § 54:5-47. Because the TSCs and interest rates were filed with a government entity, the filed rate doctrine bars Plaintiffs' claims for damages premised on those rates.

Plaintiffs also claim that the filed rate doctrine should not apply to the interest rates established through the TSL because those rates were "set purely by auction." Opp. at 79. However, that the New Jersey legislature chose to use a market-based approach to establish the interest rate applicable to Plaintiffs' overdue tax obligations is entirely irrelevant. *See Utilimax.com v. PPL Energy Plus, LLC*, 378 F.3d 303, 305 (3d Cir. 2004). This case is on all fours with *Utilimax.com*, in which participant energy providers bid on the wholesale price at which they were willing to buy or sell electricity capacity credits through auctions. *Id.* The prevailing rate at each auction determined the rate at which parties could buy or sell wholesale electricity credits for the day. *Id.*

Like the auction-based system in *Utilimax.com*, the "comprehensive scheme" of the TSL involves market-based rates set through auctions Plaintiffs allege were manipulated. The TSL requires municipalities to sell – by auction – liens for unpaid property taxes and other municipal liens, and the municipality determines the winning bids from those submitted at auction. *See* Compl. ¶ 136; N.J.S.A. §§ 54:5-19, 54:5-31. The municipality provides the winning bidder with a

20

TSC memorializing the interest rate at which it was purchased, Compl. ¶ 140; N.J.S.A. § 54:5-47, which must be filed or recorded with the appropriate municipality within three months of the auction. *Id.* § 54:5-51. As in *Utilimax.com*, the filed rate doctrine applies to the market-based rate-setting scheme established by the TSL.[18]

The rationale behind the filed rate doctrine is the belief that "federal courts are ill-equipped to engage in the rate making process." *In re N.J. Title Ins. Litig.*, 683 F.3d 451, 457 (3d Cir. 2012). The U.S. Supreme Court has explained that the rate filed with the government becomes the only rate parties may be charged. *See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 961 (1986) (plaintiffs "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission").[19] Plaintiffs' argument that they had a legal right to a lower interest rate than the filed auction rate would require the Court to determine what the appropriate rate would be but-for the alleged conspiracy.[20]

---

[18] The Third Circuit's application of the filed rate doctrine in *Utilimax.com* also refutes Plaintiffs' argument that the doctrine only applies to "regulatory regimes that *set prices for services rendered*," Opp. at 77, or must relate to a "regulated service," *id.* at 78. The auction in *Utilimax.com* involved the sale of electricity capacity credits to competing energy providers, not "services."

[19] *See also Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 416 (1986) ("Unless and until suspended or set aside, [the filed] rate is made, for all purposes, the legal rate. . . .").

[20] In an attempt to avoid application of the filed rate doctrine, Plaintiffs disingenuously claim they are not challenging the rate applied to the TSCs, but

Setting aside the question of whether such an exercise is even possible here,[21] the filed rate doctrine was constructed specifically to avoid such judicial rate-making.

## V.   PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IS DUPLICATIVE OF THEIR SHERMAN ACT CLAIM

As Defendants have explained, Plaintiffs' declaratory judgment claim (Count Six) is entirely duplicative of their Sherman Act claim, and must therefore be dismissed.  *See* Mot. to Dismiss at 33.  Plaintiffs' half-hearted rejoinder fails to rebut this clear conclusion, and their cited authority is entirely off point because neither cited case involved a duplicative claim.  *Powell v. McCormack*, 395 U.S.

---

rather Defendants' alleged misconduct.  *See* Opp. at 80.  If, in fact, Plaintiffs are not challenging the rates applied to the TSCs, they cannot establish antitrust injury or standing.  On the other hand, if they are claiming the filed rate was higher than it would have been but-for Defendants' alleged misconduct (which they appear to claim), then the filed rate doctrine is clearly implicated and Plaintiffs' claims for damages are barred.  Plaintiffs' reliance on *Gallo v. PHH Mortgage Corp.*, No. 12-1117, 2012 U.S. Dist. LEXIS 182954 (D.N.J. Dec. 31, 2012), is misplaced.  *Gallo* concerned a challenge to a mortgage company's practice of negotiating fees and kickbacks from insurers in exchange for forcing mortgagees to obtain hazard insurance through those insurers.  The *Gallo* court explicitly noted that the plaintiff's claim for relief "does not directly challenge the rate that was paid, but rather the time periods for which it was paid."  *Id.* at *19 n.7.

[21] *See U.S. v. Bathon*, No. 13-CR-30025, slip op. (S.D. Ill. Apr. 22, 2013) (attached as Ex. A to the Declaration of William J. Hughes, dated July 3, 2013 ("Hughes Decl.")) (in case alleging bid-rigging and price-fixing in county tax sale auctions, calculating losses to "victim[s,] given the complex issues of fact" found "highly impracticable" despite "best efforts" of experts); *U.S. Bathon,* No. 13-CR-30025, slip op. (S.D. Ill. Mar. 1, 2013) ( Hughes Decl. Ex. B); Government's Supplemental Motion For Order Regarding Restitution, *U.S. v. Bathon*, No. 13-CR-30025 (April 22, 2013) (Hughes Decl. Ex. C).  The difficulty in establishing an appropriate rate for any individual TSC surely makes class treatment in this action in appropriate.  *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432-1435 (2013).

486 (1969) (addressing whether declaratory judgment claim presented justiciable controversy); *Dworman v. Mayor & Bd. of Aldermen*, 370 F. Supp. 1056 (D.N.J. 1974) (declaration of contract invalidity sought instead of breach of contract claim). For the reasons stated in the Motion, Claim Six should be dismissed.

## VI.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiffs' attempts to assert claims under the TSL and New Jersey Antitrust Act, as well as a common-law unjust enrichment claim, fail as a matter of law:

- First, N.J.S.A. § 54:5-52 ("Section 52") establishes an evidentiary presumption of the "regularity and validity of all proceedings had in reference to the sale" of TSCs. It does not provide for an independent cause of action.

- Second, the presumption created by Section 52 bars all of Plaintiffs' state-law claims because Plaintiffs essentially concede that they cannot plead fraud to overcome the statutory presumption.

- Third, N.J.S.A. § 54:5-63.1 ("Section 63.1") permits the extreme remedy of forfeiture only where, unlike here, there are allegations that Defendants charged or exacted fees in connection with TSCs in excess of the amounts permitted by the TSL.

- Fourth, Plaintiffs have failed to allege any predicate wrong as a basis for their unjust enrichment claim.

### A.   Plaintiffs' Fourth Claim For Relief Should Be Dismissed Because No Independent Cause of Action Exists Under N.J.S.A. § 54:5-52

Defendants moved to dismiss Claim Four of the Complaint because of the undisputable fact that the plain language of the statute creates an evidentiary presumption, not a cause of action. Plaintiffs' opposition fails even to mention the language of the statute; nor do Plaintiffs argue that there is any ambiguity in the statutory language—the language is absolutely clear. That alone ends the matter.

Instead, Plaintiffs suggest that "established precedent" makes clear that N.J.S.A. 54:5-52 creates a cause of action, but fail to identify any case to support that position.  Setting aside Plaintiffs' argument that public policy indicates that the statute *should* recognize a cause of action (while ignoring that the statutory language plainly does not), Plaintiffs make only two attempts to support the baseless assertion that "established precedent" recognizes a cause of action.

First, Plaintiffs argue that Defendants chose to rely on cases in their motion that "hold that N.J.S.A. 54:5-52 confers a private right of action on property owners."  Opp. at 55.  Defendants did no such thing.  Plaintiffs go on to argue only that one of Defendants' cited cases—in the dissent—supports that conclusion.[22]  In that case, delinquent taxpayers sought a stay of the foreclosure proceedings—under N.J.S.A. § 54:5-101 (since repealed)—pending an application to review the legality of the tax lien and sale.  *Cmty. Dev. Co. v. Seaside Gardens*, 7 N.J. 153, 156 (1951).  The majority held the Section 101 claim was precluded because the taxpayers' allegations were insufficient to overcome Section 52's presumption of validity.  *Id*.  Still, Plaintiffs argue that the *Community Dev.* dissent "recognized that plaintiffs could make a claim under" Section 52.  Opp. at 55.  To the contrary, it merely opined that plaintiffs had asserted sufficient evidence of fraud to

---

[22] Plaintiffs discuss other cases cited in Defendants' motion merely in an attempt to distinguish them, not to suggest that they support Plaintiffs position.

overcome Section 52's presumption of validity and would have allowed the case to go forward *under Section 101. Cmty. Dev. Co.*, 7 N.J. at 159 (Case, J. dissenting).

Second, in a footnote, Plaintiffs cite two cases as purportedly recognizing "private claims similar to those that Plaintiffs seek to enforce here." Opp. at 56, n.195. Neither case remotely supports this proposition.[23] In short, Plaintiffs not only ignore the clear statutory language, they fail to identify a single case supporting their assertion that Section 52 creates a cause of action. Plaintiffs cannot convert Section 52's evidentiary presumption into a separate cause of action, and their Fourth Claim must be dismissed.

### B.     Plaintiffs' Second, Third and Fifth Claims Must Be Dismissed Because Plaintiffs Have Not Pled Fraud with Particularity

Plaintiffs do not contest that each of their state-law claims is a challenge to the "regularity and validity" of the sale of TSCs held by Defendants, triggering Section 52's presumption of validity. They also concede that the showing of fraud needed to rebut Section 52's presumption must be pled with particularity. *See* Opp. at 57. Thus, Rule 9(b) requires Plaintiffs to plead the elements of fraud as to each

---

[23] *Hyland v. Kirkman*, 204 N.J. Super. 345 (Ch. Div. 1985), does not recognize a right of action under Section 52; it merely allowed a collateral attack on a foreclosure case to proceed despite the presumption of validity (as plaintiffs were able sufficiently to show fraud). *Simon v. Deptford Twp.*, 272 N.J. Super. 21 (N.J. Super. Ct. App. Div. 1994), also does not recognize a Section 52 claim. Plaintiffs' quoted passage merely acknowledged in *dictum* (without citing Section 52) that a lienholder could, under certain circumstances, sue a municipality to rescind a TSC purchase. *Id.* at 30.

allegedly affected TSC with particularity, or their state law claims are precluded, regardless of whether those claims themselves sound in fraud.

Paying lip service to Rule 9(b)'s requirements, Plaintiffs regurgitate the "factual" allegations that purportedly support their antitrust claims.  Opp. at 58-59. As explained above, these allegations fail even to satisfy *Twombly*, (*see supra* at 3-7), much less support Plaintiffs' TSL "claims" because—as Plaintiffs themselves argue and as discussed *supra* at pp. 9-11—they do not establish fraud.  *See* Opp. at 22 ("[the] antitrust claim . . . does not sound in fraud").  Perhaps recognizing their failure to satisfy Rule 9(b)'s rigorous standards, Plaintiffs suggest that Rule 9(b) should be "relaxed" and that they should be excused from pleading fraud with particularity because certain information is in Defendants' hands.  *Id*. at 58-59.  But even the cases on which Plaintiffs rely do not excuse their conclusory and speculative allegations of fraud.[24]  *See In re Processed Egg Prods. Antitrust Litig*., 851 F. Supp. 2d 867, 880 (E.D. Pa. 2012) ("'[r]elaxation . . . does not translate into, or otherwise authorize, boilerplate and conclusory allegations").[25]

---

[24] The Sixth Circuit has rejected the notion that pleading requirements should be relaxed in such circumstances.  *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (to state a cause of action under Rule 8, let alone Rule 9(b), a plaintiff must "allege specific facts. . . even if those facts are only within the head or hands of the defendants[,]" and a "plaintiff may not use the discovery process to obtain these facts after filing suit.").

[25] *See also Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990) (The relaxation of Rule 9(b) "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations" and "[w]here pleading is permitted on

Plaintiffs argue, based on a single sample TSC attached to the Motion to Dismiss, that Defendants made misrepresentations to tax collectors (which were then allegedly conveyed to delinquent taxpayers) that Defendants had purchased TSCs "pursuant to" the TSL when in fact they had purchased them "in violation of Title 54."  Opp. 59-60.  The Complaint contains no such allegation and, in any event, the TSC itself does not refer to any representations made by any Defendant. To the contrary, the only representations on the TSC (which is signed by the tax collector and notarized) *were made by the tax collector*.[26]

Plaintiffs effectively concede they have not pled reliance sufficient to overcome Section 52's presumption, but suggest, without support, that the meaning of "fraud" under the TSL should be construed in accordance with the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 et seq.) (the "CFA") – which, according to Plaintiffs, does not require proof of reliance.  *See* Opp. at 60-61.  But the TSL contains no instruction that "fraud" is to be construed other than in accordance with common law.  Indeed, Section 52 was enacted in 1918, long before the CFA was enacted in 1960, belying any suggestion that the interpretation of Section 52, a

---

information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.").

[26] *See* Mot. to Dismiss, Ex. A ("I, Janet E. Kelk, COLLECTOR OF TAXES . . . do hereby certify that . . . at a public sale of lands for delinquent municipal liens, pursuant to the Revised Statutes of New Jersey, 1937, Title 54, Chapter 5 . . . I sold to Crusader Servicing Corporation . . . [certain] land.").

prior law, be made in conformity with the CFA, a subsequently enacted statute.[27]

Thus, the plain meaning of the statute (and the ordinary legal meaning of terms,

such as "fraud," used in it) controls, and Plaintiffs must plead reliance with

particularity.  *See* N.J.S.A. § 1:1-1 (as a matter of statutory construction, "words

and phrases having a special or accepted meaning in the law . . . shall be construed

in accordance with such . . . special and accepted meaning").[28]

In sum, having failed to allege fraud with particularity, Plaintiffs fail to rebut

Section 52's presumption of the validity of the implicated TSCs, and their Second,

Third, and Fifth Claims for Relief should be dismissed as precluded by Section 52.

### C.    Plaintiffs' Third Claim for Relief Fails to State a Cause of Action Under N.J.S.A. § 54:5-63.1

To the extent Plaintiffs' Third Claim attempts to use Section 63.1 to

challenge the regularity and validity of the sales of TSCs, Section 52's evidentiary

presumption forecloses such an attack.  Plaintiffs' forfeiture claim also fails

because the plain language of Section 63.1 permits forfeiture only where a TSC

holder charges sums in excess of the amounts permitted under the TSL.  N.J.S.A. §

---

[27] *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 81 (3d Cir. 2011) (holding later-enacted statute should not be held to amend a previously-enacted statute unless there is "some affirmative showing of an intent" to amend or "the earlier and later statutes are irreconcilable").

[28] Plaintiffs argue they need not plead reliance because their claims are based on material omissions, but there can be no claim for fraud by omission when, as here, Plaintiffs allege no "special relationship" giving rise to a duty of disclosure.  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993).

54:5-63.1.  Here, the Complaint is devoid of allegations that the charges imposed in connection with any of the implicated TSCs exceeded the statutory rate.

Defendants do not contend, as Plaintiffs claim, that bid-rigging and collusion are "allowed" under New Jersey law as long as interest rates for TSCs remain at or below 18%.  Opp. at 62.  Rather, the law is clear that Section 63.1's *forfeiture remedy* is available only in the circumstances set out in the statute, and Plaintiffs identify no cases in which a TSC holder has been subject to forfeiture as a result of an alleged antitrust violation under state or federal law.[29]  *If* Plaintiffs have alleged viable antitrust or fraud claims and *if* they prove those claims, they may recover money damages under those claims.  But, nothing in the language of Section 63.1, let alone the rest of the TSL, allows for forfeiture as a cumulative catch-all remedy for their antitrust allegations as opposed to a remedy for the circumstance set out in the statute and not alleged here: a holder of a TSC charging amounts in excess of the 18% statutory rate.[30]

---

[29] Plaintiffs also ignore applicable law in urging that forfeiture is an appropriate remedy, even if one assumes a violation of Section 63.1.  New Jersey courts have made it clear when holders of TSCs imposed charges that exceeded those permitted under the TSL, reformation of the contract if practicable – and not forfeiture – is the appropriate remedy.  In *Jackson v. HSBC Bank*, 922 A.2d 750 (N.J. Super. Ct. App. Div. 2007), charges in excess of those permitted under the TSL were imposed.  Rather than ordering forfeiture, the court affirmed the grant of the reformation remedy to eliminate any unauthorized, excessive charges.

[30] Nor should Plaintiffs should be permitted to rewrite the statute to accomplish what the U.S. Supreme Court has expressly declined to permit: the cancellation of a state-law sale contract based on an alleged collateral Sherman Act violation.  *See*

Indeed, no court has ever held, as Plaintiffs would have it, that Section 63.1 permits a challenge to the validity of the sale of a TSC. Rather, Section 63.1 has only been applied to post-auction conduct by TSC holders, such as collection of interest at a rate higher than reflected on the face of a TSC. *See* Mot. To Dismiss at 44 n. 14. Such conduct is not alleged here.

## D.   Plaintiffs Fail to State a Claim for Unjust Enrichment

Finally, Plaintiffs' unjust enrichment claim is a tag-along claim that must be dismissed along with their other claims for relief. *See* Compl. ¶ 233 (alleged unjust enrichment was a result of "the unlawful conduct described above" in the Complaint). Contrary to Plaintiffs' assertion, it is well settled that New Jersey does not recognize unjust enrichment as an independent tort and that such a claim cannot survive where, as here, all other claims for relief fail to state a claim. *Pereira v. Azevedo*, No. 12-907, 2013 WL 1655988, at *5 (D.N.J. Apr. 17, 2013).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Motion to Dismiss, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

---

*Kelly v. Kosuga*, 358 U.S. 516, 519 (1959) (declining to rescind state-law product sale subject to alleged Sherman Act conspiracy and holding that "federal courts should not be quick to create a policy of nonenforcement of contracts beyond that which is clearly the requirement of the Sherman Act").

Respectfully submitted,

COOPER LEVENSON APRIL NEIDELMAN
& WAGENHEIR, P.A.

/s/ William J. Hughes, Jr. (WH-1924)
William J. Hughes
Frederic L. Shenkman
1125 Atlantic Avenue
Atlantic City, NJ 08401
Tel: (609) 572-7512
whughes@cooperlevenson.com

WEIL GOTSHAL & MANGES LLP

Joseph S. Allerhand
Jonathan D. Polkes
Bruce A. Colbath
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
joseph.allerhand@weil.com

*Counsel for Defendants M.D. Sass
Municipal Finance Partners I, L.P.,
M.D. Sass Municipal Finance Partners
II, L.P., M.D. Sass Municipal Finance
Partners III, LLC, M.D. Sass Municipal
Finance Partners IV, LLC, M.D. Sass
Municipal Finance Partners V, LLC,
M.D. Sass Municipal Finance Partners
VI, LLC, M.D. Sass Tax Lien
Management LLC, and M.D. Sass
Investor Services, Inc.*

MORGAN, LEWIS & BOCKIUS LLP

/s/ R. Brendan Fee (RF-4838)
Steven A. Reed (*pro hac vice*)
R. Brendan Fee (RF-4838)
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
sreed@morganlewis.com

*Counsel for Defendants Crusader
Servicing Corporation, Royal Tax Lien
Services, LLC, Royal Bancshares of
Pennsylvania, Inc. and Royal Bank
America*

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO

/s/ James E. Cecchi
James E. Cecchi
Zachary S. Bower
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com

*Counsel for Defendants BBX Capital
Corporation and Fidelity Tax, LLC*

31

ROETZEL & ANDRESS

/s/ Patricia B. Fugee (02317-1990)
Patricia B. Fugee
One SeaGate, Suite 1700
Toledo, OH 43604
Tel: (419) 242-7985
pfugee@ralaw.com

Donald S. Scherzer (pro hac vice)
Amanda M. Knapp (pro hac vice)
1375 East Ninth Street
One Cleveland Center, Ninth Floor
Cleveland, OH 44114-1788
Tel: (216) 623-0150
dscherzer@ralaw.com

*Counsel for Defendant American Tax Funding, LLC*

BELLIN & ASSOCIATES LLC

/s/ Aytan Y. Bellin (AB-0123)
Ayan Y. Bellin
85 Miles Avenue
White Plains, NY 10606
Tel: (914) 358-5345
aytan.bellin@bellinlaw.com

SCHLAM STONE & DOLAN LLP

Jeffrey M. Eilender
John M. Lundin
26 Broadway
New York, New York 10004
Tel: (212) 344-5400
JME@schlamstone.com

*Counsel for Defendant Mooring Tax Asset Group, LLC and MTAG Services, LLC*

WALDER, HAYDEN & BROGAN P.A.

/s/ Justin P. Walder
Justin P. Walder
Shalom D. Stone
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 992-5300
jpwalder@whbesqs.com

*Counsel for Phoenix Funding, Inc. and Benedict Caiola*

JACOBS & BARBONE, P.A.

/s/ Michael F. Myers
Michael F. Myers
Edwin J. Jacobs, Jr.
1125 Pacific Avenue
Atlantic City, NJ 08401
Tel: (609) 348-1125
jacobsbarbone@comcast.net

*Counsel for Defendants Joseph Wolfson, Richard Simon Trustee, and Betty Simon Trustee, LLC*

32

MASELLI WARREN, P.C.


/s/ Perry S. Warren
Perry S. Warren
David Fornal (DF-5578)
600 Alexander Road, Suite 3-4A
Princeton, NJ 08540
Tel: (609) 452-8411
pwarren@maselliwarren.com

COVINGTON & BURLING LLP

Robert D. Wick (pro hac vice)
Jason C. Raofield (pro hac vice)
1201 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 662-6000
rwick@cov.com

*Counsel for Defendant Plymouth Park
Tax Services, LLC*