# WALDER, HAYDEN & BROGAN, P.A.
COUNSELLORS AT LAW
5 BECKER FARM ROAD
ROSELAND, NEW JERSEY 07068-1727
(973) 992-5300

FACSIMILE: (973) 992-1505
(973) 992-1006

DIRECT: (973)
DIRECT FAX: (973)
E-MAIL:
WWW.WHBESQS.COM

JUSTIN P. WALDER
JOSEPH A. HAYDEN, JR[1]
THOMAS J. SPIES
JAMES A. PLAISTED[1,4,5]
HEATHER G. SUAREZ
MICHAEL J. FAUL, JR.[1,2]
JEFFREY A. WALDER
SHALOM D. STONE[1]
BARRY H. EVENCHICK[1]
ROGER PLAWKER[2]
CHRISTOPHER D. ADAMS
STEVEN G. WALDER[1]
ROBERT J. DONAHER
REBEKAH R. CONROY[1]

JOEL SONDAK (1932-1995)

[1]MEMBER OF NJ & NY BARS
[2]MEMBER OF NJ & DC BARS
[3]MEMBER OF NJ, NY, CA & VA BARS
[4]CERTIFIED BY THE SUPREME COURT AS A CIVIL TRIAL ATTORNEY
[5]CERTIFIED BY THE SUPREME COURT AS A CRIMINAL TRIAL ATTORNEY

KEVIN A. BUCHAN[1]
LEIGH-ANNE MULREY[1]

OF COUNSEL
MELVYN H. BERGSTEIN[1,4]
JOHN H. SKARBNIK[1], LL.M., C.P.A.
STEVEN D. GROSSMAN[1]
ALAN SILBER[3,5]
ASAAD K. SIDDIQI[1]
PETER G. BRACUTI
LIN C. SOLOMON[1]

COUNSEL TO THE FIRM
MARTIN L. GREENBERG[1]

OUR FILE NO.

July 3, 2013

*Via CM/ECF*
Hon. Michael A. Shipp, U.S.D.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:   *In re: New Jersey Tax Sales Certificates Antitrust Litigation*
             *Master Docket No. 12-CV-1893-MAS-TJB*

Dear Judge Shipp:

      This firm represents defendants Phoenix Funding, Inc. and Benedict Caiola. We respectfully submit this letter-brief in further support of Phoenix Funding's and Benedict Caiola's Motion to Dismiss the Plaintiffs' Consolidated Master Class Action Complaint [D.E. #180], and in reply to the opposition filed by Plaintiffs ("Opp.") [D.E. #242]. We also join in the arguments set forth in the Reply Memorandum of Law in Further Support of Defendants' Joint Motion to Dismiss

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 2*

---

("Omnibus Reply Brief"). As set forth below, the Complaint fails to allege facts that plausibly suggest that either Caiola or Phoenix participated in the massive conspiracy described in the Complaint.

## ARGUMENT

### I. Plaintiffs Have Failed to Plead Facts Implicating Defendants Phoenix and Caiola in the Alleged Overarching Conspiracy.

An antitrust conspiracy complaint "must allege that each individual defendant joined the conspiracy and played some role in it because at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." In re Elec. Carbon Prods. Antitrust Litig., 333 F.Supp.2d 303, 311-312 (D.N.J. 2004) (quotation omitted). See also In re TFT-LCD (Flat Panel) Antitrust Litigation, 586 F.Supp.2d 1109, 1117 (N.D. Cal. 2008) (complaint must include "allegations specific to each defendant alleging that defendant's role in the alleged conspiracy"). See generally Memorandum of Law in Support of Defendants Phoenix Funding's and Benedict Caiola's Motion to Dismiss the Complaint [D.E. #180-1] at 6-9.

Plaintiffs concede as much. Opp. at 30, n.100 ("plaintiff must allege that each individual defendant joined the conspiracy and played some role in it") (quotation omitted); Opp. at 28 (plaintiffs "need to make allegations that plausibly

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 3*

suggest that each defendant participated in the alleged conspiracy") (quotation omitted). Plaintiffs fail to allege such facts as to either Caiola or Phoenix. That is, the Complaint fails to include **factual** allegations that plausibly suggest that either Caiola or Phoenix participated in the alleged 11-year, state-wide, 48-member conspiracy to fix interest rates at 6,000 auctions.

The Supreme Court has prescribed a two-pronged approach for the analysis of pleadings under Rule 12(b)(6): (1) identify those pleadings that are mere conclusions, because those are not entitled to an assumption of truth; and (2) assume the veracity of the remaining well-pleaded factual allegations (if any), and then determine whether they plausibly give rise to an entitlement of relief. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Although the Complaint makes the **conclusory** assertion that Phoenix and Caiola "participated in an illegal agreement and/or understanding," the Complaint critically fails to allege any **facts** to support that naked conclusion.

As noted in our moving brief, the Complaint mentions only a single tax lien auction in which Phoenix is alleged to have participated. According to the Complaint, Phoenix attended an auction in Lincoln Park, New Jersey, almost 13 years ago, and allegedly bought two liens at an 18% interest rate, pursuant to a

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 4*

collusive agreement with three other defendants (Sass, Crusader, and Rothman). Complaint at ¶154(a). No facts are alleged to suggest that Phoenix entered into an "illegal agreement and/or understanding" to fix interest rates at any auction **other than** the Lincoln Park auction. Id. And as to Caiola, there is no suggestion that he was even at the Lincoln Park auction, or ever discussed that auction with any other defendant. Id. In sum, the allegations concerning Lincoln Park – a single auction, some 13 years ago, at which Phoenix purchased two TSCs – do not reference Caiola at all, and are insufficient to plausibly suggest that Phoenix participated in the alleged overarching conspiracy.

Phoenix's alleged complicity in price-fixing at a single auction does not plausibly implicate Phoenix (or Caiola) in an alleged conspiracy to fix interest rates at 6,000 auctions over an 11-year period. See In re Marine Hose Antitrust Litigation, Case No. 08-1888-MDL (S.D. Fl. January 28, 2009), at 22-23 ("Plaintiffs have alleged sufficient facts of an overall antitrust conspiracy, but fail to allege how Defendant Scaglia (and others) joined the conspiracy…. Defendant Scaglia is alleged to have attended a May 1, 2007 meeting in Houston, Texas, for the purpose of carrying out the conspiracy…. **Mere attendance at one meeting within a twenty-plus year conspiracy, without more, is insufficient.**

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 5*

---

Consequently, the Court must grant Defendant Scaglia's motion to dismiss.") (emphasis added). (A copy of that decision is attached hereto as Exhibit A.)

In opposing Phoenix's and Caiola's motion to dismiss, one would expect Plaintiffs to highlight any facts which would plausibly suggest Phoenix's and Caiola's participation in the alleged overarching conspiracy. But Plaintiffs' response to the motion does just the opposite; Plaintiffs acknowledge that the conspiracy allegations against Phoenix and Caiola are predicated on nothing more than their participation in the tax-lien auction market:

> Phoenix purchased tax liens at public auctions in the State of New Jersey during the Class Period. During the Class Period, the individuals at Phoenix that participated at tax lien auctions in New Jersey, were its President, Defendant Benedict Caiola, and Geza Eckert. Witnesses have identified Phoenix as having participated in the conspiracy.

Opp. at 48 (citations omitted). Plaintiffs' Opposition identifies no **facts** from which it can be plausibly concluded that Phoenix or Caiola participated in a price-fixing conspiracy. To the contrary, Plaintiffs' view appears to be that they are not required to plead such facts.

Indeed, in responding to our arguments, Plaintiffs do not even address Twombly's "plausibility" test. Opp. at 47-48. Instead, Plaintiffs argue that the

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 6*

---

Complaint "adequately puts Phoenix on notice of the claims against them." Opp. at 48. As the Third Circuit has noted, however, "notice" is no longer sufficient. "Beginning with the Supreme Court's opinion in [Twombly] … and culminating recently with the Supreme Court's decision in [Iqbal], pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." Fowler v. UPMC Shadyside Hospital, 578 F.3d 203, 210 (3rd Cir. 2009). Accord Ocasio-Hernández v. Fortuño-Burset, 640 F. 3d 1, 12 (1st Cir. 2011) ("In short, an adequate complaint must provide fair notice to the defendants **and** state a facially plausible legal claim.") (emphasis added).

Plaintiffs also argue that the existence of a federal criminal investigation is a relevant factor in the Court's plausibility analysis. Opp. at 33-34. As a legal matter, that is questionable. See, e.g., In re Graphics Processing Units Antitrust Lit., 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) ("[DOJ] investigation, however, carries no weight in pleading an antitrust conspiracy claim"). See generally Asciolla and Sucharow, "How Courts Analyze Guilty Pleas and Government Investigations When Considering the Plausibility of an Antitrust Conspiracy After

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 7*

---

Twombly" (2010).[1]  More importantly, however, that argument has no bearing on Phoenix or Caiola because there is no indication that either Phoenix or Caiola is the subject of a criminal investigation; the assertion in Plaintiffs' brief (Opp. at 4) that **all** defendants are being investigated by the Department of Justice is without foundation in the record and therefore outside the scope of Rule 12(b)(6).

> **II.  The Allegations Against Phoenix and Caiola Cannot Survive as a Smaller or Individual Conspiracy Because They Have Not Been Pleaded as Such and the Named Plaintiffs Lack Standing to Bring Such a Claim.**

Recognizing that the Complaint fails to allege sufficient facts to plausibly suggest (a) the existence of a massive state-wide 11-year conspiracy, and (b) that Phoenix or Caiola participated in any such conspiracy, Plaintiffs argue instead that the Complaint should be construed to allege a series of "smaller" or "individual" conspiracies.  Opp. at 31-33.

That argument fails for several reasons.  First, as noted in the Omnibus Reply Brief, the Complaint simply does not allege a series of smaller conspiracies.  Rather, Plaintiffs allege a single, overarching conspiracy.  Plaintiffs cannot re-imagine their pleading for purposes of the pending motions to dismiss.

---

[1] Available at http://knowledgenetwork.labaton.com/How-Courts-Analyze.cfm.

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 8*

---

Second, Plaintiffs argue that, assuming the Complaint were construed as alleging a series of smaller conspiracies, there is no requirement to plead "the precise contours" of any such conspiracy. Opp. at 31. In the absence of such "contours" however, it is difficult to imagine how the Court can fulfill its function under Rule 12(b)(6). If, for example, the alleged conspiracy is an 11-year, state-wide, 48-member, 6,000-auction conspiracy, then the Court's analysis with respect to both plausibility and standing, would reflect those parameters. But if the contours of the conspiracy are completely unknown, then there is no framework in which to analyze either plausibility or standing.

Third, if Plaintiffs are suggesting that the conspiracy allegation against Phoenix and Caiola is a "smaller" conspiracy limited to fixing prices at the Lincoln Park auction, then Plaintiffs clearly lack standing. No class has been certified; for now, the five Named Plaintiffs are suing for themselves alone, and they must demonstrate that they have standing to sue. See Memorandum of Law in Support of Defendants' Joint Motion to Dismiss [D.E. #174-1] at 13-14. But the Complaint does not allege that any tax liens on the Named Plaintiffs' properties were sold at the Lincoln Park auction. See Complaint at ¶¶17-27 (allegations concerning liens on the Named Plaintiffs' properties); Complaint at ¶154(a) (allegations concerning

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 9*

---

the Lincoln Park auction).  The Named Plaintiffs therefore have no standing to assert a claim against Phoenix or Caiola for an alleged price-fixing conspiracy at the Lincoln Park auction.[2]  (Moreover, if the conspiracy allegation against Phoenix and Caiola is limited to a conspiracy to fix prices at the Lincoln Park auction in June 2000, then Plaintiffs' claims are clearly time-barred.)

In sum, the Complaint fails to allege facts that plausibly suggest that either Caiola or Phoenix participated in the massive conspiracy described in the Complaint, and the Named Plaintiffs have no standing with respect to the Lincoln Park auction.  The Complaint should therefore be dismissed as to defendants Phoenix and Caiola.

                Respectfully yours,

                */s/ Shalom D. Stone*

                SHALOM D. STONE

SDS/veo
Exhibit A Attached
cc:    All Counsel and *Pro Se* Parties (via ECF)

---

[2] The Named Plaintiffs similarly lack standing to assert the non-antitrust claims (Counts Three, Four, and Five) against Phoenix and Caiola because the Named Plaintiffs fail to allege that either Phoenix or Caiola purchased a tax lien on any of the Named Plaintiffs' properties.

WALDER, HAYDEN & BROGAN, P.A.

*Hon. Michael A. Shipp, U.S.D.J.*
*July 3, 2013*
*Page 10*

_____