# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 08-1888-MDL-GRAHAM/TURNOFF

IN RE MARINE HOSE ANTITRUST
LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

## OMNIBUS ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** comes before the Court upon several Motions to Dismiss. The Court has considered each motion, the pertinent portions of the record, and is otherwise fully advised in the premises. As set forth below, the motion posing jursidictional challenges is granted, in part, and denied, in part. The motions under Rule 12(b)(6) are also granted with Plaintiffs having leave to amend the complaint. Overall, the Court concludes the FTAIA bars Expro's claims. Therefore, it follows that this Court lacks subject matter jurisdiction on those claims. As to the remaining claims, the Court finds the First Amended Complaint [D.E. 180] generally satisfies the pleading standard set forth in <u>Bell Atlantic Corporation v. Twombly</u>, 127 S. Ct. 1955 (2007), but fails to sufficiently plead as to the Defendants' individual conduct.

### I.  BACKGROUND

This a consolidation of seven antitrust actions transferred to this District by the Multidistrict Litigation Panel. Plaintiffs, Bayside Rubber & Products, Inc. ("Bayside") and Expro

Gulf Limited ("Expro"),[1] allegedly purchased Marine Hose[2] from the Defendants. Defendants are domestic and foreign manufacturers and corporate executives alleged to be part of a conspiracy in restraint of trade to artificially raise the prices for Marine Hose in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[3] [See First Amended Consolidated Class Action Complaint, D.E. 180, hereinafter the "First Amended Complaint," at ¶ 56.] Filed as a proposed class action, the First Amended Complaint alleges that since 1985, Defendants engaged in anticompetitive activities that included, inter alia, attending meetings in the United States to discuss the sale of Marine Hose and to fix Marine Hose prices through extensive arrangements among various international corporations and their respective corporate officers. Plaintiffs further allege that as a result of the global conspiracy, they (and the proposed class) paid artificially inflated prices for Marine Hose and, consequently, suffered

---

[1] Bayside and Expro are the remaining Plaintiffs. Two other initial plaintiffs (Weeks Marine, Inc. and Shipyard Supply, LLC) have voluntary dismissed their claims. [See D.E. 172.]

[2] Marine Hose is a flexible rubber hose used primarily to transport oil between ships, terminals, buoys and tanks.

[3] Section 1 of the Sherman Act provides, in pertinent part, that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

antitrust injury to their business or property.[4] [See First Amended Complaint ¶ 2.] While some Defendants answered the First Amended Complaint,[5] others filed motions to dismiss that, as discussed below, are ripe for disposition.[6]

## II. LAW & DISCUSSION

Because of the primary concern relating to jurisdiction, see e.g., Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1328 n.4 (11th Cir. 1999) ("A federal court not only has the power but also the obligation to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."), the Court will first address the motions presenting jurisdictional challenges and then discuss the motions to dismiss for failure to state a claim.[7]

---

[4] The allegations at issue in the First Amended Complaint were also the subject of separately filed criminal complaints against numerous corporations and individuals as further discussed herein.

[5] The following Defendants answered the First Amended Complaint: Yokohama Rubber Co. Ltd. [D.E. 197], Misao Hioki [D.E. 212], Bridgestone Corporation [D.E. 214] and Jacques Cognard [D.E. 207]. The record also reveals that the Manuli Defendants also filed answers to the First Amended Complaint [see D.E. 200 and 201], but later joined in the instant motion to dismiss on jurisdictional grounds [D.E. 242].

[6] Because certain entities were served later in the litigation and have only recently filed their pleadings, the motions to dismiss by certain Defendants are not yet ripe. The record also reveals that Defendants Peter Whittle and PW Consulting have failed to answer or otherwise respond while Defendant Uwe Bangert has yet to be served. [See D.E. 340.]

[7] Defendants have largely joined in each others motions and many raise substantially the same issues, which the Court will address

**A.    Motion to Dismiss under Federal Rule of Civil
       Procedure 12(b)(1) for Lack of Subject Matter Jurisdiction**

Manuli Rubber Industries, S.P.A and Manuli Oil & Marine
(U.S.A) Inc. (hereinafter, the "Manuli Defendants")[8] seek dismissal
of the First Amended Complaint asserting, inter alia, that
Plaintiffs lack standing to bring these antitrust claims and
further contending the Court lacks subject matter jurisdiction over
Expro's claims.

A motion to dismiss for lack of standing and an attack on the
court's subject matter jurisdiction is brought under Federal Rule
of Civil Procedure 12(b)(1).    Region 8 Forest Serv. Timber
Purchasers Council v. Alcock, 993 F.2d 800, 807 n.8 (11th Cir.
1993); see also In re Intel Corp. Microprocessor Antitrust Litig.,
452 F. Supp. 2d 555, 559 (D. Del. 2006) (granting 12(b)(1) motion
because FTAIA precluded foreign antitrust claims and plaintiff

---

in turn.

[8] In addition to the Manuli Defendants, the Motion to Dismiss
[D.E.   242]   initially   included   Defendants   Parker   Hannifin
Corporation, Parker S.r.l and Giovanni Scodeggio (collectively, the
"Parker   Defendants").     Significantly,   however,   the   Parker
Defendants executed a settlement agreement with Plaintiffs and
withdrew from the motion to dismiss. [See D.E. 296.] Consequently,
the Court's ruling herein is inapplicable to the Parker Defendants.

The record also reflects that other Defendants filed notices of
adopting the motion to dismiss for lack of subject matter
jurisdiction, including Defendants Scaglia, Northcutt and Furness
(the "Adopting Defendants").  Consequently, for ease of reference,
the discussion refers to the Manuli Defendants, but also includes
the Adopting Defendants as noted herein.

lacked standing). Because a jurisdictional challenge goes to the court's very power to hear a case, the court has "the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." Pop's Pancakes, Inc. v. NuCO2, Inc., 2008 WL 2901748, at *11 (S.D. Fla. 2008).

In this case, the Manuli Defendants pose a factual challenge to the Court's subject matter jurisdiction. [See D.E. 242 at 4.] Factual attacks challenge the existence of subject matter jurisdiction, in fact, irrespective of the pleadings and matters outside of the pleadings, such as testimony and affidavits are considered. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990); United States v. LSL Biotechnologies, 379 F.3d 672, 683 (9th Cir. 2004) (finding that while federal complaints are generally construed liberally, it was proper for the district court to scrutinize the complaint more closely in order to determine whether it had subject matter jurisdiction even when the scrutiny involved taking preliminary evidence, weighing that evidence and deciding, as a matter of law, whether the facts alleged support jurisdiction); Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 n.4 (3rd Cir. 2002) (noting that on a factual challenge to jurisdiction, the court is not confined to the allegations in the complaint); Den Norske Stats Oljeselskap AS v. Heeremac VOF, 241 F.3d 420, 424 (5th Cir. 2001) (finding that, on a motion to dismiss for lack of subject matter jurisdiction, the

-5-

court may evaluate the complaint, the complaint supplemented by undisputed facts plus the court's resolution of disputed facts).[9]

### 1. The FTAIA and Expro's Claims

The Court will first address the issue of subject matter jurisdiction over Expro's claims. The Manuli Defendants argue that Expro's claims are barred by the Federal Trade Antitrust Improvements Act ("FTAIA"), which amended the Sherman Act.[10]  See

---

[9] At this juncture of the litigation, the Court stresses that it does not purport to make conclusive factual findings on the merits. Rather, the factual discussion herein is made to the extent necessary for purposes of the Court's jurisdictional analysis and to evaluate the motions to dismiss.

[10] The FTAIA expressly states:

Section 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless -

(1) such conduct has a direct, substantial, and reasonably foreseeable effect -

  (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

  (B) on export trade or expert commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

(2) such effect gives rise to a claim under the provision of sections 1 to 7 of this title, other than this section.

If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(b), then sections 1 to 7 of this title shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a.

Pub. L. 97-290, title IV, § 402, 96 Stat 1246 (1982).
Significantly, the Sherman Act reaches conduct outside the borders
of the United States, *but only when* the conduct is intended and
does in fact produce a substantial effect on commerce in the United
States. United States v. Anderson, 326 F.3d 1319, 1329 (11th Cir.
2003)(emphasis added).    In 1982, Congress enacted the FTAIA to
limit American court's jurisdiction over international commerce to
transactions that affect the American economy. Anderson, 326 F.3d
at 1329; F. Hoffman-La Roche, Ltd. v. Empagran, S.A., 124 S. Ct.
2359 (2004) ("Empagran I") ("The [FTAIA] excludes from the Sherman
Act's reach much anticompetitive conduct that causes only foreign
injury."); Den Norske, 241 F.3d at 421 ("The FTAIA, [was enacted
to] clarify the application of United States antitrust laws to
foreign conduct, limits the application of such laws when non-
import foreign commerce is involved.").    The Supreme Court in
Empagran I explained the FTAIA exclusions as limiting
anticompetitive conduct that causes only foreign injury "by setting
forth a general rule that the Sherman Act shall not apply to
conduct involving trade or commerce with foreign nations" and then
creating "exceptions to the general rule, applicable where (roughly
speaking) that conduct significantly harms imports, domestic
commerce or American exporters. Empagran I, 124 S. Ct. at 2363
(internal quotations and citations omitted).

-7-

Courts have repeatedly recognized the complexities of the FTAIA. See, e.g., CSR Limited v. CIGNA Corp., 405 F. Supp. 2d 526, 537 (D.N.J. 2005) ("[T]he FTAIA restrictions are complex and [its] application requires careful scrutiny.); Turicentro, 303 F.3d at 300-01 (describing the FTAIA as inelegantly phrased and using rather convoluted language); Den Norske, 241 F.3d at 423 ("The history of this body of case law is confusing and unsettled."). And, although passed more than two decades ago, it appears the FTAIA body of law is still developing. LSL Biotechnologies, 379 F.3d at 678 ("Federal courts did not shower the FTAIA with attention for the first decade after its enactment, but have more recently begun to interpret the previously obscure statute); Accord Den Norske, 241 F.3d at 423. Indeed, research reveals that the 2004 Empagran I Supreme Court opinion has become the seminal case on FTAIA jurisdiction. Empagran I, 124 S. Ct. at 2363 (focusing on the FTAIA's application where price fixing that is significantly foreign causes some domestic antitrust injury and independent foreign injury). Moreover, the Eleventh Circuit Court of Appeals has had only one occasion to discuss the FTAIA's jurisdictional requirements. See Anderson, 326 F.3d at 1329 (finding the FTAIA inapplicable to government programs in appeal from criminal conviction for antitrust violations). Against this backdrop, this Court is tasked with reviewing the First Amended Complaint, the

relevant case law and the underlying facts to determine whether it has subject matter jurisdiction over Expro's antitrust claims.[11]

As the first step in the analysis, the Court must determine whether the FTAIA applies to the facts of this case. The Manuli Defendants maintain that Expro's claims are subject to the FTAIA because they involve foreign commerce that was not import or export trade. [See D.E. 242 at 6.] In support of their argument, the Manuli Defendants emphasize that Expro is a foreign corporation, organized under the laws of Cyprus, with its principal place of business in South Africa. [See D.E. 242 at 6-7; D.E. 180 ¶ 10.] According to the First Amended Complaint, Expro purchased Marine Hose from Defendant Parker ITR, an Italian corporation, with its principal place of business in Veniano, Italy. [D.E. 180 ¶ 18.] The First Amended Complaint is without further detail as to the purchase of Marine Hose between Expro and Parker. That said, in seeking dismissal, the Manuli Defendants submitted documents demonstrating that Expro sent purchase orders from Cyprus to Italy, where the Marine Hose was manufactured. [See D.E. 242-3; 242-7.] The Marine Hose was ultimately shipped from Italy to Nigeria for use in Nigeria. [See D.E. 248-8.]

Plaintiffs do not dispute these facts. Rather, Plaintiffs submit that the FTAIA is inapplicable—irrespective of the foreign

---

[11] Bayside's claims are not challenged under the FTAIA. Notably, Bayside is an Alabama corporation with its principal place of business in Mobile, Alabama. [See D.E. 180 ¶ 9.]

nationality of the parties and the international route that the
Marine Hose traveled until its final destination in Nigeria.  In
support thereof, Plaintiffs emphasize that the focus of the FTAIA
is on the transaction and not on the identity or nationality of the
parties.  [See D.E. 257 at 12.][12]  Plaintiffs also rely on Defendant
Parker's own records, which listed Expro as a U.S. customer [See
D.E. 257, Exh. G.]  Plaintiffs lastly argue that the contract
between Expro and Parker was governed by U.S. law, which evidences
the domestic nature of the transaction. [See D.E.  257 at 11, 13.]

In considering the First Amended Complaint, the undisputed
facts and the evidence surrounding the purchase of Marine Hose, the
Court concludes that the FTAIA applies.  Here, the transaction
involved foreign entities (i.e., a  Cyprus plaintiff against an
Italian defendant) who contracted for the manufacture, delivery and
payment of Marine Hose—all stages of a transaction taking place
wholly outside of the domestic United States.  While, for purposes
of the FTAIA, the citizenship of the parties is irrelevant, see,
e.g., Turicentro, 303 F.3d at 301 n.5 (noting that foreigners
should also enjoy the protection of the antitrust laws in the
domestic marketplace, just as citizens), the nature of the
transaction is not.  Indeed, were it not for the participation of

---

[12] Plaintiff filed their response under seal although the Manuli
Defendants maintain that the motion need not remain under seal.
[See D.E. 242 at 1 n1.] Consequently, the references herein are to
docket entry 257 which will be unsealed within ten (10) days of
this Order unless the parties otherwise advise.

Expro's Houston office, wherein discussions concerning the purchase and sale of Marine Hose occurred, the transaction here at issue would be more akin to the international transaction underlying <u>Den Norske Stats Oljeselskap AS v. Heeremac VOF</u>, 241 F.3d 420 (5th Cir. 2001).

Specifically, <u>Den Norske</u> involved the claim of a Norwegian plaintiff against English and Dutch defendants for an alleged antitrust conspiracy to raise prices of oil in the United States. <u>Den Norske</u>, 241 F.3d at 421. Plaintiff in <u>Den Norske</u> argued that the injury suffered in the North Sea (the exclusive location of plaintiffs' oil and gas drilling platforms) was a prerequisite for the injury suffered in the United States. <u>Id.</u> at 425. In concluding that the FTAIA applied, the Fifth Court in <u>Den Norske</u> found that the commerce for heavy lift barge services in the North Sea was not United States commerce *with* foreign nations, but commerce *between* or *among* foreign nations and, therefore, it was doubtful "that foreign commercial transactions between foreign entities in foreign waters is conduct cognizable by federal courts under the Sherman Act." <u>Id.</u> at 426 (emphasis in original).

Here, the Expro transaction for Marine Hose is between Expro (a Cyprus corporation) and Parker (an Italian corporation) for Marine Hose that was undisputedly intended for a project in Nigeria. The fact that negotiations may have transpired and/or matters were approved in Expro's Houston, Texas office is

transform this international transaction into one that is domestic in nature. CSR Ltd., 405 F. Supp. 2d at 539 (finding the FTAIA applicable even where some of the alleged actions have some connection to activities in the United States). Ultimately, the evidence overwhelmingly demonstrates that the transaction involves trade or commerce with foreign nations and, therefore, Plaintiffs cannot escape the application of the FTAIA to Expro's antitrust claims.

Since the FTAIA applies, the Court must next turn to whether Expro's claims fall under one of the statutory exceptions. Under the exceptions to the FTAIA, the statute allows a court to hear Sherman Act claims involving non-import trade or non-import commerce with foreign nations only if the challenged conduct *both* (i) sufficiently affects American commerce, *i.e.*, it has a direct, substantial and reasonably foreseeable effect on American domestic, import or certain expert commerce *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the effect must give rise to a Sherman Act claim. Empagran I, 124 S. Ct. at 2365 (emphasis added).

In this case, in analyzing the first element of the statutory exceptions, the relevant provision of the FTAIA is section 6a(1)(B).[13] Section 6a(1)(B) requires a direct, substantial and

---

[13] Plaintiffs do not argue the exception under section 6a(1)(A) (concerning domestic import trade or import commerce) and the Court finds no basis to consider section 6a(1)(A) applicable to the facts

reasonably foreseeable effect on *export* trade or commerce with foreign nations, of a person engaged in such trade or commerce in the United States. 15 U.S.C. § 6a(1)(B) (emphasis added). The body of law concerning the "direct, substantial and reasonably foreseeable" statutory requirement under the FTAIA largely focuses on *import* trade or *import* commerce. See, e.g., Turicentro, 303 F.3d at 302. Nevertheless, to the extent the case law addresses how courts interpret the FTAIA, the Court finds it applicable to this purportedly "exporter" case.

For instance, courts have noted that the "direct, substantial and reasonably foreseeable" test was intended to serve as a simple, straightforward clarification of existing American law. Turicentro, 303 F.3d at 304 (internal quotations and citations omitted). It is the situs of the effects, as opposed to the conduct, that determines whether United States antitrust laws applies. Id. (internal citations omitted); Den Norske, 241 F.3d at 428 (holding that the FTAIA precludes subject matter jurisdiction over claims of foreign plaintiffs against defendants where situs of the injury was overseas and the injury arises from effects in a non-domestic market); see also CSR Ltd., 405 F. Supp. 2d at 526 (rejecting the notion that the direct, substantial and reasonably foreseeable requirement is met were defendant's actions were taken or overseen in the United States). In this case, although

---

of this case.

-13-

Plaintiffs argue that the "export trade exception to the FTAIA [applies] because the transaction was part of the U.S. export market for offshore oil and gas production" [see D.E. 257 at 14], the Court finds that Plaintiffs are hard pressed to prove this contention.

First, this Court finds significant that the allegations in the First Amended Complaint are wholly focused on the "purchase of Marine Hose in the United States." [See D.E. 180 ¶¶ 1, 2, 6, 47, 49.] However, in arguing that an FTAIA exporter exception applies, Plaintiffs interestingly stray away from the market for Marine Hose and argue the transaction at issue between Expro and Defendant Parker was part of the "U.S. export market for *offshore oil and gas production*." [See D.E. 257 at 14.] Plaintiffs then proceed to discuss the importance of Houston, Texas as the center for the export market for offshore oil and gas production services. Id. at 15-16. Unfortunately for Plaintiffs, the market for oil and gas services is not the product at issue in this case. Rather, according to the First Amended Complaint "this lawsuit is a class action on behalf of direct purchasers . . . of *Marine Hose* . . who purchased *Marine Hose* in the United States" from Defendants. [D.E. 180 ¶ 1.][14] Having defined the case as one about the purchase

---

[14] While it is possible for an exporter of services to meet the export trade exception, see e.g., Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 712 (5th Cir. 1999) (concluding that claims of exporter of telecommunications were not barred by FTAIA), this case is not about exporting services. See also Emag

of Marine Hose, Plaintiffs cannot now substitute the relevant market in an attempt to satisfy the FTAIA's requirements. Ultimately, Plaintiffs are unable to meet the statutory exception under section 6a(1)(B) and, therefore, Expro's claims are barred by the FTAIA.

Because the Court finds that Plaintiffs have failed to satisfy the first requirement for an FTAIA exception (*i.e.*, demonstrating a direct, substantial and reasonably foreseeable effect on export trade or commerce with foreign nations), the Court need not address the second requirement of the FTAIA contained in section 6a(2). Suffice it to mention, however, that under section 6a(2), Plaintiffs would also have to prove that the effect on domestic commerce gives rise to an antitrust claim. 15 U.S.C. § 6a(2). Notably, courts addressing this second element have set forth a stringent test. See Empagran I, 124 S. Ct. at 2372 (interpreting section 6a(2) as referring specifically to plaintiff's claim or the claim at issue and not someone else's claim); Dynamic Random Access Memory (DRAM) Antitrust Lit., 546 F.3d 981, 988 (9th Cir. 2008) (holding that the "give rise" language of section 6a(2) requires direct or proximate causal relationship); Den Norske, 241 F.3d 427 (recognizing that notwithstanding a connection between high

_____

Sols., LLC v. Toda Kogyo Corp., 2005 WL 1712084, *11 (N.D. Cal. 2005) (granting a motion to dismiss antitrust claims where plaintiffs failed to allege that foreign plaintiffs were American export competitors).

-15-

domestic prices and high prices overseas, the FTAIA requires more than a "close relationship" between domestic injury and the plaintiff's claim; it demands that the domestic effect "give rise" to the claim); Empagran, S.A. v. F. Hoffman-Laroche, 417 F.32d 1267 (D.C. Cir. 2005) (on remand from Supreme Court, finding antitrust claims of foreign purchasers did not "give rise" to injury under FTAIA).

In sum, the Court finds Expro's claims are barred by the FTAIA and, consequently, this Court does not have subject matter jurisdiction over those claims. It follows that, having found no subject matter jurisdiction over Expro's claims, the Court also finds that Expro is unable to satisfy the requisite antitrust standing. See, e.g., Den Norske, 421 F.3d at 431 n.32. With Expro's claims barred, Bayside is the remaining plaintiff. The discussion as to Bayside follows.

## 2. Bayside's Claims and Standing

The Manuli Defendants challenge Bayside's claims for lack of standing. In order to determine whether a plaintiff has standing to bring an antitrust action, a court must examine the allegations in the complaint. Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1448 (11th Cir. 1991) (citing Austin v. Blue Cross & Blue Shield, 903 F.2d 1385, 1387 (11th Cir. 1990)). Standing in an antitrust case involves more than the "case or controversy" requirement that drives constitutional standing. Id. Rather, antitrust standing is

-16-

best understood in a general sense as a search for the proper plaintiff to enforce the antitrust laws. Id. (internal citations omitted).

The Eleventh Circuit has developed a two-prong test for examining whether a plaintiff is the proper party for antitrust standing. Todorov, 921 F.2d at 1449. Specifically, a court should first determine whether the plaintiff suffered "antitrust injury" and, second, assess whether the plaintiff is an efficient enforcer of the antitrust laws, which requires some analysis of the directness or remoteness of the plaintiff's injury. Id. The party invoking federal jurisdiction bears the burden of proving standing. Each element must be supported in the same as any other matter, i.e., with the same manner and degree of evidence required at the successive stages of the litigation. When standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from defendant's conduct may be sufficient to show standing. Bischoff v. Osceola Cty., 222 F.3d. 874, 878 (11th Cir. 2000) (internal citations omitted).

In this case, the Manuli Defendants contend that Bayside has provided no documentary evidence to prove that it purchased Marine Hose as alleged in the First Amended Complaint. [See D.E. 242 at 17-19.] The Manuli Defendants further contend that the affidavits submitted by Bayside's executive and Bayside's responses to discovery stating that "[Bayside] made multiple purchases during

-17-

the Class Period of Marine Hose" [see D.E. 242-15] are insufficient to meet Plaintiffs' burden. Id. In opposition, Bayside maintains that the sworn statements and pleadings demonstrate it is a direct purchaser of Marine Hose in the United States. Bayside specifically points to two sworn statements of Steve R. Gatlin, Bayside's Vice President, wherein Mr. Gatlin expressly states that "Bayside purchased marine hose up to 10 inches and greater in diameter from one or more of the named Defendants" and further states that "[e]very one of these purchases of marine hose was invoiced and paid for in the United States."[15] [See D.E. 257, Exhs. B and C.]

While the Manuli Defendants attempt to undermine the evidence submitted concerning the alleged purchases by Bayside of Marine Hose, the Court finds that Bayside has met its burden on standing. First, the Court considers the First Amended Complaint, which expressly alleges that Plaintiffs are "all persons . . . who purchased Marine Hose in the United States from Defendants." [See D.E. 180 ¶ 47.] Taking the allegations of the First Amended Complaint as true, Bayside has alleged antitrust standing. The Court also considers persuasive the sworn statements as Mr. Gatlin who unequivocally states that, despite the inability to locate

---

[15] Mr. Gatlin also states that although he has attempted to locate invoices for the purchases, he has been unable to do so and that in the normal course of business, invoices from the mid-to-late 1980's were not retained by Bayside. [See D.E. 257 at Exh. B.]

invoices for the purchases, Bayside purchased Marine Hose during the relevant period.[16] [See D.E. 257 at Exhs. B and C.] There is no basis for this Court to disbelieve such evidence. Lastly, and more importantly, as an allegedly direct purchaser of Marine Hose, the Court finds that Bayside's antitrust injury cannot be more direct. Consequently, at this juncture of the litigation, the Court must deny the motion to dismiss challenging Bayside's standing in this antitrust litigation.[17]

In sum, the Court finds that Bayside has met its burden to establish antitrust standing. Therefore, the motion to dismiss for lack of subject matter jurisdiction as to Bayside is denied and this litigation may proceed on Bayside's claims.[18]

## B. Defendant Scaglia's Motion to Dismiss [D.E. 98, 184]

Defendant Francesco Scaglia, an Italian citizen, seeks dismissal of the First Amended Complaint on several grounds,

---

[16] While a trier of fact may later conclude otherwise with respect to Mr. Gatlin's statements, at this stage of the litigation, this Court has no reason to doubt Mr. Gatlin's submissions and declines to do so solely because Bayside has been unable to locate invoices for transactions going back more than twenty years.

[17] The Manuli Defendants alternatively move for summary judgment on Bayside's claims. [See D.E. 242 at 17 n.6.] Because the Court finds that Bayside has satisfied standing for purposes of the motion to dismiss, the Court declines to reach the summary judgment arguments.

[18] Bayside is the sole remaining Plaintiff. Notably, however, Plaintiffs have separately filed a motion for class certification under Federal Rule of Civil Procedure 23 that may impact the ultimate number of plaintiffs in this action. The Court will separately dispose of that motion in due course.

-19-

including, <u>inter alia</u>, lack of personal jurisdiction, insufficient service of process, failure to state a claim and lack of subject matter jurisdiction. [<u>See</u> D.E. 98 at 1 and 184 at 2.] Plaintiffs filed opposition [D.E. 114] and Defendant Scaglia filed a reply [D.E. 121].[19]

Of primary concern is Defendant Scaglia's request that this Court quash service of the summons and complaint pursuant to Rule 12(b)(4) and (5). Defendant Scaglia maintains that, when served with the First Amended Complaint, he was exempt from the service of civil process because he was attending court in this District in connection with the antitrust criminal charges against him.[20] [<u>See</u> D.E. 98 at 12.] As an initial matter, the Court notes that because Scaglia was personally served in Florida with the summons and complaint, Florida statute section 48.031 creates personal jurisdiction. <u>See</u> Fla. Stat. § 48.031(1)(a) ("Service of original process is made by delivering a copy of [the complaint, petition, or other initial pleading] to the person to be served."); <u>see also</u> <u>Campo v. Tafur</u>, 704 So.2d 730, 732 (Fla. Dist. Ct. App. 1998) (finding service was perfected when defendant personally served while visiting jurisdiction).

---

[19] Defendant Scaglia also joined in the Manuli Defendants' motion to dismiss for lack of subject matter jurisdiction [D.E. 243], which was disposed of in Section A of this Order.

[20] According to Defendant Scaglia, although initially arrested in Houston, Texas, he was ordered to appear in this District for proceedings in the antitrust criminal prosecution. [<u>See</u> D.E. 7.]

Nevertheless, the Court must consider Defendant Scaglia's argument on immunity from service of process because it is undisputed that he was served while in this District for the separate criminal prosecution. In this regard, <u>Stewart v. Ramsay</u>, 242 U.S. 128 (1916), holds that "suitors as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going." <u>Stewart</u>, 242 U.S. at 129. Significantly, however, Plaintiffs correctly contend that Defendant Scaglia is not entitled to immunity from service of process when this case arises out of the same misconduct at issue in the criminal proceedings that brought him to this district. <u>See</u>, <u>e.g.</u>, <u>ARW Exploration Corp. v. Aguirre</u>, 45 F.3d 1455, 1460 (10th Cir. 1995) (finding that defendant was not immune from service of process when the court action wherein he was served related to the same arbitration matter that he was attending); <u>see</u> <u>also</u> 4A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1080 (2008) (noting that "[there is generally no immunity from service of process when the suit in which the immunity is sought is part of, or a continuation of, the suit for which the person claiming immunity is in the jurisdiction."). Ultimately, the Court must

-21-

deny Defendant Scaglia's request to quash service of the civil summons and complaint.[21]

Lastly, the Court considers Defendant Scaglia's request for dismissal pursuant to the Supreme Court's precedent in Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955 (2007). In connection therewith, Defendant Scaglia emphasizes that, according to the First Amended Complaint, he attended only one May 2007 meeting during which federal agents arrested several corporate executives. [See D.E. 180 ¶ 68.] With the exception of that one specific allegation, Defendant Scaglia argues that the remaining general allegations of a conspiracy are insufficient to state a claim.

As discussed in section C below, Plaintiffs have alleged sufficient facts of an overall antitrust conspiracy, but fail to allege how Defendant Scaglia (and others) joined the conspiracy. While a complaint attacked by Rule 12(b)(6) does not need detailed factual allegations, see Twombly, 127 S. Ct. at 1964, general allegations as to all of the Defendants are insufficient. See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig., 2008 WL 3916309, *4 (N.D. Cal. 2008); In re Parcel Tanker Shipping Servs. Antitrust

---

[21] Having found Defendant Scaglia was properly served via personal service under Florida statute section 48.031, the Court concludes that it has obtained personal jurisdiction over him. Campo, 704 So.2d at 732. Consequently, the Court need reach the alternative arguments concerning jurisdiction pursuant to Florida's long arm statute, section 48.193. [See D.E. 98 at 10-12 and D.E. 114 at 7-12.]

Litig., 541 F. Supp 2d 487, 491-92 (D. Conn. 2008). Here, Defendant Scaglia is alleged to have attended a May 1, 2007 meeting in Houston, Texas, for the purpose of carrying out the conspiracy [D.E. 180 ¶ 68].[22] Mere attendance at one meeting within a twenty-plus year conspiracy, without more, is insufficient. Consequently, the Court must grant Defendant Scaglia's motion to dismiss. However, the Court will grant leave to amend (within ten days) the First Amended Complaint to allow Plaintiffs an opportunity to specifically allege the violative conduct undertaken by Defendant Scaglia.

Lastly, Defendant Scaglia joined in the motion to dismiss based on subject matter jurisdiction. [See D.E. 98 at 19-20 and D.E. 243]. As set forth in section A above, the claims against all Defendants (including Scaglia) are dismissed to the extent that the FTAIA bars Expro's antitrust claims. In sum, Defendant Scaglia's motion to dismiss is granted as set forth herein.

## C.  Defendant Val M. Northcutt's Motion to Dismiss [D.E. 95, 193]

Defendant Val M. Northcutt seeks dismissal of the First Amended Complaint arguing, inter alia, that Plaintiffs have failed to sufficiently allege an antitrust violation against him

---

[22] Plaintiffs also allege that Defendant Scaglia was criminally charged with conspiring to suppress and eliminate competition for Marine Hose in the United States. [See D.E. 77]. The Court finds that a general allegation of a criminal indictment without underlying details as to the specific acts purported taken by the Defendant is of no consequence to the sufficiency of the complaint.

individually.[23] [See D.E. 9, 193.]  Plaintiffs filed opposition
[D.E. 110, 228].  Defendant Northcutt filed a reply [D.E. 119] and
a notice of supplemental authority [D.E. 267].[24]

Defendant Northcutt's motion to dismiss under Rule 12(b)(6) is
largely premised on Bell Atlantic Corporation v. Twombly, 127 S.
Ct. 1955 (2007), the Supreme Court decision discussing the pleading
standard in motions to dismiss generally and, more specifically, in
price-fixing conspiracy class actions.  Twombly, 127 C. St. 1955.
Twombly provides, in relevant part, that "while a complaint
attacked by a Rule 12(b)(6) motion to dismiss does not need
detailed factual allegations, a plaintiff's obligation to provide
the grounds of his entitlement to relief requires more than mere
labels and conclusions, and a formulaic recitation of the elements
of a cause of action will not do."  127 S. Ct. 1964-65 (internal
quotations and citations omitted).  Factual allegations must be
enough to raise a right to relief above the speculative level on
the assumption that all of the allegations in the complaint are

---

[23] Defendant Northcutt also joined in the Manuli Defendants' motion
to dismiss for lack of subject matter jurisdiction [D.E. 297],
which was disposed of in Section A of this Order. The record also
indicates that Defendant Northcutt incorporated by reference the
arguments of other Defendants seeking dismissal on various grounds.
[See D.E. 106-109, 297.]  To the extent not addressed in this
section, the relevant issues are disposed of as discussed in
connection with other Defendants in this action.

[24] According to the notice of supplemental authority [D.E. 267],
Defendant Northcutt was found not guilty in the antitrust criminal
proceedings, Case No. 07-60220-CR-HURLEY (S.D.Fla. Nov. 10, 2008).

true (even if doubtful in fact). <u>Id.</u> Moreover, Sherman antitrust claims require a complaint with enough factual matter (taken as true) to suggest that an agreement was made. <u>Id.</u> at 1966. Indeed, "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreements reflects the threshold requirement of Rule 8(a)(2) that the plain statement possess enough heft to show that the pleader is entitled to relief." <u>Id.</u> at 1966.

In this case, Defendant Northcutt stresses that, although Plaintiffs have filed an 80-paragraph amended complaint, he is only mentioned three times throughout the pleadings.[25] In opposition, Plaintiffs maintain that, given the totality of allegations in the First Amended Complaint, the Court can infer that Defendant Northcutt participated in the conspiracy and Plaintiffs need not present particularized allegations. [<u>See</u> D.E. 110 at 8-9.]

After a careful review of the First Amended Complaint, the Court finds that Plaintiffs have sufficiently plead the alleged antitrust conspiracy so as to satisfy the "plausible inference of an agreement" for purposes of <u>Twombly</u>.[26] 127 S. Ct. at 1965-66; <u>see</u>,

---

[25] Defendant Northcutt is alleged to be an "executive at Defendant Manuli Rubber Industries," [D.E. 180 ¶ 38] who was indicted by the government and charged with conspiring to suppress and eliminate competition for Marine Hose in the United States [D.E. 180 ¶ 77].

[26] Plaintiffs specifically allege, <u>inter alia</u>, that the Defendants did the following: (i) in 1999, authorized and directed PW Consulting and Whittle to coordinate the Defendants' conspiratorial activities, paying them approximately $300,000 [D.E.180 ¶ 58];

e.g., In re OSB Antitrust Lit., 2007 U.S. Dist. LEXIS 56573, *9 (E.D. Pa. 2007) (denying motion to dismiss where plaintiffs allegations plausibly raised the suggestion of an agreement, in violation of the antitrust laws). Nevertheless, while a complaint need not be detailed defendant by defendant, see, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig., 2008 WL 3916309, *4 (N.D. Cal. 2008), Plaintiffs have failed to allege that each individual Defandant joined the conspiracy and played some role. Id. Given the allegations of an international conspiracy, spanning more than twenty years, including more than ten corporations and numerous executives, the Court is concerned that general allegations as to all defendants are insufficient to provide notice of the claims.

Plaintiffs may have realized the deficiencies when, as an argument of last resort against dismissal as to Defendant Northcutt, they requested leave to amend the complaint to cure any deficiencies. [See D.E. 110 at 15 n.16.] Pursuant to Federal Rule of Civil Procedure 15(a), the Court may give leave to amend when justice so requires. Fed. R. Civ. P. 15(a). Given the Court's concerns and lack of individualized allegations, the Court will grant Plaintiffs leave to amend (within ten days) the First Amended Complaint to more specifically plead how Defendant Northcutt (and

---

(ii) devised code names to conceal their involvement in the conspiracy . . .referring to the cartel as "the club or the "Technical Committee-Marine Hose" and (iii) held meetings in June 2000 (Key Largo), December 2000 (Bangkok), July 2002 (London) and May 2007 (Houston, Tx).

others) joined the alleged price-fixing conspiracy. See e.g., Flat Panel Antitrust Litig., 2008 WL 3916309, at *4 (finding that although purchasers satisfied pleading requirements for conspiracy claims under the Sherman Act, the court would grant leave to amend the complaint to more specifically plead as to the individual defendant).[27]  In sum, Defendant Northcutt's motion to dismiss is granted, but Plaintiff is allowed leave to amend (within ten days) the First Amended Complaint to cure any deficiencies.

**E.  Defendant Robert Lewis Furness's Motion to Dismiss [D.E. 219]**

Similar to the arguments made by Defendant Northcutt and others, Defendant Robert Lewis Furness seeks dismissal of the First Amended Complaint arguing, inter alia, that Plaintiffs have failed to sufficiently allege an antitrust violation by him individually.[28] [See D.E. 219.]  Plaintiffs filed opposition [D.E. 251].  Similar

---

[27] In opposing the Comital Defendants motion to dismiss, discussed infra in section G, Plaintiffs attempt to distinguish the ruling in In re TFT-LCD (Flat Panel) Antitrust Litig., 2008 WL 3916309, *4 (N.D. Cal. 2008) as against the weight of authority [see D.E. 322 at 7-8].  Because the standard for antitrust pleadings at the motion to dismiss stage is still developing, the Court does not find the In re TFT-LCD decision entirely off the mark and, on the facts of this case, finds it persuasive.

[28] Defendant Furness also joined in the Manuli Defendants' motion to dismiss for lack of subject matter jurisdiction [D.E. 298], which was disposed of in Section A of this Order. Defendant Furness also incorporates by reference the arguments raised by other defendants. [See D.E. 219 at 3 and D.E. 298.]  To the extent not addressed in this section, the relevant issues are disposed of as discussed in connection with the motions of other Defendants.

to the other individual Defendants, the Court believes that Defendant Furness is entitled to relief.

As noted above, the Court finds that the First Amended Complaint meets the Twombly pleading requirements in so far as the allegations lead to the plausible inference of the existence of antitrust conspiracy. Twombly, 127 S. Ct. at 1965-66. Additionally, with respect to Defendant Furness, Plaintiffs have also alleged that Defendant Furness plead guilty to criminal charges for his role in the conspiracy. [See D.E. 180 ¶ 83.][29] Specifically, the First Amended Complaint alleges that "[o]n July 28, 2008 . . . Defendants Manuli Rubber Industries SpA and its former President, Furness had agreed to plead guilty to the criminal charges" . . . and Furness agreed to serve 14 months in prison and pay a $75,000 criminal fine. [See D.E. 180 ¶ 83.] Some courts have found that guilty pleas by defendants support an inference of participation in the conspiracy. See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig., 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (denying a motion to dismiss claims of an antitrust conspiracy where certain defendants plead guilty to criminal conduct). Here, however, the Court finds that the general allegation that Defendant Furness has agreed to plead guilty and serve jail time does not allege the particular conduct that he was

---

[29] Although the First Amended Complaint is misnumbered, paragraph 83 refers to that appearing on page 17 of docket entry 180.

admitting. In other words, the allegation stops short of providing the underlying details of Defendant Furness's conduct. Based on the foregoing, the Court grants Defendant Furness's motion to dismiss and allows Plaintiff leave to amend the complaint to cure the deficiencies noted herein.

## F.   Defendant Gillespie's Motion to Dismiss [D.E. 262]

Defendant Charles J. Gillespie seeks to dismiss the First Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. [See D.E. 262.]  Plaintiff filed opposition [D.E. 277] and Defendant Gillespie filed a reply [D.E. 295].[30]

To the extent Defendant Gillespie challenges the First Amended Complaint on the basis of the FTAIA, his motion is granted as discussed in section A, *supra*.   To the extent that Defendant Gillespie seeks dismissal of the antitrust claims based on Twombly and the requisite pleading standards, the Court finds that he is also entitled to relief.

As discussed above, the First Amended Complaint has sufficiently plead a plausible antitrust conspiracy overall.  With regard to specific allegations as to Defendant Gillespie, however, he is alleged to have plead guilty to criminal charges. [See D.E.

---

[30] Defendant Gillespie also joined in the Manuli Defendants' motion to dismiss for lack of subject matter jurisdiction [D.E. 262 at 2], which was disposed of in Section A of this Order.

-29-

180 ¶ 82.]  Without more, a guilty plea is insufficient since Plaintiffs have failed to allege what specific conduct Defendant Gillespie has purportedly admitted in his plea, which would subject him to civil liability in this case.  In sum, the Court must grant Defendant Gillespie's motion to dismiss, but allows Plaintiffs leave to amend the complaint in order to cure the deficiencies discussed herein.

## G.  Defendants I.T.R., SAIGA S.p.A. and Comital Saiga S.p.A.'s Motion to Dismiss [D.E. 301]

Defendants ITR, S.p.A., SAIGA, S.p.A. and Comital SAIGA, S.p.A. (collectively, the "Comital Defendants") filed a motion to dismiss the First Amended Complaint contending, inter alia, that (i) Plaintiffs fail to allege a connection between the Comital Defendants and the alleged conspiracy and (ii) the First Amended Complaint fails to satisfy the pleading standard set forth in Twombly. [See D.E. 301].  Plaintiffs filed opposition [D.E. 322] and the Comital Defendants filed a reply [D.E. 334].

Similar to other Defendants, the Comital Defendants argue that, despite numerous allegations against "Entity Defendants" concerning a conspiracy spanning over two decades, Plaintiffs in this case have failed to sufficiently allege an antitrust conspiracy specifically as against the Comital Defendants.  The Comital Defendants note that, other than being listed as one of the "Entity Defendants," the First Amended Complaint contains no other

-30-

mention of the Comital Defendants or their employees. [See D.E. 301 at 3.]

After a careful review of the First Amended Complaint, the Court finds that it is insufficient as to the individual actions of the Comital Defendants. While Plaintiffs correctly contend that the complaint need not contain defendant by defendant allegations, at a minimum, Plaintiffs must allege that each individual defendant joined the conspiracy and played some role in it. See, e.g., USB Antitrust Litig., 2007 U.S. Dist. LEXIS 565573, *13 (E.D. Pa. 2007). Plaintiffs here have made not such allegations against the Comital Defendants. Furthermore, unlike instances concerning other Defendants where Plaintiffs have identified employees and attendance at specific meetings and their conduct, there are no such allegations as to the Comital Defendants. Consequently, the Court must grant the Comital Defendants' motion to dismiss to the extent Plaintiffs have failed to allege any particular conduct as to the Comital Defendants. Based thereon, the Court will allow Plaintiffs leave to amend (within ten days) the First Amended Complaint to cure any deficiencies.

## H.  Settling Defendants' Motions to Dismiss

In addition to the motions discussed above, there are pending motions to dismiss of Defendants who have entered into proposed settlements with Plaintiffs (collectively, the "Settling

-31-

Defendants").[31]  Because Plaintiffs have filed an Amended Motion for Preliminary Approval of Proposed Settlements with the Settling Defendants [D.E. 301], at this time, the Court will refrain from determining on the merits the motions to dismiss of the Settling Defendants.    Instead, the Court denies without prejudice the Settling Defendants' respective motions to dismiss.  In the event that the proposed settlement is not approved, the Settling Defendants may renew their motions to dismiss and the Court will reconsider the matter as necessary and appropriate.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant Manuli's Motion to Dismiss for Lack of Subject Matter Jurisdiction [D.E. 242] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.  The claims of Expro are barred by the FTAIA.  Consequently, this Court lacks subject matter jurisdiction over Expro's claims and they are hereby dismissed.  To the extent that other Defendants have joined in this motion [D.E. 243, 297, 298], the joining Defendants are afforded the same relief.  It is further

---

[31]  The Settling Defendants include the following: (i) Dunlop Oil & Marine, Ltd., Bryan Allison and David Brammar; (ii) Trelleborg Industries S.A. and Jacques Cognard; (iii) The Yokohama Rubber Co, Ltd.; (iv) Parker ITR S.R.L., Parker Hannifin and Giovanni Scodeggio; and (v) Bridgestone Corporation, Bridgestone Industrial Products America and Misao Hioki. [See D.E. 319.]

-32-

**ORDERED AND ADJUDGED** that Defendant Francesco Scaglia's Motion to Dismiss [D.E. 98, 184] is **GRANTED** as set forth herein. It is further

**ORDERED AND ADJUDGED** that Defendant Val M. Northcutt's Motion to Dismiss [D.E. 95, 193] is **GRANTED** as set forth herein. It is further

**ORDERED AND ADJUDGED** that Defendant Robert Furness's Motion to Dismiss Consolidated Complaint [D.E. 219] is **GRANTED** as set forth herein. It is further

**ORDERED AND ADJUDGED** that Defendant Charles J. Gillespie's Motion to Dismiss [D.E. 262] is **GRANTED** as set forth herein. It is further

**ORDERED AND ADJUDGED** that Defendants I.T.R., SAIGA S.p.A. and Comital Saiga S.p.A.'s Motion to Dismiss [D.E. 301] is **GRANTED** as further set forth herein. It is further

**ORDERED AND ADJUDGED** that within ten (10) days from the date of the entry of this Order, Plaintiffs shall file an amended consolidated complaint in accordance with this Order. It is further

**ORDERED AND ADJUDGED** that the following motions are **DENIED WITHOUT PREJUDICE**: (i) Bridgestone Corporation's Motion to Dismiss [D.E. 191] and (ii) Trelleborg Industries S.A. and Jacques Cognard Motion to Dismiss [D.E. 207].

**DONE AND ORDERED** in Chambers at Miami, Florida, this $28\frac{th}{}$ day

of January, 2009.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:  Counsel of Record