UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE NEW JERSEY TAX SALES CERTIFICATESANTITRUST LITIGATION** | Master Docket No. 12-1893(MAS)(TJB)<br><br>ORAL ARGUMENT REQUESTED |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MTAG SERVICES, LLC'S MOTION TO DISMISS

Aytan Y. Bellin
Bellin & Associates LLC
85 Miles Avenue
White Plains, NY 10606

  -and-

Jeffrey M. Eilender
John M. Lundin
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004

*Counsel for Defendant
MTAG Services, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 3

I.     PLAINTIFFS CONCEDE THAT THERE IS NO ALTER
       EGO LIABILITY HERE ........................................................................... 3

II.    PLAINTIFFS CONCEDE THAT THE COMPLAINT FAILS
       TO ALLEGE CONSOLIDATION, DE FACTO MERGER,
       MERE CONTINUATION OR FRAUDULENT TRANSACTION
       LIABILITY ............................................................................................... 5

III.   MTAG DID NOT EXPRESSLY OR IMPLIEDLY ASSUME
       MOORING'S LIABILITIES ..................................................................... 6

       A.     The Motion Is Properly Decided On The Pleadings ...................... 6

       B.     The APA And The Indemnity Agreement Provide For
              Indemnification And Not For A True Assumption
              Of Liabilities ................................................................................. 9

              1.     The Sale Of All The Assets Is A Threshold
                     Requirement For Secondary Liability ................................ 9

              2.     Under The APA, MTAG Did Not Assume Any Liability ........ 10

       C.     The No-Third Party Beneficiary Clause Precludes A Direct
              Suit By Plaintiffs ......................................................................... 14

IV.    IN THE ALTERNATIVE, THE COURT SHOULD BIFURCATE THE
       ISSUE OF MTAG'S DERIVATIVE LIABILITY, AND STAY ANY
       FURTHER PROCEEDINGS AGAINST MTAG PENDING
       ADJUDICATION OF THE CLAIMS AGAINST MOORING TAX ......... 15

       CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

*Alcoa v. Beazer East, Inc.*,
    124 F.3d 551 (3d Cir. 1997) ...................................................................................13

*Amalgamated Consultants Ltd. v. De Savary*,
    1985 WL 3044 (S.D.N.Y. Oct. 8, 1985).........................................................................5

*Burneagle Coal & Coke Corp. v. Henritze*,
    139 Va. 422, 124 S.E. 224 (1924) ................................................................................13

*Capital Investment Funding, LLC v. Lancaster Resources, Inc.*,
    2009 WL 1748984 (D.N.J. June 19, 2009).......................................................................4

*Coyer v. Hemmer*,
    901 F.Supp. 872 (D.N.J. 1995)........................................................................................5

*De Angelis v. Smith*,
    95 N.Y.S.2d 52 (Sup. Ct. N.Y. Co. 1949).....................................................................12

*Dent v. Beazer Materials & Services*,
    156 F.3d 523 (4th Cir. 1998) ........................................................................................13

*Dukas v. Davis Aircraft Products Co., Inc.*,
    131 A.D.2d 729, 516 N.Y.S.2d 781 (2d Dep't 1987) ....................................................9

*Furman v. Cirrito*,
    828 F.2d 898 (2d Cir. 1987) ...........................................................................................8

*Girard v. Allis Chalmers Corp., Inc.*,
    787 F. Supp. 482 (W.D. Pa. 1992) ...............................................................................11

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997) .........................................................................................8

*In re Donald J. Trump Casino Securities Litigatin - Taj Majal Litigation*,
    7 F.3d 357 (3d Cir. 1993) ...............................................................................................7

*In re Stone & Webster, Inc.*,
    558 F.3d 234 (3d Cir. 2009) .........................................................................................14

*Liberty Mutual Insurance Co. v. Household International*,
    136 F.Supp.2d 5 (D. Mass. 2001)................................................................................14

C:\USERS\PWILLU~1\APPDATA\LOCAL\TEMP\WDGX\2620\OPEN\0001\Tables Conts Auths. R.MOL-F.Suppt-Mtn2Dismiss-Bifurcate. 07-02-2013 (00132278).DOC

*Lindsey v. Prive Corp.*,
    161 F.3d 886 (5th Cir. 1998) .........................................................................15

*Lum v. Bank of America*,
    361 F.3d 217 (3d Cir. 2004) ...........................................................................8

*Marathon Oil Co. v. Texas City Terminal Railway Co.*,
    164 F.Supp.2d 914 (S.D. Tex. 2001).......................................................... 4-5

*North American Dealer Co-Op v. Interstate Indemnity Co.*,
    180 F. App'x 326 (3d Cir. 2006).....................................................................8

*Pennbarr Corp. v. Insurance Company of North America*,
    976 F.2d 145 (3d Cir. 1992) ...........................................................................9

*Sahu v. Union Carbide Corp.*,
    418 F. Supp. 2d 407 (S.D.N.Y. 2005) .............................................................5

*Skelton v. Lowen*,
    850 F.2d 200 (4th Cir. 1988) .......................................................................13

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*,
    181 F.3d 410 (3d Cir. 1999) ...........................................................................8

*Squires Golf Club v. Bank of America*,
    2010 WL 2813340 (E.D. Pa. 2010)................................................................8

*UMAC, Inc. v. Aqua-Gas AVK Ltd.*,
    2005 WL 742497 (E.D. Pa. Mar. 30, 2005) ...................................................9

## RULES, CODES, STATUTES AND OTHER AUTHORITIES

F.R.C.P. Rule 9(b).................................................................................3, 4, 5

F.R.C.P. Rule 12(b)(1) .................................................................................7

F.R.C.P. Rule 12(b)(6) ...........................................................................1, 6, 7

F.R.C.P. Rule 56 ..........................................................................................6

C:\USERS\PWILLU~1\APPDATA\LOCAL\TEMP\WDGX\2620\OPEN\0001\Tables Conts Auths. R.MOL-F.Suppt-Mtn2Dismiss-Bifurcate. 07-02-2013 (00132278).DOC

MTAG Services LLC ("MTAG") respectfully submits this reply memorandum of law in further support of its motion: (a) pursuant to Rule 12(b)(6) to dismiss the Complaint for failure to state a claim and as barred by the applicable statute of limitations; and (b) in the alternative, to bifurcate and stay the claims against MTAG until the liability of Defendant Mooring Tax Asset Group, LLC ("Mooring Tax") is finally determined.[1]

## PRELIMINARY STATEMENT

Plaintiffs misconstrue their own Complaint.  The Amended Complaint does not allege any primary liability against MTAG, but only "successor" liability—that is derivative liability—of Defendant Mooring Tax.  Thus, in Plaintiffs' own view of this case MTAG did not participate in the conspiracy (indeed as alleged in the Amended Complaint it did not even exist until the conspiracy and all its bad acts had ended), and MTAG is liable only if Mooring Tax is liable.  Under this theory, then, MTAG is not a proper party for merits discovery in this case, inasmuch as MTAG and Plaintiffs all agree that MTAG was not an actor in the events of this case.  Thus, there is no reason why MTAG should be subject to discovery concerning the antitrust and state law claims.  Plaintiffs have no answer to the authority directly on point holding that successorship and merits claims should be

---

[1] MTAG's motion incorporates by reference the Reply Joint Defense Brief and the Reply Memorandum of Law of Mooring Tax Asset Group, LLC.

bifurcated.   Thus, it is clear that the case against MTAG should be stayed, if MTAG is not actually dismissed now.

And in fact, MTAG should be dismissed.  Plaintiffs concede by their silence that they have not alleged an alter-ego claim and from the outset that they do not satisfy three out of the four exceptions to the prohibition under Virginia law for successor liability in an asset sale.

The only point that Plaintiffs attempt to contest is the fourth possible exception—the express assumption by the purchaser of all of the liabilities of the seller.  But even on this point there can be no real argument.  As an initial matter, none of the four exceptions can be considered unless all or substantially all of the assets are acquired; here, less than 1% of Mooring Tax's assets were transferred to MTAG. As to the fourth exception, moreover, even the cases relied upon by Plaintiffs (which include controlling Third Circuit precedent) hold that, however labeled, a contractual provision does not assume liability if it provides that one party to the contract pays the other party to the contract after the entry of judgment. Rather, such a provision is construed to be for indemnification only.

Here, the Asset Purchase Agreement ("APA") between MTAG and Mooring Tax under which MTAG purchased a small percentage of Mooring Tax's assets demonstrates that MTAG did not **assume** any liabilities, but rather only agreed to **indemnify** Mooring Tax.  The provision upon which Plaintiffs rely to argue for

assumption provides for the payment by MTAG to Mooring Tax (not to Plaintiffs or any other Third-Parties) of 27% (not the entire liability) of an amount assessed against Mooring Tax by a judgment.  Thus, by necessity the payment of the less than 1/3 of the liability comes after the judgment.  This is clearly an indemnification provision.

Accordingly, the motion to dismiss should be granted.  If the Court is disinclined to stay this case against MTAG until Mooring Tax's liability, if any, is determined, and to the extent that the Court finds that there is any issue of fact regarding whether MTAG assumed the liabilities of Mooring Tax, we ask that the Court stay merits discovery as to MTAG and order expedited discovery and a hearing solely directed to that issue so that MTAG's potential derivative liability but can be addressed promptly, thus sparing it the time and expense of defending a case on the merits that it has nothing to do with.

**ARGUMENT**

## I.     PLAINTIFFS CONCEDE THAT THERE IS NO ALTER EGO LIABILITY HERE

MTAG's opening brief demonstrated that the cause of action to hold MTAG liable as the alter ego of Mooring Tax (consisting of half a sentence bereft of any detail) must be dismissed because the Amended Complaint fails to satisfy the heightened pleading standards of F.R.C.P. 9(b) with respect to the alter ego allegations.  Indeed, the Amended Complaint failed to allege *any* of the factors

3

Virginia courts use to evaluate potential alter ego liability.  *See* Op. Br. at 22 (listing factors).

In response, Plaintiff does not dispute the applicability of the heightened F.R.C.P. 9(b) standard; nor do they dispute the authorities cited by MTAG that their failure to allege any specific facts establishing any of the above factors means that the alter-ego claim must be dismissed now, at the pleading stage. Nevertheless, Plaintiffs' ask for further discovery because the motion to dismiss is "premature", *see* Op. Br. at 21.  But that response entirely misses the point.  As set forth in MTAG's opening brief, in the post-*Twombly* era a complaint seeking to impose alter-ego liability cannot survive a motion to dismiss—particularly in the face of 9(b) scrutiny—simply by depending on further discovery.  Quite the contrary: from the outset, the complaint must merit subjecting the defendants to the cost and burden of discovery in order to survive.  *See, e.g., Capital Inv. Funding, LLC v. Lancaster Res., Inc.*, 2009 WL 1748984, at *5 (D.N.J. June 19, 2009) granting motion to dismiss because "Plaintiff does not allege how Caserta, Katz or Ender exercised dominion or control over LRI or how any of them abused the corporate form to perpetrate fraud or injustice.").

The two pre-*Twombly* cases on which Plaintiffs rely are therefore irrelevant. *See Marathon Oil Co. v. Tex City Terminal Ry. Co.*, 164 F. Supp. 2d 914, 917 (S.D. Tex. 2001) (applying pre-*Twombly* standard requiring a motion to dismiss be

denied unless it "appears without a doubt that the Plaintiff can prove no set of facts in support of the claims"); *Sahu v. Union Carbide Corp.*, 418 F.Supp.2d 407, 415-16 (S.D.N.Y. 2005) (allowing extra time on *summary judgment* motion to conduct discovery on veil piercing).  Worse for Plaintiff, the *Sahu* district court adopted the remedy MTAG seeks here in the alternative.  That is, a stay of the case and limited, narrowly tailored discovery on the veil piercing allegations alone.  *Id.* at 416 ("Plaintiffs are granted sixty days for additional discovery related *exclusively* to this issue.").  Thus, the alter ego allegation, for which there is no basis in the Complaint, must be dismissed.  Even before *Twombly*, moreover, most cases required alter-ego allegations to satisfy Rule 9(b).  *See, e.g., Coyer v. Hemmer*, 901 F. Supp. 872, 883 (D.N.J. 1995) ("evaluat[ing] defendants' [alter ego] claims pursuant to Rule 9(b)"); *Amalgamated Consultants Ltd. v. De Savary*, 1985 WL 3044, at \*11 (S.D.N.Y. Oct. 8, 1985) ("ACL's mere assertion in the Amended Complaint that Corta is an 'alter ego' of de Savary does not support the securities claim lodged against it").

## II.     PLAINTIFFS CONCEDE THAT THE COMPLAINT FAILS TO ALLEGE CONSOLIDATION, DE FACTO MERGER, MERE CONTINUATION OR FRAUDULENT TRANSACTION LIABILITY

Plaintiffs does not contest that Virginia law governs successor liability. *See* Op. at n. 2. MTAG's opening brief detailed how Plaintiffs had not adequately alleged successor liability under the "mere continuation", "de facto merger", or

5

"fraudulent transaction" exceptions to the Virginia general rule that purchasers of assets are not liable for the seller's liability. Plaintiffs' opposition does not even address those arguments—other than to wrongly claim that MTAG argued that Plaintiffs had to meet "all four prongs" of the liability rule. *See* Op. at 2. MTAG's opening brief said nothing of the sort but rather made clear that a plaintiff must "allege specific facts showing that **one of the four** exceptions to the general rule applied. *See* MTAG Br. at 27. Plaintiffs did not sufficiently allege **any** of the four exceptions to the general non-liability rule—they fail to allege express assumption for the reasons set forth below, and have conceded that the other three prongs of the test do not apply.

## III. MTAG DID NOT EXPRESSLY OR IMPLIEDLY ASSUME MOORING'S LIABILITIES

### A. The Motion Is Properly Decided On The Pleadings

Plaintiffs claim that the APA and the Indemnity Agreement cannot be considered in a Rule 12(b)(6) motion because they are materials outside the pleadings, and therefore that MTAG's motion must be converted to summary judgment under Rule 56. That argument, however, is at odds with the rest of Plaintiffs' brief. The only possible basis on which Plaintiffs can assert claims against MTAG is through MTAG's alleged express assumption of Mooring Tax's liabilities under the APA. That is because, as explained above, Plaintiffs have conceded all other possible bases of successor liability. In that context, the APA

6

and the Indemnity Agreement are necessarily the foundation of the Complaint. Indeed, even though they did not attach it to their Amended Complaint, the sole argument that Plaintiffs make for successor liability is their citation to Section 4 of the APA.  *See* Op. at 9. Thus, because Plaintiffs explicitly rely on that agreement (indeed quote from it) to establish liability, MTAG may predicate a motion to dismiss on this document. *See, In re Donald J. Trump Casino Sec. Litig.-Taj Majal Litig.,* 7 F.3d 357, 368 (3d Cir. 1993) (dismissing complaint based on document attached to motion to dismiss, because "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

In a similar case, on a Rule 12(b)(6) motion, the Second Circuit analyzed contracts not attached to the Complaint because they were central to the plaintiff's allegations:

> Although appellees' motion was made under Rule 12(b)(1) and (6), the record before us consists of more than just the complaint.  Specifically, it includes the partnership agreement, which spells out the rights and obligations of the parties, the contract for the sale of the partnership assets, whose terms appellants claim were unfair, and affidavits of counsel for both sides.  The district court might have treated the motion as one for summary judgment.  Despite its failure to do so, we nonetheless may refer to the partnership agreement and contract of sale, which are integral parts of appellants' claim and of the record before us.

*See Furman v. Cirrito*, 828 F.2d 898, 900 (2d Cir. 1987).

7

*See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (a plaintiff "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."); *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (same) *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999) (a document referenced in a complaint may be examined "to see if it contradicts the complaint's legal conclusions or factual claims").

If the Court determines that the agreements are unambiguous—that they plainly do not provide for the assumption of liability—it may dismiss the successor liability claim here as a matter of law. *North Am. Dealer Co-Op v. Interstate Indem. Co.*, 180 F. App'x 326, 329 (3d Cir. 2006) (granting motion to dismiss because "[a]ppellants have not met their burden of showing an ambiguity in how the Policy uses the term cancellation"); *Squires Golf Club v. Bank of America*, 2010 WL 2813340, at *2 (E.D. Pa. 2010) ("The interpretation of the unambiguous language [of a contract] is a matter of law appropriate for disposition by the Court").[2]

---

[2] Although it need not do so, the Court could also convert this motion to a motion for summary judgment and decide it without further delay.  The question of whether the plain language of the APA and the Indemnity Agreement require indemnity or an assumption of liabilities is a legal question of contractual interpretation that can be decided without reference to extrinsic facts.  *See*

8

**B.** **The APA And The Indemnity Agreement Provide For Indemnification And Not For A True Assumption Of Liabilities**

**1.** **The Sale Of All The Assets Is A Threshold Requirement For Secondary Liability**

Contrary to Plaintiffs' spin, the sale of all or substantially all of the assets is a threshold requirement for successor liability. *See, e.g., Dukas v. Davis Aircraft Products Co., Inc.*, 131 A.D.2d 729, 516 N.Y.S.2d 781 (2d Dep't 1987) (holding that transfer of some assets was not a transfer of "all or substantially all" assets in context of rule requiring shareholder vote for asset sales). Thus, there can be no assumption of liabilities here because, as set forth in MTAG's opening brief, not **all** of the assets of Mooring Tax were transferred to MTAG.  *See* MTAG Br. at 26; *see also, UMAC, Inc. v. Aqua-Gas AVK Ltd.*, 2005 WL 742497, at *3 (E.D. Pa. Mar. 30, 2005) (denying successor liability claim in the context of jurisdiction because "[w]e do not even have a transfer of *all* of the predecessor's assets.  Rather we have a transfer of only some assets") (emphasis in original).   Plaintiffs do not cite a single case in which a Virginia court found successor liability where not all or substantially all the assets were sold.  In this case, it is undisputed that Mooring Tax sold only about 1% of its assets.

**2.** **Under The APA, MTAG Did Not Assume Any Liability**

---

*Pennbarr Corp. v. Insurance Co. of North America*, 976 F.2d 145, 151-52 (3d Cir. 1992) ("[W]e agree with INA that as a matter of law the contract is not ambiguous and that under its plain language INA's motion for summary judgment should have been granted").

MTAG's opening brief also showed that the liability provision in the Asset Purchase Agreement between MTAG and Mooring Tax was an indemnity provision governing the relationship between the parties and did not create a liability to third parties such as plaintiffs here.  Plaintiffs' response misreads the contractual provision upon which they rely.

Section 4 of the APA provides Mooring Tax with three rights as against MTAG: (i) a right to 27.17% of any "investigation and defense costs"; (ii) a right to 27.17% of any obligations to indemnify employees; and (iii) a right to 27.17% of fines, penalties damages or other awards **"payable by or assessed against"** Mooring Tax.  That third obligation is plainly an indemnification obligation that only accrues **after** any such damages become assessed by court order or a final judgment **against Mooring Tax**.  By its own terms, therefore, the provision does not create any direct rights for third party plaintiffs—indeed, the one thing that unites the three rights created by Section 4 of the APA is that they are all payments potentially due to Mooring Tax and not to any strangers to the APA.

When Plaintiffs quote Section 4 in their opposition brief, they do so selectively, always omitting the phrase "**any fines, penalties damages or other awards payable by or assessed against**" Mooring Tax and instead focusing on the portion of Section 4 that relates to liabilities for "pending" investigations.  But that language is included in the provision to take into account MTAG's obligation

to pay for defense costs, which applies equally to both pending cases as well as resolved ones. That language has nothing to do with the limited obligation to indemnify for damages "payable by or assessed against" Mooring Tax. Moreover, the fact that MTAG might have obligations to pay defense costs to Mooring Tax for pending or threatened investigations only reaffirms the meaning of Section 4—the provision was "drafted to govern intercorporate relationships, not to create third party beneficiaries." *Girard v. Allis Chalmers Corp.,* 787 F. Supp. 482, 489 (W.D. Pa. 1992).

The contrast between the provision in this case and the relevant provision in *Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 242 (3d Cir. 2005), demonstrates why Section 4 creates only an indemnification right. In *Caldwell*, the buyer promised to assume **and become liable for** all of the seller's liabilities, without any limitation to damages that had become payable by or assessed against the seller. In addition, the *Caldwell* provision was not embedded in provisions providing other rights to the seller; rather, it clearly created rights for third parties against the buyer by virtue of its breadth:

> Anything contained herein or in any other document, instrument or agreement to the contrary notwithstanding, [Pullman] agrees to assume and become liable for, and to **pay, perform and discharge** and to indemnify [Rexon] and to **hold [Rexon] harmless** from and against any and all **liabilities and obligations** with respect to the following:

11

> (c)(2) **any and all liabilities and obligations (including without limitation, any liabilities or obligations to third parties for any consequential or punitive damages) arising out of or relating to** . . . (B) any actual or alleged violation of or non-compliance by [Rexon] with any Environmental Laws as of or prior to the Closing Date (including without limitation, Superfund liabilities or similar liabilities for other sites …)."

(Emphasis added).

The provision in this case, by contrast, is directly limited to obligations that are "payable by or assessed against Seller". By referencing "seller" (Mooring Tax), that creates derivative, indemnification-type liability, not direct liability to a third party. Section 4 is much more comparable to the New York cases the *Caldwell* court discussed in its opinion than to the provision in *Caldwell* itself. In *De Angelis v. Smith*, 95 N.Y.S.2d 52, 54 (Sup. Ct. N.Y. Co. 1949), for example, a contract called for a party to "repay defendants for any charges **incurred** by them as aforesaid." *Id.* The court there held that agreement to only be "breached when the indemnitee's liability to such others has become fixed and established by judgments obtained against the indemnitee." So too here.

The "Assumption of Liabilities" section heading in the APA is not dispositive. *See Skelton v. Lowen*, 850 F.2d 200, 202 (4th Cir. 1988) ("[S]ection headings should not be used to *create* ambiguity or to support restrictive interpretations not found in the body of the provision"). In any event, as set forth

12

in MTAG's opening brief, it is black-letter Virginia law that "[a]ll of the language of the contract must be considered, for equity seeks to apprehend the substance rather than the shadow." *Burneagle Coal & Coke Corp. v. Henritze*, 139 Va. 422, 124 S.E. 224, 227 (1924). *See* Op. Br. at 29-30 (collecting Virginia cases).

Fundamentally, moreover, Plaintiffs miss the key distinction between an indemnification provision limited to parties in direct privity with each other (such as here) and an assumption of liabilities provision intended to provide comfort to outsiders as is laid bare from their mis-citation to *Dent v. Beazer Materials & Services*, 156 F.3d 523, 534 (4th Cir. 1998), a dispute between **a potential indemnitor and indemnitee** regarding the **scope** of an indemnification provision. The analogue in this case would be litigation between Mooring Tax and MTAG about whether the antitrust claims here entitled MTAG to indemnification from Mooring Tax. But *Dent* had nothing to say about the actual question at issue in this motion. The same is true of Plaintiffs' citation to *Alcoa v. Beazer East, Inc.*, 124 F.3d 551 (3d Cir. 1997), a case which again interpreted the *scope* of assumption. *Id.* at 566 (relying on the "clarity of the assumption of liabilities language").

C.     **<u>The No-Third Party Beneficiary Clause Precludes A Direct Suit By Plaintiffs</u>**

MTAG's opening brief also demonstrated that there could no direct lawsuit against MTAG by Plaintiffs because the no-third-party beneficiaries' clause of the

13

APA precludes such liability.  Plaintiffs' answer is to say that they "do not assert rights as third-party beneficiaries to the Asset Purchase Agreement."  (Op. at 20).  But these are mere words missing any substance.  As the Second Circuit has observed in a case allocating tort liability (like the antitrust liability at issue in this case), "where a provision in a contract expressly negates enforcement by third parties, that provision is controlling."  *See also Liberty Mutual Ins. Co. v. Household Int'l*, 136 F.Supp.2d 5 (D. Mass. 2001) (rejecting argument "that despite a no third party beneficiaries provision in the agreement it can enforce obligations that HI expressly assumed under the assumption provision . . .). The only case on which Plaintiffs rely, *In re Stone & Webster, Inc.*, 558 F.3d 234 (3d Cir. 2009) case is not applicable.  There, in addition to no-third-party-beneficiary language, the contract at issue included language "protecting the rights of third parties."  *Id.* at 241.  The Court therefore found that the third-party could seek damages directly.  There is no such language here.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD BIFURCATE THE ISSUE OF MTAG'S DERIVATIVE LIABILITY, AND STAY ANY FURTHER PROCEEDINGS AGAINST MTAG PENDING ADJUDICATION OF THE CLAIMS AGAINST MOORING TAX

MTAG's opening brief showed that even if the Court declines to dismiss the claims against MTAG, it should bifurcate those claims and stay any further proceedings against MTAG pending the resolution of the underlying claims against Mooring Tax.  Plaintiffs' only counter-argument, relegated to a footnote, is that

14

MTAG should not "be permitted to further delay restitution for its victims." *See* Op. Br. at n. 6. That does not follow.

Even if the motion to dismiss is denied and even if Plaintiffs prevail on their claims against Mooring Tax and MTAG, by Plaintiffs own admission, MTAG was not an actor in the conspiracy and its only liability is derivative. In its opening brief, MTAG cited a case in which the court bifurcated the case in this very same situation. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 892 (5th Cir. 1998). Plaintiffs cannot distinguish this authority.

To the extent that the Court does not want to stay the case against MTAG until Mooring Tax's liability is determined, and to the extent the Court determines that there is any issue of fact as to the meaning of the APA with regard to the assumption of liability, we ask that the court stay all other proceedings against MTAG and direct that there be expedited discovery and a hearing solely on the issue of whether any liability has been assumed. *Id.* ("The district court acted well within its discretion in bifurcating the trial into one proceeding to determine liability and another to determine successorship issues.").

**CONCLUSION**

For all of the foregoing reasons, the Complaint should be dismissed in its entirety.

15

Dated:   New York, New York
           July 3, 2013

**BELLIN & ASSOCIATES LLC**

By: <u>Aytan Y. Bellin</u>
    Aytan Y. Bellin, Esq. (AB-0123)
    85 Miles Avenue
    White Plains, NY 10606
    Telephone No.: (914) 358-5345
    Facsimile No.: (212) 571-0284
    E-mail:  Aytan.bellin@bellinlaw.com

       -and-

**SCHLAM STONE & DOLAN LLP**

Jeffrey M. Eilender
John M. Lundin
26 Broadway
New York, New York 10004
Tel. No.:    (212) 344-5400
Fax No.:    (212) 344-7677
E-mail:  JME@schlamstone.com
        JLundin@schlamstone.com

*Counsel for Defendant MTAG Services, LLC*

16