UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE NEW JERSEY TAX SALES CERTIFICATESANTITRUST LITIGATION** | Master Docket No. 12-1893(MAS)(TJB)<br><br>ORAL ARGUMENT REQUESTED |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MOORING TAX ASSET GROUP, LLC'S MOTION TO DISMISS

Aytan Y. Bellin
Bellin & Associates LLC
85 Miles Avenue
White Plains, NY 10606

   -and-

Jeffrey M. Eilender
John M. Lundin
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004

*Counsel for Defendant*
*MTAG Services, LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................ 3

  I.     PLAINTIFFS LACK STANDING TO ASSERT ANTITRUST
        CLAIMS AGAINST MOORING TAX, OR ANY OF THE OTHER
        DEFENDANTS ............................................................................ 3

 II.    THE COMPLAINT DOES NOT ALLEGE THAT MOORING
        TAX PARTICIPATED IN ANY AUCTIONS INVOLVING
        THE NAMED PLAINTIFFS' TAX DEBT .................................................... 7

III.    PLAINTIFFS CONCEDE THAT THE COMPLAINT DOES NOT
        RELATE BACK TO THE INITIAL COMPLAINT ..................................... 8

       CONCLUSION ....................................................................... 9

## TABLE OF AUTHORITIES

*AT&T Communications Of California v. Pacific-West Telecommunications, Inc.*,
    651 F.3d 980 (9th Cir. 2011) ...........................................................................6

*Atlantic Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)..........................................................................................4

*City Check Cashing, Inc., v. National State Bank*,
    582 A.2d 809 (N.J. Super. Ct. App. Div. 1990) ...............................................6

*In re Lower Lake Erie Iron Ore Antitrust Litigation*,
    998 F.2d 1144 (3d Cir. 1993) ...........................................................................5

*In re Ready-Mixed Concrete Antitrust Litigation*,
    261 F.R.D. 154 (S.D. Ind. 2009) ......................................................................4

*J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
    31 F.3d 1259 (3d Cir. 1994) .............................................................................6

*Mercatus Group, LLC v. Lake Forest Hospital*,
    641 F.3d 834 (7th Cir. 2011) ............................................................................7

*Puerto Rico Telephone Co., Inc. v. SprintCom, Inc.*,
    662 F.3d 74 (1st Cir. 2011)...............................................................................6

## RULES, CODES, STATUTES AND OTHER AUTHORITIES

Clayton Act § 1 .....................................................................................................4

Clayton Act § 4(a) .................................................................................................4

Fed. R. Civ. P. 12(b)(6).........................................................................................1

N.J.S.A. 54:5-54....................................................................................................5

Defendant Mooring Tax Asset Group, LLC ("Mooring Tax") submits this reply memorandum of law in further support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, and as barred by the applicable statute of limitations.

## INTRODUCTION

Mooring Tax adopts and incorporates by reference the arguments in the Reply Memorandum of Law in Further Support of Defendants' Joint Motion to Dismiss ("Joint Reply"), and submits this memorandum to briefly highlight three issues as they relate distinctly to Mooring Tax:

**First**, Plaintiffs lack standing to assert antitrust claims because they were neither competitors nor consumers in the auction market for TSCs.  The fact that certain Defendants other than Mooring Tax have pleaded guilty to criminal antitrust charges involving bid-rigging in New Jersey tax lien auctions does not change the standing analysis.  The guilty pleas, of course, say nothing about Mooring Tax, which has not been charged with any wrongdoing. More fundamentally, the fact that certain Defendants have admitted criminal antitrust liability in a criminal proceeding brought by the federal government does not mean that these Plaintiffs have standing to pursue private antitrust claims arising from the same conduct.  The Complaint alleges a conspiracy "to rig bids and allocate markets with respect to the sale of TSCs."  Compl. ¶ 280.   As demonstrated in the

opening Joint Brief and as Plaintiffs fail to refute, Third Circuit law is clear as can be that an antitrust plaintiff must either be a "competitor" or a "consumer" in the affected market.  Plaintiffs are neither.  They certainly are not in the business of acquiring TSCs and re-selling them, so they cannot be competitors of any of the Defendants.  Nor do the Plaintiffs fall within the common sense definition of "consumers"—they do not purchase TSCs to "consume" them or utilize them in any way.  Rather, they redeem the TSCs simply by paying their past-due real estate tax and accrued interest.  No one would call a taxpayer a "consumer" of taxes, and thus these Plaintiffs cannot be considered participants in any market.

**Second**, the Complaint must be dismissed as to Mooring Tax because Plaintiffs have failed to allege that Mooring Tax participated in any of the auctions involving Plaintiffs' delinquent taxes.  Plaintiffs respond by arguing that they have adequately pled Mooring Tax's involvement in a statewide conspiracy.  In making this argument, Plaintiffs ignore the fact that at this stage of the proceedings (before the Court has certified any class), the only claims in the case are those brought by the named Plaintiffs.  With no allegation that Mooring Tax participated in any of the auctions at which TSCs for Plaintiffs' properties were sold, the Complaint fails to state a claim against Mooring Tax.

**Third**, Plaintiffs do not dispute, and therefore concede, that the Complaint, filed on December 21, 2012 – the first pleading to mention Mooring Tax – does

2

not relate back to Plaintiffs' initial complaint.  For this reason (and because all of Plaintiffs' tolling arguments fail for the reasons explained in Joint Reply), all the claims against Mooring Tax accrued more than four years before the filing of the Complaint and are therefore time-barred.

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING TO ASSERT ANTITRUST CLAIMS AGAINST MOORING TAX, OR ANY OF THE OTHER DEFENDANTS

As shown in Defendants' Joint Motion (at 28-32), and the Joint Reply (at 12-15), Plaintiffs have not pled "antitrust injury" because they are not participants in the market alleged in the Complaint.  Plaintiffs' lengthy Opposition is an extended, but ultimately futile, exercise in evading this point.

The central premise of Plaintiffs' brief is that their private antitrust claims must be valid because "[e]leven Defendants (and one additional individual) have pled guilty" to criminal violations of section 1 of the Sherman Act."  Opp. at 1. Leaving aside the fact that the guilty pleas say nothing about Mooring Tax – which has never even been the target of an investigation let alone charged with any wrongdoing – the possible criminal liability of certain Defendants does not, as the Opposition suggests, automatically confer standing on these specific Plaintiffs to bring private, civil antitrust claims arising from the same alleged conduct.  The antitrust laws do not automatically confer a private right of action on any party that

3

claims an injury resulting from an alleged anti-competitive conspiracy.  This is true even if that same conduct gives rise to criminal liability in a prosecution by the government.  The requirements for prosecuting a criminal antitrust violation are not the same as establishing standing for a private, civil antitrust action. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 169 n.15 (S.D. Ind. 2009) ("The elements required to prove a criminal violation of §1 of the Sherman Act and to prove a claim for damages under §4(a) of the Clayton Act differ.  While criminal convictions may rest solely on a §1 violation, an agreement in restraint of trade, §4 requires the additional showing of standing, causation/impact, and antitrust injury.") (citing *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341 (1990)).

Under established Third Circuit precedent, only competitors or consumers in the market alleged in the complaint are capable of sustaining "antitrust injury" – the quintessential component of antitrust standing.  Plaintiffs' Complaint alleges a bid-rigging conspiracy in the auction "market for the sale of TSCs in the state of New Jersey."  Compl. ¶ 208.  Yet Plaintiffs were not participants in those auctions – none of them ever bought or sold a TSC.  Because Plaintiffs are non-participants in the market alleged in the Complaint, their alleged injuries are, by definition, not antitrust injuries, and accordingly, they cannot plead a basis for antitrust standing.

4

Equally unavailing is Plaintiffs' assertion that they have standing because there is a "direct causal connection" between their injuries and the alleged bid-rigging.  Opp. at 48-49.  "[D]irectness of the injury"– although one factor the courts consider in assessing antitrust standing, *see In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993) – in and of itself does not establish the necessary element of antitrust injury, without which there can be no antitrust claim.

Plaintiffs' assertion that they have standing as "consumers" because they are "purchasers (that is, redeemers) of their TSCs directly from Defendants" is incorrect.  Opp. at 52.  Even accepting that tendentious logic, those Plaintiffs who did not redeem the TSCs would not qualify as "consumers" – and therefore necessarily lack antitrust standing.  More fundamentally, Plaintiffs' effort to cast themselves as "consumers" in the market for TSCs distorts the reality of the transactions at issue.  Plaintiffs are not participants in the auction markets where the alleged bid-rigging occurred.  Taxpayers who did redeem the TSCs for their property would have done so by paying the outstanding tax debt, plus the required interest penalty **to the municipality**, *see* N.J.S.A. 54:5-54 (permitting owner to redeem by paying required amount "to the collector [of taxes]"), not "directly [to] Defendants," as Plaintiffs suggest in their opposition brief.  Opp. at 52.  Plaintiffs are not "consumers" of TSCs – they are taxpayers who paid their tax obligation,

5

plus a penalty mandated by statute, to the municipality.  *See, e.g., Puerto Rico Tel. Co., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 80 n.4 (1st Cir. 2011) (differentiating between "consumers, competitors, or taxpayers" for the purposes of the Telecommunications Act of 1996) (citing *AT&T Communs. Of Cal. v. Pac-West Telecomm, Inc.*, 651 F.3d 980, 984 n.4 (9th Cir. 2011)).  A "consumer" means "one who uses (economic) goods and so diminishes or destroys their utilities." *City Check Cashing, Inc., v. National State Bank,* 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990); *J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1274 n.14 (3d Cir. 1994) ("[T]he generally recognized meaning [of the term consumer] is 'one who uses (economic) goods, and so diminishes or destroys their utilit[y].'").  Plaintiffs thus lack standing to bring antitrust claims for alleged bid-rigging in a market in which they are not participants.

Finally, Plaintiffs assert that they must have antitrust standing because there are "no victims who are more directly injured (or injured at all) other than Plaintiffs."  Opp. at 51.  Leaving aside the fact that there is no reason the allegations in the Complaint must give rise to any antitrust claim, Plaintiffs are just wrong factually because there are other market participants who could (if the facts alleged in the Complaint were true) potentially establish antitrust standing.  First, there are the municipalities, which according to Plaintiffs' allegations were

deprived of the potential for premiums that could have been achieved after the interest rate hit 0% in an unencumbered auction.  Second, the Complaint alleges that Defendants "policed" their conspiracy by "bull[ying] participants and non-participants into refraining from bidding on particular liens," including by engaging in "intimidation and verbal threats."  Compl. ¶¶ 160-161.  Any competitors discouraged from entering the auction by the alleged conspiracy's actions could possibly have antitrust standing as competitors in the tax sale market.  *See, e.g.*, *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 854 (7th Cir. 2011) (recognizing "repelling or intimidating new entrants" as a form of antitrust activity aimed at competitors).  Thus, Plaintiffs' suggestion that the alleged bid-rigging scheme would not have injured any parties other than themselves (which, in any event, is not alone a basis for conferring antitrust standing on Plaintiffs) is incorrect.

For these reasons, and others explained in the Joint Motion and the Joint Reply, Plaintiffs lack antitrust standing.

## II.  THE COMPLAINT DOES NOT ALLEGE THAT MOORING TAX PARTICIPATED IN ANY AUCTIONS INVOLVING THE NAMED PLAINTIFFS' TAX DEBT

As explained in Mooring Tax's opening brief (at 4), the Complaint does not allege that Mooring Tax participated in any way in any of the auctions in which Plaintiffs' delinquent taxes were sold.  Plaintiffs respond by citing a generic

allegation in the Complaint to the effect that "Mooring purchased tax liens at public auctions in the State of New Jersey during the Class Period,"  Opp. at 46 (citing Compl. ¶ 60), which they claim is sufficient to put Mooring Tax on notice of the claim against it.  Plaintiffs forget that although their Complaint is styled as a putative class action, at this stage – before the Court has considered let alone granted class certification – the only claims at issue are those of the named Plaintiffs.   If Mooring Tax did not participate in any auctions involving the delinquent taxes of the named Plaintiffs – and the Complaint does not allege that they did – then Plaintiffs have no claim against it.  The claims against Mooring Tax must be dismissed for this reason as well.

## III.   PLAINTIFFS CONCEDE THAT THE COMPLAINT DOES NOT RELATE BACK TO THE INITIAL COMPLAINT

Plaintiffs do not dispute that with respect to Mooring Tax, the Complaint, filed on December 21, 2012, does not relate back to Plaintiffs' earlier complaint. As a result, all of Plaintiffs claims against Mooring Tax are time-barred because they arise from auctions that occurred more than four years before the filing of the Complaint.  Plaintiffs' suggestion that their claims are timely because the alleged class period extends to February 2009 is simply wrong.  At present (prior to class certification), the only claims in the case are those of the named Plaintiffs.  The last auction relevant to those claims occurred on December 3, 2008, *see* Compl. ¶ 19,

*i.e.,* more than four years before the filing of the Complaint, on December 21, 2012.

As shown in the Joint Reply (at 15-19), Plaintiffs' arguments for tolling the statute of limitations fail.  Therefore, the claims against Mooring Tax should be dismissed as time-barred.

## <u>CONCLUSION</u>

For the reasons explained above, and in the Joint Reply Brief, the Complaint should be dismissed in its entirety.

Dated:   New York, New York
         July 3, 2013

**BELLIN & ASSOCIATES LLC**

By: /s/    Aytan Y. Bellin
      Aytan Y. Bellin, Esq. (AB-0123)
      85 Miles Avenue
      White Plains, NY 10606
      Telephone No.: (914) 358-5345
      Facsimile No.: (212) 571-0284
      E-mail:  Aytan.bellin@bellinlaw.com

        -and-

**SCHLAM STONE & DOLAN LLP**
Jeffrey M. Eilender, Esq.
John M. Lundin, Esq.
26 Broadway
New York, New York 10004
Tel. No.:      (212) 344-5400
E-mail:  JME@schlamstone.com
E-Mail:  jlundin@schlamstone.com

*Counsel for Defendant*
*Mooring Tax Asset Group, LLC*

9