## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. | Master Docket No. 3:12-CV-01893-MAS-TJB |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARYAPPROVAL OF SETTLEMENTS, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF INTERIM CLASS AND LIAISON COUNSEL AS SETTLEMENT CLASS COUNSEL, AND DEFERRAL OF CLASS NOTICE

**LITE DePALMA GREENBERG, LLC**
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
Tel: (973) 623-3000
bgreenberg@litedepalma.com
sgreenfogel@litedepalma.com

*Interim Liaison Counsel*
[Additional counsel listed on signature page]

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................. 2

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 4

    I.    STATUS OF THIS LITIGATION ............................................................ 4

    II.   THE SETTLEMENT AGREEMENTS ..................................................... 6

        A.   The Proposed Settlement ............................................................. 6

        B.   Dismissal With Prejudice and Release of Claims ................................. 11

        C.   Notice ........................................................................................ 11

ARGUMENT .......................................................................................................... 12

    I.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENTS ................................................................. 12

        A.   Class Action Settlement Procedure ........................................ 12

        B.   The Settlements Are Fair, Reasonable, and Adequate ........................... 13

    II.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ........................... 18

        A.   The Settlement Class Is Numerous ........................................ 18

        B.   There Are Common Questions of Law and Fact ........................... 19

        C.   The Named Plaintiffs' Claims Are Typical ........................... 20

        D.   The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Settlement Class ........................................ 21

        E.   The Proposed Settlement Class Satisfies Rule 23(b)(3) ........................ 21

            1.   Common Questions of Law and Fact Predominate ................................. 22

            2.   A Class Action Is Superior To Other Methods of Adjudication .............. 23

    III.  THE COURT SHOULD APPOINT PLAINTIFFS' INTERIM CLASS COUNSEL AND LIAISON COUNSEL AS SETTLEMENT CLASS COUNSEL ................................................................................ 24

    IV.  THE COURT SHOULD DEFER FULL NOTICE ..................................... 25

    V.   THE COURT SHOULD APPROVE WRITTEN NOTICE OF REDEMPTION DISCOUNTS FOR APPLICABLE SETTLEMENTS ................................. 27

CONCLUSION ...................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agretti v. ANR Freight Sys., Inc.*,
    982 F.2d 242 (7th Cir. 1992) .................................................................................16

*Alves v. Main*,
    No. 01-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012)..........................................27

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................18, 22

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006)...................................................................................21

*E.E.O.C. v. Com. of Pa.*,
    772 F. Supp. 217 (M.D. Pa. 1991) *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738
    (3d Cir. 1992).........................................................................................................15

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)...................................................................................17

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008)............................................................................16

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982)...............................................................................................20

*Gomez v. Rossi Concrete Inc.*,
    08-cv-1442-BTM-CAB, 2011 WL 666888 (S.D. Cal. Feb. 17, 2011)...................25

*Hanlon v. Palace Entm't Holdings, LLC*,
    No. 11-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ..........................................13

*Hanson v. Acceleration Life Ins. Co.*,
    No. CIV A3-97-152, 2000 WL 33340298 (D.N.D. June 21, 2000) ........................27

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).............................................................................12, 13

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009)...................................................................................22

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................14

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3d Cir. 2002)................................................................................23

*In re Mid-Atlantic Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983) .......................................................................14

*In re Motor Fuel Temperature Sales Practices Litig.*,
258 F.R.D. 671 (D. Kan. 2009)...........................................................................16

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012)............................................................................3

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ..........................................................................15

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998).........................................................................16, 26

*In re Sch. Asbestos Litig.*,
921 F.2d 1330 (3d Cir. 1990)..............................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)...................................................................12, 19, 20

*Janovici v. DVI, Inc.*,
No. Civ-A-2:03-cv-04795-LD, 2003 WL 22849604 (E.D. Pa. Nov. 25, 2003) ....................25

*Jones v. Commerce Bancorp, Inc.*,
No. 05-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) ....................................20

*Moskowitz v. Lopp*,
128 F.R.D. 624 (E.D. Pa. 1989)..........................................................................19

*O'Brien v. Brain Research Labs, LLC*,
No. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) .......................................23

*Smith v. Prof'l Billing & Mgmt. Servs.*,
Civ. No. 06-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) .....................12, 13

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001).........................................................................18, 19

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1876 (2012).......................22

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005)........................................................................15, 18

*Weiss v. Mercedes-Benz of N. Am. Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995) ........................................................................17

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) ...........................................................................................12

*Zinberg v. Wash. Bancorp, Inc.*,
   138 F.R.D. 397 (D.N.J. Apr. 19, 1990) ................................................................19

**STATUTES**

N.J.S.A 54:5-54.1 ..........................................................................................................8

15 U.S.C. § 1 .................................................................................................................5

**RULES**

Fed. R. Civ. P. 23(a)(4) ...............................................................................................21

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................26

Fed. R. Civ. P. 23(e) ....................................................................................................18

Fed. R. Civ. P. 23(g)(1)(A) ..........................................................................................24

Rule 3.4(b) of the New Jersey Rules of Professional Conduct .......................................3

Plaintiffs have recently entered into five settlement agreements with 16 defendants: 1) David Butler; David M. Farber; CCTS, LLC; CCTS Tax Liens I, LLC; CCTS Tax Liens II, LLC; DSBD, LLC; Pro Capital LLC; Pro Capital Fund I, LLC (the "Butler/Farber Defendants"); 2) Burlington Assembly of God, Inc. d/b/a Fountain of Life Center; Life Center Academy; Mercer S.M.E. Inc.; Susan M. Esposito; and David B. Boudwin (the "Mercer Defendants"); 3) Richard J. Pisciotta, Jr.; 4) William A. Collins; and 5) Isadore H. May (collectively, the "Settling Defendants").  In exchange for being released from this action, the Settling Defendants have agreed to pay a combined settlement amount of $755,000 and provide extensive cooperation to Plaintiffs regarding the claims that will continue to be pursued against the non-settling defendants—cooperation that has already begun.  In addition, the Settling Defendants have also agreed to offer significant discounts off of the total amount owed (in some cases up to 15% of the total amount owed) to those New Jersey property owners who had a tax sale certificate sold in connection with an outstanding tax lien, and which was purchased by a Settling Defendant during the Class Period (as defined below) and still held by that Settling Defendant when the relevant Settlement Agreement was executed.  Accordingly, pursuant to Federal Rule of Civil Procedure 23, and with the support of the Settling Defendants, Plaintiffs move for preliminary approval of the five class settlement agreements.[1]

---

[1]  On April 4, 2013, plaintiffs previously moved for preliminary approval of a class settlement agreement reached with Defendant Robert E. Rothman (Dkt. No. 217).  In that settlement agreement, Defendant Rothman agreed to pay $200,000 in exchange for a release of the putative settlement class ("Settlement Class") members' federal antitrust and related state-law claims.  Including the settlement with Defendant Rothman, Plaintiffs and Settling Defendants have agreed to $955,000 in settlements to date, and Plaintiffs continue to negotiate settlements with other Defendants.

## PRELIMINARY STATEMENT

The five proposed Settlement Agreements between Plaintiffs and the Settling Defendants, copies of which are attached to the accompanying Declaration of Seth Gassman, dated July 12, 2013 (hereinafter, the "Gassman Decl.") as Exhibits A through E, represent the culmination of nearly a year of litigation and extensive settlement discussions.  These settlements resolve all federal and state law claims brought by Plaintiffs against the Settling Defendants alleging that the Settling Defendants and the other Defendants engaged in a statewide conspiracy to unlawfully manipulate interest rates associated with tax sale certificates ("TSCs") sold at public auctions throughout New Jersey during the Class Period, as defined below.

The Settlement Agreements require that:

- The Butler/Farber Defendants pay $115,000;

- The Mercer Defendants pay $250,000;

- Defendant Pisciotta pays $100,000;

- Defendant Collins pays $170,000; and

- Defendant May pays $120,000.

As further consideration for settlement, the Settling Defendants also have agreed to offer discounted redemption of TSCs they purchased during the Class Period and held at the time of execution of the relevant Settlement Agreement at various levels, as described below.  In that regard, Plaintiffs request that the Court authorize the dissemination of notice of the offers from the Butler/Farber Defendants, Defendant Pisciotta, and Defendant May to those property owners who are the subject of a lien currently owned by the Settling Defendants and that was purchased

2

by Settling Defendants during the Class Period.[2]  A complete list of all such persons is attached as Exhibit I to the Gassman Decl.  Further, sample notices of the discount offers to be sent are attached as Exhibits F through H to the Gassman Decl.

In addition to the above consideration, all Settling Defendants have agreed to cooperate with Plaintiffs on an "as-requested" basis in the prosecution of this action by providing information and documentation relating to the existence, scope, and implementation of the conspiracy alleged in the Plaintiffs' Consolidated Master Class Action Complaint (Dkt. No. 113) dated December 21, 2012 ("Consol. Compl.").  The Settling Defendants already have begun to provide such cooperation.  Plaintiffs anticipate that continued cooperation over the course of this litigation will prove invaluable to the putative class in understanding and proving the alleged conspiracy.[3]

Plaintiffs believe that the proposed settlements with the Settling Defendants are fair, reasonable, adequate, and are in the best interests of the members of the Settlement Class.  The Settlements resulted from protracted arm's-length negotiations by experienced counsel committed to the interests of their respective clients.  Gassman Decl., at ¶ 9.  If approved, the Settlements will provide significant benefits to members of the Settlement Class in exchange for dismissal of the claims against the Settling Defendants with prejudice.  Further, the proposed

---

[2]   Dissemination of notice of the discounted redemption offers from Defendant Collins and the Mercer Defendants will occur following final approval of the Settlements and therefore is not being sought here.

[3]   Cooperation by defendants confers "real and substantial benefits" upon a class and has assisted courts in determining that settlements should be approved.  *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012).  Testimony by Settling Defendants in this case does not violate public policy, and there is no indication that cooperation occurred as a result of Plaintiffs offering "an inducement to a witness that is prohibited by law."  See Rule 3.4(b) of the New Jersey Rules of Professional Conduct.

Settlement Class satisfies the requirements of Rule 23, and Plaintiffs' Interim Class and Liaison Counsel are well qualified to serve as Settlement Class Counsel.

Finally, the value of the cash component of all six Settlement Agreements (including the Settlement Agreement with Defendant Rothman) totals $955,000. Plaintiffs believe that deferring notice until the combined value of all settlements totals at least $1,000,000 (excluding notice costs) will avoid inefficient, duplicative, and confusing notices and will preserve additional funds for distribution to the Settlement Class. Plaintiffs therefore respectfully submit that this Court should enter the proposed Preliminary Approval Order while deferring full class notice until the aggregate proceeds from the Settlement Agreements and settlements with other Defendants amount to at least $1,000,000 (excluding notice costs), or for two years following the entry of the proposed Preliminary Approval Order, whichever is earlier. Plaintiffs anticipate that this will likely happen within the next couple of months and Plaintiffs will seek Court-approval for a full notice at that time. Plaintiffs would request, however, that the Court authorize that a limited notice be issued now but solely as to the discounted tax sale certificate portions of the settlements (described *supra*) substantially in the form attached as Exhibits F through H of the Gassman Declaration. This limited notice would be disseminated to those entitled to receive discount offers (as listed in Exhibit I) being extended by the Butler/Farber Defendants, Defendant Pisciotta, and Defendant May.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. STATUS OF THIS LITIGATION

This litigation arises from an alleged conspiracy to rig auctions of TSCs in New Jersey. Certain Settling Defendants (as well as non-settling defendants) have pleaded guilty in this Court to participating in a conspiracy to rig bids and allocate customers at public tax lien auctions, in

4

violation of Section 1 of the Sherman Act.  The investigation by the Antitrust Division of the

United States Department of Justice remains active and additional pleas or indictments are

expected.

Beginning in March 2012, the first cases were filed alleging that Settling Defendants,

other Defendants, and various alleged co-conspirators engaged in a statewide conspiracy to

unlawfully manipulate interest rates associated with TSCs sold at public auctions throughout the

state of New Jersey.  Consol. Compl. ¶ 1.  According to Plaintiffs, the actions of Settling

Defendants and Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as

various state laws. *Id.* In September 2012, the consolidated proceeding, captioned *In re New*

*Jersey Tax Sales Certificates Antitrust Litigation*, No. 3:12-cv-1893-MAS-TJB, which was

originally before Hon. Freda L. Wolfson, U.S.D.J., was reassigned to this Court.

Plaintiffs and the Settling Defendants engaged in settlement negotiations beginning at

various times in 2012 and continuing into 2013.  Gassman Decl. ¶ 7.  At in-person and

telephonic meetings, the terms of the separate Settlement Agreements were vigorously

negotiated among sophisticated counsel experienced in antitrust law and class actions.  Gassman

Decl. ¶ 9.  Plaintiffs and Settling Defendants finalized and executed the five Settlement

Agreements for which preliminary approval is now being sought between December 2012 and

April 2013.  Gassman Decl. ¶¶ 11, 14, 17, 20, 23 ; Gassman Decl. Exs. A-E.

Plaintiffs' Consolidated Complaint was filed on December 21, 2012.  Dkt. No. 113.  On

March 8, 2013, the non-settling Defendants filed motions to dismiss the Consolidated Complaint,

which are now pending before this Court.  Because the proposed Settlement Agreements provide

that all proceedings shall be stayed pending preliminary approval and final approval of those

Agreements, and that Plaintiffs agree that they "shall not pursue the Action" against Settling

Defendants, Settling Defendants did not file Answers or motions to dismiss the Consolidated

Complaint.

## II.   THE SETTLEMENT AGREEMENTS

The Settlement Agreements represent the product of extensive negotiations involving

experienced counsel over the course of several months.  Gassman Decl. ¶ 9.  The Settlement

Agreements provide for a release of Settlement Class members' claims in exchange for a

meaningful cash payment and cooperation with Plaintiffs regarding the bid-rigging claims

asserted in their operative Complaint.  The key components of the Settlement Agreements are

discussed below.

### A.   The Proposed Settlement

The Settlement Agreements resolve all claims against the Settling Defendants for their

roles in the alleged conspiracy to manipulate interest rates associated with TSCs sold at public

auctions in New Jersey during the period January 1, 1998 through February 28, 2009 (the "Class

Period").  The proposed Settlement Class in all Agreements is defined as:

> All persons who owned real property in the State of New Jersey who had a Tax Sale
> Certificate issued with respect to their property that was purchased by a Defendant during
> the Class Period at a public auction in the State of New Jersey at an interest rate above
> zero percent.

Gassman Decl. Ex., A at ¶ 18, Ex. B at ¶ 18, Ex. C at ¶ 16, Ex. D at ¶ 16, and Ex. E at ¶ 18.

All Settling Defendants agreed to provide (and will continue to provide) Plaintiffs with

substantial and valuable cooperation in the prosecution of the case against the remaining

Defendants.[4]  Gassman Decl., Ex. A at ¶ 23, Ex. B at ¶ 23, Ex. C at ¶ 21, Ex. D at ¶ 21, and Ex.

E at ¶ 24.  The Settling Defendants' obligations, to be performed subject to the DOJ's approval,

---

[4]   Defendant Rothman has also provided Plaintiffs with meaningful cooperation.  This
cooperation also represents considerable value to the putative Settlement Class.

include: (i) providing a full account of all known facts relevant to this litigation, including relevant knowledge of the industry and market participants; (ii) producing relevant documents relating to TSC purchases and damages, as well as documents sufficient to evidence collusive meetings and how the conspiracy was formed, implemented, and enforced; (iii) making themselves available for interviews and depositions; (iv) using reasonable efforts to make individuals who purchased TSCs on their behalf available for interviews or depositions; and (v) making themselves available to testify at trial.  Gassman Decl., Ex. A at ¶¶ 23-24, Ex. B at ¶¶ 23-24, Ex. C at ¶¶ 21-22, Ex. D at ¶¶ 21-22, and Ex. E at ¶¶ 24-25.

In addition, Settling Defendants agreed to provide monetary payments totaling a combined $755,000, with: the Butler/Farber Defendants paying $115,000; the Mercer Defendants paying $250,000; Defendant Pisciotta paying $100,000; Defendant Collins paying $170,000; and Defendant May paying $120,000.  These lump sum payments were negotiated and arrived at as a result of a thorough investigation between the parties as to the economic harm inflicted by Settling Defendants' conduct, as well as the amount of money the Settling Defendants derived from their participation in the alleged conspiracy.  Gassman Decl. ¶¶ 9, 10, 13, 16, 19, 22, 25.

Of that settlement total, $625,000 was deposited into U.S.  Treasury guaranteed escrow accounts in the days following the completed Settlement Agreements, with Defendant May depositing an additional $60,000 at a later date pursuant to the terms of his Settlement Agreement.  Defendant Collins will pay the remaining $70,000 under the terms of his Settlement Agreement by September 12, 2013.  Gassman Decl.  Ex. E at ¶ 22, Ex. D at ¶19.

7

In addition to these payments, Settling Defendants agreed to additional relief in connection with certain TSCs acquired during the class period.  The additional relief pursuant to each Settlement Agreement is as follows:

(1) **Butler/Farber Defendants**: The Butler/Farber Defendants agreed (1) not to take further action to collect or monetize any TSCs pursuant to which foreclosure proceedings had not been initiated at the time of settlement, and (2) within 30 days of the execution of the Settlement Agreement,[5] to send written notice to property owners subject to foreclosure proceedings with an offer to assign the outstanding TSC to the property owner for a one-time cash payment equal to 90 percent of the redemption amount.[6]  Gassman Decl. Ex A. at ¶ 22.[7]

---

[5]   Pursuant to mutual agreement among Plaintiffs and the Butler/Farber Defendants, the parties have agreed to postpone the sending of the discount offer until 30 days after a Preliminary Approval Order is entered.

[6]   Unlike the other Settlement Agreements that are the subject of this motion, which require that the property owner, to the extent they wish to take advantage of the discount offer being offered by the Settling Defendants, redeem the TSC through the applicable municipality as generally required by law, the Butler/Farber Defendants' Settlement Agreement contemplates that the redemption will be done between the property owner and the Butler/Farber Defendants and outside the relevant municipality.  The N.J.S.A 54:5-54.1, allows property owners to redeem their tax liens outside of the tax collector's office *only* if authorized by a court order.  *See* § 54:5-54.1 ("[a]ll redemptions shall be made through the tax collector's office, *unless authorized by court order* or pursuant to federal bankruptcy law.") (emphasis added).  Thus, there is a provision in the proposed order that is submitted with this motion, permitting the private redemption of the TSCs outside of the relevant municipality.  *See* proposed order ¶ 8(a).  If the Court enters the proposed order, this will allow the redemption of the TSCs held by the Butler/Farber Defendants to be done outside the relevant municipality.

[7]   In addition, the Butler/Farber Defendants have agreed to forfeit in their entirety any TSCs acquired during the Class Period, and which they still own, where the property owner is not in bankruptcy proceedings, or the property that is the subject of the lien is not in foreclosure.  *See* Gassman Decl., Ex. A at ¶ 22.  However, it is believed that all TSCs currently owned by the Butler/Farber Defendants and which were acquired during the Class Period, are either in foreclosure or in bankruptcy.

8

(2) **<u>Mercer Defendants</u>**: The Mercer Defendants agreed (1) not to initiate any foreclosure proceedings for 90 days after final approval of the Settlement Agreement; and (2) within 30 days after final approval of the Settlement Agreement, to offer to redeem any TSC possessed at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 15 % of the redemption amount.  The Mercer Defendants agreed that any member of the settlement class who accepts this discounted offer is not required to release any claims against the Mercer Defendants and retains the ability to share in any monetary recovery.  Gassman Decl. Ex B. at ¶ 22.[8]

(3) **<u>Defendant Pisciotta</u>**: Defendant Pisciotta agreed (1) not to initiate any foreclosure proceedings until 90 days after preliminary approval of the Settlement Agreement; and (2) within 30 days after preliminary approval of the Settlement Agreement, to offer to redeem any TSC possessed at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 12% of the redemption amount.  TSCs held by bankrupt property owners, or on property on which foreclosure proceedings have already begun, will also be offered the 12% discount.  Pisciotta agreed that any member of the settlement class who accepts this discounted offer is not required to release any claims against Pisciotta and retains the ability to share in any monetary recovery.  Gassman Decl. Ex C. at ¶ 20.

---

[8] Because this provision is not triggered until final approval for the Mercer Defendants and Defendant Collins, as well as for Defendant Rothman (*See* Dkt. 217, Decl. of Seth Gassman, Ex. A), Plaintiffs are not now requesting that the Court approve dissemination of letters connected therewith.

(4) **<u>Defendant Collins:</u>** Defendant Collins agreed (1) not to initiate any foreclosure proceedings until 90 days after final approval of the Settlement Agreement; and (2) within 30 days after final approval of the Settlement Agreement, to offer to redeem any TSC possessed at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 10% of the redemption amount.  TSCs held by bankrupt property owners, or on property on which foreclosure proceedings have already begun, will also be offered the 10% discount.  Collins agreed that any member of the settlement class who accepts this discounted offer is not required to release any claims against Collins and retains the ability to share in any monetary recovery.  Gassman Decl. Ex D. at ¶ 20.

(5) **<u>Defendant May:</u>** Defendant May agreed (1) not to initiate any foreclosure proceedings until 120 days after the execution date of the Settlement Agreement; and (2) within 30 days after preliminary approval of the Settlement Agreement, to offer to redeem any TSC possessed at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 10 % of the redemption amount.  TSCs held by bankrupt property owners, or on property on which foreclosure proceedings have already begun, will also be offered the 10% discount.  May agreed that any member of the settlement class who accepts this discounted offer is not required to release any claims against May and retains the ability to share in any monetary recovery.  Gassman Decl. Ex E. at ¶ 23.

These provisions of the settlements represent substantial value to the property owners of allegedly colluded TSCs currently held by Settling Defendants.  Samples of the written notice to property owners are attached to the Gassman Decl. as Exhibits F through H.  These notices will

382736.1

be sent to relevant property owners as listed in Exhibit I by the applicable Settling Defendants within 30 days of the preliminary approval of the Settlement Agreements informing these owners of the offer to redeem any TSC obtained during the Class Period and possessed at the time of the relevant Settlement Agreement in exchange for a discounted cash payment.  The proposed written notice that will be sent to property owners also provides detailed instructions on the steps that property owners must take if they elect to redeem their certificates through the lien holder at the discounted rates.

    **B.    Dismissal With Prejudice and Release of Claims**

    In exchange for these significant benefits to Settlement Class members, the Settlement Agreements each provide that all participating members in the Settlement Class will fully release Settling Defendants from all federal and state law claims relating in any way to their conduct concerning any agreements to rig bids or allocate tax liens in connection with the auction of TSCs in New Jersey during the Class Period.  Gassman Decl.  Ex. A at ¶ 40, Ex. B at ¶ 41, Ex. C at ¶ 39, Ex. D at ¶ 39, and Ex. E at ¶ 46.  The releases do not, however, include claims against Settling Defendants relating to payment disputes, physical harm, bodily injury, claims against any non-settling Defendant (should any exist as none have been raised), or claims of Settlement Class members outside of the Class Period.  Gassman Decl., Ex. A at ¶¶ 40, 42, Ex. B at ¶¶ 41, 43, Ex. C at ¶¶ 39-40, Ex. D at ¶¶ 39, 41, and Ex. E at ¶¶ 46, 49.

    **C.    Notice**

    Plaintiffs propose, with Settling Defendants' consent, that notice to the class of the settlements be deferred.  *See infra* at Part IV.  Under Plaintiffs' proposal, any distribution of the settlement funds will be deferred as well.  Gassman Decl. ¶¶ 32-33.  Such a deferral is a common practice in cases where claims against other defendants remain because deferral of notice avoids

11

unnecessary and duplicative notice costs.  Additionally, Plaintiffs anticipate additional

settlements will likely occur soon providing further efficiencies in notice and claims processing.

## ARGUMENT

### I.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENTS

Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the

burden on judicial resources.  As a result, "[c]ompromises of disputed claims are favored by the

courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  This is "particularly [true] in

class actions and other complex cases where substantial judicial resources can be conserved by

avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d

768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d

Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it

should therefore be encouraged"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990)

(the court "encourage[s] settlement of complex litigation that otherwise could linger for years").

The proposed Settlement Agreements here meet all the requirements for preliminary approval by

the Court.

#### A.    Class Action Settlement Procedure

Federal Rule of Civil Procedure 23 sets forth a procedure and specific criteria for class

action settlement approval. *Smith v. Prof'l Billing & Mgmt. Servs.*, Civ. No. 06-4453, 2007 WL

4191749, at *1, *5 (D.N.J. Nov. 21, 2007).  That approval procedure includes three distinct

steps:

1.    Preliminary approval of the proposed settlements.

2.    Dissemination of notice of the settlements to all affected class members.

3.    A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlements, and at which counsel may

382736.1

> introduce evidence and present argument concerning the fairness, adequacy, and
> reasonableness of the settlements.

*Id.* This procedure safeguards class members' due process rights and enables the Court to fulfill

its role as the guardian of class interests. *See In re GMC*, 55 F.3d at 785; *Hanlon v. Palace*

*Entm't Holdings, LLC*, No. 11-987, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (explaining

that at the preliminary approval phase, the "court must only 'make a preliminary determination

on the fairness, reasonableness, and adequacy of the settlement terms'" (quoting Manual for

Complex Litigation (Fourth), § 21.632 (2011))). "Preliminary approval is not binding, and it is

granted unless a proposed settlement is obviously deficient." *Smith*, 2007 WL 4191749, at *1

(internal quotation marks omitted). "Preliminary approval is appropriate where the proposed

settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies

and the settlement falls within the range of reason." *Id.*

Plaintiffs respectfully request that the Court take the first steps in the settlement approval

process and certify the proposed Settlement Class, preliminarily approve the five Settlement

Agreements with Settling Defendants, and appoint Plaintiffs' Interim Class and Liaison Counsel

as Class Counsel for these settlements. While consideration of the requirements for final

approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlements

proposed here. The proposed Settlement Agreements are fair, adequate, and reasonable.

Therefore, the Court should preliminarily approve the settlements and certify a settlement class.

### B.    The Settlements Are Fair, Reasonable, and Adequate

This Settlement Agreements represent the culmination of extensive and intensive arm's-

length negotiations over the course of nearly one year. Gassman Decl. ¶ 7. Plaintiffs were

represented in the settlement negotiations by a team of attorneys who have had considerable

experience in federal antitrust class actions, and who are therefore well versed in the issues.

13

Gassman Decl. ¶ 8.  Settling Defendants were similarly represented by counsel with extensive

experience defending federal antitrust class actions and complex litigation matters.  The

settlement negotiations were contested and conducted in the utmost of good faith.  Gassman

Decl. ¶ 10.

Through those extensive discussions, counsel for all parties were able to craft appropriate

Settlement Agreements given the allegations at issues in this case.  In addition to the meaningful

cash payments discussed below, another significant consideration for the Settlement Agreements

was the substantial cooperation that Settling Defendants have provided and agreed to continue to

provide.  Courts have approved early settlements, such as these, because of their many benefits

to the class and their supportive nature in uncovering the participants involved in an alleged

conspiracy.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).  The

cooperation here from Settling Defendants represents considerable value to the putative

Settlement Class, because will continue to save time, reduce costs, and provide access to

information and documents regarding the bid-rigging conspiracy that might otherwise not be

readily available to Plaintiffs. S*ee In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379,

1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate

factor for a court to consider in approving a settlement").

With respect to the monetary consideration paid by the Settling Defendants, there are two

distinct benefits to the Settlement Class.  First, Settling Defendants all agreed to make lump sum

payments available to members of the Settlement Class.  Gassman Decl. ¶¶ 12, 15, 18, 21, 24.

The amounts were negotiated following extensive discussions between the parties as to the

economic harm inflicted by Settling Defendants' conduct on the proposed settlement class and

the monies that Settling Defendants reaped from their alleged wrongful scheme, as well as the

14

fact that Settling Defendants faced joint and several liability for the other Defendants' conduct. Second, Settling Defendants agreed to additional relief related to *all* TSCs purchased during the Class Period that were retained at the time the Settlement Agreement was executed.  Gassman Decl.  Ex. A at ¶ 22, Ex. B at ¶ 22, Ex. C at ¶ 20, Ex. D at ¶ 20, and Ex. E at ¶ 23.  The specific terms agreed to by each Settling Defendant are described herein in Part II.A.  Gassman Decl., Ex. A at ¶ 22, Ex. B at ¶ 22, Ex. C at ¶ 20, Ex. D at ¶ 20, and Ex. E at ¶ 23.

Given these benefits, the proposed Settlement Agreements fall well within the range of reasonableness.  Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class is presented for court approval."  Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* §11:41 (4th ed. 2002).  Counsel's judgment that the settlement is fair and reasonable is entitled to great weight.  *See E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991) *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned." (emphasis original) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."), *In re Prudential Ins. Co. of Am. Sales Practices Litig., ("Prudential I")*, 962 F. Supp. 450, 543 (D.N.J. 1997) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the

15

judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998)

("Prudential II"), *cert. denied*, 525 U.S. 1114 (1999)

The benefits to the Settlement Class are reasonable and fair given the inherent risks of
continued litigation.  The value of cooperation at this early stage of litigation is particularly high,
when numerous procedural steps remain, including class certification, *Daubert* motions,
summary judgment, trial, and any appeals.  Each of those stages presents litigation risk, which
the Settlement Agreements not only avoid, but which the cooperation provided will be pivotal in
addressing.  Absent the Settlements, Plaintiffs understand that Settling Defendants would contest
Plaintiffs' claims.

Finally, these early settlements should help to expedite the overall litigation of this case,
while not prejudicing any of the remaining Defendants. "In complex litigation with a plaintiff
class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR
Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation
Second, § 30.46 (1986)).  Courts regularly approve partial settlement prior to decision on the
certification of a litigation class.  S*ee Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 436 n.2 (E.D.
Pa. 2008) (concluding that "it is proper for the Court to preliminarily certify the settlement
classes at this juncture, provided that the grant of preliminary approval is without prejudice to the
defenses and positions of the non-settling Defendants as to any issue, including certification of
the litigation classes"); *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671,
680-81 (D. Kan. 2009) (granting preliminary approval of settlement).

Granting preliminary approval of these Settlement Agreements will not adversely affect
the remainder of the case or unfairly prejudice the Settlement Class members' claims against the

non-settling Defendants.[9]  On the contrary, the Settlements will speed the resolution of the case by removing some Defendants and by providing Plaintiffs with additional information vital to proving their case, thereby reducing the need for some discovery.

The Third Circuit has "explicitly recognized with approval" the "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* at 595 (quotation marks omitted); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995) (burden on crowded court dockets to be considered).  Continued litigation of this case against these particular defendants would be long, complex, expensive, and a burden to this Court's docket, yet another factor favoring approval.  This case promises to be extensively and contentiously litigated—indeed, the Court has before it twelve motions to dismiss Plaintiffs' Consolidated Complaint (as well as two Answers to that Complaint), Plaintiffs' Oppositions to Defendants' Motions to Dismiss, and Defendants' Replies to Plaintiffs' Oppositions.  S*ee* Docket Nos. 130, 165, 173, 174, 177, 178, 180, 182, 185-188, 191, 193, 241, 242, 252, 254, 255, 257, 258, 259, 260, 261, 262.   Approving the Settlement Agreement will not only begin to reduce that litigation burden but will provide Plaintiffs with the benefit of Settling Defendants' continued and valuable cooperation.  The Court should therefore grant the motion for preliminary approval of the proposed Settlement Agreements.

---

[9]  The Settlement Agreements specifically provide that Settling Defendants' purchase of TSCs during the Class Period shall remain in the case for the purposes of joint and several liability. Gassman Decl., Ex.A at ¶ 48, Ex. B at ¶ 48, Ex. C at ¶ 46, Ex. D at ¶ 47, and Ex. E at ¶ 54.

## II.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court should preliminarily certify the proposed Settlement Class because it meets all applicable requirements of Federal Rule of Civil Procedure 23.  Certification of a settlement class is appropriate where the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are satisfied.  *See* Fed. R. Civ. P. 23(e). In addition, a settlement class must satisfy one of the three subsections of Rule 23(b).  A*mchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  In analyzing Rule 23's elements, this Court must analyze whether the representative parties "fairly and adequately protect the interests of the class." *Varacallo*, 226 F.R.D. at 233.

Certification of a settlement class seeking damages requires satisfaction of the requirements of Rule 23(b)(3).  *Amchem Prods.*, 521 U.S. 591, 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.  But other specifications of the rule . . . demand undiluted . . . attention in the settlement context."). In other words, the Court must be satisfied that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.   The Settlement Class Is Numerous

The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement.  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, although the exact number of potential members of the Settlement Class is unknown, Plaintiffs

18

estimate that there are several thousand potential class members based on the number of TSCs that may have been affected by the alleged conspiracy during the class period.  Gassman Decl. ¶ 27.  Thus, the numerosity requirement is easily satisfied.  *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. Apr. 19, 1990) (finding that numerosity is "clearly established" where potentially hundreds of class members); *see also Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989) ("It is proper for the court 'to accept common sense assumptions in order to support a finding of numerosity.'") (internal citation omitted).

**B.     There Are Common Questions of Law and Fact**

The proposed Settlement Class also satisfies Rule 23(a)'s commonality requirement. "[A] finding of commonality does not require that all class members share identical claims." *In re Warfarin*, 391 F.3d at 530 (quotation marks omitted). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted).

Here, there are common questions of law and fact that go to the central issue in this matter—whether Defendants engaged in a conspiracy to manipulate interest rates associated with TSCs sold at public auctions throughout the State of New Jersey, thereby injuring Plaintiffs when they paid more in interest payments than they would have paid absent the alleged bid-rigging conspiracy.

The allegations of the bid-rigging conspiracy give rise to numerous common questions of law or fact:

  a.     Whether Defendants conspired with others to fix bids and allocate TSCs at
         auctions in New Jersey, in violation of the Sherman Act and New Jersey's
         Antitrust Act, as well as numerous other state laws;

  b.     Whether Defendants' conduct had the anticompetitive effect of reducing and
         unreasonably restraining the market for the purchase of TSCs;

c.      The names of the individuals and entities who participated in the anticompetitive scheme;

d.      The duration of the anticompetitive scheme;

e.      The effect of Defendants' conduct and the extent of injuries sustained; and

f.      The amount of damages the anticompetitive scheme caused members of the class.

These questions revolve around the existence, scope, effectiveness, and implementation of Defendants' conspiracy and are central to the claims of each member of the Settlement Class. Thus, the proposed Settlement Class satisfies the commonality requirement.

### C.      The Named Plaintiffs' Claims Are Typical

The proposed Settlement Class also satisfies Rule 23(a)'s typicality requirement.  The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Rule 23(a)(3)'s "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin*, 391 F.3d at 531 (quotation marks omitted).  "A named Plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 WL 2085357, at *3 (D.N.J. July 16, 2007).

In this case, the claims of the Named Plaintiffs—Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Arlene Davies, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.—are typical of the claims of the proposed Settlement Class members because they all arise from the same bid-rigging conspiracy that gives rise to the claims of the class.  Plaintiffs assert the same legal claims on behalf of themselves and the proposed class; namely, that they sustained damages as a result of Defendants' common course of conduct in violation of federal

and state statutes.  Defendants' bid-rigging scheme for TSCs is the basis for the claims of every

Named Plaintiff and putative class member.  These similarities satisfy Rule 23(a) typicality.

### D.      The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Settlement Class

The Named Plaintiffs will "fairly and adequately protect the interests of the class." Fed.

R. Civ. P. 23(a)(4).  The adequacy inquiry "assures that the named plaintiffs' claims are not

antagonistic to the class and that the attorneys for the class representatives are experienced and

qualified to prosecute the claims on behalf of the entire class."  *Beck v. Maximus, Inc.*, 457 F.3d

291, 296 (3d Cir. 2006) (quotation marks omitted).

Here, the interests of the Named Plaintiffs and the putative Settlement Class members are

aligned because they all suffered similar injury in the form of inflated interest rates due to the

alleged collusion at TSC auctions.  By proving their own claims, the Named Plaintiffs would

necessarily help to prove the claims of their fellow putative Settlement Class members.

Gassman Decl. ¶ 28.  In addition, the Named Plaintiffs have no interests that are antagonistic to

the Class.  Gassman Decl. ¶ 29.  Further, Interim Class and Liaison Counsel are experienced

class-action litigators familiar with the legal and factual issues involved, and they have

competently and aggressively prosecuted this complex case.  Gassman Decl. ¶¶ 8, 30.  Thus, for

settlement purposes, the adequacy requirement is satisfied.

### E.      The Proposed Settlement Class Satisfies Rule 23(b)(3)

The proposed Settlement Class also satisfies the requirements of Rule 23(b)(3)—

predominance and superiority.  Rule 23(b)(3) provides that a class may be certified if the Court

finds that "questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."

21

### 1.     Common Questions of Law and Fact Predominate

First, the common questions identified above predominate over individual questions in this case. "Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625. "The focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298, 345 (3d Cir. 2011) (explaining that to show that common questions predominate with respect to antitrust injury, plaintiffs must demonstrate that the element of antitrust impact is "capable of proof at trial through evidence that is common to the class rather than individual to its members") (internal citation omitted), *cert. denied*, 132 S. Ct. 1876 (2012).  Approval of class action settlements, however, "is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled."  4 Newberg on Class Actions § 11:28 (4th ed. 2002); *see also, e.g.*, *Sullivan*, 667 F.3d at 298-99 (certifying a settlement class despite the fact that variances in state law would likely have defeated predominance if the class was being certified for trial).

Here, Plaintiffs will necessarily focus on the conduct of Defendants, rather than the conduct of individual class members, to demonstrate that the bid-rigging conspiracy existed. Proof of how Defendants implemented and enforced their conspiracy will be common for all Settlement Class members, because it will be predicated on establishing the existence of Defendants' conspiracy to manipulate TSC interest rates across New Jersey that impacted the entire market for TSCs during the relevant class period.  *Sullivan*, 667 F.3d at 298; *see, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 268 (3d Cir. 2009) (finding predominance by

determining that the elements of a Sherman Act violation for concerted anticompetitive activity focused on "the conduct of the defendants"); *see also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) ("[C]ommon issues [ ] predominate here because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did.") (internal citation omitted).  As a result, common issues relating to the existence and effect of the alleged conspiracy to manipulate TSC interest rates predominate over any questions arguably affecting individual class members alone.

**2.      A Class Action Is Superior To Other Methods of Adjudication**

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Class adjudication of Plaintiffs' claims here would be superior to individual trials, and joinder of all Settlement Class members is impracticable.  The class action mechanism is superior to its alternatives, particularly with respect to settlements, because it ensures that the claims of the absent class members will be resolved efficiently.  *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy").  And "[i]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure § 1781 at 254-55 (3d ed. 2004).

Absent class certification, many members of the proposed Settlement Class here would go uncompensated because they would lack adequate monetary incentives to pursue their claims individually.  S*ee O'Brien*, 2012 WL 3242365, at *9 (finding superiority because, *inter alia*, it was "not apparent that the money potentially recoverable by an individual class member as

23

compared to the cost to pursue recovery through a lawsuit is sufficient to make individual

litigation a realistic possibility").  The prosecution of separate actions by individual members of

the proposed class would impose heavy burdens on the courts and the parties, and would create a

risk of inconsistent rulings, which further favors class treatment.  Moreover, the interests of class

members in individually controlling the prosecution of separate claims are outweighed by the

efficiency of the class mechanism.  Therefore, a class action is the superior method of

adjudicating the claims raised in this case.

Because the proposed Settlement Class meets the requirements of Rule 23(a) and

23(b)(3), it should be certified for settlement purposes.

### III.   THE COURT SHOULD APPOINT PLAINTIFFS' INTERIM CLASS COUNSEL AND LIAISON COUNSEL AS SETTLEMENT CLASS COUNSEL

Rule 23(c)(1)(B) states that an order certifying a class action "must appoint class counsel

under Rule 23(g)." The court must consider "(i) the work counsel has done in identifying or

investigating potential claims in the action; (ii) counsel's experience in handling class actions,

other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge

of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed.

R. Civ. P. 23(g)(1)(A).

On October 22, 2012, after considering competing motions, the Court appointed Hagens

Berman Sobol Shapiro, LLP and Hausfeld LLP as Interim Class Counsel, and Lite DePalma

Greenberg, LLC as Interim Liaison Counsel.  *See* Order of Oct. 22, 2012, Dkt. No. 109.  The

work done by these counsel since their appointment provides a substantial basis for a finding that

they satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as

Settlement Class Counsel.  Gassman Decl. ¶ 30.  These firms have "performed a great deal of

work investigating the facts underlying these cases and have otherwise prepared these cases for a

putative class action"; and they have negotiated and executed settlement agreements with 17

total Defendants.  Gassman Decl. ¶ 30; *see also* Memorandum Opinion of Oct. 22, 2012, Docket

No. 108.  Accordingly, Interim Class and Liaison Counsel should be appointed as Settlement

Class Counsel.

## IV.    THE COURT SHOULD DEFER FULL NOTICE

With Settling Defendants' consent, Plaintiffs seek this Court's approval to defer the full

class notice of these partial settlements until the aggregate proceeds from all settlements amount

to at least $1,000,000 (excluding notice costs), or for two years following the entry of the

proposed Preliminary Approval Order, whichever is earlier.  Deferring notice is a common

practice in cases where claims against other defendants remain and notice costs may be high.  A

joint notice will increase efficient use of the settlement fund paid by Settling Defendants

resulting in more compensation being available to the class and avoid unnecessary confusion.

*See In re Air Cargo Shipping Services Antitrust Litig.*, MDL. No. 1775, 06-MD-1775 (E.D.N.Y.

Jan 5, 2011); Gassman Decl., at Ex. J (granting preliminary approval to the settlement with El Al

Israel Airlines Ltd. while finding that class counsel had proposed to submit notice plans at a later

date); *In re Processed Egg Prod. Antitrust Litig.,* MDL No. 2002, 08-MD-2002 (E.D. Pa. Oct.

23, 2009); Gassman Decl., at Ex. K (granting preliminary approval of settlement with defendant

Sparboe while noting that plaintiffs were not seeking approval of a form and notice plan at the

time); *cf. Janovici v. DVI, Inc.*, No. Civ-A-2:03-cv-04795-LD, 2003 WL 22849604, at *10 (E.D.

Pa. Nov. 25, 2003) (noting that multiple notices with differing deadlines "certainly could have

created confusion among potential class members"); *Gomez v. Rossi Concrete Inc.*, 08-cv-1442-

BTM-CAB, 2011 WL 666888, at *2 (S.D. Cal. Feb. 17, 2011) (noting possibility that multiple

notices may "create confusion for potential class members").

382736.1

Indeed, deferral would permit the combination of several settlement class notices in this case: while 17 Defendants[10] have already settled, Plaintiffs expect additional settlements in the near future.  Gassman Decl. ¶ 33.  Combining the notice of any additional settlements with those already preliminarily approved will avoid unnecessary costs as well as duplicative and confusing notices.  *Id.* It will also reduce the burden on the Court of overseeing several rounds of class notice.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, at ¶ 10 (N.D. Cal. May 3, 2010); Gassman Decl., at Ex. L (order granting preliminary approval of partial class settlement and deferring notice "[t]o avoid the possible duplication of class notices").

Rule 23(c)(2) provides that class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]."  Fed. R. Civ. P. 23(e)(1).  "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment."  *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

If the Court approves this proposal, Plaintiffs will provide proper notice and will detail all notice requirements in a subsequent motion to be filed with this Court.  The precise contours and content of that notice will necessarily be determined based on the terms of the Settlements that have been preliminarily approved, but in any event, will comply with the requirements of Rule 23(c)(2).  Accordingly, Plaintiffs respectfully request that the Court defer the issuance of any notice until such time as the additional settlements are presented to the Court.

---

[10]  The seventeen (17) Settling Defendants include the sixteen (16) defendants which entered into the five settlement agreements at issue here, plus Defendant Rothman.

26

382736.1

V.    **THE COURT SHOULD APPROVE WRITTEN NOTICE OF REDEMPTION DISCOUNTS FOR APPLICABLE SETTLEMENTS**

Plaintiffs seek this Court's approval to disseminate limited written notice to certain New Jersey property owners who had tax sale certificates purchased by the Butler/Farber Defendants, Defendant Pisciotta, and Defendant May.  These Settling Defendants are offering to redeem any TSCs acquired during the class period and held at the execution of the Settlement Agreement by the relevant Settling Defendant for a one-time discounted payment.

Courts have allowed for class members to begin receiving relief after preliminary approval.  *See, e.g., In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y., Nov. 27, 2012) Gassman Decl., at Ex. M (Class Settlement Preliminary Approval Order) (approving a settlement in which injunctive relief to class members began sixty days after preliminary approval and before final approval); s*ee also Alves v. Main*, No. 01-789, 2012 WL 6043272, at *15 (D.N.J. Dec. 4, 2012) ("Defendants have already begun to the implement the settlement, even though it has not been approved."); *Hanson v. Acceleration Life Ins. Co.*, No. CIV A3-97-152, 2000 WL 33340298, at *4(D.N.D. June 21, 2000) (finding that a rate reduction by defendant insurance companies following preliminary approval was just as important as the fund that would eventually provide compensation to class members because of the "immediate availability of this relief" and the fact that the premium reduction represented "a very real and substantial benefit to elderly class members on fixed incomes.").

Accordingly, Plaintiffs respectfully request that the Court allow limited written notice of these redemption discount offers to be disseminated to relevant property owners.  A list of all property owners who would receive the written discount offers is attached to the Gassman Decl., at Ex. I.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court: (1) to certify the proposed Settlement Class: (2) to preliminarily approve the five Settlement Agreements submitted herein; (3) to appoint Interim Class Counsel and Interim Liaison Counsel as Settlement Class Counsel; (4) to defer the dissemination of full class notice until the aggregate proceeds from all settlements with Defendants amount to at least $1,000,000, or for two years following the entry of the proposed Preliminary Approval Order, whichever is earlier; and 5) to allow limited notice of discount offers to be disseminated to owners of real property in New Jersey, who had a tax sale certificate issued with respect to their property, and which was purchased and held by the Butler/Farber Defendants, Defendant Pisciotta, or Defendant May at the relevant time.

Dated: July 12, 2013

LITE DePALMA GREENBERG, LLC

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

*Interim Liaison Counsel*

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman *(admitted pro hac vice)*
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

HAUSFELD LLP
Michael D. Hausfeld *(admitted pro hac vice)*
James Pizzirusso *(admitted pro hac vice)*
Seth R. Gassman *(admitted pro hac vice)*
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel: 202-540-7200
Fax: 202-540-7201

28

**HAGENS BERMAN SOBOL**
**SHAPIRO LLP**
Jason A. Zweig *(admitted pro hac vice)*
New York, NY 10119555 Fifth Avenue,
17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Class Counsel*

29