**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | : | |
| IN RE:  NEW JERSEY TAX SALES | : | CONSOLIDATED CIVIL CLASS ACTION |
| CERTIFICATES ANTITRUST LITIGATION | : | NO:  3:12-CV-01893-MAS-TJB |

**CCTS CAPITAL, LLC AND CRESTAR CAPITAL, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

Jay E. Kagan, Esquire
Matthew Faranda-Diedrich, Esquire
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Tel: 215-575-7000
Fax: 215-575-7200
*Attorneys for CCTS Capital, LLC and Crestar
Capital, LLC*

Dated:  September 12, 2013

11281278_1

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND .....................................................................................................2

III.  ARGUMENT...........................................................................................................3

      A.    STANDARD..................................................................................................3

      B.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS
           TO THE MOVING DEFENDANTS BECAUSE IT FAILS TO PLEAD
           FACTS PLAUSIBLY SUGGESTING THAT THE MOVING
           DEFENDANTS JOINED THE CONSPIRACY FORMING THE BASIS
           FOR ALL COUNTS ASSERTED AGAINST THE MOVING
           DEFENDANTS ................................................................................................5

      C.    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE
           DISMISSED IN ITS ENTIRETY AS TO THE MOVING DEFENDANTS
           BECAUSE THE INDIVIDUAL COUNTS SUFFER FROM FATAL
           DEFECTS ........................................................................................................9

           1.    The Filed Rate Doctrine Bars All Of Plaintiffs' Claims............................10

           2.    The Sherman Act and New Jersey Antitrust Act Claims (Counts
                 One and Two) Should Be Dismissed Because Plaintiffs Lack
                 Antitrust Standing.....................................................................................10

           3.    The Declaratory Judgment Claim (Count Six) Should Be
                 Dismissed As Duplicative Of the Sherman Antitrust Claim .....................11

           4.    The State Law Claims Should Be Dismissed For A Variety Of
                 Reasons....................................................................................................11

                a.    Count Four Should Be Dismissed Because N.J.S.A. § 54:5-
                      52 Does Not Create An Independent Cause Of Action.................11

                b.    Counts Two, Three And Five Should Be Dismissed
                      Because Plaintiffs Have Not Pled Fraud With Particularity..........12

                c.    Count Three Should Be Dismissed Because It Fails To
                      State A Cause Of Action For Forfeiture Under N.J.S.A. §
                      54:5-63.1 .....................................................................................12

                d.    Plaintiffs Claim For Unjust Enrichment (Count Five)
                      Should Be Dismissed As A Tag-Along Claim ..............................13

IV.   CONCLUSION.......................................................................................................14

i

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009)..................................................................................................4

*Bangura v. City of Philadelphia,*
  338 Fed. Appx. 261 (3d Cir. July 29, 2009)..............................................................4

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.,*
  118 F.3d 178 (3d Cir. 1997) ......................................................................................11

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)................................4, 5, 12

*Cmty. Dev. Co. v. Seaside Gardens, Inc.,*
  7 N.J. 153 (1951) .......................................................................................................12

*Conley v. Gibson,*
  355 U.S. 41 (1957) ......................................................................................................4

*Ethypharm S.A. France v. Abbott Laboratories,*
  707 F.3d 223, 2013 WL 238794 (3d Cir. Jan. 23, 2013)............................................11

*In re Lower Lakes Erie Iron Ore Antitrust Litig.,*
  998 F.2d 1144 (3d Cir. 1993) ....................................................................................11

*In re Wellbutrin XL Antitrust Litig.,*
  260 F.R.D. 143 (E.D. Pa. 2009) .................................................................................11

*In re: Elec. Carbon Prods. Antitrust Litig.,*
  333 F. Supp. 2d 303 (D. N.J. 2004)............................................................................7

*In re: N.J. Title Ins. Litig.,*
  683 F.3d 451 (3d Cir. 2012) ......................................................................................10

*In re: Processed Egg Prods. Antitrust Litig.,*
  821 F. Supp. 2d 709 (E.D. Pa. 2011) (MDL) ...............................................1, 4, 7, 8

*Lewis v. Casey,*
  518 U.S. 343 (1996) ...................................................................................................11

*McCray v. Fid. Nat'l Title Ins. Co.,*
  682 F.3d 229 (3d Cir. 2012) ......................................................................................10

11281278_1

*Pereira v. Azevedo,*
No. 12-907, 2013 WL 1655988 (D. N.J. Apr. 17, 2013)............................................................13

*Ronly, Ltd. v. Feingold,*
1990 WL 187019 (E.D. Pa. Nov. 27, 1990) ....................................................................6

*Turbe v. Gov't of Virgin Islands,*
938 F.2d 427 (3d Cir.1991) ............................................................................................4

*US LEC Communications LLC v. Qwest Communications Company,*
No. 10-4106, 2011 WL 2474262 (D. N.J. June 20, 2011) ..........................................11

*Utilimax.com, Inc. v. PPL Energy Plus, LLC,*
378 F.3d 303 (3d Cir. 2004) ........................................................................................10

## Statutes

15 U.S.C. § 1.........................................................................................................2, 4, 6, 10
Fed. R. Civ. P. 12(b)(6) ..................................................................................................4
Fed. R. Civ. P. 12(c) ...................................................................................................3, 4
N.J.S.A. § 54:5-1, *et seq.*.......................................................................................2, 10, 12
N.J.S.A. § 54:5-52 .........................................................................................................11
N.J.S.A. § 56:9-3 ......................................................................................................2, 10

## Other Authorities

William Meade Fletcher, *Cyclopedia of Law of Private Corporations* § 4878 (perm. ed. rev. vol.
2006) ...............................................................................................................................8

## Rules

Fed. R. Civ. P. 12(h)(B)...................................................................................................3
Fed. R. Civ. P. 9(b) ........................................................................................................12

11281278_1

## I.   INTRODUCTION

Although several months in the making and consisting of 78 pages and 238 separate paragraphs, the Plaintiffs' Consolidated Master Class Action Complaint (the "**Complaint**") fails to plead *any* facts – let alone sufficient facts – to plausibly suggest that defendants CCTS Capital, LLC and Crestar Capital, LLC (collectively, the "**Moving Defendants**") actually joined or participated in the alleged decade-long tax lien conspiracy purportedly spanning the entire state of New Jersey.   Rather than satisfy their pleading burden with respect to the Moving Defendants, Plaintiffs have instead chosen to completely rely on a handful of conclusory and collective allegations in a desperate attempt to attribute the separate actions of other, unrelated companies to the Moving Defendants.   Plaintiffs' pleading technique of lumping several unaffiliated entities together and then using the global term "Defendants" throughout their complaint to collectively refer to those entities is simply not sufficient to tie each particular defendant to the alleged conspiracy.   As thoughtfully observed by a District Court in this Circuit when recently faced with a similar, insufficiently-pled antitrust claim: "[c]onclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases."[1]   Stripped bare of this pleading sleight of hand, the Complaint does not contain any specific facts to plausibly suggest that the Moving Defendants participated in the overarching conspiracy alleged by Plaintiffs.   Because all counts against the Moving Defendants depend on them having joined and participated in this conspiracy, which has clearly not been sufficiently pled by the Plaintiffs, judgment should be granted in favor of the Moving Defendants on all counts of the Complaint.

---

[1]   *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011) (MDL).

11281278_1

## II.    BACKGROUND

The Complaint alleges an "overarching statewide conspiracy" taking place between January 1, 1998 and February 28, 2009 to "unlawfully manipulate interest rates associated with tax sale certificates ("**TSCs**") sold at public auctions throughout the state of New Jersey ...."[2] This alleged conspiracy purportedly violated Section 1 of the Sherman Act, 15 U.S.C. § 1 (the "**Sherman Act**"), the New Jersey Antitrust Act, N.J.S.A. § 56:9-3 and multiple sections of the New Jersey Tax Lien Law, N.J.S.A. § 54:5-1, *et seq.*[3]  According to the Complaint, all of the named defendants (the "**Class Action Defendants**") ran afoul of these laws by "enter[ing] into an unlawful agreement and/or understanding to rig tax lien auctions at which they and their co-conspirators attended."[4]  The Complaint goes on to set forth specific allegations detailing the involvement of the Class Action Defendants in the purported interest-fixing conspiracy.  The Complaint identified six (6) representative auctions (the "**Representative Auctions**") occurring between June 28, 2000 and December 11, 2008 as the basis for its conspiracy claims.[5]

On March 8, 2013, the Moving Defendants filed their answer to the Complaint (the "**Answer**").  In the Answer, the Moving Defendants denied the Complaint's allegations that they were involved or joined in any form of overarching conspiracy.[6]  Further, the Answer made clear that the Moving Defendants are not subject to any criminal fines or charges related to the conspiracy alleged in the Complaint.[7]  The Answer also set forth that the Moving Defendants did not participate in the tax sale auctions where the named class representative plaintiffs' TSCs

---

[2]     Compl. at ¶ 1 (emphasis added).

[3]     *Id.*

[4]     *Id.*

[5]     *Id.* at ¶ 154 a.-g.

[6]     *E.g.,* Answer at ¶ 9.

[7]     *E.g.,* Answer at ¶ 11.

11281278_1

were purchased.[8]   Finally, the Answer noted that the Moving Defendants did not begin conducting any business until November 24, 2008 – several months after five (5) of the six (6) Representative Auctions occurred – and that the Moving Defendants did not participate in the one Representative Auction after their inception, which took place on December 10, 2008.[9]   The Moving Defendants' affirmative defenses pled in their Answer included, among other things, that Crestar Capital, LLC did not purchase any tax liens during the alleged class period.[10]

## III.   ARGUMENT

As pled in the Complaint, the only connection between the Moving Defendants and the several "CCTS" entities supposedly involved in the purported conspiracy at issue in this case is the overlap of two executives – David Farber and David Butler – among those companies.  Courts in this District have rejected this type of "single enterprise" theory of pleading as a way of imputing liability in Sherman Act antitrust conspiracy cases.  Because the Plaintiffs have failed to carry their pleading burden in this regard, and because all of the counts of the Complaint directed to the Moving Defendants depend on the existence of this same insufficiently-pled conspiracy, the Complaint should be dismissed as against the Moving Defendants in its entirety for the failure to state a claim for relief.

### A.   STANDARD

Federal Rule of Civil Procedure 12(c) allows for entry of judgment after the pleadings are closed based on the failure to state a claim upon which relief can be granted.[11]   When a Rule 12(c) motion alleges a failure to state a claim upon which relief can be granted, the court is to

---

[8]       *E.g.*, Answer at ¶¶ 17-27.

[9]       *E.g.*, Answer at ¶ 154.

[10]      Answer at Affirmative Defenses, ¶ 17.

[11]      *See* Fed. R. Civ. P. 12(h)(B) (defense of failure to state a claim may be raised through a Rule 12(c) motion).

3

11281278_1

analyze such a motion under the same standard as a Rule 12(b)(6) motion to dismiss.[12] Accordingly, "[a] motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'"[13] When evaluating a motion under Rule 12(c), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] This standard "asks for more than a mere possibility that a defendant has acted unlawfully."[16] Under this standard, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level," such that relief is plausible, not merely conceivable.[17] As the Supreme Court has made clear, the purpose of the shift in focus from *Conley v. Gibson*'s[18] "no set of facts" to *Twombly*'s "plausibility" standard is to encourage the careful review of complaints at the motion stage to serve the integral purpose of preventing parties from incurring the expense of discovery and litigation in response to allegations that are consistent with lawful conduct.[19]

In the context of antitrust claims brought under Section 1 of the Sherman Act, a plaintiff must show that the defendant was a party to a contract, combination or conspiracy, and that the

---

[12]    *Bangura v. City of Philadelphia*, 338 Fed. Appx. 261, 264 (3d Cir. July 29, 2009) (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991)).

[13]    *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

[14]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

[15]    *Id.* (citing *Twombly*, 550 U.S. at 556).

[16]    *Id.*

[17]    *Twombly*, 550 U.S. at 545, 555

[18]    355 U.S. 41 (1957).

[19]    *Id.* at 559.

conspiracy to which the defendant was party imposed an unreasonable restraint on trade.[20]   At

the pleading stage "[c]onsiderable focus" is directed to the "'crucial question' of whether 'the

challenged anticompetitive conduct stem[s] from independent decision or from an agreement,

tacit or express' because Section 1 'does not prohibit [all] unreasonable restraints of trade … but

only restraints effected by a contract, combination or conspiracy.'"[21]   Accordingly, to avoid

dismissal of antitrust claims, a plaintiff must plead "enough factual matter (taken as true) to

suggest that an agreement was made."[22]   Moreover, "[t]o provide reasonable notice to a specific

defendant of the claim(s) against it, a complaint must plausibly suggest that the individual

defendant actually joined and participated in the conspiracy."[23]   Thus, for a complaint to survive,

a plaintiff must carry the burden of offering allegations "that plausibly suggest that the defendant

agreed to the conspiracy, which, in the antitrust context, is a conscious commitment to a common

scheme designed to achieve an unlawful objective."[24]

> **B.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS TO THE MOVING DEFENDANTS BECAUSE IT FAILS TO PLEAD FACTS PLAUSIBLY SUGGESTING THAT THE MOVING DEFENDANTS JOINED THE CONSPIRACY FORMING THE BASIS FOR ALL COUNTS ASSERTED AGAINST THE MOVING DEFENDANTS**

According to the Complaint, each of the six (6) counts asserted against the Moving

Defendants are grounded in an "overarching statewide conspiracy" that the Moving Defendants

purportedly joined at some undisclosed point in time.[25]   Yet, the only factual allegations (as

---

[20]   *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 717 (E.D. Pa. 2011) (MDL).

[21]   *Id.* (quoting *Twombly*, 550 U.S. at 553).

[22]   *Twombly*, 550 U.S. at 556.

[23]   *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 719; *see also id.* at 720 ("In short, the issue is whether the pleading delineates to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy").

[24]   *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 719.

[25]   Compl. at ¶ 1.

opposed to unsupported and bald conclusions) made specifically against the Moving Defendants relating to their supposed joinder in this wide-ranging conspiracy consist entirely of two things – (1) collectively defining several unrelated (but similarly-named) entities as "CCTS" and (2) then identifying two overlapping executives – Mr. Farber and Mr. Butler – who supposedly worked for some (but not all) of the "CCTS" entities.[26] Based on these two facts – and these two facts alone – Plaintiffs seek to hold the Moving Defendants responsible for an alleged bid-rigging scheme that lasted more than 10 years and spanned the entire state of New Jersey.[27] These kind of conclusory and collective allegations fail to plausibly suggest that the Moving Defendants actually joined the conspiracy forming the basis for the Complaint. For that reason, all counts against the Moving Defendants should be dismissed, with prejudice.

As one District Court noted in a recent opinion when passing on the sufficiency of conspiracy allegations rooted in Section 1 of the Sherman Act, *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 717 (E.D. Pa. 2011) (MDL) ("***Egg Products***"), "'[s]imply using the global term 'defendants' to apply to numerous parties without any specific allegations

---

[26]   It is worth noting here that Mr. Farber and Mr. Butler and the other "CCTS" entities have entered into settlement agreement with Plaintiffs including releases for those defendants. [Docket at no 122]. While that agreement purports to exclude the Moving Defendants as releasees, because the Complaint alleges that the Moving Defendants' wrongful conduct flowed exclusively through Mr. Butler and Mr. Farber, the releases must be interpreted to similarly absolve the Moving Defendants of any and all liability. At a minimum, the settlement involving Mr. Butler, Mr. Farber and the other "CCTS" entities again demonstrates the utter insufficiency of Plaintiffs' pleading technique of lumping together several unaffiliated individual and entities, many of whom have been released from liability.

[27]   Although, as discussed above, the Moving Defendants were not in existence for nearly the entire timeframe of the alleged conspiracy, Plaintiffs appear to be proceeding on a "late joinder" theory of liability – *i.e.* that one who joins an existing conspiracy is equally liable with the other conspirators for all damages occasioned by the conspiracy. While the Moving Defendants dispute the applicability of this theory and note that the Third Circuit Court of Appeals has not directly approved of its use, the significant consequence of applying such a theory – which would result in the Moving Defendants, who were in existence for the last month of a 10 year long conspiracy, to share equal responsibility with all of alleged conspirators – precisely demonstrates why antitrust plaintiffs must plead specific facts to plausibly suggest that a defendant *actually joined* the ongoing conspiracy. *See Ronly, Ltd. v. Feingold*, 1990 WL 187019, *4 (E.D. Pa. Nov. 27, 1990).

that would tie each particular defendant to the conspiracy is not sufficient.'"[28]   "Conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases.  Such exposure ought to be limited to those who have been made at least reasonably aware of what they have done or failed to do, lest the litigants be left to wander aimlessly through the wilds and wilderness of discovery to no ultimate destination."[29]

In *Egg Products*, the court concluded that a complaint failed to plausibly suggest that several defendants agreed to join an overarching conspiracy where the complaint did not allege specific facts connecting each of those defendants to the illicit agreement.  The complaint in *Egg Products* collectively identified three separate defendants as the "Hillandale Entities"[30] despite the fact that the defendants had separate legal forms and principal places of business.[31]   The complaint went on to allege that the Hillandale Entities should be considered together because they shared common ownership and control by virtue of the fact that several executives and officers overlapped between the three companies.[32]   The court rejected plaintiffs' pleading strategy of "lumping the three entities together" by using the "umbrella term" the Hillandale Entities.[33]   The court similarly rejected the plaintiffs' attempt to use an overlap in personnel between the companies as a way to link the Hillandale Entities to one another for purposes of liability:

---

[28]     *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 720 (quoting *In re: Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 312 (D. N.J. 2004)).

[29]     *Id.*

[30]     Those defendants were Hillandale Gettysburg, L.P., Hillandale Farms Inc. and Hillandale Farms East, Inc. *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 745.

[31]     *Id.*

[32]     *Id.*

[33]     *Id.* at 745, 746.

11281278_1

> the entities merely are alleged to have individuals in overlapping ownership or controlling roles, and it cannot be said these allegations plausibly suggest that the entities are under common ownership or control such that a single decision-making source exercises definitive control over each of them ... . ... the mere "fact that two corporations have common shareholders, officers or directors, or that their names are similar," does not "impose liability on one for the torts of the other or its agents."[34]

The court determined that the plaintiffs' pleading approach led to "an absence of specific factual allegations ... to connect each (or any) of the Hillandale Entities directly to the conspiracy" and that none of the complaint's allegations even so much as implied "that the entities directly agreed to or participated in the conspiracy ... ."[35] The allegations made against the Moving Defendants in the Complaint are similarly infirm.

The Complaint collectively identifies and defines several unrelated entities as the "CCTS Defendants" and "CCTS."[36] The Complaint goes on to allege that the "CCTS Defendants" and/or "CCTS" engaged in a variety of illicit and illegal conduct.[37] However, *none* of these paragraphs separately identify the Moving Defendants by name; nor does a single one of the paragraphs make any specific allegations against the Moving Defendants, individually (as opposed to the CCTS Defendants or CCTS, collectively). Indeed, the Moving Defendants are not even mentioned specifically by name *anywhere* in the "FACTUAL ALLEGATIONS" section of the Complaint, except to note that David M. Farber ("**Mr. Farber**") and David Butler ("**Mr. Butler**") served as executives in a company referred to as "Company 1," which is

---

[34] *Id.* at 749 (quoting William Meade Fletcher, *Cyclopedia of Law of Private Corporations* § 4878 (perm. ed. rev. vol. 2006)).

[35] *Id.* at 747, 750.

[36] *See* Compl. at ¶ 35 (referring to Moving Defendants, along with defendants CCTS, LLC; CCTS Tax Liens I, LLC; CCTS Tax Liens II, LLC; Pro Capital LLC; and DSBD, LLC).

[37] Compl. at ¶¶ 1, 9, 38, 39, 40, 43, 56, 63, 79, 83, 88, 97, 104, 109, 117, 121, 125 and 129.

11281278_1

purportedly CCTS Capital, LLC, one of the Moving Defendants.[38]   Moreover, the Moving Defendants are identified by their respective names – CCTS Capital, LLC and Crestar Capital, LLC – only *once* in the rest of the Complaint.[39]   The balance of the Complaint lumps the Moving Defendants together with five (5) separate entities – CCTS, LLC; CCTS Tax Liens I, LLC; CCTS Tax Liens II, LLC; Pro Capital LLC; and DSBD, LLC – and alleges conduct against this collective "CCTS" group.[40]   Indeed, the only link alleged by the Complaint between these unrelated entities is that Mr. Farber and Mr. Butler were executives at one of the Moving Defendants – CCTS Capital, LLC – and the five (5) other "CCTS" entities.[41]

As noted by the court in *Egg Products*, however, this kind of overlap does not, without more, plausibly suggest that that the several, unrelated "CCTS" entities should be held liable on a collective basis.  Thus, as was the case in *Egg Products*, the instant Complaint lacks "specific factual allegations … to connect each (or any)" of the Moving Defendants directly to the conspiracy.  Because each and every count directed to the Moving Defendants depends on a finding that they joined and participated in the over-arching conspiracy, all such claims should be dismissed as to the Moving Defendants, with prejudice.

### C.   IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS TO THE MOVING DEFENDANTS BECAUSE THE INDIVIDUAL COUNTS SUFFER FROM FATAL DEFECTS

As the Court is well-aware, a group of defendants in this case have filed a Joint Motion to Dismiss, which has been extensively briefed.[42]   Rather than burden the Court with repetitive

---

[38]   *See* Compl. at ¶¶ 173 and 177.

[39]   Compl. at ¶¶ 29, 34.

[40]   Compl. at ¶ 35 (defining entities collectively as "CCTS"); *id.* at ¶¶ 1, 9, 38, 39, 40, 43, 56, 63, 79, 83, 88, 97, 104, 109, 117, 121, 125 and 129 (alleging conduct against "CCTS").

[41]   Compl. at ¶¶ 36-37.

[42]   Docket at entry nos. 174-1 and 254.

9

11281278_1

arguments that have already been expertly set forth by those defendants, this portion of the Memorandum expressly incorporates those arguments herein and, therefore, limits its discussion accordingly.

### 1.     The Filed Rate Doctrine Bars All Of Plaintiffs' Claims

The filed rate doctrine precluded antitrust suits that are "based on rates ... filed with federal or state agencies."[43]  Pursuant to the filed rate doctrine, "a plaintiff may not sue ... based upon rates that, although alleged to be the result of anti-competitive conduct, were filed with the ... agency responsible for overseeing such rates."[44]  It is well-established that the sole criterion for application of the doctrine is that the challenged rates were filed with a governmental body.[45] Because the TSCs and interest rates were filed with a governmental entity- the clerk or register of deeds, *see* N.J.S.A. § 54:5-51 – Plaintiffs' claims are barred by the filed rate doctrine.

### 2.     The Sherman Act and New Jersey Antitrust Act Claims (Counts One and Two) Should Be Dismissed Because Plaintiffs Lack Antitrust Standing

Plaintiffs antitrust claims – arising under both the Sherman Act and the New Jersey Antitrust Act, N.J.S.A. § 56:9-3 -- should be dismissed because Plaintiffs lack antitrust standing in at least two respects.  First, Plaintiffs have not plausibly alleged collusion or wrongful conduct at the particular auctions at which their individual liens were sold.  This pleading deficiency defeats standing.[46]  Second, Plaintiffs are not consumers or competitors in the relevant markets

---

[43]     *In re: N.J. Title Ins. Litig.*, 683 F.3d 451, 454 (3d Cir. 2012).

[44]     *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 378 F.3d 303, 306 (3d Cir. 2004).

[45]     *See McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 238 (3d Cir. 2012) ("the Supreme Court has never indicated that the filed rate doctrine requires a certain type of agency approval or level of regulatory review").

[46]     *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (named plaintiff "must allege and show that they personally have been injured"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) (plaintiff "must allege a distinct and palpable injury to himself ...").

11281278_1

defined in the Complaint.  Accordingly, under clear Third Circuit precedent, Plaintiffs have not

suffered antitrust injury and do not have standing to bring any such claims.[47]

### 3. The Declaratory Judgment Claim (Count Six) Should Be Dismissed As Duplicative Of the Sherman Antitrust Claim

While the Federal Rules permit parties to plead claims in the alternative, redundant

pleading is not permitted.[48]  Plaintiffs' declaratory judgment claim should be dismissed as

redundant because it is entirely duplicative of their Sherman Act claims.

### 4. The State Law Claims Should Be Dismissed For A Variety Of Reasons

#### a. Count Four Should Be Dismissed Because N.J.S.A. § 54:5-52 Does Not Create An Independent Cause Of Action

In Count Four, the Plaintiffs assert a cause of action under N.J.S.A. § 54:5-52 ("**Section

52**").  This claim should be dismissed because Section 52 does not create an independent cause

of action.  Rather it merely creates an evidentiary presumption.  As Justice Case of the New

Jersey Supreme Court expressly stated, Section 52 "is a statute upon the admission of evidence,

not upon pleading."[49]  There is no reported case sustaining a cause of action brought under

Section 52.  Plaintiffs cannot convert Section 52's evidentiary presumption into an independent

cause of action.  Accordingly, Count Four should be dismissed.

---

[47] *See In re Lower Lakes Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993) (setting forth five-factor test for determining antitrust standing, including factor of "antitrust injury"); *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 2013 WL 238794, *8 (3d Cir. Jan. 23, 2013) (finding lack of antitrust standing where plaintiffs "does not and cannot compete" with defendant); *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 181-82 (3d Cir. 1997) (holding that because plaintiffs never sold or distributed product "it is plain" that they were "not a competitor in the market").

[48] *See US LEC Communications LLC v. Qwest Communications Company*, No. 10-4106, 2011 WL 2474262, *4 (D. N.J. June 20, 2011) (distinguishing alternative pleading from redundant pleading).

[49] *Cmty. Dev. Co. v. Seaside Gardens, Inc.*, 7 N.J. 153, 158 (1951) (Case, J., dissenting).

11

11281278_1

b.   **Counts Two, Three And Five Should Be Dismissed Because Plaintiffs Have Not Pled Fraud With Particularity**

Plaintiffs' state law claims for violations of the New Jersey Antitrust Act (Count Two), the Tax Sale Law (Count Three) and unjust enrichment (Count Five) should be dismissed because Plaintiffs have failed to sufficiently plead any allegations of fraud, which allegations are necessary to overcome the statutory presumption of validity.[50] As explained at length herein, the Complaint's allegations fail to satisfy even the less-rigorous *Twombly* plausibility standard of pleading. As such, it is clear that Plaintiffs have not pled any allegations of fraud (with the specificity required by Fed. R. Civ. P. 9(b)) to overcome the presumption of validity afforded by Section 52. Given that the presumption of validity remains intact, Counts Two, Three and Five should be dismissed as precluded by Section 52.

c.   **Count Three Should Be Dismissed Because It Fails To State A Cause Of Action For Forfeiture Under N.J.S.A. § 54:5-63.1**

The forfeiture provision of the Tax Sale law, N.J.S.A. § 54:5-63.1 (the "**Forfeiture Provision**") applies only when a TSC holder charges sums "in excess of the amounts permitted" by Chapter Five of the Tax Sale Law. Accordingly, that Forfeiture Provision is only applied to charges that exceed either (1) the interest rate or lien amount shown on the fact of the TSC, or (2) the fees permitted by statute and set forth in an affidavit filed with the relevant municipal authority. Here, Plaintiffs do not allege that the Moving Defendants charged any excess sums. Accordingly, the Forfeiture Provision is not applicable to this case, and Count Three should be dismissed.

---

[50]   *See e.g., Seaside Gardens, Inc.*, 7 N.J. at 155-58 (dismissing complaint for failure to sufficiently allege fraud to rebut presumption of validity under Section 52).

12

          **d.**       **Plaintiffs Claim For Unjust Enrichment (Count Five) Should Be Dismissed As A Tag-Along Claim**

Plaintiffs' unjust enrichment claim should be dismissed as a tag-along claim.  New Jersey law simply does not recognize unjust enrichment as an independent tort, and such claims must be dismissed where, as is the case here, all other claims for relief fail to state a claim.[51]

---

[51]     *Pereira v. Azevedo*, No. 12-907, 2013 WL 1655988, *5 (D. N.J. Apr. 17, 2013).

13

## IV.   CONCLUSION

Rather than allege specific, tortious conduct by the Moving Defendants, Plaintiffs have instead chosen to completely rely on a handful of conclusory and collective allegations in a desperate attempt to attribute the separate actions of other, unrelated companies to the Moving Defendants. Without this pleading sleight of hand, the Complaint does not contain any specific facts to plausibly suggest that the Moving Defendants participated in the overarching conspiracy alleged by Plaintiffs. Because all counts in the Complaint depend on the Moving Defendants having joined and participated in this purported conspiracy, judgment should be granted in favor of the Moving Defendants on all counts of the Complaint. Alternatively, the Complaint should be dismissed in its entirety because each of the individual counts alleged against the Moving Defendants suffer from fatal defects.

Respectfully Submitted:

/s/ Jay E. Kagan
Jay E. Kagan, Esquire
Matthew Faranda-Diedrich, Esquire
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Tel: 215-575-7000
Fax: 215-575-7200
*Attorneys for CCTS Capital, LLC and
Crestar Capital, LLC*

Dated:  September 12, 2013

14

11281278_1