# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
## COUNSELLORS AT LAW

CHARLES C. CARELLA
BRENDAN T. BYRNE
PETER G. STEWART
ELLIOT M. OLSTEIN
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
CARL R. WOODWARD, III
MELISSA E. FLAX
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
LINDSEY H. TAYLOR
CAROLINE F. BARTLETT

JAMES D. CECCHI (1933-1995)
JOHN G. GILFILLAN III (1936-2008)

5 BECKER FARM ROAD
ROSELAND, N.J. 07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

RICHARD K. MATANLE, II
FRANCIS C. HAND
AVRAM S. EULE
RAYMOND W. FISHER

OF COUNSEL

RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT°
STEPHEN R. DANEK
DONALD A. ECKLUND
MEGAN A. NATALE
AMANDA J. BARISICH
ZACHARY S. BOWER+
MICHAEL CROSS
°MEMBER NY BAR ONLY
+MEMBER FL BAR ONLY

October 7, 2013

Honorable Michael A. Shipp, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

RE: **In Re New Jersey Tax Sales Certificates Antitrust Litigation
Master Docket No. 12-1893 (MAS)(TJB)**

Dear Judge Shipp:

This firm represents BBX Capital Corporation ("BBX") and Fidelity Tax LLC (together with BBX, "BankAtlantic"). I am writing on behalf of Bank Atlantic as well as defendants Phoenix Funding, Inc. ("Phoenix) and Benedict Caiola ("Caiola"), and Mooring Tax Asset Group, LLC ("Mooring") and MTAG Services, LLC ("MTAG") (together "Defendants") in response to the September 17, 2013 letter ("Sept. 17 Letter") submitted by Plaintiffs [Dkt #282]. As explained below, the State Court's decision in *Crusader Servicing Corp. v. Boyer*, Docket No. HNT-F-40780-08 ("State Court Decision") is based upon entirely different facts than those relevant to Defendants' pending joint motion to dismiss.

As an initial matter, the State Court Decision involves specific claims regarding a Tax Sale Certificate ("TSC") purchased at a specific auction on a particular date. This is in stark contrast to the claims alleged by Plaintiffs here, which purport to include a "class" of thousands of New Jersey property owners who failed to pay taxes and as to whose property TSCs were sold at thousands of auctions held by 566 municipalities between January 1, 1998 and February 28, 2009. Where the State Court Decision relates to a specific transaction, no such specificity exists as to the Complaint as alleged against the Defendants.

The State Court Decision also cannot cure Plaintiffs' complete failure here to include any specific factual allegations regarding the Defendants. *See* Joint Motion at 10-23. With respect to Defendants BBX and Fidelity, other than repetitious boiler-plate allegations, the Amended Complaint fails to include any specificity, and even fails to allege that either was present at any of the auctions where Plaintiffs' TSCs were sold. *See* Dkt # 173-1, at 3-6. The complaint is likewise bereft of factual specificity with respect to Mooring and MTAG, and does not allege that either entity participated in any of the relevant actions. *See* Dkt # 186, 264. Indeed, the complaint acknowledges that MTAG was not even formed until a year *after* the class period. *See* Compl. ¶ 61. With respect to Defendants Phoenix and Caiola, the Amended Complaint

October 7, 2013
Page 2

similarly fails to include any specificity, and fails to allege that either Phoenix or Caiola was present at any of the auctions where Plaintiffs' TSCs were sold. Indeed, the Amended Complaint identifies only a single auction, 13 years ago, allegedly attended by Phoenix (at which Phoenix purchased two TSCs, neither of which involved the Named Plaintiffs), and fails to identify a single auction that Caiola attended. *See* Dkt # 180-1.

In addition, and contrary to defendant Crusader who purchased the TSC in the State Court Case, the Defendants here have not pleaded guilty or admitted to engaging in any misconduct whatsoever.

The State Court Decision does not address the issue of antitrust standing, which is an independent basis for dismissing Plaintiffs' antitrust claims. Under established Third Circuit precedent, only competitors or consumers in the market alleged in the complaint are capable of sustaining "antitrust injury"—the quintessential component of antitrust standing. Here, the complaint alleges a bid rigging conspiracy in the auction "market for the sale of TSCs in the state of New Jersey." Compl. ¶ 208. Yet Plaintiffs were not participants in those auctions—none of them ever bought or sold a TSC. Because Plaintiffs are non-participants in the market alleged in the complaint, their alleged injuries are, by definition, not antitrust injuries, and accordingly, they cannot plead a basis for antitrust standing.

Moreover, as shown in Defendants' Joint Motion, Plaintiffs' federal and state antitrust claims fall squarely within the ambit of the filed rate doctrine, which precludes antitrust claims premised upon rates filed with a government agency. The interest rates on TSCs that form the basis for the antitrust claims are the result of an auction process expressly prescribed by a comprehensive regulatory regime, and the rates determined through that process must be filed with the appropriate municipality to be effective. *See* Joint Motion at 24-27; Joint Reply at 19-22. Nothing in the State Court Decision cited by Plaintiffs rebuts this argument.

Judge Ciccone's conclusion that the filed rate doctrine did not apply to the New Jersey Antitrust Act claims before her was based on the erroneous premise that those claims did not challenge "the [TSC interest] rate itself" but rather "unlawful conduct that unnecessarily and artificially held the rate at [] eighteen percent." State Court Decision at 6. This is wrong since the gravamen of Plaintiffs' antitrust claims is that the rates applicable to their TSCs would have been lower but for Defendants' alleged anticompetitive conduct. Thus, Plaintiffs here are necessarily challenging "the rate itself"; if they are not, then they have no damages. The alleged "unlawful conduct" in the operation of the auctions has no bearing on the application of the filed rate doctrine, which "is not determined by culpability of defendant's conduct or the possibility of inequitable results." *See Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998). The doctrine bars antitrust claims "whenever tariffs have been filed," *Square D Co. v. Niagara Frontier Tariff Bureau Inc.*, 476 U.S. 409, 417 n.19 (1986), which indisputably happened here.

The fact that the rates were set by auction does not mean, as Judge Ciccone suggests, that "there is no deference to be given to the ratemaking authority." State Court Decision at 6. The filed rate doctrine does not require "a certain type of agency approval or level of regulatory review." *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 238 (3d Cir. 2012). The Third

October 7, 2013
Page 3

Circuit has applied the doctrine to market-based rate-setting schemes, like the tax lien auctions established by New Jersey's Tax Sale Law. *See, e.g., Utilimax.com v. PPL Energy Plus, LLC*, 378 F.3d 303, 305 (3d Cir. 2004) (applying filed rate doctrine to rates for electricity capacity credits determined by auction).

      Finally, Section 63.1 of the Tax Sale Law ("TSL") provides for the forfeiture of a TSC when the holder knowingly charges a fee or charge "in excess of the amounts permitted by chapter 5 of [the TSL]." Judge Ciccone concluded that the statute calls for forfeiture whenever the fee charged is "excessive or unlawful." State Court Decision at 7. As a result of that misinterpretation, Judge Ciccone did not reach the critical issue presented here: Did the Complaint allege that, in connection with the redemption of a TSC, the Defendants charged fees in excess of the amounts permitted by Chapter 5 of the TSL? As set forth in the Defendants' briefs, no such allegation exists. See Joint Motion at 41. In particular, the Plaintiffs failed to allege that the interest rates at issue violated any specific provision of the TSL.

      Moreover, even if Count 3 were deemed to state a claim against the defendants generally, Count 3 still failed to state a claim against these Defendants. Section 63.1 applies only to fees and charges assessed by the holder of a TSC "in connection with the redemption" of a TSC. Only one of the Plaintiffs – Son – is alleged to have redeemed any TSC's from a defendant – Crusader. See Complaint at ¶26 ("Plaintiff Son redeemed both TSC's on August 15, 2009, from defendant Crusader"). In sum, there is no allegation in the Complaint that any Defendants (other than Crusader) charged an excessive fee in connection with the Plaintiffs' redemption of a TSC. Thus, the only claim that the Plaintiffs could possibly sustain under §63.1 is against Crusader, and Count 3 should be dismissed as to the Defendants.

      Accordingly, as shown herein and in Defendants' Motions to Dismiss and related briefing, Plaintiffs' contention that the State Court decision is highly persuasive to this Court with respect to the Defendants is baseless.

      We thank you for your continued consideration of this matter.

                              Very truly yours,

                          CARELLA, BYRNE, CECCHI,
                          OLSTEIN, BRODY & AGNELLO

                          JAMES E. CECCHI

JEC:jas