# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. | Master Docket No. 3:12-CV-01893-MAS-TJB |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARYAPPROVAL OF SETTLEMENTS WITH SASS DEFENDANTS, CRUSADER DEFENDANTS, DEFENDANT PLYMOUTH PARK, AND PHOENIX DEFENDANTS, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF INTERIM CLASS AND LIAISON COUNSEL AS SETTLEMENT CLASS COUNSEL, AND DEFERRAL OF CLASS NOTICE**

---

**LITE DePALMA GREENBERG, LLC**
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

*Interim Liaison Counsel*
[Additional counsel listed on signature page]

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 4

   I.     STATUS OF THIS LITIGATION...................................................... 5

   II.    THE SETTLEMENT AGREEMENTS ............................................ 6

        A.     The Proposed Settlements....................................................... 7

        B.     Dismissal With Prejudice and Release of Claims..................... 10

        C.     Notice ................................................................................... 10

ARGUMENT ................................................................................................................ 11

   I.     THIS COURT SHOULD PRELIMINARILY APPROVE THE
          SETTLEMENT AGREEMENTS ...................................................... 11

        A.     Class Action Settlement Procedure......................................... 12

        B.     The Settlements Are Fair, Reasonable, and Adequate.............. 13

   II.    THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................. 16

     A.   The Settlement Class Is Numerous and Ascertainable........................... 16

        B.     There Are Common Questions of Law and Fact ...................... 18

        C.     The Named Plaintiffs' Claims Are Typical .............................. 19

        D.     The Named Plaintiffs Will Fairly and Adequately Represent
             the Interests of the Settlement Class ....................................... 19

        E.     The Proposed Settlement Class Satisfies Rule 23(b)(3) ........... 20

   III.   THIS COURT SHOULD APPOINT PLAINTIFFS' INTERIM
          CLASS COUNSEL AND LIAISON COUNSEL AS SETTLEMENT
          CLASS COUNSEL............................................................................... 23

IV.    THIS COURT SHOULD APPROVE A SHORT DEFERAL
       OF THE PROPOSED NOTICE OF SETTLEMENT .......................................... 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agostino v. Quest Diagnostics,*
  256 F.R.D. 437 (D.N.J. 2009) ............................................................................17

*Agretti v. ANR Freight Sys., Inc.,*
  982 F.2d 242 (7th Cir. 1992) ............................................................................14

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ..............................................................................16, 20

*Beck v. Maximus, Inc.,*
  457 F.3d 291 (3d Cir. 2006) ............................................................................19

*E.E.O.C. v. Com. of Pa.,*
  772 F. Supp. 217 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d
  738 (3d Cir. 1992) ............................................................................14

*Ehrheart v. Verizon Wireless,*
  609 F.3d 590 (3d Cir. 2010) ............................................................................15

*Gates v. Rohm & Haas Co.,*
  248 F.R.D. 434 (E.D. Pa. 2008) ............................................................................14

*Gen. Tel. Co. of the Sw. v. Falcon,*
  457 U.S. 147 (1982) ............................................................................19

*Hanlon v. Palace Entm't Holdings, LLC,*
  No. 11-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ........................................12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ............................................................................11, 12

*In re Ins. Brokerage Antitrust Litig.,*
  579 F.3d 241 (3d Cir. 2009) ............................................................................21

*In re Linerboard Antitrust Litig.,*
  305 F.3d 145 (3d Cir. 2002) ............................................................................21

*In re Motor Fuel Temperature Sales Practices Litig.,*
  258 F.R.D. 671 (D. Kan. 2009) ............................................................................15

*In re New Jersey Tax Sales Certificates Antitrust Litigation,*
  No. 3:12-cv-1893-MAS-TJB ............................................................................5

*In re Processed Egg Prods. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012)..................................................................24

*In re Prudential Ins. Co. of Am. Sales Practices Litig. ("Prudential I")*,
   962 F. Supp. 450 (D.N.J. 1997) ................................................................14

*In re Sch. Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1990).....................................................................11

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)......................................................11, 18, 19

*Jones v. Commerce Bancorp, Inc.*,
   No. 05-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) ........................19

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012)......................................................................17

*Moskowitz v. Lopp*,
   128 F.R.D. 624 (E.D. Pa. 1989).................................................................17

*O'Brien v. Brain Research Labs, LLC*,
   No. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ...........................22

*Smith v. Prof'l Billing & Mgmt. Servs.*,
   Civ. No. 06-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ................12

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001).................................................................17, 18

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1876 (2012)...................20, 21

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)...............................................................14, 16

*Weiss v. Mercedes-Benz of N. Am. Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995).....................15

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910).....................................................................................11

*Zimmer Paper Prod's, Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86 (3d Cir. 1985)..........................................................................24

*Zinberg v. Wash. Bancorp, Inc.*,
   138 F.R.D. 397 (D.N.J. 1990).....................................................................17

STATUTES

Section 1 of the Sherman Act, 15 U.S.C. § 1 .................................................................5

OTHER AUTHORITIES

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* §11:41, at 90 (4th ed. 2002) .......................................................................................................................14

Fed. R. Civ. P. 23(a)(4) ...............................................................................................19

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................24

Fed. R. Civ. P. 23(e) ....................................................................................................16

Fed. R. Civ. P. 23(g)(1)(A) ..........................................................................................23

Federal Rule of Civil Procedure 23 ...................................................................... passim

Rule 23(a) ...........................................................................................................16, 17, 19

Rule 23(a)(3)'s .............................................................................................................19

Rule 23(a) and 23(b)(3) ...............................................................................................23

Rule 23(a)'s ...........................................................................................................16, 18, 19

Rule 23(b) ....................................................................................................................16

Rule 23(b)(3) ..........................................................................................................16, 17, 20, 22

Rule 23(c)(1)(B) ..........................................................................................................23

Rule 23(c)(2) ...............................................................................................................24

Rule 23(e)(1) ...............................................................................................................24

Rule 23(g) ....................................................................................................................23

Rule 23[(c)] and Rule 23(3) ........................................................................................24

Rule 23's ...............................................................................................................16, 17

## <u>INTRODUCTION</u>

On April 4, 2013, Plaintiffs moved for preliminary approval of a class settlement reached with Defendant Robert E. Rothman (Dkt. No. 217), and, on July 12, 2013, for preliminary approval of five class action settlements with the Butler/Farber and Mercer Defendants and Defendants Richard J. Pisciotta, Jr., William A. Collins, and Isadore H. May (Dkt. No. 266).   In those six settlement agreements, settling Defendants agreed to pay a total of $955,000.   This Court granted preliminary approval to those six settlements on August 13, 2013, (Dkt. Nos. 276, 277) finding, among other things, that the agreements "fell within the range of reasonableness."

In the five months since the Plaintiffs' last preliminary approval motion, Plaintiffs have reached four additional settlements with four defendant groups (totaling 17 defendants): (1) M.D. Sass Investors Services, Inc.; M.D. Sass Tax Lien Management, LLC; M.D. Sass Municipal Partners – I, L.P.; M.D. Sass Municipal Partners – II, L.P.; M.D. Sass Municipal Partners – III, L.P.; M.D. Sass Municipal Partners – IV, L.P.; M.D. Sass Municipal Partners – V, L.P.; M.D. Sass Municipal Partners – VI, L.P. (collectively, the "Sass Entities"); Vinaya K. Jessani; and Stephen E. Hruby (collectively with the Sass Entities, the "Sass Defendants"); (2) Royal Bancshares of Pennsylvania, Inc. ("RBPI"); Royal Bank America ("RBA"); Crusader Servicing Corporation ("CSC"); and Royal Tax Lien Services, LLC ("RTLS") (collectively, the "Crusader Defendants"); (3) Plymouth Park Tax Services, LLC d/b/a Xspand ("Defendant Plymouth Park"); and (4) Phoenix Funding, Inc. ("Phoenix Funding") and Benedict Caiola ("Caiola") (collectively, the "Phoenix Defendants).  Collectively, the Sass Defendants, Crusader Defendants, Defendant Plymouth Park, and Phoenix Defendants are referred to as the "Settling Defendants".[1]

---

[1] "Plaintiffs" in this motion and brief refers to (1) all Plaintiffs listed in the Consolidated Master Class Action Complaint filed December 21, 2012 with respect to the Settlement Agreement with the Crusader Defendants; and (2) Plaintiffs Gila Bauer as Trustee for the Gila Bauer

In exchange for being released from this action, the Settling Defendants have agreed to pay a combined settlement amount of $6,775,000 and provide certain cooperation to Plaintiffs regarding the claims that will continue to be pursued against the non-settling Defendants.[2]  In addition, subject to certain narrow exceptions, with regard to those New Jersey property owners who had a tax sale certificate sold in connection with an outstanding tax lien, and which was purchased by a Settling Defendant during January 1, 1998 through February 28, 2009 (the "Class Period") and was still held by that Settling Defendant when the relevant Settlement Agreement was executed, the Settling Defendants have each agreed to offer 15% discounts off of the total amount owed (*i.e.* principal and interest).  In the 10 settlement agreements now reached, all settling Defendants have agreed to pay $7,730,000 to date, and Plaintiffs continue to negotiate settlements with other defendants.

Pursuant to Federal Rule of Civil Procedure 23, and with the support of the Settling Defendants, Plaintiffs move for preliminary approval of the four class settlement agreements. These settlements, like those that came before, clearly fall within the range of reasonableness and therefore merit preliminary approval.

---

Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc. with respect to the Settlement Agreement with the Sass Defendants, Defendant Plymouth Park, and Phoenix Defendants.

[2]  Pursuant to this Court's Order dated December 4, 2013 (Dkt. No. 316), Plaintiffs will file a First Amended Consolidated Master Class Action Complaint ("Consol. Compl.") on January 3, 2014 ("First Amended Complaint").  Notwithstanding the six settlement agreements granted preliminary approval on August 13, 2013 (Dkt. No. 276, 277) and the four settlement agreements which Plaintiffs are seeking preliminary approval for in this motion, ten (10) defendants, or defendant groups, will remain in the Amended Complaint.  Plaintiffs have reached settlements-in-principle with four of the remaining 10 defendants or defendant groups. The settlements-in-principle total $735,000 and will be submitted to the Court in early 2014. Thus, Settling Defendants have agreed, in executed agreements or in principle, to pay a total of $8.465 million.

2

The four proposed Settlement Agreements between Plaintiffs and the Settling Defendants, copies of which are attached to the accompanying Declaration of Seth Gassman, dated December 23, 2013 (hereinafter, the "Gassman Decl.") as Exhibits A, B, C, and D, represent the culmination of over 1.5 years of litigation and extensive settlement discussions.  If approved, these settlements would resolve all federal and state law claims brought by Plaintiffs against the Settling Defendants alleging that the Defendants engaged in an unlawful conspiracy to manipulate interest rates associated with tax sale certificates ("TSCs") sold at public auctions throughout New Jersey during the Class Period.

The Settlement Agreements require that the Sass Defendants pay $3,400,000, the Crusader Defendants pay $1,650,000, Defendant Plymouth Park pay $1,500,000, and the Phoenix Defendants pay $225,000.  As further consideration for settlement, following final approval of these agreements, subject to certain narrow exceptions, with regard to TSCs the Settling Defendants purchased during the Class Period and held at the time of execution of the relevant Settlement Agreement, the Settling Defendants have agreed to offer 15% discounts off of the TSC redemption amounts.  Dissemination of the discounted redemption offers from the Settling Defendants to those property owners who are entitled to a discount will occur following final approval of the Settlements.

Plaintiffs believe that the proposed settlements with the Settling Defendants are fair, reasonable, adequate, and are in the best interests of the members of the Settlement Class.  The Settlements resulted from protracted arm's-length negotiations by experienced counsel committed to the interests of their respective clients.  Gassman Decl. ¶¶ 6-7.  If approved, the Settlements will provide significant benefits to members of the Settlement Class in exchange for dismissal of the claims against the Settling Defendants with prejudice.  Further, the proposed

Settlement Class satisfies the requirements of Rule 23, and Plaintiffs' Interim Class and Liaison Counsel are well qualified to serve as Settlement Class Counsel as to these settlements, just as this Court previously appointed these same Interim Class and Liaison Counsel as Settlement Class Counsel for the six settlements to which this Court already granted preliminary approval. (Dkt. Nos. 276, 277).

Finally, Plaintiffs believe a short deferral of the notice program, in order to allow a vendor that Class Counsel have already retained to collect from affected townships and municipalities and organize for use in issuing notice data pertaining to all Settlement Class Members, is proper under the circumstances.  Because this deferral is reasonably calculated to provide individual notice to all Settlement Class Members at a future date, it will satisfy all requirements of Rule 23 and due process.  Once Plaintiffs receive the data pertaining to all Settlement Class Members from the vendor, the notice program will combine notice of the four Settlement Agreements described herein along with notice for the six previous settlement agreements, which was previously deferred.  Plaintiffs currently anticipate that the vendor will have collected and organized the notice information in sufficient time for Plaintiffs to move for notice, as well as for preliminary approval with several other Defendants with whom Plaintiffs are in the process of concluding other settlements,[3] no later than April 2014.

## FACTUAL AND PROCEDURAL BACKGROUND

---

[3] Plaintiffs have reached settlements-in-principle with several other defendants and attempted to finalize those settlements by the time this motion was to be filed.  However, because Plaintiffs had agreed with the Sass and Crusader Defendants to move for preliminary approval of their settlements by the conclusion of 2013, Plaintiffs now move for preliminary approval of those settlements they were able to conclude by the end of 2013. Plaintiffs will move for preliminary approval of additional settlements at the time they move for authorization of dissemination of notice so that the notice can be directed to the additional settlements as well.

I.   **STATUS OF THIS LITIGATION**

This litigation arises from an alleged conspiracy to rig auctions of TSCs in New Jersey. Certain Settling Defendants (as well as non-settling defendants) have pleaded guilty in this Court to participating in a conspiracy to rig bids and allocate customers at public tax lien auctions, in violation of Section 1 of the Sherman Act.[4]

Beginning in March 2012, the first civil cases were filed alleging that Settling Defendants, other Defendants, and various alleged co-conspirators engaged in a conspiracy to unlawfully manipulate interest rates associated with TSCs sold at public auctions throughout the state of New Jersey.  Plaintiffs' Consolidated Master Class Action Complaint (Dkt. No. 113) ("Consolidated Complaint" or "Consol. Compl.") ¶ 1.  According to Plaintiffs, the actions of Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state laws. *Id.*  In September 2012, the consolidated proceeding captioned *In re New Jersey Tax Sales Certificates Antitrust Litigation*, No. 3:12-cv-1893-MAS-TJB, which was originally before Hon. Freda L. Wolfson, U.S.D.J., was reassigned to this Court.

Plaintiffs and the Settling Defendants have engaged in settlement negotiations for the past several months, beginning in summer 2013.  Gassman Decl. ¶ 6.  At in-person and telephonic meetings, the terms of the separate Settlement Agreements were vigorously negotiated among sophisticated counsel experienced in antitrust law and class actions.  Gassman Decl. ¶ 7. Plaintiffs and Settling Defendants finalized and executed the four Settlement Agreements for which preliminary approval is now being sought in August 2013, September 2013, October 2013, and December 2013. Gassman Decl. ¶¶ 10, 13, 16, 19; Gassman Decl. Exs. A-D.

---

[4]   For a description of the relevant guilty pleas, *see* paragraphs 160-175 of the Consolidated Complaint.  (Dkt. No. 113).

Plaintiffs' Consolidated Complaint was filed on December 21, 2012.  Dkt. No. 113.  On March 8, 2013, the non-settling and Settling Defendants filed motions to dismiss the Consolidated Complaint.  (Dkt. Nos. 174, 177, 178, 187.)  Following the execution of its Settlement Agreement on October 22, 2013, Defendant Plymouth Park filed a Notice to Withdraw from Motions to Dismiss on October 23, 2013 (Dkt. No. 297).  Defendant Plymouth Park's participation in the Motions to Dismiss was withdrawn without prejudice by this Court in an Order dated October 23, 2013 (Dkt. No. 299).  Because their Settlement Agreements had been executed previously, the Sass Defendants filed a notice to withdraw the motions to dismiss on October 29, 2013 (Dkt. No. 302), which was granted without prejudice by this Court on October 30, 2013 (Dkt. No. 306), and the Crusader Defendants filed a notice to withdraw the motions to dismiss as to them on October 30, 2013 (Dkt. No. 304), which was granted without prejudice by this Court on the same day (Dkt. No. 305).  Thus, despite the hearing held by this Court on October 23, 2013, where this Court partially granted Defendants' Joint Motion to Dismiss as to certain parties (Dkt. No. 174, 300, 301), the motions filed by the Sass Defendants, the Crusader Defendants, and Defendant Plymouth Park all had been withdrawn without prejudice and were no longer pending before this Court.

The Motion to Dismiss filed by the Phoenix Defendants (Dkt. No. 180) was granted by this Court at the October 23, 2013 hearing (Dkt. No. 300-301).  This Court's Order granted Plaintiffs leave to amend the Consolidated Complaint, and Plaintiffs intend to file an amended complaint before the extended deadline of January 3, 2014.  (Dkt. No. 316).

## II.    THE SETTLEMENT AGREEMENTS

The Settlement Agreements represent the product of extensive negotiations involving experienced counsel over the course of several months.  Gassman Decl. ¶¶ 6-8.  The Settlement

Agreements provide for a release of Settlement Class members' claims in exchange for a substantial cash payment and other valuable relief.  The key components of the Settlement Agreements are discussed below.

### A.     The Proposed Settlements

The Settlement Agreements resolve all claims against the Settling Defendants for their alleged roles in the alleged conspiracy to manipulate interest rates associated with TSCs sold at public auctions in New Jersey during the Class Period.  The proposed Settlement Class in all Agreements is defined as:

> All persons who owned real property in the State of New Jersey who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above zero percent.

Gassman Decl. Ex., A at ¶ 21, Ex. B at ¶ 18, Ex. C at ¶ 14, and Ex. D at ¶ 15.

All Settling Defendants agreed to provide Plaintiffs with certain cooperation in the prosecution of the case against the remaining Defendants.[5]  Gassman Decl., Ex. A at ¶ 26, Ex. B at ¶ 23, Ex. C at ¶ 24, and Ex. D at ¶ 25.

Settling Defendants also agreed to provide monetary payments totaling a combined $6,775,000, with the Sass Defendants paying $3,400,000, the Crusader Defendants paying $1,650,000, Defendant Plymouth Park paying $1,500,000, and the Phoenix Defendants paying $225,000.  These lump-sum payments were negotiated and arrived at as a result of a thorough weighing of the strengths and weaknesses of the parties' claims and positions in this case, as well as an evaluation of the economic harm allegedly inflicted by Settling Defendants' conduct. Gassman Decl. ¶¶ 6, 8, 25.

---

[5]   The prior settling Defendants also provided Plaintiffs with meaningful cooperation.  This cooperation also represents considerable value to the Settlement Class.

The entire $6,775,000 Settlement amount[6] was (or, as to the Phoenix Defendants, will be) deposited into U.S. Treasury guaranteed escrow accounts in the days following the completed Settlement Agreements.  Gassman Decl.  Ex. A at ¶ 24, Ex. B at ¶ 21, Ex. C at ¶ 22, Ex. D at ¶ 23.

In addition to these payments, Settling Defendants agreed to additional relief in connection with certain TSCs acquired during the class period and still held by the Settling Defendant.  The additional relief pursuant to each Settlement Agreement is as follows:

(1) **<u>Sass Defendants</u>**: The Sass Defendants agreed, among other things, (1) not to initiate any foreclosure proceedings for 90 days after final approval of the Settlement Agreement, and (2) within 30 days after final approval of the Settlement Agreement, to offer to redeem any TSC possessed by a class member at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 15% of the redemption amount.  Gassman Decl. Ex. A at ¶ 25.

(2) **<u>Crusader Defendants</u>**: The Crusader Defendants agreed (1) not to initiate any foreclosure proceedings for 90 days after final approval of the Settlement Agreement; and (2) within 30 days after final approval of the Settlement Agreement, to offer to redeem any TSC possessed by a class member at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 15 % of the redemption amount, save that this discount offer will not be extended to any property owner who had a TSC issued

---

[6]   The Settlement Agreement with the Phoenix Defendants was executed on December 17, 2013. Phoenix Defendants have 20 days from the Execution Date to deposit the Settlement Proceeds into the escrow account.

in connection with their property where such TSC was purchased at a public auction in New Jersey during the Class Period at a 0% interest rate or for which CSC and/or RTLS paid a premium.  Gassman Decl. Ex. B at ¶ 22.

(3) **<u>Defendant Plymouth Park:</u>** Defendant Plymouth Park agreed (1) not to initiate any foreclosure proceedings for 90 days after final approval of the Settlement Agreement, and (2) within 30 days after final approval of the Settlement Agreement, to offer to redeem any TSC possessed by a class member at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 15% of the redemption amount (excluding statutory attorneys' fees).  Gassman Decl. Ex. C at ¶ 23.

(4) **<u>Phoenix Defendants</u>**: The Phoenix Defendants agreed (1) not to initiate any foreclosure proceedings for 90 days after final approval of the Settlement Agreement, and (2) within 30 days after final approval of the Settlement Agreement, to offer to redeem any TSC possessed by a class member at the time of the Settlement Agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 15% of the redemption amount.  Gassman Decl. Ex. D at ¶ 24. [7]

With respect to Plaintiffs' antitrust claims, Plaintiffs allege the Defendants colluded to manipulate the interest rates associated with property tax liens in New Jersey.  Plaintiffs do not allege, and could not allege, for purposes of the antitrust claim, that the principal was colluded

---

[7] Because this provision is not triggered until final approval for the Sass Defendants, Crusader Defendants, Defendant Plymouth Park, or the Phoenix Defendants, Plaintiffs are not now requesting that the Court approve dissemination of letters connected therewith, which will be sent to all relevant property owners within 30 days of final approval of the Settlement Agreements, informing the property owners of the discounted redemption offer.

upon or that the principal was unlawful in any way.  Because the discounts extend not only to the interest rates, but also the principal, these offers, if accepted by the Settlement Class Members, will result in relief which often exceeds a Settlement Class Member's single damages claim on its antitrust claim.

### B.    Dismissal With Prejudice and Release of Claims

In exchange for these significant benefits to Settlement Class members, the Settlement Agreements each provide that all participating members in the Settlement Class will fully release Settling Defendants from all federal and state law claims relating in any way to their conduct concerning any agreement or understanding among Defendants to rig bids or allocate tax liens in connection with the public auction of TSCs in New Jersey during the Class Period.  Gassman Decl.  Ex. A at ¶ 45, Ex. B at ¶ 43, Ex. C at ¶ 44, Ex. D at ¶ 44.  The releases do not, however, include claims against Settling Defendants unrelated to the released claims, claims against any non-settling Defendant (should any exist as none have been raised), or claims of Settlement Class members outside of the Class Period.  Gassman Decl., Ex. A at ¶¶ 45, 47, Ex. B at ¶¶ 43, 45, Ex. C at ¶¶ 44, 46, Ex. D at ¶¶ 44, 46.[8]

### C.    Notice

The Settlement Agreements require Class Counsel to take all necessary and appropriate steps to ensure that notice of settlement is provided to the Class in accordance with Rule 23. Gassman Decl., Ex. A at ¶ 51, Ex. B at ¶ 49, Ex. C at ¶ 50, Ex. D at ¶ 50.  This includes undertaking all reasonable efforts to obtain from the non-settling Defendants and/or other sources the names and mailing addresses of Settlement Class Members in order to facilitate issuance of notice by direct mail and publication.  Gassman Decl, Ex. A at ¶ 51, Ex. B at ¶ 49,

---

[8]  The complete and controlling terms of the releases are set forth in the operative Settlement Agreements.

Ex. C at ¶ 50, Ex. D at ¶ 50.  Through a competitive bidding process in which Class Counsel solicited bids from four different vendors, Class Counsel has selected Gilardi & Co. as settlement notice and claims administrator to facilitate issuance of notice by direct mail and publication. Gassman Decl., ¶ 20.

Class Counsel will defer notice while an outside vendor, LienSource, gathers data and information on affected property owners in townships and municipalities throughout New Jersey. LienSource's most recent update to Class Counsel estimated that the data collection project would be completed at the end of January 2014. This process will greatly assist in the dissemination of notice, which Plaintiffs anticipate moving for no later than April 2014.[9]

## <u>ARGUMENT</u>

### I.  **THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENTS**

Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the burden on judicial resources.  As a result, "[c]ompromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  This is "particularly [true] in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the court "encourage[s] settlement of complex litigation that otherwise could linger for years"). The proposed Settlement Agreements here meet all the requirements for preliminary approval by this Court.

---

[9]  Plaintiffs intend to ask this Court to approve attorney's fees and reimbursement of expenses at a later date.

A.      **Class Action Settlement Procedure**

Federal Rule of Civil Procedure 23 sets forth a procedure and specific criteria for class action settlement approval. *Smith v. Prof'l Billing & Mgmt. Servs.*, Civ. No. 06-4453, 2007 WL 4191749, at *1, *5 (D.N.J. Nov. 21, 2007).  That approval procedure includes three distinct steps:

1.      Preliminary approval of the proposed settlements.

2.      Dissemination of notice of the settlements to all affected class members.

3.      A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlements, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlements.

*Id.*  This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See In re GMC*, 55 F.3d at 785; *Hanlon v. Palace Entm't Holdings, LLC*, No. 11-987, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (explaining that at the preliminary approval phase, the "court must only 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms'" (quoting Manual for Complex Litigation (Fourth), § 21.632 (2011))). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."  *Smith*, 2007 WL 4191749, at *1 (internal quotation marks omitted).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Id.*

Plaintiffs respectfully request that this Court take the first steps in the settlement approval process and certify the proposed Settlement Class, preliminarily approve the four Settlement Agreements with Settling Defendants, appoint Plaintiffs' Interim Class and Liaison Counsel as Class Counsel for these settlements, and agree to defer the issuance of notice of settlement to

Settlement Class Members.  While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlements proposed here.  The proposed Settlement Agreements are fair, adequate, and reasonable.  Therefore, this Court should preliminarily approve the settlements and certify a settlement class.

> **B.**     **The Settlements Are Fair, Reasonable, and Adequate**

This Settlement Agreements represent the culmination of extensive and intensive arm's-length negotiations over the course of several months.  Gassman Decl. ¶¶ 6, 8.  Plaintiffs were represented in the settlement negotiations by a team of attorneys who have had considerable experience in federal antitrust class actions, and who are therefore well versed in the issues.  Gassman Decl. ¶ 7.  Settling Defendants were similarly represented by counsel with extensive experience defending federal antitrust class actions and complex litigation matters.  The settlement negotiations were contested and conducted in the utmost of good faith.  Gassman Decl. ¶ 9.  Through those extensive discussions, counsel for all parties were able to craft appropriate Settlement Agreements given the allegations at issue in this case.

With respect to the monetary consideration paid by the Settling Defendants, there are two distinct benefits to the Settlement Class.  First, Settling Defendants all agreed to make lump sum payments available to members of the Settlement Class.  Gassman Decl. ¶¶ 11, 14, 17, 20.  The amounts were negotiated following extensive discussions between the parties as to the respective strengths and weaknesses of their claims, and an evaluation of economic harm inflicted by Settling Defendants' alleged conduct on the proposed settlement class.  Second, with certain narrow exceptions, Settling Defendants agreed to additional relief in the form of discounts on redemption payments on *all* TSCs purchased during the Class Period that were retained at the time the Settlement Agreement was executed. Gassman Decl.  Ex. A at ¶ 25, Ex. B at ¶ 22, Ex. C at ¶ 23, Ex. D at ¶ 24.

Given these benefits, the proposed Settlement Agreements fall well within the range of reasonableness.  Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class is presented for court approval."  Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* §11:41, at 90 (4th ed. 2002).  Counsel's judgment that the settlement is fair and reasonable is entitled to great weight.  *See E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned." (emphasis in original) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Prudential Ins. Co. of Am. Sales Practices Litig., ("Prudential I")*, 962 F. Supp. 450, 543 (D.N.J. 1997) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998) ("Prudential II"), *cert. denied*, 525 U.S. 1114 (1999).

Finally, these settlements should help to expedite the overall litigation of this case.  "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).  Courts regularly approve partial settlement prior to decision on the certification of a litigation class. S*ee Gates v. Rohm & Haas*

14

*Co.*, 248 F.R.D. 434, 436 n.2 (E.D. Pa. 2008) (concluding that "it is proper for the Court to preliminarily certify the settlement classes at this juncture, provided that the grant of preliminary approval is without prejudice to the defenses and positions of the non-settling Defendants as to any issue, including certification of the litigation classes"); *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 680-81 (D. Kan. 2009) (granting preliminary approval of settlement).

Granting preliminary approval of these Settlement Agreements will not adversely affect the remainder of the case or unfairly prejudice the Settlement Class members' claims against the non-settling Defendants.[10] On the contrary, the Settlements will speed the resolution of the case by removing some Defendants and by providing Plaintiffs with additional information vital to proving their case, thereby reducing the need for some discovery.

The Third Circuit has "explicitly recognized with approval" the "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* at 595 (internal citation omitted); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995) (burden on crowded court dockets to be considered), *aff'd*, 66 F.3d 314 (3d Cir. 1995). Continued litigation of this case against these particular defendants would be long, complex, expensive, and a burden to this Court's docket, yet another factor favoring approval. Approving the Settlement Agreement will not only begin to reduce that litigation burden but will

---

[10] The Settlement Agreements specifically provide that Settling Defendants' purchase of TSCs during the Class Period shall remain in the case for the purposes of joint and several liability. Gassman Decl., Ex. A at ¶ 52, Ex. B at ¶ 50, Ex. C at ¶ 51, Ex. D at ¶ 51.

provide Plaintiffs with the benefit of Settling Defendants' cooperation.  This Court should

therefore grant the motion for preliminary approval of the proposed Settlement Agreements.

## II.     THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS

This Court should preliminarily certify the proposed Settlement Class because it meets all

applicable requirements of Federal Rule of Civil Procedure 23.  Certification of a settlement

class is appropriate where the four prerequisites of Rule 23(a)—numerosity, commonality,

typicality, and adequacy of representation—are satisfied.  *See* Fed. R. Civ. P. 23(e).  In addition,

a settlement class must satisfy one of the three subsections of Rule 23(b).  A*mchem Prods., Inc.

v. Windsor*, 521 U.S. 591, 614 (1997).  In analyzing Rule 23's elements, this Court must analyze

whether the representative parties "fairly and adequately protect the interests of the class."

*Varacallo*, 226 F.R.D. at 233.

Certification of a settlement class seeking damages requires satisfaction of the

requirements of Rule 23(b)(3).  *Amchem Prods.*, 521 U.S. 591, 620 ("Confronted with a request

for settlement-only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems . . . for the proposal is that there be no trial.  But

other specifications of the rule . . . demand undiluted . . . attention in the settlement context.").

In other words, the Court must be satisfied that "questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).

### A.     The Settlement Class Is Numerous and Ascertainable

The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement.  "No

minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the

named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, although the exact number of potential members of the Settlement Class is unknown, Plaintiffs estimate that there are several thousand potential class members based on the number of TSCs that may have been affected by the alleged conspiracy during the class period. Gassman Decl. ¶ 22. Thus, the numerosity requirement is easily satisfied. *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990) (finding that numerosity is "clearly established" where potentially hundreds of class members); *see also Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989) ("It is proper for the court 'to accept common sense assumptions in order to support a finding of numerosity.'") (internal citation omitted).

The proposed Settlement Class also satisfies Rule 23's implicit requirement that a class's membership be ascertainable. *See*, *e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) ("[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."); *Agostino v. Quest Diagnostics*, 256 F.R.D. 437, 478 (D.N.J. 2009) ("It has long been held that Rule 23 implicitly requires that prospective plaintiffs propose a class definition that is readily ascertainable based on objective criteria."). Here, Settlement Class membership is based upon the objective criteria of ownership of real property in New Jersey for which a TSC was issued and was purchased by a Defendant during the Class Period, and for which the purchase was made at an interest rate above zero percent. *See* Gassman Decl., Ex. A at ¶ 21, Ex. B at ¶ 18, Ex. C at ¶ 14, Ex. D at ¶ 15. These objective criteria are determinable based on records possessed by the Settling and non-settling Defendants that are subject to ongoing discovery by Class Counsel. Rule 23's implicit class ascertainability requirement thus is readily satisfied.

**B.      There Are Common Questions of Law and Fact**

The proposed Settlement Class also satisfies Rule 23(a)'s commonality requirement. "[A] finding of commonality does not require that all class members share identical claims." *In re Warfarin*, 391 F.3d at 530 (quotation marks omitted). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted).

Here, there are common questions of law and fact that go to the central issue in this matter—whether Defendants engaged in a conspiracy to manipulate interest rates associated with TSCs sold at public auctions throughout the State of New Jersey, thereby injuring Plaintiffs when they paid more in interest payments than they would have paid absent the alleged bid-rigging conspiracy.

The allegations of the bid-rigging conspiracy give rise to numerous common questions of law or fact:

a.      Whether Defendants conspired with others to fix bids and allocate TSCs at auctions in New Jersey, in violation of the Sherman Act and New Jersey's Antitrust Act, as well as numerous other state laws;

b.      Whether Defendants' conduct had the anticompetitive effect of reducing and unreasonably restraining the market for the purchase of TSCs;

c.      The names of the individuals and entities who participated in the anticompetitive scheme;

d.      The duration of the anticompetitive scheme;

e.      The effect of Defendants' conduct and the extent of injuries sustained; and

f.      The amount of damages the anticompetitive scheme caused members of the class.

These questions revolve around the existence, scope, effectiveness, and implementation of Defendants' conspiracy and are central to the claims of each member of the Settlement Class. Thus, the proposed Settlement Class satisfies the commonality requirement.

18

### C.      The Named Plaintiffs' Claims Are Typical

The proposed Settlement Class also satisfies Rule 23(a)'s typicality requirement.  The

commonality and typicality requirements of Rule 23(a) "tend to merge."  *Gen. Tel. Co. of the Sw.*

*v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Rule 23(a)(3)'s "typicality requirement is designed to

align the interests of the class and the class representatives so that the latter will work to benefit

the entire class through the pursuit of their own goals."  *In re Warfarin*, 391 F.3d at 531

(quotation marks omitted).  "A named Plaintiff's claims are typical where each class member's

claims arise from the same course of events and each class member makes similar legal

arguments to prove the defendant's liability."  *Jones v. Commerce Bancorp, Inc.*, No. 05-5600,

2007 WL 2085357, at *3 (D.N.J. July 16, 2007).

In this case, the claims of the Named Plaintiffs are typical of the claims of the proposed

Settlement Class members because they all arise from the same alleged bid-rigging conspiracy

that gives rise to the claims of the class.  Plaintiffs assert the same legal claims on behalf of

themselves and the proposed class; namely, that they sustained damages as a result of

Defendants' common course of conduct in violation of federal and state statutes.  Defendants'

bid-rigging scheme for TSCs is the basis for the claims of every Named Plaintiff and putative

class member.  These similarities satisfy Rule 23(a) typicality.

### D.      The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Settlement Class

The Named Plaintiffs will "fairly and adequately protect the interests of the class." Fed.

R. Civ. P. 23(a)(4).  The adequacy inquiry "assures that the named plaintiffs' claims are not

antagonistic to the class and that the attorneys for the class representatives are experienced and

qualified to prosecute the claims on behalf of the entire class."  *Beck v. Maximus, Inc.*, 457 F.3d

291, 296 (3d Cir. 2006) (quotation marks omitted).

Here, the interests of the Named Plaintiffs and the putative Settlement Class members are aligned because they all suffered similar injury in the form of inflated interest rates due to the alleged collusion at TSC auctions.  By proving their own claims, the Named Plaintiffs would necessarily help to prove the claims of their fellow putative Settlement Class members. Gassman Decl. ¶ 23.  In addition, the Named Plaintiffs have no interests that are antagonistic to the Class.  Gassman Decl., ¶ 24.  Further, as this Court previously recognized in connection with prior settlements in this matter (Dkt Nos. 276, 277), Interim Class and Liaison Counsel are experienced class-action litigators familiar with the legal and factual issues involved, and they have competently and aggressively prosecuted this complex case.  Gassman Decl. ¶¶ 7, 25. Thus, for settlement purposes, the adequacy requirement is satisfied.

## E.  The Proposed Settlement Class Satisfies Rule 23(b)(3)

The proposed Settlement Class also satisfies the requirements of Rule 23(b)(3)— predominance and superiority.  Rule 23(b)(3) provides that a class may be certified if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.  Common Questions of Law and Fact Predominate

First, the common questions identified above predominate over individual questions in this case. "Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625. "The focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298, 345 (3d Cir. 2011) (explaining that to show that common questions predominate with respect to antitrust injury,

plaintiffs must demonstrate that the element of antitrust impact is "capable of proof at trial through evidence that is common to the class rather than individual to its members") (internal citation omitted), *cert. denied*, 132 S. Ct. 1876 (2012).  Approval of class action settlements, however, "is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled."  4 Newberg on Class Actions § 11:28 (4th ed. 2002); *see also, e.g.*, *Sullivan*, 667 F.3d at 298-99 (certifying a settlement class despite the fact that variances in state law would likely have defeated predominance if the class was being certified for trial).

Here, Plaintiffs will necessarily focus on the conduct of Defendants, rather than the conduct of individual class members, to demonstrate that the bid-rigging conspiracy existed. Proof of how Defendants implemented and enforced their conspiracy will be common for all Settlement Class members, because it will be predicated on establishing the existence of Defendants' conspiracy to manipulate TSC interest rates across New Jersey that impacted the entire market for TSCs during the relevant class period.  *Sullivan*, 667 F.3d at 298; *see, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 268 (3d Cir. 2009) (finding predominance by determining that the elements of a Sherman Act violation for concerted anticompetitive activity focused on "the conduct of the defendants"); *see also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) ("[C]ommon issues [ ] predominate here because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did.") (internal citation omitted).  As a result, common issues relating to the existence and effect of the alleged conspiracy to manipulate TSC interest rates predominate over any questions arguably affecting individual class members alone.

### 2. A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Class adjudication of Plaintiffs' claims here would be superior to individual trials, and joinder of all Settlement Class members is impracticable.  The class action mechanism is superior to its alternatives, particularly with respect to settlements, because it ensures that the claims of the absent class members will be resolved efficiently.  *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy").  And "[i]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure § 1781 at 254-55 (3d ed. 2004).

Absent class certification, many members of the proposed Settlement Class here would go uncompensated because they would lack adequate monetary incentives to pursue their claims individually.  S*ee O'Brien*, 2012 WL 3242365, at *9 (finding superiority because, *inter alia*, it was "not apparent that the money potentially recoverable by an individual class member as compared to the cost to pursue recovery through a lawsuit is sufficient to make individual litigation a realistic possibility").  The prosecution of separate actions by individual members of the proposed class would impose heavy burdens on the courts and the parties, and would create a risk of inconsistent rulings, which further favors class treatment.  Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  Therefore, a class action is the superior method of adjudicating the claims raised in this case.

Because the proposed Settlement Class meets the requirements of Rule 23(a) and 23(b)(3), it should be certified for settlement purposes.

## III.   THIS COURT SHOULD APPOINT PLAINTIFFS' INTERIM CLASS COUNSEL AND LIAISON COUNSEL AS SETTLEMENT CLASS COUNSEL

Rule 23(c)(1)(B) states that an order certifying a class action "must appoint class counsel under Rule 23(g)." The court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

On October 22, 2012, after considering competing motions, this Court appointed Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP as Interim Class Counsel, and Lite DePalma Greenberg, LLC as Interim Liaison Counsel. *See* Order of Oct. 22, 2012, Dkt. No. 109. The work done by these counsel since their appointment provides a substantial basis for a finding that they satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as Settlement Class Counsel. Gassman Decl. ¶¶ 6-7. These firms have "performed a great deal of work investigating the facts underlying these cases and have otherwise prepared these cases for a putative class action"; and they have negotiated and executed settlement agreements with 10 defendant groups (totaling 34 total Defendants). Gassman Decl. ¶ 25; *see also* Memorandum Opinion of Oct. 22, 2012, Docket No. 108. Moreover, all of the same reasons that led this Court to appoint Interim Class Counsel and Liaison Counsel as Settlement Class Counsel for prior settlements (Dkt Nos. 276, 277) apply here as well. Accordingly, Interim Class and Liaison Counsel should be appointed as Settlement Class Counsel.

**IV.   THIS COURT SHOULD APPROVE A SHORT DEFERAL OF THE PROPOSED NOTICE OF SETTLEMENT**

Rule 23(c)(2) provides that class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]." Fed. R. Civ. P. 23(e)(1). "First-class mail and publication have consistently been considered sufficient to satisfy the notice requirements of Rule 23[(c)] and Rule 23(3) for advising class members of a proposed settlement and of their right to file claims." *Zimmer Paper Prod's, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985); *see also In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 266 (E.D. Pa. 2012) (quoting *Zimmer*, finding notice by mailing and publication to satisfy Rule 23).

The Settlement Agreements require Class Counsel to take all necessary and appropriate steps to ensure that notice of settlement is provided to the Class in accordance with Rule 23. Gassman Decl., Ex. A at ¶ 51, Ex. B at ¶ 49, Ex. C at ¶ 50, Ex. D at ¶ 50. This includes undertaking all reasonable efforts to obtain from the non-settling Defendants and/or other sources the names and mailing addresses of Settlement Class Members in order to facilitate issuance of notice by direct mail and publication. Gassman Decl, Ex. A at ¶ 51, Ex. B at ¶ 49, Ex. C at ¶ 50, Ex. D at ¶ 50. Class Counsel have selected Gilardi & Co. as settlement notice and claims administrator to facilitate issuance of notice by direct mail and publication. Gassman Decl., ¶ 26. Class Counsel also have selected LienSource as a vendor to assist in gathering data and contact information for all relevant property owners.

Accordingly, this Court should approve a short deferral in the issuance of the proposed notice of settlement until LienSource has completed its efforts to gather the relevant data.

LienSource's last update to Class Counsel estimated that the data collection project would be completed at the end of February, 2014.  Gassman Decl. ¶ 28.  This process will greatly assist in the dissemination of notice, which Plaintiffs anticipate moving for no later than April 2014.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to: (1) certify the proposed Settlement Class: (2) preliminarily approve the four Settlement Agreements submitted herein; (3) appoint Interim Class Counsel and Interim Liaison Counsel as Settlement Class Counsel; and (4) approve a short deferral for the proposed Notice of Settlement to be issued to the Settlement Class.

Dated: December 23, 2013

<div style="margin-left:40%">

**LITE DePALMA GREENBERG, LLC**
  _/s/ Bruce D. Greenberg_____
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

*Interim Liaison Counsel*

</div>

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman *(admitted pro hac vice)*
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig *(admitted pro hac vice)*

**HAUSFELD LLP**
Michael D. Hausfeld *(admitted pro hac vice)*
James Pizzirusso *(admitted pro hac vice)*
Seth R. Gassman *(admitted pro hac vice)*
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel: 202-540-7200
Fax: 202-540-7201

New York, NY 10119555 Fifth Avenue,
17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Class Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| |
|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. |

Master Docket No. 3:12-CV-01893-MAS-TJB

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Notice of Motion of Plaintiffs' Motion for Preliminary Approval of Settlements, Preliminary Certification of Settlement Class, Appointment of Interim Class Counsel as Settlement Class Counsel, and Deferral of Class Notice; Memorandum of Law in support thereof; Declaration of Seth Gassman in support thereof and accompanying exhibit; proposed form of Order; and Certificate of Service were electronically filed and served upon all counsel via the court's CM/ECF filing system

**LITE DePALMA GREENBERG, LLC**

   _/s/ Bruce D. Greenberg_____

Date:  December 23, 2013

Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

*Interim Liaison Counsel*

27