# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

IN RE NEW JERSEY TAX SALES
CERTIFICATES ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND
## THE CRUSADER DEFENDANTS

This Settlement Agreement ("Agreement") is made and entered into this 14th day of

August, 2013 (the "Execution Date"), by and between Royal Bancshares of Pennsylvania, Inc.

("RBPI"), Royal Bank America ("RBA"), Crusader Servicing Corporation ("CSC"), and Royal

Tax Lien Services, LLC ("RTLS") (collectively, the "Crusader Defendants") and plaintiff class

representatives, as defined herein at Paragraph 10, both individually and on behalf of a class as

described herein at Paragraph 13 ("Plaintiffs").

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and

consolidated in the District of New Jersey, on their own behalf and on behalf of the class against

Defendants including the Crusader Defendants ("Action");

WHEREAS, Plaintiffs allege that the Crusader Defendants participated in an unlawful

conspiracy to rig bids and allocate real property and water and/or sewer tax liens at tax sale

certificate auctions in the State of New Jersey in violation of New Jersey state law as well as

Section 1 of the Sherman Act;

WHEREAS, on or about September 26, 2012, CSC agreed to plead guilty to a one-count

criminal information charging it with violating the Sherman Act in connection with its conduct at

certain public tax lien auctions in the State of New Jersey during the period from at least 1998

through September 2006 (*United States v. Crusader Servicing Corp.*, 2:12-CR-644 (D.N.J.)), and

in connection with its guilty plea, CSC agreed to pay a $2 million criminal fine, payable in installments over 5 years;

WHEREAS, as part of CSC's plea agreement, the United States agreed not to "bring criminal charges against Royal Tax Lien Services, LLC ("RTLS"), or any current or former director, officer, or employee of Crusader and/or RTLS for any act or offense committed prior to the date of this Agreement that was in furtherance of any agreement to rig bids at municipal tax lien sales or auctions in the State of New Jersey . . . ."

WHEREAS, over a period of time, the Plaintiffs, the Crusader Defendants, and their respective counsel engaged in extensive, good faith, and arm's-length settlement negotiations and meetings relating to the claims and the Action, in person and by telephone, and between Plaintiffs' counsel and counsel for the Crusader Defendants, along with executives from certain of the Crusader defendants, with this Agreement being the product and result of those arm's-length negotiations, discovery and analysis by counsel knowledgeable and experienced in class action litigation;

WHEREAS, during those meetings and negotiations which resulted in this settlement agreement, the Crusader Defendants provided detailed information concerning the financial condition of certain of the Crusader Defendants, and, after carefully reviewing this information, Plaintiffs' counsel developed concerns with respect to the financial condition of certain of the Crusader Defendants, and believe that had this Action proceeded against the Crusader Defendants, there was a significant possibility that CSC would not be able to withstand a substantial adverse judgment, or possibly any judgment at all;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with the Crusader Defendants according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the Settlement Class;

WHEREAS, the Crusader Defendants, despite their belief that they have good defenses to the claims alleged in the Action, desire to settle the Action, and thus avoid the risk, exposure, inconvenience, and distraction of continued litigation of the Action, or any action or proceeding relating to the matters being fully settled in this Agreement;

WHEREAS, as further set forth herein, the Crusader Defendants agree to fully cooperate with Class Counsel by providing information related to violations of the Sherman Act or other violations that have or may have been committed by the Defendants to this Action, or other parties not named as Defendants, with regard to the auction of tax sale certificates in the State of New Jersey;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Crusader Defendants only, without costs as to Plaintiffs or the Settlement Class, subject to the approval of the Court, on the following terms and conditions:

A. **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-1893-MAS-TJB.

- 3 -

2.      The "Crusader Defendants" shall refer to, Royal Bancshares of Pennsylvania, Inc., Royal Bank America, Crusader Servicing Corporation, and Royal Tax Lien Services, LLC, individually, as well as affiliated entities who were involved in the purchase of tax sale certificates in the State of New Jersey during the Class Period.  The Crusader Defendants does not include Robert W. Stein or Robert Jeffrey or any Non-Settling Defendant.

3.      "Class Counsel" shall refer to the law firms of Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

4.      "The Crusader Defendants' Counsel" shall refer to Morgan, Lewis & Bockius LLP.

5.      "Counsel" means both Class Counsel and the Crusader Defendants' Counsel, as defined in Paragraphs 3 and 4 above.

6.      "Class Period" means the period from and including January 1, 1998 through February 28, 2009.

7.      "Defendant(s)" refers to the persons or entities who are named as defendants in the Plaintiffs' Consolidated Master Class Action Complaint filed on December 21, 2012 as well as persons or entities that have been or may in the future be named in subsequent complaints in the Action.

8.      "Execution Date" means the date set forth below, immediately above the signature lines to the agreement.

9.      "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

10.      "Plaintiffs" means the plaintiffs listed in the Consolidated Master Class Action Complaint filed on December 21, 2012.

11.     "Releasees" shall refer, jointly and severally, and individually and collectively, to the Crusader Defendants, any affiliated companies, their parents and subsidiaries, and their past and present officers, directors, employees, agents, insurers, attorneys, shareholders, partners, associates, members, volunteers, and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  The term Releasees shall not include Robert W. Stein or Robert Jeffrey or any Non-Settling Defendant.

12.     "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, parents, subsidiaries, affiliates, partners, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

13.     "Settlement Class" means all persons who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%.  The Settlement Class does not include government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.

14.     "Settlement Class Member" means each member of the class, as defined in Paragraph 13 of this Agreement, who does not timely elect to be excluded from the Settlement Class.

010311-11 587175 V1

15.    "Non-Settling Defendants" refers to the Defendants other than the Crusader Defendants.

16.    "Settling Parties" shall mean, collectively, the Crusader Defendants and the Plaintiffs, individually, and on behalf of the Settlement Class.

17.    "Tax Sale Certificate" or "TSC" shall mean a certificate acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water or sewer charges) from a property owner in the State of New Jersey, along with associated interest and fees.

**B. Settlement Class Certification**

18.    Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the following Settlement Class (as defined above), which shall be certified for settlement purposes only:

> All persons who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%.

The Settlement Class does not include government entities, or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family. At the appropriate time, the Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

## C.  Subsequent Modification of Class Definition or Class Period

19.   The Parties agree that modification of the definition of the Settlement Class may be necessary prior to moving for preliminary and/or final approval of this Agreement, and agree to work in good faith to make any such modification.  Any such modification shall be made in writing; provided, however, that in the event that Plaintiffs either enter into a settlement agreement with a Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class in any subsequent settlement agreement or certification order is broader than the definition contained in this Agreement in Paragraph 13 (including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both, in the event that there are more than one subsequent modification to the class definition or Class Period.  In no event shall the Crusader Defendants be responsible for any additional notice costs or expenses.

## D.  Settlement Consideration

### a.  Monetary Consideration

20.   In exchange for the mutual promises and covenants in this Agreement, including without limitation, the Releases set forth in Paragraphs 43-45 below and dismissal of the Action as against the Crusader Defendants upon Final Approval, the Crusader Defendants agree as follows:

21.   Within 20 days of the Execution Date, the Crusader Defendants shall pay the sum of **$1,650,000** (the "Settlement Proceeds") into an escrow account to be managed by Huntington

010311-11 587175 V1

Bank (the "Escrow Agent"), and to be disbursed in accordance with the direction of the Court ("Settlement Fund").

       a.    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

       b.    All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

       c.    Except as otherwise provided for herein, Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Releasees of all Released Claims, and Releasors shall have no other recovery against any Releasee.

22.    Since CSC and RTLS are currently in possession of Tax Sale Certificates which were acquired during the Class Period:

    (a)    For any Tax Sales Certificates still held by the CSC and/or RTLS not already in foreclosure proceedings, the Crusader Defendants agree:

        (1)    After Final Approval of this Agreement is granted, the Crusader Defendants agree not to initiate foreclosure proceedings for a period of 90 days following Final Approval; and

        (2)    In coordination with Class Counsel, cause to be sent by first class mail

within 30 days after Final Approval of this Agreement, written notice, in

language mutually acceptable to the Settling Parties, to the property

owner of record as stated on the said TSCs, offering to permit redemption

of any such TSCs held by CSC and/or RTLS to the respective property

owner(s) of those respective properties in exchange for a one-time

payment. The one-time payment will equal the redemption amount less a

one-time discount equal to 15% of the redemption amount (excluding

statutory attorneys' fees) redeemed through the municipality. Property

owners can accept this discounted redemption offer only by making the

requested payment to the municipal tax office within 35 days of the date

of the written notice. The offer to be disseminated pursuant to this

paragraph 22(a)(2) shall not be extended to any property owner who had a

TSC issued in connection with their property, and where such TSC was

purchased at a public auction in New Jersey during the Class Period at a

0% interest rate or for which CSC and/or RTLS paid a premium.

(b)     For any TSCs held by CSC and/or RTLS to which foreclosure proceedings have

been initiated as of the date of Final Approval of this Agreement, or which TSCs relate to

a property the owner of which is under protection of bankruptcy court, the Crusader

Defendants shall:

(1)     In coordination with Class Counsel, cause to be sent by first class mail

within 30 days after Final Approval of this Agreement, written notice, in

language mutually acceptable to the Settling Parties, to the defendants in

such foreclosure actions, or debtors in such bankruptcy proceedings,

010311-11 587175 V1

offering to permit redemption of any such TSCs held by CSC and/or

RTLS to the respective property owner(s) of those respective properties

in exchange for a one-time payment. The one-time payment will equal

the redemption amount less a one-time discount equal to 15% of the

redemption amount (excluding statutory attorneys' fees) redeemed

through the municipality. Property owners can accept this discounted

redemption offer only by making the requested payment to the municipal

tax office within 35 days of the date of the written notice. The offer to be

disseminated pursuant to this paragraph 22(b)(1) shall not be extended to

any property owner who had a TSC issued in connection with their

property, and where such TSC was purchased at a public auction in New

Jersey during the Class Period at a 0% interest rate or for which CSC

and/or RTLS paid a premium.

### b. Cooperation Agreement

23.    Following an order granting Final Approval of this Agreement, pursuant to

Paragraph 41 below, the Crusader Defendants will provide Plaintiffs with such cooperation as

may be requested in good faith by Class Counsel, for the prosecution of the Action. Such

cooperation shall include, but shall not be limited to: making documents related to the claims

asserted in this Action available for review and making available for informal interviews and, as

necessary, consultation with Class Counsel as they might reasonably request, witnesses under the

Crusader Defendants' control who have knowledge related to the claims asserted in the Action.

In addition, the Crusader Defendants shall continue to cooperate with Class Counsel, including,

but not limited to, producing documents (including relevant electronic documents and data)

related to the claims asserted in this Action and by making witnesses under the Crusader

Defendants' control available at an appropriate time to testify at depositions and at trial.  The

Crusader Defendants agree to provide discovery to Plaintiffs in the pending Action as if the

Crusader Defendants were parties subject to all rules for discovery.

    24.    Further:

        (a)    With respect to witnesses, if requested in good faith by Class Counsel, the

Crusader Defendants agree to use their best efforts to produce, at a location to be chosen by the

Crusader Defendants, individuals who are current or former directors, officers, employees or

agents (i.e. *per diem* bidders) of any entities controlled by the Crusader Defendants for

deposition at the time discovery in this Action commences, subject to the limitations imposed by

the Federal Rules of Civil Procedure or by any additional limitations imposed by any order or

stipulation in this Action governing the depositions of any Non-Settling Defendant, and make

those persons available for trial testimony, if requested in good faith by Class Counsel.  Should it

be reasonably necessary, and if requested in good faith by Class Counsel, the Crusader

Defendants shall also make witnesses, including corporate designees, available to testify at

deposition and trial, for the prosecution of the pending Action, which testimony may pertain to

knowledge of and/or participation by the Crusader Defendants, including, but not limited to, their

officers, directors and employees, regarding present and future claims asserted in the pending

Action or any other actions related to Tax Sale Certificate auctions in the State of New Jersey,

except for the Excepted Claims (defined in Paragraph 45) to which this Agreement applies.

        (b)    With regard to documents and electronic data, if requested in good faith

by Class Counsel, the Crusader Defendants will produce, at a location of their choosing, pursuant

to and subject to the limitations imposed by Rule 30(b)(6) and the other Federal Rules of Civil

Procedure as well as any additional limitation imposed by order or stipulation in this Action

governing the authentication of documents or corporate representative testimony related to any

Non-Settling Defendant, a corporate representative sufficiently qualified to authenticate and

make admissible under the applicable rules of evidence, as well as under the rules of any state,

the Crusader Defendants' documents and electronic data as may in good faith be requested by

Class Counsel in the pending Action related to Tax Sale Certificate auctions in the State of New

Jersey, except for the Excepted Claims.

     25.     Plaintiffs and Class Counsel agree not to assert that the Crusader Defendants

waived attorney-client privilege, work-product immunity or any other privilege or protection

with respect to information or documents provided or identified to Class Counsel pursuant to this

Agreement. Nor should anything in this Agreement be construed as a waiver of any such

privilege, immunity or protection.

     26.     Currently, the Crusader Defendants are not aware of any impediment imposed by

the Department of Justice which would interfere with their ability to provide the cooperation

provided for in Paragraphs 23-25 herein. However, the Crusader Defendants shall not be

required to provide the cooperation provided for in Paragraphs 23 to 25 of this Agreement if the

United States Department of Justice objects to the Crusader Defendants' provision of such

cooperation to Plaintiffs or Class Counsel. However, if Plaintiffs and/or Class Counsel challenge

the United States Department of Justice's objection to the Crusader Defendants' provision of

cooperation under this Agreement, and the Court overseeing this Action overrules the objection

of the Department of Justice, the Crusader Defendants shall be required to provide all

cooperation required by this Agreement. If the U.S. Department of Justice objects to the

Crusader Defendants' provision of cooperation to Plaintiffs or Class Counsel pursuant to this

Agreement, the Crusader Defendants will be required to produce their attorney to provide oral

proffers as to any facts relevant to the claims asserted in the Action. Further, the Crusader Defendants' Counsel shall be reasonably available to Class Counsel to answer questions that Class Counsel may have.

27.      The release of claims provided for in this Agreement at Paragraphs 43-45 and the covenant not to sue provided for under Paragraph 43 of this Agreement, shall not apply to any person, who affirmatively refuses to comply with a reasonable request by Class Counsel, properly made under the terms of this Agreement, that the person be interviewed, provide a declaration of affidavit, or appear to testify at a deposition or trial. A person's invocation of his or her right against self-incrimination to resist providing information concerning anticompetitive behavior with respect to the auction of Tax Sale Certificates in the State of New Jersey shall be deemed a refusal to cooperate pursuant to this Paragraph and a material breach by that person of this Agreement.

### c.   The Crusader Defendants' Motions to Dismiss and Notification of Settlement

28.      Within 14 days of the Execution Date, the Settling Parties will jointly notify the Court that they have entered into a settlement, and provide the Court with a copy of this Agreement. In addition to notifying the Court of this Agreement, the Settling Parties shall jointly request that, pending Preliminary Approval of this Settlement Agreement, the Court hold in abeyance the Crusader Servicing Corporation's Joinder to Defendants' Joint Motion to Dismiss [Dkt. No. 187], the Motion to Dismiss of Royal Bancshares of Pennsylvania, Inc., Royal Bank America, and Royal Tax Lien Services [Dkt No. 185], and the Defendants' Joint Motion to Dismiss as it relates to the Crusader Defendants [Dkt. No. 174] (the "Motions"). Within 7 days following the entry of an order preliminarily approving this Settlement Agreement, the Crusader Defendants shall formally withdraw the Motions (or, in the case of the Defendants' Joint Motion

to Dismiss, shall withdraw their participation in that motion), without prejudice to renewing the

Motions in the event Final Approval of the Settlement is denied or the Agreement is rescinded.

**E.    Administrative Costs and Taxes**

29.    All costs associated with the Settlement Class notification process, all fees related

to administration of this Settlement or management of the Settlement Fund, any attorneys' fees

and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive payment

awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out

of the Settlement Fund.  The Crusader Defendants shall have no further financial responsibility

to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any

other, fees or costs beyond payment of the Settlement Proceeds.

30.    Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge

that each Settlement Class Member shall be individually responsible for any and all tax

obligations related to any payments received as a result of this Settlement.  The Crusader

Defendants make no representations about the tax ramifications, if any, of any payments made to

Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a

result of, this Agreement.

31.    Settlement Class Counsel may at an appropriate time, determined in their sole

discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses

from the Settlement Fund.  Such expenses include past, current and future litigation expenses or

expenses related to notice and administration of this settlement, or settlements with other

defendants. Other than the payment of the Settlement Proceeds and expenses associated with the

provision of cooperation under paragraphs 23-24 of this Agreement, the Crusader Defendants

shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the

costs or expenses of litigation for the Settlement Class.

32.     Plaintiffs and Releasees agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 32 through 34, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

33.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)).  Such returns (as well as the election described in Paragraph 32) shall be consistent with Paragraph 32 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in paragraph 34 hereof.

34.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Crusader Defendants or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of

Paragraphs 32 through 34 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 34 ("Tax Expenses")), shall be paid out of the Settlement Fund.

**F. Approval of this Agreement and Dismissal of Claims**

35.     Plaintiffs and the Crusader Defendants shall use their best efforts to effectuate this Agreement, including, at the appropriate time, seeking preliminary Court approval of the Settlement and securing both the Court's certification of the Settlement Class and the Court's approval of procedures to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Crusader Defendants.

36.     Upon the Execution Date, the Plaintiffs shall not pursue the Action against the Crusader Defendants and shall not require that they answer or respond to any pleading and shall hold the litigation in abeyance against the Crusader Defendants. During the period of time between the Execution Date and the date an order of dismissal is entered as provided for in Paragraph 41 below, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members against the Crusader Defendants shall be tolled.

37.     Subject to Paragraph 35 above, at the appropriate time, Plaintiffs shall submit to the Court a motion for: (a) certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel respectively; and (c) preliminary approval of the settlement, and authorization to disseminate notice of class certification, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

38.     When Plaintiffs are prepared to issue Notice as contemplated by Paragraphs 35 and 49, the Settling Parties shall approve the form of notice to be provided to the Settlement

Class and submit it to the Court and request that the Court: (i) preliminarily approve the

Settlement reflected herein; (ii) conditionally certify the Settlement Class (for settlement

purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class

Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel

respectively; (iii) approve the form of notice to be provided to the Settlement Class in the form

mutually agreed to by the Settling Parties and submitted in connection with the motion for

preliminary approval, and find that the form, manner and timing of notice constitutes the best

notice practicable under the circumstances, and is due and sufficient notice to the Settlement

Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of

Civil Procedure; (iv) direct that notice be provided to the Settlement Class, in accordance with

the Settlement; (v) establish a procedure for Settlement Class Members to object to the

Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days

following the date Class Notice is initially mailed as per Paragraph 49 of this Agreement, after

which no Settlement Class Member shall be allowed to object to the Settlement or exclude

himself, herself or itself from the Settlement Class or seek to intervene in the Action; (vi)

pending final determination of whether the Settlement should be approved, bar all Settlement

Class Members, directly, on a representative basis, or in any other capacity, from commencing or

prosecuting against any of the Releasees any action, arbitration, or proceeding in any court,

arbitration forum, or tribunal asserting any of the Released Claims; (vii) pending final

determination of whether the Settlement should be approved, stay all proceedings in the Action

as to the Crusader Defendants except those related to the effectuation of the Settlement; and

(viii) schedule a hearing on final approval of the Settlement (which final approval hearing, as

referenced herein, shall take place after the deadline for members of the Settlement Class to opt-

out or object and no earlier than 90 days after entry of a Preliminary Approval Order and the mailing of Class Notice).

39.     Plaintiffs shall use their best efforts to combine dissemination of notice of the proposed Settlement Class and the Agreement with notice of other settlement agreements.   The proposed method of notice of the settlement shall be determined in consultation with a class action administrator and shall be approved by the Court.  To the extent it should become necessary, the Crusader Defendants shall supply to Class Counsel at the Crusader Defendants' expense and in such form as kept in the regular course of business (electronic format if available) such names and addresses of potential Settlement Class Members as they have.

40.     Within 20 business days after the end of the opt-out period established by the Court and set forth in the notice, Plaintiffs shall provide the Crusader Defendants, through their counsel, a written list of all potential Settlement Class Members who have exercised their right to request exclusion from the class.  In the event that more than a specified percentage of potential Settlement Class Members indicated in the confidential **Settlement Opt-Out Letter** (which would be submitted to the Court *in camera*) of the same date as this Agreement and executed for counsel for the parties to this Agreement elects to opt out of the Class Settlement, the Crusader Defendants shall have the right to elect, in their sole and absolute discretion, whether to proceed with the settlement contemplated by this Agreement.  If the Crusader Defendants elect not to proceed with the settlement pursuant to this provision, then this Agreement will be of no further force and effect and whatever Settlement Proceeds remain after payment of settlement administration costs incurred up through the date of such election shall be returned immediately to the Crusader Defendants.  In the event that a dispute should arise between the parties

regarding the calculation of the opt-out percentage, that dispute will be promptly submitted to the

Court for resolution in accordance with such procedures as the Court may recommend or adopt.

41. If the Court preliminarily approves this Agreement, Plaintiffs and the Crusader

Defendants shall jointly seek entry of an order and final judgment, the text of which Plaintiffs

and the Crusader Defendants shall agree upon:

        (a)    As to the Action, approving finally this Agreement and its
                  terms as being a fair, reasonable, and adequate settlement
                  as to the Settlement Class Members within the meaning of
                  Rule 23 of the Federal Rules of Civil Procedure and
                  directing its consummation according to its terms;

        (b)    Directing that, as to the Crusader Defendants, the Action be
                  dismissed with prejudice and, except as explicitly provided
                  for in this Agreement, without costs;

        (c)    Reserving exclusive jurisdiction over the settlement and
                  this Agreement, including the administration and
                  consummation of this settlement;

        (d)    Determining under Federal Rule of Civil Procedure 54(b)
                  that there is no just reason for delay and directing that the
                  final judgment of dismissal as to the Crusader Defendants
                  shall be entered; and

        (e)    Requiring Class Counsel to file with the Clerk of the Court
                  a record of potential Settlement Class Members who timely
                  excluded themselves from the class, and to provide a copy
                  of the record to counsel for the Crusader Defendants.

42. This Agreement shall become final only when (a) the Court has entered an order

approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final

judgment dismissing the Action against the Crusader Defendants on the merits with prejudice as

to all Settlement Class Members and without costs has been entered, and (b) the time for appeal

or to seek permission to appeal from the Court's approval of this Agreement and entry of a final

judgment as described in clause (a) above has expired or, if appealed, approval of this

Agreement and the final judgment have been affirmed in their entirety by the Court of last resort

to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Finally Approved" or "Final Approval"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and the Crusader Defendants shall be bound by the terms of this Agreement, and the Agreement shall not be rescinded except in accordance with Paragraphs 40, 47, or 48 of this Agreement.

### G. Release and Discharge

43.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other valuable consideration as described herein, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation, debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in law or in equity or otherwise, whether class, individual or otherwise in nature, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of conduct concerning any agreement or understanding among Defendants to rig bids or allocate tax liens in connection with the public auction of Tax Sale Certificates in the State of New Jersey during the Class Period, including, but not limited to, any conduct alleged, and causes of action asserted, or that could have been alleged or asserted, whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"), which arise from or are predicated on the facts and/or actions described in the Complaints under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer

protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the

Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, or under any common law theory of liability,

including, without limitation, unjust enrichment, from the beginning of time through the end of

the Class Period (the "Released Claims").  It is expressly understood and agreed that this Release

and settlement is intended to cover and does cover not only all known and unknown, foreseen

and unforeseen, suspected or unsuspected injuries, losses and damages, and the consequences

thereof, but any further injuries, losses and damages which arise from, or are related to, the

claims set forth in the Complaints.  The Releasors shall not, after the date of this Agreement,

seek to recover against any of the Releasees for any of the Released Claims.

     44.     In addition to the provisions of Paragraph 43, each Releasor hereby expressly and

irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all

defenses, rights, and benefits that each Releasor may have or that may be derived from the

provisions of applicable law which, absent such waiver, may limit the extent or effect of the

release contained in Paragraph 43.  Each Releasor also expressly and irrevocably waives any and

all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in

any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

     45.     The release and discharge set forth in Paragraphs 43 and 44 herein do not include

claims relating to disputes against the Crusader Defendants unrelated to the Released Claims

("Excepted Claims").

     46.     Without limiting the rights of any other settling defendant in the Action,

Releasees specifically retain the right to seek indemnity and/or contribution from any person,

firm, corporation or entity (other than the Releasors), in connection with the claims asserted

against them in the Action.

**H. Rescission if the Agreement is Not Approved**

47.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 41-42 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then the Crusader Defendants and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

48.     In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraphs 41-42 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of the Crusader Defendants, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.

**I. Notice of Settlement to Class Members**

49.     Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement is provided in accordance with the Federal Rules of Civil Procedure and Court order. Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants and/or other sources, the names and addresses of those potential members of the Settlement Class. Notice of this Settlement will be issued in accordance with the dates ordered by the Court.

## J. Miscellaneous

50.     This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any unnamed co-conspirator other than the Releasees. All rights of any Settlement Class Member against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members. The purchase of Tax Sale Certificates in the State of New Jersey by any of the Crusader Defendants with respect to real property of Settlement Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

51.     The parties hereto are entering into this Agreement solely to receive the benefits provided hereunder and to avoid the costs and burdens of potential litigation. This Agreement shall not constitute or be construed or considered as an admission by the Crusader Defendants for any purpose or as evidence of liability.

52.     The United States District Court for the District of New Jersey, Trenton Division shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and the Crusader Defendants. Plaintiffs and the Crusader Defendants submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement. This Agreement shall be governed by and interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

53.     This Agreement and the Settlement Opt-Out Letter constitutes the entire agreement among Plaintiffs (and the other Releasors) and the Crusader Defendants (and the other Releasees) pertaining to the settlement of the Action against the Crusader Defendants only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and the Crusader Defendants in connection therewith.  This Agreement may be modified or amended only by a writing executed by Plaintiffs and the Crusader Defendants, and approved by the Court.

54.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

55.     This Agreement may be executed in counterparts by Plaintiffs and the Crusader Defendants, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

56.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

57.     In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by the Crusader Defendants.

58.     Neither the Crusader Defendants nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

59.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, the Crusader Defendants, and Releasees any right or remedy under or by reason of this Agreement.

60.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to:

**For the Class:**                                   **For The Crusader Defendants:**

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeldllp.com
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**For The Crusader Defendants:**

Steven A. Reed
R. Brendan Fee
**MORGAN, LEWIS & BOCKIUS, LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
sreed@morganlewis.com

61.    Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: August 14, 2013

HAUSFELD LLP

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeldllp.com
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP

Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*

MORGAN, LEWIS & BOCKIUS, LLP

Steven A. Reed
R. Brendan Fee
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
sreed@morganlewis.com

*Attorneys for The Crusader Defendants*

010311-11 587175 V1