**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, NJ  07102-5003
Telephone:  (973) 623-3000
bgreenberg@litedepalma.com
sgreenfogel@litedepalma.com

*Interim Liaison Counsel*
*[Additional counsel on signature page]*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. | Master Docket No. 3:12-CV-01893-MAS-TJB<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' FIRST AMENDED CONSOLIDATED**
**MASTER CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    NATURE OF CLAIM ....................................................................................................2

II.   JURISDICTION AND VENUE ....................................................................................7

III.  PARTIES .....................................................................................................................8

     A.    Plaintiffs ............................................................................................................8

          1.    Gila Bauer (as Trustee for the Gila Bauer Revocable Trust)......................8

          2.    Melissa Jacobs ...........................................................................................8

          3.    The Schmidt Plaintiffs ...............................................................................9

          4.    Son, Inc. ....................................................................................................9

     B.    Defendants ......................................................................................................10

          1.    The BankAtlantic Defendants....................................................................10

          2.    The Crestar Defendants..............................................................................13

          3.    Defendant Michael Mastellone .................................................................14

          4.    The Mooring Defendants ...........................................................................15

          5.    The PAM Defendants .................................................................................17

          6.    The Wolfson Defendants ............................................................................17

          7.    Defendant Robert W. Stein ........................................................................18

          8.    Defendant American Tax Funding..............................................................19

          9.    The Del Vecchio Defendants .....................................................................19

          10.   Defendant Norman T. Remick ...................................................................20

     C.    Settled Defendants .........................................................................................20

          1.    The Phoenix Defendants ............................................................................20

          2.    The Butler and Farber Defendants .............................................................20

          3.    The Crusader Defendants............................................................................22

4.      Defendant William A. Collins ..................................................23

5.      Fountain of Life Defendants ..................................................23

6.      Defendant Isadore H. May ....................................................25

7.      Defendant Robert E. Rothman ..............................................25

8.      Defendant Richard J. Pisciotta, Jr. .......................................25

9.      Defendant Plymouth Park .....................................................26

10.    The Sass Defendants ............................................................26

D.      Unnamed Co-Conspirators.................................................................29

IV.     INTERSTATE TRADE AND COMMERCE ..........................................29

V.      FACTUAL ALLEGATIONS ..................................................................30

A.      The TSC Market in New Jersey.........................................................30

B.      Defendants' Conspiracy.....................................................................32

C.      Each Defendant's Participation in the Conspiracy .................................35

1.      The BankAtlantic Defendants' Participation in the Conspiracy................36

a.      Example Auctions in Which the BankAtlantic Defendants Furthered the Conspiracy...............................38

2.      The Crestar Defendants' Participation in the Conspiracy.........................59

a.      Example Auctions in Which the Crestar Defendants Furthered the Conspiracy................................60

3.      The Mooring Defendants' Participation in the Conspiracy ......................63

a.      Example Auctions in Which the Mooring Defendants Furthered the Conspiracy................................64

4.      Defendant Mastellone's Participation in the Conspiracy..........................88

a.      Example Auctions in Which Defendant Mastellone Furthered the Conspiracy................................88

5.      The PAM Defendants' Participation in the Conspiracy ...........................91

a.      Example Auctions in Which the PAM Defendants Furthered the Conspiracy ................................................92

6.      The Wolfson Defendants ..........................................................95

a.      Example Auctions in Which the Wolfson Defendants Furthered the Conspiracy ................................................96

D.      Policing the Conspiracy ......................................................105

E.      The Conspiracy Breaks Down ............................................105

F.      National Tax Lien Association (NTLA) Trade Association ................................106

G.      Criminal Charges Relating to Defendants' Participation in the Conspiracy .......106

H.      Additional Defendants Indicted for Their Role in the Conspiracy ....................118

VI.     FRAUDULENT CONCEALMENT ..........................................................119

VII.    EFFECTS OF THE DEFENDANTS' UNLAWFUL CONSPIRACY ............................120

VIII.   CLASS ACTION ALLEGATIONS .........................................................121

IX.     CAUSES OF ACTION ........................................................................123

FIRST CLAIM FOR RELIEF VIOLATION OF SECTION 1 OF THE SHERMAN ACT 15 U.S.C. § 1 ........................................................123

SECOND CLAIM FOR RELIEF VIOLATION OF THE NEW JERSEY ANTITRUST ACT N.J.S.A. § 56:9-3 ................................................124

THIRD CLAIM FOR RELIEF VIOLATION OF THE NEW JERSEY TAX SALE LAW EXCESSIVE FEE IN THE REDEMPTION OF A TAX SALE CERTIFICATE N.J.S.A. § 54:5-63.1 .......................................126

FOURTH CLAIM FOR RELIEF UNJUST ENRICHMENT .........................................127

PRAYER FOR RELIEF ....................................................................................128

JURY DEMAND ............................................................................................130

- iii -

Pursuant to the Court's October 25, 2013 order [Dkt. No. 301] granting Plaintiffs leave to file a new Master Complaint, Plaintiffs Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc. (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendants: 1) CCTS Capital, LLC n/k/a Crestar Capital, LLC and William S. Green (collectively the "Crestar Defendants"); 2) American Tax Funding, LLC ("ATF"); 3) BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley (collectively the "BankAtlantic Defendants"); 4) Richard Simon Trustee, Betty Simon Trustee, and Joseph Wolfson (collectively the "Wolfson Defendants"); 5) Robert W. Stein; 6) Mooring Tax Asset Group, LLC ("Mooring") and Lambros Xethalis (collectively the "Mooring Defendants"); 7) Norman T. Remick; 8) Michael Mastellone; 9) Pat Caraballese and PAM Investors (collectively the "PAM Defendants"); 10) Robert U. Del Vecchio Sr. and Robert U. Del Vecchio Trust (collectively "Del Vecchio Defendants"); 11) CCTS, LLC, CCTS Tax Liens I, LLC, CCTS Tax Liens II, LLC, DSBD, LLC, Pro Capital LLC, David Butler, and David M. Farber (collectively the "Butler and Farber Defendants"); 12) Plymouth Park Tax Services, LLC ("Plymouth Park"); 13) M.D. Sass Investors Services, Inc., M.D. Sass Tax Lien Management, LLC, M.D. Sass Municipal Finance Partners - I, L.P., M.D. Sass Municipal Finance Partners – II, L.P., M.D. Sass Municipal Finance Partners - III, LLC, M.D. Sass Municipal Finance Partners - IV, LLC, M.D. Sass Municipal Finance Partners - V, LLC, M.D. Sass Municipal Finance Partners - VI, LLC, Vinaya J. Jessani, and Stephen E. Hruby (collectively the "Sass Defendants"); 14) Robert E. Rothman; 15) Royal Bancshares of Pennsylvania, Inc., Royal Bank America, Crusader Servicing Corporation ("Crusader"), and Royal Tax Lien Services, LLC (collectively the "Crusader Defendants");

16) William A. Collins; 17) Isadore H. May; 18) Burlington Assembly of God/Fountain of Life

Center, Mercer S.M.E., Inc., Susan M. Esposito, and David B. Boudwin (collectively the

"Fountain of Life Defendants"); 19) Richard J. Pisciotta, Jr.; and 20) Phoenix Funding, Inc.

("Phoenix Funding") and Benedict Caiola (collectively the "Phoenix Defendants") (all

defendants collectively are referred to as "Defendants"),[1] and allege as follows:

## I.     NATURE OF CLAIM

1.     This action arises from an unlawful conspiracy to manipulate interest rates

associated with tax sale certificates ("TSCs") sold at public auctions in New Jersey from at least

as early as January 1, 1998 through February 2009 (the "Class Period"), in violation of Section 1

of the Sherman Act, 15 U.S.C. § 1, the New Jersey Antitrust Act, N.J.S.A. § 56:9-3, a provision

of the New Jersey Tax Lien Law, N.J.S.A. § 54:5-63.1, and New Jersey common law.

Defendants entered into an unlawful understanding to rig TSC auctions in New Jersey during the

Class Period, which artificially raised and/or inflated the interest rates associated with TSC's

auctioned at an interest rate above 0% throughout New Jersey during the Class Period.

Defendants' conspiracy harmed thousands of real property owners throughout New Jersey and

caused them to pay or owe significantly higher interest rates on TSCs than they otherwise would

have been required to pay in a market free of collusion.

2.     As in many states, New Jersey real property owners must pay property taxes and

sewer and water charges to the municipality in which the real property is located.  If the owner

---

[1] This Court has preliminarily approved settlements with: 1) The Butler and Farber
Defendants; 2) Robert E. Rothman; 3) William A. Collins; 4) Isadore H. May; 5) The Fountain
of Life Defendants; and 6) Richard J. Pisciotta, Jr.  [Dkt. Nos. 266, 267.]  The Plaintiffs have
also moved for preliminary approval of settlements with: 1) The Sass Defendants; 2) The
Crusader Defendants; 3) Plymouth Park; and 4) the Phoenix Defendants.  [Dkt. No. 319.]
Plaintiffs have also reached settlements in principle with other Defendants which are in the
process of being memorialized.

fails to pay any taxes or charges owed, a lien arises on the property by operation of law in favor of the municipality.  Should the lien remain unpaid for a certain amount of time, New Jersey law requires that the lien be sold by the municipality at a live tax lien auction open to the public.

3.      At these auctions, the winning bidder must pay the outstanding lien, interest due, and any premium to the municipality at the time of sale.  As consideration, the winning bidder receives a TSC, which must be recorded with the clerk or register of deeds to preserve the lien holder's interest.  This TSC is also sent to the property owner notifying him or her of the change in ownership of the lien.

4.      TSCs entitle the lien holder to several benefits, including a first priority lien on the property, penalties ranging from 2%-12%, interest on the delinquent tax obligation (up to the statutory maximum of 18%) and the right to collect the delinquent tax obligation from the property owner.  The TSC also entitles its holder to foreclose on the property associated with the TSC after a certain period of time should the lien not be redeemed by the property owner.

5.      The New Jersey statutory process by which municipal public lien auctions are conducted in New Jersey is organized in such a way that auctions for TSCs are intended to be competitive, with bidders aggressively reducing the amount of interest they are willing to accept from the property owner in order to obtain a TSC on a property.  This is done in order to provide the delinquent property owner with as favorable an interest rate as possible.  The bidding opens with the interest rate associated with the lien at 18%.  Each successive bid will lower the interest rate potentially to 0%.  This process is known as a "reverse auction."

6.      Defendants were among the largest TSC purchasers in New Jersey during the Class Period and together account for the vast amount of TSCs purchased in New Jersey during the Class Period.  Rather than engage in a competitive bidding process for TSCs, however,

Defendants secretly agreed to rig TSC auctions throughout New Jersey in order to eliminate or reduce competitive bidding, thereby guaranteeing that the interest rate would stay artificially high (often at the statutory maximum of 18%) – and thus securing excessive and illegal returns on their TSC investments.  That conspiracy included allocating which TSC each conspirator would bid on and hence "win" at an auction.  This process guaranteed Defendants that they would secure TSCs at a higher interest rate than would have occurred in a competitive market.  It also guaranteed that the Plaintiffs and members of the proposed Class would receive the least favorable terms on their TSCs.  Each Defendant named above engaged in the conspiracy.

7.     Plaintiffs and members of the proposed Class are New Jersey real property owners who became delinquent on their real property tax or other municipal obligations. Because of the unlawful conspiracy, Plaintiffs and Class members either paid or owe Defendants an unlawfully inflated amount in order to redeem the TSCs associated with their real property.

8.     Beginning in early 2009, the Antitrust Division of the United States Department of Justice began investigating the conspiracy alleged in this complaint.  Since that time, 14 individuals and entities have pled guilty to violations of Section One of the Sherman Act and admitted to participating in the conspiracy alleged in this complaint.  An additional six individuals and/or entities were indicted on November 19, 2013, and face charges for participating in the same collusion.  The criminal investigation remains active (as evidenced by the November 2013 indictment) and additional pleas and/or indictments are expected.  As part of their guilty pleas, these Defendants are subject to criminal fines and/or prison.  Most, however, are not subject to restitution because of the pendency of *this* litigation.  For example, the Crusader Defendants' plea agreement states, "[i]n light of the availability of civil causes of action, in the United States District Court for the District of New Jersey, which potentially

- 4 -

provide for a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information."  The plea agreement for Defendant Remick contains substantially identical language.  As such, this litigation is the only vehicle by which many victims of this cartel will be able to recover damages as a result of the alleged conspiracy.

9.      Since the inception of this civil litigation, Plaintiffs have settled with 14 Defendant groups, leaving only six groups.  As detailed herein, these non-settling Defendants attended the very same auctions as those who have pled guilty and admitted to the conspiracy. Numerous conspiracy participants who are cooperating with Plaintiffs' Counsel have provided substantial information concerning their participation in the conspiracy, as well as the participation of non-settling Defendants.  As detailed herein, the non-settling Defendants are as equally culpable as those who have pled guilty.

10.     As a direct and proximate result of the Defendants' unlawful, conspiratorial bid rigging scheme, Plaintiffs and other members of the Class have paid, or are required to pay, unlawfully inflated interest charges, in excess of what they otherwise would have paid in a competitive market, and have therefore been injured.

11.     Plaintiffs' claims are made based on the investigation conducted by and under the supervision of Plaintiffs' Counsel.  That investigation has included, but is not limited to, reviewing and analyzing information concerning Defendants and public TSC auctions in New Jersey during the Class Period, which the Plaintiffs obtained from, among other sources:

    a.      Publicly available press releases, news articles and other
            media reports;

    b.      Filings that certain Defendants have made with the United
            States Securities and Exchange Commission;

- 5 -

c.   The pleadings from the criminal proceedings of those Defendants that have agreed to plead guilty to violating the Sherman Act in connection with their participation in the precise conspiracy alleged herein, as well as those that have been indicted;

d.   Documents received in response to New Jersey Open Public Records Act Requests ("OPRA");

e.   Interviews with participants in the conspiracy (or their counsel) who are cooperating with Plaintiffs' Counsel and who have detailed the participation of all Defendants in the conspiracy alleged in this complaint; and

f.   Review of business records of certain Defendants involved in the conspiracy and that document the conspiracy alleged herein.

12.    These sources, considered collectively, validate Plaintiffs' allegations that Defendants collusively manipulated the interest rates associated with TSCs auctioned in New Jersey during the Class Period, and that Plaintiffs and members of the Class were harmed in that the interest rates Plaintiffs owed on TSCs purchased by Defendants at public auctions during the Class Period were higher than those that would have prevailed in a market free from the collusive activities alleged herein.

13.    Because discovery has not yet begun in this action, neither Plaintiffs nor other members of the public have access to the underlying facts, except for those facts alleged in this Complaint.  That information lies exclusively within the possession, custody, or control of Defendants and other insiders, which prevents Plaintiffs from further detailing Defendants' misconduct.  As stated in footnote one above, and detailed further below, this Court has preliminarily approved six settlements, and Plaintiffs recently have reached settlements with four other Defendant groups.  Part of the consideration being offered in nearly all of those settlement agreements is an agreement by the settling Defendant(s) to disclose to Plaintiffs details concerning the conspiracy to the extent not inconsistent with their obligations to the ongoing

- 6 -

Department of Justice investigation.  Because of the ongoing criminal investigation, the Department of Justice has severely limited the ability of the settling Defendants to provide the cooperation provided for in the settlement agreements.  Once these settling Defendants are fully able to provide such information, this information will provide additional details concerning the conspiracy.

## II.    JURISDICTION AND VENUE

14.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation), because this action arises under Section 1 of the Sherman Act (15 U.S.C. § 1), and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).

15.    The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed class are citizens of a state different from some Defendants.

16.    The Court also has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(a).  The matter in controversy is greater than $75,000 and this matter is between citizens of different states.  This Court has supplemental jurisdiction over Plaintiffs' state law claims.

17.    Venue is proper because Defendants reside, are found, have agents and transact business in this District as provided in 28 U.S.C. § 1391(b) and (c) and in Sections 4 and 12 of the Clayton Act (15 U.S.C. §§ 15 and 22).

### III.    PARTIES

**A.    Plaintiffs**

> **1.    Gila Bauer (as Trustee for the Gila Bauer Revocable Trust)**

18.    The Gila Bauer Revocable Trust is the fee owner of real property located at 14 Lesko Terrace, Ogdensburg, New Jersey (the "Bauer Property").  Defendant Robert E. Rothman purchased a TSC associated with the Bauer Property at a public auction on December 30, 2005, in the Borough of Ogdensburg for $1,048.26.  Plaintiff Bauer's lien was purchased by Defendant Rothman at 18% interest pursuant to the bid-rigging conspiracy alleged herein.  The TSC associated with the Bauer Property was issued because of delinquent water charges totaling $1,027.71.  As of November 13, 2012, Bauer estimates that the lien was at $21,284.

19.    As a result of the anticompetitive conduct of Defendants, the interest rate associated with the TSC on the Bauer Property was artificially inflated, and Plaintiff Bauer has been damaged thereby.

> **2.    Melissa Jacobs**

20.    Plaintiff Melissa Jacobs was the fee owner of real property located at 307 Rosemont Avenue, Newfield, New Jersey (the "Jacobs Property").  Defendant Sass Municipal Finance Partners V, LLC purchased a TSC associated with the Jacobs Property at a public auction on June 25, 2008, in Newfield.  The lien was purchased with an 18% interest rate pursuant to the conspiracy alleged herein.

21.    As a result of the anticompetitive conduct of Defendants, the interest rate associated with the TSC on the Jacobs Property was artificially inflated, and Plaintiff Jacobs has been damaged thereby.

### 3.     The Schmidt Plaintiffs

22.     Plaintiffs Frances A. Schmidt and Donald W. Schmidt ("the Schmidts") owned two parcels of land adjacent to their home.  The addresses of the properties are (1) 555 Woodstown Road, Woolwich Township ("Schmidt Property 1") and (2) 566 Woodstown Road, Woolwich Township ("Schmidt Property 2").

23.     The Schmidts did not pay 2006 property taxes totaling $626.51 for Schmidt Property 1 and $3,697.73 for Schmidt Property 2.  At a public auction on October 19, 2007, in Woolwich Township, Defendant CCTS Tax Liens I, LLC purchased the TSC associated with Schmidt Property 1, and Defendant M.D. Sass Municipal Finance Partners V, LLC purchased the TSC associated with Schmidt Property 2.  The liens were each purchased pursuant to the conspiracy alleged herein, both at 18%.  The price to redeem the lien on Schmidt Property 1 has increased to more than $38,721.70, while the price to redeem Schmidt Property 2 has increased to more than $36,297.85.

24.     As a result of the anticompetitive conduct of Defendants alleged herein, the interest rate associated with the TSCs on the Schmidt Property was artificially inflated, and Plaintiffs have been damaged thereby.

### 4.     Son, Inc.

25.     Son, Inc. ("Son") is a New Jersey corporation headquartered in Newark, New Jersey.  Son was the owner of property located at 711-717 21st Avenue in Paterson (the "Son Property").  Defendant Crusader was the winning bidder at an auction in Paterson on two TSCs associated with the Son Property, one dated June 29, 2004, and one dated June 29, 2006.  The liens were both purchased by defendant Crusader pursuant to the conspiracy alleged herein at 18%.  Plaintiff Son redeemed both TSCs on August 15, 2009, paying Defendant Crusader an inflated redemption amount that was attached to the TSCs as a result of the conspiracy alleged

herein.  The June 29, 2004, TSC was redeemed for $25,321.70, of which only $12,736.74 was for taxes.  The June 29, 2006, TSC was redeemed for $34,797.969, of which only $21,515.27 was for taxes.

26.     As a result of the anticompetitive conduct of Defendants, the interest rate associated with the TSCs on the Son Property were artificially inflated, forcing Plaintiff Son to pay a higher price to redeem the TSCs.  Plaintiff Son was damaged thereby.

**B.     Defendants**

**1.     The BankAtlantic Defendants**

27.     Defendant BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc. ("BankAtlantic"), is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.  BankAtlantic's tax lien business was run primarily by defendants Gray I. Branse and Michael G. Deluca, both of whom were BankAtlantic executives.  Both defendants Branse and Deluca attended TSC auctions in New Jersey and participated in meetings and discussions in furtherance of the conspiracy alleged in this complaint.  In addition to defendants Branse and Deluca, BankAtlantic also used contract bidders who attended TSC auctions in New Jersey during the Class Period on behalf of defendant BankAtlantic.  Such bidders included, but were not limited to, defendant David Jelley and Isabella Legut.  Both Jelley and Legut participated in meetings and conversations in furtherance of the conspiracy alleged in this complaint, and Jelley and Legut participated in the conspiracy alleged in this complaint at all times pursuant to the express instructions of Branse and Deluca.  Defendant BankAtlantic invested in tax liens throughout the entire country, but primarily in Florida and New Jersey.  Defendant BankAtlantic was one of the largest purchasers of TSCs in New Jersey during the Class Period.  Defendant BankAtlantic, through wholly-owned subsidiaries including defendants Fidelity Tax, LLC

("Fidelity") and Heartwood 55, LLC ("Heartwood 55"), purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

28.     Defendant Fidelity Tax, LLC is a Florida limited liability company formed in or around November 2001, with its principal place of business in Fort Lauderdale, Florida.  Fidelity is a wholly owned subsidiary of defendant BankAtlantic and is one of at least 100 subsidiaries used by defendant BankAtlantic to purchase tax liens throughout the country, including in New Jersey during the Class Period.  Defendants Branse and Deluca, as well as the BankAtlantic Defendants' other bidders, would use defendant Fidelity to purchase TSCs at TSC auctions in New Jersey in furtherance of the conspiracy.  Defendant Fidelity purchased TSCs at public auctions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein.

29.     Defendant Michael G. Deluca is an individual residing in Boca Raton, Florida. During the Class Period, defendant Deluca was Senior Vice President of Business Development and Operations at defendant BankAtlantic.  Defendant Deluca, along with defendant Gary Branse, was directly responsible for acquiring and overseeing defendant BankAtlantic's over $1 billion tax lien portfolio.  Defendant Deluca was terminated by defendant BankAtlantic for his participation in the conspiracy alleged herein.  Following his termination from defendant BankAtlantic, Deluca was employed for a period by defendant ATF.  During the Class Period, Deluca attended public tax sale auctions throughout New Jersey and personally participated in the conspiracy alleged herein.  During the Class Period, Deluca also regularly attended meetings of the National Tax Lien Association ("NTLA") and engaged in meetings and conversations in furtherance of the conspiracy at such conferences.  Defendant Deluca also supervised and instructed other bidders who worked for defendant BankAtlantic, including defendant David

Jelley, to participate in the conspiracy, and was at all times fully aware of defendant

BankAtlantic's participation in the conspiracy.

30.     Defendant Gary I. Branse is an individual residing in Fort Lauderdale, Florida.

During the Class Period, defendant Branse was a Senior Vice President at defendant

BankAtlantic.  Defendant Branse, along with defendant Deluca, was directly responsible for

acquiring and overseeing defendant BankAtlantic's over $1 billion tax lien portfolio.  Defendant

Branse was terminated by defendant BankAtlantic for his participation in the conspiracy alleged

herein.  During the Class Period, Branse attended public tax sale auctions throughout New Jersey

and personally participated in the conspiracy alleged herein.  During the Class Period, Branse

also regularly attended meetings of the NTLA and engaged in meetings and conversations in

furtherance of the conspiracy at such conferences.  Defendant Deluca also supervised and

instructed other bidders who worked for defendant BankAtlantic, including defendant David

Jelley, to participate in the conspiracy, and was at all times fully aware of defendant

BankAtlantic's participation in the conspiracy.

31.     Defendant Heartwood 55, LLC is a Florida limited liability company with its

principal place of business at 401 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida.

Defendant Heartwood 55 is a wholly owned subsidiary of defendant BankAtlantic and is one of

at least 100 subsidiaries used by defendant BankAtlantic to purchase tax liens throughout the

country.  Defendants Branse and Deluca, as well as the BankAtlantic Defendants' other bidders,

would use defendant Heartwood 55 to purchase TSCs at TSC auctions in New Jersey in

furtherance of the conspiracy.  Defendant Heartwood 55 currently owns tax sale certificates that

were acquired pursuant to the conspiracy.

32.     Defendant David Jelley is an individual residing in Plainsboro, New Jersey. During the Class Period, defendant Jelley was employed by defendant BankAtlantic for the specific purpose of attending tax lien auctions in New Jersey in furtherance of the conspiracy alleged herein.  At all relevant times, defendant Jelley was instructed by defendants Branse and Deluca to participate in the conspiracy and defendant Jelley reported to defendants Branse and Deluca concerning his discussions and understandings reached in furtherance of the conspiracy. Defendant Jelley is under criminal investigation for his participation in the conspiracy alleged herein.

33.     Defendant Jelley is currently employed by defendant Pro Capital, which was a party to a settlement agreement in this case between Plaintiffs and defendants CCTS, LLC, CCTS Tax Liens I, LLC, CCTS Tax Liens II, LLC, DSBD, LLC, Pro Capital LLC, David Butler, and David M. Farber.  Pursuant to that settlement agreement, all current and former employees of the Butler and Farber Defendants are released from liability for their participation in the conspiracy alleged in this complaint.  However, the release provided by the settlement does not apply to anyone who affirmatively refuses a request by Plaintiffs' Counsel to cooperate with the Plaintiffs' investigation.  Plaintiffs' Counsel has made a request to Mr. Jelley, through his counsel, that he cooperate with Plaintiffs' investigation, but Mr. Jelley has refused the request. Thus, Mr. Jelley is not covered by any release and is properly named as a defendant in this complaint.

## 2.     The Crestar Defendants

34.     Defendant CCTS Capital LLC is a New Jersey limited liability company with its principal place of business in Cherry Hill, New Jersey.  Following the Class Period, defendant CCTS Capital LLC changed its name to Crestar Capital, LLC ("Crestar").  From approximately November 2008 through July 2009, defendants David Butler and David Farber were Chief

Executive Officer and President, respectively, of defendant Crestar and, as further detailed below, by virtue of their guilty pleas, have admitted to participating in the conspiracy alleged herein while they were the highest ranking executives of Crestar.  Defendant Crestar purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

35.     Defendant William S. Green is a resident of Philadelphia, Pennsylvania. Defendant Green is currently the Chief Executive Officer of defendant Crestar, an entity formed by defendant Green in or around 2008 and which began purchasing TSCs in the New Jersey that same year.  Defendant Green is currently a member of the Board of Directors of the NTLA, and has been involved in the NTLA for many years.  Defendant Green attended numerous meetings of the NTLA, which provided opportunities for defendant Green to engage in meetings and conversations pursuant to the conspiracy alleged herein.  Defendant Green is currently under investigation by the U.S. Department of Justice for his involvement in the conspiracy alleged herein.  Defendant Green personally attended tax sale auctions in New Jersey during the Class Period, participated in the conspiracy alleged herein, and through Crestar (or family foundations or trusts), purchased TSCs at artificially inflated interest rates pursuant to the conspiracy alleged herein.

### 3.     Defendant Michael Mastellone

36.     Defendant Michael Mastellone is an individual residing in Mountain Lakes, New Jersey.  Defendant Mastellone personally attended TSC auctions in New Jersey during the Class Period, participated in the conspiracy alleged herein, and purchased TSCs at artificially inflated interest rates pursuant to the conspiracy alleged herein.  On September 30, 2013, defendant Mastellone agreed to plead guilty to violating the Sherman Act in connection with his participation in the conspiracy alleged herein, during the period 2000 through February 2009.

### 4.    The Mooring Defendants

37.    Defendant Mooring Tax Asset Group, LLC is a limited liability company based in Vienna, Virginia.  During the Class Period, Mooring's President was James Meeks.  Defendant Lambros Xethalis served as Mooring's director of acquisitions with responsibilities for selecting and purchasing tax liens for Mooring, and with responsibilities for overseeing Mooring's contract bidders.  Mr. Xethalis was terminated by Mooring for his participation in the conspiracy alleged herein.  Several witnesses who participated in the conspiracy, and who are cooperating with Plaintiffs' Counsel in their investigation, participated in discussions and reached understandings with Mr. Xethalis in furtherance of the conspiracy alleged in this complaint.  In addition to Mr. Xethalis, those same witnesses have identified Adam Berman, Karsten Hilpert, Teresa Hasson, and Isabella Legut (who also worked for defendant BankAtlantic), as Mooring employees or agents with whom they have also participated in discussions and agreements in furtherance of the conspiracy alleged herein.

38.    According to his LinkedIn profile, Mr. Berman is currently the Chief Operating Officer of defendant Mooring's sister company, MTAG Services, LLC.[2]  Mr. Berman worked for Mooring from approximately 2005 through 2010 and attended numerous tax sales in New Jersey during the Class Period.  Teresa Hasson also worked for Mooring and attended numerous TSC auctions on Mooring's behalf during the Class Period.  Teresa Hasson is the ex-wife of David Hasson, one of the Sass Defendants' employees who attended TSC auctions in New Jersey during the Class Period, and the Hassons attended numerous sales together and sat next to each other at these sales.  The Hassons would exchange confidential information prior to the

---

[2] MTAG Services, LLC is not named as a defendant in this complaint.  MTAG Services was formed in or around 2010.  Although MTAG Services is not named as a defendant, it has contractually agreed to assume a percentage of any adverse "judgment" against defendant Mooring in this case.

many auctions they attended and discussed and agreed upon liens they would allocate to each other and on which they would refrain from bidding on behalf of their respective employers. They would then discuss this agreement with other auction attendees and would get them to assent to their previously reached agreements.  Finally, Karsten Hilpert was also an employee of defendant Mooring during the Class Period and attended numerous sales in New Jersey during the Class Period.

39.     Defendant Lambros Xethalis is an individual residing in Princeton, New Jersey. During the Class Period, defendant Xethalis served as Director of Tax Lien Acquisitions of defendant Mooring, with overall responsibilities for the acquisition of tax liens for Mooring, including in New Jersey.  Defendant Xethalis reported to Jim Meeks, President of defendant Mooring.  Defendant Xethalis personally attended TSC auctions in New Jersey during the Class Period and participated in discussions and reached understandings with other Defendants to rig TSC auctions in New Jersey during the Class Period.  Defendant Xethalis also supervised and instructed other bidders who worked for defendant Mooring, including Adam Berman, Teresa Hasson, Karsten Hilpert, and Isabella Legut, to participate in the conspiracy, and was at all times fully aware of defendant Mooring's participation in the conspiracy.  Defendant Xethalis is currently under criminal investigation for his participation in the conspiracy alleged in this complaint.

40.     Defendant Mooring purchased TSCs at public auctions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein.  Defendant Mooring is currently the subject of a criminal investigation being conducted by the United States Department of Justice for its participation in the conspiracy alleged herein.  Defendant Mooring has publicly acknowledged that it has been subpoenaed by a federal grand jury investigating the

conspiracy alleged in this complaint.  Further, participants in the conspiracy who are cooperating with Plaintiffs' Counsel have identified defendant Mooring as participating in the conspiracy alleged herein.

### 5. The PAM Defendants

41.     Defendant PAM Investors ("PAM") is a partnership involved in acquisitions and management of real estate, with its principal place of business at 127 S. Washington Avenue, Bergenfield, New Jersey.  Defendant Patrick Caraballese serves as president and managing partner of PAM.  Defendant PAM, through bidders such as Carabellese, and other principals of PAM including Mario Valenti and other executives, purchased and/or acquired TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

42.     Defendant Patrick Carabellese is an individual residing in Cresskill, New Jersey. Defendant Carabellese purchased TSCs in New Jersey on behalf of defendant PAM, an entity of which he serves as president and managing partner.  Defendant Carabellese personally attended tax sale auctions in New Jersey during the Class Period, participated in the conspiracy alleged herein, and through defendant PAM, purchased TSCs at artificially inflated interest rates pursuant to the conspiracy alleged herein.  Participants in the conspiracy who are cooperating with Plaintiffs' Counsel have identified the PAM Defendants as having participated in the conspiracy alleged in this complaint.

### 6. The Wolfson Defendants

43.     Defendant Richard Simon, Trustee LLC is a partnership existing under the laws of New Jersey and is located in Northfield, New Jersey.  Defendant Richard Simon, Trustee LLC purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

- 17 -

44.     Defendant Betty Simon, Trustee LLC is a New Jersey limited liability company with its principal place of business in Northfield, New Jersey.  Defendant Betty Simon, Trustee LLC purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

45.     Defendant Joseph Wolfson ("Wolfson") is an individual residing in Margate City, New Jersey.  During the Class Period, defendant Wolfson had an ownership interest in and was the principal bidder for Richard Simon, Trustee LLC and Betty Simon, Trustee LLC, and attended public TSC auctions in New Jersey and participated in the conspiracy alleged herein.  Defendant Wolfson, through defendants Richard Simon, Trustee LLC and Betty Simon Trustee, LLC, purchased TSCs at public auctions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein.

46.     As described in detail below, on November 20, 2013, a federal grand jury indicted all three Wolfson Defendants for their participation in the conspiracy alleged in this complaint, charging that each of the Wolfson Defendants participated in the conspiracy from 1998 through February 2009.

**7.     Defendant Robert W. Stein**

47.     Defendant Robert W. Stein ("Stein") resides in Huntingdon Valley, Pennsylvania.  During the Class Period, defendant Stein attended public TSC auctions in the State of New Jersey on behalf of the Crusader Defendants and bid on and acquired TSCs pursuant to the conspiracy alleged herein.  Until he was terminated in approximately November 2010 for his participation in the conspiracy alleged herein, defendant Stein served as Chief Executive Officer and President of both defendants Crusader and Royal Tax Lien Services, LLC, known internally at Royal Bank and RBPI as the "Tax Lien Operation."  Defendants Crusader and Stein have both pled guilty to violating the Sherman Act and have admitted to participating in the conspiracy

alleged herein.  Further, witnesses to the conspiracy have identified defendant Stein as participating in the conspiracy alleged herein.

### 8.  Defendant American Tax Funding

48.     Defendant American Tax Funding, LLC is a Florida limited liability company with its principal place of business in Jupiter, Florida.  According to its website, "ATF is one of the industry's leading purchasers and servicers of delinquent municipal real estate tax lien sales." ATF was originally formed in 1997 as Transamerica Municipal Finance ("TMF"), a division of Transamerica Corporation.  In or around August 2000, the founders completed a form of a management buyout of TMF, creating ATF.  Since its founding, ATF and its predecessors have purchased more than $1 billion in tax liens in over 14 states.  ATF touts itself as having a strong balance sheet and an affiliation with one of the top 10 largest banks.  Defendant ATF purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

### 9.  The Del Vecchio Defendants

49.     Defendant Robert U. Del Vecchio Pension Trust is a trust formed under the laws of New Jersey and located in Hawthorne, New Jersey.  Defendant Robert U. Del Vecchio Pension Trust purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.  Defendant Robert U. Del Vecchio Pension Trust was represented at TSC auctions in New Jersey by defendant Robert U. Del Vecchio.

50.     Defendant Robert U. Del Vecchio Sr. is an individual residing at Hawthorne, New Jersey.  Defendant Del Vecchio attended public TSC auctions in the State of New Jersey and participated in the conspiracy alleged herein.  On September 30, 2013, defendant Del Vecchio agreed to plead guilty to violating the Sherman Act in connection with his participation in the conspiracy alleged herein, and admitted to participating in the conspiracy during the period 2000

through 2008.  Defendant Del Vecchio, through the Robert U. Del Vecchio Pension Trust, purchased TSCs at public auctions in the State of New Jersey during the Class Period pursuant to the conspiracy alleged herein.

**10.    Defendant Norman T. Remick**

51.     Defendant Norman T. Remick is an individual residing in Barnegat, New Jersey. On April 25, 2013, defendant Remick agreed to plead guilty to violating the Sherman Act in connection with his participation in the conspiracy alleged herein.  Defendant Remick personally attended tax sale auctions in New Jersey during the Class Period, participated in the conspiracy alleged herein, and purchased TSCs at artificially inflated interest rates during the Class Period pursuant to the conspiracy alleged herein.

**C.    Settled Defendants**

52.     Plaintiffs have reached settlement agreements with the below Defendants:

**1.    The Phoenix Defendants**

53.     Defendant Phoenix Funding, Inc. is a New Jersey corporation with its principal place of business at 191 Glen Road, Mountainside, New Jersey.  Phoenix Funding's president is defendant Benedict Caiola.  Defendant Phoenix Funding purchased TSCs at public auctions in the New Jersey during the Class Period pursuant to the conspiracy alleged herein.

54.     Defendant Benedict Caiola is an individual residing at 191 Glen Road, Mountainside, New Jersey.  Defendant Caiola is the President of Phoenix Funding.  Defendant Caiola attended public TSC auctions throughout the New Jersey during the Class Period and participated in the conspiracy alleged herein.

**2.    The Butler and Farber Defendants**

55.     Defendant CCTS, LLC is a New Jersey limited liability company with its principal place of business in Cherry Hill, New Jersey.  Defendants David Butler and David M.

Farber were executives of CCTS, LLC during the Class Period.  CCTS, LLC purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

56.     Defendant CCTS Tax Liens I, LLC ("CCTS I") is a New Jersey limited liability company with its principal place of business in Cherry Hill, New Jersey.  Defendants David Butler and David M. Farber were executives of CCTS I during the Class Period.  CCTS I purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

57.     Defendant CCTS Tax Liens II, LLC ("CCTS II") is a New Jersey limited liability company with its principal place of business in Cherry Hill, New Jersey.  Defendants David Butler and David M. Farber were executives of CCTS II during the Class Period.  CCTS II purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

58.     Defendant Pro Capital LLC ("Pro Capital") is a New Jersey limited liability company with its principal place of business in Cherry Hill, New Jersey.  Defendants David Butler and David M. Farber were executives of Pro Capital during the Class Period.  Pro Capital was co-founded by defendant Farber.  Pro Capital purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

59.     Defendant DSBD, LLC ("DSBD") is a New Jersey limited liability company with its principal place of business in Voorhees, New Jersey.  Defendants David Butler and David M. Farber were executives of DSBD during the Class Period.  DSDB purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

60.     Defendant David Butler ("Butler") resides in Cherry Hill, New Jersey.  Butler was one of the limited partners of DSBD, and was an executive of defendants CCTS, CCTS Capital,

CCTS I, CCTS II, DSBD, and Pro Capital.  Butler purchased TSCs at public auctions in the State

of New Jersey during the Class Period pursuant to the conspiracy alleged herein.

61.     Defendant David M. Farber ("Farber") resides in Cherry Hill, New Jersey.

Defendant Farber, like defendant Butler, was one of the limited partners of DSBD, and was an

executive of defendants CCTS, CCTS Capital, CCTS I, CCTS II, DSBD, and Pro Capital.

Farber purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the

conspiracy alleged herein

### 3.     The Crusader Defendants

62.     Defendant Royal Bancshares of Pennsylvania, Inc. ("RBPI") is a publicly traded

Pennsylvania corporation with its principal place of business in Narbeth, Pennsylvania.

Defendant RBPI, through its wholly owned subsidiary defendant Royal Bank America, owned a

60% equity interest in defendant Crusader and Royal Tax Lien Services ("RTLS"), and

dominated and controlled the finances and decision making processes of both entities.  RBPI,

directly or through a subsidiary and/or affiliate under its control, purchased TSCs at public

auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

63.     Defendant Royal Bank America ("Royal Bank") is a Pennsylvania corporation

with its principal place of business in Narbeth, Pennsylvania.  Royal Bank is a subsidiary of

defendant RBPI, and its chairman and board members are also, respectively, the chairman and

board members of defendant RBPI.  Royal Bank, directly or through a subsidiary and/or affiliate

under its control, purchased TSCs in New Jersey during the Class Period pursuant to the

conspiracy alleged herein.

64.     Defendant Crusader Servicing Corporation is a Pennsylvania corporation with its

headquarters at Narbeth, Pennsylvania.  Crusader is majority-owned (60%) by defendant Royal

Bank.  The remaining 40% interest is owned by defendant Robert W. Stein and/or co-conspirator

Gary Snyder, both of whom are former employees of Crusader.  During the Class Period, Crusader was a valuable subsidiary of defendants Royal Bank and RBPI.  Crusader purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

65.     Defendant Royal Tax Lien Services, LLC is a Pennsylvania limited liability company with its principal place of business in Pennsylvania.  RTLS is majority-owned (60%) by defendant Royal Bank.  The remaining 40% interest is owned by defendant Robert W. Stein.  RTLS was formed in late 2006 to purchase and service delinquent tax liens.  RTLS purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

### 4.     Defendant William A. Collins

66.     Defendant William A. Collins ("Collins") is an individual residing in Medford, New Jersey.  Collins participated in TSC auctions in New Jersey, and the conspiracy alleged herein, through an entity called "Independent Investors."  Collins, individually or doing business as "Independent Investors," purchased TSCs at public TSC auctions in the New Jersey during the Class Period pursuant to the conspiracy alleged herein.

### 5.     Fountain of Life Defendants

67.     Defendant Burlington Assembly of God/Fountain of Life Center ("Fountain of Life Center") is a New Jersey not-for-profit corporation with its headquarters in Burlington, New Jersey.  According to its website, Fountain of Life Center is a "'Spiritual Oasis' for all people to worship, to learn, to encourage and to be encouraged, to fellowship and to reach out to others."  Fountain of Life Center would purchase TSCs at public auctions pursuant to the conspiracy alleged herein, and then assign the liens it purchased to a shell corporation such as defendant Mercer S.M.E., Inc. (as well as Camden, S.M.E., Inc. and Ferry Plaza S.M.E., Inc.).  Fountain of

Life Center would assign the liens to a shell corporation in order to hide from the public the fact that it was involved in the purchase of TSCs in New Jersey and the foreclosure of those who failed to redeem their TSCs. Fountain of Life Center would be represented at auctions in New Jersey primarily by defendants Susan M. Esposito and David B. Boudwin, both of whom participated in discussions and agreements and/or understandings with other defendants concerning the conspiracy alleged herein. Occasionally, the head of the Fountain of Life Center, Paul Graban, would also attend auctions on behalf of Fountain of Life Center. The Fountain of Life Center purchased TSCs at public auctions throughout New Jersey during the Class Period and participated in the conspiracy alleged herein.

68. Defendant Mercer S.M.E., Inc. ("Mercer") is a New Jersey corporation with its principal place of business in Burlington, New Jersey. Mercer was organized in 2001 to act as the assignee of tax liens that were purchased by defendant Fountain of Life Center at TSC auctions in New Jersey during the Class Period. The President of Mercer is Susan M. Esposito. Its Vice President is Patricia Miller and its Secretary is Debra Bercaw. Mercer attended public TSC auctions throughout New Jersey during the Class Period and participated in the conspiracy alleged herein.

69. Defendant Susan M. Esposito ("Esposito") is an individual residing in Burlington, New Jersey. Esposito is the President of defendant Mercer, and regularly attended TSC auctions in New Jersey during the Class Period, and participated in discussions and agreements and/or understandings with other Defendants concerning the conspiracy alleged herein. Esposito attended public TSC auctions throughout New Jersey during the Class Period and participated in the conspiracy alleged herein.

70.     Defendant David B. Boudwin ("Boudwin") is an individual residing in Burlington, New Jersey.  Boudwin regularly attended TSC auctions in New Jersey during the Class Period and participated in discussions and agreements and/or understandings with other Defendants concerning the conspiracy alleged herein.  Boudwin is an executive of defendant Fountain of Life Center.  Boudwin attended public TSC auctions throughout New Jersey during the Class Period and participated in the conspiracy alleged herein.

### 6.     Defendant Isadore H. May

71.     Defendant Isadore H. May ("May") is an individual residing in Margate City, New Jersey.  May, individually or doing business as "Garden State Investment," purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

### 7.     Defendant Robert E. Rothman

72.     Defendant Robert E. Rothman ("Rothman") is an individual residing in New York, New York.  Rothman purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.  In addition to Rothman himself, defendant Rothman also sent other employees, including, but not limited to, Art Rittenhouse, Jr., to auctions in New Jersey.  Mr. Rittenhouse also participated in the meetings and communications on defendant Rothman's behalf in furtherance of the conspiracy alleged herein.

### 8.     Defendant Richard J. Pisciotta, Jr.

73.     Defendant Richard J. Pisciotta, Jr. ("Pisciotta") is an individual residing in Long Beach Township, New Jersey.  Pisciotta purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

- 25 -

9.     **Defendant Plymouth Park**

74.     Defendant Plymouth Park Tax Services, LLC d/b/a Xspand is a Delaware

corporation with its headquarters at New York, New York.  Plymouth Park is currently a wholly

owned subsidiary of J.P. Morgan Chase & Co.  Defendant Plymouth Park purchased TSCs at

public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

10.     **The Sass Defendants**

75.     Defendant M.D. Sass Investor Services, Inc. ("M.D. Sass") is a Delaware

Corporation with its principal place of business in New York, New York.  M.D. Sass is an

investment management firm which makes various investments for itself and its investors,

including in municipal tax liens such as the TSCs at issue in this case.  Since it began purchasing

tax liens in or around 1993, M.D. Sass has purchased approximately $1.1 billion of tax liens

throughout the country, including in New Jersey.  M.D. Sass participated in tax lien auctions in

New Jersey through various subsidiaries, primarily the other Sass Defendants named and

described below.  At all times relevant hereto, officers and employees of M.D. Sass either

personally participated in, had knowledge of, and/or specifically authorized M.D. Sass'

participation in the conspiracy alleged herein.  Further, certain of M.D. Sass' employees, such as

defendants Jessani and Hruby, as well as John de Guzman, Anthony Potenza, David Hasson, and

Richard Hruby, personally attended public TSC auctions in New Jersey and colluded with other

bidders at these auctions during the Class Period.  M.D. Sass, directly or through a subsidiary

and/or affiliate under its control, purchased TSCs at public auctions in New Jersey during the

Class Period pursuant to the conspiracy alleged herein.

76.     Defendant M.D. Sass Tax Lien Management, LLC ("M.D. Sass Tax Lien

Management") is a New York limited liability company with its principal place of business in

New York, New York.  M.D. Sass Tax Lien Management was formed in or around 1996 and was

created by defendant M.D. Sass to acquire and/or manage tax liens it purchased.  M.D. Sass Tax

Lien Management acts as a general partner to the various defendant M.D. Sass funds that were

formed in connection with M.D. Sass's acquisition of tax liens, such as M.D. Sass I, M.D.

Sass II, M.D. Sass III, M.D. Sass IV, M.D. Sass V, and M.D. Sass VI.  Each of these funds was

formed to meet specific investment objectives.  M.D. Sass Tax Lien Management purchased

TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged

herein.

     77.     Defendant M.D. Sass Municipal Finance Partners - I, L.P. ("M.D. Sass I") is a

Delaware limited partnership with its principal place of business in New York, New York.

Defendant M.D. Sass I purchased TSCs at public auctions in New Jersey during the Class Period

pursuant to the conspiracy alleged herein.

     78.     Defendant M.D. Sass Municipal Finance Partners - II, L.P. ("M.D. Sass II") is a

Delaware limited partnership with its principal place of business in New York, New York.

Defendant M.D. Sass II purchased TSCs at public auctions in New Jersey during the Class

Period pursuant to the conspiracy alleged herein.

     79.     Defendant M.D. Sass Municipal Finance Partners - III, LLC ("M.D. Sass III") is a

Delaware limited liability company with its principal place of business in New York, New York.

Defendant M.D. Sass III purchased TSCs at public auctions in New Jersey during the Class

Period pursuant to the conspiracy alleged herein.

     80.     Defendant M.D. Sass Municipal Finance Partners - IV, LLC ("M.D. Sass IV") is a

Delaware limited liability company with its principal place of business in New York, New York.

Defendant M.D. Sass IV purchased TSCs at public auctions in New Jersey during the Class

Period pursuant to the conspiracy alleged herein.

81.     Defendant M.D. Sass Municipal Finance Partners - V, LLC ("M.D. Sass V") is a Delaware limited liability company with its principal place of business in New York, New York. Defendant M.D. Sass V purchased TSCs at public auctions in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

82.     Defendant M.D. Sass Municipal Finance Partners - VI, LLC ("M.D. Sass VI") is a Delaware limited liability company with its principal place of business in New York, New York. Defendant M.D. Sass VI purchased TSCs in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

83.     Defendant Vinaya J. Jessani ("Jessani") is an individual residing in New York, New York.  Jessani was employed by M.D. Sass from sometime in 1993 until July 16, 2010. Jessani, along with the current President of M.D. Sass, started M.D. Sass' tax lien business in or around 1993.  Throughout his entire tenure at M.D. Sass, Jessani had primary responsibility for M.D. Sass' tax liens business.  When Jessani was first hired by M.D. Sass in 1993, he joined as a financial analyst working primarily in the tax liens area.  In 1994, he became a portfolio manager in the tax liens area, a position he held until the late 1990's when he became a Vice President at M.D. Sass responsible for M.D. Sass' tax lien business.  Finally, in 2004, he became a Senior Vice President at M.D. Sass responsible for M.D. Sass' tax lien business.  Jessani held the position of Senior Vice President until July 16, 2010, at which point he was terminated by M.D. Sass for cause in connection with his participation in the illegal activities alleged in this complaint.  During the Class Period, Jessani attended tax sale auctions throughout New Jersey and personally participated in the conspiracy alleged herein.

84.     Defendant Stephen E. Hruby ("Hruby") is an individual residing in Hainesport, New Jersey.  During the Class Period, Hruby was an executive, and later, an officer, at defendant

- 28 -

M.D. Sass.  His primary role at M.D. Sass was director of acquisitions of tax liens.  In this

capacity, Hruby oversaw, supervised and directed the purchase of TSCs by M.D. Sass in New

Jersey (as well as other jurisdictions) during the Class Period, pursuant to the conspiracy alleged

herein.  The conspiracy charge to which Hruby pled guilty was a based on the fact that in his job

at Sass he "oversaw the purchase of tax liens [by Sass]…," and, *inter alia*, "instructed other

bidders under his supervision" to submit collusive bids.

**D.      Unnamed Co-Conspirators**

85.     Various other entities and individuals not named as Defendants in this complaint

participated as co-conspirators in the acts complained of herein, and performed acts and made

statements that aided and abetted and were in furtherance of the unlawful conduct alleged herein.

86.     Whenever in this Complaint reference is made to any act, deed or conduct of a

corporate Defendant, the allegation means that Defendant engaged in the act, deed or conduct by

or through one or more of its officers, directors, agents, employees or representatives who was

actively engaged in the management, direction, control or transaction of the ordinary business

and affairs of such corporate Defendant.

## IV.     INTERSTATE TRADE AND COMMERCE

87.     The business activities of Defendants that are the subject of this action were

within the flow of, and substantially affected, interstate trade and commerce.

88.     During the Class Period, Defendants transacted business in multiple states in a

continuous and uninterrupted flow of interstate commerce throughout the United States.  Further,

several Defendants used funds received from outside New Jersey to purchase tax liens in New

Jersey during the Class Period.

## V.    FACTUAL ALLEGATIONS

### A.    The TSC Market in New Jersey

89.     The New Jersey Tax Sale Law ("NJTSL") contains a number of statutes which, collectively, govern the "[c]reation, enforcement and collection of liens for unpaid [real property] taxes and other municipal liens on real property."  *See* N.J.S.A. § 54:5-1, *et seq*.

90.     Pursuant to these statutes, the NJTSL establishes municipal tax liens as a legal restriction on real property, whether commercial, residential, industrial, or land.  Such tax liens arise automatically as a charge against the fee title interest of the owner upon the accrual of real estate taxes or such other charges that the New Jersey municipality in which the real property is located imposes.  Municipalities may collect these unpaid revenues only by means provided by the NJTSL.

91.     N.J.S.A. § 54:5-6 states that delinquent taxes on real property operate as a continuous lien on the property, and all subsequent taxes, interest, penalties and costs of collection shall be added to and become part of such lien.  This lien is superior to all other interests on the real property, including any mortgage lien.

92.     If a real property owner in New Jersey has a lien connected with his property for failure to pay real property, water, or sewage taxes, the municipality in which the property is located auctions the lien through a bidding process authorized by the NJTSL.

93.     The winner of an auction acquires the municipality's lien and receives a TSC as evidence of the lien.  The TSC holder is entitled to collect the amount of the lien from the delinquent taxpayer, along with the winning interest rate, in addition to any subsequent taxes paid by the winning bidder and applicable interest and penalties.  Further, the winning bidder can foreclose on the property and take title to the property if the taxes owed on the property, accrued interest or any applicable costs or penalties remain unpaid for a period of time.

94.     The auctions are open to the public.  Although individuals are permitted to bid for the right to purchase TSCs at these auctions, bidders are often sophisticated financial institutions that acquire TSCs as part of an investment strategy.  Bidders from outside of New Jersey regularly bid on TSCs at public auctions in New Jersey, including defendants Mooring and BankAtlantic.  Individuals and entities who have a lien on their property (*i.e.*, Plaintiffs and members of the Class) did not attend such auctions.

95.     Each of New Jersey's 566 municipalities must hold auctions for outstanding liens on real property at least once a year, assuming the municipality contains properties that are delinquent in their tax obligations.  *See* N.J.S.A. § 54:5-19.  New Jersey municipalities auction approximately $100-$200 million in delinquent tax obligations every year.

96.     The NJTSL thus mandates that there be competitive bidding for outstanding tax liens.  Under the NJTSL, bidding at the auctions opens up at 18% interest and each subsequent bid lowers the interest rate.  This is known as a reverse auction.  The presumption, therefore, is that honest competition among bidders in a truly competitive market should drive down the winning bid far below 18%, and often as low as 0%.  The auction can even result in the bidders paying an extra amount, or "premium," to obtain the lien on particularly desirable properties.

97.     Because a purchaser can collect penalties from the property owner, can secure a first priority lien on the property, is entitled to priority for subsequent year tax liens on the property, and can institute foreclosure proceedings at an appropriate time, the purchase of a TSC with a winning bid of 0% interest is still extremely valuable.

98.     The tax lien auction process in New Jersey is designed to engender competitive bidding in an effort to try and help the delinquent tax payer who is already likely experiencing financial difficulty and because the statutory tax lien process, even in the absence of collusion,

- 31 -

can often lead to harsh consequences for the property owner.  For example, once a property owner has a TSC auctioned off with respect to their property, by statute, the TSC acquirer may elect to pay any subsequent delinquent property taxes and/or municipal charges.  These subsequent taxes and interest are added to the lien.  Any subsequent taxes and charges by statute automatically carry an 18% interest rate.  As a result, often those who failed to pay several hundred dollars in property taxes or other municipal charges end up owing tens of thousands of dollars in taxes and interest to redeem the TSC.  Thus, the statutory tax lien auction process in New Jersey can be quite onerous to the property owner.

99.     The conspiracy alleged herein acted to make redemptions even more punitive by colluding and artificially raising the interest rate associated with the property owner's delinquent obligation.  Quite simply, the conspiracy was particularly egregious to already suffering New Jersey property owners.

**B.     Defendants' Conspiracy**

100.     Although TSC auctions in New Jersey are intended to result in competitive bidding for tax liens, thereby lowering the interest rate associated with the delinquent tax obligation to the benefit of the property owner, Defendants entered into an overarching and statewide conspiracy to ensure that the TSCs auctioned in New Jersey carried as high an interest rate as possible.  Defendants entered into a combination and/or conspiracy to rig auctions for tax liens throughout New Jersey during the Class Period so that competition at auctions would be reduced and/or eliminated thereby keeping interest rates on tax liens artificially high.

101.     In the early-mid 1990s, TSC auctions in New Jersey were dominated largely by smaller individual investors.  In or around the mid-late 1990s, a number of larger institutional investors, which were well capitalized, including the Crusader and Sass Defendants, entered the New Jersey tax lien market and bid very aggressively which resulted in aggressive competition

- 32 -

among the investors in New Jersey TSC auctions resulting in low interest rates associated with auctioned tax liens. Investors at New Jersey TSC auctions sought a way to mitigate this competitive bidding environment so as to keep interest rates (and their profits) as high possible. It was this competitive bidding environment that led to the conspiracy alleged in this complaint.

102.    Beginning in or around 1998, the Defendants, including the Mooring Defendants, the BankAtlantic Defendants, the Wolfson Defendants, the PAM Defendants, and defendant Mastellone, entered into the conspiracy alleged in this complaint. In what was a radical shift in bidding practices, auction attendees reached an understanding to allocate the liens up for auction amongst themselves and refrain from bidding on liens which were allocated to other auction attendees. This understanding among auction attendees applied to auctions throughout New Jersey during the Class Period.

103.    Auction lists identifying each property associated with each lien were published approximately 30 days in advance of the auction by the municipality on the Internet or in certain publications. Vendors, such as LienSource, retrieve these auction lists from every municipality in New Jersey and assemble such information in a comprehensive database along with other information concerning the property. Defendants would purchase such information from these vendors, or would simply retrieve the information themselves from a newspaper or the Internet. Thus, prior to each auction, Defendants were able to determine every lien that would be up for auction.

104.    Possessing such information in advance of each auction permitted the Defendants to discuss and agree upon the liens each would be allocated in advance of the auction. The Defendants would discuss the liens in the auction lists and agree upon which lien would be allocated to a particular Defendant. Defendants Sass and Crusader often organized other bidders

- 33 -

before each auction and coordinated the process by which Defendants decided which conspirator

would win which lien or liens.  Conversations allocating the liens would take place on the

telephone or by email prior to the auction and in person at the auction prior to the beginning of

the auction, often outside the municipal building or in parking lots behind the building where the

auction was to be held.  Defendants also met for coffee to further the conspiracy.  The Defendant

allocated a particular lien would then bid on its allocated lien at 18% interest, while the other

Defendants refrained from bidding at all on that particular lien.  The bidding conspirator would

then "win" the auction since there were no competing bids from other conspirators.  The

conspirators often kept detailed "bid books" in which they would notate each lien up for auction

and also which liens such conspirator was allocated pursuant to the conspiracy.

      105.    Some participants referred to this process as "round robin" bidding, as

conspirators took turns bidding on different TSCs pursuant to the cartel.

      106.    Once the bidding began, Defendants did not deviate from the previously allocated

bids or cheat on the cartel by bidding against each other.  Indeed, any cheaters would have had

their own liens bid down, which acted as an incentive to bid only on the agreed-upon allocation.

Defendants also often tracked the bidding on their bid books as bidding unfolded, to ensure that

fellow conspirators were bidding on – and "winning" – the agreed-upon liens, and not cheating.

After the auctions were over, bidders would often report the details of the collusion which took

place at an auction to their superiors.  Often times, the conspirators would allocate liens to each

other in roughly the same value, so that they would profit equally from the conspiracy and not

gain a financial advantage over each other.

      107.    In addition, the conspiracy was furthered by Defendants' employees often

working for multiple bidders during the Class Period.  For example, defendant Hruby has bid for

both the Sass Defendants and Crestar.  Similarly, Art Rittenhouse, Jr., who was formerly a bidder for Crusader, began bidding for Defendant Rothman in 2002.  Co-conspirator Isabella Legut bid for both Mooring and BankAtlantic.  There are many other examples.

108.    As Vincent Belluscio, the executive director of the state tax collectors and treasurers association, stated, "[T]hese [tax lien] investors have a tendency to meet … and divvy up the [property] list."  Gopal, P., "JPMorgan Unit Subpoenaed in U.S. Tax-Lien Inquiry," (hereafter, "*JPMorgan Unit Subpoenaed*"), Bloomberg (April 20, 2010), available at http://originwww.bloomberg.com/apps/news?pid=conewsstory&tkr=RBPAA:US&sid=aRC1Q6 y1dKtE. That is, "[t]hey say, 'We'll buy these properties, and you buy those.' And the interest rate holds at 18 percent."  *Id*.  Tellingly, according to a participant, "It's a niche business" where participants "have camaraderie among each other" because, in their view, there was "enough for everybody."  *See* Glovin, D. & Vareacos, D., "New Jersey 'Round Robin' Tax Lien Auction Spurs Probe," Bloomberg (March 21, 2012), available at http://www.bloomberg.com/news/2012-03-21/m-d-sass-participated-in-tax-lien-sale-being-probed-by-u-s-.html.

109.    As a direct result of Defendants' conspiracy, interest rates associated with the tax liens that were sold at public auctions in New Jersey during the Class Period were artificially inflated, often at 18%.

C.    **Each Defendant's Participation in the Conspiracy**

110.    Each Defendant identified herein participated in the statewide conspiracy alleged in this complaint with other Defendants to rig TSC auctions in New Jersey during the Class Period.  Not every Defendant participated in the conspiracy at the same time.  Some Defendants participated in the conspiracy longer than others.  Some Defendants attended more auctions than others, and not every Defendant attended every auction.  However, the largest Defendants attended most, if not all, auctions in New Jersey during the Class Period, and therefore, were able

to orchestrate the conspiracy.  Regardless of the role played by each Defendant, however, as evidenced by the allegations in this complaint, each Defendant made a "conscious commitment to a common scheme."

111.    For each auction, Defendants discussed the liens available for bid in the auction lists, discussed prior to the start of the auction which lien or liens would be allocated to a particular Defendant, agreed upon an allocation of the bids, and, at the auction, acquired liens in furtherance of the understandings reached.  A number of sources who are cooperating with Plaintiffs' Counsel have identified dozens of representative examples of auctions during the Class Period which were part of the Defendants' statewide conspiracy.  At these auctions, Defendants bid on and "won" liens, at artificially-inflated interest rates that resulted from a lack of competitive bidding, as per the explicit terms of the conspiracy.

112.    While an antitrust complaint is to be judged on the whole and not dismembered and analyzed defendant by defendant, below is a recitation of exemplar evidence of each non-settling Defendants' participation in the conspiracy.  The Plaintiffs have not yet taken discovery in this matter and believe that additional discovery will yield significantly more evidence of the conspiracy.  The auctions identified below are not merely auctions which Defendants lawfully attended; rather, numerous witnesses to the conspiracy who are cooperating with Plaintiffs' Counsel have provided evidence of Defendants' collusive activities with respect to each auction below pursuant to the terms of the statewide conspiracy alleged in this complaint.

### 1.    The BankAtlantic Defendants' Participation in the Conspiracy

113.    The BankAtlantic Defendants, through defendants Branse, Deluca, Jelley, and their other bidders, as well as BankAtlantic's wholly-owned subsidiaries defendants Fidelity and Heartwood 55, participated in an illegal agreement and/or understanding with other Defendants to rig TSC auctions throughout New Jersey during the Class Period.

114.     As a result of this agreement and/or understanding, Defendants, including the BankAtlantic Defendants, would, among other things, agree, prior to the beginning of the auctions at which they were present, which liens each Defendant's auction attendee would be allocated.  Such representatives of the Bank Atlantic Defendants who would engage in such discussions and understandings with other Defendants were primarily defendants Michael Deluca and Gary I. Branse, but also included employees of the BankAtlantic Defendants such as David Jelley and Isabella Legut.  Often, the largest bidders – Plymouth Park, the Sass Defendants, the Crusader Defendants, the BankAtlantic Defendants, and ATF – would have first picks over the liens up for auction.  Defendants also reached an understanding not to bid against the Defendant which had been allocated a particular lien in order to reduce or eliminate competitive bids and ensure that the lien which had been allocated was auctioned at the highest interest rate possible to the cartelist who had been designated as the pre-determined winner of that lien.  The conspiracy illegally and artificially raised interest rates associated with TSCs sold at the auction because of the illegal understanding alleged herein.

115.     Defendants Branse and Deluca, who were executives of defendant BankAtlantic, were primarily responsible for BankAtlantic's national tax lien business, including in New Jersey.  Defendants Branse and Deluca personally attended tax lien auctions in New Jersey during the Class Period and reached understandings with other conspirators to allocate tax liens at New Jersey TSC auctions during the Class Period.  In addition to defendants Branse and Deluca, defendant BankAtlantic would also employ other bidders such as defendant Jelley, Isabella Legut, and others, all of whom were supervised by Branse and Deluca.  Prior to the auctions these bidders would attend, defendants Branse and Deluca would instruct their bidders to participate in the conspiracy by informing them which liens they should bid on and which

liens they should refrain from bidding on pursuant to the conspiracy.  These bidders would then knowingly and willingly carry out the instructions of defendants Branse and Deluca and participate in discussions and understandings with other Defendants in furtherance of the conspiracy.  Thus, even when defendants Branse and Deluca were not physically present at auctions, they instructed others working at their direction to participate in the conspiracy and were fully aware of and authorized others' participation in the conspiracy who were working at their direction.

116.    At least seven witnesses to the conspiracy who are cooperating with the investigation being conducted by Plaintiffs' Counsel have identified each BankAtlantic Defendant – BankAtlantic, Fidelity, Heartwood 55, Deluca, Branse, and Jelley – as participating in the conspiracy alleged herein and have identified dozens of auctions in which these cooperating witnesses participated in discussions with the BankAtlantic Defendants and reached understandings to allocate tax liens at New Jersey TSC auctions during the Class Period.  Such accounts are also corroborated by documents maintained by these cooperating witnesses.  The following is merely a sampling of such auctions.

a.    **Example Auctions in Which the BankAtlantic Defendants Furthered the Conspiracy**

117.    **April 3, 2000 West Milford Auction.**  According to information provided by at least one cooperating witness, representatives of the BankAtlantic Defendants attended an auction in West Milford, New Jersey on April 3, 2000, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the BankAtlantic Defendants, the auction was attended by representatives of the PAM Defendants, representatives of the Mooring Defendants, the Del Vecchio Defendants (defendant Del Vecchio has pled guilty), Craig Sagelow representing defendant Robert Rothman (defendant Rothman has pled guilty), representatives of

the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen

Hruby, has pled guilty), and representatives of the Crusader Defendants (defendant Crusader has

pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), all of

whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy

alleged herein, representatives of the BankAtlantic Defendants, prior to the commencement of

the auction, participated in discussions and reached understandings with the other auction

attendees, were allocated liens on which the other auction attendees refrained from bidding

pursuant to the understanding, and refrained from bidding on liens that other auction attendees

were allocated pursuant to the conspiracy.  As a direct result of the BankAtlantic Defendants'

participation in the conspiracy, they "won" at least four liens at this auction, all of which carried

illegal and artificially inflated interest rates.

118.   **May 25, 2000 South Orange Auction.**  According to information provided by at

least one cooperating witness, representatives of the BankAtlantic Defendants attended an

auction in South Orange, New Jersey on May 25, 2000, and allocated and bid on liens as part of

the conspiracy.  In addition to representatives of the BankAtlantic Defendants, the auction was

attended by representatives of the PAM Defendants, representatives of the Mooring Defendants,

Craig Sagelow representing defendant Robert Rothman (defendant Rothman pled guilty),

representatives of defendant Plymouth Park, and representatives of the Phoenix Defendants, all

of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy

alleged herein, representatives of the BankAtlantic Defendants, prior to the commencement of

the auction, participated in discussions and reached understandings with the other auction

attendees, were allocated liens on which the other auction attendees refrained from bidding

pursuant to the understanding, and refrained from bidding on liens that other auction attendees

were allocated pursuant to the conspiracy.  As a direct result of the BankAtlantic Defendants'

participation in the conspiracy, they "won" at least five liens at this auction, all of which carried

illegal and artificially inflated interest rates.

119.    **July 19, 2000 Ringwood Auction**.  According to information provided by at

least one cooperating witness, the BankAtlantic Defendants attended an auction in Ringwood,

New Jersey on July 19, 2000, and allocated and bid on liens as part of the conspiracy.  In

addition to representatives of the BankAtlantic Defendants, the auction was attended by

representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader

bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Phoenix

Defendants, representatives of the Sass Defendants (Sass' director of tax lien acquisitions during

the Class Period, Stephen Hruby, has pled guilty), representatives of the PAM Defendants, and

Craig Sagelow representing defendant Robert Rothman (defendant Rothman has pled guilty), all

of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy

alleged herein, representatives of the BankAtlantic Defendants, prior to the commencement of

the auction, participated in discussions and reached understandings with the other auction

attendees, were allocated liens on which the other auction attendees refrained from bidding

pursuant to the understanding, and refrained from bidding on liens that other auction attendees

were allocated pursuant to the conspiracy.  As a direct result of the BankAtlantic Defendants'

participation in the conspiracy, they "won" at least two liens at this auction, both of which

carried illegal and artificially inflated interest rates.

120.    **December 28, 2000 Carlstadt Auction**.  According to information provided by

at least one cooperating witness, the BankAtlantic Defendants attended an auction in Carlstadt,

New Jersey on December 28, 2000, and allocated and bid on liens as part of the conspiracy.  In

addition to representatives of the BankAtlantic Defendants, the auction was attended by the Del

Vecchio Defendants (defendant Del Vecchio has pled guilty), representatives of the Sass

Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has

pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and

Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), Craig Sagelow representing

defendant Robert Rothman (defendant Rothman has pled guilty), representatives of the Phoenix

Defendants, and representatives of defendant ATF, all of whom also allocated and bid on liens

pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the

BankAtlantic Defendants, prior to the commencement of the auction, participated in discussions

and reached understandings with the other auction attendees, were allocated liens on which the

other auction attendees refrained from bidding pursuant to the understanding, and refrained from

bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a

direct result of the BankAtlantic Defendants' participation in the conspiracy, they "won" at least

five liens at this auction, all of which carried illegal and artificially inflated interest rates.

     121.    **May 23, 2005 Lawnside Auction.**  According to information provided by at least

two cooperating witnesses, defendant Fidelity attended an auction in Lawnside, New Jersey on

May 23, 2005, and allocated and bid on liens as part of the conspiracy.  In addition to

representatives of Fidelity, also in attendance at this auction were David Farber of the Butler and

Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants

(Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty),

representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader

bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant

Collins has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty),

representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), representatives of the Mooring Defendants, and representatives of ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of Fidelity, prior to the commencement of the auction, participated in discussions and reached agreements with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Fidelity's participation in the conspiracy, Fidelity "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

122.    **May 25, 2005 Pine Hill Auction.**  According to information provided by at least two cooperating witnesses, a mere two days following the auction at Lawnside, at which defendant Fidelity participated in furtherance of the conspiracy, representatives of defendant Fidelity attended an auction in Pine Hill, New Jersey on May 25, 2005, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of Fidelity, also in attendance at this auction were David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant Collins has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Mooring Defendants, and

- 42 -

representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Fidelity's participation in the conspiracy, Fidelity "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

123.    **May 26, 2005 Pennsville Auction.**  According to information provided by at least one cooperating witness, the very next day following the auction at Pine Hill, at which defendant Fidelity participated in furtherance of the conspiracy, Fidelity representatives attended an auction in Pennsville, New Jersey on May 26, 2005, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of Fidelity, also in attendance at this auction were David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Mooring Defendants, representatives of defendant Plymouth Park, and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of

- 43 -

Fidelity's participation in the conspiracy, Fidelity "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

124.     **June 1, 2005 Pennsauken Auction.**  According to information provided by at least two cooperating witnesses, defendant Fidelity attended an auction in Pennsauken, New Jersey on June 1, 2005, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of defendant Fidelity, also in attendance at this auction were David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Mooring Defendants, representatives of defendant Plymouth Park, representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant William Collins (defendant Collins has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey, have been indicted), defendant Norman Remick (defendant Remick has pled guilty), and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Fidelity's participation in the conspiracy, Fidelity "won" at least five liens at this auction, all of which carried illegal and artificially inflated interest rates.

125.    **March 14, 2006 Brigantine Auction.**  According to information provided by at least three cooperating witnesses, representatives of defendant Fidelity, attended an auction in Brigantine, New Jersey on March 14, 2006, and allocated and bid on liens as part of the conspiracy.  In addition to Fidelity, also in attendance at this auction were David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), Joseph Wolfson of the Wolfson Defendants (each of the Wolfson Defendants have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant William Collins (defendant Collins has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey, have been indicted), representatives of defendant Plymouth Park, representatives of defendant ATF, and defendant Isadore May (defendant May has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least four liens at this auction, all of which carried illegal and artificially inflated interest rates.  Documents from at least two cooperating witnesses corroborate that one of the liens that Fidelity was allocated was associated with a Block/Lot identifier of 2908/17.

126.    **May 24, 2006 Washington Township Auction.**  According to information provided by at least two cooperating witnesses, representatives of defendant Fidelity attended an auction in Washington Township, New Jersey on May 24, 2006, and allocated and bid on liens

as part of the conspiracy.  In addition to representatives of Fidelity, also in attendance at this auction were David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant Collins has pled guilty), representatives of the Mooring Defendants, defendant Isadore May (defendant May has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of defendant Plymouth Park, and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least six liens at this auction, all of which carried illegal and artificially inflated interest rates.

127.    **June 28, 2006 Evesham Auction.**  According to information provided by at least one cooperating witness, defendant Fidelity attended an auction in Evesham, New Jersey on June 28, 2006, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of Fidelity, also in attendance at this auction were representatives of the Butler and Farber Defendants (defendants Butler and Farber have pled guilty), representatives of the

Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant Isadore May (defendant May has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of defendant Plymouth Park, and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

128.   **November 21, 2006 Burlington Auction.**  According to information provided by at least one cooperating witness, representatives of defendant Fidelity attended an auction in Burlington, New Jersey on November 21, 2006, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of Fidelity, also in attendance at this auction were David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Mooring Defendants, representatives of the Fountain of Life

Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of defendant Plymouth Park, and representatives from defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

129.    **December 20, 2006 Egg Harbor Auction.**  According to information provided by at least one cooperating witness, representatives of defendant Fidelity attended an auction in Egg Harbor, New Jersey on December 20, 2006, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of Fidelity, also in attendance at this auction were representatives of the Mooring Defendants, representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of defendant Plymouth Park, defendant Isadore May (defendant May has pled guilty), representatives of defendant ATF, Joseph Wolfson of the Wolfson Defendants (each of the Wolfson Defendants has been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant David Farber representing the Butler and Farber Defendants (defendant Farber has pled guilty), and representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), all of whom also allocated and bid on liens pursuant to the

- 48 -

conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Fidelity's participation in the conspiracy, defendant Fidelity "won" at least four liens at this auction, all of which carried illegal and artificially inflated interest rates.

130.  **May 23, 2007 Washington Township Auction.**  According to information provided by at least one cooperating witness, representatives of defendant Fidelity attended a May 23, 2007 auction in Washington Township, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to defendant Fidelity, also in attendance at this auction were representatives of the Butler and Farber Defendants (defendants Butler and Farber have pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Mooring Defendants, representatives of defendant ATF, defendant Norman Remick (defendant Remick has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of defendant Plymouth Park, and representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on

which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy. As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

131.   **June 14, 2007 Monroe Auction.**  According to information provided by at least three cooperating witnesses, representatives of defendant Fidelity attended a June 14, 2007 auction in Monroe, New Jersey and allocated and bid on liens as part of the conspiracy. In addition to defendant Fidelity, also in attendance at this auction were defendants David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Mooring Defendants, representatives of defendant ATF, defendant Norman Remick (defendant Remick has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), and representatives of defendant Plymouth Park, all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy. As a direct result of Fidelity's participation in the conspiracy, Fidelity "won" at least two liens at this auction, both of which carried illegal

and artificially inflated interest rates.  Documents from at least two cooperating witnesses corroborate that one of the liens that Fidelity was allocated was associated with a Block/Lot identifier of 110.0407/50.

132.   **June 27, 2007 Cherry Hill Auction.**  According to information provided by at least three cooperating witnesses, representatives of defendant Fidelity attended an auction in Cherry Hill, New Jersey on June 27, 2007, and allocated and bid on liens as part of the conspiracy.  In addition to defendant Fidelity, also in attendance at this auction were David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant Joseph Wolfson of the Wolfson Defendants (each of the Wolfson Defendants have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), Jim Jeffers of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant Collins has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of defendant Plymouth Park, and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Fidelity's participation in the conspiracy, Fidelity "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.  Documents from at least

three cooperating witnesses corroborate that Fidelity was allocated a lien associated with a Block/Lot identifier of 129.01.

133.    **July 20, 2007 Pennsauken Auction.**  According to information provided by at least one cooperating witness, representatives of defendant Fidelity attended a July 20, 2007 auction in Pensauken, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of defendant Fidelity, also in attendance at this auction were representatives of the Butler and Farber Defendants (defendants Butler and Farber have pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Mooring Defendants, representatives of defendant ATF, defendant Norman Remick (defendant Remick has pled guilty), representatives of defendant Plymouth Park, representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), and representatives of the Phoenix Defendants, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least nine liens at this auction, all of which carried illegal and artificially inflated interest rates.

134.    **October 4, 2007 Millville Auction.**  According to information provided by at least one cooperating witness, representatives of defendant Fidelity attended an October 4, 2007 auction in Millville, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of defendant Fidelity, also in attendance at this auction were defendants David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Mooring Defendants, representatives of defendant ATF, defendant Norman Remick (defendant Remick has pled guilty), representatives of defendant Plymouth Park, and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Fidelity's participation in the conspiracy, Fidelity "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

135.    **October 15, 2007 Lower Township Auction.**  According to information provided by at least two cooperating witnesses, representatives of defendant Fidelity attended an October 15, 2007 auction in Lower Township, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of defendant Fidelity, also in attendance at this

auction were defendants David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

136.   **October 30, 2007 Lakewood Auction.**  According to information provided by at least two cooperating witnesses, representatives of defendant Fidelity attended an October 30, 2007 auction in Lakewood, New Jersey and allocated and bid on liens as part of the conspiracy. In addition to defendant Fidelity, also in attendance at this auction were defendants David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Mooring Defendants, defendant Norman Remick (defendant Remick has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of defendant Plymouth

Park, and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least eight liens at this auction, all of which carried illegal and artificially inflated interest rates.

137.   **December 17, 2007 Galloway Township Auction.**  According to information provided by at least two cooperating witnesses, representatives of defendant Fidelity attended a December 17, 2007 auction in Galloway Township, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of defendant Fidelity, also in attendance at this auction were defendants David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant Isadore May (defendant May has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant Joseph Wolfson of the Wolfson Defendants (each of the Wolfson Defendants have been indicted), representatives of defendant Plymouth Park, Jim Jeffers of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant William Collins (defendant Collins has pled guilty) and representatives of the  Mooring Defendants, all of whom also allocated and bid on liens

pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of

defendant Fidelity, prior to the commencement of the auction, participated in discussions and

reached understandings with the other auction attendees, was allocated liens on which the other

auction attendees refrained from bidding pursuant to the understanding, and refrained from

bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a

direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least one

lien at this auction, which carried an illegal and artificially inflated interest rate. Documents from

at least two cooperating witnesses corroborate that one of the liens that Fidelity was allocated

was associated with a Block/Lot identifier of 528/12.

138.  **December 18, 2007 Wildwood City Auction.**  According to information

provided by at least one cooperating witness, representatives of defendant Fidelity attended a

December 18, 2007 auction in Wildwood City, New Jersey and allocated and bid on liens as part

of the conspiracy.  In addition to representatives of defendant Fidelity, also in attendance at this

auction were representatives of the Butler and Farber Defendants (defendants Butler and Farber

have pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant

Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants

(defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have

been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions

during the Class Period, Stephen Hruby, has pled guilty), defendant Richard Pisciotta (defendant

Pisciotta has pled guilty), representatives of defendant Plymouth Park, and representatives of the

Mooring Defendants, all of whom also allocated and bid on liens pursuant to the conspiracy.

Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the

commencement of the auction, participated in discussions and reached understandings with the

other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least five liens at this auction, all of which carried illegal and artificially inflated interest rates.

139.  **December 28, 2007 Tabernacle Auction.**  According to information provided by at least three cooperating witnesses, representatives of defendant Fidelity attended a December 28, 2007 auction in Tabernacle, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of defendant Fidelity, also in attendance at this auction were defendants David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William S. Collins (defendant Collins has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), and Teresa Hasson of Mooring, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.  Documents from at

least two cooperating witnesses corroborate that one of the liens that Fidelity was allocated was associated with a Block/Lot identifier of 331/1/01.

140.    **March 11, 2008, Brigantine Auction.**  According to information provided by at least three cooperating witnesses, representatives of defendant Fidelity attended a March 11, 2008 auction in Brigantine, New Jersey and allocated and bid on liens as part of the conspiracy. In addition to representatives of defendant Fidelity, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicated), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Mooring Defendants, defendant Joseph Wolfson of the Wolfson Defendants (each of the Wolfson Defendants have been indicted), representatives of defendant Plymouth Park, and defendant Norman Remick (defendant Remick has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendant Fidelity, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Fidelity's participation in the conspiracy, Fidelity "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

141.    In or around 2008, the BankAtlantic Defendants withdrew from the conspiracy, as, according to an SEC filing of defendant BankAtlantic, they ceased acquiring tax sale certificates throughout the entire country at this time.

142.    The BankAtlantic Defendants have been, and remain, under criminal investigation for their participation in the conspiracy alleged in this complaint.  For example, defendant Fidelity was issued a grand jury subpoena dated June 1, 2009, issued out of this District, requiring that it produce documents and appear to testify before the grand jury.  The subpoena sought documents from the period January 1, 2002, through the date of the subpoena (June 2009) relating to Fidelity's participation in New Jersey tax lien auctions.

## 2.    The Crestar Defendants' Participation in the Conspiracy

143.    The Crestar Defendants, through defendants Green, Farber, Butler, and others, participated in an illegal agreement and/or understanding with other Defendants to rig bids for TSCs at public TSC auctions throughout New Jersey.  Although the Crestar Defendants participated in the conspiracy for a short duration, they knowingly and voluntarily joined an ongoing conspiracy, and thus are jointly and severally liable for the entire conspiracy (as are all non-settling defendants).  Defendants Farber and Butler, through the Butler and Farber Defendants, had joined the conspiracy in 2005 and participated in the conspiracy through other CCTS entities until November 2008 – the time defendant Crestar was formed.  When Butler and Farber began working for defendants Crestar and William S. Green, they continued their participation in the conspiracy, merely under a different corporate entity.  Indeed, in the guilty pleas of both Farber and Butler, Farber and Butler expressly admit that while they were President and CEO of "Company-1", they admit to participating in the conspiracy through February 2009. The Crestar Defendants admit that the "Company-1" referenced in the plea agreements for defendants Farber and Butler is defendant Crestar.  The participation of defendants Farber and

Butler in the conspiracy during the period November 2008 through February 2009, was known to defendant William Green and others within defendant Crestar and authorized by defendant William S. Green.  Indeed, as described below, defendant Green personally participated in the conspiracy.

144.    As a result of the conspiracy alleged in this complaint, Defendants, including defendant Crestar, through defendants Green, Farber, Butler and others, would, among other things, agree prior to the beginning of the auctions at which they were present which liens each of the Defendant auction attendees would be allocated.  Often, the largest bidders – defendant Plymouth Park, the Sass Defendasnts, the Crusader Defendants, the BankAtlantic Defendants, the Mooring Defendants and defendant ATF – would have first picks over the liens up for auction.  The Defendants also agreed not to bid against the Defendant which had been allocated a particular lien in order to reduce or eliminate competitive bids and ensure that the lien which had been allocated was sold at the highest interest rate possible to the cartelist who had been designated as the pre-determined winner of that lien.  The conspiracy artificially raised interest rates associated with TSCs sold at the auction because of the illegal agreement alleged herein.

145.    Witnesses to the conspiracy who are cooperating with Plaintiffs' counsel, have identified defendant Crestar employees, including defendant William S. Green, as participating in discussions prior to auctions in order to allocate liens up for auction, agreeing to allocate liens up for auction, and to refrain from bidding on liens at the auction in furtherance of the conspiracy.

        **a.**      **Example Auctions in Which the Crestar Defendants Furthered the Conspiracy**

146.    **December 16, 2008 Egg Harbor City Auction.**  According to information provided by at least two cooperating witnesses who are not affiliated with the Crestar Defendants

of the Butler and Farber Defendants, as well as documents received pursuant to an OPRA request, defendant Crestar attended a December 16, 2008 auction in Egg Harbor City, New Jersey and allocated and bid on liens as part of the conspiracy.  Defendant William Green attended the auction on behalf of defendant Crestar.  Also in attendance were Ray Heagle of defendant Plymouth Park, Nicole Urso of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), Richard Hruby representing the Sass Defendants (Richard Hruby is the brother of defendant Stephen Hruby, Sass' director of tax lien acquisitions during the Class Period, and who has pled guilty), Renee Lowden of the Mooring Defendants, Susan Esposito of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), and representative of defendant Isadore May (defendant May has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Green, on behalf of the Crestar Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Crestar's participation in the conspiracy, Crestar "won" at least six liens at this auction, all of which carried illegal and artificially inflated interest rates.

147.    **January 14, 2009 Buena Auction.**  According to information provided by at least one cooperating witness, representatives of the Crestar Defendants attended a January 14, 2009 auction in Buena, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Crestar Defendants, the auction was attended by representatives

of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Plymouth Park, representatives of the Mooring Defendants, defendant Isadore May (defendant May has pled guilty), defendant William Collins (defendant Collins has pled guilty), and representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Crestar Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Crestar Defendants' participation in the conspiracy, it "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

148.    In or around February 2009, the Crestar Defendants ceased their participation in the conspiracy when the Crestar Defendants learned of the United States Department of Justice's criminal investigation into collusion at tax lien auctions in other jurisdictions outside of New Jersey.  The Department of Justice's investigation into collusion at TSC auctions in New Jersey began shortly thereafter.

149.    The Crestar Defendants are currently under a criminal investigation being conducted out of the U.S. Attorney's office in New York for their participation in the conspiracy alleged in this complaint.

### 3.     The Mooring Defendants' Participation in the Conspiracy

150.    Defendant Mooring, through various bidders including Lambros Xethalis, Renee Lowden, Karsten Hilpert, Teresa Hasson, and Isabella Legut (Legut also worked for the BankAtlantic Defendants during the Class Period), among others, participated in an illegal agreement and/or understanding with the other Defendants to rig TSC auctions throughout New Jersey during the Class Period.  Not every Defendant attended every tax lien auction in New Jersey during the Class Period, although the largest Defendants attended most, if not all, auctions during the Class Period, and the illegal scheme existed despite who was present.

151.    As a result of this understanding, Defendants, including the Mooring Defendants, would, among other things, agree prior to the beginning of the auctions at which they were present which liens each of the Defendant auction attendees would be allocated.  Defendants also agreed not to bid against the Defendant which had been allocated a particular lien in order to reduce or eliminate competitive bids and ensure that the lien which had been allocated was sold at the highest interest rate possible to the cartelist who had been designated as the pre-determined winner of that lien. The conspiracy artificially raised interest rates associated with TSCs sold at the auction because of the illegal understanding alleged herein.

152.    Multiple witnesses to the conspiracy, who are cooperating with Plaintiffs' Counsel, have identified Mooring employees and/or agents, including Lambros Xethalis, Teresa Hasson, Karsten Hilpert, and Isabella Legut, as participating in discussions prior to auctions in order to allocate liens up for auction, agreeing to allocate liens up for auction, and to refrain from bidding on liens at the auction in furtherance of the conspiracy.

a.      **Example Auctions in Which the Mooring Defendants Furthered the Conspiracy**

153.    **April 3, 2000 West Milford Auction.**  According to information provided by at least one cooperating witness, representatives of the Mooring Defendants attended an auction in West Milford, New Jersey on April 3, 2000, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, the auction was attended by representatives of the PAM Defendants, representatives of the BankAtlantic Defendants, the Del Vecchio Defendants (defendant Del Vecchio has pled guilty), Craig Sagelow representing defendant Robert Rothman (defendant Rothman has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), and representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

154.    **May 25, 2000 South Orange Auction.**  According to information provided by at least one cooperating witness, representatives of the Mooring Defendants attended an auction in South Orange, New Jersey on May 25, 2000, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, the auction was attended

by representatives of the PAM Defendants, representatives of defendant Plymouth Park, representatives of the BankAtlantic Defendants, Craig Sagelow representing defendant Robert Rothman (defendant Rothman has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), and representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least four liens at this auction, all of which carried illegal and artificially inflated interest rates.

155.   **March 18, 2005 Millville Auction.**  According to information provided by at least two cooperating witnesses, representatives of the Mooring Defendants attended a March 18, 2005 auction in Millville, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty),

defendant Isadore May (defendant May has pled guilty), representatives of defendant Plymouth

Park, representatives of defendant ATF, and defendant Norman Remick (defendant Remick has

pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to

the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the

commencement of the auction, participated in discussions and reached understandings with the

other auction attendees, were allocated liens on which the other auction attendees refrained from

bidding pursuant to the understanding, and refrained from bidding on liens that other auction

attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring

Defendants' participation in the conspiracy, they "won" at least two liens at this auction, both of

which carried illegal and artificially inflated interest rates.

156.    **April 5, 2005 Quinton Auction.**  According to information provided by at least

one cooperating witness, representatives of the Mooring Defendants attended an auction in

Quinton, New Jersey on April 5, 2005, and allocated and bid on liens as part of the conspiracy.

In addition to representatives of the Mooring Defendants, also in attendance at this auction were

defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty),

representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class

Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant

Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been

indicted), defendant William Collins (defendant Collins has pled guilty), representatives of the

Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty),

and defendant Norman Remick (defendant Remick has pled guilty), all of whom also allocated

and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein,

representatives of the Mooring Defendants, prior to the commencement of the auction,

participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

157.    **May 23, 2005 Lawnside Auction.**  According to information provided by at least two cooperating witnesses, representatives of the Mooring Defendants attended an auction in Lawnside, New Jersey on May 23, 2005, and allocated and bid on liens as part of the conspiracy. In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant Collins has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), representatives from defendant Fidelity, and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other

auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

158.   **May 25, 2005 Pine Hill Auction.**  According to information provided by at least two cooperating witnesses, a mere two days following the auction at Lawnside at which the Mooring Defendants participated in furtherance of the conspiracy, the Mooring Defendants attended an auction in Pine Hill, New Jersey on May 25, 2005, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant Collins has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of defendant Fidelity, and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a

direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

159.     **May 26, 2005 Pennsville Auction.**  According to information provided by at least one cooperating witness, the very next day following the auction at Pine Hill, at which the Mooring Defendants participated in furtherance of the conspiracy, the Mooring Defendants attended an auction in Pennsville, New Jersey on May 26, 2005, and allocated and bid on liens as part of the conspiracy.  The auction commenced at 10 a.m.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of defendant Fidelity, representatives of defendant Plymouth Park, and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

160.     **May 26, 2005 Lawrence Auction.**  According to information provided by at least one cooperating witness, the very next day following the auction at Pine Hill, and later the same day as the Pennsville auction, at which the Mooring Defendants participated in furtherance of the

- 69 -

conspiracy, the Mooring Defendants attended an auction in Lawrence, New Jersey on May 26, 2005, and allocated and bid on liens as part of the conspiracy.  The auction commenced at 2 p.m. In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant Collins has pled guilty), representatives of the Fountain of Life defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), and representatives of defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Mooring's participation in the conspiracy, they "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

161.   **June 1, 2005 Pennsauken Auction.**  According to information provided by at least two cooperating witnesses, the Mooring Defendants attended an auction in Pennsauken, New Jersey on June 1, 2005, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty),

010311-11  665235 V1

representatives of the Fountain of Life defendants (defendant Mercer, a Fountain of Life

Defendant, has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty),

representatives from defendant Fidelity, representatives of defendant Plymouth Park,

representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class

Period, Stephen Hruby, has pled guilty), defendant William Collins (defendant Collins has pled

guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and

Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant Norman Remick

(defendant Remick has pled guilty), and representatives of defendant ATF, all of whom also

allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein,

representatives of the Mooring Defendants, prior to the commencement of the auction,

participated in discussions and reached understandings with the other auction attendees, were

allocated liens on which the other auction attendees refrained from bidding pursuant to the

understanding, and refrained from bidding on liens that other auction attendees were allocated

pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the

conspiracy, they "won" at least two liens at thus auction, both of which carried illegal and

artificially inflated interest rates.

162.    **October 25, 2005 Woodlyne Auction.**  According to information provided by at

least one cooperating witness, representatives of the Mooring Defendants attended an auction in

Woodlyne, New Jersey on October 25, 2005, and allocated and bid on liens as part of the

conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this

auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has

pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during

the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants

(defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins (defendant Collins has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), and defendant Norman Remick (defendant Remick has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

163.    **November 21, 2006 Burlington Auction.**  According to information provided by at least one cooperating witness, the Mooring Defendants attended an auction in Burlington, New Jersey on November 21, 2006, and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Fidelity, representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of defendant Plymouth Park, and representatives of defendant ATF, all of whom also allocated and bid on

liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the

Mooring Defendants, prior to the commencement of the auction, participated in discussions and

reached understandings with the other auction attendees, were allocated liens on which the other

auction attendees refrained from bidding pursuant to the understanding, and refrained from

bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a

direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least one

lien at this auction, which carried an illegal and artificially inflated interest rate.

   164. **December 1, 2006 Kearny Auction.**  According to information provided by at

least one cooperating witness, representatives of the Mooring Defendants attended an auction in

Kearny, New Jersey on December 1, 2006, and allocated and bid on liens as part of the

conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this

auction were David Hasson of the Sass Defendants (Sass' director of tax lien acquisitions during

the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants

(defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have

been indicted), representatives of the Phoenix Defendants, representatives of defendant Plymouth

Park, representatives of defendant ATF, and defendant Robert Rothman (defendant Rothman has

pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to

the conspiracy alleged herein, David Hasson of the Sass Defendants approached other bidders

individually prior to the auction and organized an allocation for each Defendant to select and

"win" certain liens, an allocation in which all other Defendants agreed.  Pursuant to the

conspiracy alleged herein, representatives of the Mooring Defendants, prior to the

commencement of the auction, participated in discussions and reached understandings with the

other auction attendees, were allocated liens on which the other auction attendees refrained from

bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

165.   **January 17, 2007 Buena Auction.**  According to information provided by at least one cooperating witness, the Mooring Defendants, represented by Karsten Hilpert, attended a January 17, 2007 auction in Buena, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to Hilpert from Mooring, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, Hilpert, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Hilpert's participation in the conspiracy, the Mooring Defendants "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

166.   **May 23, 2007 Washington Township Auction.**  According to information provided by at least one cooperating witness, representatives of the Mooring Defendants,

attended a May 23, 2007 auction in Washington Township, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were representatives of the Butler and Farber Defendants (defendants Butler and Farber have pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Fidelity, representatives of defendant ATF, defendant Norman Remick (defendant Remick has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of defendant Plymouth Park, and representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

167.    **June 14, 2007 Monroe Auction.**  According to information provided by at least three cooperating witnesses, representatives of the Mooring Defendants attended a June 14, 2007 auction in Monroe, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were

defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty),

defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant

May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled

guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), representatives of

defendant Fidelity, representatives of defendant ATF, defendant Norman Remick (defendant

Remick has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien

acquisitions during the Class Period, Stephen Hruby, has pled guilty), and representatives of

defendant Plymouth Park, all of whom also allocated and bid on liens pursuant to the conspiracy.

Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to

the commencement of the auction, participated in discussions and reached understandings with

the other auction attendees, were allocated liens on which the other auction attendees refrained

from bidding pursuant to the understanding, and refrained from bidding on liens that other

auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring

Defendants' participation in the conspiracy, they "won" at least two liens at this auction, both of

which carried illegal and artificially inflated interest rates.  Documents from at least two

cooperating witnesses corroborate that one of the liens that Mooring was allocated was

associated with a Block/Lot identifier of 141.0102/56.

168.    **July 20, 2007 Pennsauken Auction.**  According to information provided by at

least one cooperating witness, representatives of the Mooring Defendants attended a July 20,

2007 auction in Pennsauken, New Jersey and allocated and bid on liens as part of the conspiracy.

In addition to representatives from the Mooring Defendants, also in attendance at this auction

were representatives of the Butler and Farber Defendants (defendants Butler and Farber have

pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore

May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Fidelity, representatives of defendant ATF, defendant Norman Remick (defendant Remick has pled guilty), representatives of defendant Plymouth Park, representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), and representatives of the Phoenix Defendants, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least seven liens at this auction, all of which carried illegal and artificially inflated interest rates.

169.    **October 4, 2007 Millville Auction.**  According to information provided by at least one cooperating witness, representatives of the Mooring Defendants attended an October 4, 2007 auction in Millville, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Fidelity, representatives of defendant ATF, defendant Norman Remick (defendant

Remick has pled guilty), representatives of defendant Plymouth Park, and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

170.    **October 30, 2007 Lakewood Auction.**  According to information provided by at least one cooperating witness, representatives of the Mooring Defendants attended an October 30, 2007 auction in Lakewood, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Fidelity, defendant Norman Remick (defendant Remick has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of defendant Plymouth Park, and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein,

representatives of the Mooring Defendants, prior to the commencement of the auction,
participated in discussions and reached understandings with the other auction attendees, were
allocated liens on which the other auction attendees refrained from bidding pursuant to the
understanding, and refrained from bidding on liens that other auction attendees were allocated
pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the
conspiracy, they "won" at least nine liens at this auction, all of which carried illegal and
artificially inflated interest rates.

171.  **November 20, 2007 Burlington Auction.**  According to information provided by
at least one cooperating witness, representatives of the Mooring Defendants attended a
November 20, 2007 auction in Burlington, New Jersey and allocated and bid on liens as part of
the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at
this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber
has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty,
and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), representatives of the
Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby,
has pled guilty), and representatives of the Fountain of Life Defendants (defendant Mercer, a
Fountain of Life Defendant, has pled guilty), all of whom also allocated and bid on liens
pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the
Mooring Defendants, prior to the commencement of the auction, participated in discussions and
reached understandings with the other auction attendees, were allocated liens on which the other
auction attendees refrained from bidding pursuant to the understanding, and refrained from
bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a

direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least four liens at this auction, all of which carried illegal and artificially inflated interest rates.

172.    **December 17, 2007 Galloway Auction.**  According to information provided by at least two cooperating witness, representatives of the Mooring Defendants attended a December 17, 2007 auction in Galloway Township, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant Isadore May (defendant May has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant Joseph Wolfson of the Wolfson Defendants (each of the Wolfson Defendants have been indicted), representatives of defendant Plymouth Park, Jim Jeffers of Crusader (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicated), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant William Collins (defendant Collins has pled guilty), and representatives of defendant Fidelity, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

173.    **December 18, 2007 Wildwood City Auction.**  According to information provided by at least one cooperating witness, the day following the December 17, 2007 Galloway auction at which the Mooring Defendants furthered the conspiracy, the Mooring Defendants attended a December 18, 2007 auction in Wildwood City, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were representatives of the Butler and Farber Defendants (defendants Butler and Farber have pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), and representatives of defendant Plymouth Park, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

174.    **December 28, 2007 Tabernacle Auction.**  According to information provided by at least three cooperating witnesses, representatives of the Mooring Defendants, represented by Teresa Hasson, attended a December 28, 2007 auction in Tabernacle, New Jersey and allocated

and bid on liens as part of the conspiracy.  In addition to Hasson from the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicated), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby has pled guilty), and representatives of defendant Fidelity, all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.

175. **September 11, 2008 Magnolia Auction.**  According to information provided by a cooperating witness, representatives of the Mooring Defendants attended a September 11, 2008 auction in Magnolia, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Richard Pisciotta

- 82 -

(defendant Pisciotta has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Plymouth Park, and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

176.    **October 29, 2008 Woodbury Auction.**  According to information provided by at least two cooperating witnesses, representatives of the Mooring Defendants attended an October 29, 2008 auction in Woodbury, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has

pled guilty), defendant Isadore May (defendant May has pled guilty) and representatives of defendant Plymouth Park, all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy. As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least five liens at this auction, all of which carried illegal and artificially inflated interest rates. Documents from at least two cooperating witnesses corroborate that one of the liens that Mooring was allocated was associated with a Block/Lot identifier of 2/6.05.

177. **October 30, 2008 Palmyra Auction.** According to information provided by at least two cooperating witnesses, representatives of the Mooring Defendants attended an October 30, 2008 auction in Palmyra, New Jersey and allocated and bid on liens as part of the conspiracy. Notably, this auction took place only one day following the October 29, 2008 Woodbury auction in which the Mooring Defendants conspired with other Defendants. In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Norman Remick (defendant Remick has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicated), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), and representatives of the Sass Defendants (Sass' director of tax

lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.  Documents from at least two cooperating witnesses corroborate that one of the liens that Mooring was allocated was associated with a Block/Lot identifier of 150/8.

178.   **December 16, 2008 Egg Harbor Auction.**  According to information provided by at least two cooperating witnesses, Renee Lowden of the Mooring Defendants, attended a December 16, 2008 auction in Egg Harbor, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in attendance at this auction were defendant William Green attending on behalf of defendant Crestar, Ray Heagle of defendant Plymouth Park, Nicole Urso of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), Richard Hruby representing the Sass Defendants (Richard Hruby is the brother of defendant Stephen Hruby, Sass' director of tax lien acquisitions during the Class Period, and who has pled guilty), Susan Esposito of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), and representative of defendant Isadore May (defendant May has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to

the conspiracy alleged herein, Renee Lowden of Mooring, prior to the commencement of the

auction, participated in discussions and reached understandings with the other auction attendees,

was allocated liens on which the other auction attendees refrained from bidding pursuant to the

understanding, and refrained from bidding on liens that other auction attendees were allocated

pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the

conspiracy, Mooring "won" at least eight liens at this auction, all of which carried illegal and

artificially inflated interest rates.

179.    **December 22, 2008 Galloway Auction.**  According to information provided by

at least one cooperating witness, representatives of the Mooring Defendants attended a

December 22, 2008 auction in Galloway Township, New Jersey and allocated and bid on liens as

part of the conspiracy.  In addition to representatives of the Mooring Defendants, also in

attendance at this auction were representatives of the Crusader Defendants (defendant Crusader

has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted),

defendant Joseph Wolfson of the Wolfson Defendants (each of the Wolfson Defendants has been

indicted), and defendant William Collins (defendant Collins has pled guilty), all of whom also

allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein,

representatives of the Mooring Defendants, prior to the commencement of the auction,

participated in discussions and reached understandings with the other auction attendees, were

allocated liens on which the other auction attendees refrained from bidding pursuant to the

understanding, and refrained from bidding on liens that other auction attendees were allocated

pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the

conspiracy, they "won" at least one lien at this auction, which carried an illegal and artificially

inflated interest rate.

180.     **January 14, 2009 Buena Auction.**   According to information provided by at least one cooperating witness, representatives of the Mooring Defendants attended a January 14, 2009 auction in Buena, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to representatives of the Mooring Defendants, the auction was attended by representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Plymouth Park, representatives of the Crestar Defendants, defendant Isadore May (defendant May has pled guilty), defendant William Collins (defendant Collins has pled guilty), and representatives from the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of the Mooring Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the Mooring Defendants' participation in the conspiracy, they "won" at least four liens at this auction, all of which carried illegal and artificially inflated interest rates.

181.     In or around February 2009, the Mooring Defendants ceased their participation in the conspiracy when the Mooring Defendants learned of the United States Department of Justice's criminal investigation into collusion at tax lien auctions in other jurisdictions outside of New Jersey.  The Department of Justice's investigation into New Jersey tax lien auctions began shortly thereafter as well.

182.     Defendant Mooring is currently under criminal investigation being conducted by the U.S. Attorney's office in New York for their participation in the conspiracy alleged herein.

**4.     Defendant Mastellone's Participation in the Conspiracy**

183.     Defendant Mastellone participated in an illegal agreement and/or understanding with the other Defendants to rig TSC auctions throughout New Jersey that they attended during the Class Period.

184.     As a result of this agreement and/or understanding, Defendants, including Mastellone, would, among other things, agree prior to the beginning of the auctions at which they were present, which liens each Defendant auction attendee would be allocated.  Defendants also agreed not to bid against the Defendant which had been allocated a particular lien in order to reduce or eliminate competitive bids and ensure that the lien which had been allocated was sold at the highest interest rate possible to the cartelist who had been designated as the pre-determined winner of that lien.  The conspiracy artificially raised interest rates associated with TSCs sold at the auction because of the illegal agreement alleged herein.

**a.     Example Auctions in Which Defendant Mastellone Furthered the Conspiracy**

185.     **June 28, 2000 Lincoln Park Auction.**  According to information provided by at least one cooperating witness, defendant Mastellone attended a June 28, 2000 auction in Lincoln Park, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to defendant Mastellone, also in attendance at this auction were representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Phoenix Defendants, and Craig Sagelow representing defendant Robert Rothman (defendant

Rothman has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, Mastellone, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy. As a direct result of defendant Mastellone's participation in the conspiracy, Mastellone "won" two liens at this auction, both of which carried illegal and artificially inflated interest rates.

186. **September 12, 2007 Pompton Lakes Auction.** According to information provided by at least cooperating witness, defendant Mastellone attended a September 12, 2007 auction in Pompton Lakes, New Jersey and allocated and bid on liens as part of the conspiracy. In addition to defendant Mastellone, also in attendance at this auction were representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant Robert Rothman (defendant Rothman has pled guilty) and the Del Vecchio Defendants (defendant Del Vecchio has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, Mastellone, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy. As a direct result of defendant Mastellone's participation in the

conspiracy, Mastellone "won" one lien at this auction, which carried an illegal and artificially inflated interest rate.

187.    **October 18, 2007 Scotch Plains Auction.**  According to information provided by at least one cooperating witness, defendant Mastellone attended an October 18, 2007 auction in Scotch Plains, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to defendant Mastellone, also in attendance at this auction were representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Phoenix Defendants, and Art Rittenhouse, Jr. representing defendant Robert Rothman (defendant Rothman has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Mastellone, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Mastellone's participation in the conspiracy, Mastellone "won" one lien at this auction, which carried an illegal and artificially inflated interest rate.

188.    **June 5, 2008 Ridgefield Auction.**  According to information provided by at least one cooperating witness, defendant Mastellone attended a June 5, 2008 auction in Ridgefield, New Jersey and allocated and bid on liens as part of the conspiracy.  In addition to defendant Mastellone, also in attendance at this auction were representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty),

representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), and defendant Robert Rothman (defendant Rothman has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, representatives of defendants Sass and Crusader, along with defendants Mastellone and Rothman, met before the start of the auction to divvy up liens among themselves.  Pursuant to the conspiracy alleged herein, defendant Mastellone, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Mastellone's participation in the conspiracy, Mastellone "won" one lien at this auction, which carried an illegal and artificially inflated interest rate.

### 5.    The PAM Defendants' Participation in the Conspiracy

189.    The PAM Defendants, through defendant Caraballese, as well as Mario Valenti, and various other bidders, participated in an illegal understanding with other Defendants to rig public TSC auctions throughout New Jersey that they attended during the Class Period.  Not every Defendant attended every tax lien auction in the State of New Jersey during the Class Period, although the illegal scheme existed despite which conspirators were present.

190.    As a result of this agreement and/or understanding, Defendants, including the PAM Defendants, would, among other things, agree prior to the beginning of the auctions at which they were present, which liens each of the Defendant auction attendees would be allocated.  Defendants also agreed not to bid against the Defendant which had been allocated a particular lien in order to reduce or eliminate competitive bids and ensure that the lien which had been allocated was sold at the highest interest rate possible to the cartelist who had been

designated as the pre-determined winner of that lien. The conspiracy artificially raised interest rates associated with TSCs sold at the auction because of the illegal agreement alleged herein.

191.     Witnesses to the conspiracy, who are cooperating with Plaintiffs' Counsel, have identified PAM and defendant Caraballese as participating in the conspiracy and undertaking actions to further the conspiracy.

> **a.     Example Auctions in Which the PAM Defendants Furthered the Conspiracy**

192.     **October 21, 1999 Bloomfield Auction.** According to information provided by at least one cooperating witness, the PAM Defendants attended an auction in Bloomfield, New Jersey on October 21, 1999 and bid on liens as part of the conspiracy. In addition to the PAM Defendants, also in attendance at this auction were representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), defendant Vinaya Jessani  representing the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of defendant Plymouth Park, representatives of the Phoenix Defendants, and Craig Sagelow representing defendant Robert Rothman (defendant Rothman has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, the PAM Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auctions attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy. As a direct result of the PAM Defendants' participation in the conspiracy, the PAM Defendants "won" six liens at this auction, all of which carried illegal and artificially inflated interest rates.

- 92 -

193.    **December 6, 2000 Cresskill Auction.**  According to information provided by at least one cooperating witness, defendant Caraballese of the PAM Defendants attended an auction in Cresskill, New Jersey (defendant Caraballese lives in Cresskill) on December 6, 2000, and bid on liens as part of the conspiracy.  In addition to the PAM Defendants, also in attendance at this auction were representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), the Del Vecchio Defendants (defendant Del Vecchio has pled guilty), and defendant Robert Rothman (defendant Rothman has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy. Pursuant to the conspiracy alleged herein, defendant Caraballese, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Caraballese's participation in the conspiracy, Caraballese "won" one lien at this auction which carried an illegal and artificially inflated interest rate.

194.    **July 19, 2000 Ringwood Auction.**  According to information provided by at least one cooperating witness, defendant Caraballese of the PAM Defendants attended an auction in Ringwood, New Jersey on July 19, 2000, and bid on liens as part of the conspiracy.  In addition to the PAM Defendants, also in attendance at this auction were representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of the BankAtlantic Defendants, and Craig Sagelow representing defendant Robert Rothman

(defendant Rothman has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, the PAM Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the  agreement, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the PAM Defendants' participation in the conspiracy, and with defendant Caraballese serving as the bidder, defendant PAM "won" at least four liens at this auction, all of which carried illegal and artificially inflated interest rates.

195.   **June 5, 2007 Fair Lawn Auction.**  According to information provided by at least one cooperating witness, representatives of the PAM Defendants attended an auction in Fair Lawn, New Jersey on June 5, 2007, and bid on liens as part of the conspiracy.  In addition to representatives of the PAM Defendants, also in attendance at this auction were representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidder Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), representatives of defendant Plymouth Park, representatives of defendant ATF, the Del Vecchio Defendants (defendant Del Vecchio has pled guilty), defendant Michael Mastellone (defendant Mastellone has pled guilty), and representatives of defendant Robert Rothman (defendant Rothman has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, the PAM Defendants, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, were allocated liens on which the other auctions attendees refrained from bidding pursuant to the

agreement, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the PAM Defendants' participation in the conspiracy, they "won" one lien at this auction, which carried an illegal and artificially inflated interest rate.

196.    In or around February 2009, the PAM Defendants ceased their participation in the conspiracy when the PAM Defendants learned of the United States Department of Justice's criminal investigation into collusion at tax lien auctions in other jurisdictions outside of New Jersey.  The Department of Justice's investigation into New Jersey tax lien auctions began shortly thereafter as well.

197.    Defendant PAM is currently under a criminal investigation being conducted by the U.S. Attorney's office in New York for its participation in the conspiracy alleged herein.

**6.      The Wolfson Defendants**

198.    The Wolfson Defendants, primarily through defendant Joseph Wolfson, participated in an illegal understanding with the other Defendants to rig public TSC auctions New Jersey that they attended during the Class Period.  Not every Defendant attended every tax lien auction in New Jersey during the Class Period, although the illegal scheme existed despite which conspirators were present.

199.    As a result of this understanding, Defendants, including the Wolfson Defendants, would, among other things, agree prior to the beginning of the auctions at which they were present which liens each of the Defendant auction attendees would be allocated.  Defendants also agreed not to bid against the Defendant which had been allocated a particular lien in order to reduce or eliminate competitive bids and ensure that the lien which had been allocated was sold at the highest interest rate possible to the cartelist who had been designated as the pre-determined

winner of that lien. The conspiracy artificially raised interest rates associated with TSCs sold at the auction because of the illegal agreement alleged herein.

200.     Witnesses to the conspiracy, who are cooperating with Plaintiffs' Counsel, have identified the Wolfson Defendants as participating in the conspiracy and undertaking actions to further the conspiracy.

### a.     Example Auctions in Which the Wolfson Defendants Furthered the Conspiracy

201.     **March 14, 2006 Brigantine Auction.**  According to information provided by at least three cooperating witnesses, the Wolfson Defendants, through defendant Joseph Wolfson, attended an auction in Brigantine, New Jersey on March 14, 2006, and bid on liens as part of the conspiracy.  In addition to defendant Joseph Wolfson, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby has pled guilty), defendant William Collins (defendant Collins has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of defendant Plymouth Park, representatives of defendant Fidelity, representatives of defendant ATF, and defendant Isadore May (defendant May has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Joseph Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the agreement, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of the

- 96 -

Wolfson Defendants' participation in the conspiracy, the Wolfson Defendants "won" at least three liens at this auction, all of which carried illegal and artificially inflated interest rates.

202.    **April 17, 2006 Somers Point Auction.**  According to information provided by at least two cooperating witnesses, the Wolfson Defendants, through Joseph Wolfson, attended an auction in Somers Point, New Jersey on April 27, 2006, and bid on liens as part of the conspiracy.  In addition to Joseph Wolfson, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), and defendant Norman Remick (defendant Remick has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Joseph Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the agreement, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Wolfson's participation in the conspiracy, the Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

203.    **December 20, 2006 Egg Harbor Auction.**  According to information provided by at least one cooperating witness, defendant Joseph Wolfson, on behalf of the Wolfson Defendants, attended an auction in Egg Harbor, New Jersey on December 20, 2006, and bid on

liens as part of the conspiracy.  In addition to defendant Wolfson, also in attendance at this auction were representatives of the Mooring Defendants, representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), representatives of defendant Plymouth Park, defendant Isadore May (defendant May has pled guilty), representatives of defendant ATF, representatives of defendant Fidelity, representatives from the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant David Farber representing the Butler and Farber Defendants (defendant Farber has pled guilty), and representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Wolfson's participation in the conspiracy, the Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

204.   **June 27, 2007 Cherry Hill Auction.**  According to information provided by at least three cooperating witnesses, the Wolfson Defendants, through Joseph Wolfson, attended an auction in Cherry Hill, New Jersey on June 27, 2007, and bid on liens as part of the conspiracy. In addition to defendant Joseph Wolfson, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen

Hruby, has pled guilty), Jim Jeffers from Crusader (defendant Crusader has pled guilty, and

Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), defendant William Collins

(defendant Collins has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled

guilty), representatives of the Fountain of Life Defendants (defendant Mercer, a Fountain of Life

Defendant, has pled guilty), representatives of defendant Fidelity, and representatives of

defendant ATF, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant

to the conspiracy alleged herein, defendant Wolfson, prior to the commencement of the auction,

participated in discussions and reached understandings with the other auction attendees, was

allocated liens on which the other auction attendees refrained from bidding pursuant to the

understanding, and refrained from bidding on liens that other auction attendees were allocated

pursuant to the conspiracy.  As a direct result of Wolfson's participation in the conspiracy, the

Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and

artificially inflated interest rate.

205.    **July 9, 2007 Northfield Auction.**  According to information provided by at least

two cooperating witnesses, the Wolfson Defendants, represented by defendant Joseph Wolfson,

attended a July 9, 2007 auction in Northfield, New Jersey and bid on liens as part of the

conspiracy.  In addition to defendant Joseph Wolfson, also in attendance at this auction were

defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty),

defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant

May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled

guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives

of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen

Hruby, has pled guilty), and defendant Richard Pisciotta (defendant Pisciotta has pled guilty), all

of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of Wolfson's participation in the conspiracy, the Wolfson Defendants "won" at least two liens at this auction, both of which carried illegal and artificially inflated interest rates.  One of the liens the Wolfson Defendants were allocated was on a property which is located at Block 107, lot 10.

206.  **November 30, 2007 Margate Auction.**  According to information provided by at least two cooperating witness, the Wolfson Defendants, represented by defendant Joseph Wolfson, attended a November 30, 2007 auction in Margate, New Jersey and bid on liens as part of the conspiracy.  In addition to representatives of the Wolfson Defendants, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), defendant William Collins (defendant Collins has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), and representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the

conspiracy.  As a direct result of Wolfson's participation in the conspiracy, the Wolfson

Defendants "won" at least two liens at this auction, both of which carried illegal and artificially

inflated interest rates.

207.   **December 17, 2007 Galloway Township Auction.**  According to information

provided by at least two cooperating witnesses, the Wolfson Defendants, represented by

defendant Joseph Wolfson, attended a December 17, 2007 auction in Galloway Township, New

Jersey and bid on liens as part of the conspiracy.  In addition to defendant Wolfson, also in

attendance at this auction were defendant David Farber of the Butler and Farber Defendants

(defendant Farber has pled guilty), defendant Isadore May (defendant May has pled guilty),

defendant Norman Remick (defendant Remick has pled guilty), representatives of defendant

Fidelity, representatives of defendant Plymouth Park, Jim Jeffers of the Crusader Defendants

(defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have

been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions

during the Class Period, Stephen Hruby, has pled guilty), representatives of the Fountain of Life

Defendants (defendant Mercer, a Fountain of Life Defendant, has pled guilty), defendant

William Collins (defendant Collins has pled guilty) and representatives of the Mooring

Defendants, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to

the conspiracy alleged herein, defendant Joseph Wolfson, prior to the commencement of the

auction, participated in discussions and reached understandings with the other auction attendees,

was allocated liens on which the other auction attendees refrained from bidding pursuant to the

understanding, and refrained from bidding on liens that other auction attendees were allocated

pursuant to the conspiracy.  As a direct result of defendant Wolfson's participation in the

- 101 -

conspiracy, the Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

208.    **March 11, 2008 Brigantine Auction.**   According to information provided by at least one cooperating witness, defendant Joseph Wolfson of the Wolfson Defendants attended a March 11, 2008 auction in Brigantine, New Jersey and bid on liens as part of the conspiracy.  In addition to defendant Wolfson, also in attendance at this auction were defendant David Farber of the Butler and Farber Defendants (defendant Farber has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby has pled guilty), defendant William Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of defendant Fidelity, representatives of the Mooring Defendants, representatives of defendant Plymouth Park, and defendant Norman Remick (defendant Remick has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Wolfson's participation in the conspiracy, the Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

209.    **December 5, 2008 Margate Auction.**   According to information provided by at least one cooperating witness, the Wolfson Defendants, represented by defendant Joseph

Wolfson, attended a December 5, 2008 auction in Margate, New Jersey and bid on liens as part of the conspiracy.  In addition to defendant Joseph Wolfson, also in attendance at this auction were defendant William S. Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), defendant Richard Pisciotta (defendant Pisciotta has pled guilty), and representatives from defendant Plymouth Park, all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Wolfson's participation in the conspiracy, the Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

210.    **December 5, 2008 Ventnor Auction.**  According to information provided by at least one cooperating witness, the Wolfson Defendants, represented by defendant Joseph Wolfson, attended a December 5, 2008 auction in Ventnor, New Jersey and bid on liens as part of the conspiracy – the same day defendant Wolfson also attended an auction in Margate described above and also in furtherance of the conspiracy.  In addition to defendant Joseph Wolfson, also in attendance at this auction were defendant William S. Collins (defendant Collins has pled guilty), defendant Isadore May (defendant May has pled guilty), representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and

Robert Jeffrey have been indicted), representatives of the Sass Defendants (Sass' director of tax lien acquisitions during the Class Period, Stephen Hruby, has pled guilty), and defendant Richard Pisciotta (defendant Pisciotta has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Wolfson's participation in the conspiracy, the Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

211.    **December 22, 2008 Galloway Auction.**  According to information provided by at least two cooperating witnesses, the Wolfson Defendants, represented by defendant Joseph Wolfson, attended a December 22, 2008 auction in Galloway Township, New Jersey and bid on liens as part of the conspiracy.  Also in attendance at this auction were representatives of the Crusader Defendants (defendant Crusader has pled guilty, and Crusader bidders Jim Jeffers and Robert Jeffrey have been indicted), and defendant William Collins (defendant Collins has pled guilty), all of whom also allocated and bid on liens pursuant to the conspiracy.  Pursuant to the conspiracy alleged herein, defendant Wolfson, prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy.  As a direct result of defendant Wolfson's participation in the

conspiracy, the Wolfson Defendants "won" at least one lien at this auction, which carried an illegal and artificially inflated interest rate.

212.    In or around February 2009, the Wolfson Defendants ceased their participation in the conspiracy when they learned of the United States Department of Justice's criminal investigation into collusion at tax lien auctions in other jurisdictions outside of New Jersey.  The Department of Justice's investigation into New Jersey tax lien auctions began shortly thereafter as well.

213.    As detailed below, all three Wolfson Defendants were indicted by a grand jury for their participation in the conspiracy on November 19, 2013.  In addition, defendant Wolfson can be heard on audio tapes, which were recorded by a government informant, in which he participates in conversations and reaches understandings with other Defendants in furtherance of the conspiracy alleged herein.

## D.    Policing the Conspiracy

214.    In order to enforce the conspiracy, cartel participants would bully participants and non-participants into refraining from bidding on particular liens.  This conduct included, but was not limited to, intimidation and verbal threats.

215.    Oftentimes, new bidders who posed a threat to the conspiracy were asked to join forces with the cartelists rather than continue to bid competitively.  Several Defendants joined the conspiracy this way.

## E.    The Conspiracy Breaks Down

216.    Certain other states and municipalities outside New Jersey conduct tax lien auctions in a similar manner as in New Jersey and several of the Defendants herein participate in tax lien auctions in multiple jurisdictions.  One such jurisdiction is Maryland.  In or around the end of 2008, or the beginning of 2009, it became publicly known that the United States

Department of Justice had begun an investigation into collusion with respect to bid rigging at tax lien auctions in the State of Maryland.

217.    As a result of the publicity that the Maryland investigation garnered in the press in late 2008-early 2009, and the similarity of the auction processes in New Jersey and Maryland as well as the overlap of conspiracy participants, Defendants herein became concerned about their further participation in the conspiracy alleged and decided to discontinue their collusive activities with respect to tax lien auctions in New Jersey by around February 2009.

## F.    National Tax Lien Association (NTLA) Trade Association

218.    Certain Defendants belonged to the National Tax Lien Association, an organization that purports to advance the interests of the tax lien industry, including the New Jersey tax lien industry.  In addition, employees and executives of Defendants have served in leadership positions at the NTLA.  For example, Jim Meeks, the president and chief executive officer of defendant Mooring, currently serves as treasurer of NTLA's Board of Directors. Further, as stated above, defendant William S. Green is also a member of the NTLA's Board of Directors.

219.    The NTLA regularly holds symposiums and meetings.  For example, in March of each year during the Class Period, the NTLA held an annual meeting, usually in Florida, at which many of the Defendants attended.  In 2006, the March meeting took place in Las Vegas, and in 2007, 2008 and 2009, the March meeting took place in Miami, Florida.  The conspirators regularly attended these sessions, which offered a further opportunity for members to meet, conspire, and share information about rigging bids at future municipal auctions.

## G.    Criminal Charges Relating to Defendants' Participation in the Conspiracy

220.    The Antitrust Division of the United States Department of Justice began an investigation into criminal conduct at TSC auctions in New Jersey at least as early as June 2009.

As a result of the federal investigation, 14 individuals and entities – all Defendants here – have pled guilty to participating in a conspiracy to rig public TSC auctions in New Jersey during the Class Period, in violation of Section One of the Sherman Act.  An additional six individuals and entities were indicted on November 19, 2013, in connection with their participation in the conspiracy.  The investigation remains active and additional pleas and/or indictments are expected.

221.    In announcing certain guilty pleas on February 23, 2012, the Department of Justice made clear that "the primary purpose of the conspiracies was to suppress and restrain competition to obtain selected municipal tax liens offered at public auctions at non-competitive interest rates."

222.    Moreover, "[b]ecause the conspiracies permitted the conspirators to purchase tax liens with limited competition, each conspirator was able to obtain liens which earned a higher interest rate."  As a result, "[p]roperty owners were therefore made to pay higher interest on their tax debts than they would have paid had their liens been purchased in open and honest competition."

223.    As Sharis A. Pozen, then-Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division stated, the "guilty pleas demonstrate that the Antitrust Division will not tolerate those who manipulate the competitive process in order to harm home and property owners."

224.    On August 23, 2011, defendant William Collins pled guilty to violating the Sherman Act for his role in the conspiracy.  *See United States of America v. William A. Collins*, 11-CR-563 (D.N.J.) (DMC).  The information accompanying his guilty plea states:

> From at least as early as the beginning of 2003 to until
> approximately February 2009 … Collins and his Co-Conspirators

entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey … The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among COLLINS and his coconspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

For the purpose of forming and carrying out the charged combination and conspiracy, Collins and his Co-Conspirators … a. attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

225.   On August 24, 2011, defendant Isadore May pled guilty to violating the Sherman Act for his role in the conspiracy. *See United States of America v. Isadore H. May*, 2:11-CR-00562 (D.N.J.) (DMC).  The information accompanying his guilty plea states:

From at least as early as the beginning of 2003 to until approximately February 2009 … May and his Co-Conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey … The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among May and his Co-Conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

For the purpose of forming and carrying out the charged combination and conspiracy, May and his Co-Conspirators … a. attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in

accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements.

226.    On August 24, 2011, defendant Richard Pisciotta became the third person to plead guilty to violating the Sherman Act for his role in the conspiracy.  *See United States of America v. Richard J. Pisciotta, Jr.*, 11-CR-561 (D.N.J.) (DMC).  The information accompanying his guilty plea states:

> From at least as early as the beginning of 2003 to until approximately February 2009 … Pisciotta and his Co-Conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey … The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Pisciotta and his Co-Conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged combination and conspiracy, Pisciotta and his Co-Conspirators … a. attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

227.    On February 24, 2012, defendant David Farber pled guilty to violating the Sherman Act for his role in the conspiracy.  *See United States of America v. David M. Farber*, 12-CR-139 (D.N.J.) (DMC).  From about the beginning of 2005 until approximately November 2008, according to the criminal information, defendant Farber held a limited partnership interest in defendant DSBD.  Defendant Farber bid and purchased municipal tax liens in New Jersey on behalf of DSBD, which were held as investments by defendants CCTS I and CCTS II.  Moreover, from about December 2008 through July 2009, Farber served as president of a

company identified as "Company 1", overseeing the purchase of TSCs in the State of New

Jersey.  "Company 1" is defendant Crestar, which defendant William Green is now CEO of.  The

information accompanying defendant Farber's guilty plea also states:

> From at least as early as the beginning of 2005 until approximately
> February 2009 … David M. Farber, the Defendant, and his
> coconspirators, entered into and engaged in a combination and
> conspiracy to suppress and eliminate competition by submitting
> non-competitive and collusive bids at certain public auctions for
> tax liens conducted by municipalities within the District of New
> Jersey … The charged combination and conspiracy consisted of a
> continuing agreement, understanding, and concert of action among
> David M. Farber, the Defendant, and his Co-Conspirators, the
> substantial terms of which were to rig bids for and allocate tax
> liens being auctioned by municipalities within the District of New
> Jersey.

> For the purpose of forming and carrying out the charged
> combination and conspiracy, David M Farber, the Defendant, and
> his Co-Conspirators … a. attended meetings and engaged in
> discussions regarding bids for tax liens being auctioned by
> municipalities within the District of New Jersey; b. agreed during
> those meetings and discussions not to compete at certain tax lien
> auctions by allocating which tax liens each would bid on or refrain
> from bidding; c. submitted bids in accordance with the agreements
> reached; and d. purchased tax liens pursuant to those agreements at
> collusive and non-competitive interest rates.

228.    On February 23, 2012, defendant Robert Stein pled guilty to violating the

Sherman Act for his role in the conspiracy.  *See United States of America v. Robert W. Stein*, 12-

CR-140 (D.N.J.) (DMC).  As president of defendant Crusader and its successor, defendant

RTLS, Stein oversaw the purchase of TSCs on behalf of "Company 1" – which is Crusader and

RTLS – from at least 1996 through 2010, according to the criminal information.  Further:

> From at least as early as 1998 until approximately spring 2009 …
> Robert W. Stein, the Defendant, and his Co-Conspirators,
> including Company 1, entered into and engaged in a combination
> and conspiracy to suppress and eliminate competition by
> submitting non-competitive and collusive bids at certain public
> auctions for tax liens conducted by municipalities within the
> District of New Jersey … The charged combination and conspiracy

- 110 -

consisted of a continuing agreement, understanding, and concert of action among Robert W. Stein, the Defendant, and his Co-Conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

For the purpose of forming and carrying out the charged combination and conspiracy, Robert W. Stein, the Defendant, and his Co-Conspirators, including Company 1 … a. attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

229.    On March 27, 2012, defendant Robert Rothman pled guilty to violating the

Sherman Act for his role in the conspiracy.  *See United States of America v. Robert E. Rothman*,

12-CR-210 (D.N.J.) (DMC).  The information accompanying his guilty plea states:

From in or about the Spring of 2000 until approximately February 2009 …  Robert E. Rothman, the Defendant, and his Co-Conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey …  The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Robert E. Rothman, the Defendant, and his Co-Conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

For the purpose of forming and carrying out the charged combination and conspiracy, Robert E. Rothman, the Defendant, and his Co-Conspirators … a. attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

230.    On April 17, 2012, defendant Stephen Hruby pled guilty to violating the Sherman

Act for his role in the conspiracy.  *See United States of America v. Stephen E. Hruby*, 12-CR-263

(D.N.J.) (D.M.C.).  As the Director of Acquisitions for various M.D. Sass entities from

December 2002 until early 2009, defendant Hruby participated in, and oversaw and directed the

participation of agents and representatives of M.D. Sass at auctions for TSCs on behalf of the

Sass Defendants.  The information accompanying his guilty plea states:

> From at least as early as December 2002 to until approximately
> February 2009 … Stephen E. Hruby, the Defendant, and his
> coconspirators, entered into and engaged in a combination and
> conspiracy to suppress and eliminate competition by submitting
> non-competitive and collusive bids at certain public auctions for
> tax liens conducted by municipalities within the District of New
> Jersey … The charged combination and conspiracy consisted of a
> continuing agreement, understanding, and concert of action among
> Stephen E. Hruby, the Defendant, and his Co-Conspirators, the
> substantial terms of which were to rig bids for and allocate tax
> liens being auctioned by municipalities within the District of New
> Jersey.
>
> For the purpose of forming and carrying out the charged
> combination and conspiracy, Stephen E. Hruby, the Defendant, and
> his Co-Conspirators … a. attended meetings and engaged in
> discussions regarding bids for tax liens being auctioned by
> municipalities within the District of New Jersey; b. instructed other
> bidders under his supervision to attend meetings and engage in
> discussions regarding bids for tax liens being auctioned by
> municipalities within the District of New Jersey; c. agreed during
> those meetings and discussions not to compete at certain tax lien
> auctions by allocating which tax liens each would bid on or refrain
> from bidding; d. submitted bids in accordance with the agreements
> reached; and e. purchased tax liens pursuant to those agreements at
> collusive and non-competitive interest rates.

231.    On April 23, 2012, defendant David Butler pled guilty to violating the Sherman

Act for his role in the conspiracy.  *See United States v. David Butler*, 12-CR-273 (D.N.J.)

(D.M.C.).  According to the criminal information, defendant Butler held a limited partnership

interest in defendant DSBD.  Pursuant to his partnership interest, he bid on and purchased TSCs,

which were then held as investments by defendants CCTS I and CCTS II.  Moreover, from about

December 2008 through July 2009, defendant Butler served as Chief Executive Officer of a

company identified as "Company 1", overseeing the purchase of TSCs in New Jersey.

"Company 1" is defendant Crestar.  The information accompanying his guilty plea also states:

> From at least as early as the beginning of 2005 until approximately
> February 2009, the exact dates being unknown to the United
> States, David Butler, the Defendant, and his Co-Conspirators,
> entered into and engaged in a combination and conspiracy to
> suppress and eliminate competition by submitting non-competitive
> and collusive bids at certain public auctions for tax liens conducted
> by municipalities within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged
> combination and conspiracy, David Butler, the Defendant, and his
> Co-Conspirators … a. attended meetings and engaged in
> discussions or conversations regarding bids for tax liens being
> auctioned by municipalities within the District of New Jersey
> b. agreed during those meetings and discussions not to compete at
> certain tax lien auctions by allocating which tax liens each would
> bid on or refrain from bidding; c. submitted bids in accordance
> with the agreements reached; and d. purchased tax liens pursuant
> to those agreements at collusive and non-competitive interest rates.

232.     Defendant DSBD also pled guilty to violating the Sherman Act for its role in the

conspiracy on April 23, 2012.  *See United States v. DSBD, LLC*, 12-CR-00274 (D.N.J.)

(D.M.C.).  The information accompanying DSBD's guilty plea states:

> From at least as early as the beginning of 2005 until approximately
> February 2009 … DSBD and its Co-Conspirators entered into and
> engaged in a combination and conspiracy to suppress and eliminate
> competition by submitting non-competitive and collusive bids at
> certain public auctions for tax liens conducted by municipalities
> within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged
> combination and conspiracy, DSBD and its Co-Conspirators …
> a. attended meetings and engaged in discussions or conversations
> regarding bids for tax liens being auctioned by municipalities
> within the District of New Jersey; b. agreed during those meetings
> and discussions not to compete at certain tax lien auctions by
> allocating which tax liens each would bid on or refrain from

bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

233.    Defendant Crusader also pled guilty to violating the Sherman Act for its role in the conspiracy on September 26, 2012.  *See United States v. Crusader Servicing Corp.*, 12-cr-00644 (D.N.J.) (D.M.C.).  The information accompanying defendant Crusader's guilty plea states:

> Beginning at least as early as 1998 and continuing until September 2006, the exact dates being unknown to the United States, in the District of New Jersey and elsewhere, the defendant and co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and co-conspirators did those things that it combined and conspired to do, including, among other things:  a. attended meetings and engaged in discussions or conversations regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

234.    On December 19, 2012, defendant Mercer also pled guilty to violating the Sherman Act for its role in the conspiracy.  *See United Stated v. Mercer, S.M.E.*, 12-cr-00832 (D.N.J.) (D.M.C.).  The information accompanying Mercer's guilty plea states:

> From at least as early as the beginning of 2003 until approximately February 2009, the exact dates being unknown to the United States, MERCER, CC-1 and their Co-Conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey.

> For the purpose of forming and carrying out the charged combination and conspiracy, MERCER, CC-1, and their Co-Conspirators did those things that they combined and conspired to do, including, among other things:  a. attended meetings and engaged in discussions or conversations regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates; and e. transferred from CC-1 to Mercer, by way of assignment and for consideration, certain municipal tax liens which CC-1 and MERCER understood were purchased in accordance with agreements reached.

235.    Defendant Norman Remick pled guilty to violating the Sherman Act for his role in the conspiracy on April 25, 2013.  *See United States v. Norman T. Remick*, 13-cr-282 (D.N.J.) (D.M.C.).  The information accompanying defendant Remick's guilty plea states:

> From in or about the beginning of 2007 until approximately February 2009, the exact dates being unknown to the United States, NORMAN T. REMICK, the defendant, and his Co-Conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged combination and conspiracy, NORMAN T. REMICK, the defendant, and Co-Conspirators, did those things that they combined and conspired to do, including, among other things: a. attended meetings and engaged in discussions or conversations at certain auctions regarding bids for tax liens being sold by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at those tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

236.    Defendant Michael Mastellone pled guilty to violating the Sherman Act for his role in the conspiracy on September 30, 2013.  *See United States v. Michael Mastellone*, 13-cr-

643 (D.N.J.) (D.M.C.).  The information accompanying defendant Mastellone's guilty plea

states:

> From in or about 2000 until approximately February 2009, the exact dates being unknown to the United States, MICHAEL MASTELLONE, the defendant, and his co-conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged combination and conspiracy, MICHAEL MASTELLONE, the defendant, and co-conspirators, did those things that they combined and conspired to do, including, among other things: a. attended meetings and engaged in discussions or conversations at certain auctions regarding bids for tax liens being sold by municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at those tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

237.    Defendant Robert U. Del Vecchio, Sr. pled guilty to violating the Sherman Act

for his role in the conspiracy on September 30, 2013.  *See United States v. Robert U. Del*

*Vecchio, Sr.*, 13-cr-642 (D.N.J.) (D.M.C.).  The information accompanying defendant Del

Vecchio's guilty plea states:

> From in or about 2000 until approximately December 2008, the exact dates being unknown to the United States, ROBERT U. DEL VECCHIO Sr., the defendant, and his co-conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged combination and conspiracy, ROBERT U. DEL VECCHIO Sr., the defendant, and co-conspirators, did those things that they combined and conspired to do, including, among other things: a. attended meetings and engaged in discussions or conversations at certain auctions regarding bids for tax liens being sold by

municipalities within the District of New Jersey; b. agreed during those meetings and discussions not to compete at those tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; c. submitted bids in accordance with the agreements reached; and d. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

238.    According to a statement from Scott D. Hammond, Deputy Assistant Attorney General for the Antitrust Division's criminal enforcement program, released at the announcement of defendants Michael Mastellone and Robert U. Del Vecchio's guilty pleas on September 30, 2013:  "By conspiring to rig the bids of municipal tax liens, the conspirators profited at the expense of those already struggling financially … Protecting Americans from these types of bid-rigging schemes remains a high priority for the division."

239.    In addition, at least defendants Mooring, Plymouth Park, and RBPI each confirmed in public filings and/or news articles that they have received grand jury subpoenas related to the Department of Justice's investigation.

240.    Defendant Mooring received a grand jury subpoena in 2009 according to a prospectus released that year from New York tax-lien bonds that are serviced by Mooring.  *See* http://www.businessweek.com/news/2012-02-28/royal-bancshares-unit-co-owned-firms-with-municipal-tax-lien-conspirator.

241.    Defendant Plymouth Park confirmed it was among the companies that received a grand jury subpoena in 2009 as part of the U.S. Justice Department antitrust probe of bid-rigging at tax-lien auctions in New Jersey.  Plymouth Park also stated that it would refrain from pursuing any new tax lien business.

242.    Defendant RBPI confirmed that it has produced to the Department of Justice documents responsive to the subpoenas from RBPI, Crusader and RTLS.  RBPI said in a March 31, 2010 regulatory filing that Crusader and RTLS are "subjects" of a U.S. federal probe

into rigged tax liens.  *See* http://www.businessweek.com/news/2012-02-28/royal-bancshares-unit-co-owned-firms-with-municipal-tax-lien-conspirator.

243.    Although it was not publicly disclosed, the BankAtlantic Defendants, through defendant Fidelity, was served with a grand jury subpoena dated June 1, 2009, which requested that it testify before a grand jury and also produce documents to the grand jury.

**H.    Additional Defendants Indicted for Their Role in the Conspiracy**

244.    On November 19, 2013, a federal grand jury in Newark, New Jersey returned an indictment against six of the Defendants for their role in the conspiracy alleged in this complaint. The Department of Justice announced that four individuals had been indicted, including defendants Joseph Wolfson, Robert Jeffrey, James Jeffers of Burlington, New Jersey (a Crusader bidder) and Gregg Gehring of Newton, New Jersey (an executive with defendant Plymouth Park).  Plaintiffs have previously obtained an entry of default in this case against Robert Jeffrey on November 19, 2013.  [*See* Dkt. Nos. 245, 246.]

245.    Defendants Betty Simon, Trustee LLC and Richard Simon, Trustee LLC, of which defendant Wolfson is a part owner, were also both indicted on November 19, 2013, by the grand jury.

246.    According to the Department of Justice's press release dated November 19, 2013, announcing the indictments:

> [F]rom at least as early as 1998 and continuing until as late as February 2009, the investors participated in a conspiracy to rig bids at auctions for the sale of municipal tax liens in New Jersey by agreeing to allocate among certain bidders which liens each would bid on.  … [T]he investors proceeded to submit bids in accordance with the agreements and purchased tax liens at collusive and non-competitive interest rates.

Deputy Assistant Attorney General for the Antitrust Division, Leslie C. Overton, stated in the press release: "The individuals and entities charged today demonstrated a blatant disregard for

the competitive process by allocating the purchase of certain municipal tax liens by, from time to time, flipping a coin, drawing numbers out of a hat or drawing from a deck of cards."

## VI.    FRAUDULENT CONCEALMENT

247.    Defendants deliberately hid their anticompetitive practices from Plaintiffs and the members of the Class, engaging in affirmative and fraudulent concealment of their unlawful scheme, conspiracy and course of conduct from Plaintiffs and the Class.

248.    Defendants have also engaged in an elaborate series of affirmative acts, including secret bid-rigging, to create the illusion of a competitive market where none existed.

249.    Defendants failed to disclose their unlawful practices of rigging bids at municipal tax lien auctions in New Jersey in any documents provided to Plaintiffs or the Class, or the public.  Further, Plaintiffs and members of the Class would not be among the attendees and/or bidders at public TSC auctions and thus, would not have observed any collusion among the Defendants, even if such collusion were observable by outsiders, which it was not, since Defendants took pains to keep their meetings and other collusion secret.  In addition, defendant Mooring denied the existence of the conspiracy, and as recently as 2010, defendant Mooring and Plymouth Park (also known as Xspand) were touting their rigorous antitrust training practices. *See* JPMorgan Unit Subpoenaed.

250.    Plaintiffs and members of the Class therefore could not have reasonably discovered the deceptive and anticompetitive practices of Defendants, even with reasonable diligence, until, at the earliest, the Department of Justice's investigation into the conspiracy in New Jersey was made public.

251.    Defendants continued to engage in and conceal their fraudulent scheme since the conspiracy began at least as early as 1998 through at least the disclosure of the Department of Justice investigation.

- 119 -

252.     Plaintiffs and the Class did not and could not have discovered their causes of action until the time at which an investigation was made, thereby tolling any applicable statute of limitations.

253.     In addition, Defendants engaged in a successful bid-rigging conspiracy that they affirmatively concealed by meeting secretly (including through the use of private, in-person communications) to discuss auctions for tax liens throughout New Jersey, and by agreeing among themselves at meeting and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their alleged scheme.

254.     As a result of the fraudulent concealment by Defendants of their bid-rigging scheme, any applicable statute of limitations related to any claims which Plaintiffs or other Class members have brought or could bring have been tolled.

## VII.     EFFECTS OF THE DEFENDANTS' UNLAWFUL CONSPIRACY

255.     The conspiracy to rig bids and allocate the market for TSCs auctioned in New Jersey during the Class Period harmed Plaintiffs and members of the proposed class.  The unlawful scheme resulted in artificially inflated interest rates being associated with liens that have been placed on properties owned by Plaintiffs and members of the class.  This inflated interest:  1) forced Plaintiffs and Class members to pay artificially inflated interest on delinquent tax obligations; and/or 2) resulted in an artificially inflated interest rate being associated with the delinquent tax obligation which encumbers the property of Plaintiffs and members of the Class and which Class members are legally required to repay in order to maintain ownership over the property.

256.     As a direct and proximate result of Defendants' unlawful contract, combination and conspiracy, Plaintiffs and members of the Class were injured and financially damaged in

their business and property by having to pay more interest with respect to their delinquent tax

obligation than they would have absent Defendants' unlawful activities, and having the equity in

their property impaired, and in some cases, losing title to their properties in tax sale foreclosures

they were unable to prevent due the impairment of their creditworthiness resulting from the tax

lien foreclosures.

## VIII.   CLASS ACTION ALLEGATIONS

257.   Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) and

23(b)(3) on their own behalf and on behalf of the following class (the "Class"):

> All persons who owned real property in the State of New Jersey
> and who had a Tax Sale Certificate issued with respect to their
> property that was purchased by a Defendant during the Class
> Period at a public auction in New Jersey at an interest rate above
> 0%.

258.   Excluded from the Class are Defendants, government entities or any person or

entity in which any Defendant holds a controlling interest, the officers, directors, employees,

affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or

entity, as well as any immediate family member or any officer, director or employees of any

named Defendant that is not a natural person, and any judge or magistrate involved in this

matter, as well as members of their immediate family.

259.   Plaintiffs reserve the right to modify the definition of the Class, including, but not

limited to, the use of subclasses, as this action progresses.

260.   The Class is so numerous that joinder of all members is impracticable.  While the

exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that at

least several thousand Class members were victims of the unlawful bid-rigging scheme.

261.   Plaintiffs' claims are typical of the claims of other members of the Class.

Plaintiffs and members of the Class sustained damages arising out of Defendants' common

course of conduct in violation of laws as complained herein.  The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the antitrust laws alleged herein.

262.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action litigation, including antitrust class action litigation.

263.    Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

   a.  Whether Defendants conspired with others to fix bids and allocate TSCs at auctions in New Jersey, in violation of the Sherman Act and New Jersey's Antitrust Act;

   b.  Whether Defendants' conduct had the anticompetitive effect of reducing and unreasonably restraining the market for the purchase of TSCs;

   c.  The names of the individuals and entities who participated in the anticompetitive scheme;

   d.  The duration of the anticompetitive scheme;

   e.  The effect of Defendants' conduct and the extent of injuries sustained by Plaintiffs and Class members;

   f.  The amount of damages the anticompetitive scheme caused members of the Class; and

   g.  Whether Plaintiffs and the Class are entitled to an award of attorneys' fees and expenses against Defendants.

264.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon Plaintiffs and members of the Class, the courts and Defendants, and would create the risk

of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A

class action, on the other hand, would achieve substantial economies of time, effort and expense,

and would assure uniformity of decision as to persons similarly situated without sacrificing

procedural fairness or bringing about other undesirable results.

265.     The interest of members of the Class in individually controlling the prosecution of

separate actions is theoretical rather than practical.  The Class has a high degree of cohesion, and

prosecution of the action through representatives would be unobjectionable.  The amounts at

stake for Class members, while substantial in the aggregate, are not great enough to individually

enable them to maintain separate suits against Defendants.  Plaintiffs do not anticipate any

difficulty in the management of this action as a class action.

## IX.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### 15 U.S.C. § 1

266.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this

complaint as though fully set forth herein.

267.     Beginning as early as January 1998 and continuing through February 2009, the

exact dates unknown to Plaintiffs and exclusively within the knowledge of Defendants,

Defendants entered into a continuing contract, combination or conspiracy to unreasonably

restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by

artificially reducing or eliminating competition in New Jersey at public TSC auctions.

268.     Defendants have combined and conspired to rig bids and allocate markets with

respect to the sale of TSCs throughout New Jersey during the Class Period.

269.     As a result of the unlawful conduct of Defendants, interest rates associated with delinquent municipal tax obligations auctioned by municipalities in New Jersey have been set at artificially inflated levels.

270.     The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding and concerted action among Defendants.  For purposes of formulating and effectuating their contract, combination or conspiracy, Defendants did those things they contracted, combined or conspired to do, including:

    a.    exchanged information on auctions for TSCs in New Jersey prior to auctions;

    b.    agreed to rig bids and allocate TSCs sold in New Jersey during the Class Period;

    c.    submitted bids and refrained from submitting bids in accordance with the agreements reached among the Defendants; and

    d.    purchased TSCs auctioned in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

271.     Plaintiffs and the other members of the Class have been injured in their businesses and property as a result of the unlawful conspiracy of Defendants in that they have paid more interest associated with their delinquent tax obligation than they should have, or are required to pay artificially inflated interest levels associated with their delinquent tax obligation, than they otherwise would have paid, or would have been required to pay, in the absence of the unlawful conduct of Defendants.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE NEW JERSEY ANTITRUST ACT**
**N.J.S.A. § 56:9-3**

272.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this complaint as though fully set forth herein.

273.     Beginning as early as January 1998 and continuing through February 2009, the exact dates unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of the New Jersey Antitrust Act (N.J.S.A. § 56:9-3) by artificially reducing or eliminating competition in New Jersey.

274.     Defendants have combined and conspired to rig bids and allocate markets with respect to the sale of TSCs in New Jersey during the Class Period.

275.     As a result of the unlawful conduct of Defendants, interest rates associated with delinquent municipal tax obligations auctioned by municipalities in New Jersey have been set at artificially inflated levels.

276.     As a result of the unlawful conduct of Defendants, the interest rates of TSCs sold throughout New Jersey during the operation of the conspiracy were set at artificially inflated levels.

277.     The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding and concerted action among Defendants.  For purposes of formulating and effectuating their contract, combination or conspiracy, Defendants did, *inter alia*, the following:

      a.    exchanged information on auctions for TSCs in New Jersey prior to auctions;

      b.    agreed to rig bids and allocate TSCs sold in New Jersey during the Class Period;

      c.    submitted bids and refrained from submitting bids in accordance with the agreements reached among the Defendants; and

      d.    purchased TSCs auctioned in New Jersey during the Class Period pursuant to the conspiracy alleged herein.

- 125 -

278.     Plaintiffs and the other members of the Class have been injured in their businesses and property as a result of the unlawful conspiracy of Defendants in that they have paid more interest associated with their delinquent tax obligation than they should have, or are required to pay artificially inflated interest levels associated with their delinquent tax obligation, than they otherwise would have paid, or would have been required to pay, in the absence of the unlawful conduct of Defendants.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE NEW JERSEY TAX SALE LAW EXCESSIVE FEE IN THE**
**REDEMPTION OF A TAX SALE CERTIFICATE N.J.S.A. § 54:5-63.1**

279.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

280.     The New Jersey Tax Sale Law ("NJTSL"), N.J.S.A. § 54:5-1 *et seq.*, protects delinquent taxpayers from unfair treatment by TSC holders through the exacting of unlawful or illegal charges.

281.     Open and competitive bidding in tax lien auctions serves to ensure that "the delinquent property owner's right to fair treatment" by driving down the interest owed to TSC holders.

282.     The NJTSL thus provides that:

> Any holder of a tax sale certificate, excepting any municipal corporation, his agent, servant, employee or representative, **who knowingly charges or exacts any fee or charge in connection with the redemption of any tax sale certificate owned by him**, in excess of the amounts permitted by chapter five of Title 54 of the Revised Statutes, **shall forfeit such tax sale certificate to the person who was charged such excessive or unlawful fee** and the person paying such unlawful charge shall become vested with all the right, title and interest of such tax sale certificate holder in and to such tax lien.  In addition thereto **the person aggrieved shall have a right of action to recover back the full amount paid by him to such tax lien holder, by an action at law in any court of competent jurisdiction.**

> The collection of any excessive charge or fee in connection with the redemption or assignment of a tax sale certificate shall be deemed prima facie evidence of the fact that such tax sale certificate holder did knowingly charge and exact such excessive fee or charge within the intent of this act.

*See* N.J.S.A. § 54:5-63.1 (emphasis added).

283.     As a result of the unlawful collusive bidding of Defendants, Defendants (1) acquired TSCs; (2) held such TSCs; and (3) thereafter knowingly demanded, exacted, charged or attempted to charge fees unlawfully inflated in excess of the amount permitted by the NJTSL in order to redeem such TSCs.

284.     Plaintiffs and members of the Class were thereby damaged by Defendants because Plaintiffs and members of the Class had to pay excessive fees to redeem the TSCs associated with their properties, had the equity in their property unlawfully diminished and/or had an artificially inflated interest rate associated with the tax or other obligation they are required to repay in order to maintain ownership over their property.

### FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

285.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this complaint as though fully set forth herein.

286.     As a result of the unlawful conduct described above, Defendants have been unjustly enriched by collecting unlawfully inflated interest amounts associated with each purchased TSC.  The purchases of such TSCs were in the nature of a public contract, and matters of public interest, relating to the fair and honest administration of government.

287.     But for the collusive and unlawful nature of Defendants' purchases, Defendants would not have been afforded the opportunity to profit from such TSCs.  It would be inequitable to permit Defendants to retain any of the inflated interest or penalties from such purchases, as

Plaintiffs have been injured by both Defendants' unlawful acts and the collusive nature of Defendants' purchases.

288.    In order to deter such unlawful acts, and as a matter of public policy, Plaintiffs are entitled to disgorgement by Defendants to them of all Defendants' ill-gotten gains relating to such collusive purchases on unredeemed TSCs.  This disgorgement would extinguish and relinquish all accrued interest and penalties relating to all such TSCs to all Plaintiffs who have previously redeemed such TSCs held by Defendants, or who have lost title to their properties to Defendants through the foreclosure of such TSCs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants and in favor of Plaintiffs and the Class and award the following relief:

A.    Determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23, appoint Plaintiffs as the class representative and designate Plaintiffs' counsel as counsel for the Class;

B.    Adjudge that the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants to have been a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.    Adjudge that the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants to have been a violation of the New Jersey Antitrust Act, N.J.S.A. § 56:9-3;

D.    Enter judgment for Plaintiffs and members of the Class against Defendants for three times the amount of damages sustained by Plaintiffs and members of the Class as allowed by law, together with the costs of this action and reasonable attorneys' fees;

E.      Enter judgment, pursuant to N.J.S.A. § 54:5-63.1, for Plaintiffs and members of the Class against Defendants for the forfeiture to each member of the Class of each TSC on the property of such member of the Class that was purchased collusively and is currently held by, or under the control of, any Defendant;

F.      Enter judgment, pursuant to N.J.S.A. § 54:5-63.1, for Plaintiffs and members of the Class against Defendants for the amount of damages sustained by Plaintiffs, including the full amount paid to redeem a TSC on a Plaintiff or Class member's property, because of the excessive charges or fees Defendants charged in connection with the redemption of Class member TSCs;

G.      Enter judgment for Plaintiffs and members of the Class against Defendants for an order transferring title to any real property held by any Defendant as the result of the foreclosure of any TSC acquired by any Defendant through collusive bidding to the member of the Class who lost title through foreclosure;

H.      Compel and enjoin Defendants to demonstrate that the monies they received from their activities in the New Jersey tax sale certificate market were not the result of their illegal activities;

I.      Enter judgment for Plaintiffs and members of the Class against Defendants for an award of restitution and/or disgorgement of Defendants' ill-gotten gains;

J.      Impose a constructive trust, for the benefit of Plaintiffs and the Class, on all ill-gotten monies and improperly foreclosed upon properties acquired by Defendants or any of them as a result of their unlawful scheme and that Defendants be required to demonstrate that the proceeds they received in connection with their activities in the New Jersey tax sale certificates market were not derived from their illegal activities;

K.      Award Plaintiffs and the Class pre-judgment and post-judgment interest at the

highest legal rate from and after the earliest date allowed by law and to the extent provided by

law;

L.      Enjoin, preliminarily and permanently, Defendants from enforcing the artificially

inflated and illegal rate of interest associated with the TSCs purchased by Defendants; and

M.      Award such other, further or different relief as the case may require and the Court

may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs, on behalf of themselves and the proposed Class,

demand a trial by jury on all issues so triable.


Dated:  January 6, 2014                     **LITE DEPALMA GREENBERG, LLC**


                               By:     /s/ Bruce D. Greenberg
                                       Bruce D. Greenberg
                                       Steven J. Greenfogel
                                       Two Gateway Center, Suite 1201
                                       Newark, NJ  07102-5003
                                       Telephone:  (973) 623-3000

                                       *Interim Liaison Counsel*

                                       **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                       Steve W. Berman *(admitted pro hac vice)*
                                       1918 Eighth Avenue, Suite 3300
                                       Seattle, WA  98101
                                       Telephone:  (206) 623-7292
                                       Facsimile:  (206) 623-0594
                                       Email:  steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig *(admitted pro hac vice)*
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone:  (212) 856-7227
Facsimile:  (917) 210-3980
Email:  jasonz@hbsslaw.com

**HAUSFELD LLP**
Michael D. Hausfeld *(admitted pro hac vice)*
James Pizzirusso *(admitted pro hac vice)*
Seth R. Gassman *(admitted pro hac vice)*
Mindy Pava (*admitted pro hac vice)*
1700 K Street, NW, Suite 650
Washington, DC  20006
Telephone:  202-540-7200
Facsimile:  202-540-7201

*Interim Class Counsel*

- 131 -