# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
|  | : |  |
| IN RE: NEW JERSEY TAX SALES | : | CONSOLIDATED CIVIL CLASS ACTION |
| CERTIFICATES ANTITRUST LITIGATION | : | NO: 3:12-CV-01893-MAS-TJB |

## CRESTAR CAPITAL, LLC, CCTS CAPITAL, LLC AND WILLIAM S. GREEN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Jay E. Kagan, Esquire
Matthew Faranda-Diedrich, Esquire
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Tel: 215-575-7000
Fax: 215-575-7200
*Attorneys for Crestar Capital, LLC, CCTS Capital, LLC and William S. Green*

Dated: March 14, 2014

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND .....................................................................................................2

III.  ARGUMENT ...........................................................................................................4

    A.  THE STANDARD ........................................................................................4

    B.  THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS
        ENTIRETY AS TO THE CRESTAR DEFENDANTS BECAUSE IT
        FAILS TO PLEAD ANY INJURY DIRECTLY EXPERIENCED BY
        THE PLAINTIFFS THAT IS TRACEABLE TO THE CRESTAR
        DEFENDANTS ..............................................................................................5

    C.  THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS
        ENTIRETY AS TO THE CRESTAR DEFENDANTS BECAUSE IT
        FAILS TO PLEAD FACTS PLAUSIBLY SUGGESTING THAT THE
        CRESTAR DEFENDANTS JOINED THE CONSPIRACY FORMING
        THE BASIS FOR ALL COUNTS ASSERTED AGAINST THE
        CRESTAR DEFENDANTS ...........................................................................7

IV.  CONCLUSION.......................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937, 1949 (2009) ..................................................................................................4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) ...........................................4, 5

*In re Franklin Mut. Funds Fee Litig.,*
  388 F. Supp. 2d 451, 460 (D. N.J. 2005) ................................................................................6

*Polanco v. Omnicell, Inc.,*
  --- F. Supp. 2d ---, 2013 WL 6823265 at *9 n.14 (D. N.J. Dec. 26, 2013) ...............................6

*Ronly, Ltd. v. Feingold,*
  1990 WL 187019, *4 (E.D. Pa. Nov. 27, 1990) ......................................................................8

*In re: Processed Egg Prods. Antitrust Litig.,*
  821 F. Supp. 2d 709, 717 (E.D. Pa. 2011) .........................................................................2, 8

*Smart Pharmacy, Inc. v. Medco Health Solutions, Inc.,*
  C.A. No. 11-6485, 2012 WL 3078416 at *4 (D. N.J. July 30, 2012) .........................................6


<u>Rules</u>

15 U.S.C. § 1 ...........................................................................................................................2

<u>Treatises</u>

N.J.S.A. § 54:5-1 .....................................................................................................................2
N.J.S.A. § 56:9-3 .....................................................................................................................2

## I.    **INTRODUCTION**

Defendants Crestar Capital, LLC, CCTS Capital, LLC and William S. Green (collectively, the "**Crestar Defendants**") are parties and signatories to the Joint Motion to Dismiss. Nevertheless, this separate brief is being filed with the Court to emphasize the additional arguments for dismissal applicable specifically to them.

The Plaintiffs' First Amended Consolidated Master Class Action Complaint (the "**Amended Complaint**") seeks to hold the Crestar Defendants liable for conduct occurring nearly 11 years *before* the Crestar Defendants began operations and purchased its first tax sale certificate ("**TSC**").  Such a theory – which would assign blame to an entity for conduct predating its very existence – is simply bizarre and unsupported by existing law.  As well said in the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss – to which the Crestar Defendants have joined – the Amended Complaint fails to adequately plead standing because the injuries claimed by the Plaintiffs are not traceable to any of the Defendants by virtue of the fact that none of the Plaintiffs' TSCs were purchased by any of the Defendants.  As between the Plaintiffs and the Crestar Defendants, the link is even more attenuated.  <u>The remoteness of any relationship between the parties is underscored the undisputed fact that *the Crestar Defendants had not yet even begun operations when any of the Plaintiffs' had their TSCs purchased*</u>.  Although the Plaintiffs have been given multiple opportunities by the Court to plead the type of direct injury required to satisfy the standing requirement, that they have been unable to meet this mandatory threshold further demonstrates that the time has come to dismiss the Plaintiffs' claims, with prejudice.

Moreover, and again despite being provided with repeated chances to plead sufficient, specific facts to plausibly suggest that the Crestar Defendants actually joined or participated in an alleged decade-long tax lien conspiracy purportedly spanning the entire state of New Jersey,

Plaintiffs have rested their claims on a handful of conclusory and collective allegations in a desperate attempt to attribute the separate actions of other, unrelated companies and individuals to the Crestar Defendants.  Plaintiffs' pleading technique of lumping several unaffiliated parties together is simply not sufficient to tie each particular defendant to the alleged conspiracy.  As thoughtfully observed by a District Court in this Circuit when recently faced with a similar, insufficiently-pled antitrust claim: "[c]onclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases."[1]  Stripped bare of this pleading sleight of hand, the Amended Complaint does not contain any specific facts to plausibly suggest that the Crestar Defendants participated in the overarching conspiracy alleged by Plaintiffs.  Because all counts against the Crestar Defendants depend on them having joined and participated in this conspiracy, which has clearly not been sufficiently pled by the Plaintiffs, all counts of the Amended Complaint should be dismissed as to the Crestar Defendants.

## II.    **BACKGROUND**

The Amended Complaint alleges an "overarching statewide conspiracy" taking place between January 1, 1998 and February 28, 2009 to "unlawfully manipulate interest rates associated with tax sale certificates ("**TSCs**") sold at public auctions throughout the state of New Jersey ...."[2]  This alleged conspiracy purportedly violated Section 1 of the Sherman Act, 15 U.S.C. § 1 (the "**Sherman Act**"), the New Jersey Antitrust Act, N.J.S.A. § 56:9-3 and multiple sections of the New Jersey Tax Lien Law, N.J.S.A. § 54:5-1, *et seq.*[3]  According to the Amended Complaint, all of the named defendants (the "**Defendants**") ran afoul of these laws by

---

[1]      *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011) (MDL).

[2]      Am. Compl. at ¶ 1 (emphasis added).

[3]      *Id.*

"enter[ing] into an unlawful understanding to rig TSC auctions in New Jersey during the Class Period … ."[4]  The Complaint goes on to set forth specific allegations detailing the involvement of the Defendants in the purported interest-fixing conspiracy.  As the basis for all claims asserted against the Defendants, the Amended Complaint identifies four (4) named plaintiffs and related TSC auctions on the following five (5) dates, with the first occurring in June of 2004 and the last in June of 2008:

- June 29, 2004;
- December 30, 2005;
- June 29, 2006;
- October 19, 2007; and
- June 25, 2008.[5]

The Amended Complaint later identifies a mere two (2) auctions attended by the Crestar Defendants – December 16, 2008 and January 14, 2009 – neither of which overlaps with the auctions involving the Plaintiffs' TSCs.[6]  Moreover, the Plaintiffs admit – as they must – that the Crestar Defendants did not even begin operations "until November 2008," or more than four (4) months *after* the last auction related to the Plaintiffs.  The balance of the Amended Complaint makes only the following factually-based allegations against the Crestar Defendants: that they "purchased TSCs at public auctions in New Jersey during the Class Period"; that they employed certain individuals who have pled guilty to participating in a conspiracy; and that defendant William S. Green "personally attended tax sale auctions in New Jersey during the Class Period … ."[7]  These few statements are the sum and substance of the Amended Complaint's "well-pled" factual allegations against the Crestar Defendants.  The remaining averments consist of nothing

---

[4]     *Id.*

[5]     *Id.* at ¶¶ 18, 20, 23, 25.

[6]     *Id.* at ¶¶ 146, 147.

[7]     *Id.* at ¶¶ 34-35.

more than boilerplate legal conclusions such as that the Crestar Defendants "participated" in the conspiracy through certain unspecified "discussions," with no further factual details regarding same.[8]

## III.   ARGUMENT

### A.   THE STANDARD

A motion to dismiss, will be granted under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has not articulated enough facts to "raise a right to relief above the speculative level."[9]   When evaluating a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]   This standard "asks for more than a mere possibility that a defendant has acted unlawfully."[12]   Under this standard, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level," such that relief is plausible, not merely conceivable.[13]

In the context of antitrust claims brought under Section 1 of the Sherman Act, a plaintiff must show that the defendant was a party to a contract, combination or conspiracy, and that the conspiracy to which the defendant was party imposed an unreasonable restraint on trade.[14]   At the pleading stage "[c]onsiderable focus" is directed to the "'crucial question' of whether 'the

---

[8]   *E.g. id.* at ¶¶ 35 ("Defendant William S. Green … participated in the conspiracy alleged herein"); 143 ("The Crestar Defendants … participated in an illegal agreement and/or understanding") and 145-147.

[9]   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

[10]   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

[11]   *Id.* (citing *Twombly*, 550 U.S. at 556).

[12]   *Id.*

[13]   *Twombly*, 550 U.S. at 545, 555

[14]   *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 717 (E.D. Pa. 2011) (MDL).

4

challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express' because Section 1 'does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination or conspiracy.'"[15]   Accordingly, to avoid dismissal of antitrust claims, a plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made."[16]   Moreover, "[t]o provide reasonable notice to a specific defendant of the claim(s) against it, a complaint must plausibly suggest that the individual defendant actually joined and participated in the conspiracy."[17]   Thus, for a complaint to survive, a plaintiff must carry the burden of offering allegations "that plausibly suggest that the defendant agreed to the conspiracy, which, in the antitrust context, is a conscious commitment to a common scheme designed to achieve an unlawful objective."[18]

**B.  THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS TO THE CRESTAR DEFENDANTS BECAUSE IT FAILS TO PLEAD ANY INJURY DIRECTLY EXPERIENCED BY THE PLAINTIFFS THAT IS TRACEABLE TO THE CRESTAR DEFENDANTS**

As pled, the Amended Complaint does not satisfy the Constitutional minimum requirement of standing.  That is, the claims against the Crestar Defendants are defective because the Amended Complaint fails to plead *any* facts to plausibly suggest that the Plaintiffs personally suffered a cognizable injury as the result of alleged actions undertaken by the Crestar Defendants.  To establish Article III standing, a plaintiff must adequately plead that "(1) it has suffered an 'injury in fact' ...; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a

---

[15]     *Id.* (quoting *Twombly*, 550 U.S. at 553).

[16]     *Twombly*, 550 U.S. at 556.

[17]     *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 719; *see also id.* at 720 ("In short, the issue is whether the pleading delineates to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy").

[18]     *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 719.

favorable decision."[19]   The importance of standing cannot be overstated.  Indeed, as described by one Court in this District, "Article III standing goes to very heart of a court's subject matter jurisdiction."[20]   Where separate defendants are involved, to establish standing a plaintiff must plead facts "with respect to *each separate Defendant* named" in the lawsuit.[21]   Said another way, "a named plaintiff can bring suit against a party only if the plaintiff personally suffered an injury and that injury is traceable to that party.  *If the plaintiffs cannot trace an injury to a defendant, the plaintiff lacks standing with regard to that defendant*."[22]

The same requirements are carried over to class actions, where courts note "standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it 'be acquired through the back door of a class action.'"[23]   "Thus, in order to establish standing in the class action context, for each named defendant, at least one named plaintiff must be able to allege injury traceable to that defendant.  An inability to do so with regard to certain named defendants demonstrates an absence of standing as to claims asserted against those defendants."[24]   Adhering to this standing requirement, several Courts in this District have dismissed purported class action claims against defendants where there are no well-pled allegations setting forth a direct connection between the supposed injury and any conduct on the part of the defendants.[25]

---

[19]   *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460 (D. N.J. 2005) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693 (2000)).

[20]   *Id.* (internal citations omitted).

[21]   *Polanco v. Omnicell, Inc.*, --- F. Supp. 2d ---, 2013 WL 6823265 at *9 n.14 (D. N.J. Dec. 26, 2013) (emphasis added).

[22]   *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 460-61 (emphasis added).

[23]   *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 461 (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29, 94 S.Ct. 2191 (1974)); *see also id.* at 460 ("Standing is a threshold inquiry, not a mere hurdle that can be cleared with the assistance of Rule 23")

[24]   *Id.* at 461.

[25]   *See Polanco*, 2013 WL 6823265, at *10 (finding lack of standing to sue defendants where Amended Complaint failed to allege any direct contact between plaintiff and defendants); *Smart Pharmacy, Inc. v. Medco Health Solutions, Inc.*, C.A. No. 11-6485, 2012 WL 3078416 at *4 (D. N.J. July 30, 2012) (granting dismissal and

Here, the Amended Complaint fails to set forth any kind of direct connection between the Plaintiffs and the Crestar Defendants. As described above, *none* of the Plaintiffs had their TSCs purchased at auctions attended by the Crestar Defendants, which is not surprising in the least because the Crestar Defendants did not even begin operations "until November 2008," or more than four (4) months *after* the last auction related to the Plaintiffs' TSCs. Accordingly, because none of the named Plaintiffs have individually alleged an injury traceable to the Crestar Defendants, the Amended Complaint should be dismissed for lack of standing.

C. **THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS TO THE CRESTAR DEFENDANTS BECAUSE IT FAILS TO PLEAD FACTS PLAUSIBLY SUGGESTING THAT THE CRESTAR DEFENDANTS JOINED THE CONSPIRACY FORMING THE BASIS FOR ALL COUNTS ASSERTED AGAINST THE CRESTAR DEFENDANTS**

According to the Amended Complaint, each of the counts asserted against the Crestar Defendants are grounded in an "overarching statewide conspiracy" that the Crestar Defendants purportedly joined at some undisclosed point in time.[26] Yet, the only factual allegations (as opposed to unsupported and bald conclusions) made specifically against the Crestar Defendants relating to their supposed decision to join this wide-ranging conspiracy consist entirely of a series on unremarkable observations. For example, the Amended Complaint states that the Crestar Defendants "purchased TSCs at public auctions in New Jersey during the Class Period"; that they employed certain individuals who have pled guilty to participating in a conspiracy; and that defendant William S. Green "personally attended tax sale auctions in New Jersey during the Class Period ... ." There is absolutely no explanation given in the Amended Complaint for how

---

finding "Plaintiffs must instead inject facts into the Complaint to show that they personally have been injured by Defendant's alleged actions, and that they personally have a right to relief"); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 462 ("if the named plaintiffs cannot or do not assert their own direct claim against a named defendant, they may not bring a claim against that defendant on behalf of other investors").

[26]     Am. Compl. at ¶ 1.

these discrete, separate facts lead to the conclusion that the Crestar Defendants affirmatively decided to join an alleged bid-rigging scheme lasting more than 10 years and spanning the entire state of New Jersey.[27]   These kind of conclusory allegations fail to plausibly suggest that the Crestar Defendants actually joined the conspiracy forming the basis for the Amended Complaint. For this reason, all counts against the Crestar Defendants should be dismissed, with prejudice.

As one District Court noted in a recent opinion when passing on the sufficiency of conspiracy allegations rooted in Section 1 of the Sherman Act, *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 717 (E.D. Pa. 2011) (MDL) ("***Egg Products***"), "'[c]onclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases.  Such exposure ought to be limited to those who have been made at least reasonably aware of what they have done or failed to do, lest the litigants be left to wander aimlessly through the wilds and wilderness of discovery to no ultimate destination."[28]

In *Egg Products*, the court concluded that a complaint failed to plausibly suggest that several defendants agreed to join an overarching conspiracy where the complaint did not allege specific facts connecting each of those defendants to the illicit agreement.  The complaint in *Egg Products* collectively identified three separate defendants as the "Hillandale Entities"[29] despite

---

[27]       Although, as discussed above, the Crestar Defendants were not in existence for nearly the entire timeframe of the alleged conspiracy, Plaintiffs appear to be proceeding on a "late joinder" theory of liability – *i.e.* that one who joins an existing conspiracy is equally liable with the other conspirators for all damages occasioned by the conspiracy.  While the Crestar Defendants dispute the applicability of this theory and note that the Third Circuit Court of Appeals has not directly approved of its use, the significant consequence of applying such a theory – which would result in the Crestar Defendants, who were in existence for the last month of a 10 year long conspiracy, to share equal responsibility with all of alleged conspirators – precisely demonstrates why antitrust plaintiffs must plead specific facts to plausibly suggest that a defendant *actually joined* the ongoing conspiracy. *See Ronly, Ltd. v. Feingold*, 1990 WL 187019, *4 (E.D. Pa. Nov. 27, 1990).

[28]       *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 720.

[29]       Those defendants were Hillandale Gettysburg, L.P., Hillandale Farms Inc. and Hillandale Farms East, Inc. *In re: Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 745.

the fact that the defendants had separate legal forms and principal places of business.[30]   The complaint went on to allege that the Hillandale Entities should be considered together because they shared common ownership and control by virtue of the fact that several executives and officers overlapped between the three companies.[31]   The court rejected plaintiffs' pleading strategy of "lumping the three entities together" by using the "umbrella term" the Hillandale Entities.[32]   The court similarly rejected the plaintiffs' attempt to use an overlap in personnel between the companies as a way to link the Hillandale Entities to one another for purposes of liability:

> the entities merely are alleged to have individuals in overlapping ownership or controlling roles, and it cannot be said these allegations plausibly suggest that the entities are under common ownership or control such that a single decision-making source exercises definitive control over each of them … . … the mere "fact that two corporations have common shareholders, officers or directors, or that their names are similar," does not "impose liability on one for the torts of the other or its agents."[33]

The court determined that the plaintiffs' pleading approach led to "an absence of specific factual allegations ... to connect each (or any) of the Hillandale Entities directly to the conspiracy" and that none of the complaint's allegations even so much as implied "that the entities directly agreed to or participated in the conspiracy … ."[34]   As described above, the allegations made against the Crestar Defendants in the Amended Complaint are similarly infirm.   Because each and every count directed to the Crestar Defendants depends on a finding that they joined and participated in

---

[30]     *Id.*

[31]     *Id.*

[32]     *Id.* at 745, 746.

[33]     *Id.* at 749 (quoting William Meade Fletcher, *Cyclopedia of Law of Private Corporations* § 4878 (perm. ed. rev. vol. 2006)).

[34]     *Id.* at 747, 750.

the over-arching conspiracy, all such claims should be dismissed as to the Crestar Defendants, with prejudice.

## IV.  **CONCLUSION**

The Amended Complaint – the Plaintiffs' third attempt at pleading a cause of action against the Crestar Defendants –  fails to plausibly allege any specific, tortious conduct by the Crestar Defendants that directly harmed the Plaintiffs.   At this point, and for the reasons discussed above, the Court should therefore dismiss the Amended Complaint as to the Crestar Defendants in its entirety and with prejudice.

<table>
<tr><td></td><td>Respectfully Submitted:</td></tr>
<tr><td></td><td>/s/ Jay E. Kagan</td></tr>
<tr><td>Dated:  March 14, 2014</td><td>Jay E. Kagan, Esquire<br>Matthew Faranda-Diedrich, Esquire<br><b>DILWORTH PAXSON LLP</b><br>1500 Market Street, Suite 3500E<br>Philadelphia, PA 19102-2101<br>Tel: 215-575-7000<br>Fax: 215-575-7200<br><i>Attorneys for Crestar Capital, LLC, CCTS Capital,<br>LLC and William S. Green</i></td></tr>
</table>