**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket<br><br>No. 3:12-CV-01893-MAS-TJB |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' JOINT MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................ii

PRELIMINARY STATEMENT ..........................................................1

BACKGROUND ....................................................................................4

    A.    The New Jersey Tax Sale Law..............................................5

    B.    Plaintiffs' Allegations.............................................................8

ARGUMENT ........................................................................................12

  I.  PLAINTIFFS' ANTITRUST CLAIMS SHOULD BE DIMISSED............12

    A.    Plaintiffs Lack Of Standing To Sue The Moving Defendants...........12

    1.    Plaintiffs Do Not Allege That Their Injuries Are "Fairly Traceable" To The Conduct Of The Moving Defendants.................13

    2.    Plaintiffs' Lack Of Standing Is Not Cured By Bringing Their Claims As A Putative Class Action.........................................17

    B.    Plaintiffs' Sherman Act And New Jersey Antitrust Claims Fail To State A Claim ...............................................................18

    1.    The Applicable Legal Framework Requires Plaintiffs To Plead Specific Facts Supporting Their Antitrust Conspiracy Claims............................................................................19

    2.    The Amended Complaint Does Not Plausibly Allege A Single Agreement Among All Of The Moving Defendants .........................21

    3.    Plaintiffs Fail Sufficiently To Allege That Each Defendant Participated In The Purported Conspiracy Or How It Did So ..........27

    4.    Plaintiffs' References To Guilty Pleas And Other Extraneous Allegations Do Not Rescue Their Pleading Defects.........................31

    5.    Plaintiffs Do Not Plausibly Allege A Conspiracy Affecting

i

Any Of The Six Auctions Involving Liens Associated With Plaintiffs' Properties.....................................................................34

II.  PLAINTIFFS FAIL TO STATE A CLAIM THAT DEFENDANTS CHARGED EXCESSIVE FEES AND THE PLAINTIFFS' THIRD CLAIM FOR RELIEF FAILS TO STATE A CAUSE OF ACTION UNDER N.J.S.A. § 54:5-63.1 .........................................................35

A.  Legal Framework ........................................................................35

B.  Plaintiffs Have Failed To Allege A Redemption By A Defendant....36

C.  Plaintiffs Have Failed To Allege An Excessive Fee Or Charge........37

D.  Plaintiffs Have Failed To Allege Fraud Sufficient To Overcome The Presumption Of Validity .............................................................39

1.  Legal Framework ........................................................................39

2.  Plaintiffs Have Not Alleged That Any Defendant Procured The Tax Sale Certificate On A Plaintiffs' Property...........................40

3.  Plaintiffs Have Not Alleged That Any Defendant Procured The Tax Sale Certificate By Fraud........................................................40

(a)  Plaintiffs Have Admitted – And The Court Has Found – That The Alleged Bid-Rigging Conspiracy They Allege In The Amended Complaint Is Not Based On Fraud ................................................................40

(b)  Plaintiffs Have Not Pleaded With Particularity Any Other Fraud In Connection With The Procurement Of A Tax Sale Certificate ...................................41

III.  PLAINTIFFS' PARASITIC AND INSUFFICIENTLY PLED UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ..........42

IV.  PLAINTIFFS SHOULD NOT HAVE A FURTHER OPPORTUNITY TO RE-PLEAD...........................................................46

CONCLUSION ....................................................................................47

# TABLE OF AUTHORITIES

CASES

*Arista Records LLC v. Lime Group LLC*,
532 F. Supp. 2d 556 (S.D.N.Y. 2007) ...............................................................29

*Arlandson v. Hartz Mountain Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011)............................................................44, 45

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................17, 19, 20, 34,39

*Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd.*,
841 A.2d 430 (N.J. Super. App. Div. 2004) ........................................................5

*Chazanow v. Sussex Bank*,
CIV.A. 11-1094 CCC, 2013 WL 4069530 (D.N.J. Aug. 9, 2013)....................46

*Dewey v. Volkswagen AG*,
558 F. Supp. 2d 505 (D.N.J. 2008)...................................................................39

*Glass v. BMW of North Am., LLC*,
C.A. No. 10-5259, 2011 WL 6887721 (D.N.J. Dec. 29, 2011).........................45

*Hammer v. Vital Pharmaceuticals*,
C.A. No. 11-4124, 2013 WL 5470007 (D.N.J. Sept. 30, 2013) (Shipp, J.) .......45

*Hinds Cnty. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009) ...............................................................34

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ..............................................................................25

*In re Bath & Kitchen Fixtures Antitrust Litig.*,
No. 05-cv-00510, 2006 WL 2038605 (E.D. Pa. July 19, 2006)........................23

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
261 F. Supp. 2d 188 (E.D.N.Y. 2003) ...............................................................22

*In re Elec. Carbon Prods. Antitrust Litig.*,
333 F. Supp. 2d 303 (D.N.J. 2004).....................................................................27

*In re Ernie Haire Ford, Inc.*,
   459 B.R. 824 (Bankr. M.D. Fl. 2011).................................................................20

*In re Florida Cement & Concrete Antitrust Litig.*,
   746 F. Supp. 2d 1291 (S.D. Fla. 2010).............................................................26

*In re Franklin Mut. Funds Fee Litig.*,
   388 F. Supp. 2d 451 (D.N.J. 2005)..............................................................17, 18

*In re Graphics Processing Units*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007)........................................................31, 33

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ........................................................................19, 34

*In re Ins. Brokerage Antitrust Litig.*,
   MDL No. 1663, 2006 WL 2850607 (D.N.J. Oct. 3, 2006), *aff'd in part*,
   618 F.3d 300 (3d Cir. 2010) ................................................................25, 26, 27

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   768 F. Supp. 2d 961 (N.D. Iowa 2011) ............................................................26

*In re Optical Disk Drive Antitrust Litig.*,
   2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ...............................................15, 16

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012) ........................................................................12, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. MDL 1827, 2010 WL 2629728 (N.D. Cal. June 29, 2010).........................29

*In re Travel Agent Comm'n Antitrust Litig.*,
   MDL Docket No. 1561, 2007 WL 311675, – 12 (N.D. Ohio Oct. 29,
   2007) ..................................................................................................................32

*In re: Flonase Antitrust Litig.*,
   692 F. Supp. 2d 524 (E.D. Pa. 2010)................................................................43

*In re: K-Dur Antitrust Litig.*,
   C.A. No. 01-1652, MDL No. 1419, 2008 WL 2660780 (D.N.J. Feb. 28,
   2008) ..................................................................................................................44

*In re: Refrigerant Compressors Antitrust Litig.*,
   2012 U.S. Dist. Lexis 80269 – 31 (E.D. Mich. June 11, 2012).........................32

*Kauffman v. Dreyfus Fund, Inc.*,
    434 F.2d 727 (3d Cir. 1970) ............................................................17

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................20

*Krantz .v Prudential Investments Fund Mgt. LLC*,
    305 F.3d 140 (3d Cir. 2002) ............................................................46

*LaFlamme v. Societe Air France*,
    702 F. Supp. 2d 136 (E.D.N.Y. 2010) .............................................31

*Lewis v. Casey*,
    518 U.S. 343 (1996) .........................................................................17

*Love v. The Mail on Sunday*,
    No. CV057798ABCPJWX, 2006 WL 4046180 (C.D. Ca. Aug. 15, 2006) .......20

*Marchese v. Cablevision Sys. Corp.*,
    C.A. No. 10-2190, 2011 WL 149917 (D. N.J. Jan. 14, 2011) ...........43

*Marchese v. Cablevision Sys. Corp.*,
    C.A. No. 10-2190, 2011 WL 3022529 (D. N.J. July 21, 2011) ........43

*Mich. Division-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
    458 F. Supp. 2d 474 (E.D. Mich. 2006) ..........................................29

*Montich v. Miele USA, Inc.*,
    840 F. Supp. 2d 439 (D. N.J. 2012) .................................................44

*Pietrangelo v. NUI Corp.*,
    No. Civ. 04-3223 (GEB), 2005 WL 1703200 (D.N.J. July 20, 2005) .............21

*Polanco v. Omnicell, Inc.*,
    --- F. Supp. 2d ----, 2013 WL 6823265 (D.N.J. Dec. 26, 2013) .................13, 17

*Rios v. City of Bayonne*,
    Civ. No. 2:12–4716 (KM) (MAH), 2013 WL 6008481 (D.N.J. Nov. 12, 2013) ............................................................................16

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ......................................................20

*Rolo v. City Inv. Co. Liquidating Trust*,
    155 F.3d 644 (3d Cir. 1998) ............................................................21

*Rotella v. Wood*,
   528 U.S. 549 (2000)..................................................................................21

*Shaw v. Hous. Auth.of Camden*,
   No. 11-4291, 2012 WL 3283402 (D.N.J. Aug. 10, 2012)..................................20

*Simon v. Chicago Title Ins. Co.*,
   833 A.2d 1110 (N.J. Super. App. Div. 2003) ........................................5

*St. Clair v. Citizens Fin. Grp.*,
   340 F. App'x 62 (3d Cir. 2009) .........................................................18

*Superior Offshore International, Inc. v. Bristow Group Inc.*,
   738 F. Supp. 2d 505 (D. Del. 2010).....................................................31

*The Constitution Party Of Pennsylvania v. Cortes*,
   433 F. Appx. 89 (3d Cir. 2011) .........................................................16

*Tredennick v. Bone*,
   323 Fed. App'x 103 (3d Cir. 2008) ....................................................28

*United States v. Sargent Elec. Co.*,
   785 F.2d 1123 (3d Cir. 1986) ...........................................................27

*Weske v. Samsung Elec. Am., Inc.*,
   C.A. No. 10-4811, 2012 WL 833003 (D.N.J. Mar. 12, 2012) ...................45, 46

STATUTES

N.J.S.A. § 54:5-61................................................................................38

N.J.S.A. § 54:5-25..................................................................................6

N.J.S.A. § 54:5-1....................................................................................5

N.J.S.A. § 54:5-6....................................................................................5

N.J.S.A. § 54:5-19..................................................................................6

N.J.S.A. § 54:5-32..................................................................................6

N.J.S.A. § 54:5-34..................................................................................6

N.J.S.A. § 54:5-46,.................................................................................6

N.J.S.A. § 54:5-52 ................................................................6, 36, 39, 40

N.J.S.A. § 54:5-54 .................................................................................................7

N.J.S.A. § 54:5-58 ...............................................................................................38

N.J.S.A. § 54:5-60 ...........................................................................................7, 38

N.J.S.A. § 54:5-86 .................................................................................................7

N.J.S.A § 54:5-104.64 ...........................................................................................7

N.J.S.A. § 54:5-63.1 ............................................................................................37

Sherman Act Section 1 ........................................................................................31

**OTHER AUTHORITIES**

Rule 8(a).................................................................................................*passim*

Rule 9(b)...............................................................................................................39

The Moving Defendants[1] submit this memorandum in support of their motion to dismiss Class Plaintiffs' Third Amended Complaint[2] under Federal Rule of Civil Procedure 12(b)(6), with prejudice.

## PRELIMINARY STATEMENT

The background of this putative class action is well known to the Court. It involves the admitted and isolated wrongful conduct of certain rogue actors at unrelated municipal tax sale auctions. All of the rogue actors have either been charged, or plead guilty to criminal informations. Most of these rogue actors have entered into civil settlements with the Plaintiffs. The statute of limitations has run and no further criminal charges will be lodged.

What the case does not involve (even when considering the criminal indictments) is a unified, coherent, criminal conspiracy linking together thousands of separate municipal tax auctions over a decade-long class period. No law enforcement authority has ever charged any Defendant with any such conspiracy. No Defendant has pleaded guilty to any such crime. The reasons are clear: The

---

[1] The Moving Defendants are: the Bank Atlantic Defendants (BBX Capital Corp., Fidelity Tax, LLC, Heartwood 55, LLC, Michael G. Deluca, Gary I. Branse, and David Jelley), the PAM Defendants (PAM Investors and Patrick Caraballese); the Crestar Defendants (Crestar Capital LLC, CCTS Capital LLC and William S. Green); and Mooring Tax Asset Group, LLC.

[2] Plaintiffs filed their original complaint in the Superior Court of New Jersey, Chancery Division, which was removed to this Court in March 2012. Plaintiffs subsequently filed their Master Consolidated Complaint on December 21, 2012. Accordingly, this is the *third* complaint they have filed in this action.

facts do not, nor could they, support such a strange and implausible confluence of events.   Certainly, the generic and repetitious allegations of Plaintiffs' latest pleading do not remotely support such a theory.   Indeed, as this brief explains, Plaintiffs' latest attempt to construct a claim against the Moving Defendants— none of whom have been charged or can be charged with any wrongdoing—is not materially or substantively different than Plaintiffs' earlier attempts to construct a coherent pleading, which this Court already found insufficient as a matter of law.

The truth is that the latest pleading is nothing more than the earlier pleading dressed up with the patina of specificity but utterly lacking in true substance.   It fails to specifically and accurately detail what the Moving Defendants did, as opposed to what the rogue actors (who have pled guilty) did.   The same sleight of hand is thus evident—Plaintiffs' attempt to again tar the Moving Defendants with the misconduct of others without providing actual factual allegations of what the Moving Defendants are alleged to have done, as opposed to what other Defendants did.   The pleading is thus deficient and should be dismissed for a variety of reasons including the following:

**First**, Plaintiffs do not have standing to bring this action against the Moving Defendants because they have not shown that there were injured by the actions of any of the Moving Defendants, a deficiency they cannot cure by bringing claims on behalf of a class of plaintiffs.

**Second**, Plaintiffs have failed to allege such basic facts as how this alleged vast conspiracy was maintained, how it was coordinated, and how it was policed. Plaintiffs fail to explain how, in certain cases, the conspiracy seemed to take a vacation as years went by without some of the Moving Defendants even participating in the acquisition of TSCs.

Moreover, none of the four putative class representatives sets forth any well-pleaded allegations of wrongdoing with respect to the particular auctions at which the tax liens on their properties were sold.  Indeed, not one of the putative representative Plaintiffs' tax sale certificates was purchased by a Moving Defendant—they were all purchased by the rogue actors who have confessed to their crimes.

This is no mere technicality, particularly given that this is Plaintiffs' third chance to tell the Court, and the Moving Defendants, the details of how of this incredible decade long conspiracy was allegedly carried out.  Indeed, common sense, which is the touchstone of plausibility, suggests that if the Moving Defendants were so intertwined in the alleged vast conspiracy, Plaintiffs could find a single tax sale certificate that the Moving Defendants purchased, and one which was subject to specific collusion.  The absence of this critical fact is, in the Moving Defendants' judgment, dispositive.

**Third**, Plaintiffs' state law and unjust enrichment claims similarly collapse based on their failure to provide sufficient factual support.

In sum, the Court generously granted Plaintiffs an opportunity to replead a third time.[3]  In the interim, by their own admission, Plaintiffs have talked to numerous cooperating witnesses and reviewed hundreds of documents concerning the misconduct of the rogue actors.  They are not operating in the dark—a clear spotlight has been turned on and all of the relevant facts and specifics of the crimes that did occur have been displayed for everyone to see.  What this light reveals is that Plaintiffs' claims against the Moving Defendants rely solely on supposition and innuendo.  But this is the third rodeo for the Plaintiffs.   It is time to open the gates and to let these Moving Defendants move on.[4]

## BACKGROUND

Property tax revenues provide necessary financial support for services to New Jersey's 566 municipalities.  To ensure that this revenue stream is not

---

[3] In doing so, the Court admonished Plaintiffs to remove the allegations with respect to the Defendants who had settled.

[4] Defendants leave for another day—if that day should ever come—the insurmountable problems Plaintiffs will face in attempting to proceed on behalf of a single class of delinquent taxpayers claiming to have been damaged at thousands of different auctions attended by an unknown and unidentifiable number of bidders in 566 different locales spanning an eleven-year time period.  Plaintiffs' proposed class purports to include tens of thousands of different and unique pieces of real property, TSCs purchased at different interest rates ranging from the statutory default of 18% all the way down to 0% (and potentially even TSCs that were purchased at a premium), and scores of unknown third-party bidders.

disrupted, New Jersey established a comprehensive statutory scheme that provides municipalities with a mechanism to sell delinquent tax liens in the form of Tax Sale Certificates ("TSCs") to private buyers.   TSC purchasers ensure that municipalities receive the tax revenue they are due in exchange for assuming the risk of deferred payment or non-payment by the delinquent taxpayers.  In exchange for this risk transfer, New Jersey law provides TSC purchasers with the right to collect interest at a rate set at tax lien auctions conducted by each of New Jersey's municipalities.   TSC holders also have a right to pursue foreclosure if the delinquent taxpayer fails to pay.  The default rate of interest received by the TSC purchasers is set by statute at 18%, unless it is bid down at the tax lien auctions.

The Amended Complaint alleges violations of the federal and state antitrust laws (First and Second Claims), the New Jersey Tax Sale Law (Third Claim) and a tag-along claim for unjust enrichment (Fourth Claim).  Each of these claims is set against the backdrop of a comprehensive statutory scheme governing the sale of municipal tax liens in New Jersey.

### A.    THE NEW JERSEY TAX SALE LAW

To enable the collection of unpaid taxes, New Jersey enacted a "comprehensive" statutory scheme, Amended Compl. ¶ 146, to govern virtually every aspect of the "creation, enforcement and collection of liens."   N.J.S.A. § 54:5-1, *et seq.* (hereinafter "Tax Sale Law"); *see also, e.g.*, *Simon v. Chicago Title Ins. Co.,* 833 A.2d 1110, 1113 (N.J. Super. App. Div. 2003) ("It is [] in the

5

public interest to encourage parties to purchase tax liens to enable municipalities to receive their lost tax revenues.")(citation omitted).  "Municipalities depend on the collection of property taxes and other assessments to fund the many services provided to residents."  *Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd.*, 841 A.2d 430, 437 (N.J. Super. App. Div. 2004)(quotation omitted).

The Tax Sale Law provides that, when property taxes are assessed, they become a continuous tax lien on the property until they are paid.  N.J.S.A. § 54:5-6.  If property taxes remain in arrears for a certain period of time, a municipal officer, also known as a tax collector, holds a public auction to sell a TSC related to the property.  N.J.S.A. § 54:5-19.  Before the auction is conducted, the tax collector must provide: (a) written notice to the owners of the property and (b) notice to the public in local newspapers and other public places.  N.J.S.A. §§ 54:5-25 – 54:5-27.

Under the Tax Sale Law, all TSCs are offered for sale at the statutory default interest rate of 18% per annum, unless that rate is reduced during the auction process.  The tax collector is directed to award the TSC to the lowest bidder. N.J.S.A. § 54:5-32.[5]  If there are no bids on a particular lien at an auction, the TSC

---

[5] If a bidder offers to buy a TSC at an interest rate of 0%, another bidder may bid a rate of 0% plus a premium to be paid to the municipality over and above the purchase price.  N.J.S.A. § 54:5-32.  The TSC must then be sold to the bidder that offers the highest premium.  *Id.*

is retained by the municipality at the statutory default rate of 18% interest. N.J.S.A. § 54:5-34.

A private party awarded a TSC at auction pays the purchase price to the tax collector in exchange for the TSC, which is issued in the form prescribed by statute. *See* N.J.S.A. §§ 54:5-46, 54:5-47, 54:5-52. The purchaser must file the TSC reflecting the interest rate at which it was purchased with the municipality within 90 days. N.J.S.A. § 54:5-51. Upon filing the TSC with the local governmental authority, the TSC holder is entitled to pay any subsequent taxes on the property that are not timely paid by the property owner. N.J.S.A. § 54:5-60. Any such payments "by statute carry an 18% interest rate." *Id.*

A property owner may redeem a TSC by paying the redemption price to the tax collector prior to the expiration of the redemption period. N.J.S.A. §§ 54:5-54. The redemption price is the sum of (i) the TSC purchase price plus the interest, (ii) any subsequent taxes paid by the holder of the TSC including interest, and (iii) certain penalties, expenses and fees where applicable. N.J.S.A. §§ 54:5-58, 54:5-60.

If a property owner fails to redeem a TSC within two years from the date of the purchase, the TSC holder may institute an action to foreclose the right of the owner to redeem and to obtain ownership of the property in fee simple. N.J.S.A.

§§ 54:5-86, 54:5-104.64.  The property owner may redeem a TSC at any point until a final judgment is issued by a court.  *Id.*

### B.   PLAINTIFFS' ALLEGATIONS

The four named Plaintiffs are real property owners who failed to pay various municipal taxes related to their properties.  Amended Compl. ¶¶ 18 – 25.  These delinquencies resulted in tax liens against their properties that were sold at auctions pursuant to the comprehensive statutory scheme described above.  *Id.*  Three of the four named Plaintiffs still have not paid their overdue taxes.  *Id.*

Each Plaintiff alleges that its TSC was sold at 18% and identifies the date and location of the auction and the Settled Defendant who purchased the lien.  *Id.* ¶¶ 18, 20, 23, 25.  **None** of the Plaintiffs' TSCs were purchased by the Moving Defendants, and Plaintiffs fail to set forth any specific facts to support their allegations of wrongdoing with respect to the auctions at which their tax liens were sold (*e.g.*, which Moving Defendants (or other members of the public) allegedly attended these auctions, which Moving Defendants allegedly colluded, or the rates for any other TSCs sold at those auctions).  Each Plaintiff nevertheless asserts in wholly conclusory terms that the interest rate on the TSC(s) for their properties were "purchased pursuant to the conspiracy alleged herein."  *Id.*

The Amended Complaint then alleges that the Moving Defendants engaged in a single "overarching statewide conspiracy" involving twenty-seven diverse corporate entities, twenty-two individuals, two trustees, one trust, one religious

8

non-profit organization, and countless unnamed co-conspirators.  *Id*. ¶¶ 1, 100.
According to the Amended Complaint, these fifty-three Defendants (and their
numerous unnamed "co-conspirators") agreed to rig the bids for TSCs at thousands
of tax lien auctions that took place across the entire state of New Jersey over an
eleven-year period from January 1998 through February 2009.  *Id*.[6]  In doing so,
the Amended Complaint still provides no specifics as to the origins of the alleged
conspiracy other than the non-specific statement that certain Defendants "entered
into the conspiracy alleged in this complaint."  *Id*. ¶¶ 102.  Nor does it include any
detail as to how any of the Defendants allegedly joined, managed, organized, or
maintained such a vast and long-lived conspiracy, particularly where all the
auctions are open to the public and the attendees at the auctions are not known
prior to the auction.   Although the alleged single overarching conspiracy is
implausible on its face, Plaintiffs also do not and cannot allege that any such
conspiracy affected every auction in New Jersey over the eleven-year period, *see,
e.g.*, Amended Compl. ¶ 102 (alleging that the conspiracy "applied to auctions"),
because Defendants were not the only participants at the auctions and because only
some Defendants attended some auctions.

---

[6] The Amended Complaint alleges that each of the State's 566 municipalities held
auctions "at least once a year" over an eleven-year period.  Amended Compl. ¶ 95.

The Amended Complaint's failure to include the requisite specificity is perhaps illustrated best by looking closely at what it does say.  Strikingly, Plaintiffs spend approximately 66 pages of the Amended Complaint identifying purportedly "example auctions" but these "examples" are mere regurgitations of the bare bones legal conclusions that formed the basis for the previous dismissal.  Indeed, none of the "examples" provide the details necessary to meet the pleading standards and they are all formulaic regurgitations of the legal elements of the claims, not specific factual support thereof necessary to make their allegations against the Moving Defendants tenable.  At best, these "example" auctions illustrate that certain Moving Defendants *were present* at the same auctions where Defendants who have pled guilty were also present.[7]  Such lack of detail is all the more striking given that Plaintiffs have entered into cooperation agreements with all of the Settling Defendants (*i.e.* those that have been indicted or pled guilty) and, therefore, have access to all available information from those Settling Defendants pursuant to the terms of those settlement agreements that have been filed with the Court.  That these sources of information cannot provide more factual detail (such as the interest rates on the TSCs purchased) regarding the alleged conspiracy

---

[7] As this Court previously concluded "mere presence at an exemplar auction" cannot meet Rule 8(a)'s requirement.  10/23/13 Trans. at 83:21-25.

speaks volumes as to plausibility of the conspiracy Plaintiffs have alleged and their continued failure to provide the specificity necessary to support their claims.

The Amended Complaint simply fails to provide any of the necessary facts regarding these "example" auctions—facts which the "cooperating witnesses" should have knowledge of if Plaintiffs allegations regarding such a vast conspiracy were true, but they amazingly have still failed to divulge: (1) the identity of all the persons present at these example auctions; (2) the interest rates for *any* of the TSCs purchased at these example auctions; (3) whether all the TSCs at these example auctions were purchased by members of the alleged conspiracy; (4) how the liens at these example auctions were allocated; (5) *any details whatsoever* regarding the "discussions" and "understandings" whereby the Defendants allegedly allocated the liens prior to the example auctions; (6) how the parties to the conspiracy prevented other members of the public from bidding on the allocated liens (assuming such allocations even took place) at the example auctions; (7) any specifics suggestive of an overarching agreement reaching from one auction to another, much less an agreement spanning many thousands of separate auctions over an eleven-year period.  Indeed, the Amended Complaint admits that different Defendants attended different auctions.  Amended Compl. ¶ 154.

Furthermore, none of the "example auctions" involve *any* of the named Plaintiffs or the sale of TSCs with respect to their unpaid taxes.   And more

troublesome for Plaintiffs—none of the guilty pleas entered by certain of the Settling Defendants, upon which Plaintiffs place great reliance—reference any of the auctions relating to the Plaintiffs' TSCs or describe with any particularity a continuous and overarching conspiracy among the forty-eight Defendants affecting auctions throughout New Jersey.  *Id.* ¶¶ 224 – 237.  Instead, the plea-related charging instruments quoted in the Amended Complaint state only that some of the Settling Defendants conspired to submit non-competitive bids at "*certain* public auctions for tax liens conducted by municipalities within the District of New Jersey."  *Id.* (emphasis added).  There is not a scintilla of proof in these guilty pleas that the overarching conspiracy alleged here is remotely plausible.

Plaintiffs allege that the Defendants "discontinued their collusive activities with respect to tax lien auctions in New Jersey by around February 2009"—more than three years before Plaintiffs filed their first class action complaint on March 13, 2012.  *Id.* ¶ 217.

## ARGUMENT

### I.   PLAINTIFFS' ANTITRUST CLAIMS SHOULD BE DISMISSED

#### A.   Plaintiffs Lack Standing To Sue The Moving Defendants.

Plaintiffs lack standing to assert their claims against the Moving Defendants because they fail to plead any facts connecting their injuries to the alleged conduct of the Moving Defendants.

To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must plead that: (a) he suffered an "injury in fact"; (b) there is "a causal connection between the injury and the conduct" of the defendants; and (c) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (emphasis added). Moreover, the plaintiff must plead these facts "with respect to each separate Defendant named in this suit." *See Polanco v. Omnicell, Inc.*, --- F. Supp. 2d ----, 2013 WL 6823265, at *9 n.14 (D.N.J. Dec. 26, 2013)(citation omitted). This is equally true in the case of a putative class action, like this one, since a "plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant." *Id.* at *9 (citing *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083, 1086 n.18 (3d Cir. 1975)).

As shown below, Plaintiffs fail to plead a basis for standing against the Moving Defendants because they do not plausibly allege a "causal connection" between their injuries and the Moving Defendants' conduct. Specifically, they do not allege that any of the Moving Defendants were present or otherwise participated in any of the auctions at which any of the Plaintiffs' tax liens were sold. Thus, there is no causal link between any injury that Plaintiffs might have

13

suffered and any conduct by any of the Moving Defendants, and therefore there is no injury the can be remedied in this action.

### 1.   Plaintiffs Do Not Allege That Their Injuries Are "Fairly Traceable" To The Conduct Of The Moving Defendants

To satisfy the causation element of Article III standing, Plaintiffs "must allege sufficient facts to **plausibly**" show that their injuries are "**fairly traceable to the challenged action of the [Moving Defendants]**, and not the result of the independent action of some third party not before the court." *In re Schering Plough Corp.*, 678 F.3d at 247 (emphasis added). The Amended Complaint still pleads no such facts regarding the Moving Defendants.

Plaintiffs allege that liens "associated with" their respective properties were sold at six independent auctions held on different dates in different New Jersey municipalities. Amended Compl. ¶¶ 18 – 26. Plaintiffs do not even attempt to trace their alleged injuries at those auctions to the conduct of the Moving Defendants. Indeed, Plaintiffs do not allege that any of the Moving Defendants was even present at the auctions where Plaintiffs' TSCs were sold, let alone that the Moving Defendants (or some unidentified subset) agreed not to compete for the liens on the Plaintiffs' properties, or that the Moving Defendants took any other action that had any impact on Plaintiffs at all. The only factual detail they plead regarding the relevant auctions is the attendance of the single investor who purchased a Plaintiff's lien (or in the case of the Schmidts, the two Settling-

Defendants who purchased the two liens).  Each of the purchasers of those liens has now settled with the Plaintiffs and is therefore no longer a Defendant in this lawsuit.  *See id.* ¶¶ 18, 20, 23, 25.  Thus, there are no allegations whatsoever connecting the Moving Defendants to Plaintiffs' alleged injuries.

Plaintiffs attempt to make up for this lack of causation by sweeping the Moving Defendants into a single state-wide conspiracy affecting thousands of auctions in dozen of municipalities over an eleven-year period.  This likewise fails to establish their standing to assert claims against the Moving Defendants, since, as shown below, Plaintiffs fail to plausibly allege any such "overarching" conspiracy. *See infra* at 23.  The Amended Complaint catalogues "representative examples" of other auctions (unconnected to Plaintiffs' properties) for which anonymous "cooperating witnesses"—whose identities are never revealed—have supposedly implicated the Moving Defendants in agreeing to allocate bids.  Even if these allegations are adequate to allege a conspiracy affecting individual exemplar auctions, they are irrelevant to the standing analysis because the Amended Complaint does not plausibly allege any causal connection between these "representative" auctions and the six auctions that impacted Plaintiffs' TSCs. *Compare* Amended Compl. ¶¶ 18 – 27 with ¶¶ 110 – 213; *see In re Optical Disk Drive Antitrust Litig.*, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) (concluding that allegations regarding a conspiracy at particular auctions involving

"a small subset of defendants" were "a far cry from establishing plausibility for a broad six year continuing agreement among all defendants to fix [] prices . . . through innumerable other channels").

Each auction is a separate process, involving particular properties in a particular municipality.  Thus, an alleged agreement to refrain from competitive bidding in auctions not involving Plaintiffs' property cannot have affected the interest rate on Plaintiffs' TSCs, which were determined at different auctions that no Moving Defendant is alleged to have attended.  Because there is no factual connection between the "representative" auctions and Plaintiffs' alleged injuries— other than mere conjecture—the allegations regarding those auctions cannot establish Plaintiffs' standing to assert claims against the Moving Defendants.

Equally unavailing to establish Plaintiffs' standing is the wholly conclusory assertion in the Amended Complaint that, "[a]s a result of the Defendants' anticompetitive conduct, the interest rate associated with the TSC on the [Plaintiff's] Property was artificially inflated, and Plaintiff [] has been damaged thereby."  *Id.* ¶¶ 19, 21, 24, 26.  In the absence of any supporting factual allegations, such bare legal boilerplate fails to satisfy the pleading requirements of Rule 8(a) and cannot establish Plaintiffs' standing.  *See Rios v. City of Bayonne*, Civ. No. 2:12–4716 (KM) (MAH), 2013 WL 6008481, at *10 (D.N.J. Nov. 12, 2013) (dismissing complaint that was "devoid of facts" and "consist[ed] of nothing

but legal boilerplate—precisely the kind of 'formulaic recitation of the elements of a cause of action' that was held inadequate in *Twombly*, 550 U.S. at 555."); *The Constitution Party Of Pennsylvania v. Cortes*, 433 Fed. App'x 89, 93 (3d Cir. 2011) (affirming dismissal for lack of standing where Amended Complaint contained "no allegations . . . other than conclusory assertions" to show causation).

For these reasons, Plaintiffs' claims against the Moving Defendants should be dismissed for lack of standing.

## 2. Plaintiffs' Lack Of Standing Is Not Cured By Bringing Their Claims As A Putative Class Action.

Styling their Amended Complaint as a putative class action does not cure Plaintiffs' lack of standing as to the Moving Defendants.  A named "plaintiff **may not maintain an action** on behalf of a class against a specific defendant if the plaintiff is **unable to assert an individual cause of action** against that defendant." *Polanco*, 2013 WL 6823265, at *9 (emphasis added); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which the purport to represent.")(internal quotation omitted); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970) ("[A] predicate to appellee's right to represent a class is his eligibility to sue in his own right.  What he may not achieve himself, he may not accomplish as a representative of a class."). "Thus, in order to

establish standing in the class action context, for each named defendant, at least one named plaintiff must be able to allege injury traceable to that defendant. . . . An inability to do so with regard to certain named defendants demonstrates an absence of standing as to claims asserted against those defendants." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005) (internal citations omitted). Because, as shown above, **none** of the named Plaintiffs has individually alleged an injury "traceable" to any of the Moving Defendants, the entire Amended Complaint must be dismissed for lack of standing. *Id.* ("[Plaintiffs'] standing cannot be predicated on an injury which [they have] not suffered, nor can it be acquired through the back door of a class action.").

### B.   Plaintiffs' Sherman Act And New Jersey Antitrust Claims Fail To State A Claim.

Even apart from Plaintiffs' lack of standing, the Amended Complaint still fails to adequately allege viable federal or state antitrust claims.  As illustrated below, the pleading requirements for a Sherman Act claim are rigorous, and Plaintiffs have failed to satisfy those requirements for at least the following reasons: (1) Plaintiffs do not allege sufficient facts to support their claim of a single overarching agreement to restrain trade between the Moving Defendants or how the alleged conspiracy was coordinated from auction to auction; (2) Plaintiffs fail to sufficiently to that each Moving Defendant participated in the purported conspiracy or how it did so; (3) Plaintiffs' reliance on guilty pleas and other

extraneous allegations do not rescue their pleading defects with respect to the Moving Defendants; (4) Plaintiffs do not plausibly allege a conspiracy affecting any of the auctions involving liens associated with Plaintiffs' properties. Accordingly, both their state and federal antitrust claims should be dismissed. *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n.2 (3d Cir. 2009) (because "the New Jersey Act itself mandates that it 'shall be construed in harmony with the ruling judicial interpretations of comparable Federal antitrust statutes, . . . "state law antitrust claims are only viable if the corresponding federal claims are sufficient.").

### 1.   The Applicable Legal Framework Requires Plaintiffs To Plead Specific Facts Supporting Their Antitrust Conspiracy Claims.

The Supreme Court recognizes that "antitrust discovery can be expensive" and that "the success of judicial supervision in checking discovery abuse has been on the modest side." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 – 59 (2007). The Court therefore instructs district courts to "to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (quotations omitted); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) ("Plaintiffs' obligation to show the existence of a horizontal agreement is not only an ultimate burden of proof but also bears on their pleadings.").

Accordingly, to survive a motion to dismiss under Fed. R. Civ. P. 8(a), Plaintiffs' "[f]actual allegations" "must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555. Plaintiffs bear the burden of alleging an antitrust conspiracy that is not just "conceivable" but "plausible." *Id.* at 570. To state a plausible antitrust conspiracy, Plaintiffs must do more than offer "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Instead, they must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. At a minimum, Rule 8(a) requires Plaintiffs to "answer the basic questions" of "who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

And "[e]ven under the most liberal notice pleading requirements . . . , a plaintiff must differentiate between defendants." *Shaw v. Hous. Auth. of Camden*, No. 11-4291 (RMB/AMD), 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (citation omitted) (dismissing complaint as to defendants who were listed only by name and title as parties to action and not mentioned elsewhere in the complaint). This pleading burden is not satisfied where a complaint uses either "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also, e.g.*, *Love v. The Mail on Sunday*,

No. CV057798ABCPJWX, 2006 WL 4046180, at *15 (C.D. Cal. Aug. 15, 2006) (dismissing conspiracy claim where, among other things, complaint failed "to differentiate among the various different defendants and their alleged roles"). Collective-style allegations fail to provide "a reasonable basis from which [the court] can infer [a] defendant's liability," *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 835 (Bankr. M.D. Fla. 2011), and "are so general that they fail to put each defendant on notice of the claims against them."  *Pietrangelo v. NUI Corp.*, No. Civ. 04-3223 (GEB), 2005 WL 1703200, at *10 (D.N.J. July 20, 2005).

Finally, unless and until the putative class is certified at some point in the future, this action is only between the individual Plaintiffs and each Defendant. Accordingly, the Amended Complaint must allege "what happened to a specific plaintiff," not to New Jersey property owners in general or putative class members not identified in the Amended Complaint.  *See Rolo v. City Inv. Co. Liquidating Trust*, 155 F.3d 644, 658–59 (3d Cir. 1998) (finding that putative class action plaintiffs failed to plead fraud with particularity where complaint only alleged what happened to "most purchasers" and not plaintiffs specifically), *abrogated on other grounds*, *Rotella v. Wood*, 528 U.S. 549 (2000).

### 2. The Amended Complaint Does Not Plausibly Allege A Single Agreement Among All Of The Moving Defendants.

Attempting to overcome their inability to allege any conspiratorial conduct at the specific auctions that affected their properties, Plaintiffs resort to conclusory

assertions of an "overarching statewide conspiracy" that allegedly affected thousands of auctions occurring throughout the class period.  *See* Amended Compl. ¶¶ 1, 102, 109.  Plaintiffs chose not to allege a number of smaller conspiracies relating only to certain auctions and instead stake their entire antitrust claims solely on allegations of a single vast and continuous conspiracy.  *See id.*[8]

Plaintiffs face a heavy burden in attempting to plead such a single conspiracy among fifty-three defendants to rig the bids at thousands of auctions over an eleven-year period, as even a single non-cooperating bidder could cause such a cartel to break down.  *See, e.g.*, *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 224 (E.D.N.Y. 2003); R. Mark Isaac & James M. Walker, *Information and Conspiracy in Sealed Bid Auctions*, 6 J. Econ. Behavior & Org. 139, 151 – 52 (1985).  As a result, plausibility dictates that the type of massive conspiracy Plaintiffs allege would have required extensive coordination and policing among a large number of potential bidders who attended auctions in ever-changing combinations and with unknown and unidentified members of the public attending many if not all of the auctions.  Plaintiffs bear the burden of

---

[8]   Importantly, Plaintiffs make this decision despite that the informations accompanying the guilty pleas listed in the Amended Complaint only relate to "certain public auctions" and do not remotely suggest the vast conspiracy alleged here.

alleging specific facts sufficient to demonstrate the plausibility of such a vast and unique conspiracy. *See supra* at 20.

Plaintiffs fail to meet this burden. Most notably, Plaintiffs use Defendants interchangeably, and fail to allege (i) any specifics as to how the purported conspiracy began; (ii) when, where, and how the Defendants coordinated the conspiracy from auction-to-auction; or (iii) when, where, and how the Defendants managed to maintain and police the conspiracy over a span of eleven years. Plaintiffs' antitrust claims should be dismissed for these reasons alone. *See, e.g.*, *In re Bath & Kitchen Fixtures Antitrust Litig.*, No. 05-cv-00510, 2006 WL 2038605 MAM, at *5 (E.D. Pa. July 19, 2006) ("[A]n antitrust plaintiff must provide the defendants some minimal factual background regarding how any alleged conspiracy was formed.").

While Plaintiffs spend more than 66 pages of their Amended Complaint listing "example" auctions, other than identifying some of the parties present at these auctions, Plaintiffs provide no details as to any of the other elements of the alleged conspiracy at these representative auctions. Instead, each of the "example" auctions is followed by a regurgitation of the same push-button, formulaic and conclusory allegations that this Court previously and correctly rejected. Indeed, every paragraph identifying the example auctions starts out by listing some of the

attendees at that particular auction. Plaintiffs then uniformly regurgitate the following phrase *seventy-three* times:

> Pursuant to the conspiracy alleged herein, representatives of [insert Defendant], prior to the commencement of the auction, participated in discussions and reached understandings with the other auction attendees, was allocated liens on which the other auction attendees refrained from bidding pursuant to the understanding, and refrained from bidding on liens that other auction attendees were allocated pursuant to the conspiracy. As a direct result of [insert Defendant's] participation in the conspiracy [insert Defendant] won at least ___ liens at this auction, all of which carried illegal and artificially inflated interest rates.

*Compare e.g.* Amended Compl. ¶¶ 134, 179.

Plaintiffs' attempt to address the Court's previous conclusion that "mere presence" at an example auction does not meet Rule 8(a)'s requirements falls flat because simply repeating the same formulaic and conclusory paragraph seventy-three times does not constitute specificity and does not remedy Plaintiffs' complete failure to provide any factual support for the formulaic conclusions they assert. And with respect to each of the individual "example" auctions, at best, the Amended Complaint makes only a wholly conclusory allegation of a narrow agreement reached shortly before that particular auction by certain bidders who attended that auction to "'pick' the liens on which they would each bid." *See e.g.*, *id.* ¶ 146.

24

Furthermore, Plaintiffs never even allege that the attendees at these example auctions agreed to rig the bids at any *future* auction, much less to do so on a continuous basis.  Nor would any such allegation be plausible, given the absence of any apparent way of knowing which of those bidders, if any, would be present at future auctions, which other bidders would appear at future auctions, or which properties would be auctioned.  Indeed, the Amended Complaint explicitly admits that a different group of Defendants—and in each instance only a small fraction of the Defendants named in the Amended Complaint—attended the "example" auctions.  *Compare i.e.* Amended Compl. ¶¶ 146, 154 (identifying a different combination of Defendants as attendees at each example auction); *see also* ¶ 110 ("Some Defendants participated in the conspiracy longer than others. Some Defendants attended more auctions than others, and not every Defendant attended every auction.")

Plaintiffs' allegations concerning the auctions of their own TSCs and the "example" auctions thus fall far short of supporting the type of vast and continuous eleven year conspiracy alleged in the Amended Complaint.  While Plaintiffs hope that the mere number of example auctions listed will bolster their claims, Courts have dismissed similar conspiracy claims where, as here, the specific facts alleged in the complaint at most relate to discrete and episodic instances of collusion.  *See, e.g.*, *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 256 (3d

Cir. 2010) (affirming complete dismissal of an "overarching conspiracy" claim because "the amended complaint cannot be fairly understood to allege the existence of several unconnected, bilateral" conspiracies); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2006 WL 2850607, at *12 (D.N.J. Oct. 3, 2006), *aff'd in part*, 618 F.3d 300 (3d Cir. 2010) (finding that plaintiffs failed to plead sufficient facts to establish a "[g]lobal [c]onspiracy" of bid-rigging where plaintiffs merely alleged "collusion between a limited subset of brokers and insurers"); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011) (dismissing all antitrust claims because plaintiffs failed to plead facts "from which inferences of a wider conspiracy can be drawn from guilty pleas to separate bilateral conspiracies."); *In re Florida Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1319 (S.D. Fla. 2010) (dismissing complaint where "the allegations do not plausibly support the entire statewide, ten-Defendant, two-product conspiracy alleged by Plaintiffs.").

*In re Insurance Brokerage Antitrust Litigation* illustrates why Plaintiffs' mere listing of example auctions, and using the same or similar push-button conclusory allegations, is deficient. 2006 WL 2850607. There, the plaintiffs attempted to plead a single conspiracy among thirty-five entities to rig bids for financial products sold to municipalities. *Id.* at *12. Although the complaint alleged "collusion between a limited subset of brokers and insurers," the court

found that "the pleadings must identify the purported subset of conspirators in this conduct and the nature and scope of each alleged conspirator's role." *Id.* The court dismissed the plaintiffs' conspiracy claim because the plaintiffs failed to "explain how such a large and diverse group of Defendants acted, combined or conspired as a part of a single conspiracy." *Id.*[9]

Likewise here, to the extent there are any non-conclusory facts alleged, Plaintiffs have failed to allege the "who, what, when, where, and how" of a single overarching conspiracy. For example, Plaintiffs do not provide any specificity as to how this purportedly single massive conspiracy was carried out from auction to auction other than the formulaic regurgitations recited in the example auctions. Such allegations fail to sufficiently support the plausibility of the conspiracy alleged, and dismissal is therefore appropriate.

### 3. Plaintiffs Fail To Sufficiently Assert That Each Defendant Participated In The Alleged Conspiracy Or How It Did So.

A plaintiff asserting a bid-rigging conspiracy must include specific facts describing the "nature and scope of each alleged conspirator's role." *In re Ins.*

---

[9] Even in criminal conspiracy prosecutions, courts have held that the government cannot support an overarching, all-encompassing conspiracy by relying on allegations of disconnected agreements. *See, e.g.*, *United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1131 (3d Cir. 1986) (on review of a dismissal of a criminal indictment, concluding that there was no single antitrust conspiracy where "separate bid-rigging meetings were held with respect to each facility . . . , the allocation of business among the bid-riggers was made on a facility-by-facility basis," and "not all the conspiring personnel knew each other . . .").

*Brokerage Antitrust Litig.*, 2006 WL 2850607, at *12. "Simply using the global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient." *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 312 (D.N.J. 2004) (quotations omitted); *see also Tredennick v. Bone*, 323 App'x 103, 105 (3d Cir. 2008) ("[W]here multiple defendants are involved, the complaint should inform each defendant of the nature of his alleged participation.")

While the Court properly recognized that Plaintiffs failed to make the necessary factual allegations with respect to each of the Moving Defendants in dismissing the Complaint, the Amended Complaint's attempt to remedy this failure simply by listing "example auctions" is not sufficient and provides little additional information with respect to each Moving Defendants' alleged role in the conspiracy. For the Moving Defendants, the only purported connection to the alleged conspiracy remains the wholly conclusory allegation that they attended a small set of "example" auctions (when compared to the many thousands of auctions that were held during the class period) which were also attended by some other Defendants who have pled guilty.[10] And, as discussed above, there are no specifics provided as to what happened at these "example" auctions other than that

---

[10] Repeating the same conclusory allegations seventy-three times does not add any factual support to their claim.

some TSCs were acquired—the rates of these TSCs (or any of the TSCs at these auctions) are not disclosed, the method of allocating liens is not identified, and in most instances, neither are the properties.[11]  *See* Amended Compl. ¶¶ 17 – 27, 154. The Amended Complaint further fails to provide *specifics* about each distinct Defendant's role at the example auctions it did attend.  Instead, Plaintiffs attempt again to cast a wide and indiscriminate net over numerous corporate entities and individuals without offering any specific defendant-by-defendant allegations of misconduct.

Plaintiffs' wholesale failure to describe how each distinct Moving Defendant participated in the alleged overarching conspiracy provides an independent basis for dismissing Plaintiffs' antitrust claims.  *See Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 577 (S.D.N.Y. 2007) (dismissing complaint where plaintiff did "not allege any facts identifying which record companies were actually approached" or "whether any of the companies were aware of each other's actions"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 1827, 2010 WL 2629728, at *7 (N.D. Cal. June 29, 2010) ("[A]n antitrust plaintiff must specifically plead how each individual defendant joined the alleged price fixing

---

[11] Plaintiffs similarly do not allege who attended these "example auctions" other than by listing some of the Defendants—they do not claim, for example, that no non-participating members of the public attended, bid on, or purchased TSCs at any of these example auctions.

conspiracy"); *Mich. Division-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to any individual [] defendant."); *see also supra* at 28-29 (describing additional cases which hold that collective-style pleading does not satisfy Rules 8(a) and 9(b)).

Nor do Plaintiffs provide any factual support as to how the alleged conspiracy was policed. Instead, Plaintiffs hang their hats on two paragraphs (Amended Compl. ¶¶ 214, 215) to support the entirety of their policing allegations, neither of which have any specificity as to how the Moving Defendants actually policed the conspiracy, either at a particular auction, or from auction to auction during the eleven-year time frame. Plaintiffs' bare allegations that unidentified Defendants allegedly "would bully participants and non-participants" with "intimidation and verbal threats" are entirely unspecific and conclusory and certainly do not detail the nature and scope of the role of any of the Moving Defendants. Plaintiffs do not identify a single incidence of this alleged bullying, which Moving Defendants participated in this purported bullying, what individuals or entities were bullied, or when this bullying allegedly occurred at the auctions (*i.e.* whether bullying occurred during the actual bidding process). And Plaintiffs'

failures are all the more troublesome given their admitted access to numerous cooperating witnesses, none of which could provide any facts to support these allegations.   The absence of such factual support further illustrates the implausibility of Plaintiffs' claims, and further supports dismissal thereof against the Moving Defendants.

### 4.   Plaintiffs' References To Guilty Pleas And Other Extraneous Allegations Do Not Rescue Their Pleading Defects.

Plaintiffs attempt to bolster their thinly-pleaded conspiracy allegations with references to the Department of Justice investigation of bid-rigging in connection with New Jersey tax lien auctions, the guilty pleas that certain individuals and entities have entered in connection with that investigation, and the fact that certain Defendants are members of a tax liens trade association.  None of these allegations overcomes the defects in Plaintiffs' conspiracy allegations.

Under settled law, a government investigation "carries no weight in pleading an antitrust conspiracy claim." *In re Graphics Processing Units*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007). "[V]ague allegations regarding pending investigations based on interviews with unidentified individuals and a subpoena . . . are not probative of the Sherman Act Section 1 violations alleged here because neither mere participation in an investigatory interview nor the receipt of a subpoena is necessarily probative of conspiracy." *LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 154 (E.D.N.Y. 2010) (citations omitted).  As noted

by one District Court, "the mere occurrence of the DOJ's investigation is equally consistent with Defendants' innocence." *Superior Offshore International, Inc. v. Bristow Group Inc*., 738 F. Supp. 2d 505, 517 (D. Del. 2010); *see also, In re: Refrigerant Compressors Antitrust Litigation*, 2012 U.S. Dist. Lexis 80269, \*30 – 31 (E.D. Mich. June 11, 2012) (dismissing claims against all defendants except two defendants who pled guilty); *In re Travel Agent Comm'n Antitrust Litig*., MDL Docket No. 1561, 2007 WL 3171675, at \*11 – 12 (N.D. Ohio Oct. 29, 2007) (DOJ investigation is "not only completely immaterial to plaintiff's claim, but is also arguably prejudicial and these paragraphs will be stricken from the complaint") (citation and internal quotation marks omitted).

**First**, the mere fact that the Department of Justice has served subpoenas on certain entities does not support an inference that those entities conspired.  As set forth above, the case law is clear that the existence of an investigation does not support a conclusion that an alleged conspiracy is plausible.  Moreover, if any inference can be drawn it is that those Moving Defendants who were served with a subpoena and were not charged, are innocent.

**Second**, the guilty pleas cited in the Amended Complaint do not support Plaintiffs' allegation of a conspiracy to artificially inflate the "vast amount" of TSCs purchased in New Jersey among all Defendants as to auctions throughout New Jersey for more than a decade.  Amended Compl. ¶ 6.  Nor does any guilty

plea reflect an admission as to any of the specific auctions at which the five named Plaintiffs' TSCs were sold.  The quoted charging documents instead reflect that each Defendant who pled guilty was charged with submitting "non-competitive and collusive bids at *certain* public auctions for tax liens conducted by municipalities within the District of New Jersey."  Amended Compl. ¶¶ 224 – 237. (emphasis added).  Furthermore, the boiler plate nature of the plea agreements, entered into by a minority of the Defendants—**none of them movants here**— provide no basis for inferring that all Defendants entered into the alleged conspiracy.  In fact, the allocutions made by those Defendants that did plead guilty only vaguely refer to having agreed "with others to allocate tax liens at municipal tax lien auctions in New Jersey by meeting and engaging in discussions concerning allocation of those liens among other bidders," with no reference to who these "others" are.  *See e.g.,* Transcript of Guilty Plea of Robert Rothman, March 27, 2012 at 19:13-17, attached as Exhibit A to the Declaration of James E. Cecchi.

The allocutions of those Defendants who pled guilty are devoid of facts to support a statewide conspiracy, or even to a conspiracy at a specific tax lien sale. As noted by the court in *In re Graphics Processing Units Antitrust Litig.*, when considering similar allegations, "even where some competitors have admitted" to violating the antitrust laws, "it is not reasonable to infer that" other defendants "had done likewise."  527 F. Supp. 2d at 1023.  Moreover, the opposite inference is

just as likely, *i.e.,* that the Moving Defendants are innocent because they were not and cannot be charged with any antitrust conspiracy by virtue of the lapse of the statute of limitations.

**Third**, although Plaintiffs allege that "certain Defendants" attended meetings of the National Tax Liens Association ("NTLA"), *see* Amended Compl. ¶ 218, they fail to describe a single instance of misconduct at such meetings.  The mere fact that several Defendants belong to a trade association does not support Plaintiffs' conspiracy allegations.  *See Twombly*, 550 U.S. at 567 n.12 (rejecting contention that defendants' common membership in trade union plausibly suggests conspiracy); *In re Ins. Brokerage Antitrust Litig*. 618 F.3d 300, 349 (3d Cir. 2010) (same); *Hinds Cnty. v. Wachovia Bank N.A.,* 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009) (same).

**5.**   <u>**Plaintiffs Do Not Plausibly Allege A Conspiracy Affecting Any Of The Six Auctions Involving Liens Associated With Plaintiffs' Properties.**</u>

The Amended Complaint fails to allege a plausible conspiracy affecting **any** of the six auctions at which TSCs for Plaintiffs properties were sold.  As noted above, Plaintiffs do not allege that any of the Moving Defendants even attended any of those auctions, much less agreed not to compete in bidding for the TSCs.  Nor does the Amended Complaint plead facts to show any overlap or connection alleged between the "representative" auctions the Moving Defendants allegedly attended, and the six auctions involving Plaintiffs' TSCs.  The absence of non-

conclusory factual allegations connecting the Moving Defendants to the auctions that allegedly injured Plaintiffs defeats Plaintiffs' standing, *see supra at* 13-17, and also separately requires dismissal of the antitrust claims for failure to state a claim.

**II.   PLAINTIFFS FAIL TO STATE A CLAIM THAT DEFENDANTS CHARGED EXCESSIVE FEES AND THE PLAINTIFFS' THIRD CLAIM FOR RELIEF FAILS TO STATE A CAUSE OF ACTION UNDER N.J.S.A. § 54:5-63.1**

Plaintiffs fail to state a claim that the Moving Defendants charged excessive fees in the redemption of tax sale certificates for multiple reasons, including Plaintiffs' failure to: (1) allege that any Plaintiff redeemed a tax sale certificate owned by any Defendant; (2) make non-conclusory allegations that any Defendant exacted an excessive fee or charge in redeeming a tax sale certificate; or (3) overcome the presumption of validity of any tax sale certificate by pleading with particularity that it was procured by fraud.

**A.   Legal Framework**

Plaintiffs' Third Claim for Relief is for Violation of The New Jersey Tax Sale Law Excessive Fee in the Redemption of a Tax Sale Certificate under N.J.S.A. § 54:5-63.1.   Amended Compl. ¶¶ 279 – 284.   N.J.S.A. § 54:5-63.1 provides, in relevant part, that

> Any holder of a tax sale certificate . . . who knowingly charges or exacts any *fee or charge* in connection with the *redemption* of any tax sale certificate owned by him, in *excess of the amounts permitted by chapter five of Title 54 of the Revised Statutes,* shall forfeit such tax sale certificate to the person who was charged such excessive or unlawful fee and the person paying such unlawful charge shall

35

become vested with all the right, title and interest of such tax sale certificate holder in and to such tax lien.

N.J.S.A. § 54:5-63.1 (emphasis added).

Thus, to state a claim under N.J.S.A. § 54:5-63.1, Plaintiffs must allege that (1) a Defendant "charge[ed] or exact[ed] any fee or charge . . . in excess of the amounts permitted by chapter five of Title 54 of the Revised Statutes" and that (2) the charge was made "in connection with the redemption of any tax sale certificate."  Moreover, NJ Stat Ann § 54:5-52 provides that

> [t]he certificate of sale shall be *presumptive evidence* in all courts in all proceedings by and against the purchaser, his representatives, heirs, and assigns, of the truth of the statements therein, of the title of the purchaser to the land therein described, and the *regularity and validity* of all proceedings had in reference to the sale.  After *two years* from the record of the certificate of sale, no evidence shall be admitted in any court to rebut the presumption, unless the holder thereof shall have *procured it by fraud*, or had previous knowledge that it was *fraudulently made or procured*.

NJ Stat Ann § 54:5-52 (emphasis added).  Thus, in addition to pleading the elements of a violation of N.J.S.A. § 54:5-63.1, Plaintiffs must allege that the tax sale certificates were "procured by fraud."  Plaintiffs have failed on all counts.

### B. **Plaintiffs Have Failed To Allege A Redemption By A Defendant.**

Plaintiffs have failed to adequately allege the redemption by a Defendant of a tax sale certificate relating to any Plaintiff's property.  In Paragraph 9 of the Amended Complaint, Plaintiffs allege in a broad and conclusory fashion that "Plaintiffs and Class members *either* paid or owe Defendants an unlawfully

inflated amount in order to redeem the TSCs associated with their real property."
Amended Compl. ¶ 9 (emphasis added); *see also id.* ¶ 283 (alleging that
Defendants "knowingly demanded, extracted, charged or attempted to charge fees .
. .") (emphasis added).[12]  While Plaintiffs attempt to rescue their claims by adding
what they describe as "exemplar evidence" with respect to auctions in which the
remaining Defendants participated, (*id.* ¶ 112), *none* of the exemplars allege a
redemption, much less describe a fee or charge made in connection with the
redemption that was excessive.  Because there are no non-conclusory allegations of
a "redemption" by a Moving Defendant, Plaintiffs fail to state a claim under
N.J.S.A. § 54:5-63.1.

C.    **Plaintiffs Have Failed To Allege An Excessive Fee Or Charge**

Even if Plaintiffs had alleged redemptions, their claim still must be
dismissed because they fail to adequately allege that any Moving Defendant
charged a fee or charge in excess of those allowed by statute.

N.J.S.A. § 54:5-63.1 relates to fees or charges "in excess of the amounts
permitted by chapter five" of the Tax Sale Law.  N.J.S.A. § 54:5-63.1.  Chapter
Five permits tax sale certificate holders to collect "the sum paid at the sale, with

---

[12] The sole Plaintiff who alleges that it redeemed its tax certificates alleges that the
entity that purchased the certificate was Crusader Servicing Corporation, which has
*settled* with Plaintiffs.  *Id.* ¶¶ 18 – 26 and n.1.  Thus, the sole non-conclusory
allegation in the Complaint regarding redemption relates to an entity that no longer
is a party to this action.

interest from the date of sale at the rate of redemption for which the property was sold," N.J.S.A. § 54:5-58, *i.e.*, the amount and the interest rate shown on the face of the tax sale certificate.   Chapter Five also permits TSC holders to collect "expenses incurred by the purchaser as hereinafter provided, and subsequent municipal liens."   *Id*.   Although the latter charges arise after an auction and thus are not reflected on the face of a tax sale certificate, the Tax Sale Law allows the recovery of such charges if the tax sale certificate holder files an affidavit detailing the amount of any allowable expenditures that were "actually disbursed" by the tax sale certificate holder.[13]

The Amended Complaint has *no allegations* relating to fees or charges permitted by Chapter five.   Nor does the Amended Complaint allege that Moving Defendants charged any interest rates other *than those shown on the face of their tax sale certificates*.   Thus, the Amended Complaint is devoid of factual allegations of any Moving Defendant charging any Plaintiff (or anyone else, for that matter) fees or charges in excess of those allowed by Chapter Five, other than the

---

[13] *See* N.J.S.A. § 54:5-60 (allowing recovery of "subsequent taxes, municipal liens and charges, and interest and costs thereon, actually paid" as reflected in affidavit); § 54:5-61 ("expenses... actually paid" for necessary recording, advertising and service fees); § 54:5-62 ("fees or expenses" must be identified in "affidavits showing the amount or amounts of such expenses actually disbursed or incurred"). Section 54:5-61 also entitles the TSC holder to collect penalties on the principal amount of the TSC.  N.J.S.A. 54:5-61 (2% on principal amounts over $200, 4% on amounts over $5,000, and 6% on amounts over $10,000).

conclusory allegation that they did so. Such conclusory allegations, completely devoid of factual content, fail to meet the requirements of Rule 8, as interpreted by *Twombly* (discussed supra).

To be sure, while Plaintiffs do not allege the redemptions made by Defendants—and for that reason their claim fails—Plaintiffs do allege that Defendants' bid-rigging resulted in Defendants acquiring tax sale certificates with higher interest rates than they would have had the alleged bid rigging not occurred. However, there is nothing in the text of N.J.S.A. § 54:5-63.1 imposing liability for acquiring a tax sale certificate with an inflated rate of interest, which is what Defendants are alleged to have done.

D.  **Plaintiffs Have Failed To Allege Fraud Sufficient To Overcome The Presumption Of Validity**

1.  **Legal Framework**

All of the tax sale certificates at issue in this action were procured more than two years before this action was filed. Amended Compl. ¶ 1 (alleging a class period ending in February 2009). Thus, in order to overcome N.J.S.A. § 54:5-52's presumption of validity, Plaintiffs must allege that the tax sale certificates were "procured by fraud." To allege fraud under § 54:5-52, Plaintiffs must meet the pleading requirements of Rule 9(b) with respect to each named Plaintiff and each Defendant individually. *See Dewey v. Volkswagen AG,* 558 F. Supp. 2d 505, 524 (D.N.J. 2008) ("[C]ommon law fraud claims are, of course, subject to the pleading

requirements of [Rule] 9(b).”); *see also Cmty. Dev.*, 81 A.2d at 15 (explaining that to plead fraud under § 54:5-52, the allegations must satisfy the particularity requirements that apply to “any cause of action the genesis of which is fraud”).

Plaintiffs have failed to adequately allege such fraud.

### 2. Plaintiffs Have Not Alleged That Any Defendant Procured The Tax Sale Certificate On A Plaintiffs’ Property

As an initial matter, Plaintiffs’ claim fails because, as discussed supra, they fail to allege that any Moving Defendant purchased the tax sale certificate on a property owned by one of the Plaintiffs. *A fortiori*, no Moving Defendant procured the tax sale certificate on Plaintiffs’ property by fraud.

### 3. Plaintiffs Have Not Alleged That Any Defendant Procured The Tax Sale Certificate By Fraud

Putting to one side the failure to allege acts by any Moving Defendant in connection with any Plaintiffs’ property, Plaintiffs have failed to make any non-conclusory allegations that any Moving Defendant procured any tax sale certificate by fraud.

### (a) Plaintiffs Have Admitted—And The Court Has Found—That The Alleged Bid-Rigging Conspiracy They Allege In The Amended Complaint Is Not Based On Fraud

When Defendants moved to dismiss the antitrust claims in their earlier Complaint for failure to plead the alleged bid-rigging scheme with particularity, Plaintiffs insisted that they were not alleging a fraudulent scheme. At oral

argument on the motions to dismiss the Complaint, counsel for Plaintiffs stated explicitly that Plaintiffs' "antitrust claim has nothing to do with fraud." (Tr. of October 23, 2013 Argument at 50:20 – 21 (emphasis added).) Instead, Plaintiffs argued "[i]t is not based in any way on fraud. It's based on bid rigging. It's based on an illegal agreement, and it's not based on fraud." *Id.* at 51:1 – 3 (emphasis added.) The Court agreed, denying that portion of Defendants' motion to dismiss that was based on Plaintiffs' failure to plead their antitrust claim with particularity on the ground that bid-rigging, not fraud, was the "basis for" Plaintiffs' claims. *Id.* at 79:4 – 80:16. And, the Court went on to dismiss Plaintiffs' N.J.S.A. § 54:5-63.1 claim on the ground that Plaintiffs had not alleged fraud in procuring tax sale certificates with the required particularity. *Id.* at 86:5 – 87:9.

Having convinced the Court that their antitrust claims have "nothing to do with fraud," Plaintiffs cannot now rely on the facts upon which they base their antitrust claims to prove fraud in the procurement in a tax sale certificate.

**(b)      Plaintiffs Have Not Pleaded With Particularity Any Other Fraud In Connection With The Procurement Of A Tax Sale Certificate**

In their opposition to the motions to dismiss the Complaint, Plaintiffs alleged a different fraud: that Defendants made misrepresentations to tax collectors (which were then allegedly conveyed to delinquent taxpayers), and that Defendants had purchased tax sale certificates "pursuant to" the Tax Sale Law when in fact they had purchased them "in violation of Title 54." Pls.' Opp. at 59 – 60 [Docket

No. 242].  However, despite an opportunity to do so, Plaintiffs have failed to plead the supposed fraud in the Amended Complaint.

Moreover, even if they had alleged such a fraud, the allegations would fail because tax sale certificates do not refer to any representations made by any Moving Defendant.  To the contrary, the only representations on the tax sale certificate (which is signed by the tax collector and notarized) *were made by the tax collector*.[14]  And, of course, any class members who redeemed could not have acted in reliance on them because they had no choice but to pay whatever the tax collector required them to pay.

## III.   PLAINTIFFS' PARASITIC AND INSUFFICIENTLY PLED UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

Plaintiffs' unjust enrichment claim is fatally flawed and should be dismissed for two main reasons.  **First**, this parasitic claim cannot survive where the underlying federal law and state law claims should be dismissed, as is the case here.  If such a claim were allowed to proceed, the Plaintiffs would be able to circumvent the well-defined limits of antitrust restitution.  **Second**, even if the unjust enrichment claim does not rise and fall with the related antitrust counts, it should nonetheless be dismissed because the Plaintiffs have not alleged, and

---

[14] *See id.* Ex. A ("I, Janet E. Kelk, COLLECTOR OF TAXES . . . do hereby certify that . . . at a public sale of lands for delinquent municipal liens, pursuant to the Revised Statutes of New Jersey, 1937, Title 54, Chapter 5 . . . I sold to Crusader Servicing Corporation . . . [certain] land.").

cannot allege, the requisite elements of an unjust enrichment claim under New Jersey law.

The Amended Complaint, at Count Four, generally alleges a claim for unjust enrichment based on "the unlawful conduct described above," *i.e.* the purported violations of The Sherman Act, (Count One), The New Jersey Antitrust Act (Count Two) and The New Jersey Tax Sale Law (Count Three). "Where the unjust enrichment is based upon a predicate wrong, such as a tort, breach of contract or other wrongful conduct such as an antitrust violation, the restitution is known as 'parasitic'." *In re: Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 n.13 (E.D. Pa. 2010). District Courts in this Circuit routinely dismiss parasitic unjust enrichment claims hinging on a showing of unlawful conduct in circumstances when other claims predicated on that same conduct have been eliminated from the case. *See Marchese v. Cablevision Sys. Corp.*, C.A. No. 10-2190, 2011 WL 3022529, *8 (D.N.J. July 21, 2011) (dismissing unjust enrichment claim after finding deficiencies in predicate antitrust claims); *Marchese v. Cablevision Sys. Corp.*, C.A. No. 10-2190, 2011 WL 149917, *6 (D.N.J. Jan. 14, 2011) (same); *In re: Flonase Antitrust Litig.*, 692 F. Supp. 2d at 542 ("Thus, where an antitrust defendant's conduct cannot give rise to liability under state antitrust and consumer protection laws, Plaintiffs should be prohibited from recovery under a claim for unjust enrichment"); *In re: K-Dur Antitrust Litig.*, C.A. No. 01-1652, MDL No.

43

1419, 2008 WL 2660780, *5 (D.N.J. Feb. 28, 2008) (finding plaintiff "cannot use its unjust enrichment claim as a means to pursue damages that are not allowable under" applicable antitrust laws).  Because Plaintiffs' claim for unjust enrichment is predicated on alleged unlawful conduct and because, as discussed at length previously, all such claims based on that same purported conduct are defective, the unjust enrichment claims should likewise be dismissed.

Besides falling as a parasitic cause of action, Plaintiffs' unjust enrichment claim should also be dismissed as insufficiently pled.  Most importantly, Plaintiffs have not alleged, and cannot allege, all of the required elements of an unjust enrichment claim under New Jersey law.

To establish an unjust enrichment claim, a plaintiff must demonstrate both "'that defendant received a benefit and that retention of that benefit without payment would be unjust.'"  *Montich v. Miele USA, Inc.*, 840 F. Supp. 2d 439, 459 (D.N.J. 2012) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 110, 922 A.2d 710 (2007)).  "Further, New Jersey law requires that a plaintiff have conferred a direct benefit on the defendant."  *Id.*  Said another way, "[a] claim for unjust enrichment in New Jersey requires privity between the parties . . . ."  *Id.* at 460.  For that reason, Plaintiffs must allege and prove "a sufficiently direct relationship with the defendant to support the claim."  *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011) (internal quotations and citations omitted).

Interpreting this requirement, courts in this District, including this Court, have dismissed unjust enrichment claims where a direct relationship between the parties is lacking. *See Hammer v. Vital Pharmaceuticals*, C.A. No. 11-4124, 2013 WL 5470007, *2 (D.N.J. Sept. 30, 2013) (Shipp, J.) (noting "that unjust enrichment requires a direct relationship between the parties"); *Weske v. Samsung Elec. Am., Inc.*, C.A. No. 10-4811, 2012 WL 833003, *7 – 8 (D.N.J. Mar. 12, 2012) (dismissing claim where plaintiffs were indirect purchasers with no direct contact with defendant manufacturer); *Glass v. BMW of North Am., LLC*, C.A. No. 10-5259, 2011 WL 6887721, *16 (D.N.J. Dec. 29, 2011) ("When a plaintiff fails to allege a direct relationship, that plaintiff has failed to assert a claim for unjust enrichment, and under those circumstances, dismissal is appropriate"); *Arlandson*, 792 F. Supp. 2d at 712 (dismissing claim where "Plaintiffs have failed to allege a sufficiently direct relationship between themselves and Defendants").

In the Amended Complaint, Plaintiffs allege that their unjust enrichment claim arises from the Defendants' purchase of tax liens at certain specific tax lien auctions. *See, e.g.*, Amended Compl. ¶ 3. Plaintiffs concede—as they must—that Defendants purchased the tax liens at those auctions *from municipalities* and not from the Plaintiffs. *Id.* Accordingly, because Plaintiffs have not pointed to any direct relationship between themselves and Defendants, they have not sufficiently alleged a claim for unjust enrichment. Further, because it is undisputed that the tax

sales occurred by and between the Defendants and the municipalities—and did not directly involve Plaintiffs—the dismissal of the unjust enrichment claim should be made with prejudice. *See Weske*, 2012 WL 833003, at *8 (dismissing claim against manufacturer with prejudice where "further amendment would be futile" because plaintiffs had direct contact only with retailers, not manufacturer).

## IV.    PLAINTIFFS SHOULD NOT HAVE A FURTHER OPPORTUNITY TO RE-PLEAD

Plaintiffs' claims should be dismissed with prejudice. Plaintiffs already have had two chances to amend their complaint and they still have not alleged facts sufficient to state a claim against the Moving Defendants. Enough is enough. Plaintiffs should not be allowed to continue to draw out this litigation in the hope that they can extract settlements from the Moving Defendants whose only wrongdoing was to have participated in an industry where a handful of bad actors broke the rules. Plaintiffs were "put on notice as to the deficiencies in" their "complaint," and were unable "to resolve them." *Krantz .v Prudential Investments Fund Mgt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002). They should not get another bite at the apple. *See Chazanow v. Sussex Bank*, CIV. A. 11-1094 CCC, 2013 WL 4069530 (D.N.J. Aug. 9, 2013) (dismissing claims with prejudice where the plaintiff had "already been granted two opportunities to amend his fraud claim).

## CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that the Court dismiss all claims for relief set forth in the Complaint with prejudice, and grant such other relief as the Court may deem just and proper.

Dated:  March 14, 2014

Respectfully Submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

*/s/* James E. Cecchi
James E. Cecchi
Zachary S. Bower
5 Becker Farm Rd.
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com

*Counsel for Defendants BBX Capital*
*Corporation, Heartwood 55, LLC and*
*Fidelity Tax, LLC*

CONNELL FOLEY LLP

 */s/ Stephen Falanga*
Stephen V. Falanga, Esq.
Christopher M. Hemrick, Esq.
85 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 535-0500
SFalanga@connellfoley.com

*Counsel for Defendants, Gary I. Branse*
*and Michael Deluca*

KROVATIN KLINGEMAN LLC

/s/ Henry E. Klingeman
Henry E. Klingeman
Helen A. Nau
60 Park Place, Suite 1100
Newark, NJ 07102
Tel.: (973) 714-3474
hklingeman@krovatin.com

*Counsel for Defendant David Jelley*

GREENBAUM, ROWE, SMITH &
DAVIS LLP

/s/ Gary S. Wolinetz
Gary K. Wolinetz
Emily Kaller
Metro Corporate Campus One
Woodbridge, NJ 07095-0988
(732) 476-2780 (direct dial)
gwolinetz@greenbaumlaw.com

*Counsel for the PAM Investors and*
*Patrick Caraballese*

47

BELLIN & ASSOCIATES LLC

/s/ Aytan Y. Bellin
Ayan Y. Bellin
85 Miles Avenue
White Plains, NY 10606
Tel: (914) 358-5345
aytan.bellin@bellinlaw.com

SCHLAM STONE & DOLAN LLP

Jeffrey M. Eilender
John M. Lundin
Bradley J. Nash
26 Broadway
New York, New York 10004
Tel: (212) 344-5400
JME@schlamstone.com

*Counsel for Defendant Mooring Tax Asset Group, LLC*

DILWORTH PAXSON LLP

/s/ Jay E. Kagan
Jay E. Kagan
Matthew Faranda-Diedrich
LibertyView
457 Haddonfield Rd., Suite 700
Cherry Hill, NJ 08002
jkagan@dilworthlaw.com
mfd@dilworthlaw.com

*Counsel for: Crestar Capital LLC, CCTS Capital LLC and William S. Green*