UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | : CONSOLIDATED CIVIL CLASS ACTION<br>: NO: 3:12-CV-01893-MAS-TJB |

**CRESTAR CAPITAL, LLC, CCTS CAPITAL, LLC AND WILLIAM S. GREEN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Jay E. Kagan, Esquire
Matthew Faranda-Diedrich, Esquire
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Tel: 215-575-7000
Fax: 215-575-7200
*Attorneys for Crestar Capital, LLC, CCTS Capital, LLC and William S. Green*

Dated: May 16, 2014

116726229_1

I.      **INTRODUCTION**

As set forth in the Memorandum of Law in Further Support of the Moving Defendants' Joint Motion to Dismiss (the "**Joint Brief**"), the Plaintiffs, despite being given several opportunities to do so, have been completely unable to plead sufficient facts to plausibly suggest that any of the defendants joined and participated in a coordinated, wide-ranging and decade-long tax lien conspiracy purportedly spanning the entire state of New Jersey.  Three of these alleged participants, Crestar Capital, LLC, CCTS Capital, LLC and William S. Green (collectively, the "**Crestar Defendants**") have signed on to and support all of the arguments contained in the Joint Brief, most notably those related to the Plaintiffs' failure to plead, as the Supreme Court requires in antitrust cases, "enough factual matter (taken as true) to suggest that an agreement was made." Each of the arguments raised in the Joint Brief apply with even greater force to the Crestar Defendants, who did not purchase their first tax sale certificate ("**TSC**") – or even begin operating their business for that matter – until the last days of the supposed conspiracy, well after any of the Plaintiffs' had their TSCs purchased.  Also, unlike nearly all of the remaining defendants, the Crestar Defendants have not been indicted and are not currently, and have never been, under criminal investigation.  Indeed, when stripped of its boilerplate language, the Amended Complaint's well-pled allegations attempting to link the Crestar Defendants to the conspiracy consist of, in total, the following: (1) a representative of the Crestar Defendants attended a mere two TSC auctions, both of which occurred more than six months *after* any of the exemplar auctions; and (2) certain former employees – each of whom also worked for *other, unrelated companies* during the relevant time periods – have admitted to improperly allocating TSCs at "some" auctions, without any further detail regarding same or on whose behalf they attended those auctions.  Taken together, these sparse allegations fail to plausibly suggest that the Crestar Defendants agreed to join and participate in

the purported conspiracy. For all the foregoing reasons, the time has now come to dismiss the Plaintiffs' claims against the Crestar Defendants, with prejudice.

## II. ARGUMENT

As this Court aptly noted in its decision dismissing the Plaintiffs' Master Class Action Complaint, to survive "[t]he complaint must leave the Court with the plausible and distinct impression that defendants were not "acting independently."[1] Holding Plaintiffs to this pleading standard matters, as a Section 1 antitrust claim is indeed a powerful weapon to brandish at defendants, both in terms of the discovery burden inherently involved in defendant antitrust claims (no matter how baseless) and the threat of joint and several liability (through application of the "late joinder" theory, a theory that the Crestar Defendants dispute[2]) for millions of dollars in alleged damages.

The First Amended Complaint claims that "in the guilty pleas of both Farber and Butler, Farber and Butler expressly admit that while they were President and CEO of "Company-1" [the entities making up the Crestar Defendants], they admit to participating in the conspiracy through February 2009."[3] This is misstatement and mischaracterization of the guilty pleas. Citing back to this Court's prior determination, the Plaintiffs then argue that they have pled a plausible conspiracy claim against the Crestar Defendants because those entities "have had an employee

---

[1]   [Docket at entry no. 309 (Transcript of Proceeding before Honorable Michael A. Shipp dated October 10, 2013 (the "**MTD Hearing Trans.**", 82:22-24].

[2]   As discussed in the Crestar Defendants' Opening Brief, though the Crestar Defendants were not in existence for nearly the entire timeframe of the alleged conspiracy, Plaintiffs have pressed a "late joinder" theory of liability – *i.e.* that one who joins an existing conspiracy is equally liable with the other conspirators for all damages occasioned by the conspiracy. While the Crestar Defendants dispute the applicability of this theory and note that the Third Circuit Court of Appeals has not directly approved of its use, the significant consequence of applying such a theory – which would result in the Crestar Defendants, who were in existence for the last month of a 10 year long conspiracy, to share equal responsibility with all of alleged conspirators – precisely demonstrates why antitrust plaintiffs must plead specific facts to plausibly suggest that a defendant *actually joined* the ongoing conspiracy. *See Ronly, Ltd. v. Feingold*, 1990 WL 187019, *4 (E.D. Pa. Nov. 27, 1990).

[3]   [Amended Complaint at ¶ 143].

plead guilty."[4] This argument distorts what, specifically, Farber and Butler admitted to when pleading their guilt. When the specific language of those pleas is examined and considered, it becomes clear that the Plaintiffs' attempt to link the Crestar Defendants to the conspiracy should be rejected. While it is true that Farber and Butler pled guilty to engaging in a conspiracy, importantly, the guilty pleas made by each gentleman contain far narrower and more equivocal admissions of guilt than the Plaintiffs have alleged.[5]

> Farber's admission of guilt was limited to the following:
>
>> MR. BUGHMAN: Mr. Farber, during *some* or all of the period from approximately beginning of 2005 until approximately February 2009, did you purchase or direct others to purchase municipal tax liens at auctions in New Jersey.
>>
>> THE DEFENDANT: Yes.
>
> Butler's guilty plea qualified his involvement in a similar fashion:
>
>> MR. BUGHMAN: Mr. Butler, during *some* or all of the period from approximately beginning of 2005 until approximately February 2009, did you purchase municipal tax liens at auctions in the State of New Jersey.
>>
>> THE DEFENDANT: Yes, I did.[6]

Far from plausibly establishing that Farber and Butler participated in the alleged conspiracy <u>during their limited time working at the Crestar Defendants</u> (from November of 2008 through February of 2009), the guilty pleas demonstrate, at most, that Farber and Butler purchased TSCs during some portion of a four year period between 2005 and 2009. Contrary to what the First Amended Complaint states, <u>there is absolutely no reference in either of the guilty</u>

---

[4] [Class Plaintiffs' Omnibus Memorandum of Law in Opposition at p. 8].

[5] True and copies of the Transcripts of Guilty Pleas for both Farber and Butler are attached hereto as Exhibits "A" and "B", respectively. The Court may consider these documents in connection with the pending motions to dismiss because those documents are integral to and explicitly relied upon in the Amended Complaint. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 82 n.4 (3d Cir. 2011).

[6] [Exs. A at p. 18 and B at p. 18 (emphasis added to both)].

pleas to an admission of engaging in the conspiracy while being employed with the Crestar Defendants, as opposed to other companies that Farber and Butler owned and/or worked at during the relevant time period.[7] This last point is brought home by the guilty plea transcript for Butler, which includes a plea colloquy for an entity owned by Farber and Butler and completely unrelated to the Crestar Defendants – DSDB LLC.[8] Accordingly, while Plaintiffs – through reference to the guilty pleas – have likely plausibly suggested that Farber and Butler engaged in a conspiracy during *some* period of time on behalf of *some* companies, including at least DSDB LLC, the First Amended Complaint fails to plead sufficient facts indicating that Farber and Butler engaged in such conduct while they were employees of the Crestar Defendants.

Setting aside the Plaintiffs' ill-conceived attempt at guilt by association, as described above, the balance of the allegations in the First Amended Complaint against the Crestar Defendants consist of the following:

- Defendant William Green supposedly knew of and "authorized" participation in the conspiracy;

- Unidentified witnesses purportedly identified Mr. Green "participating in discussions" prior to auctions; and

---

[7] The allegations contained in the criminal informations for Farber and Butler are likewise equivocal and limit any purported involvement to only "certain" TSC auctions during the relevant time period. [*See* Informations of Farber and Butler, true and correct copies of which are attached hereto as Exhibits "C" and "D", respectively, and properly considered by this Court as documents integral to and explicitly relied upon in the Amended Complaint. *See Warren Gen. Hosp.*, 643 F.3d at 82 n.4]. Moreover, while those documents do generally reference "Company-1", which Plaintiffs claim is the Crestar Defendants, the description of the offense portion of the informations does not associate Farber or Butler's conduct with their employment with the Crestar Defendants, as opposed to their employment with any number of their own, separate TSC businesses. [Exs. C and D at ¶ 10].

[8] [Ex. B at pp. 23-36].

4

- Mr. Green and/or other representatives of the Crestar Defendants allegedly attended two TSC auctions during the relevant period, one on December 16, 2008 and one on January 14, 2009.[9]

Addressing each of these allegations in turn, first, the statements regarding Mr. Green's supposed knowledge and authorization have <u>not a single fact</u> supporting them and are, instead, bald assertions and legal conclusions that should not be credited when deciding a motion to dismiss.[10] Next, Plaintiffs fail to identify any of alleged witnesses, nor do they provide any factual details regarding, for example, <u>who</u>, specifically, participated in the discussions, <u>what</u>, specifically, was stated by Mr. Green during those conversations, <u>where</u>, specifically, they took place, <u>when</u>, specifically, the discussions occurred or <u>how</u>, specifically, the meetings came about. Finally, as this Court has already concluded, a defendant's "mere presence at an exemplar auction" does not plausibly allege that it entered into an agreement to rig bids at those auctions.[11] In sum, the allegations of the First Amended Complaint against the Crestar Defendants embody the kind of "ambiguous evidence" that the Court previously found cannot form the basis of a Section 1 antitrust claim.[12] Accordingly, all claims against the Crestar Defendants should be dismissed.

Already provided with three (3) opportunities to pled a cause of action – first in the original, individual complaints, second in the Consolidated Master Class Action Complaint and third in the First Amended Consolidated Master Class Action Complaint – the Plaintiffs have been completely unable to make out a single claim against the Crestar Defendants. Although Plaintiffs generally request leave to amend for a fourth time, they fail to cite any particular ways

---

[9] [Amended Complaint at ¶¶ 143, 145-47].
[10] *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008).
[11] [MTD Hearing Trans. at 83:21-25].
[12] [*Id.* at 82:9-15].

in which they will be able to cure the First Amended Complaint's deficiencies; nor do Plaintiffs point to any specific facts supporting yet another attempt to re-plead its claims against the Crestar Defendants. While the amendment standard under Federal Rule 15 is indeed liberal, it does have its limits. Time and again, the Third Circuit has affirmed District Courts' decisions dismissing complaints with prejudice and denying leave to amend where plaintiffs have not taken advantage of multiple prior opportunities to correct pleading deficiencies, and have not articulated how or why existing failures would be corrected through further amendment.[13]

### III.  CONCLUSION

The First Amended Complaint – the Plaintiffs' now third attempt at pleading a cause of action against the Crestar Defendants – should be their final one. As was the case with each of their previous filings, the First Amended Complaint fails to plausibly allege any specific, tortious conduct by the Crestar Defendants that directly harmed the Plaintiffs. At this point, and for the

---

[13]  *See In re NAHC, Inc. Securities Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (affirming denial of leave to amend original complaint where plaintiff failed to "specify what additional facts, if any, they would plead if given another opportunity to amend their Complaint"); *Krantz v. Prudential Investments Funds Management LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) (affirming denial of leave to amend for a second time where plaintiff on notice, before filing first amendment, that allegations insufficient); *Golod v. Bank of America Corp.*, 403 Fed.Appx. 699, 703, 2010 WL 5065102, *3 (3d Cir. Dec. 13, 2010) (affirming denial of leave to amend for a second time where plaintiff failed to articulate how amendment would include "averments sufficient to nudge her claims across the line from conceivable to plausible").

reasons discussed above, the Court should therefore dismiss the First Amended Complaint as to the Crestar Defendants in its entirety and with prejudice.

        Respectfully Submitted:

/s/ Jay E. Kagan
Jay E. Kagan, Esquire
Matthew Faranda-Diedrich, Esquire
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Tel: 215-575-7000
Fax: 215-575-7200
*Attorneys for Crestar Capital, LLC, CCTS Capital, LLC and William S. Green*

Dated:  May 16, 2014