**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket No. 3:12-CV-01893-MAS-TJB |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>MOVING DEFENDANTS' JOINT MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

I.   PLAINTIFFS LACK STANDING.................................................................3

    A.   Plaintiffs' Implausible Conspiracy Allegations Cannot Save Their
        Claims, Which Allege No Conduct by a Moving Defendant
        Involving Any Plaintiff............................................................................3

    B.   Plaintiffs' Conspiracy Claims are Particularly Implausible
        From an Antitrust Perspective ................................................................8

II.   PLAINTIFFS' ANTITRUST CLAIMS FAIL TO STATE A
     CLAIM UNDER THE RELEVANT PLEADING STANDARD .................10

    A.   Plaintiffs' Claims Are Legally Deficient……………………………11

    B.   The Now Completed Criminal Investigations Cannot Make Up
        For Plaintiffs' Lack of Factual Specificity ...........................................13

III.   N.J.S.A. § 54:5-63.1 DOES NOT RELATE TO – OR PROVIDE
      A REMEDY FOR – BID RIGGING ...........................................................15

     A.   Plaintiffs Fail to Allege That Any Tax Sale Certificate Held by a
         Moving Defendant Was Redeemed …………………………….......16

    B.   Plaintiffs Fail to Allege A Fee or Charge In Excess of the Amounts
        Permitted by Chapter Five of Title 54 of the Revised Statutes..............17

    C.   Plaintiffs Fail Adequately to Plead That the Moving Defendants
        Acquired Tax Sale Certificates Through Fraud ......................................19

IV.   PLAINTIFFS FAIL TO ADDRESS THE DECISIONS FROM THIS
     CIRCUIT DISMISSING SIMILARLY-PLED CLAIMS FOR
     UNJUST ENRICHMENT.............................................................................22

V.   ALL CLAIMS SHOULD BE DISMISSED WITH PREJUDICE AND
     PLAINTIFFS SHOULD NOT BE PERMITTED TO RE-PLEAD
     THE COMPLAINT FOR A FOURTH TIME ................................................24

CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................2, 4, 8, 11

*Bizzarro v. Ocean Cnty.*,
  No. 07-5665, 2014 WL 980659 (D.N.J. Mar. 13, 2014)....................................24

*Crusader Servicing Corp. v. Boyer*,
  No. HNT-F-40780-08 (Ch. Div. July 25, 2013)..........................................17, 19

*Dahl v. Bain Capital Partners, LLC*,
  937 F. Supp. 2d 119 (D. Mass. 2013)................................................10

*Gerlinger v. Amazon.com Inc., Borders Group, Inc.*,
  526 F.3d 1253 (9th Cir. 2008) .......................................................3

*Hinds County v. Wachovia Bank N.A. (In re Mun. Derivatives Antitrust Lit.)*,
  708 F. Supp. 2d 348 (S.D.N.Y. 2010) ...............................................14

*Hinds County v. Wachovia Bank N.A. (In Re Municipal Derivatives Antitrust Litigation)*, 700 F. Supp. 2d 378 (S.D.N.Y. 2010) ............................................13

*Hyland v. Kirkman*,
  204 N.J. Super. 345 (Ch. Div. 1985) ...............................................18

*In re Blood Reagents Antitrust Litig.*,
  756 F. Supp. 2d 623 (E.D. Pa. 2010)................................................15

*In re Ernie Haire Ford, Inc.*,
  459 B.R. 824 (Bankr. M.D. Fl. 2011)................................................13

*In re Graphics Processing Units*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007)..............................................13

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) .......................................................11

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  768 F. Supp. 2d 961 (N.D. Iowa 2011) ..............................................9

iii

*In re Korean Air Lines Co. Antitrust Litig.*,
  2008 U.S. Dist. LEXIS 111722 (C.D. Cal. June 25, 2008) ................................15

*In re Optical Disk Drive Antitrust Litig.*,
  No. 3:10-MD-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ...............9

*In re Schering Plough Corp. Interon/Temodar Consumer Class Action*,
  679 F.3d 235 (3d Cir. 2012) ..............................................................................3

*In re: K-Dur Antitrust Litig.*,
  C.A. No. 01-1652, MDL No. 1419, 2008 WL 2660780 (D. N.J. Feb. 28,
  2008) ...............................................................................................................23

*Kaufman v. Allstate New Jersey Ins. Co.*,
  561 F.3d 144 (3d Cir. 2009) ............................................................................16

*Love v. The Mail on Sunday*,
  No. CV057798ABCPJWX, 2006 WL 4046180 (C.D. Ca. Aug. 15, 2006) .......12

*Minard v. Iazzetti*,
  No. 06-645 (MLC), 2007 WL 4208836 (D.N.J. Nov. 26, 2007) ......................25

*Montich v. Miele USA, Inc.*,
  No. 11-2725, 2013 WL 5523689 (D.N.J. Sept. 30, 2013)..................................24

*Morris v. Philadelphia Hous. Auth.*,
  2011 WL 1661506 (E.D. Pa. Apr. 28, 2011) ......................................................4

*Pietrangelo v. NUI Corp.*,
  No. Civ. 04-3223 (GEB), 2005 WL 1703200 (D.N.J. July 20, 2005) ..............13

*Polanco v. Omnicell, Inc.*,
  --- F. Supp. 2d ----, 2013 WL 6823265 (D.N.J. Dec. 26, 2013).........................4

*Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*,
  2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ......................................................10

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ........................................................................12

*Schwartz v. Avis Rent A Car Sys., LLC*,
  No. 11-4052, 2013 WL 2182078 (D.N.J. May 20, 2013) ..................................24

iv

*Simon v. Cronecker,*
   189 N.J. 304, 915 A.2d 489 (2007) ....................................................15

*Starr v. Sony BMG Music Entm't,*
   592 F.3d 314 (2d Cir. 2010) ..............................................................15

*United States v. Sargent Electric Co.,*
   785 F.2d 1123 (3d Cir. 1986) ......................................................8, 9, 10

*Varsolona v. Breen Capital Servs. Corp.,*
   180 N.J. 605, 853 A.2d 865 (2004) ..................................................16

*W. Va. ex rel. McGraw v. Bank of America, N.A. (In re Mun. Derivatives*
   *Antitrust Litig.),*
   790 F. Supp. 2d 106 (S.D.N.Y. 2011) ..............................................13

*Walsh Secs., Inc. v. Cristo Props. Mgmt.,*
   No. 97-3496, 2009 WL 1883988 (D.N.J. June 30, 2009) ..................25

## STATUTES

N.J.S.A. § 54:5-32 .............................................................................18

N.J.S.A. § 54:5-52 .............................................................18, 20, 21, 22

N.J.S.A. § 54:5-63.1 .....................................................................19, 16

N.J.S.A. § 54:5-89.1 ..........................................................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) .......................................................16, 21, 22

Fed. R. Civ. P. 8(a) ...............................................................3, 12

## PRELIMINARY STATEMENT

The Moving Defendants[1] submit this memorandum in further support of their motion to dismiss Class Plaintiffs' Amended Complaint[2] with prejudice.

As explained in the Opening Brief, this case involves the admitted and wrongful conduct of **certain** actors at **certain** municipal tax sale auctions.  All of these wrongdoers have either been charged or plead guilty, and according to Plaintiffs' own filings, the statute of limitations has run and no further criminal charges will be lodged.  Having settled with the defendants who participated in the auctions where their tax sale certificates were sold, Plaintiffs are now left with claims against parties that had no role in those auctions, and indeed have no connection whatsoever to Plaintiffs or their alleged injuries.  In the absence of any causal connection between Plaintiffs' injuries and the conduct of the Moving Defendants, Plaintiffs cannot establish the "irreducible constitutional minimum" of standing to bring claims against the Moving Defendants.  Nor can Plaintiffs

---

[1] The Moving Defendants are:  the Bank Atlantic Defendants (BBX Capital Corp., Fidelity Tax, LLC, Heartwood 55, LLC, Michael G. Deluca, Gary I. Branse, and David Jelley), the PAM Defendants (PAM Investors and Patrick Caraballese); the Crestar Defendants (Crestar Capital LLC, CCTS Capital LLC and William S. Green); and Mooring Tax Asset Group, LLC.

[2] Plaintiffs filed their original complaint in the Superior Court of New Jersey, Chancery Division, which was removed to this Court in March 2012.  Plaintiffs subsequently filed their Master Consolidated Complaint on December 21, 2012.  Accordingly, this is the **third** complaint they have filed in this action.

establish a basis for standing by the mere assertion that their injuries are traceable to an alleged state-wide "conspiracy," linking together many thousands of separate municipal tax auctions over more than a decade.   The Amended Complaint's conclusory allegations regarding the supposed temporal and geographic scope of the alleged conspiracy are implausible, and fail the basic requirements of *Twombly* and its progeny.

The Amended Complaint must be dismissed for the additional reason that it fails to state a claim under the relevant pleading standards.   Plaintiffs' opposition does nothing to bolster the generic and repetitious allegations of their Amended Complaint, and Plaintiffs' strategy of stating they have provided the necessary specificity is easily discounted when their actual allegations are examined. Plaintiffs' Opposition, which is not materially or substantively different than Plaintiffs' earlier attempts to argue that they have provided the necessary specificity, remains insufficient.   The fact remains that the Amended Complaint still fails to provide any meaningful specificity or to accurately detail what the Moving Defendants allegedly did, as opposed to what those who have pled guilty admitted to doing.

Further, as explained in the opening brief, common sense, which is the touchstone of plausibility, implies that if the Moving Defendants were so intertwined in such a vast conspiracy, Plaintiffs' access to all the information

provided by the cooperating witnesses should have provided them with the actual

details of at least a single tax sale certificate purchased by the Moving Defendants.

The absence of any of such factual detail is illustrative of Plaintiffs' wholesale

reliance on conclusory statements.  In sum, despite Plaintiffs' suggestions to the

contrary, merely listing exemplar auctions still provides no specificity other than to

illustrate what were fully legal acts—some of the Moving Defendants attended

some tax sale auctions.  And because the Court's previous conclusion that "mere

presence" at an exemplar auction does not meet Rule 8(a)'s requirements remains

applicable, the Amended Complaint against the Moving Defendants should again

be dismissed, this time with prejudice.

## I.   PLAINTIFFS LACK STANDING.

### A.   Plaintiffs' Implausible Conspiracy Allegations Cannot Save Their Claims, Which Allege no Conduct by a Moving Defendant Involving Any Plaintiff.

Plaintiffs fail to show that they have standing to assert claims against the

Moving Defendants, none of whom did anything affecting Plaintiffs.[3]  Plaintiffs

---

[3] In arguing that "this Court has already rejected Moving Defendants' standing argument," Opp'n at 37, Plaintiffs confuse the Article III standing argument in this motion to dismiss with the separate **antitrust** standing argument in the prior motion to dismiss.  Opp'n at 37 – 38.  "**Antitrust standing is distinct from Article III standing**."  *Gerlinger v. Amazon.com Inc., Borders Group, Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008).  Article III standing concerns the court's subject matter jurisdiction, and requires, at a minimum, "a causal connection between the injury and the conduct" of the defendant.  *In re Schering Plough Corp. Interon/Temodar Consumer Class Action*, 679 F.3d 235, 244 (3d Cir. 2012).

3

concede that they "do not allege that any Moving Defendants purchased Plaintiffs' liens, or were present at the auctions at which Plaintiffs' liens were purchased." Opp'n at 38.  Nor do they dispute that a "plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant." *Polanco v. Omnicell, Inc.*, ---F. Supp. 2d ----, 2013 WL 6823265, at *9 (D.N.J. Dec. 26, 2013) (citing *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083, 1086 n.18 (3d Cir.1975)).

Plaintiffs attempt to rely on the axiom that "each member of a conspiracy is jointly and severally liable to all plaintiffs for all harm caused by the conspiracy" to salvage their claims.  Opp'n at 38 – 40.  However, "[a] mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the pleading requirements for [facts to support] a conspiracy claim." *Morris v. Philadelphia Hous. Auth.*, 2011 WL 1661506, at *5 (E.D. Pa. Apr. 28, 2011) (alteration in original) (dismissing conspiracy claim).   Because Plaintiff's conclusory allegations regarding the conspiracy's temporal and geographic scope are implausible, they fail the basic requirements of *Twombly* and its progeny.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007).

As alleged in the Amended Complaint, "[e]ach of New Jersey's **566** municipalities must hold auctions for outstanding liens on real property at least **once a year**."  Amended Compl. ¶ 95 (emphasis added).  Each such auction is a

4

**separate** and **independent** event.    Because Plaintiffs allege an eleven-year conspiracy, *id.* ¶ 251, they allege a conspiracy involving approximately **6,226 auctions**.

The result of an auction in one of New Jersey's 566 municipalities has no effect on the results of the auction in any other municipalities.  Similarly, the outcome of a municipality's auction in one year has no effect on the outcome of its auction the next.  Under Plaintiffs' theory, a person who agreed to rig the bidding in **one** of the over 6,000 auctions at issue is liable for any bid-rigging done by anyone else at **all** of the other over 6,000 auctions.  This makes no sense.  And it is not the law.

**First**, as Plaintiffs themselves concede when attempting to explain away the fact that the guilty pleas upon which they rely related only to "certain auctions," a "Defendant . . . **could not possibly** have attended all of the tax lien auctions during the years that Defendant was involved in the conspiracy."  Opp'n at 23–24 (emphasis added).  Given that it was impossible for the Moving Defendants to have attended all of the auctions at issue—or even most of them—it is beyond implausible that the Moving Defendants (or anyone else for that matter) entered into a conspiracy involving all of the over 6,000 auctions at issue in this action.

The facts that Plaintiffs do allege point to the obvious:  the persons who pled guilty to bid-rigging at New Jersey TSC auctions engaged in not one overarching

conspiracy but in a handful of conspiracies to bid-rig **certain** auctions. Plaintiffs' admission that the pleas do not describe the conspiracy itself, but rather that the defendant pleaded with respect to only **certain** auctions, Opp'n at 24, means just that. The allocutions of those Defendants who pled guilty show that those defendants conspired to bid-rig **certain—not all**—auctions.

**Second**, the Amended Complaint is silent on how such a conspiracy could be created, managed or enforced. Plaintiffs offer five bullet points which they claim demonstrate the plausibility of the conspiracy. Opp'n at 20–22; *see also* Opp'n at 26–36. These arguments fall far short of the mark.

The first bullet point merely lists the entities or individuals whom Plaintiffs claim participated in the conspiracy. The second explains the NJ TSC auction process generally and says nothing about the Moving Defendants.

The third bullet fails to show how the Amended Complaint presents the "specific mechanics of how the conspiracy operated." Opp'n at 21. Plaintiffs allege that information regarding each auction was obtained by Defendants before the auction, but this information was available to the public, and would be necessary for anyone attending an auction to obtain in advance. Plaintiffs argue that the Amended Complaint details how the Moving Defendants used this public information to create and maintain bid books, which purportedly documented the illegal allocation of the TSCs. It does not. The Amended Complaint contains

conclusory statements about the Defendants as a group, but has no specific allegations regarding any of the Moving Defendants' bid books, or any information allegedly maintained in them. Amended Compl. ¶¶ 100–108.

Further, Plaintiffs say nothing regarding how the Moving Defendants coordinated and policed the large number of potential bidders who attended auctions in ever-changing combinations, and it is implausible that they could have done so, particularly given the non-existent barriers to entry into the TSC auction market, as anyone can participate in an auction. There are no non-conclusory allegations regarding how the Moving Defendants: (1) prevented members of the public from bidding on the liens they allegedly allocated among themselves; (2) knew which other Defendants would be attending which auctions, much less how Defendants made agreements from one auction to another; or (3) maintained their agreements at many thousands of separate auctions over an eleven-year period. Plaintiffs misconstrue the point regarding the number of Defendants, and the role of each Defendant Group. Opp'n at 26–27. It is not the number of Defendants on its own that is important, but rather the lack of allegations as to each of the Moving Defendants that is fatal to Plaintiffs' claims.

Plaintiffs' fourth bullet point—*how* Defendants allocated TSCs—relies entirely on a DOJ press release regarding the indictments. Opp'n at 22 n.70; Amended Compl. ¶ 246. But those are allegations against other Defendants who

7

have admitted conspiring at certain auctions, not the Moving Defendants. Plaintiffs' fifth bullet point cites to their exemplar auctions, but these exemplar auctions contain no factual specificity regarding the Moving Defendants, and at any rate, do not save their overarching conspiracy theory.

Plaintiffs' standing argument is even weaker for their Tax Sale Law claims. The conspiracy Plaintiffs allege is for **bid rigging, not tax sale certificate redemption**. *See* Amended Compl. ¶¶ 100 – 112. The Complaint does not allege the Moving Defendants entered into any agreements with respect to **redeeming** the tax sale certificates they purchased; it is implausible that they did so. *Twombly*, 550 U.S. at 570. Plaintiffs cannot bootstrap the single redemption they do allege, because it was made by a settling defendant.

## B.   Plaintiffs' Conspiracy Claims are Particularly Implausible from an Antitrust Perspective.

Plaintiffs' claims are particularly implausible as antitrust claims. Each auction—which was separate in time, municipality and outcome—is a separate market. An agreement to rig the bidding at one auction is at best a contract, combination or conspiracy to monopolize **that auction**, but no other. As the Third Circuit held in *United States v. Sargent Electric Co.*, 785 F.2d 1123 (3d Cir. 1986)

> An agreement among persons who are **not actual or potential competitors in a relevant market** is for Sherman Act purposes *brutum fulmen*. An agreement "to rig bids wherever and whenever possible" is **meaningless** for Sherman Act purposes unless there are in the **real world** of the marketplace some "whens" and "wheres."

8

*Id.* at 1127 (emphasis added).

In their opposition, Plaintiffs were unable to distinguish *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 979 (N.D. Iowa 2011), which rejected the overarching conspiracy approach Plaintiffs advance here.[4]  Moreover, this case is on all fours with the Third Circuit decision in *Sargent Electric*, which held that separate conspiracies to rig bids at different industrial facilities in Pennsylvania were not also a single antitrust conspiracy merely because a core group of defendants conspired with different subgroups of defendants to eliminate competitive bidding at each of the facilities.  *Sargent Electric Co.*, 785 F.2d at 1130–1131.

Many of the factors contributing to the *Sargent Electric* court's conclusion that there were separate offenses rather than a single conspiracy exist here, including: that the participants in the different bid lists were not identical; the absence of centralized control; separate bid-rigging meetings were held with respect to each facility; the allocation of business among the bid-riggers was made on a facility-by-facility basis; not all the conspiring personnel knew each other;

---

[4] *See also In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) (dismissing complaint and holding that allegations that bids at three auctions were rigged are "a far cry from establishing plausibility for a broad six year continuing agreement among all defendants to fix the prices of all ODDs sold through innumerable other channels . . . .  Further allegations of fact . . . would be required to cross the line into the realm of the plausible").

and the bid-rigging commenced and ended at each facility at different times. *Id.* Moreover, here, the issue is not a handful of different industrial facilities, but auctions at **566** independent municipalities over an **eleven-year** time span.[5]

In sum, because Plaintiffs have failed to plead a plausible conspiracy connecting their alleged injuries to any conduct of the Moving Defendants, their Amended Complaint must be dismissed for lack of standing.

## II.   PLAINTIFFS' ANTITRUST CLAIMS FAIL TO STATE A CLAIM UNDER THE RELEVANT PLEADING STANDARD.

Plaintiffs' opposition fails to explain why the deficiencies in their antitrust claims should be ignored.  Rather, Plaintiffs summarize the conclusory allegations from the exemplar auctions that consume 66 pages of their Amended Complaint, Opp'n at 7–13, bring up again the guilty pleas of other Defendants, *id.* at 14–15, and then rehash the same arguments that the Court rejected when dismissing their

---

[5]  *See also Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) report and recommendation adopted, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) (citing *Sargent Electric* and dismissing an overarching conspiracy claim, holding "the plaintiffs have not provided the court with anything more than the overlap of some of the sixty-five defendants in some of the ten alleged local conspiracies . . . . These defendants were involved in **multiple conspiracies** at **different times** in **different regions** and there is no basis for concluding that they were part of a single, common and continuing objective of fixing, maintaining and establishing prices to suppress and eliminate competition in the freight forwarding industry") (internal quotation marks and citations omitted) (emphasis added); *Dahl v. Bain Capital Partners, LLC*, 937 F. Supp. 2d 119, 136-37 (D. Mass. 2013) (rejecting overarching conspiracy theory and finding a **kaleidoscope of interactions among an ever-rotating, overlapping cast of Defendants**") (emphasis added).

10

prior Complaint.  Indeed, for all of the ersatz specificity in the dozens of pages devoted to the exemplar auctions, the Amended Complaint still fails plausibly to allege antitrust claims against the Moving Defendants.  Plaintiffs do not provide even the most basic of details, such as the interest rates on the TSCs they purchased.  Thus, Plaintiffs fail to show that their "[f]actual allegations" are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### A.    **Plaintiffs' Claims Are Legally Deficient.**

Plaintiffs' **non-conclusory** allegations are that the Moving Defendants attended some auctions where other Defendants, who have pled guilty, were also present.  The oft repeated statement that the Moving Defendants "colluded" is the epitome of a legal conclusion that is insufficient under *Twombly*.  Moving Defendants do not, as Plaintiffs suggest, contend that Plaintiffs must allege facts as if they were "actual observers" of the alleged conspiracy.  Opp'n at 16–19.  Rather, Moving Defendants' argument that Plaintiffs must provide some factual detail simply relies on *Twombly*'s mandate that courts should "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Twombly*, 550 at558-59 (quotations omitted); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) ("Plaintiffs' obligation to show the existence of a horizontal agreement is not only an ultimate

11

burden of proof but also bears on their pleadings.")  It is also significant when testing the sufficiency of this pleading that Plaintiffs have had three attempts, and, moreover, a direct window into the alleged misconduct by virtue of their access to the defendants who have settled.  One would think that with such cooperation Plaintiffs could do better than the superficial "specificity" trumpeted in their current pleading.

Plaintiffs are wrong in arguing that the Amended Complaint provides enough factual detail to put the Moving Defendants on "'fair notice' of plaintiffs' claims."  Opp'n at 16.  As explained in the opening brief, and not rebutted by Plaintiffs, the Amended Complaint fails to provide any factual notice to the Moving Defendants of their alleged wrongdoing, such as: (1) who was present at the auction where the Moving Defendants are alleged to have colluded; (2) the interest rates for *any* of the TSCs purchased by any of the Moving Defendants; (3) whether all the TSCs at the example auctions were purchased by alleged co-conspirators; (4) how the liens at any specific auction were allocated; or (5) **any factual details whatsoever** regarding the alleged "discussions" and "understandings" by which the Moving Defendants allocated liens prior to auctions.  Plaintiffs have therefore failed to meet the "fair notice" standard, and the

Amended Complaint does not meet Rule 8(a)'s requirement that they "answer the basic questions" of who, did what, to whom (or with whom), where, and when?[6]

**B.     The Now Completed Criminal Investigations Cannot Make Up For Plaintiffs' Lack of Factual Specificity.**

"Even where some competitors have admitted" to violating the antitrust laws, "it is not reasonable to infer that" other defendants "had done likewise." *In re Graphics Processing Units*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007). Plaintiffs' reliance on DOJ investigations of bid-rigging and the guilty pleas entered by certain other Defendants, Opp'n at 36–37, does not salvage their claims. While the cases cited by Plaintiffs provide that government investigations **may** be used to bolster the plausibility of § 1 claims, Plaintiffs' reliance on government investigations and guilty pleas does not cure a failure to "independent[ly] proffer [] facts which would tend to support the illegal conduct alleged." *W. Va. ex rel.*

---

[6] Plaintiffs' arguments that their Amended Complaint must be "viewed as a whole," Opp'n at 19–20, misses the mark. They ignore that their pleading burden is not satisfied where a complaint uses either "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also, e.g.*, *Love v. The Mail on Sunday*, No. CV057798ABCPJWX, 2006 WL 4046180, at *15 (C.D. Ca. Aug. 15, 2006) (dismissing conspiracy claim where, among other things, complaint failed "to differentiate among the various different defendants and their alleged roles"). Collective allegations do not provide "a reasonable basis from which [the court] can infer [a] defendant's liability," *In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 835 (Bankr. M.D. Fl. 2011), and "are so general that they fail to put each defendant on notice of the claims against them." *Pietrangelo v. NUI Corp.*, No. Civ. 04-3223 (GEB), 2005 WL 1703200, at *10 (D.N.J. July 20, 2005).

*McGraw v. Bank of America, N.A. (In re Mun. Derivatives Antitrust Litig.)*, 790 F. Supp. 2d 106, 115 (S.D.N.Y. 2011) (citing *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1011 (E.D. Mich. 2010)).

Plaintiffs' reliance upon *Hinds County v. Wachovia Bank N.A. (In Re Municipal Derivatives Antitrust Litigation)*, 700 F. Supp. 2d 378 (S.D.N.Y. 2010), is misplaced because after the District Court's denial of the defendants' motion to dismiss, the same court, in a subsequent proceeding, granted in part the defendants' motion to dismiss a different complaint filed by eleven California municipalities ("California plaintiffs"). *Hinds County v. Wachovia Bank N.A. (In re Mun. Derivatives Antitrust Lit.)*, 708 F. Supp. 2d 348, 353 (S.D.N.Y. 2010).   In granting partial dismissal of the California plaintiffs' complaint, the District Court noted that the California plaintiffs relied on the same antitrust investigations undertaken by the DOJ, the same confidential witnesses and indictments filed by the DOJ as in the prior proceeding.  *Id.* at 356.  However, in the plausibility analysis, the court found dismissal of claims against certain defendants proper because "[a]lthough government investigations may bolster § 1 allegations, they may not constitute the entirety of non-conclusory allegations against § 1 defendants."  *Id.* at 361, 362.

Where the California plaintiffs specifically identified transactions in which a particular defendant was involved and alleged misconduct with specific bidding spreads, such allegations were bolstered by government investigations.  *Id.* at 362-

14

63.  But where, as here, the plaintiffs relied on nothing more than "government investigations and conclusory allegations based on [a specific defendant's] mere participation in the . . . [relevant] market," the court found that a viable § 1 claim could not be stated and dismissed the complaint as to those defendants.  *Id.* at 362.[7]

## III.   N.J.S.A. § 54:5-63.1 DOES NOT RELATE TO—OR PROVIDE A REMEDY FOR—BID RIGGING.

The Court should reject Plaintiffs' argument that a statute about tax sale certificate **redemption** creates a cause of action for alleged bid rigging in the **purchase** of those certificates.  Plaintiffs ask the Court to ignore what the Tax Sale Law says and instead look to what they claim is its purpose.  Opp'n at 46–50, 52–

---

[7] The other cases Plaintiffs rely on are unhelpful to them because none of these cases support the proposition that a government investigation coupled with conclusory allegations, without more, is sufficient to survive a motion to dismiss. See, e.g., *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 631-32 (E.D. Pa. 2010) (giving weight to government investigations in plausibility analysis with respect to defendants for whom plaintiffs had alleged sufficient facts to support a conspiracy claim, but omitting government investigations in analysis of defendant for whom plaintiffs' allegations of conspiracy were conclusory); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 324-25 (2d Cir. 2010) (considering pending DOJ investigations as one of six factors that support conclusion that parallel conduct of defendants was the result of a conspiracy as opposed to independent action); *In re Korean Air Lines Co. Antitrust Litig.*, 2008 U.S. Dist. LEXIS 111722, *33-34 (C.D. Cal. June 25, 2008) (noting that government investigations and one defendant's guilty plea alone insufficient to establish a conspiracy, but "nudged" plaintiffs' allegations "across the line from conceivable to plausible" when coupled with other specific allegations).

54, 58.[8]  They are reduced to this argument because the **text** of neither the Tax Sale Law nor Fed. R. Civ. P. 9(b) supports their claim.  But "[i]n interpreting a statute, the Court looks first to the statute's plain meaning and, if the statutory language is clear and unambiguous"—as it is here—the inquiry **comes to an end**." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 155, (3d Cir. 2009) (citations omitted) (emphasis added).

### A. Plaintiffs Fail to Allege That Any Tax Sale Certificate Held by a Moving Defendant Was Redeemed

N.J.S.A. § 54:5-63.1 provides a cause of action when a "holder of a tax sale certificate . . . who knowingly charges or exacts any fee or charge **in connection with the redemption** of any tax sale certificate owned by him, in **excess of the amounts permitted by chapter five of Title 54 of the Revised Statutes**."

---

[8] Plaintiffs also ignore that in *Simon v. Cronecker*, 189 N.J. 304, 331, 915 A.2d 489, 505 (2007), which they cite for the proposition that the purpose of the Tax Sale Law is to protect property owners, Opp'n at 47, the New Jersey Supreme Court also held that "the **primary goal** of the Tax Sale Law is to **encourage the sale of tax certificates**."  (Emphasis added).  Indeed, they cite *Simon* for the proposition that the Legislature enacted N.J.S.A. § 54:5-89.1 to protect homeowners from "intermeddlers," like the Moving Defendants. Opp'n at 49–50. But this gets *Simon* exactly backwards.  The intermeddlers *Simon* refers to were third-party investors who sought to purchase property from homeowners after the owner of the tax sale certificate had filed for foreclosure.  *Simon*, 189 N.J. at 325–26, 915 A.2d at 501.  *See also Varsolona v. Breen Capital Servs. Corp.*, 180 N.J. 605, 621, 853 A.2d 865, 875 (2004) (cited by Plaintiffs but actually holding that "[t]he **primary intent** of the" Tax Sale Law "is to enable governments to realize taxes by **returning property to the paying tax rolls without first expending money to foreclose** or bar the equity of redemption.") (Internal quotations omitted) (emphasis added).

N.J.S.A. § 54:5-63.1 (emphasis added).  Plaintiffs ask the Court to ignore § 54:5-63.1's requirement that there be a **redemption**.

Notwithstanding that this is Plaintiffs' third try at pleading a viable claim against the Moving Defendants, the Amended Complaint still fails to allege the redemption of **any** Tax Sale Certificate held by a Moving Defendant.  Thus, the distinction Plaintiffs attempt to draw between charging a fee and exacting one, Opp'n at 52, is meaningless because they have not alleged **any redemptions** whatsoever—whether involving one of the named Plaintiffs or any other specific class member—in which a Moving Defendant either charged or exacted a fee.

Plaintiffs cite to *Crusader Servicing Corp. v. Boyer*, No. HNT-F-40780-08 (Ch. Div. July 25, 2013), an unpublished state trial court decision relating to one of the settling defendants and upholding a N.J.S.A. § 54:5-63.1 claim, in support of their arguments.  *Crusader* does nothing to cure Plaintiffs' failure to allege a redemption by one of the Moving Defendants.  In *Crusader*, the court addressed a situation where Crusader—one of the settling defendants—demanded that a homeowner redeem the tax sale certificate or be foreclosed upon.  *Id.* at 1.  Thus, it was a case about a redemption and whether the payments charged by Crusader in connection with that **redemption** were excessive or unlawful for purposes of N.J.S.A. § 54:5-63.1.  The *Crusader* court **did not** hold was that there could be liability under N.J.S.A. § 54:5-63.1 **in the absence of a redemption**.

17

**B.**   **Plaintiffs Fail to Allege A Fee or Charge In Excess of the Amounts Permitted by Chapter Five of Title 54 of the Revised Statutes.**

Plaintiffs' also fail to allege that a Moving Defendant **charged or exacted a fee** in excess of those permitted by the Tax Sale Law.  However, a defendant is liable under N.J.S.A. § 54:5-63.1 only when it "charges or exacts" a "fee or charge . . . in **excess of the amounts permitted by chapter five of Title 54 of the Revised Statutes**."  (Emphasis added).

Plaintiffs argue that if a defendant engages in bid rigging and gets a higher interest rate than it would in the absence of bid rigging, the resulting interest rate is in excess of the amounts permitted by the Tax Sale Law.  Opp'n at 51.  What Plaintiffs have not done is come up with any language in the Tax Sale Law that supports this argument.  The best Plaintiffs can do is cite cases having nothing to do with N.J.S.A. § 54:5-63.1 that stand for the proposition that in different circumstances and under other statutes, property owners have standing to bring actions relating to liens on their property.  Opp'n at 53 – 54.[9]  Whatever those cases may stand for, they do not, and cannot, authorize this Court to re-write the

---

[9] Plaintiffs cite *Hyland v. Kirkman*, 204 N.J. Super. 345 (Ch. Div. 1985), which does relate to tax sale certificates, but inexplicably cite it for the proposition that the Moving Defendants are liable for charging excessive fees even though there is no allegation that any Moving Defendant ever charged or exacted a fee not allowed by statute when it related to the fraud exception of N.J.S.A. § 54:5-52.  In *Hyland*, the plaintiff alleged fraud in procurement of the tax sale certificate (a sham transaction to avoid paying taxes).  There are no such allegations here.

text of N.J.S.A. § 54:5-63.1, as Plaintiffs appear to request.  Plaintiffs also cite a

snippet from N.J.S.A. § 54:5-32 containing the phrase "subject to redemption at

the lowest rate of interest bid at the sale."  Opp'n at 49, 50 – 51.  But N.J.S.A.

§ 54:5-32 relates neither to redemptions nor the fees charged homeowners, it

relates to the tax sale certificate **auctions**, and provides that the certificate will be

sold at the lowest rate of interest bid at the sale.  There is no suggestion that is not

exactly what happened here, and that the rate at which the tax sale certificates were

purchased at auction is the rate at which they would be redeemed.[10]

   With respect to the decision of the *Crusader* court that engaging in bid

rigging to obtain a tax sale certificate at an interest rate higher than would

otherwise be obtainable stated a claim under N.J.S.A. § 54:5-63.1 because it was

"unlawfully obtained and artificially inflated," that decision ignores, as do

Plaintiffs, what N.J.S.A. § 54:5-63.1 actually says.  N.J.S.A. § 54:5-63.1 does not

prohibit "unlawfully" obtaining tax sale certificates.  It does not prohibit inflating

---

[10] Plaintiffs' argument (Opp'n at 52 – 53) that N.J.S.A. § 54:5-63.1's evidentiary
presumption that "[t]he collection of any excessive charge or fee in connection
with the redemption or assignment of a tax sale certificate shall be deemed *prima
facie* evidence of the fact that such tax sale certificate holder did knowingly charge
and exact such excessive fee or charge" supports their argument makes no sense.
This provision relates to *scienter*.  It is an evidentiary presumption that if a tax sale
certificate holder **collects** an excessive fee or charge, it did so **knowing** that it was
an excessive fee or charge.  But the Moving Defendants did not collect **any** fee or
charge from any Plaintiff or that any Defendant exacted or charged anything in
excess of the interest rate on the face of the tax sale certificate.

the interest rate on tax sale certificates.  It prohibits unlawful fees **only** to the extent that it makes it unlawful to charge a fee not "**permitted by chapter five of Title 54** of the Revised Statutes."  (Emphasis added).  Plaintiffs cannot point to any such fees.

### C.   Plaintiffs Fail Adequately to Plead That the Moving Defendants Acquired Tax Sale Certificates Through Fraud.

Plaintiffs essentially admit that they have not pleaded "the date, time and place of the alleged fraud" in order to overcome N.J.S.A. § 54:5-52's presumption of validity.  Opp'n at 57–60.  Instead, they devote their argument to explaining why—once again—the rules should not apply to them.

As an initial matter, Plaintiffs have no response to the fact that at oral argument of the motions to dismiss the complaint, counsel for Plaintiffs stated explicitly that Plaintiff's "antitrust claim has **nothing to do with fraud**" "**is not based in any way on fraud**.  It's based on bid rigging.  It's based on an illegal agreement, and **it's not based on fraud**."  Tr. of October 23, 2013 Argument at 50:20–21, 51:1–3 (emphasis added). The fraud that Plaintiffs alleged in connection with tax sale certificates was that Defendants made misrepresentations to tax collectors (which were then allegedly conveyed to delinquent taxpayers) that Defendants had purchased tax sale certificates "pursuant to" the Tax Sale Law when in fact they had purchased them "in violation of Title 54."  Pls.' Opp. at 59–60 [Dkt. No. 242].  However, despite an opportunity to do so, Plaintiffs have **failed**

**to plead this supposed fraud** in the Amended Complaint, much less plead it with particularity.  Instead, Plaintiffs now argue that their antitrust allegations—which they vehemently denied were based on fraud so that they could survive the Moving Defendants' prior motion to dismiss—now form the basis for an allegation of fraud under N.J.S.A. § 54:5-52.  The Court should reject this slight-of-hand.

Plaintiffs argue that Rule 9(b) should not apply to them because "key factual information remains within the defendant's control."  Opp'n at 57–59.  This argument is contradicted by Plaintiffs' own allegations that "[s]ince the inception of this civil litigation, Plaintiffs have settled with 14 Defendant groups" and that "**[n]umerous** conspiracy participants who are cooperating with Plaintiffs' Counsel have provided **substantial** information concerning their participation in the conspiracy, as well as the participation of non-settling Defendants."  Amended Compl. ¶ 9.  Despite the help of those "numerous" alleged co-conspirators, Plaintiffs have not been able to come up with any factual allegations of fraud—as opposed to bid-rigging, which they have insisted to the Court **is not fraud**—in connection with the purchase of a single tax sale certificate.

At the end, Plaintiffs are left with arguing that even though in order to save their antitrust claims on the last motion to dismiss, they insisted that their bid-rigging claims were not based on fraud, the Court should now hold that their bid-rigging claims, which if proved, would show that the interest rate the Moving

21

Defendants obtained on tax sale certificates were obtained unlawfully, constitute allegations of fraud for purposes of the presumption of validity N.J.S.A. § 54:5-52. Opp'n at 59–60.  The problem with this is of course that N.J.S.A. § 54:5-52 does not refer to unlawfully obtained tax sale certificates.  Instead, it provides that "[a]fter two years from the record of the certificate of sale, **no evidence shall be admitted** in any court to rebut the presumption, unless the holder thereof shall have procured it by **fraud**, or had previous knowledge that it was **fraudulently made or procured**."  N.J.S.A. § 54:5-52 (emphasis added).  The law explicitly and unambiguously requires proof of "fraud," not some other unlawful conduct.  In light of Plaintiffs' insistence that bid-rigging was not fraud is what saved their antitrust claims from dismissal under Rule 9(b) on the last motion to dismiss, they are estopped from now arguing that bid-rigging is fraud for purposes of N.J.S.A. § 54:5-52.

## IV.  PLAINTIFFS FAIL TO ADDRESS THE DECISIONS FROM THIS CIRCUIT DISMISSING SIMILARLY-PLED CLAIMS FOR UNJUST ENRICHMENT

As set forth in the Opening Brief, Plaintiffs' unjust enrichment claim cannot survive because it is a "parasitic" claim based on failed federal law and state law causes of action and because Plaintiff have not and cannot plead an essential element of the claim: a direct relationship between themselves and the Moving Defendants.  On the first point, the Opening Brief cited several recent decisions

from District Courts in this Circuit dismissing unjust enrichment claims where underlying antitrust claims had been eliminated from the case.  Opening Brief at 43.  In opposition, Plaintiffs fail to so much as even mention any of these decisions, let alone argue that they were somehow incorrectly decided.  The reasoning of the decisions is sound and should be followed by the Court.

Plaintiffs instead argue that the unjust enrichment claim should remain in this case because it seeks the remedy of a constructive trust, a remedy which is not available under antitrust law.  Opp'n at 61–62.  Plaintiffs ignore that it is contrary to the underlying rationale for dismissing "parasitic" claims in the first place, which is that a plaintiff "cannot use its unjust enrichment claim as a means to pursue damages that are not allowable under" applicable antitrust laws.  *See In re: K-Dur Antitrust Litig.*, C.A. No. 01-1652, MDL No. 1419, 2008 WL 2660780, *5 (D.N.J. Feb. 28, 2008).

Plaintiffs also fail to allege an element of the *prima facie* case—the existence of a direct relationship between Plaintiffs and the Moving Defendants.  Plaintiffs have not denied the complete *indirectness* of their interactions with the Moving Defendants.  Instead, Plaintiffs' response relies on the bald proposition— not supported by a single citation to any case law—that because an unjust enrichment claim is equitable in nature and because the Moving Defendants are purported members of a conspiracy that allegedly damaged Plaintiffs, the Moving

23

Defendants "have at least 'some direct relationship'" with Plaintiffs.  Plaintiffs ignore that courts in this District, including this Court, enforce the *prima facie* pleading requirement and dismiss unjust enrichment claims in situations where a direct relationship between the parties is lacking.

## V.   ALL CLAIMS SHOULD BE DISMISSED WITH PREJUDICE AND PLAINTIFFS SHOULD NOT BE PERMITTED TO RE-PLEAD THE COMPLAINT FOR A FOURTH TIME

Plaintiffs' opposition provides no justification for giving them yet another chance to amend their complaint.  Plaintiffs have staked so much in this action on their access to the assistance of settling defendants who have pled guilty to criminal antitrust violations.  Yet that ship has sailed.  As Plaintiffs' letter submitted to the Court on November 26, 2013 (Dkt. No. 311) concedes, the statute of limitations now has expired.  If Plaintiffs cannot get it right now, they will not in the future.  And, at any rate, they should not be allowed to impose on the Moving Defendants the cost of opposing yet another attempt to plead a viable claim.

The cases Plaintiffs cite to justify being allowed to amend yet again if the Second Amended Complaint is dismissed, Opp'n at 63, provide little support for their position.[11]  To be sure, in *Montich v. Miele USA, Inc.*, No. 11-2725, 2013 WL

---

[11]   In *Schwartz v. Avis Rent A Car Sys., LLC*, No. 11-4052, 2013 WL 2182078 (D.N.J. May 20, 2013), the court allowed a Third Amended Complaint to add a defendant, not to replead previously-dismissed claims; indeed the defendant's motion to dismiss the Second Amended Complaint had been denied in its entirety. (continued…)

5523689 (D.N.J. Sept. 30, 2013), the court allowed a Third Amended Complaint, but on both prior motions to dismiss, some of the plaintiff's claims had been upheld, unlike here, where no claims against the Moving Defendants have been, or should be, upheld.  Finally, in *Walsh Secs., Inc. v. Cristo Props. Mgmt.*, No. 97-3496, 2009 WL 1883988 (D.N.J. June 30, 2009), the court allowed a Fourth Amended Complaint, but only to add additional claims, not to have yet another bite at the apple at reviving dismissed claims.

In *Minard v. Iazzetti*, No. 06-645 (MLC), 2007 WL 4208836, at *2 (D.N.J. Nov. 26, 2007), the court allowed a Third Amended Complaint after dismissing the prior complaints in their entirety, but those dismissals appear to have been solely for lack of specificity in pleading, not for fundamental legal infirmities such as lack of standing or failure to allege the elements of a claim, as here.

## CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that the Court dismiss all claims for relief set forth in the Amended Complaint with prejudice, and grant such other relief as the Court may deem just and proper.

---

In *Bizzarro v. Ocean Cnty.*, No. 07-5665, 2014 WL 980659 (D.N.J. Mar. 13, 2014), the court allowed a Fourth Amended Complaint, but no claims in the prior complaints had been dismissed on a motion to dismiss; the plaintiffs were allowed to amend simply "to conform their complaint to the requirements of" a "recent Supreme Court decision."

Dated:  May 16, 2014

Respectfully Submitted,

| CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO | KROVATIN KLINGEMAN LLC |
|---|---|
| /s/ James E. Cecchi<br>James E. Cecchi<br>Zachary S. Bower<br>5 Becker Farm Rd.<br>Roseland, NJ 07068<br>Tel: (973) 994-1700<br>jcecchi@carellabyrne.com<br><br>*Counsel for Defendants BBX Capital Corporation, Heartwood 55, LLC and Fidelity Tax, LLC* | /s/ Henry E. Klingeman<br>Henry E. Klingeman<br>Helen A. Nau<br>60 Park Place, Suite 1100<br>Newark, NJ 07102<br>Tel.: (973) 714-3474<br>hklingeman@krovatin.com<br><br>*Counsel for Defendant David Jelley* |
| BELLIN & ASSOCIATES LLC | GREENBAUM, ROWE, SMITH & DAVIS LLP |
| /s/ Aytan Y. Bellin<br>Ayan Y. Bellin<br>85 Miles Avenue<br>White Plains, NY 10606<br>Tel: (914) 358-5345<br>aytan.bellin@bellinlaw.com<br><br>SCHLAM STONE & DOLAN LLP<br><br>Jeffrey M. Eilender<br>John M. Lundin<br>Bradley J. Nash<br>26 Broadway<br>New York, New York 10004<br>Tel: (212) 344-5400<br>JME@schlamstone.com<br><br>*Counsel for Defendant Mooring Tax Asset Group, LLC* | /s/ Gary S. Wolinetz<br>Gary K. Wolinetz<br>Emily Kaller<br>Metro Corporate Campus One<br>PO Box 5600<br>Woodbridge, NJ 07095-0988<br>Tel: (732) 476-2780<br>gwolinetz@greenbaumlaw.com<br><br>*Counsel for Defendant PAM Investors and Patrick Caraballesse* |

| CONNELL FOLEY LLP | DILWORTH PAXSON LLP |
|---|---|
| */s/ Stephen Falanga* <br> Stephen V. Falanga, Esq. <br> Christopher M. Hemrick, Esq. <br> 85 Livingston Avenue <br> Roseland, New Jersey 07068 <br> Telephone: (973) 535-0500 <br> SFalanga@connellfoley.com <br><br> *Counsel for Defendants, Gary I. Branse and Michael Deluca* | /s/ Jay E. Kagan <br> Jay E. Kagan <br> Matthew Faranda-Diedrich <br> LibertyView <br> 457 Haddonfield Rd., Suite 700 <br> Cherry Hill, NJ 08002 <br> jkagan@dilworthlaw.com <br><br> *Counsel for: Crestar Capital LLC, CCTS Capital LLC and William S. Green* |