# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket No. 3:12-CV-01893-MAS-TJB |

---

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NORMAN T. REMICK, AMERICAN TAX FUNDING, LLC, ROBERT W. STEIN AND LAMBROS XETHALIS, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF INTERIM CLASS AND LIAISON COUNSEL AS SETTLEMENT CLASS COUNSEL, AND APPROVAL OF CLASS NOTICE**

---

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

*Interim Liaison Counsel*
*[Additional counsel on signature page]*

421245.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................. 5

      A.    STATUS OF THIS LITIGATION ...................................... 5

      B.    THE SETTLEMENT AGREEMENTS ............................... 6

            1.    The Proposed Settlements ........................................... 7

            2.    Dismissal With Prejudice and Release of Claims .................. 10

            3.    Notice ....................................................... 10

III.  ARGUMENT ........................................................................ 13

      A.    THIS COURT SHOULD PRELIMINARILY APPROVE
            THE SETTLEMENT AGREEMENTS ............................ 13

            1.    Class Action Settlement Procedure ............................. 14

            2.    The Settlements Are Fair, Reasonable, and
                  Adequate ................................................... 16

      B.    THIS COURT SHOULD CERTIFY THE
            SETTLEMENT CLASS ........................................... 19

            1.    The Settlement Class Is Numerous and
                  Ascertainable ............................................... 20

            2.    There Are Common Questions of Law and Fact .................. 22

            3.    The Named Plaintiffs' Claims Are Typical .......................... 23

            4.    The Named Plaintiffs Will Fairly and Adequately
                  Represent the Interests of the Settlement Class ..................... 24

            5.    The Proposed Settlement Class Satisfies Rule
                  23(b)(3) ................................................... 25

                  a.    Common Questions of Law and Fact
                        Predominate .......................................... 26

                  b.    A Class Action Is Superior to Other
                        Methods of Adjudication ............................... 27

      C.    THIS COURT SHOULD APPOINT PLAINTIFFS'
            INTERIM CLASS COUNSEL AND LIAISON
            COUNSEL AS SETTLEMENT CLASS COUNSEL ..................... 28

- i -

D.   THE FORMS OF NOTICE AND NOTICE PLAN ARE ADEQUATE AND SHOULD BE APPROVED ............................. 30

E.   PLAINTIFFS SEEK TO UTILIZE MODEST PORTION OF SETTLEMENT FUND TO FUND LITIGATION EXPENSES ASSOCIATED WITH NON-SETTLING DEFENDANTS ................................................................. 33

IV.   CONCLUSION ............................................................. 34

421245.1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agostino v. Quest Diagnostics*,
    256 F.R.D. 437 (D.N.J. 2009)............................................................21

*Agretti v. ANR Freight Sys., Inc.*,
    982 F.2d 242 (7th Cir. 1992) ............................................................18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................20, 26

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) ............................................................24

*E.E.O.C. v. Com. of Pa.*,
    772 F. Supp. 217 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*,
    977 F.2d 738 (3d Cir. 1992) ............................................................17

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ............................................................19

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008)........................................................18

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)........................................................................23

*Hanlon v. Palace Entm't Holdings, LLC*,
    No. 11-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ......................15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .......................................................... 14, 15

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ............................................................27

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) ............................................................27

*In re Motor Fuel Temperature Sales Practices Litig.*,
    258 F.R.D. 671 (D. Kan. 2009) ........................................................18

421245.1

*In re New Jersey Tax Sales Certificates Antitrust Litigation*,
No. 3:12-cv-1893-MAS-TJB ........................................................................5

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012)...............................................................30

*In re Prudential Ins. Co. of Am. Sales Practices Litig. ("Prudential I")*,
962 F. Supp. 450 (D.N.J. 1997) ...............................................................18

*In re Sch. Asbestos Litig.*,
921 F.2d 1330 (3d Cir. 1990) ...................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ........................................................14, 22, 23

*Jones v. Commerce Bancorp, Inc.*,
No. 05-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) .........................24

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .....................................................................21

*Moskowitz v. Lopp*,
128 F.R.D. 624 (E.D. Pa. 1989)...............................................................21

*O'Brien v. Brain Research Labs, LLC*,
No. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012)......................27, 28

*Smith v. Prof'l Billing & Mgmt. Servs.*,
Civ. No. 06-4453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ...........14, 15

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ...............................................................20, 22

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1876 (2012)..........26, 27

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005).............................................................17, 20

*Weiss v. Mercedes-Benz of N. Am. Inc.*,
899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995) ...............19

421245.1

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)........................................................................................14

*Zimmer Paper Prod's, Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86 (3d Cir. 1985) ............................................................................30

*Zinberg v. Wash. Bancorp, Inc.*,
   138 F.R.D. 397 (D.N.J. 1990)........................................................................21

## RULES

Federal Rule of Civil Procedure 23 ................................................................*passim*

## OTHER AUTHORITIES

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
   (4th ed. 2002)................................................................................................17

Manual for Complex Litigation, Fourth ...............................................................15

Moore's Federal Practice - Civil...........................................................................33

Wright, Miller & Kane, *Federal Practice and Procedure* (3d ed. 2004) ..............28

421245.1

## I.    INTRODUCTION

To date, the Court has preliminarily approved, or, preliminary approval has been recommended for, 10 settlements totaling $7.73 million.[1] Since the last settlements were presented for preliminary approval, Plaintiffs have reached four additional settlements with: (1) Norman T. Remick ("Remick"); (2) American Tax Funding, LLC ("ATF"); (3) Robert W. Stein ("Stein"); and (4) Lambros Xethalis ("Xethalis") (the "Recent Settling Defendants," and with the Sass, Crusader, Butler/Farber, Mercer and Phoenix Defendants, as well as defendants Plymouth, Rothman, Pisciotta, Collins and May, the "Settling Defendants"). The settlement agreements with the Recent Settling Defendants require that defendant Remick

---

[1] *See* Dkt. No. 276 (order preliminarily approving five settlements with: 1) CCTS, LLC; CCTS Tax Liens I, LLC; CCTS Tax Liens II, LLC; DSBD, LLC; Pro Capital LLC; David Butler; and David M. Farber (collectively the "Butler/Farber Defendants"); 2) Burlington Assembly of God/Fountain of Life Center; Mercer S.M.E., Inc.; Susan M. Esposito; and David B. Boudwin (collectively the "Mercer Defendants"); 3) Richard J. Pisciotta, Jr.; 4) William A. Collins; and 5) Isadore H. May); Dkt. No. 277 (order preliminarily approving settlement with Robert E. Rothman); Dkt. No. 339 (Magistrate Judge Bongiovanni Report and Recommendation recommending preliminary approval of four settlements with: 1) M.D. Sass Investors Services, Inc.; M.D. Sass Tax Lien Management, LLC; M.D. Sass Municipal Partners – I, L.P.; M.D. Sass Municipal Partners – II, L.P.; M.D. Sass Municipal Partners – III, L.P.; M.D. Sass Municipal Partners – IV, L.P.; M.D. Sass Municipal Partners – V, L.P.; and M.D. Sass Municipal Partners – VI, L.P. (collectively the "Sass Entities"), Vinaya K. Jessani and Stephen E. Hruby (collectively with the Sass Entities, the "Sass Defendants"); 2) Royal Bancshares of Pennsylvania, Inc.; Royal Bank America; Crusader Servicing Corporation; and Royal Tax Lien Services, LLC (collectively the "Crusader Defendants"); 3) Plymouth Park Tax Services, LLC d/b/a Xspand ("Plymouth"); and 4) Phoenix Funding, Inc. and Benedict Caiola (the "Phoenix Defendants")).

pays $135,000, ATF pays $350,000, defendant Stein pays $115,000, and defendant

Xethalis provides specific cooperation against the Non-Settling Defendants

including his former employer Mooring Tax Asset Group. Thus, the Recent

Settling Defendants have agreed to collectively pay $600,000,[2] bringing the total

settlement monies paid to date to $8.33 million, plus other valuable consideration.

As further consideration for recent settlements, following final approval of

these agreements, with regard to TSCs the Recent Settling Defendants purchased

during the Class Period and held at the time of execution of the relevant Settlement

Agreement, Recent Settling Defendants Remick and ATF have agreed to offer

15% discounts off of the TSC redemption amounts.[3] Dissemination of the

discounted redemption offers will occur following final approval of these

---

[2] Pursuant to this Court's Order dated December 4, 2013 [Dkt. No. 316], Plaintiffs
filed a First Amended Consolidated Master Class Action Complaint on January 6,
2014 ("FAC") [Dkt. No. 320]. Notwithstanding the 14 settlement agreements
discussed herein, six defendant groups, remain in this case. Those defendant
groups are: (1) CCTS Capital, LLC n/k/a Crestar Capital, LLC and William S.
Green; (2) BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity
Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley;
(3) Richard Simon Trustee, Betty Simon Trustee, and Joseph Wolfson; (4)
Mooring Tax Asset Group, LLC; (5) Michael Mastellone; and (6) Patrick
Caraballese and PAM Investors (collectively, "Non-Settling Defendants").
Plaintiffs have reached an agreement in principle with defendants Robert U. Del
Vecchio, Sr. and Robert U. Del Vecchio Trust to settle this action and will present
this settlement to the Court for approval once the agreement is completed.
[3] Defendants Stein and Xethalis represented that they do not possess any TSCs
acquired during the Class Period.  Accordingly, their Settlement Agreements do
not include such additional relief. Declaration of Seth Gassman, dated June 27,
2014 (hereinafter, the "Gassman Decl.") Ex. C at 2, Ex. D at 2.

settlements. In addition, all four settlements with the Recent Settling Defendants require that they provide extensive cooperation to Plaintiffs as they continue to prosecute this action against the Non-Settling Defendants.

Pursuant to Federal Rule of Civil Procedure 23, and with the support of the Recent Settling Defendants, Plaintiffs now move for preliminary approval of these four additional proposed class settlement agreements. These settlements, like those that came before, fall within the range of reasonableness and therefore merit preliminary approval. The four proposed settlement agreements between Plaintiffs and the Recent Settling Defendants, copies of which are attached to the Gassman Decl. as Exhibits A, B, C, and D (collectively "Settlement Agreements"), represent the culmination of almost 2 years of litigation and extensive settlement discussions. If approved, these settlements would resolve all federal and state law claims brought by Class Plaintiffs against the Recent Settling Defendants alleging that the defendants engaged in an unlawful conspiracy to manipulate interest rates associated with tax sale certificates ("TSCs") sold at public auctions throughout New Jersey from January 1, 1998 through February 28, 2009 (the "Class Period").

Plaintiffs believe that the proposed settlements with the Recent Settling Defendants are fair, reasonable, adequate, and are in the best interests of the members of the Settlement Class. The settlements resulted from protracted arm's-length negotiations by experienced counsel committed to the interests of their

respective clients.[4] If approved, the settlements will provide significant benefits to members of the Settlement Class. Further, the proposed Settlement Class satisfies the requirements of Rule 23, and Plaintiffs' Interim Class and Liaison Counsel are well qualified to serve as Settlement Class Counsel as to these settlements, just as this Court previously appointed these same Interim Class and Liaison Counsel as Settlement Class Counsel for the settlements to which this Court already granted preliminary approval.[5]

Plaintiffs also seek the Court's approval of a class notice to be disseminated to members of the class with regard to the 14 settlements Class Plaintiffs have entered into to date. Plaintiffs, in conjunction with retained notice and claims administrator Gilardi & Co., have crafted a robust notice plan. Plaintiffs will use direct mail, internet advertisements and a website to reach as many Settlement Class members as is reasonable and practicable.

Finally, upon final approval, Plaintiffs seek the Court's authorization to withdraw up to $150,000 of the aggregate settlement fund, to utilize for litigation-related expenses. As further explained below, such a practice is common in litigation of this type and will assist the Plaintiffs in prosecuting this litigation against the Non-Settling Defendants.

---

[4] Gassman Decl., ¶¶ 7-10.
[5] Dkt. Nos. 276, 277, 339.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

## A.   STATUS OF THIS LITIGATION

Beginning in March 2012, the first civil cases were filed alleging that Recent Settling Defendants, as well as other defendants and alleged co-conspirators, engaged in a conspiracy to unlawfully manipulate interest rates associated with TSCs sold at public auctions throughout New Jersey. In so doing, the defendants were alleged to have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state laws. Certain Recent Settling Defendants (as well as Non-Settling Defendants) have pled guilty to violating Section 1 of the Sherman Act by participating in a conspiracy to rig bids and allocate customers at public tax lien auctions in New Jersey.[6] In September 2012, the consolidated proceeding captioned *In re New Jersey Tax Sales Certificates Antitrust Litigation*, No. 3:12-cv-1893-MAS-TJB, which was originally before Hon. Freda L. Wolfson, U.S.D.J., was reassigned to this Court.

Following this Court's October 23, 2013 hearing [Dkt. Nos. 300-301] on certain Defendants' motions to dismiss, the Court granted Plaintiffs leave to amend their then operative complaint, and Plaintiffs filed the First Amended Consolidated Master Class Action Complaint on January 6, 2014 [Dkt. No. 320]. Thereafter, on

---

[6]   For a description of the relevant guilty pleas, *see* paragraphs 220-246 of the FAC. [Dkt. No. 320]. In addition, since the filing of the FAC, there has been an additional guilty plea. [*See* Dkt. No. 360].

March 14, 2014, the Non-Settling Defendants filed motions to dismiss [Dkt. Nos. 340, 341, 342, 343, 345] and Defendant Michael Mastellone filed a Motion to Stay [Dkt. No. 347]. Plaintiffs' response in opposition to Non-Settling Defendants' motions were filed on April 25, 2014 [Dkt. No. 353] and Non-Settling Defendants' replies were filed on May 16, 2014 [Dkt. Nos. 356, 357, 358, 359].

Plaintiffs and the Recent Settling Defendants have engaged in settlement negotiations for approximately the past year, beginning in summer 2013.[7] At in-person and telephonic meetings, the terms of each separate settlement agreement was vigorously negotiated among sophisticated counsel experienced in antitrust law and class actions.[8] Plaintiffs and Recent Settling Defendants finalized and executed the four settlement agreements for which preliminary approval is now being sought in January 2014, February 2014, March 2014 and April 2014.[9]

## B.   THE SETTLEMENT AGREEMENTS

The settlement agreements represent the product of extensive negotiations involving experienced counsel over the course of several months.[10] The key components of the proposed settlement agreements are discussed below.

---

[7] Gassman Decl., ¶ 7
[8] Gassman Decl., ¶ 9.
[9] Gassman Decl., ¶¶ 11, 14, 17, 20; Gassman Decl. Exs. A-D.
[10] Gassman Decl., ¶¶ 7-9.

1.      **The Proposed Settlements**

The settlement agreements resolve all claims against the Recent Settling

Defendants for their roles in the alleged conspiracy to manipulate interest rates

associated with TSCs sold at public auctions in New Jersey between January 1,

1998 and February 28, 2009 (the "Class Period"). The proposed Settlement Class

in all agreements is defined as:

> All persons who owned real property in the State of New
> Jersey who had a Tax Sale Certificate issued with respect
> to their property that was purchased by a Defendant
> during the Class Period at a public auction in the State of
> New Jersey at an interest rate above zero percent.[11]

All Recent Settling Defendants agreed to provide Plaintiffs with certain

cooperation in the prosecution of the case against the Non-Settling Defendants.[12]

The Recent Settling Defendants also agreed to provide monetary payments

totaling $600,000. These payments were negotiated and arrived at as a result of a

thorough weighing of the strengths and weaknesses of the parties' claims and

positions in this case, an evaluation of the economic harm allegedly inflicted by

Recent Settling Defendants' conduct, and the financial condition of each of the

---

[11] Gassman Decl., Ex. A at ¶ 13, Ex. B at ¶ 14, Ex. C at ¶ 13, Ex. D at ¶ 12.

[12] Gassman Decl., Ex. A at ¶ 24, Ex. B at ¶ 24, Ex. C at ¶ 23, Ex. D at ¶ 18.

Recent Settling Defendants.[13] The $600,000 in settlement proceeds has been deposited into FDIC guaranteed escrow accounts.[14]

In addition to these payments, Recent Settling Defendants Remick and ATF agreed to the following additional relief in connection with TSCs acquired during the Class Period that they still held:

(1)    **Defendant Remick**: Defendant Remick agreed: (1) not to initiate any foreclosure proceedings until 120 days after final approval of the settlement agreement; (2) within 45 days after final approval of the settlement agreement, to offer to redeem any TSC possessed at the time of the settlement agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 15% of the redemption amount; and (3) within 45 days of final approval of the settlement agreement, to send written notice to property owners subject to foreclosure proceedings or are under the protection of a bankruptcy court, with an offer to assign the outstanding TSC to the property owner for a one-time cash payment equal to 85 percent of the redemption amount.[15]

---

[13] Gassman Decl., ¶¶ 7, 9-10, 26.

[14] Gassman Decl., Ex. A at ¶ 22, Ex. B at ¶ 24, Ex. C at ¶ 23.

[15] Gassman Decl., Ex. A at ¶ 23.

(2) **Defendant ATF**: ATF has agreed: (1) not to initiate any foreclosure proceedings for 90 days after final approval of the settlement agreement; and (2) within 30 days after final approval of the settlement agreement, to offer to redeem, subject to a cap on the total amounts of discounts, any TSC possessed by a class member at the time of the settlement agreement to the property owner in exchange for a cash payment equal to the redemption amount less a discount equal to 15% (excluding statutory attorneys' fees) of the redemption amount.[16] The 15% discount amount may be reduced, *pro rata*, if the total amount of discounts exceeds $50,000.[17]

With respect to Plaintiffs' antitrust claims, Plaintiffs allege the defendants colluded to manipulate the *interest rates* associated with property tax liens in New Jersey. Plaintiffs do not allege, and could not allege, for purposes of the antitrust claim, that the principal was colluded upon or that the principal was unlawful in any way. Because the discounts extend not only to the interest rates, but also the principal, these offers, if accepted by the Settlement Class Members, will result in

---

[16] Gassman Decl., Ex. B at ¶ 23.

[17] Gassman Decl., Ex. B at ¶ 23(d). Because this provision is not triggered until final approval for the Settling Defendants, Plaintiffs are not now requesting that the Court approve dissemination of letters connected therewith, which will be sent to all relevant property owners within 30 days of final approval of the settlement agreements, informing the property owners of the discounted redemption offer.

relief which likely exceeds a Settlement Class Member's single damages on their antitrust claim.

### 2. Dismissal With Prejudice and Release of Claims

In exchange for these significant benefits to Settlement Class members, the settlement agreements each provide that all participating members in the Settlement Class will release Recent Settling Defendants from all federal and state law claims concerning any agreement or understanding among defendants to rig bids or allocate tax liens in connection with the public auction of TSCs in New Jersey during the Class Period.[18] The releases do not, however, include claims against Recent Settling Defendants unrelated to the released claims, claims against any Non-Settling Defendant, or claims of Settlement Class members outside of the Class Period.[19]

### 3. Notice

The Settlement Agreements require Interim Class Counsel to take all necessary and appropriate steps to ensure that notice of settlement is provided to the Class in accordance with Rule 23.[20] Through a competitive bidding process in which Interim Class Counsel solicited bids from four different vendors, Interim

---

[18] Gassman Decl., Ex. A at ¶ 46, Ex. B at ¶ 45, Ex. C at ¶ 45, Ex. D at ¶ 33.

[19] Gassman Decl., Ex. A at ¶¶ 46, 49, Ex. B at ¶¶ 45, 47, Ex. C at ¶¶ 45, 48, Ex. D at ¶¶ 33, 36. The complete and controlling terms of the releases are set forth in the operative Settlement Agreements.

[20] Gassman Decl., Ex. A at ¶ 53, Ex. B at ¶ 51, Ex. C at ¶ 49, Ex. D at ¶ 39.

Class Counsel has selected Gilardi & Co. as settlement notice and claims administrator to facilitate issuance of notice.[21] Interim Class Counsel had deferred notice of the previous settlements while an outside vendor, LienSource, gathered data and information on affected property owners throughout New Jersey. LienSource has undertaken a comprehensive effort to contact all 566 New Jersey municipalities to gather relevant information on affected property owners whose property was the subject of a lien sold at a municipal auction in New Jersey during the Class Period. Because of various difficulties related to the data collection, including the fact that some municipalities failed to respond to LienSource's repeated requests for the data, LienSource was able to capture full data for 234 of the 566 municipalities in New Jersey.[22] Plaintiffs have also collected Class member information from several of the Settling Defendants. To reach as many potential Settlement Class Members as possible and in as cost-effective manner as possible, Plaintiffs propose a notice program that employs direct mail notice where mailing address information is available, and other forms of notice to supplement the direct mail notice.[23]

Plaintiffs propose dissemination of a Long Form Notice ("Long Notice") (attached as Exhibit 1 to the Proposed Order) to be made available on a dedicated

---

[21] Gassman Decl., ¶ 27.

[22] Gassman Decl., ¶ 28

[23] Gassman Decl., ¶ 29; *see* Dkt. Nos. 354, 362.

website at www.njtaxliensettlements.com as well as to all class members who request a copy of the Long Notice. Plaintiffs also propose a Short Form Notice ("Summary") (attached as Exhibit 2 to the Proposed Order) to be published on the Internet and in the following New Jersey publications: *Newark-Star Ledger*, *The Record (Hackensack)*, *Trentonian*, *Courier-Post*, and *Atlantic City Press*. In addition, Plaintiffs propose a Postcard Notice ("Postcard") (attached as Exhibit 3 to the Proposed Order) to be provided by direct mail to the class members identified by LienSource or through data obtained from one of the Settling Defendants. In addition to the dedicated website, the notice program also will include various targeted search engine and other technological tools to assist in reaching Settlement Class Members. The notices will each advise potential class members of the nature of the action; of the definition of the Settlement Class; of the class claims, issues or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion; of when and how members may elect to be excluded; and of the binding effect of a class judgment on class members under Rule 23(c)(3). The notices will also provide a toll-free phone number to call for information and a website that will provide potential class members with lengthier and complete notice.

421245.1

Set out below is a proposed schedule for dissemination of notice and related events.

| Event | Deadline |
|---|---|
| Commence internet (including through internet advertising and website) program, and complete mailed notice. | Within 60 days of order authorizing dissemination of notice. |
| Filing of Briefs in Support of Motion for Final Approval of 14 Proposed Settlements | 30 days following deadline to disseminate notice. |
| Deadline for opting out of Settlement Class, filing objections, and notice of intent to appear at Fairness Hearing | 60 days after deadline to disseminate notice. |
| Filing of Replies to Motion for Final Approval and Responses to Objections to Settlement | 90 days following deadline to disseminate notice. |
| Deadline for Settlement Notice and Claims Administrator to File Declaration Attesting that Notice Program has been Completed | Two weeks prior to the scheduled date of the Fairness Hearing. |
| Fairness Hearing for all settlement agreements with all 14 Settling Defendants | 160 100 days following deadline to disseminate notice. |

## III.   ARGUMENT

## A.   THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENTS

Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the burden on judicial resources. As a result, "[c]ompromises of disputed

claims are favored by the courts."[24] This is "particularly [true] in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."[25] The proposed settlement agreements here meet all the requirements for preliminary approval by this Court.

1.    **Class Action Settlement Procedure**

Federal Rule of Civil Procedure 23 sets forth a procedure and specific criteria for class action settlement approval.[26] That approval procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlements.

2.    Dissemination of notice of the settlements to all affected class members.

3.    A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlements, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlements.[27]

---

[24] *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).

[25] *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the court "encourage[s] settlement of complex litigation that otherwise could linger for years").

[26] *Smith v. Prof'l Billing & Mgmt. Servs.*, Civ. No. 06-4453, 2007 WL 4191749, at *1, *5 (D.N.J. Nov. 21, 2007).

[27] *Id.*

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.[28] "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."[29] "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."[30]

Plaintiffs respectfully request that this Court certify the proposed Settlement Class, preliminarily approve the four settlement agreements with Recent Settling Defendants, appoint Plaintiffs' Interim Class and Liaison Counsel as Class Counsel for these settlements, and authorize the issuance of notice of settlements with all Settling Defendants to all Settlement Class Members. While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlements proposed here. The proposed settlement agreements, like those the Court has already preliminarily approved, are fair, adequate, and reasonable. Therefore, this Court should preliminarily approve the settlements and certify a settlement class.

---

[28] *See In re GMC*, 55 F.3d at 785; *Hanlon v. Palace Entm't Holdings, LLC*, No. 11-987, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (explaining that at the preliminary approval phase, the "court must only 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms'" (quoting Manual for Complex Litigation (Fourth), § 21.632 (2011))).
[29] *Smith*, 2007 WL 4191749, at *1 (internal quotation marks omitted).
[30] *Id.*

## 2.    The Settlements Are Fair, Reasonable, and Adequate

The four settlement agreements represent the culmination of extensive and intensive arm's-length negotiations over the course of several months.[31] Plaintiffs were represented in the settlement negotiations by a team of attorneys who have had considerable experience in federal antitrust class actions, and who are therefore well versed in the issues.[32] Recent Settling Defendants were similarly represented by counsel with extensive experience defending federal antitrust class actions and complex litigation matters. The settlement negotiations were contested and conducted in the utmost of good faith.[33] Through those extensive discussions, counsel for all parties were able to craft appropriate settlement agreements given the allegations at issue in this case.

With respect to the monetary consideration paid by the Recent Settling Defendants, there are two distinct benefits to the Settlement Class. First, three of the four Recent Settling Defendants agreed to provide monetary relief to members of the Settlement Class.[34] The amounts were negotiated following extensive discussions between the parties as to the respective strengths and weaknesses of their claims, and an evaluation of economic harm inflicted by Recent Settling Defendants' alleged conduct toward members of the proposed Settlement Class,

---

[31] Gassman Decl., ¶¶ 7, 9.
[32] Gassman Decl., ¶ 8.
[33] Gassman Decl., ¶ 10.
[34] Gassman Decl., ¶¶ 12, 15, 18.

421245.1

and an analysis of the Recent Settling Defendants' financial condition. Second, two of the Recent Settling Defendants agreed to additional relief in the form of discounts on redemption payments on TSCs purchased during the Class Period that were retained at the time the settlement agreement was executed.[35] In addition, all four settlement agreements provide extensive cooperation that will assist with the prosecution of the Non-Settling Defendants. Defendant Xethalis, for example, was an employee of Non-Settling Defendant Mooring Tax Asset Group, LLC, and can provide valuable information on the conspiracy and Mooring's participation in it.[36]

Given these benefits, the proposed Settlement Agreements fall well within the range of reasonableness. Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class is presented for court approval."[37] Counsel's judgment that the settlement is fair and reasonable is entitled to great weight.[38]

---

[35] Gassman Decl., Ex. A at ¶ 23, Ex. B at ¶ 23.

[36] Gassman Decl., ¶¶ 21-22.

[37] Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* §11:41, at 90 (4th ed. 2002).

[38] *See E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned." (emphasis in original) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J.

Finally, these settlements should help to expedite the overall litigation of this case. "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'"[39] Courts regularly approve partial settlements prior to decision on the certification of a litigation class.[40]

Granting preliminary approval of these settlement agreements will not adversely affect the remainder of the case or unfairly prejudice the Settlement Class members' claims against the Non-Settling Defendants.[41] On the contrary, the settlements will speed the resolution of the case by removing some defendants and by providing Plaintiffs with additional information vital to proving their case, thereby reducing the need for some discovery.

---

2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Prudential Ins. Co. of Am. Sales Practices Litig., ("Prudential I")*, 962 F. Supp. 450, 543 (D.N.J. 1997) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998) ("Prudential II"), *cert. denied*, 525 U.S. 1114 (1999).

[39] *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).

[40] *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 436 n.2 (E.D. Pa. 2008) (concluding that "it is proper for the Court to preliminarily certify the settlement classes at this juncture, provided that the grant of preliminary approval is without prejudice to the defenses and positions of the non-settling Defendants as to any issue, including certification of the litigation classes"); *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 680-81 (D. Kan. 2009) (granting preliminary approval of settlement).

[41] The settlement agreements specifically provide that Settling Defendants' purchase of TSCs during the Class Period shall remain in the case for the purposes of joint and several liability. [Gassman Decl., Ex. A at ¶ 54, Ex. B at ¶ 52, Ex. C at ¶ 53, Ex. D at ¶ 40].

The Third Circuit has "explicitly recognized with approval" the "strong presumption in favor of voluntary settlement agreements."[42] "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"[43] Continued litigation of this case against the Recent Settling Defendants would be long, complex, expensive, and a burden to this Court's docket, yet another factor favoring approval. Approving the settlement agreements will not only begin to reduce that litigation burden but will provide Plaintiffs with the benefit of Recent Settling Defendants' cooperation. This Court should therefore grant the motion for preliminary approval of the proposed Settlement Agreements.

**B.    THIS COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

This Court should preliminarily certify the proposed Settlement Class because it meets all applicable requirements of Federal Rule of Civil Procedure 23. Certification of a settlement class is appropriate where the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – are satisfied.[44] In addition, a settlement class must satisfy one of the three

---

[42] *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).

[43] *Id.* at 595 (internal citation omitted); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995) (burden on crowded court dockets to be considered), *aff'd*, 66 F.3d 314 (3d Cir. 1995).

[44] *See* Fed. R. Civ. P. 23(e).

subsections of Rule 23(b).[45] In analyzing Rule 23's elements, this Court must analyze whether the representative parties "fairly and adequately protect the interests of the class."[46]

Certification of a settlement class seeking damages requires satisfaction of the requirements of Rule 23(b)(3).[47] In other words, the Court must be satisfied that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[48]

### 1.    The Settlement Class Is Numerous and Ascertainable

The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[49] Here, although the exact number of potential members of the Settlement Class is unknown, Plaintiffs estimate that there are several thousand potential class

---

[45] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).
[46] *Varacallo*, 226 F.R.D. at 233.
[47] *Amchem Prods.*, 521 U.S. 591, 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.  But other specifications of the rule . . . demand undiluted . . . attention in the settlement context.").
[48] Fed. R. Civ. P. 23(b)(3).
[49] *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

421245.1

members based on the number of TSCs that may have been affected by the alleged conspiracy during the class period.[50] Thus, the numerosity requirement is easily satisfied.[51]

The proposed Settlement Class also satisfies Rule 23's implicit requirement that a class's membership be ascertainable.[52] Here, Settlement Class membership is based upon the objective criteria of ownership of real property in New Jersey for which a TSC was issued and was purchased by a defendant during the Class Period, and for which the purchase was made at an interest rate above zero percent.[53] These objective criteria are determinable based on records possessed by the Settling and Non-Settling Defendants that are subject to ongoing discovery by Class Counsel. Rule 23's implicit class ascertainability requirement thus is readily satisfied.

---

[50] Gassman Decl., ¶ 23.

[51] *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990) (finding that numerosity is "clearly established" where potentially hundreds of class members); *see also Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989) ("It is proper for the court 'to accept common sense assumptions in order to support a finding of numerosity.'") (internal citation omitted).

[52] *See*, *e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) ("[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."); *Agostino v. Quest Diagnostics*, 256 F.R.D. 437, 478 (D.N.J. 2009) ("It has long been held that Rule 23 implicitly requires that prospective plaintiffs propose a class definition that is readily ascertainable based on objective criteria.").

[53] *See* Gassman Decl., Ex. A at ¶ 18, Ex. B at ¶¶ 14, 19, Ex. C at ¶¶ 13, 18, Ex. D at ¶¶ 12, 17.

### 2.     There Are Common Questions of Law and Fact

The proposed Settlement Class also satisfies Rule 23(a)'s commonality requirement. "[A] finding of commonality does not require that all class members share identical claims."[54] "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."[55]

Here, there are common questions of law and fact that go to the central issue in this matter – whether defendants engaged in a conspiracy to manipulate interest rates associated with TSCs sold at public auctions throughout New Jersey, thereby injuring Plaintiffs when they paid (or will be required to pay) more in interest payments than they would have paid absent the alleged bid-rigging conspiracy.

The allegations of the bid-rigging conspiracy give rise to numerous common questions of law or fact:

> a.     Whether defendants conspired with others to fix bids and allocate TSCs at auctions in New Jersey, in violation of the Sherman Act and New Jersey's Antitrust Act, as well as numerous other state laws;
>
> b.     Whether defendants' conduct had the anticompetitive effect of reducing and unreasonably restraining the market for the purchase of TSCs;

---

[54] *In re Warfarin*, 391 F.3d at 530 (quotation marks omitted).
[55] *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted).

- 22 -

c.        The names of the individuals and entities who participated in the anticompetitive scheme;

d.        The duration of the anticompetitive scheme;

e.        The effect of defendants' conduct and the extent of injuries sustained; and

f.        The amount of damages the anticompetitive scheme caused members of the class.

These questions revolve around the existence, scope, effectiveness, and implementation of defendants' conspiracy and are central to the claims of each member of the Settlement Class. Thus, the proposed Settlement Class satisfies the commonality requirement.

### 3.    The Named Plaintiffs' Claims Are Typical

The proposed Settlement Class also satisfies Rule 23(a)'s typicality requirement. The commonality and typicality requirements of Rule 23(a) "tend to merge."[56] Rule 23(a)(3)'s "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."[57] "A named Plaintiff's claims are typical where each class member's claims arise from the same course of events

---

[56] *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

[57] *In re Warfarin*, 391 F.3d at 531 (quotation marks omitted).

and each class member makes similar legal arguments to prove the defendant's liability."[58]

In this case, the claims of the Named Plaintiffs are typical of the claims of the proposed Settlement Class members because they all arise from the same alleged bid-rigging conspiracy that gives rise to the claims of the class. Plaintiffs assert the same legal claims on behalf of themselves and the proposed class; namely, that they sustained damages as a result of defendants' common course of conduct in violation of federal and state statutes. Defendants' bid-rigging scheme for TSCs is the basis for the claims of every Named Plaintiff and putative class member. These similarities satisfy Rule 23(a) typicality.

### 4. The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Settlement Class

The Named Plaintiffs will "fairly and adequately protect the interests of the class."[59] The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class."[60]

Here, the interests of the Named Plaintiffs and the putative Settlement Class members are aligned because they all suffered similar injury in the form of inflated

---

[58] *Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 WL 2085357, at *3 (D.N.J., July 16, 2007).

[59] Fed. R. Civ. P. 23(a)(4).

[60] *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quotation marks omitted).

interest rates due to the alleged collusion at TSC auctions. By proving their own claims, the Named Plaintiffs would necessarily help to prove the claims of their fellow putative Settlement Class members.[61] In addition, the Named Plaintiffs have no interests that are antagonistic to the Class.[62] Further, as this Court previously recognized in connection with prior settlements in this matter [Dkt. Nos. 276, 277, 339], Interim Class and Liaison Counsel are experienced class-action litigators familiar with the legal and factual issues involved, and they have competently and aggressively prosecuted this complex case.[63] Thus, for settlement purposes, the adequacy requirement is satisfied.

### 5.     The Proposed Settlement Class Satisfies Rule 23(b)(3)

The proposed Settlement Class also satisfies the requirements of Rule 23(b)(3) – predominance and superiority. Rule 23(b)(3) provides that a class may be certified if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

---

[61] Gassman Decl., ¶ 24.
[62] Gassman Decl., ¶ 25.
[63] Gassman Decl., ¶¶ 8, 26.

### a.  Common Questions of Law and Fact Predominate

First, the common questions identified above predominate over individual questions in this case. "Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."[64] "The focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."[65] Approval of class action settlements, however, "is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled."[66]

Here, Plaintiffs will necessarily focus on the conduct of defendants, rather than the conduct of individual class members, to demonstrate that the bid-rigging conspiracy existed. Proof of how defendants implemented and enforced their conspiracy will be common for all Settlement Class members, because it will be predicated on establishing the existence of defendants' conspiracy to manipulate TSC interest rates across New Jersey that impacted the entire market for TSCs

---

[64] *Amchem Prods.*, 521 U.S. at 625.

[65] *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298, 345 (3d Cir. 2011) (explaining that to show that common questions predominate with respect to antitrust injury, plaintiffs must demonstrate that the element of antitrust impact is "capable of proof at trial through evidence that is common to the class rather than individual to its members") (internal citation omitted), *cert. denied*, 132 S. Ct. 1876 (2012).

[66] 4 Newberg on Class Actions § 11:28 (4th ed. 2002); *see also, e.g.*, *Sullivan*, 667 F.3d at 298-99 (certifying a settlement class despite the fact that variances in state law would likely have defeated predominance if the class was being certified for trial).

during the relevant class period.[67] As a result, common issues relating to the existence and effect of the alleged conspiracy to manipulate TSC interest rates predominate over any questions arguably affecting individual class members alone.

### b.   A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Class adjudication of Plaintiffs' claims here would be superior to individual trials, and joinder of all Settlement Class members is impracticable. The class action mechanism is superior to its alternatives, particularly with respect to settlements, because it ensures that the claims of the absent class members will be resolved efficiently.[68] And "[i]f common questions are found to predominate in an antitrust

---

[67] *Sullivan*, 667 F.3d at 298; *see, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 268 (3d Cir. 2009) (finding predominance by determining that the elements of a Sherman Act violation for concerted anticompetitive activity focused on "the conduct of the defendants"); *see also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) ("[C]ommon issues [ ] predominate here because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did.") (internal citation omitted).

[68] *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy").

- 27 -

action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."[69]

Absent class certification, many members of the proposed Settlement Class here would go uncompensated because they would lack adequate monetary incentives to pursue their claims individually.[70] The prosecution of separate actions by individual members of the proposed class would impose heavy burdens on the courts and the parties, and would create a risk of inconsistent rulings, which further favors class treatment. Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Therefore, a class action is the superior method of adjudicating the claims raised in this case.

Because the proposed Settlement Class meets the requirements of Rule 23(a) and 23(b)(3), it should be certified for settlement purposes.

## C. THIS COURT SHOULD APPOINT PLAINTIFFS' INTERIM CLASS COUNSEL AND LIAISON COUNSEL AS SETTLEMENT CLASS COUNSEL

Rule 23(c)(1)(B) states that an order certifying a class action "must appoint class counsel under Rule 23(g)." The court must consider "(i) the work counsel has

---

[69] Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure § 1781 at 254-55 (3d ed. 2004).

[70] S*ee O'Brien*, 2012 WL 3242365, at *9 (finding superiority because, *inter alia*, it was "not apparent that the money potentially recoverable by an individual class member as compared to the cost to pursue recovery through a lawsuit is sufficient to make individual litigation a realistic possibility").

done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."[71]

On October 22, 2012, after considering competing motions, this Court appointed Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP as Interim Class Counsel, and Lite DePalma Greenberg, LLC as Interim Liaison Counsel.[72] The work done by these counsel since their appointment provides a substantial basis for a finding that they satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as Settlement Class Counsel.[73] These firms have "performed a great deal of work investigating the facts underlying these cases and have otherwise prepared these cases for a putative class action"; and they have negotiated and executed settlement agreements with 14 defendant groups (totaling 36 total Defendants).[74] All of the same reasons that led this Court to appoint Interim Class Counsel and Liaison Counsel as Settlement Class Counsel for prior settlements [Dkt Nos. 276, 277, 339] apply here as well. Accordingly, Interim Class and Liaison Counsel should be appointed as Settlement Class Counsel.

---

[71] Fed. R. Civ. P. 23(g)(1)(A).

[72] *See* Order of Oct. 22, 2012, Dkt. No. 109.

[73] Gassman Decl., ¶¶ 7-8.

[74] Gassman Decl., ¶ 26; *see also* Memorandum Opinion of Oct. 22, 2012, Docket No. 108.

## D.   THE FORMS OF NOTICE AND NOTICE PLAN ARE ADEQUATE AND SHOULD BE APPROVED

Rule 23(c)(2) provides that class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."[75] Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]."[76] "First-class mail and publication have consistently been considered sufficient to satisfy the notice requirements of Rule 23[(c)] and Rule 23(3) for advising class members of a proposed settlement and of their right to file claims."[77] The notice must state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).[78]

---

[75] Fed. R. Civ. P. 23(c)(2)(B).

[76] Fed. R. Civ. P. 23(e)(1).

[77] *Zimmer Paper Prod's, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985); *see also In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 266 (E.D. Pa. 2012) (quoting *Zimmer*, finding notice by mailing and publication to satisfy Rule 23).

[78] *Id.*

The content of the proposed Long Notice, Summary Notice and Postcard Notice (collectively "the Notices") complies with the requirements of Rules 23(c)(2) and 23(e). The Notices clearly and concisely explain the nature of the action, the Settlement Class and the terms of the Settlements. They provide a clear description of the Class and the binding effect of class membership. The Notices also explain how to exclude oneself from the class, the right to object to one or more of the settlement agreements, how to obtain copies of the Notices and settlement agreements, information about letters they may receive in the future, and how to contact Class Counsel.[79]

Interim Class Counsel propose a notice plan that will maximize the opportunity for members of the Class to understand the nature of the litigation, the settlements and to respond appropriately if they so choose. Interim Class Counsel have selected Gilardi & Co. as settlement notice and claims administrator to facilitate issuance of notice.[80] Gilardi has over 25 years of experience as a notice and claims administrator, and is regarded as one of the most experienced notice and claims administration companies in the nation.[81] Gilardi has designed a multi-pronged notice plan that includes direct notice to Class members (where possible),

---

[79] *See* Proposed Order., Ex. 1 and Ex. 2.
[80] Gassman Decl., ¶ 27.
[81] *See, e.g.*, https://www.gilardi.com/.

published notice, and an online internet campaign.[82] In addition, a neutral

information website –  www.njtaxliensettlements.com – will be established where

Class members can obtain additional information about the case. The costs of

notice are proposed to be paid out of the settlement fund. Plaintiffs have

endeavored to secure the most efficient notice program possible, taking into

consideration the desire to reach a broad cross-section of class members while not

spending an inappropriate amount of the settlement fund on notice. The estimated

cost of the multi-pronged publication and notice effort described above is

approximately $190,000. This sum is reasonable and Plaintiffs request that the

Court approve use of Settlement Funds for this purpose.

Plaintiffs propose that the Summary Notice, substantially in the form

attached as Exhibit 2 to the Proposed Order, be utilized as the published notice in

the following publications with large circulations in the state of New Jersey:

*Newark-Star Ledger*, *The Record (Hackensack)*, *Trentonian*, *Courier-Post*, and

*Atlantic City Press*. In addition, the internet website

(www.njtaxliensettlements.com) shall post case and settlement related materials,

including all Orders Granting Preliminary Approval, the Settlement Agreements

themselves, and the forms of notice, the FAC, as well as a toll-free information

number. Links to the foregoing website will also be accessible to Class members

---

[82] Gassman Decl., Ex. F.

on the websites of Interim Class Counsel. The internet domain name and toll-free

number will be identified on the Notices. Such notice plans are commonly used in

class actions like this one and constitute valid, due and sufficient notice to class

members, and satisfy both Rule 23(c)(2)(B)'s "best notice practicable" standard

and Rule 23 (e)(1)'s "notice in a reasonable manner" standard.[83] In addition, the

direct mail program will further supplement Plaintiffs' proposed notice program by

allowing for a majority of Settlement Class Members to be sent direct mail

Postcard Notices, which will include relevant information about the settlement

agreements and process for taking future action.

**E.      PLAINTIFFS SEEK TO UTILIZE MODEST PORTION OF
         SETTLEMENT FUND TO FUND LITIGATION EXPENSES
         ASSOCIATED WITH NON-SETTLING DEFENDANTS**

After final approval and the Effective Date has occurred, Plaintiffs seek to

utilize up to $150,000 from the $8.3 million in settlement proceeds, and placed into

Plaintiffs' litigation fund, to assist in prosecuting claims against the Non-Settling

Defendants. These funds will be principally used to pay expert expenses and

document management fees. All expenditures will be subject to Court approval at a

later time. This type of litigation fund contribution is appropriate.[84] Finally, each of

---

[83] *See, e.g.*, Moore's Federal Practice - Civil § 23.102[3][a]-[c].

[84] *See, e.g., In re Worldcom, Inc. Sec. Litig.*, No. 02-3288C, 2004 L 2591402, at *1 (S.D.N.Y., Nov. 12, 2004)("request for a $5 million fund to finance the continued prosecution of the consolidated class action against the non-settling defendants is granted. It is appropriate to establish a litigation fund out of the proceeds of a

the settlement agreements with the Settling Defendants permits Plaintiffs to utilize portions of the settlement fund in connection with litigation expenses.[85]  As is described in the Notices, Interim Class Counsel intends to seek permission from the Court at a later date for attorneys' fees in an amount not to exceed one-third of the monetary total of all of the Settlements and reimbursement of reasonably incurred expenses.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to: (1) certify the proposed Settlement Class: (2) preliminarily approve the four settlement agreements submitted herein; (3) appoint Interim Class Counsel and Interim Liaison Counsel as Settlement Class Counsel; (4) approve the Notices to be issued to the Settlement Class and notice plan related thereto; and (5) authorize up to $150,000 of the settlement fund to be used for litigation expenses upon final approval of the settlements.

---

partial settlement."); *Teacher's Retirement Sys. Of Louisiana v. A.C.L.N.*, Ltd., No. 01-11814C, 2004 WL 1087261, at *5-6 (S.D.N.Y. May 14, 2004).

[85] Gassman Decl., ¶ 34

421245.1

Dated:  June 27, 2014                    Respectfully submitted,

                                         **LITE DEPALMA GREENBERG, LLC**

                                         */s/ Bruce D. Greenberg*
                                         Bruce D. Greenberg
                                         Steven J. Greenfogel
                                         Two Gateway Center, Suite 1201
                                         Newark, New Jersey 07102-5003
                                         (973) 623-3000

                                         *Interim Liaison Counsel*

**HAGENS BERMAN SOBOL**           **HAUSFELD LLP**
**SHAPIRO**                       Michael D. Hausfeld *(admitted pro hac vice)*
**LLP**                           James Pizzirusso *(admitted pro hac vice)*
Steve W. Berman *(admitted pro*  Seth R. Gassman *(admitted pro hac vice)*
*hac vice)*                       1700 K Street, NW, Suite 650
1918 Eighth Avenue, Suite 3300   Washington, DC 20006
Seattle, WA 98101                 Tel: 202-540-7200
Telephone: (206) 623-7292         Fax: 202-540-7201
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL**
**SHAPIRO LLP**
Jason A. Zweig *(admitted pro hac*
*vice)*
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Class Counsel*

- 35 -

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. | Master Docket No. 3:12-CV-01893-MAS-TJB |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Notice of Motion of Plaintiffs' Motion for Preliminary Approval of Settlements, Preliminary Certification of Settlement Class, Appointment of Interim Class Counsel as Settlement Class Counsel, and Deferral of Class Notice; Memorandum of Law in support thereof; Declaration of Seth Gassman in support thereof and accompanying exhibit; proposed form of Order; and Certificate of Service were electronically filed and served upon all counsel via the court's CM/ECF filing system

Date:  June 27, 2014

**LITE DEPALMA GREENBERG, LLC**

  */s/ Bruce D. Greenberg*
Bruce D. Greenberg
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102-5003
(973) 623-3000

*Interim Liaison Counsel*

421245.1