# Exhibit  A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE NEW JERSEY TAX SALES
CERTIFICATES ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND NORMAN T. REMICK

This Settlement Agreement ("Agreement") is made and entered into this 13th day of January, 2014 (the "Execution Date"), by and between Norman T. Remick ("Remick"), and plaintiff class representatives ("Plaintiffs"), as defined herein at Paragraph 10, both individually and on behalf of a class as described herein at Paragraph 13.

WHEREAS, Plaintiffs are prosecuting the above-captioned action filed against Mr. Remick and others named in the First Amended Consolidated Master Class Action Complaint ("Complaint") in the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-01893-MAS-TJB (collectively, the "Action");

WHEREAS, Plaintiffs allege that Remick participated in an unlawful conspiracy to rig bids and allocate tax liens at public tax sale certificate auctions in the state of New Jersey in violation of New Jersey State Law as well as Section 1 of the Sherman Act;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Remick according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best

1

interests of the Plaintiffs and the Settlement Class;

WHEREAS, Remick, despite his belief that he is not liable for the claims asserted and that he has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of continued litigation, to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Remick based on the allegations of the Action, as more particularly set out below;

WHEREAS, Remick agrees to cooperate with Class Counsel as and to the extent set forth herein;

WHEREAS, the Plaintiffs, Remick, and their respective counsel engaged in extensive, good faith, and arm's-length settlement negotiations relating to the claims and the Action, with this Agreement being the product and result of those arm's-length negotiations, discovery, and analysis by counsel knowledgeable and experienced in class action litigation;

WHEREAS, Remick represents that he is not in possession of any tax sale certificates that were acquired during the Class Period that are in bankruptcy or that are foreclosures not in default judgment;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to Remick and the Releasees only, without costs as to Plaintiffs or the class, and without costs to Remick beyond the agreed-upon Settlement amount, subject to the approval of the Court,

2

on the following terms and conditions:

A.    **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.    "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-01893-MAS-TJB.

2.    "Class Counsel" shall refer to the law firms of Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

3.    "Remick's Counsel" shall refer to the law firm of Conrad O'Brien, PC.

4.    "Counsel" means both Class Counsel and Remick's Counsel, as defined in Paragraphs 2 and 3 above.

5.    "Remick" shall refer to Norman T. Remick individually, named in the Complaint.

6.    "Class Period" means the period from and including January 1, 1998 through February 28, 2009.

7.    "Defendant(s)" refers to the persons or entities who are named as defendants in the in the Action.

8.    "Execution Date" means the date set forth below, immediately above the signature lines to the agreement.

9.    "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

10.   "Plaintiffs" means Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc., both individually and on behalf of the Settlement Class as defined in Paragraph 13 of this agreement.

11.   "Releasees" shall refer, jointly and severally, and individually and collectively, to

3

Remick, his immediate family (including his wife, his children, and his parents and their estates), and employees, agents, insurers, attorneys, shareholders, partners and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  Releasees however shall not include the Non-Settling Defendants.

12.     "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, parents, subsidiaries, affiliates, partners, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

13.     "Settlement Class" means all persons who owned real property in the State of New Jersey who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above zero percent.

14.     "Settlement Class Member" means each member of the class, as defined in Paragraph 13 of this Agreement, who does not timely elect to be excluded from the class.

15.     "Non-Settling Defendants" refers to the Defendants other than Remick and the Releasees as defined in the Action.

16.     "Settling Parties" shall mean, collectively, the Releasees and the Plaintiffs, individually, and on behalf of the Settlement Class.

17.     "Tax Sale Certificate" or "TSC" shall mean a certificate which is evidence of a lien on property acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water and sewer charges) from a property owner in the State of New Jersey, along with associated interest and fees.

4

**B.     Settlement Class Certification**

18.         Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the following Settlement Class (as defined above), which shall be certified for settlement purposes only:

> All persons who owned real property in the State of New Jersey who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above zero percent.

The Settlement Class does not include Defendants, government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.  The Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

**C.     Subsequent Modification of Class Definition or Class Period**

19.         The Parties agree that modification of the definition of the Settlement Class may be necessary or appropriate prior to moving for preliminary and/or final approval of this Agreement, and agree to work in good faith to make any such modification.  Any such modification shall be made in writing and approved by Remick.

20.         In the event that Plaintiffs enter into a settlement agreement with any Non-Settling Defendant following the Execution Date for this Agreement, or obtain certification of a litigation class, and the definition of the class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 13 such

5

that the class definition expands the number of claimants, claims at issue, or Class Period,

Plaintiffs agree to use their best efforts to modify the class definition and Class Period contained

in Paragraph 13 of this Agreement to conform to such changed class definition or Class Period,

including moving for approval of an amendment to this Agreement and the dissemination of

notice of the amendment in conjunction either with notice of any subsequent settlement class or

notice of the certification of a litigation class, or both.  In no event shall the Releasees be

responsible for any additional notice costs or expenses.  Defendants shall have the option and

right to rescind this Agreement if the definition of the Settlement Class is narrowed in any way

subsequent to the Execution Date of this Agreement, provided that: (1) Remick shall give

Plaintiffs notice in writing seven days before rescinding; and (2) Plaintiffs may revert to the

Settlement Class definition contained herein within three days of receiving such notice, after

which Remick will not be permitted to rescind pursuant to this paragraph.

### D.    Settlement Consideration

#### 1.    Monetary Consideration

21.    In exchange for the mutual promises and covenants in this Agreement, including

without limitation, the Releases set forth in Paragraphs 45 through 49 below and dismissal of the

Action with prejudice as against Remick and the Releasees upon Final Approval, Remick agrees

as follows:

22.    Remick shall pay the sum of $135,000 (the "Settlement Proceeds") into an escrow

account which Settlement Class Counsel shall identify to Remick by name and account number,

managed by Huntington Bank (the "Escrow Agent") pursuant to Paragraph 22.a. below.  The

plan of distribution of the Settlement Proceeds to Settlement Class Members shall be the sole

responsibility of Class Counsel and will be decided upon at a later date by Settlement Class

Counsel, and notice of such plan of distribution shall be provided to members of the Settlement Class, and shall be authorized by order of the Court. The Settlement Proceeds shall only be disbursed pursuant to an order of the Court authorizing the plan of distribution. Remick shall pay the Settlement Proceeds within seven days of the Execution Date.

      a.     The Escrow Agent shall cause the funds deposited into the FDIC insured Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

      b.     All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to order(s) of the Court.

      c.     Except as otherwise set forth in this agreement, Releasors shall look solely to the Settlement Proceeds for settlement and satisfaction against the Releasees of all Released Claims, and Releasors shall have no other recovery against Remick or any other Releasee.

      d.     After this Agreement becomes final within the meaning of Paragraph 45, the Settlement Fund shall be distributed in accordance with the plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any Releasee have any responsibility, financial obligation, or liability

whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

23.     Since Remick is currently in possession of Tax Sale Certificates which were acquired during the Class Period:

(a)     For any Tax Sales Certificates still held by Remick against any property owner in the Settlement Class and not already in foreclosure proceedings (excluding TSCs that were issued at an interest rate above zero percent due to the existence of a prior lien held by Remick), Remick agrees:

(1)     Not to initiate foreclosure proceedings until 120 days after the final approval; and

(2)     To send written notice, in a form mutually acceptable to the settling parties, to the owners of record as stated on said TSCs within 45 days after  final approval of this settlement agreement, offering to  permit redemption of any such TSCs held by Remick  by the respective property owner(s) of those respective properties, through the municipality, in exchange for a one-time payment.  The one-time payment will equal the redemption amount less a one-time discount equal to 15 % of the redemption amount. Property owners can accept this discounted redemption offer only by making the requested payment to the municipality

8

within 45 days of the date of the written notice.

(b)     For any Tax Sales Certificates held by Remick against any property owner in the Settlement Class and to which foreclosure proceedings have been initiated as of the date of the final approval of this Agreement or which TSCs relate to a property the owner of which is under the protection of a bankruptcy court, as identified in the Foreclosure/Bankruptcy Proceeding List attached hereto, Remick shall:

(1)     Send written notice to the defendants in such foreclosure proceedings and debtors in such bankruptcy proceedings within 45 days of Final Approval, in a form mutually acceptable to the Settling Parties, which will offer to assign any TSCs held by Remick to the respective property owner(s) of those respective properties in exchange for a one-time cash payment equal to 85% of the redemption amount of the respective TSC if this opportunity of assignment is exercised by the property owners by the making of such payment within 45 days of the date of such written notice.

## 2.     Cooperation Agreement

24.     Because the vast majority of Remick's records relating to the purchase of tax liens during the Class Period were produced to the United States Department of Justice ("DOJ") in 2009, and Remick cannot retrieve such records from DOJ, Remick will provide Class Counsel with records that Class Counsel reasonably seeks and that are in Remick's possession, custody or

control.  If counsel for Plaintiffs asks the DOJ for materials that Remick produced to the DOJ, and the DOJ seeks Remick's position regarding Plaintiffs' request, then Remick, through his counsel, shall state in writing that he has no objection to the DOJ giving counsel for Plaintiffs, without costs to Remick, copies or originals of all materials received from Remick.  Following an Order granting Final Approval of this Settlement Agreement, or at the time discovery in this Action should commence, but in no event before Remick's sentence of home detention expires in April 2014, Remick will provide Class Counsel with such cooperation as may be reasonably requested for the prosecution of the Action, after a good-faith discussion between Counsel, which cooperation shall entail the following: (i) if requested by Class Counsel, giving unsworn interviews to Class Counsel at a location to be chosen by Remick, and such interview(s) shall be limited to a total of eight hours; (ii) providing Class Counsel with records in Remick's possession, as referenced in Paragraph 24, which provision of records will occur at a location of Remick's choosing in Ocean County, NJ and with the cost of copying such records to be borne by Plaintiffs; (iii) making himself available for such deposition as is reasonably required by Class Counsel; and (iv) making himself available at trial in person, by deposition or affidavit, whichever is legally necessary and reasonably possible, to testify as reasonably required by Class Counsel.  In the event Remick invokes his Fifth Amendment right against self-incrimination in responding to requests from Plaintiffs' counsel, it will be considered a material breach of the cooperation provisions in this Agreement.  Following the Execution Date, Remick's Counsel shall provide such information to Class Counsel as requested in good faith.

25.    If DOJ or the United States Office of Probation object to Remick cooperating with Class Counsel, and if Class Counsel challenges any such objection, and if the Government and Class counsel cannot amicably resolve any such objection, then Class Counsel shall seek a

resolution of any such objection with the Court and Remick will abide by any resulting order of the Court.  Remick's counsel shall be reasonably available to Class Counsel to answer questions that Class Counsel may have concerning Remick's participation in the alleged conspiracy. Plaintiffs agree that they will not use the information provided by Remick or his counsel as part of his cooperation for any purpose other than pursuit of the Action against Non-Settling Defendants, and will not disseminate or publicize the information beyond what is reasonably necessary for the prosecution of the Action or as otherwise required by law.

26.     Except as provided in Paragraph 24 of this Agreement, Remick need not respond to formal discovery from Plaintiffs or otherwise participle in the Action during the pendency of the Agreement.  Neither Remick nor Plaintiffs shall file motions against the other during the pendency of the Agreement.  In the event that the Agreement is not approved by the Court or otherwise terminates, Remick and Plaintiffs will each be bound by and have the benefit of any rulings made in the Action to the extent they would have been applicable to Remick or Plaintiffs had Remick been participating in the Action.

27.     Plaintiffs and Class Counsel agree not to assert that Remick waived his attorney-client privilege, privilege against self-incrimination, work product immunity, or any other Constitutional or other privilege or protection with respect to information, documents or testimony provided or identified to Class Counsel pursuant to this Agreement.  Nor should anything in this Agreement be construed as an agreement by any party hereto as a waiver of any privilege, immunity, or protection.

**E.     Administrative Costs and Taxes**

28.     All costs associated with the Settlement Class notification process, all fees related to administration of this Settlement or management of the Settlement Proceeds, any attorneys'

fees and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive payment awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out of the Settlement Proceeds.  The Releasees shall have no further responsibility to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any other, fees or costs beyond payment of the Settlement Proceeds.

29.     Plaintiffs will treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 28 through 33, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  Remick shall be held harmless for any acts, and the consequences of such acts, by Plaintiffs and/or the Escrow Agent, with respect to the Settlement Fund.

30.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)).  Such returns (as well as the election described in Paragraph 29) shall be consistent with Paragraph 29 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in paragraph 31 hereof.

31.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Remick or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement Fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 29 through 31 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 31 ("Tax Expenses")), shall be paid out of the Settlement Fund.

32.     Neither Remick nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)).  Neither Remick nor any other Releasee is responsible nor shall they have any liability therefore.  Plaintiffs and Remick agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 29 through 31.

33.     Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge that each Settlement Class Member shall be individually responsible for any and all tax

13

obligations related to any payments received as a result of this Settlement. Remick makes no representations about the tax ramifications, if any, of any payments made to Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a result of, this Agreement.

34.     Settlement Class Counsel may, at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Proceeds. Such expenses include past, current and future litigation expenses. Other than the payment of the Settlement Proceeds, Remick shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

**F.     Approval of this Agreement and Dismissal of Claims**

35.     Plaintiffs and Remick shall use their best efforts to effectuate this Agreement.

36.     The Settling Parties further agree to combine issuing class notice for this Agreement with: (i) the class notice for all previous settlements submitted to the Court in the Action to date; and (ii) if feasible, any other settlements with which it is reasonable to combine notice, based on the sole discretion of Class Counsel. Plaintiffs will defer class notice only until it is feasible to combine notice for this Settlement Agreement with the other Settlement Agreements.

37.     Within 7 business days of the Execution Date, the Parties will jointly notify the Court that they have entered into a settlement, and provide the Court with a copy of this Agreement.

38.     Upon the Execution Date, the Plaintiffs shall not pursue the Action against Remick and shall not require that Remick answer or respond to any pleading and shall hold the

14

litigation in abeyance against Remick. During the period of time between the Execution Date and the date a final judgment is entered against Remick pursuant to this Agreement, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members against Remick shall be tolled.

39.     Subject to Paragraphs 35 through 36 above, at the appropriate time, Plaintiffs shall submit to the Court a motion:  (a) for certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel as Settlement Class Counsel; (c) for preliminary approval of the settlement, and authorization to disseminate notice of class certification at such time set forth in Paragraph 35 through36, the settlement, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

40.     In connection with the motion contemplated by Paragraph 39 above, the Plaintiffs shall submit a proposed preliminary approval order which the Settling Parties shall request be entered by the Court and which shall include provisions that:  (i) preliminarily approve the Settlement reflected herein; and (ii) conditionally certify the Settlement Class (for settlement purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel respectively.

41.     When Plaintiffs are prepared to issue Notice as contemplated by Paragraphs 35 through 36 above, the Settling Parties shall approve the form of notice to be provided to the Settlement Class and submit it to the Court and request that the Court:  (i) find that the form, manner and timing of notice constitutes the best notice practicable under the circumstances, and is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure; (ii) direct that notice be provided

to the Settlement Class, in accordance with the Settlement, and consistent with the deferment of notice provided in Paragraphs 35 through 36; (iii) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days following the date Class Notice is initially mailed as per Paragraph 35 through 36 of this Agreement, after which no Settlement Class Member shall be allowed to object to the Settlement or exclude himself, herself or itself from the Settlement Class or seek to intervene in the Action;  (iv) schedule a hearing on final approval of the Settlement (which final approval hearing, as referenced herein and in Paragraph 44 of this Agreement, shall take place after the deadline for members of the Settlement Class to opt-out or object and no earlier than 90 days after the mailing of Class Notice); (v) pending final determination of whether the Settlement should be approved, bar all Settlement Class members, directly, on a representative basis, or in any other capacity, from commencing or prosecuting against any of the Releasees any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims as defined in Paragraph 46 of this Agreement; and (vi) pending final determination of whether the Settlement should be approved, stay all proceedings in the Action as to Remick except those related to the effectuation of the Settlement.

  42. Plaintiffs shall use their best efforts to combine dissemination of notice of the proposed Settlement Class and the Agreement with notice of other settlement agreements. The proposed method of notice of the settlement shall be determined in consultation with a class action administrator and shall be approved by the Court.  Within 30 business days after the entry of a Preliminary Approval Order, Remick shall supply to Class Counsel at Remick's expense and in such form as kept in the regular course of business (electronic format if available) such names and addresses of potential Settlement Class Members as Remick has.

43.     Within 20 business days after the end of the opt-out period established by the Court and set forth in the notice, Plaintiffs shall provide Remick, through their counsel, a written list of all potential Settlement Class Members who have exercised their right to request exclusion from the class.  In the event that more than that percentage of the Settlement Class indicated in the confidential **Settlement Opt Out Percentage Letter** (which would be submitted to the Court *in camera*) of the same date as this Agreement and executed by counsel for the parties to this Agreement elects to opt out of the Class Settlement, Remick shall have the right to elect, in his sole and absolute discretion, whether to proceed with the settlement contemplated by this Agreement.  If Remick elects not to proceed with the settlement pursuant to this provision, then this Agreement will be rescinded and have no further force or effect, and whatever Settlement Proceeds remain, after payment of settlement administration costs incurred up through the date of such election that were approved by the Court, shall be returned to Remick within 7 days of rescission.

44.     If the Court approves this Agreement, Plaintiffs and Remick shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and Remick shall agree upon:

(a)     certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, for purposes of this settlement;

(b)     as to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)     directing that, as to Remick, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

(d)      reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement to the United States District Court for the District of New Jersey;

(e)      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to Remick shall be entered; and

(f)      requiring Class Counsel to file with the Clerk of the Court a record of potential Class Members who timely excluded themselves from the class, and to provide a copy of the record to counsel for Remick.

45.      This Agreement shall become final only when (a) the Court has entered an order certifying the Class described in Paragraph 13 and approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against Remick on the merits with prejudice as to all Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Finally Approved").   It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.  On the Execution Date, Plaintiffs and Remick shall be bound by the terms of this Agreement, and the Agreement shall not be rescinded except in accordance with Paragraphs 50 through 52 of this Agreement.

**G.      Release and Discharge**

46.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other valuable consideration as described herein, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits and causes of action, judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation, debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in law or in equity or otherwise, whether class, individual or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity), that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries or damages, and the consequences thereof, arising out of, resulting from, or relating in any way to conduct concerning any agreement among settling or non-settling Defendants and/or Co-Conspirators, to rig bids or allocate tax liens in connection with the auction of Tax Sale Certificates in the State of New Jersey during the Class Period, including, but not limited to, any conduct alleged, and causes of action asserted, or that could have been alleged or asserted, whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"), including those arising or predicated on the facts and/or actions described in the Complaints under any federal, state or common law, antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time to the date of this agreement (the "Released

Claims"). It is expressly understood and agreed that this Release and settlement is intended to cover and does cover not only all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, losses and damages, and the consequences thereof, but any further injuries, losses and damages which arise from, or are related to, the claims set forth in the Complaints. The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims.

47.     Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 46 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 46 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

48.     In addition to the provisions of Paragraph 46, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 46. Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

49.     The release and discharge set forth in Paragraphs 46 through 48 herein do not include claims relating to disputes against Remick unrelated to the Released Claims. The release

20

provided for in this Agreement is expressly intended and shall be construed to release Releasees from all claims of contribution pursuant to any applicable act regarding contribution among joint wrongdoers or joint tortfeasors and any applicable act regarding comparative responsibility. Without limiting the rights of any other settling defendant in the Action, Releasees specifically retain the right to seek indemnity and/or contribution from any person, firm, corporation or entity (other than the Releasors) in connection with the claims asserted against them.

### H.   Rescission if the Agreement is Not Approved

50.    If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not certify for purposes of this settlement the Class described in Paragraphs 13 and 18, or if the Court does not enter the final judgment provided for in Paragraph 45 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Remick and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 57.  A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

51.    In the event that this Agreement does not become final, or if the Action is not certified as a class action for settlement purposes, or if the Agreement is rescinded for any of the reasons permitted by this Agreement, then all amounts paid by Remick into the Escrow Account (including interest earned thereon) shall be promptly returned to Remick from the Escrow Account by the Escrow Agent within seven days, less only disbursements made with Court

approval in accordance with this Agreement.

52.    In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraph 45 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of the Releasees, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to or offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or defend against the assertion of Released Claims, or as otherwise required by law. If the agreement is rescinded, Plaintiffs may continue to use any information provided by Remick pursuant to Paragraph 24 of this Agreement that is evidenced in any public filing in this case at the time of rescission.

I.    **Notice of Settlement  to Class Members**

53.    Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement is provided in accordance with the Federal Rules of Civil Procedure and Court order.  Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants, Co-Conspirators, and/or other sources, the names and addresses of those potential members of the Settlement Class.  Notice of

this Settlement will be issued consistent with Paragraph 41, unless otherwise ordered by the Court.

### J.    Miscellaneous

54.    This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant, the Co-Conspirators, or any unnamed co-conspirator other than the Releasees.  All rights of any Settlement Class Member against Non-Settling Defendants, the Co-Conspirators, or unnamed co-conspirators or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members.  The purchase of Tax Sale Certificates in the State of New Jersey by Remick with respect to real property of Settlement Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

55.    The parties hereto are entering into this Agreement solely to receive the benefits provided hereunder and to avoid the costs and burdens of potential litigation.  This Agreement shall not constitute or be construed or considered as an admission by the Releasees for any purpose or as evidence of liability.

56.    The United States District Court for the District of New Jersey, Trenton Division, shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Remick.  Plaintiffs and Remick submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement

23

embodied in this Agreement.  This Agreement shall be governed by and interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

57.     This Agreement and the Settlement Opt Out Letter constitutes the entire agreement among Plaintiffs (and the other Releasors), and Remick, pertaining to the settlement of the Action against Remick only, and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Remick in connection therewith.  This Agreement may be modified, or amended, only by a writing executed by Plaintiffs and Remick, and approved by the Court.  Any rescission of this Agreement by either Party must be in writing.

58.     This Agreement shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of Releasors and Releasees.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.  Releasees other than Remick, who is a party hereto, if any, are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

59.     This Agreement may be executed in counterparts by Plaintiffs and Remick, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

60.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

61.     In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the settlement is entered but is substantially reversed,

modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Remick.

62.    Neither Remick nor Plaintiffs shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

63.    Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Remick, and Releasees any right or remedy under or by reason of this Agreement.

64.    Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile and email to:

| For the Class: | For Remick: |
|---|---|
| Michael D. Hausfeld (admitted *pro hac vice*)<br>James Pizzirusso (admitted *pro hac vice*)<br>Seth R. Gassman (admitted *pro hac vice*)<br>Mindy B. Pava (admitted *pro hac vice*)<br>HAUSFELD LLP<br>1700 K Street, NW, Suite 650<br>Washington, DC 20006<br>Telephone: (202) 540-7200<br>Facsimile: (202) 540-7201<br>mhausfeld@hausfeldllp.com<br>jpizzirusso@hausfeldllp.com<br>sgassman@hausfeldllp.com<br>mpava@hausfeldllp.com | Judson A. Aaron<br>CONRAD O'BRIEN, PC<br>1500 Market St., Centre Square<br>West Tower, Suite 3900<br>Philadelphia, PA 19102<br>Telephone: (215) 864-8097<br>jaaron@conradobrien.com |

Steve W. Berman (admitted *pro hac vice*)

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Jason A. Zweig (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone:  (212) 752-5455
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

    65.    Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court

approval.

Dated: January *13*, 2014

**HAUSFELD LLP**

Michael D. Hausfeld (admitted *pro hac vice*)
James J. Pizzirusso (admitted *pro hac vice*)
Seth R. Gassman (admitted *pro hac vice*)
Mindy B. Pava (admitted *pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeldllp.com
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com
mpava@hausfeldllp.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman (admitted *pro hac vice*)

**CONRAD O'BRIEN, PC**

Judson A. Aaron
1500 Market St., Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102
Telephone: (215) 864-8097
Email: jaaron@conradobrien.com

*Attorneys for the Norman T. Remick*

26

1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig (admitted *pro hac vice*)
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone:  (212) 752-5455
Facsimile:  (917) 210-3980
Email: jzweig@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*