Basilis N. Stephanatos, PhD, JD
Plaintiff, Pro Se
P.O. Box 0520
Tenafly, New Jersey 07670-0520
Phone: (973) 897-8162/Fax: (973) 810-0440
bstephanatos@gmail.com

July 11, 2014                VIA FAX AND FIRST-CLASS LETTER

The Honorable Michael A. Shipp, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & Courthouse
402 East State Street, R. 2020
Trenton, New Jersey 08608

Phone-Chambers: (609) 989-2009
Fax: (609) 989-0463

**RE: In Re New Jersey Tax Sales Certificates Antitrust Litigation, Master Docket**
     **No. 12-1893 (MAS)(TJB)**

Dear Judge Shipp:

I am writing to provide this Court with a recent (July 3, 2014) persuasive decision by a Court of Appeals in New Jersey regarding a very similar (almost identical case) to my case (see Exhibit A). Last week, the New Jersey Appellate decision vacated a foreclosure judgment issued by a Chancery Judge on the basis that the Chancery Judge failed to weigh the significant equity of the homeowner and because the Chancery Court failed to perform findings of fact and law. The defendants, such as ATF, LLC (or the officers and/or owners Matthew A. Marini, Donna Marini, Dana Marini, Justin Weisenbacher, et al.) **put pressure on the overburdened New Jersey courts to issue judgments against homeowners**

1

**without performing any findings of fact or law. This is critical for this Court to note.**

In my case, **I had full equity in my home** which was valued by the Wayne Township for almost $500,000. That home was also the place of my business, Metropolitan Environmental Services that these conspirators destroyed causing me millions in damages. The New Jersey equity Judge McVeigh failed to perform a fact finding and rule of law to determine the significant equity I had in my home and that based on the above case law cited by the Appellate Division, weighted heavily on my favor. The alleged taxes owed (although I disputed the taxes due to overvaluation of the home) were about $20,000. Judge McVeigh, to justify her actions stated that I did not pay taxes since 1993, which was not true – it was these conspirators (Robert Del Vecchio, Jr, ATF, LLC) who lied to Judge McVeigh on an ex-parte basis – criminal thugs they are. I only disputed the over-assessment of my property and I did pay all taxes from 1993 through 2005; then, after my property was damaged by flooding, I paid about 50 percent of the taxes assessed. In January 2013, Dorothy Kreitz, the Wayne Township Tax Assessor admitted that the properties are overvalued and that no assessment has been performed since 1995. These statements were made by Dorothy Kreitz in a letter to Dr. Stephanatos.

Thus, as in the July 3, 2014 *Royal Tax Lien Services, v. Morodan* case cited above, Judge McVeigh failed to perform any fact finding and instead repeated all the falsehoods of the conspirators: Robert Del Vecchio and American Tax Funding. Consistent with the decision of the Appellate Division cited above, any judgment against me should have been vacated by the Appellate Division. The defendants however, immediately hired their friends in the sheriff's office, and violated the NJ Forceful Entry and Detainer Laws so that the Appellate Division does not hear the case. No warrant for removal was obtained prior to the Passaic County sheriff entered my property and my home. A Warrant for Removal should have been obtained from a Law Division Judge as is mandated by New Jersey law (*N.J.S.A. 2A:39-1et seq. and N.J.S.A. 2A:18-57*).

Weisenbacher, Marini and their entity ATF, LLC do lobby the state governments to change the laws to support their business. These defendants hire lobbyist entities, such as State Street Advisors to make these changes in the laws and to disregard the property rights of homeowners. This is also very critical for this Court to note. Here is an example of what Weisenbacher said about the services of these lobbying groups:

> *State Street Advisers, LLC - Our Clients State Street Advisers Represents...*
> *http://stateadvisers.com/our_clients*
>
> *4/27/2013 2:50 AM*

3

> *What Our Customers Are Saying*
>
> *"Our experience has shown State Street Advisers understands the inner workings and intricacies of the Capitol and has the ability and relationships to shepherd legislation through the maze of Albany."*
>
> *Justin Weisenbacher, President,*
>
> *American Tax Funding Services, LLC*
>
> *Jupiter, Fl.*

Following my exposure of the illegal activities of Matthew Marini, his wife, Donna and his daughters, that I made to this Court last year (see Doc. #231), Matthew Marini decided to remove them as co-owners or managers from his businesses so that he can isolate them from liability from their criminal activities. In filings in July and August 2013 with the Florida Secretary of State, Marini removed his wife Donna and daughter Dana from his entities, listing only himself as the owner and registered agent.

In these latest filings (July and August 2013) he also tries to disassociate himself from Justin Weisenbacher by removing him as the registered agent and manager.

On August 11, 2013, Marini created another entity to take the place of American Tax Funding, LLC; the name of that entity is Municipal Tax Servicing,

LLC. With criminal charges against Marini and Weisenbacher pending[1], he created other entities to allow him to continue his tax lien purchasing activities under a different name. Current law allows felons to create entities that they can in turn be used to bid at public auctions. This is the reason Marini created so many entities: to fool the public authorities and to be able to continue his activities, should an entity (such as ATF) is found to have violated the antitrust, tax lien and consumer fraud laws.

On September 19, 2013, Justin Weisenbacher created another entity to operate inside his 18898 SE JUPITER INLET WAY, TEQUESTA FL 33469 home. The name of this new entity is *MuniMac Advisors, LLC*. Weisenbacher lists himself in his LinkedIn profile as "Real Estate Property Tax Lien Consultant", employed by MuniMac Advisors, LLC since January 2013.[2] Of course this

---

[1] This is based on my communications with the New Jersey, Florida and Federal law enforcement agencies regarding my criminal complaint against these individuals.

[2] *Justin Weisenbacher's Experience*

*Real Estate Property Tax Lien Consultant*

*MuniMac Advisors, LLC*

*January 2013 – Present (10 months) Jupiter FL*

*Having purchased and serviced over $2 billion in 25+ states of delinquent property tax liens, consulting for hedge funds, municipalities, family offices,*

employment information is false, because this entity was formed on September 19, 2013 and not January 2013.

As the Court knows, Robert Del Vecchio, Sr. pleaded guilty to the felony charge on September 30, 2013. He was sentenced on January 14, 2013 in Newark, New Jersey, before federal; judge Cavanaugh I believe that both Del Vecchio, Sr. and the Del Vecchio, Jr. should be included as defendants in this case. They are both active in the tax lien business, they are both lawyers, they are related by blood (father and son), and they both share common place of business and place of residence in Hawthorn, Passaic County, New Jersey. They both created similar entities in the same style and structure (such as, Robert Del Vecchio Trust Plan, LLC) to perform the illegal action bids.

The settlement agreement of ATF for a mere $350,000 or so should be rejected by this Court because it is insufficient to cover the treble damages that these conspirators caused to so many people, including myself.

---

*private equity and banks (senior debt). Leading industry expert on raising capital, structure, acquisitions, risk management, pricing, legal issues, risks, foreclosures ,REO, diligence, loan docs, state by state parameters, bulk sales, P&S agreements, operations, borrowing bases, and overall tax lien mechanics in 25+ states.*

Source: http://www.linkedin.com/pub/justin-weisenbacher/48/312/8b2

Respectfully submitted,

*[signature]*

Basilis N. Stephanatos, PhD, JD

Plaintiff Pro Se

Cc:     Counsel of Record

# EXHIBIT A

**SUPERIOR COURT OF NEW JERSEY**
**APPELLATE DIVISION**

**DOCKET NO. A-6030-12T1**

**ROYAL TAX LIEN SERVICES, LLC,**
**d/b/a CRUSADER LIEN SERVICES,**
**Plaintiff-Respondent,**
v.
**JOSEPH MORODAN and SYLVIA MORODAN,**
**husband and wife,**
**Defendants-Appellants,**
and
**STATE OF NEW JERSEY and**
**THE NEW JERSEY ECONOMIC**
**DEVELOPMENT AUTHORITY,**

**Defendants.**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6030-12T1

ROYAL TAX LIEN SERVICES, LLC,
d/b/a CRUSADER LIEN SERVICES,

    Plaintiff-Respondent,

v.

JOSEPH MORODAN and SYLVIA MORODAN,
husband and wife,

    Defendants-Appellants,

and

STATE OF NEW JERSEY and
THE NEW JERSEY ECONOMIC
DEVELOPMENT AUTHORITY,

    Defendants.

---

    Submitted June 17, 2014 – Decided July 3, 2014

    Before Judges Parrillo and Alvarez.

    On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-5142-10.

    Ronald T. Nagle, attorney for appellants.

    Taylor and Keyser, attorneys for respondent (Robert W. Keyser, on the brief).

PER CURIAM

    Defendants Joseph and Sylvia Morodan appeal from the denial of their Rule 4:50-1 application seeking to vacate a final

From: Basilis Stephanatos    Fax: (973) 610-0440    To: Judge Shipp Shipp    Fax: +1 (609) 989-0465    Page 10 of 18 07/11/2014 0:16

Case 3:12-cv-01893-MAS-TJB   Document 370   Filed 07/14/14   Page 10 of 18 PageID: 5284

judgment in a tax sale certificate foreclosure action, N.J.S.A. 54:5-85 to -104.67. We vacate and remand for additional proceedings.

To understand the decision which follows, we note that under the Tax Sale Law, unpaid taxes become a lien on real property, N.J.S.A. 54:5-6. When taxes remain "in arrears on the [eleventh] day of the eleventh month in the fiscal year when the taxes or lien became in arrears," the municipality may sell its lien, in the form of a tax sale certificate, to a third party at a tax sale. N.J.S.A. 54:5-19. If the property is not redeemed within two years of the sale, the purchaser can file a foreclosure action. N.J.S.A. 54:5-86. Entry of the judgment bars the right of redemption, and "[t]he judgment shall be final upon the defendants . . . and no application shall be entertained to reopen the judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit." N.J.S.A. 54:5-87.

Defendants did not provide us with a copy of the complaint plaintiff Royal Tax Lien Services, LLC d/b/a Crusader Lien Services, filed, or of any answer. Fortunately, plaintiff's appendix included a copy of the complaint, filed July 7, 2011. Also included was a copy of defendants' answer and separate

defenses, filed November 18, 2011. The answer was dated August 17, 2011.

Defendants did provide the certification of Joseph Morodan, which had been submitted in support of their Rule 4:50-1 motion to set aside the final judgment and extend time for redemption. Morodan's certification explains that defendants' tenant, who operated a gasoline station on the site, in addition to monthly rent, was required to pay the property taxes in the years the taxes went into default. The lease was signed on August 11, 2004, and called for monthly rent payments of $4750 through 2019.

> The certification states that Morodan:
>
>> had a series of health and family problems that were debilitating and left [him] unable to work . . . chronic lung disease (COPD) that manifested itself as pneumonia and double pneumonia — causing [him] to be hospitalized multiple times with month-long recovery periods[,] . . . an enlarged heart and back pain resulting from arthritis and scar tissue from an earlier operation.

Morodan's wife Sylvia is unable to work or drive due to medication administered "to treat severe back spasms."

Morodan's certification is silent as to any action defendants may have taken upon service of the tax lien foreclosure complaint. It does not include the date defendants learned the taxes were in arrears, or the date the tenant

From: Basilis Stephanatos  Fax: (973) 810-0440   To: Judge Shipp Shipp  Fax: +1 (609) 989-0463   Page 12 of 18 07-14-2014 10:03

Case 3:12-cv-01893-MAS-TJB Document 370 Filed 07/14/14 Page 12 of 18 PageID: 5286

stopped paying rent. After the foreclosure complaint was filed, defendants did sue the tenant, obtaining a judgment in the amount of $151,314, and a judgment of possession.

Morodan also states:

> [p]roper notification of the final redemption date for the [p]roperty was on September 10, 2012[, and] was never given. The [p]roperty is my only source of income. Instead, I learned on March 22, 2013 — the day [the tenant] was supposed to vacate the [p]roperty — that I no longer owned the [p]roperty. [The tenant], who has refused to pay monthly lease fees, insurance, maintenance and property taxes for more than two years, then proceeded to tell me that it had a contract to buy the property.

Absent from the record is any additional mention of the allegedly improper notice of a final redemption date. Nor does Morodan's certification elaborate on the suggestion that the tenant had worked out a new lease with the owner of the tax sale certificate.

Morodan alleged that the company that acquired the tax lien in December 2012 was charged with "bid rigging at municipal tax lien sales or auctions in the State of New Jersey and [was] the subject of an ongoing investigation by the Department of Justice and the FBI." Even the import of this claim is unclear. The plaintiff in the foreclosure complaint was "Royal Tax Lien Services, LLC, d/b/a Crusader Lien Services." The plaintiff on

From: Basilis Stephanatos  Fax: (973) 810-0440    To: Judge Shipp Shipp   Fax: +1 (609) 989-0463    Page 13 of 18 07/11/2014 9:16

Case 3:12-cv-01893-MAS-TJB   Document 370   Filed 07/14/14   Page 13 of 18 PageID: 5287

the final judgment, however, is "WRCC, LLC." Nothing in the record explains if after the filing of the complaint the caption was simply amended, or if the second corporation, WRCC, acquired the tax sale certificate after the filing of the complaint.

Timothy W. Bricker, the senior vice president of WRCC, LLC, signed plaintiff's certification in opposition to defendants' Rule 4:50-1 motion. Bricker is also the senior vice president of Royal Tax Lien Services, LLC d/b/a Crusader Lien Services, "the predecessor in title to the tax sale certificate." Bricker asserted that Royal Tax Lien Services LLC had been exonerated of charges of "bid rigging" brought by the Department of Justice.

But Bricker's certification acknowledged that Royal's "predecessor entity," and its former principal, "have pled to antitrust violations, and have entered into a settlement agreement with the Department of Justice. However, that entity has nothing to do with this plaintiff, or to Royal." Bricker alleged that Royal purchased the certificate "[a]s a result of competitive bidding conducted by the Township of Dover Tax Collector, purchased at a zero percent interest rate, "and a premium of $5,100 was paid to the municipality."

The predecessor entity that pled guilty to federal bid rigging charges is "Crusader Servicing Corporation." The name of that corporation is very similar to "Crusader Lien Services,"

the "dba" title of Royal. It is possible but unlikely that is mere coincidence.

In support of his <u>Rule</u> 4:50-1 motion, Morodan also submitted a lease-purchase agreement negotiated with a third party for a price of $650,000. The agreement, signed October 28, 2012, was allegedly never consummated because the tenant refused to vacate the property.

In rendering his oral decision from the bench on defendants' <u>Rule</u> 4:50-1 motion to vacate the judgment, the judge said only the following:

> Well, what strikes me is if there's no real ground under <u>Rule</u> 4:50 to set aside the judgment certainly do not think this is a situation of excusable neglect. Because the defendant was aware of what was going on. And I think as was suggested, . . . in [p]laintiff's papers even if there were health issues the defendant could have had somebody essentially or obtain somebody to help manage the property.
>
> What strikes me is that the taxes simply weren't paid for quite a long period of time, five years, which is more than enough time during that period the defendant should have done something. If the taxes weren't paid certainly could have taken action to evict the tenant and either try to sell the property or get a new tenant in it. But that wasn't done. But I do think that the whole foreclosure process does give the property owner ample time to attempt to redeem.

From: Basilis Stephanatos   Fax: (973) 810-0440   To: Judge Shipp Shipp   Fax: +1 (609) 989-0463   Page 15 of 18 07/14/2014 9:16

Case 3:12-cv-01893-MAS-TJB   Document 370   Filed 07/14/14   Page 15 of 18 PageID: 5289

In view of that I will deny the motion to set aside the judgment. Let me see if there's an order.

"A motion under Rule 4:50-1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining whether relief should be granted or denied." Hous. Auth. of the Town of Morristown v. Little, 135 N.J. 274, 283 (1994). In order for us to fairly review a judge's exercise of discretion, however, the judge must have complied with Rule 1:7-4(a), and rendered findings of fact and conclusions of law. Both are missing in this case. Rule 4:50-1(a) provides that "the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect . . . ."

Excusable neglect has been defined as excusable carelessness "attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Mancini v. Eds ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 335 (1993). Excusable neglect can be established based on a party's or a party's family's health problems. See Bergen-Eastern Corp. v. Koss, 178 N.J. Super. 42, 46 (App. Div.) (excusable neglect found where aged widow with a psychiatric

From: Basilis Stephanatos  Fax: (973) 810-0440   To: Judge Shipp Shipp   Fax: +1 (609) 989-0465   Page 16 of 18 07/14/2014 9:16

Case 3:12-cv-01893-MAS-TJB   Document 370   Filed 07/14/14   Page 16 of 18 PageID: 5290

history did not appreciate the import of service of a tax foreclosure complaint), appeal dismissed, 88 N.J. 499 (1981).

There are anomalies and voids in the submissions to the Chancery judge, which made a thorough decision on this Rule 4:50-1 motion challenging, ranging from the unexplained discrepancy between the date the answer was purportedly signed and the date it was filed, to the lack of more specific information about Morodan's health issues. There may be serious questions as to plaintiff's acquisition of the certificate, or some premature arrangement with the tenant.

Nonetheless, defendants did present evidence that once on notice, they took steps to evict their tenant, and to collect the funds with which to pay the taxes. They obtained a purchaser for the property, and thereby could have made plaintiff whole.

We cannot discern from the judge's decision, however, if he took note of any of these circumstances. Nor can we discern the reason he assumed defendants could have obtained assistance from others in managing their financial affairs if physically unable to do so on their own.

Moreover, if the final judgment stands, plaintiff will receive property that, according to defendants, is valued at $650,000 for an approximate $65,000 investment. That is a

From: Basilis Stephanatos Fax: (973) 610-0440 To: Judge Shipp Shipp Fax: +1 (609) 989-0465 Page 17 of 19 07/11/2014 19:15

Case 3:12-cv-01893-MAS-TJB Document 370 Filed 07/14/14 Page 17 of 18 PageID: 5291

factor that should have been taken into account when balancing the equities. See I.E.'s, L.L.C. v. Simmons, 392 N.J. Super. 520, 537 (Law Div. 2006) (tax sale certificate foreclosure system can be "Dickensian" where owners hold substantial equity in property. "Until the Legislature devises a better system, courts of equity must do their best to balance the equities, taking into account the necessity of allowing the transfer of clear title and the need to compel the payment of property taxes against the necessity of ameliorating, in appropriate circumstances, the onerous impact of the procedure").

Finally, the judge did not even mention plaintiff's alleged failure to provide adequate notice to defendants. It is always necessary for a judge to render findings of fact and rulings of law; in this type of case where the courthouse doors seem to have been slammed shut on defendants who might have thereby inequitably lost a valuable property, it was crucial. See Ronan v. Adely, 182 N.J. 103, 110-11 (2004); Cameco, Inc. v. Gedicke, 157 N.J. 504, 509-10 (1999); Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 562-63 (App. Div.), certif. denied, 200 N.J. 476 (2009).

Certainly, without proper findings of fact and conclusions of law, appellate review is impossible. Shulas v. Estabrook, 385 N.J. Super. 91, 96 (App. Div. 2006). Accordingly, we vacate

From: Basilis Stephanatos  Fax: (973) 810-0440   To: Judge Shipp Shipp   Fax: +1 (609) 989-0465   Page 18 of 18 07/11/2014 19:16

Case 3:12-cv-01893-MAS-TJB  Document 370  Filed 07/14/14  Page 18 of 18 PageID: 5292

the order denying the Rule 4:50-1 motion and remand the matter for reconsideration of the application. The parties are to provide the court with all necessary information, including the status of any prospective buyer. It need not be reiterated that the judge considering the matter must render a decision in compliance with Rule 1:7-4(a).

Vacated and remanded for further proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION