U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY – TRENTON
DOCKET NO. 3:12-cv-01893

```
-------------------------
LANG BOYER, et al.,        :
                           :
                           :          TRANSCRIPT
        Plaintiffs,        :
      -vs-                  :
                           :             OF
ROBERT STEIN, et al.,      :
                           :       MOTION HEARING
        Defendants.        :
-------------------------
```

Place: Clarkson S. Fisher Federal
       Building and U.S. Courthouse
       402 East State Street
       Trenton, New Jersey 08608

Date: Thursday, March 6, 2014

B E F O R E:

    THE HONORABLE TONIANNE J. BONGIOVANNI, U.S.M.J.

TRANSCRIPT ORDERED BY:

    TONIANNE J. BONGIOVANNI, ESQ.

A P P E A R A N C E S:

    JASON ZWEIG, ESQ. (Hagens, Berman, Sobol & Shapiro, LLP)
    SETH GUSSMAN, ESQ.
    BRUCE GREENBERG, ESQ. (Lite, DePalma, Greenberg, LLC)
    Attorneys for the Plaintiff

    ERICA SIBLEY, ESQ. (Sills, Cummis & Gross, PC)
    Attorney for Defendant William Collins

    WILLIAM J. HUGHES, JR., ESQ. (Cooper, Levenson, April,
      Niedelman & Wagenheim, PA)
    Attorney for Defendant M.D. Sass Municipal
      Finance Partners-I, LLP

AudioEdge Transcription, LLC
425 Eagle Rock Avenue – Suite 201
Roseland, New Jersey 07068
(973) 618-2310
www.audioedgetranscription.com

A P P E A R A N C E S (Continued):


ATTORNEYS APPEARING VIA TELEPHONE:

JOSEPH ALLERHAND, Esq. (Cooper, Levenson, April,
  Niedelman & Wagenheim, PA)
Michael Gell, Esq. (Cooper, Levenson, April, Niedelman
  & Wagenheim, PA)
Attorneys for Defendant M.D. Sass Municipal
  Finance Partners-I, LLP

STEVE REED, Esq.
R. BRENDAN FEE, ESQ. (Morgan, Lewis & Bockius, LLP)
Attorneys for Crusader Servicing Corp.

JASON RAOFIELD, ESQ. (Convington & Burling, LLP)
PERRY S. WARREN, ESQ. (Maselli Warren, PC)
Plymouth Park Tax Services, LLC

LAURIE KELLY, ESQ.
Attorney for Defendant Vinaya J. Jessani

SHALOM DAVID STONE, ESQ. (Brown, Moskowitz & Kallen, PC)
Attorney for Defendant Phoenix

I N D E X

03/06/14

                                                    Page

ON MS. DAVIES' ISSUES/PROCESS FOR NOTICES

By Mr. Zweig                                        15


ON MOTION FOR APPROVAL OF SETTLEMENT

By Mr. Zweig                                        18


COURT DECISION                                      19

Colloquy                                                    4

1          (On record at 10:39:45 a.m.)

2          THE COURT:  Counsel on the phone, you listening?

3                (Multiple affirmatives)

4          THE COURT:  Right.  Okay.  Let me first apologize to

5     you folks on the phone for the delay.  I wanted to meet with

6     the attorneys who were present just to go over the history of

7     the case in sort of a generic way, as well as what today's

8     proceeding was about.  Obviously this is the first time that I

9     am substantively dealing with any motions and Judge Shipp has

10    obviously asked that I preside over this.  So I appreciate

11    your patience.

12          And then the Counsel, it just took us a while to get

13    the roll call of those who were on the phone.

14          So let me start with going through for the record a

15    roll call of who's here on behalf of the Plaintiffs.

16          MR. GREENBERG:  Good morning, Your Honor, Bruce

17    Greenberg, Lite, DePalma, Greenberg in Newark, liaison counsel

18    for the Plaintiffs.

19          MR. STONE:  Your Honor?

20          THE COURT:  Yes, you can't hear him.

21          MR. STONE:  Your Honor, this is Shalom Stone, we

22    can't hear the Counsel.

23          THE COURT:  Okay.  You know what, I'm going to --

24    Mr. Morelli, I'm going to put them hold and perhaps if you put

25    your phone on speaker that might help to be a bit closer.

Colloquy                                    5

1    So go ahead.

2                All right, we'll try it again.

3                MR. GREENBERG:  Good morning, Your Honor, Bruce

4    Greenberg, from Lite, DePalma, Greenberg in Newark, liaison

5    Counsel for the Plaintiffs.  Co-league Counsel for the

6    Plaintiffs who are here.  They will introduce themselves with

7    Your Honor's permission.

8                THE COURT:  All right.

9                MR. ZWEIG:  Good morning, Your Honor, Jason Zweig

10   from Hagens, Berman, Sobel, Shapiro, one of the co-league

11   Counsel.

12               MR. GUSSMAN:  Good morning, Your Honor, Seth Gussman

13   from --, LLP.  Another one of the co-league Counsel in this

14   action.

15               THE COURT:  Okay.  Great.  And I know, Ms. Davies,

16   you can remain seated.  I know you're here and I'm going to

17   come back to you in a moment.  Let me just go through all of

18   the attorneys' appearance first.

19               And then for Defense Counsel seated in the

20   courtroom.

21               MR. HUGHES:  Good morning, Your Honor, William J.

22   Hughes, Jr., Cooper Levenson of Atlantic City, New Jersey on

23   behalf of M.D. Sass.  Local Counsel appearing I think on the

24   phone.  Michael Bell and Joseph Allerhand who will introduce

25   themselves.

Colloquy                                6

1          THE COURT:  Okay.  And -- go ahead.

2          MS. SIBLEY:  Good morning, Your Honor.  Erica Sibley

3    for Sills, Cummis and Gross, PC representing Defendant William

4    A. Collins.

5          THE COURT:  And I should have acknowledge, Ms.

6    Sibley, I you understand you have an excellent professor at

7    Seton Hall and -- moi.

8          MS. SIBLEY:  That I did.

9          THE COURT:  So nice to you're succeeding and moving

10   along and I didn't make you like run out of the classroom and

11   quit the whole profession.  So good for you.

12         Okay.  Turning to the Defendant on the line, who do

13   I have for Crusaders?

14         MR. REED:  Good morning, Your Honor, this is Steve

15   Reed, I'm here with my partner Brandon Fee from Morgan Lewis,

16   appearing on behalf of the -- Defendants as they refer to as

17   the Crusaders.

18         THE COURT:  And Phoenix?  Mr. Stone?

19         MR. STONE:  Yes.

20         THE COURT:  Okay.

21         MR. STONE:  Shalom Stone here with -- representing

22   the Defendants Phoenix Funding and --

23         THE COURT:  And for SAS (sic)?  Sass.

24         MR. ALLERHAND:  It's Joseph Allerhand and Michael

25   Bell from the Wagenheim Law firm, co-Counsel to the Sass

Colloquy                                                     7

1    Defendants along with them.

2            THE COURT:  And Plymouth.

3            MR. RAOFIELD:  Good morning, Your Honor, this is

4    Jason Raofield, Covington and Burling for the Plymouth Park

5    and I believe we also have on the line Perry Warren.

6            THE COURT:  Right.

7            MR. WARREN:  Good morning, Your Honor, Perry Warren

8    from Maselli Warren,

9            THE COURT:  Good morning, Mr. Warren.  And then last

10   but not least for Jessani?

11           MS. KELLY:  Yes, this is Laurie Kelly from --

12           THE COURT:  Right.  Am I missing anyone?  Perfect.

13           All right, let me just set out the purpose that

14   we're here for, for a moment, and address Ms. Davies who's a

15   Plaintiff in this matter.

16           Ms. Davies, can you hear me?

17           MS. DAVIES:  Yes, Your Honor.  However, I am a

18   little hard of hearing.

19           THE COURT:  If you don't -- if you can't understand

20   anything I'm saying, let me know and I'll -- I'll try to speak

21   up more loudly.

22           MS. DAVIES:  Thanks, Your Honor.

23           THE COURT:  First of all I want to mention to you

24   that if we haven't spoken to you directly it's because you are

25   officially represented in this case by Mr. Greenberg and

Colloquy                                    8

1    Counsel.

2           Judge Shipp had made a determination months ago that

3    he appointed lead Counsel in this matter, actually a year and

4    a half ago and on the docket it's entry number 108, is Judge

5    Shipp's order appointing the firm to represent all Plaintiffs

6    in this matter.

7           You have the absolute right to represent yourself if

8    you want, but I can't deal with attorneys and then have their

9    clients, which is what you are, writing to me and even more

10   complicated is the fact that your son, who I gather is sitting

11   behind you, also writing to me.  And this is something that I

12   handle the same way for everyone in every case.  I've been

13   doing this 11 years.  I'm not treating you any differently.

14          And perhaps just to torture the explanation is if

15   you don't want to have an attorney and you don't want Mr.

16   Greenberg's firm to represent you, you can look to represent

17   yourself in this case.

18          If you do represent yourself, I would tell you and I

19   can give you more detail if that's the decision that you make,

20   we do have tools and resources available for people who

21   represent themselves and we have -- on our web site we have a

22   pro se litigant's handbook.  You have access to all the civil

23   and local rules.

24          So there would be available to you again these tools

25   that would help you perhaps navigate what's going on in the

Colloquy                                                    9

1    system.

2              The other that I need to emphasize is I can't deal

3    with an attorney, a client and then the son of a client.  So

4    if you were to represent yourself and that's what I decided

5    was appropriate or you decided you wanted to do, I couldn't

6    have your son speak on your behalf, unless frankly he wanted

7    to go -- you wanted to give him power of attorney to be your

8    spokesperson.

9              I can't be in a position where your son is saying

10   something to me, I agree with him, and then perhaps a month or

11   so later you pop up and say well, that's not in my best

12   interest and, Judge, you shouldn't have listened to him,

13   because he's not a Plaintiff to this case and he doesn't have

14   the right to affect my interest.

15             I don't want to make it more complicated, but

16   essentially this is your case, you're the named Plaintiff.  I

17   either speak to your attorney or I speak to you.

18             And the other thing that I will mention is today's

19   purpose is just to determine whether or not, under the rules

20   that I have to apply, I believe that the settlement should be

21   preliminarily approved.

22             And what that means is, if I believe that the

23   components of the rules have been met and I decide that it's

24   appropriate to send out -- to preliminarily approve this, then

25   the lawyers will have to send out notice to everyone who's

1    potentially a member of this class.

2         You would have the ability to object to the ultimate

3    settlement or you could decide to, what we call opt out.  You

4    could say I don't want to be a part of this deal, I want to go

5    forward on my own and you could then pursue this case against

6    everyone, not getting any benefit from the settlement and

7    trying to, pardon the common place term, try to fight it out

8    with each of the Defendants on your own.

9         So let me make it clear that no one is forcing you

10   to be a part of this settlement.  You can object to the

11   settlement as a whole if you want or you can say I don't like

12   what's going on, I'm not giving up my rights, I'm going to opt

13   out and I'm going to take the case to go forward on my own.

14        I know I've thrown a lot at you, but do you

15   understand, Ms. Davies?

16        MS. DAVIES:  I'm sorry, I didn't hear the last part.

17        THE COURT:  I said -- I just said I know I've thrown

18   a lot of information at you, but I wanted to make sure you

19   understand.  Do you have any questions, general questions for

20   me about the process or rights or options?

21        MS. DAVIES:  Well, as you stated, there is a lot of

22   information that you've just given me and it was not my intent

23   at any point to opt out, which is -- I might mention that

24   almost from the beginning my group of attorneys had asked me

25   if I wanted.  I mis-stated, Mr. Burrow, Nicholas Burrow, was

1    the gentleman that we dealt with at the very beginning.

2         And almost from the beginning I was asked if I

3    wanted to opt out and which I didn't really quite understand.

4    If you're in a group, why are you repetitively asked if you

5    want to opt out?

6         THE COURT:  Well, I can't speak specifically for

7    what was in his mind and let me just digress for a minute.  My

8    chambers, my office, my staff are very accessible to people

9    who represent themselves.  We're supposed to be open.  This is

10   your court, this is your tax dollars, so we try to help you

11   navigate the system, but I can't get caught in a situation

12   where what I'm saying to you sounds like legal advice.

13        But having said that if an attorney is hearing that

14   you're dissatisfied and you have concerns about the

15   settlement, you have objections to people who are involved in

16   the settlement, I -- I view it as him just probably saying to

17   you, if you don't like the settlement -- and not in a nasty

18   way, but you have rights.  You can agree to go along with

19   this.

20        We, as attorneys, think this is in the best

21   interests of the class of participants.  They have to bring it

22   to the Court for us to make sure that there isn't any --

23   anything nefarious going on and that the rules are followed.

24        But if you have specific objections and you have

25   concerns about the appropriateness or the fairness or some

1    conflict of interest that is spilling over and you think

2    affecting what should be happening here, then the attorney

3    probably rightly said to you, you do have the option of

4    agreeing or of saying that you don't want to be a part of

5    this.

6            And that's fine, as long as you understand then the

7    result would be that you be left on your own or perhaps with

8    other people who decide to opt out.  And that's absolutely

9    your right to pursue this case on your own.

10           So I don't know if that helps.

11           MS. DAVIES:  Yes, it does.  I want to emphasize that

12   I'm not really personally involved here.  I mean there are so

13   many people who -- who are suffering greatly from the things

14   that have been perpetrated on home owners by these racketeers.

15           And I -- I don't want to have conflict with my

16   attorneys in my class action, however I -- I do think that

17   there's been a lack of communication and consultation.  They

18   can say they've spoken with -- with me on numerous occasions,

19   which I absolutely would --.  It seems to me that nothing gets

20   done.  I mean, we're -- we're really in the same --

21           THE COURT:  Well, let me jump in.  Something is

22   getting done, which is why we're here today.

23           And let me also mention that often the Court,

24   whether it's me, Judge Shipp, any other Judge in the Court

25   only see motions like this.  Often the Court decides it is not

1    necessary to bring people here to have this hearing.  We're

2    sensitive to everyone's time, the money involved, the wear and

3    tear on -- on everyone.

4              MS. DAVIES:  I see.

5              THE COURT:  I have this hearing in part because of

6    the concerns that I have been receiving from you and

7    understanding that you have had some issues.  I don't expect

8    that we're going to resolve your issues or concerns

9    immediately, but I wanted to explain to you the process, let

10   you know what your options are and then you can decide, after

11   today, how you want to handle your case.

12             One other thing I'll say as an aside.  While I

13   appreciate that you have concerns about other people who are

14   victims here and whether they're rights are being represented.

15   That's part of what's going to be addressed when the notice is

16   sent out and you will have the ability to see who the notice

17   is sent to, whether or not it's sends a wide enough net to

18   capture the people who are most likely to be affected or have

19   been affected or who are, as you're calling them, victims.

20             It's not a perfect system and that's one of the

21   things that when you revisit this, if the matter is

22   preliminarily -- preliminarily approved by me, which frankly,

23   based on what I've seen, I don't have any doubt that in a

24   moment I'm going to sign off on the -- the proposed

25   settlement.  I wouldn't be doing my job if I hadn't read

Colloquy                                  14

1    through all of the papers, unfortunately didn't -- and I have

2    questions, I'll certainly ask Counsel.

3           But after today, notice will be sent out and if you

4    have a concern about whether or not it's encompassing all of

5    the people who it should, that something you can certainly --.

6           But I think for the best course today, frankly, Ms.

7    Davies, is to let you digest what I've said to you.  I know,

8    again, you have folks with you who hopefully will also have

9    heard what I said and appreciate what I said.  I don't want to

10   make this more complicated that it needs to be, but if you

11   have any questions you can ask to order a copy of this

12   transcript.  This is being recorded.

13          And also in a -- in a simple way, if you have a

14   question, I know the attorneys from -- Mr. Greenberg and his

15   Counsel, they're available.  If you aren't satisfied with what

16   they're saying, that's one thing, but I think that if you have

17   a question of what's the next step or the like, they will

18   certainly let you know.

19          I would just ask that you exercise some patience,

20   because everyone is busy and you might not get a prompt

21   turnaround in response to any questions that you have.

22          But it's a long winded way of saying I've given you

23   sort of an overview of how this is going to progress.  Told

24   you what your options are, if you want to represent yourself,

25   you can represent yourself or seek to represent yourself in

1    this and be part of this class action or you can decide that

2    you want to be on your own.

3           But after today, there will be an opportunity for

4    you to write in and explain what, if any, objections you still

5    have or concerns that you have regarding the settlement itself

6    or the people that it has -- who have received notice of it.

7           We're the gatekeeper, the Court's the gatekeeper.

8    We're -- we're supposed to make sure that all of the rules and

9    the case law that has been going on for decades are followed.

10   Okay?

11          So I'm going to switch gears now and turn to the

12   Plaintiff, and if you would, outline what's in that

13   settlement.  If anyone has anything they want to say on this

14   issue, proceed.  No?  Did I -- I don't -- if I mis-stated

15   anything regarding -- and the like.

16          MR. ZWEIG:  Your Honor, would you prefer I stand on

17   the podium or is the counsel table okay?

18          THE COURT:  Can you folks on the phone hear him?

19   Did you all fall asleep?

20          UNIDENTIFIED SPEAKER:  No, we're here, Your Honor.

21   It was difficult to hear Ms. Davies, but hopefully we'll be

22   able to hear Counsel.

23          THE COURT:  Okay.  Come on up --

24          MR. ZWEIG:  Your Honor, Jason Zweig, from Hagens

25   Berman.  What you said to Ms. Davies, of course, it was

1    appropriate you're telling her.  For -- just for the record,

2    for a couple months, obviously I'm sure Your Honor said it

3    better than perhaps we did, but we have had a number of

4    conversations in which we tried to explain to -- to her, and

5    her son, the process.

6         And as Your Honor knows the process is that we seek

7    preliminary approval, we will then be sending out a notice to

8    as many people as we possibly can, which will advise them of

9    the case, their right to either object or opt out.  A right

10   that Ms. Davies, of course, as well as every class member has,

11   and that point she -- they can decide what they'd like to do.

12        Obviously we prefer to have her as a member of our

13   class.  We've been working very hard, despite there

14   dissatisfaction with what we've done and will continue to do

15   so and we certainly hope they stay in the class and -- and go

16   forward with us.  But whatever they decide to do, they decide

17   to do.

18        In terms of the notice, just so the Court is aware,

19   Judge Shipp previously approved six settlements last year

20   totaling just under a million dollars.  These settlements

21   total $6,775,000.

22        Our plan, in terms of notice is to send one single

23   notice out that explains all of these settlements.  And in

24   terms of that process --

25        THE COURT:  I'm sorry, when you said all of them,

1       meaning the ones that Judge Shipp has already approved?

2                   MR. ZWEIG:  That's correct.

3                   THE COURT:  Got it.  Okay.

4                   MR. ZWEIG:  As part of Judge Shipp's order he

5       deferred notice on those because we had some other

6       settlements, these were deeds that were coming down the pike

7       and so in terms of efficiency and cost savings, we thought it

8       would make sense to do all them in a single notice, which the

9       Court is aware it's somewhat of an expense process.

10                  THE COURT:  Are you waiting also to conclude the --

11      the -- or to have a preliminary approval on the, like for

12      example, the ATF was just filed, I believe, by Mr. Greenberg,

13      so they're not part of today's proceedings.  So are you going

14      to wait for -- for others --

15                  MR. ZWEIG:  For others?

16                  THE COURT:  -- before you send out the notice?

17                  MR. ZWEIG:  Well, the answer is, Your Honor, it

18      depends.  Just so Your Honor is aware, so, in New Jersey there

19      are 566 municipalities.  There's an auction each year in each

20      municipality.  The case --  the class period in this case

21      starts from  -- in 1998 and extends to February of 2009.  The

22      Defendants in this case, many of which are small businesses

23      and even individuals, don't have sophisticated databases where

24      they keep track of the names and addresses of all the class

25      members.

1        We've actually hired an admin -- a company called

2   Name Source that has gone out to all 566 municipalities to try

3   to get all the name and address information for the entire

4   class period.  They've been doing that for the last months or

5   so.

6        I'm optimistic in another couple of months they

7   should have that database created, at which point we'll be

8   able to go forward with the notice program.  And so assuming

9   that two months holds, I think it's likely we would probably

10  try to squeak in these other settlements in -- into the notice

11  program, but it will just -- I think it -- I just can't answer

12  one way or the other, it will depend on the timing of this

13  database.

14            THE COURT:  Okay.  Good.

15            MR. ZWEIG:  Certainly it would include the first six

16  settlements and -- and if Your Honor was inclined to

17  preliminarily approve the settlement, subject to the current

18  motion.  Certainly those too.

19            THE COURT:  Okay.  All right.  Turning to the

20  current motion, anything you want to outline on the record,

21  other than what's in your submission?

22            MR. ZWEIG:  You know, Your Honor, we put forward

23  papers that I think extensively set out the benefits achieved

24  by this settlement, which we think, in light of the

25  complexities of this case, show that this is a settlement that

Colloquy                                          19

1    should be preliminarily approved.

2            I don't think there's that much, if anything, I can

3    add other than what's in our papers.  We think the papers

4    speak for themselves and set forth a basis on which the Court

5    can preliminarily approve.

6            THE COURT:  Anyone else?  Let me just turn to folks

7    in the court.  Any -- Mr. Hughes, --

8            MR. HUGHES:  No, Your Honor.

9            THE COURT:  -- Ms. Sibley, anything to add or --

10           UNIDENTIFIED SPEAKER:  No, Your Honor, thank you.

11           THE COURT:  How about you folks on the record,

12   anything you want to ask, highlight, state?  Wow, silence.

13   How is that happening?  Two, four, six, eight attorneys with

14   nothing to say.  I think it's a first.

15           Okay.

16           UNIDENTIFIED SPEAKER:  Everyone's being polite --

17   polite to deferring to each other, but this is -- I have

18   nothing to add.

19           THE COURT:  Okay.  All right, guys.  You can be

20   seated then.  Thanks to you, Mr. Zweig.

21           I have reviewed the proposed settlement agreement

22   and following what I need to, pursuant to Federal Civil Rule

23   23A(1), etcetera, I do find that the settlement agreement is

24   worthy of at least being preliminarily approved, subject to

25   any objections certainly that the Court can -- will consider

1   after the appropriate notice is sent out.

2          Clearly you folks have been involved in good faith

3   negotiations.  You're making efforts to gather material so

4   that the class is properly identified.  You're experienced

5   attorneys, you've all been before this Court on a number of

6   occasions.

7          I've reviewed the settlement agreement in its

8   entirety and supporting documents.  I don't find anything

9   that's obviously deficient not do I find anything that

10  suggests that any Plaintiff would be unfavorably handled,

11  whether it's a named Plaintiff or a member of the proposed

12  class.

13         So finding that, I'm going to preliminarily approve

14  the settlement.  I'll sign the order recommending, actually,

15  to Judge Shipp.  I should step back.  I'm so used to dealing

16  with these when the matter's been consented to me.

17         I'm going to recommend to Judge Shipp that this

18  matter be preliminarily approved and will obviously have a

19  fairness hearing at a later date.  Normally, my experience is,

20  that we're able to set the date today, but it seems like I

21  need to defer that, because you need to figure out when notice

22  is going to go out and that everyone has an appropriate amount

23  of time to file an objection.

24         So I gather, Mr. Zweig, I should just wait.  When do

25  you anticipate that you'll have a game plan for sending out

1          the -- the generic notice for all of the settlements so far?

2                    MR. ZWEIG:  Procedurally, Your Honor, I think what

3          would happen is, and this is assuming the database vendor is

4          done in the next couple of months, we would actually make

5          another application to the Court for authorization to

6          disseminate the notice.  So, I'm -- I'm optimistic that it

7          would be in a couple of months that we would do that.  And

8          then will -- assuming the Court grants that motion, that would

9          set up the dates for the fairness hearing, objection

10         deadlines, yeah, deadlines and that sort of thing.

11                   THE COURT:  Right.  I just wanted to get a time

12         frame of when you thought you'd be able to tell me that --

13         that notice would be able to go out.  So we're -- we're un --

14                   MR. ZWEIG:  I'm optimistic that would be a couple of

15         months, I thought I was clear.

16                   THE COURT:  No, no, no.  I got that.  I just --

17         initially when you had mentioned it, I wasn't sure how long

18         this database retrieval was going to take.  But -- so --

19                   MR. ZWEIG:  They've been at work on it four or five

20         months.  I mean it's a fairly Herculean task to go out to 566

21         towns for an 11 year period and gather all that information

22         and put it into a database.

23                   THE COURT:  Okay.  Why don't I include -- well,

24         actually I can just put this as a text entry or Mr. Morelli

25         can, that you'll let us know by May 6 what the status is?  I

1     don't need anything long winded, but if you -- you could just

2     give me a progress report that they're wrapping up, it's

3     coming or it looks like at that point you have a better

4     estimate that it's going to take a little bit longer.

5              Just so this isn't lingering out there.  I don't

6     think anyone here is going to forget about this case, but I

7     don't want to lose sight of you.

8              MR. ZWEIG:  --

9              THE COURT:  So informal update is fine, you know, or

10    even just shooting us an e-mail.  Right.

11             All right.  Did I miss anything?  No?  Okay.

12             Anyone on the phone have anything they'd like to

13    say?

14             UNIDENTIFIED SPEAKER:  Your Honor, I wasn't sure

15    what was that date of that -- of that report you want was May

16    5?

17             THE COURT:  May 6.  Two months.

18             UNIDENTIFIED SPEAKER:  May 6.

19             THE COURT:  Yeah.  Okay.  All right, folks, I think

20    that concludes what I need to do.

21             Mr. Greenberg, I had asked if you have a chance just

22    send in, in Word format, so I can make any changes to the

23    propose order when you have a chance.  Obviously, there's no

24    real rush, because I'm not going to be holding up the notice

25    period.  But when you can that would be great.

1          MR. GREENBERG:  I'll certainly do that, Your Honor.

2          THE COURT:  Okay.  And, Ms. Davies, as I said, if

3    you have any questions that Mr. Greenberg can't answer to your

4    satisfaction, I'll just remind you that have options that you

5    can look for another attorney, you can represent yourself or

6    you can decide that you don't want to be a part of this.  But

7    the game plan is in a few months we should have some sense of

8    what the next step will be and when the notice will go out.

9    Okay?  Thanks for coming in.

10          All right, everyone, be well, survive this winter.

11                    (Multiple thank yous)

12          THE COURT:  All right, thanks.

13                    (Off record at 11:08:22 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

I, JENNIFER WILSON, the assigned transcriber, do hereby

certify the foregoing transcript of proceedings before the

U.S. District Court, District of New Jersey – Trenton, on

March 6, 2014, on CD, index number from 10:39:45 to 11:08:22,

is prepared in full compliance with the current transcription

format for Judicial Proceedings and is a true and accurate

non-compressed transcript of the proceedings as recorded to

the best of my knowledge and ability.


_____    ___July 25, 2014___

JENNIFER WILSON  AD/T #623            Date

AudioEdge Transcription, LLC