# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket No.3:12-CV-01893-MAS-TJB |

**DECLARATION OF JASON A. ZWEIG IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH CRESTAR DEFENDANTS, MOORING, MASTELLONE, DEL VECCHIO DEFENDANTS, BANKATLANTIC DEFENDANTS, PAM DEFENDANTS, AND WOLFSON DEFENDANTS, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF INTERIM CLASS COUNSEL AS SETTLEMENT CLASS COUNSEL, APPOINTMENT OF INTERIM LIAISON COUNSEL AS LIAISON COUNSEL, AND APPROVAL OF CLASS NOTICE AND PLAN OF DISTRIBUTION**

I, Jason A. Zweig, declare as follows:

1.      I am a partner in the law firm of Hagens Berman Sobol Shapiro LLP ("HBSS"), in the firm's office located at 555 Fifth Avenue, New York, New York. HBSS has been appointed by this Court as Interim Class Counsel, along with Hausfeld LLP (collectively, "Interim Class Counsel"). I am a member in good standing of the bars of the State of New York and the District of Columbia, and I am admitted *pro hac vice* in this matter. I submit this declaration in support of Plaintiffs' motion for preliminary approval of settlements with the Crestar Defendants, Mooring, Mastellone, Del Vecchio Defendants, BankAtlantic

Defendants, the PAM Defendants, and the Wolfson Defendants (as each is defined below, together the "Recent Settling Defendants"), preliminary certification of settlement class, appointment of Interim Class Counsel as Settlement Class Counsel, appointment of Interim Liaison Counsel as Liaison Counsel, and approval of the proposed class notice program as to these and all previously approved settlements and the proposed plan of distribution.

2.      Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' settlement agreement with CCTS Capital LLC n/k/a Crestar Capital LLC and William S. Green ("Crestar Settlement Agreement").

3.      Attached hereto as Exhibit B is a true and correct copy of Plaintiffs' settlement agreement with Mooring Tax Asset Group LLC ("Mooring Settlement Agreement").

4.      Attached hereto as Exhibit C is a true and correct copy of Plaintiffs' settlement agreement with Michael Mastellone ("Mastellone Settlement Agreement").

5.      Attached hereto as Exhibit D is a true and correct copy of Plaintiffs' settlement agreement with Robert U. Del Vecchio, Sr., and Robert U. Del Vecchio Pension Trust ("Del Vecchio Settlement Agreement").

6.     Attached hereto as Exhibit E is a true and correct copy of Plaintiffs' settlement agreement with BBX Capital Corporation f/k/a BankAtlantic Bancorp Inc., Fidelity Tax LLC, Heartwood 55, LLC, Michael Deluca, Grary I. Branse, and David Jelley as well as the PAM Investors and Pat Caraballese ("BankAtlantic /PAM Settlement Agreement").

7.     Attached hereto as Exhibit F is a true and correct copy of Plaintiffs' settlement agreement with Richard Simon Trustee, Betty Simon Trustee LLC, and Joseph Wolfson ("Wolfson Settlement Agreement").

8.     The Crestar Settlement Agreement, the Mooring Settlement Agreement, the Mastellone Settlement Agreement, the Del Vecchio Settlement Agreement, the BankAtlantic/PAM Settlement Agreement, and the Wolfson Settlement Agreement shall be referred to collectively as the "Settlement Agreements."

**A.     Factual Background**

9.     In the period since early 2013, through early March 2015, Interim Class Counsel negotiated settlements with various counsel representing Recent Settling Defendants (collectively, with the previous settlements for which preliminary approval has already been granted, the "Settling Defendants").

471246.1

10.     Interim Class Counsel and Interim Liaison Counsel have considerable experience in prosecuting federal antitrust class actions, and are therefore well versed in the issues. Summaries of the experience in antitrust and other complex class actions of Hausfeld LLP and Hagens Berman Sobol Shapiro, LLP previously have been submitted to this Court as part of the motion for preliminary approval of a class settlement agreement reached with defendant Robert E. Rothman [Dkt. No. 217]. This Court granted preliminary approval of that settlement, and of five other settlements [Dkt. Nos. 276, 277], and appointed Hausfeld LLP and Hagens Berman Sobol Shapiro, LLP as Settlement Class Counsel and Lite DePalma Greenberg, LLC as Liaison Counsel. Magistrate Judge Bongiovanni issued a Report and Recommendation [Dkt. No. 339] recommending this Court approve four other settlements and appoint Hausfeld LLP and Hagens Berman Sobol Shapiro, LLP as Settlement Class Counsel and Lite DePalma Greenberg, LLC as Liaison Counsel. On October 31, 2014, the Court adopted Judge Bongiovanni's Report and Recommendation. [Dkt No. 376]. On January 29, 2014, the Court granted preliminary approval to four additional settlements [Dkt. No. 394], appointed Hausfeld LLP and Hagens Berman Sobol Shapiro, LLP as Settlement Class Counsel and Lite DePalma Greenberg, LLC as Liaison Counsel, approved Plaintiffs' proposed notice plan, and authorized the dissemination of notice to the Settlement Class of all settlements that had been preliminarily approved as of

4

January 29, 2015. The 14 class settlement agreements granted preliminary approval as of January 29, 2015 totaled $8.3 million, apart from the additional value that all but two of those settlement agreements provide in the form of discounts on redemption of tax sale certificates ("TSCs") held by those Settling Defendants. The only Defendants that did not agree to provide discounts on redemption of TSCs – Lambros Xethalis and Robert Stein – did not possess any TSCs and, therefore, were unable to provide discounts.

11.     At numerous in-person and telephonic meetings over the course of nearly two years, the terms of the Settlement Agreements were vigorously, extensively, and intensively negotiated among Interim Class Counsel and Recent Settling Defendants' counsel.

12.     In addition, Interim Class Counsel, Interim Liaison Counsel, and counsel for Defendant Mastellone participated in a full day mediation session in Newark with an experienced mediator appointed by Judge Bongiovanni – Bruce I. Goldstein. The full day mediation session involved a detailed exchange of information and numerous settlement demands and counter-offers. Mr. Goldstein was instrumental in the settlement reached between Plaintiffs and Defendant Mastellone.

13.     The settlement negotiations with all Defendants were conducted in good faith and at arms-length.

471246.1

14.     The Crestar Settlement Agreement was executed on December 22, 2014. *See* Ex. A.

15.     On or about December 31, 2014, defendant Crestar paid $80,000 pursuant to the Crestar Settlement Agreement. The money has been deposited into an escrow account at Huntington Bank, and invested in money market funds earning interest, and fully insured by the FDIC.

16.     Based on information received from defendant Crestar during settlement negotiations, as well as information received from other defendants, Plaintiffs and Interim Class Counsel believe that the combined value of the $80,000, and the discount redemption offer described in paragraph 23 of the Crestar Settlement Agreement, constitute a fair, reasonable, and adequate settlement.

17.     The Mooring Settlement Agreement was executed on February 5, 2015. *See* Ex. B.

18.     On or about February 24, 2015, defendant Mooring paid $300,000 pursuant to the Mooring Settlement Agreement. The money has been deposited into an escrow account at Huntington Bank, and invested in money market funds earning interest, and fully insured by the FDIC.

19.    Based on information received from Mooring during settlement negotiations, as well as information received from other defendants, Plaintiffs and Interim Class Counsel believe that the combined value of the $300,000 and the discount redemption offer described in paragraph 24 of the Mooring Settlement Agreement, constitute a fair, reasonable, and adequate settlement.

20.    The Mastellone Settlement Agreement was executed on February 13, 2015. *See* Ex. C.

21.    Pursuant to the Mastellone Settlement Agreement, defendant Mastellone will pay $115,000 on or about May 14, 2015. Once received, the money will be deposited into an escrow account at Huntington Bank, and invested in money market funds earning interest, and will be fully insured by the FDIC.

22.    Based on information received from defendant Mastellone during settlement negotiations, as well as information received from other defendants, Plaintiffs and Interim Class Counsel believe that the combined value of the $115,000 and the discount redemption offer described in paragraph 24 of the Mastellone Settlement Agreement, constitute a fair, reasonable, and adequate settlement.

23.    The Del Vecchio Settlement Agreement was executed on February 17, 2015. *See* Ex. D.

7

24.     On or about February 27, 2015, the Del Vecchio Defendants paid $135,000 pursuant to the Del Vecchio Settlement Agreement. The money has been deposited into an escrow account at Huntington Bank, and invested in money market funds earning interest, and fully insured by the FDIC.

25.     Based on information received from defendant Del Vecchio during settlement negotiations, as well as information received from other defendants, Plaintiffs and Interim Class Counsel believe that the combined value of the $135,000 and the discount redemption offer described in paragraph 23 of the Del Vecchio Settlement Agreement, constitute a fair, reasonable, and adequate settlement.

26.     The BankAtlantic/PAM Settlement Agreement was executed on March 2, 2015. *See* Ex. E.

27.     On or about March 18 and March 20, 2015, the PAM Defendants and the BankAtlantic Defendants paid $100,000 and $400,000, respectively, pursuant to the BankAtlantic/PAM Settlement Agreement. The money has been deposited into an escrow account at Huntington Bank, and invested in money market funds earning interest, and fully insured by the FDIC.

28.     Based on information received from the BankAtlantic Defendants and the PAM Defendants during settlement negotiations, as well as information received from other defendants, Plaintiffs and Interim Class Counsel believe that

471246.1

the combined value of the $500,000 and the discount redemption offer described in paragraph 24 of the BankAtlantic/PAM Settlement Agreement, constitute a fair, reasonable, and adequate settlement.

29.    The Wolfson Settlement Agreement was executed on March 2, 2015. *See* Ex. F.

30.    Pursuant to Paragraph 22 of the Wolfson Settlement Agreement, the Wolfson Defendants will pay a total of $125,000 in four installments, the final installment of which will be made on or around November 1, 2015. As the monies are received, they will be deposited into an escrow account at Huntington Bank, and invested in money market funds earning interest, and will be fully insured by the FDIC.

31.    Based on information received from the Wolfson Defendants during settlement negotiations, as well as information received from other defendants, Plaintiffs and Interim Class Counsel believe that the combined value of the $125,000 and the discount redemption offer described in paragraph 24 of the Wolfson Settlement Agreement, constitute a fair, reasonable, and adequate settlement.

**B.     Class Action Requirements**

32.     Although the exact number of potential members of the settlement class ("Settlement Class") is currently unknown, Plaintiffs believe, based on the number of TSC auctions in New Jersey during the class period, that there are at least several thousand potential Settlement Class members.

33.     By proving their own claims, the Named Plaintiffs would necessarily help to prove the claims of their fellow putative Settlement Class members.

34.     In addition, the Named Plaintiffs have no interests that are antagonistic to the Class.

35.     Interim Class Counsel have performed a great deal of work investigating the facts underlying these cases and have otherwise prepared these cases for a putative class action.

**C.     Notice of Settlements and Distribution of Settlement Funds**

36.     Following a competitive bidding process in which Interim Class Counsel solicited bids from four different notice and claims administrators, Interim Class Counsel have retained Gilardi & Co., LLC as the settlement notice and claims administrator for the Settlement Agreements. Gilardi has over 25 years of experience in noticing and administering class action settlements, and is one of the most experienced notice and claims administrators in the United States. Attached as Exhibit G to this Declaration is a copy of Gilardi's firm resume.

37.     Interim Class Counsel previously retained LienSource as a vendor to gather data and contact information on property owners whose property was the subject of liens sold at municipal auctions in New Jersey during the class period. LienSource has undertaken a comprehensive effort, over many months, to contact all 566 municipalities in New Jersey in an effort to gather the relevant information on affected property owners whose property was the subject of liens sold at municipal auctions. Because of various difficulties related to the data collection, including the fact that some municipalities did not respond to repeated requests for data and other municipalities have no data because, for example, the data was destroyed in Hurricane Sandy, LienSource was able to capture full data for only approximately 300 municipalities. Given the difficulty in obtaining data from all 566 municipalities, Plaintiffs also collected relevant class member information from certain Defendants, including the Butler/Farber Defendants, the Sass Defendants, the Crusader Defendants, Plymouth Park and ATF. Interim Class Counsel is also working with other Settling Defendants to obtain additional information.

38.     To reduce costs and to facilitate the full understanding of the relief afforded by this litigation, Plaintiffs previously asked that this Court defer Plaintiffs' obligation to provide notice to the Settlement Class in the motions for preliminary approval of the initial 10 settlements reached with the other defendants

471246.1

until a future date. Following the execution of four additional settlements, Plaintiffs moved this Court on June 27, 2014 for preliminary approval of those settlements, and for authorization to disseminate notice of the then 14 settlements to members of the Settlement Class. [Dkt. No. 369]. The Court granted the motion on January 29, 2015. [Dkt No. 394].

39.     In between the time that Plaintiffs moved for preliminary approval and to send notice to the class (June 27, 2014) and the time the Court granted such motion (January 29, 2015), settlements in principle were reached with all remaining defendants in this litigation. Thus, on February 4, 2015, Plaintiffs requested that the Court stay the notice dates set forth in its January 29, 2015 Order, to allow Plaintiffs to file a new motion for preliminary approval of all remaining settlements, and to send notice to the class of all settlements. [Dkt. No. 395]. The Court granted Plaintiffs' application on February 5, 2015. [Dkt No. 396]. With 20 settlement agreements now executed with all 21 Defendants or Defendant Groups in this Action, notice of these settlements must be given to the class.

40.     The proposed notice program will include notice of all 20 settlement agreements. The proposed notice program will include a long form notice (attached as Exhibit "1" to the Proposed Order) to be provided via a dedicated website, www.njtaxliensettlments.com, to all members of the public and affected class members. The proposed notice program will also include a summary notice

12

(attached as Exhibit "2" to the Proposed Order) to be published in the *Newark-Star Ledger*, *The Record (Hackensack)*, *Trentonian*, *Camden Courier-Post*, and *Atlantic City Press*. These publications have wide circulation throughout New Jersey and on the internet. Additionally, the notice program will include a direct mail postcard notice (attached as Exhibit "3" to the Proposed Order) sent to the class members either identified by municipal records, as collected by LienSource, or through data obtained from several Settling Defendants. Notice will also be made available on the dedicated website. A summary of the notice program proposed by Gilardi is attached to this declaration as Exhibit H.

41.     All of the notices advise potential class members of, *inter alia*: the nature of the action; the definition of the certified class; the class claims, issues or defenses; the class member's right to enter an appearance through his or her counsel if desired; that the court will exclude from the class any member who requests exclusion; when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3). The notices also provide a toll-free phone number to call for information and a website that will provide potential class members with lengthier and complete notice.

42.   The proposed schedule for dissemination of notice is as follows:

| **Event** | **Deadline** |
|---|---|
| Commence internet (including through internet advertising and website) program, and complete mail and publication notice. | Within 60 days of order authorizing dissemination of notice. |
| Filing of briefs in support of motion for final approval of all 20 proposed settlements and motion for attorneys fees and reimbursement of expenses | 30 days following deadline to disseminate notice. |
| Deadline for opting out of Settlement Class, filing objections, and notice of intent to appear at Fairness Hearing. | 60 days after deadline to disseminate notice. |
| Filing of replies to motion for final approval, attorneys fees and reimbursement of expenses and responses to objections to settlement. | 90 days following deadline to disseminate notice by mail and publication. |
| Deadline for settlement notice and claims administrator to file declaration attesting that notice program has been completed. | Two weeks prior to the scheduled date of the Fairness Hearing. |
| Fairness Hearing for all settlement agreements with all settling defendants. | Approximately 100 days following deadline to disseminate notice by mail and publication. |
| Deadline for submission of claim forms. | 60 days following order finalizing approval of settlements. |

43.   Since the Plaintiffs have now reached settlements with all Defendants, it is also now appropriate to commence the claims process so that members of the class may receive their *pro rata* share of the monies collected from the defendants.

14

Plaintiffs have proposed a Plan of Distribution, which is set forth in the long form notice, and will be displayed prominently on the website www.njtaxliensettlements.com. The Plan of Distribution will explain precisely how each class members' *pro rata* share, of each settlement from which the class member does not opt-out, will be determined.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 27, 2015, in New York, New York.


Jason A. Zweig

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

IN RE NEW JERSEY TAX SALES
CERTIFICATES ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND
## DEFENDANTS CRESTAR CAPITAL LLC AND WILLIAM S. GREEN

This Settlement Agreement ("Agreement") is made and entered into this 22nd day of

December, 2014 (the "Execution Date"), by and between Crestar Capital LLC f/k/a CCTS

Capital LLC ("Crestar") and William S. Green (collectively the "Crestar Defendants") and

Plaintiff Class Representatives, as defined herein at Paragraph 10, both individually and on

behalf of a class as described herein at Paragraph 14 ("Plaintiffs").

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and

consolidated in the District of New Jersey, on their own behalf and on behalf of the class, against

Defendants, including the Crestar Defendants ("Action");

WHEREAS, Plaintiffs allege that the Crestar Defendants participated in an unlawful

conspiracy to rig bids and allocate real property and water and/or sewer tax liens at tax sale

certificate auctions in the State of New Jersey in violation of New Jersey state law, as well as

Section 1 of the Sherman Act;

WHEREAS, the Crestar Defendants deny the allegations made in the Action;

WHEREAS, unlike many of the Defendants, Crestar and William S. Green have not been

criminally charged with participating in the conspiracy alleged in the Action, and it is not

expected that either will be criminally charged;

WHEREAS, over a period of time, the Plaintiffs and the Crestar Defendants, through

their respective counsel, engaged in extensive, good faith, and arm's-length settlement

negotiations relating to the claims and the Action, with the settlement evidenced by this Agreement being the product and result of those negotiations, discovery and analysis by counsel knowledgeable and experienced in class action litigation ("Settlement");

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a Settlement with the Crestar Defendants according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the Settlement Class (as defined in Paragraph 14 of this Agreement);

WHEREAS, the Crestar Defendants, despite its belief that it has good defenses to the claims alleged in the Action and without admitting any liability or fault, desire to settle the Action, and thus avoid the expense, inconvenience, distraction of continued litigation and potential risk of the Action, or any action or proceeding relating to the matters being fully settled in this Agreement; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Crestar Defendants and the Crestar Releasees only, without costs as to Plaintiffs or the Settlement Class, subject to the approval of the Court, on the following terms and conditions:

**A. Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-1893-MAS-TJB.

2

2.      "Class Counsel" and "Settlement Class Counsel" shall refer to the law firms of

Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

3.      "Counsel" means both Class Counsel and the Crestar Defendants' Counsel, as

defined in Paragraphs 2 and 11.

4.      "Class Notice" means the notice of this Agreement and of the date of the hearing

scheduled by the Court to consider the fairness, adequacy and reasonableness of this Agreement

to be provided to the Settlement Class (as defined in Paragraph 14 of this Agreement) pursuant to

Paragraph 51 below.

5.      "Class Period" means the period from and including January 1, 1998 through

February 28, 2009.

6.      "Defendant(s)" refers to the persons or entities who are named as defendants in

Plaintiffs' First Amended Consolidated Master Class Action Complaint (the "Complaint") filed

on January 6, 2014 in the above-captioned Action, as well as entities named as defendants in

subsequent or amended complaints in the Action.

7.      "Execution Date" means the date set forth below, immediately above the

signature lines to the agreement.

8.      "Final Approval" shall have the meaning ascribed to it in Paragraph 43 of this

Agreement.

9.      "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

10.     "Plaintiffs" means Gila Bauer as Trustee for the Gila Bauer Revocable Trust,

Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.

11.     " Crestar Defendants' Counsel" shall refer to the law firm of Dilworth Paxson

LLP.

12.    "Releasees" or "Crestar Releasee" shall refer, jointly and severally, and individually and collectively, to the Crestar Defendants, any affiliated companies, their parents and subsidiaries, and their past and present officers, managers of any manager-run entities, directors, employees, agents, insurers, attorneys, shareholders or other equity interest holders (to the extent they are not Non-Settling Defendants), partners, associates, members, volunteers, independent contract bidders, and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. Releasees shall not include any Non-Settling Defendant, and past and present officers, directors, managers, employees, agents, managers, and independent contract bidders shall only be deemed a Releasee or Crestar Releasee pursuant to this Agreement, to the extent they were performing services for the Crestar Defendants during the Class Period.

13.    "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, managers, parents, subsidiaries, affiliates, partners, shareholders or other equity interest holders, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, for, under or through them, including, but not limited to, anyone claiming for or through them in any representative action, class action, or state attorney general *parens patriae* action (to the fullest extent the law allows for release of such state attorney general claims in this proceeding).

14.    "Settlement Class" means all persons and/or entities who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%. The Settlement Class does not include Defendants,

government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.

15.     "Settlement Class Member" means each member of the Settlement Class, as defined in Paragraph 14 of this Agreement, who does not timely elect to be excluded from the Settlement Class.

16.     "Non-Settling Defendants" refers to the Defendants other than the Crestar Defendants or any Crestar Releasee.

17.     "Settling Parties" shall mean, collectively, the Crestar Defendants and each of the Plaintiffs, individually, and on behalf of the Settlement Class.

18.     "Tax Sale Certificate" or "TSC" shall mean a certificate acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water or sewer charges) from a property owner in the State of New Jersey, along with associated interest and fees.

**B. Settlement Class Certification**

19.     Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the Settlement Class defined in Paragraph 14 above.  At the appropriate time, the Settling Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

**C.     Subsequent Modification of Class Definition or Class Period**

20.     The Settling Parties agree that modification of the definition of the Settlement

Class may be necessary prior to moving for preliminary approval ("Preliminary Approval")

and/or Final Approval of this Agreement, and agree to work in good faith to agree upon and

effectuate any such modification.  Any such modification shall be made in writing; provided,

however, that in the event that Plaintiffs either enter into a settlement agreement with a Non-

Settling Defendant, or obtain certification of a litigation class, and the definition of the class or

Settlement Class in any subsequent settlement agreement or certification order differs from the

definition contained in this Agreement in Paragraph 14 (including an expansion of the Class

Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of

this Agreement to conform to any and all subsequent expansion of the class definition or Class

Period, including moving for approval of an amendment to this Agreement and the dissemination

of notice of the amendment in conjunction either with notice of any subsequent settlement class

or notice of the certification of a litigation class, or both. In no event shall the Crestar Defendants

be responsible for any additional notice costs or expenses. It is understood, however, that the

Crestar Defendants shall have the option and right to rescind this Agreement if the definition of

the Settlement Class is narrowed in any way subsequent to the Execution Date of this

Agreement, provided that: 1) the Crestar Defendants give Plaintiffs notice in writing seven days

before rescinding; and 2) Plaintiffs may revert to the Settlement Class definition contained herein

within three days of receiving such notice, after which the Crestar Defendants will not be

permitted to rescind this Agreement pursuant to this Paragraph.

**D.     Settlement Consideration**

    **a.  Monetary Consideration**

21.     In exchange for the mutual promises and covenants in this Agreement, including

without limitation, the Releases set forth in Paragraphs 44-46 below and dismissal with prejudice

of the Action as against Crestar upon Final Approval, the Crestar Defendants agree as follows:

22.     Within 20 days of the Execution Date, the Crestar Defendants shall pay the sum

of **$80,000** (the "Settlement Proceeds") into an escrow account, which Settlement Class Counsel

shall identify to the Crestar Defendants by name and account number, managed by Huntington

Bank (the "Escrow Agent") and to be held in escrow by the Escrow Agent pursuant to an escrow

agreement.  The plan of distribution of the Settlement Proceeds to Settlement Class Members

and as otherwise authorized herein shall be the sole responsibility of Class Counsel and will be

decided upon at a later date by Settlement Class Counsel as authorized by order of the Court, and

notice of such plan of distribution shall be provided to members of the Settlement Class, and

shall be authorized by order of the Court.  The Settlement Proceeds shall only be disbursed to

Settlement Class Members and as otherwise authorized herein pursuant to, and as directed by, an

order of the Court authorizing the plan of distribution.

    a.     The Escrow Agent shall cause the funds deposited in the Escrow Account

to be invested in short-term instruments backed by the full faith and credit of the United States

Government or fully insured by the United States Government or any agency thereof, or money

market funds invested substantially in such instruments, and shall reinvest any income from

these instruments and the proceeds from these instruments as they mature in similar instruments

at their then current market rates.

    b.     All funds held in the Escrow Account shall be deemed and considered to

be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until

such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

        c.     Except as otherwise provided for herein, Releasors shall look solely to the Settlement Proceeds and the discounts set forth in paragraph 23 below, for settlement and satisfaction against the Releasees of all Released Claims (as defined in Paragraph 44 herein), and Releasors shall have no other recovery against the Crestar Defendants or any recovery against any of the other Releasees.  Use of the Settlement Proceeds shall be limited to payments to Settlement Class Members in relation to their claims in this Action, as well as attorneys' fees, expenses, costs, and notice and administration costs, all of which must be approved by the Court, and/or current and/or future litigation costs, or for any other use specifically authorized by order of the Court.

23.     Since Crestar is currently in possession of outstanding Tax Sale Certificates which were acquired during the Class Period:

(a)     For any Tax Sale Certificates held by Crestar and issued with respect to real property owned by a Settlement Class Member and not already in foreclosure proceeding (excluding Tax Sale Certificates held by Crestar that were (1) acquired outside the Class Period; or (2) issued at an interest rate above 0% due to the existence of a prior lien held by Crestar or any of its predecessors), the Crestar Defendants agree:

(1)     Not to initiate foreclosure proceedings for 90 days following Final Approval of this Agreement;

(2)     In coordination with Class Counsel, to cause to be sent by first class mail within 30 days after Final Approval of this Agreement, and at the Crestar Defendants' expense, written notice, in language mutually acceptable to

8

the Settling Parties, to the property owner of record as stated on said TSCs, offering to permit redemption of any such TSCs held by Crestar by the respective property owner(s) of those respective properties in exchange for a one-time payment.  The one-time payment will equal the redemption amount less a onetime discount up to 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality.  Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel.

(b)      For any Tax Sale Certificates issued with respect to real property owned by a Settlement Class Member (excluding Tax Sale Certificates held by Crestar that were (1) acquired outside the Class Period; or (2) issued at an interest rate above 0% due to the existence of a prior lien held by Crestar or any of its predecessors) still held by Crestar to which foreclosure proceedings have been initiated (but not completed) as of the date of Final Approval of this Agreement, or which Tax Sale Certificates relate to a property the owner of which is under protection of bankruptcy court, the Crestar Defendants agree:

(1)      In coordination with Class Counsel, to cause to be sent by first class mail within 30 days after Final Approval of this Agreement, and at the Crestar Defendants' expense, written notice, in language mutually acceptable to the Settling Parties, to the defendants in such foreclosure actions, or debtors in such bankruptcy proceedings, offering to permit redemption of any such TSCs held by Crestar to the respective property owner(s) of those respective properties in exchange for a one-time payment.  The one-

9

time payment will equal the redemption amount less a onetime discount of up to 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel.

### b. Cooperation Agreement

24.     Following an order granting Final Approval of this Agreement, the Crestar Defendants will provide Plaintiffs with any documents (including electronic documents) related to claims asserted in the Action that the Crestar Defendants previously provided to the United States Department of Justice ("DOJ") as part of its investigation into anticompetitive practices related to TSCs in the State of New Jersey, and will agree to authenticate such documents for any trial or proceeding in this Action if requested to do so by Class Counsel.

25.     Nothing in this Agreement shall be construed to preclude the assertion of any constitutional or other privilege by the Crestar Defendants or any other Releasees with respect to the documents to be provided pursuant to Paragraph 24 of this Agreement. Further, Plaintiffs and Class Counsel agree not to assert that the Crestar Defendants or any other Releasees waived the attorney-client privilege, work product immunity or any other privilege or protection (including the right to avoid self-incrimination) with respect to documents provided or identified to Class Counsel pursuant to this Agreement, nor should anything in this Agreement be construed as an agreement by any party hereto that any person has agreed to waive any such privilege, immunity or protection.

26.     The Crestar Defendants shall not be required to provide the documents provided for in Paragraph 24 of this Agreement if the DOJ objects to the Crestar Defendants' provision of

10

such cooperation to Plaintiffs or Class Counsel.  However, if Plaintiffs and/or Class Counsel challenge the United States Department of Justice's objection to the Crestar Defendants' provision of documents under this Agreement, and the Court overseeing this Action overrules the objection of the Department of Justice, the Crestar Defendants' shall be required to provide the documents as required by Paragraph 24 to this Agreement.

27.     A failure by the Crestar Defendants to provide the documents provided for in this Agreement following the entry of the Final Approval shall constitute a material breach of this Agreement.

28.     Notwithstanding anything in this Agreement to the contrary, material produced pursuant to Paragraph 24 may be labeled confidential pursuant to a protective order, through which appropriate confidentiality designations can be made, to be entered between the parties to the Action (including the Settling Parties hereto).  To the extent no such protective order is yet in place at the time of final approval, within 30 days of Final Approval, the Parties will agree upon an interim confidentiality agreement that will govern the Crestar Defendants' production of documents pursuant to paragraph 24 above, until such time as the parties in the Action agree upon a protective order.

### c.  Notification of this Agreement

29.     Within ten business days of the Execution Date, the Settling Parties shall jointly notify the Court that they have entered into a settlement, and provide the Court with a copy of this Agreement.

### E.     Administrative Costs and Taxes

30.     All costs associated with the Settlement Class notification process, all fees related to administration of this Settlement or management of the Settlement Proceeds, any attorneys' fees and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive

11

payment awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out of the Settlement Proceeds. Other than its expenses in providing the documents set forth in Paragraph 24 and the discounts provided in paragraph 23, the Crestar Defendants shall have no further financial responsibility to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any other, fees or costs beyond payment of the Settlement Proceeds.

31.     Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge that each Settlement Class Member shall be individually responsible for any and all tax obligations related to any payments received as a result of this Settlement. The Crestar Defendants make no representations about the tax ramifications, if any, of any payments made to Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a result of, this Agreement.

32.     Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Proceeds. Such expenses include past, current and future litigation expenses or expenses related to notice and administration of this Settlement, or settlements with other Defendants. Other than the payment of the Settlement Proceeds, the Crestar Defendants shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

33.     Plaintiffs and Releasees agree to treat the Settlement Proceeds as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 (the "Settlement Fund"). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 32 through 34 of the Agreement,

12

including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

34.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas.  Reg. § 1.468B-2(k)(l)).  Such returns (as well as the election described in Paragraph 32) shall be consistent with Paragraph 32 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 34 hereof.

35.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Crestar Defendants or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement Fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 32 through 34 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 34 ("Tax Expenses")), shall be paid out of the Settlement Fund.

**F. Approval of this Agreement and Dismissal of Claims**

36.     Plaintiffs and the Crestar Defendants shall use their best efforts to effectuate this Agreement, including, at the appropriate time, seeking Preliminary Approval of the Settlement and securing both the Court's certification of the Settlement Class and the Court's approval of procedures (including providing notice of the settlement to the settlement class) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Crestar Defendants.

37.     Upon the Execution Date, the Plaintiffs shall not pursue the Action against the Crestar Defendants and shall not require that they answer or respond to any pleading and shall hold the litigation in abeyance against the Crestar Defendants. During the period of time between the Execution Date and the date an order of dismissal is entered as provided for in Paragraph 42 below, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members asserted against the Crestar Defendants in the Action shall be tolled.

38.     Subject to Paragraph 36 above, at the appropriate time, Plaintiffs shall submit to the Court a motion for: (a) certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; and (c) Preliminary Approval of the Settlement, and authorization to disseminate notice of class certification, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

39.     When Plaintiffs are prepared to issue a Class Notice as contemplated by Paragraph 50, the Settling Parties shall approve the form of notice to be provided to the Settlement Class and submit it to the Court and request that the Court: (i) preliminarily approve the Settlement reflected herein; (ii) conditionally certify the Settlement Class (for settlement purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel,

14

respectively; (iii) approve the form of notice to be provided to the Settlement Class in the form

mutually agreed to by the Settling Parties and submitted in connection with the motion for

Preliminary Approval, and find that the form, manner and timing of notice constitutes the best

notice practicable under the circumstances, and is due and sufficient notice to the Settlement

Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of

Civil Procedure; (iv) direct that notice be provided to the Settlement Class, in accordance with

the Settlement; (v) establish a procedure for Settlement Class Members to object to the

Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days

following the date Class Notice is initially mailed as per Paragraph 50 of this Agreement, after

which no Settlement Class Member shall be allowed to object to the Settlement or exclude

himself, herself or itself from the Settlement Class or seek to intervene in the Action; (vi)

pending final determination of whether the Settlement should be approved, bar all Settlement

Class Members, directly, on a representative basis, or in any other capacity, from commencing or

prosecuting against any of the Releasees any action, arbitration, or proceeding in any court,

arbitration forum, or tribunal asserting any of the Released Claims; (vii) pending final

determination of whether the Settlement should be approved, stay all proceedings in the Action

as to the Crestar Defendants except those related to the effectuation of the Settlement; and (viii)

schedule a hearing on Final Approval of the Settlement (which final approval hearing, as

referenced herein, shall take place after the deadline for members of the Settlement Class to opt-

out or object and no earlier than 90 days after entry of a Preliminary Approval Order and the

mailing of Class Notice).

     40.    Within 20 business days after the end of the opt-out period established by the

Court and set forth in the Class Notice, Class Counsel shall provide the Crestar Defendants a

written list of all potential Settlement Class Members who have exercised their right to request exclusion from the class (the "Opt-Out List").

41.    Plaintiffs shall use their best efforts to combine dissemination of notice of the proposed Settlement Class and the Agreement with notice of other settlement agreements. The proposed method of notice of the settlement shall be determined in consultation with a class action administrator and shall be approved by the Court. Within 60 business days after the Execution Date, the Crestar Defendants shall supply to Class Counsel, at the Crestar Defendants' expense and in such form as kept in the regular course of business (electronic format if available), such names and addresses of potential Settlement Class Members as they have. In the alternative, the Crestar Defendants, at their sole option and discretion, may pay Class Counsel an additional $5,000 above and beyond the Settlement Proceeds referenced in Paragraph 22 of this Agreement in lieu of providing the list described in the foregoing sentence, but if the Crestar Defendants exercise such option, it must still provide reasonable cooperation to Class Counsel regarding the sending of notice to particular class members about whom Class Counsel inquire.

42.    If the Court preliminarily approves this Agreement, Plaintiffs and the Crestar Defendants shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and the Crestar Defendants shall agree upon:

> (a)    As to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;
>
> (b)    Directing that, as to the Crestar Defendants, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;
>
> (c)    Reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

16

(d)   Enjoining Settlement Class Members, and any person, entity, or official acting on behalf of a Settlement Class Member, from re-asserting Released Claims or seeking an additional recovery payable to a Settlement Class Member based on the facts or transactions alleged in the Complaints;

(e)   Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to the Crestar Defendants shall be entered; and

(f)   Requiring Class Counsel to file with the Clerk of the Court a record of potential Settlement Class Members who timely excluded themselves from the class, and to provide a copy of the record to counsel for the Crestar Defendants.

43.   This Agreement shall become final only when (a) the Court has entered an order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against the Crestar Defendants on the merits with prejudice as to all Settlement Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Final Approval" or "Finally Approved").  It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.  On the Execution Date, Plaintiffs and the Crestar Defendants shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 48 or 49.

## G. Release and Discharge

44.    In addition to and not in lieu of the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other valuable consideration as described herein, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights, defenses, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation, debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in law or in equity or otherwise, whether class, individual or otherwise in nature, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of conduct or allegations concerning any collusion, agreement, or understanding among Defendants to rig bids or allocate tax liens in connection with the public auction of Tax Sale Certificates in the State of New Jersey during the Class Period, including, but not limited to, any conduct alleged, and causes of action asserted, or that could have been alleged or asserted, whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"), and/or claims that could have been alleged or asserted, whether or not concealed or hidden, in any other actions by any Releasor against the Crestar Defendants or any Releasee, which arise from or are predicated on the facts and/or actions described in the Complaints under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time through the end of the Class Period (the "Released Claims").  It is expressly understood and agreed that this Release and Settlement is intended to cover and does cover not only all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, losses and damages,

18

and the consequences thereof, but also any further injuries, losses and damages which arise from, or are related to, the claims set forth in the Complaints. The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims. However, this Release does not release any Non-Settling Defendant.

45.     In addition to the provisions of Paragraph 44, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 44. Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

46.     The release and discharge set forth in Paragraphs 44 and 45 herein do not include: (a) claims relating to disputes against the Crestar Defendants unrelated to the Released Claims; and (b) claims of Settlement Class Members outside of the Class Period against the Crestar Defendants ("Excepted Claims").

**H. Rescission if the Agreement is Not Approved**

47.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then the Crestar Defendants and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

48.     In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this

19

Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of the Crestar Defendants, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.

49.     In the event any of the Settling Parties elect to rescind this Agreement pursuant to Paragraphs 47 or 48 of this Agreement, or if Final Approval of the Settlement provided for in the Agreement is not granted by the Court, unless otherwise specified in this Agreement, the Settling Parties shall be restored to the position they occupied in this Action immediately prior to entering into this Agreement and any monies paid by the Crestar Defendants shall be returned to the Crestar Defendants, except for the Crestar Defendants' *pro rata* share (the Crestar Defendants' *pro rata* share shall be determined by dividing $80,000 by the total of all settlement amounts) of those monies that had been expended on costs related to notice and administration of this Agreement prior to the date of termination of the Agreement.

## I.   Notice of Settlement to Class Members

50.     Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement ("Class Notice") is provided in accordance with the Federal Rules of Civil Procedure and Court order.  Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants and/or other sources, the names and addresses of those potential members of the Settlement Class.  Notice of this Settlement will be issued in accordance with the dates ordered by the Court.

## J.   Miscellaneous

51. This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any unnamed co-conspirator other than the Releasees. All rights of any Settlement Class Member against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members. The purchase of Tax Sale Certificates in the State of New Jersey by Crestar with respect to real property of Settlement Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

52. The Settling Parties hereto are entering into this Agreement solely to receive the benefits provided hereunder and to avoid the costs and burdens of potential litigation. This Agreement shall not constitute or be construed or considered as an admission by the Crestar Defendants for any purpose or as evidence of liability.

53. The United States District Court for the District of New Jersey, Trenton Division, shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and the Crestar Defendants. Plaintiffs and the Crestar Defendants submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement. This Agreement shall be governed by and interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

21

54.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and the Crestar Defendants (and the other Releasees) pertaining to the settlement of the Action against the Crestar Defendants only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and the Crestar Defendants in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and the Crestar Defendants, and approved by the Court.

55.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

56.     This Agreement may be executed in counterparts by Plaintiffs and the Crestar Defendants, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

57.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

58.     In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the Settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by the Crestar Defendants.

22

59.     Neither the Crestar Defendants nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

60.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, the Crestar Defendants, and Releasees any right or remedy under or by reason of this Agreement.

61.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile, letter by overnight delivery, or by email to:

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**For Crestar:**

Jay E. Kagan
**DILWORTH PAXSON LLP**
1500 Market Street, 3500E
Philadelphia, PA 19102
Telephone:(215) 575-7354
Facsimile:(215) 575-7200
Email: jkagan@dilworthlaw.com

62.     Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: December 22, 2014

**HAUSFELD LLP**

---

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email:  mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

---

William S. Green
Title: _CEO_

*For Crestar Capital LLC and William S. Green*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

---

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*

Dated: December 22, 2014

**HAUSFELD LLP**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email:  mhausfeld@hausfeldllp.com
 jpizzirusso@hausfeldllp.com
 sgassman@hausfeldllp.com

William S. Green
Title: ʟᴇᴄ

*For Crestar Capital LLC and William S.
Green*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE NEW JERSEY TAX SALES
CERTIFICATES ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND
## DEFENDANT MOORING TAX ASSET GROUP LLC

This Settlement Agreement ("Agreement") is made and entered into this 5th day of

February, 2015 (the "Execution Date"), by and between defendant Mooring Tax Asset Group

LLC ("Mooring" or "Settling Defendant") and Plaintiff Class Representatives, as defined herein

at Paragraph 10, both individually and on behalf of a class as described herein at Paragraph 14

("Plaintiffs").

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and

consolidated in the District of New Jersey, on their own behalf and on behalf of the class, against

Mooring as well as other Defendants ("Action");

WHEREAS, Plaintiffs allege that Mooring participated in an unlawful conspiracy to rig

bids and allocate real property and water and/or sewer tax liens at tax sale certificate auctions in

the State of New Jersey in violation of New Jersey state law, as well as Section 1 of the Sherman

Act;

WHEREAS, Mooring and, to the extent applicable to them, each of the Settling

Defendant Releasees, deny the allegations made in the Action;

WHEREAS, Mooring, and their respective current and former employees, unlike many of

the Defendants, have not been criminally charged with participating in the conspiracy alleged in

the Action, and it is not expected that they will be criminally charged;

WHEREAS, over a period of time, the Plaintiffs and Mooring, individually and collectively, through their respective counsel, engaged in extensive, good faith, and arm's-length settlement negotiations relating to the claims and the Action, with the settlement evidenced by this Agreement being the product and result of those negotiations, discovery and analysis by counsel knowledgeable and experienced in class action litigation ("Settlement");

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a Settlement with Mooring according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the Settlement Class (as defined in Paragraph 14 of this Agreement);

WHEREAS, Mooring, despite its belief that it has good defenses to the claims alleged in the Action and without admitting any liability or fault, desires to settle the Action, and thus avoid the expense, inconvenience, distraction of continued litigation and potential risk of the Action, or any action or proceeding relating to the matters being fully settled in this Agreement; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to Mooring and the Settling Defendant Releasees only, without costs as to Plaintiffs or the Settlement Class, subject to the approval of the Court, on the following terms and conditions:

A.      **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-1893-MAS-TJB.

2

2.      "Class Counsel" and/or "Settlement Class Counsel" shall refer to the law firms of Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

3.      "Counsel" means both Class Counsel and Settling Defendant's Counsel, as defined in Paragraphs 2 and 11.

4.      "Class Notice" means the notice of this Agreement and of the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Agreement to be provided to the Settlement Class (as defined in Paragraph 14 of this Agreement) pursuant to Paragraph 50 below.

5.      "Class Period" means the period from and including January 1, 1998, through February 28, 2009.

6.      "Defendant(s)" refers to the persons or entities who are named as Defendants in Plaintiffs' First Amended Consolidated Master Class Action Complaint (the "Complaint") filed on January 6, 2014, in the above-captioned Action, as well as entities named as defendants in subsequent or amended complaints in the Action.

7.      "Execution Date" means the date set forth below, immediately above the signature lines to the agreement.

8.      "Final Approval" shall have the meaning ascribed to it in Paragraph 43 of this Agreement.

9.      "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

10.     "Plaintiffs" means Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.

11.     "Settling Defendant's Counsel" shall refer to the law firm of Schlam Stone & Dolan LLP.

3

12.     "Releasee" or "Settling Defendant Releasee" shall refer, jointly and severally, and individually and collectively, to Mooring, any persons or entities affiliated with Mooring, including, but not limited to, in the case of Settling Defendant Releasees who are natural persons, their family members, heirs, assignees, representatives, agents, principals, employees, employers, partners, co-venturers, fellow shareholders, fellow directors, fellow LLC members, fellow members or workers in any business venture of any kind, and in the case of those Settling Defendant Releasees which are corporate entities, their parents and subsidiaries, past and present officers, managers of any manager-run entities, directors, employees, agents, insurers, attorneys, shareholders or other equity interest holders (to the extent they are not Non-Settling Defendants), partners, associates, members, volunteers, independent contract bidders, and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. Releasee shall also include any individual or entity that purchased from Mooring a Tax Sale Certificate that was purchased by Mooring at a public auction in New Jersey at an interest rate above 0% during the Class Period, but, as to these individuals and/or entities, they shall only be deemed a Releasee with respect to any liability arising from or connected to their acquisition of such Tax Sale Certificates from Mooring. For avoidance of doubt, and without limiting the scope of the definition of Releasee or Settling Defendant Releasee in this paragraph 12 in any way, Releasee and/or Settling Defendant Releasee shall specifically include MTAG Services, LLC, James Meeks, Adam Berman, Karsten Hilpert, Teresa Hasson, Isabella Legut, and John Jacquemin. Releasee shall not include any Non-Settling Defendant, and past and present officers, directors, managers, employees, agents, managers, and independent contract bidders shall only be deemed a Releasee or Settling Defendant Releasee pursuant to this

4

Agreement, to the extent they were performing services for the Settling Defendant during the Class Period.

13.     "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, managers, parents, subsidiaries, affiliates, partners, shareholders or other equity interest holders, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, for, under or through them, including, but not limited to, anyone claiming for or through them in any representative action, class action, or state attorney general *parens patriae* action (to the fullest extent the law allows for release of such state attorney general claims in this proceeding).

14.     "Settlement Class" means all persons and/or entities who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%.  The Settlement Class does not include Defendants, government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.

15.     "Settlement Class Member" means each member of the Settlement Class, as defined in Paragraph 14 of this Agreement, who does not timely elect to be excluded from the Settlement Class.

16.     "Non-Settling Defendants" refers to the Defendants other than the Settling Defendant or any Settling Defendant Releasee.

17.     "Settling Parties" shall mean, collectively, the Settling Defendant and each of the Plaintiffs, individually, and on behalf of the Settlement Class.

18.     "Tax Sale Certificate" or "TSC" shall mean a certificate acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water or sewer charges) from a property owner in the State of New Jersey, along with associated interest and fees.

**B.      Settlement Class Certification**

19.     Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the Settlement Class defined in Paragraph 14 above.  At the appropriate time, the Settling Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

**C.** **Subsequent Modification of Class Definition or Class Period**

20.     The Settling Parties agree that modification of the definition of the Settlement Class may be necessary prior to moving for preliminary approval ("Preliminary Approval") and/or Final Approval of this Agreement, and agree to work in good faith to agree upon and effectuate any such modification. Any such modification shall be made in writing; provided, however, that in the event that Plaintiffs either enter into a settlement agreement with a Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class or Settlement Class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 14 (including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both. In no event shall the Settling Defendant be responsible for any additional notice costs or expenses. It is understood, however, that the Settling Defendant shall have the option and right to rescind this Agreement if the definition of the Settlement Class is narrowed in any way subsequent to the Execution Date of this Agreement, provided that: 1) the Settling Defendant gives Plaintiffs notice in writing seven days before rescinding; and 2) Plaintiffs may revert to the Settlement Class definition contained herein within three days of receiving such notice, after which the Settling Defendant will not be permitted to rescind this Agreement pursuant to this Paragraph.

D.      **Settlement Consideration**

a.      **Monetary Consideration**

21.      In exchange for the mutual promises and covenants in this Agreement, including

without limitation, the Releases set forth in Paragraphs 44-46 below and dismissal with prejudice

of the Action as against the Settling Defendant upon Final Approval, the Settling Defendant

agrees as follows:

22.      Within 20 days of the Execution Date, the Settling Defendant shall pay the sum of

**$300,000** (the "Settlement Proceeds") into an escrow account, which Settlement Class Counsel

shall identify to the Settling Defendant by name and account number, managed by Huntington

Bank (the "Escrow Agent") and to be held in escrow by the Escrow Agent pursuant to an escrow

agreement.

23.      The plan of distribution of the Settlement Proceeds to Settlement Class Members

and as otherwise authorized herein shall be the sole responsibility of Class Counsel and will be

decided upon at a later date by Settlement Class Counsel as authorized by order of the Court, and

notice of such plan of distribution shall be provided to members of the Settlement Class, and

shall be authorized by order of the Court. The Settlement Proceeds shall only be disbursed to

Settlement Class Members and as otherwise authorized herein pursuant to, and as directed by, an

order of the Court authorizing the plan of distribution.

a.      The Escrow Agent shall cause the funds deposited in the Escrow Account

to be invested in short-term instruments backed by the full faith and credit of the United States

Government or fully insured by the United States Government or any agency thereof, or money

market funds invested substantially in such instruments, and shall reinvest any income from

these instruments and the proceeds from these instruments as they mature in similar instruments

at their then current market rates.

b.      All funds held in the Escrow Account shall be deemed and considered to

be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until

such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of

the Court.

c.      Except as otherwise provided for herein, Releasors shall look solely to the

Settlement Proceeds and the discounts set forth in paragraph 24 below, for settlement and

satisfaction against the Releasees of all Released Claims (as defined in Paragraph 44 herein), and

Releasors shall have no other recovery against the Settling Defendant or any recovery against

any of the other Releasees. Use of the Settlement Proceeds shall be limited to payments to

Settlement Class Members in relation to their claims in this Action, as well as attorneys' fees,

expenses, costs, and notice and administration costs, all of which must be approved by the Court,

and/or current and/or future litigation costs, or for any other use specifically authorized by order

of the Court.

24.     Since the Settling Defendant may currently be in possession of outstanding Tax

Sale Certificates which were acquired during the Class Period:

(a)      For any Tax Sale Certificates held by the Settling Defendant and issued with

respect to real property owned by a Settlement Class Member and not already in

foreclosure proceeding (excluding Tax Sale Certificates held by the Settling Defendant

that were (1) acquired outside the Class Period; or (2) issued at an interest rate of 0%),

the Settling Defendant agrees:

(1)      Not to initiate foreclosure proceedings for 90 days following Final

Approval of this Agreement;

(2)      In coordination with Class Counsel, to cause to be sent by first class mail within 30 days after Final Approval of this Agreement, and at the Settling Defendant's expense, written notice, in language mutually acceptable to the Settling Parties, to the property owner of record as stated on said TSCs, offering to permit redemption of any such TSCs held by the Settling Defendant by the respective property owner(s) of those respective properties in exchange for a one-time payment. The one-time payment will equal the redemption amount less a onetime discount of 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel.

(3)      To the extent that Mooring sells or transfers any Tax Sale Certificates to any of its affiliates, parents, subsidiaries, or sister companies between the Execution Date and 30 days after Final Approval of this Agreement, Mooring agrees to require such affiliate, parent, subsidiary or sister company to offer the discounts provided for in this paragraph 24(a), on the same terms as those set forth in paragraph 24(a)(2).

(b)      For any Tax Sale Certificates issued with respect to real property owned by a Settlement Class Member (excluding Tax Sale Certificates held by the Settling Defendant that were (1) acquired outside the Class Period; or (2) issued at an interest rate of 0%) still held by the Settling Defendant to which foreclosure proceedings have been

initiated (but not completed) as of the date of Final Approval of this Agreement, or which Tax Sale Certificates relate to a property the owner of which is under protection of bankruptcy court, the Settling Defendant agrees:

(1)     In coordination with Class Counsel, to cause to be sent by first class mail within 30 days after Final Approval of this Agreement, and at the Settling Defendant's expense, written notice, in language mutually acceptable to the Settling Parties, to the defendants in such foreclosure actions, or debtors in such bankruptcy proceedings, offering to permit redemption of any such TSCs held by the Settling Defendant to the respective property owner(s) of those respective properties in exchange for a one-time payment. The one-time payment will equal the redemption amount less a onetime discount of 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel.

(2)     To the extent that Mooring sells or transfers any Tax Sale Certificates to any of its affiliates, parents, subsidiaries, or sister companies between the Execution Date and 30 days after Final Approval of this Agreement, Mooring agrees to require such affiliate, parent, subsidiary or sister company to offer the discounts provided for in this paragraph 24(b), on the same terms as those set forth in paragraph 24(b)(1).

11

      **b.**      **Cooperation Agreement**

25.    Following an order granting Final Approval of this Agreement, the Settling

Defendant shall provide Plaintiffs with any documents (including electronic documents) related

to claims asserted in the Action that the Settling Defendant previously provided to the United

States Department of Justice ("DOJ") as part of its investigation into anticompetitive practices

related to TSCs in the State of New Jersey, and will agree to authenticate such documents for any

trial or proceeding in this Action if requested to do so by Class Counsel.

26.    Nothing in this Agreement shall be construed to preclude the assertion of any

constitutional or other privilege by the Settling Defendant or any other Releasees with respect to

the documents to be provided pursuant to Paragraph 25 of this Agreement. Further, Plaintiffs and

Class Counsel agree not to assert that the Settling Defendant or any other Releasees waived the

attorney-client privilege, work product immunity or any other privilege or protection (including

the right to avoid self-incrimination) with respect to documents provided or identified to Class

Counsel pursuant to this Agreement, nor should anything in this Agreement be construed as an

agreement by any party hereto that any person has agreed to waive any such privilege, immunity

or protection.

27.    The Settling Defendant shall not be required to provide the documents provided

for in Paragraph 25 of this Agreement if the DOJ objects to the Settling Defendant's provision of

such cooperation to Plaintiffs or Class Counsel. However, if Plaintiffs and/or Class Counsel

challenge the United States Department of Justice's objection to the Settling Defendant's

provision of documents under this Agreement, and the Court overseeing this Action overrules the

objection of the Department of Justice, the Settling Defendant shall be required to provide the

documents as required by Paragraph 25 to this Agreement.

28.     Notwithstanding anything in this Agreement to the contrary, material produced pursuant to Paragraph 25 may be labeled confidential pursuant to a protective order, through which appropriate confidentiality designations can be made, to be entered between the parties to the Action. To the extent no such protective order is yet in place at the time of Final Approval, within 30 days of Final Approval, the Parties will agree upon an interim confidentiality agreement that will govern the Settling Defendant's production of documents pursuant to paragraph 25 above, until such time as the parties in the Action agree upon a protective order.

### c.   Notification of this Agreement

29.     Within ten business days of the Execution Date, the Settling Parties shall jointly notify the Court that they have entered into a settlement, and provide the Court with a copy of this Agreement.

## E.     Administrative Costs and Taxes

30.     All costs associated with the Settlement Class notification process, all fees related to administration of this Settlement or management of the Settlement Proceeds, any attorneys' fees and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive payment awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out of the Settlement Proceeds. Other than payment of the Settlement Proceeds, their expenses in providing the documents set forth in Paragraph 25 and the discounts provided in paragraph 24, the Settling Defendant shall have no further financial responsibility to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any other, fees or costs beyond payment of the Settlement Proceeds.

31.     Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge that each Settlement Class Member shall be individually responsible for any and all tax obligations related to any payments received as a result of this Settlement. The Settling Defendant makes no representations about the tax ramifications, if any, of any payments made to Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a result of, this Agreement.

32.     Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Proceeds. Such expenses include past, current and future litigation expenses or expenses related to notice and administration of this Settlement, or settlements with other Defendants. Other than the payment of the Settlement Proceeds, the Settling Defendant shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

33.     Plaintiffs and Releasees agree to treat the Settlement Proceeds as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 (the "Settlement Fund"). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 33 through 35 of the Agreement, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

14

34.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas.  Reg. § 1.468B-2(k)(l)). Such returns (as well as the election described in Paragraph 33) shall be consistent with Paragraph 33 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 35 hereof.

35.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Settling Defendant or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 33 through 35 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 35 ("Tax Expenses")), shall be paid out of the Settlement Fund.

**F.     Approval of this Agreement and Dismissal of Claims**

36.     Plaintiffs and the Settling Defendant shall use their best efforts to effectuate this Agreement, including, at the appropriate time, seeking Preliminary Approval of the Settlement and securing both the Court's certification of the Settlement Class and the Court's approval of procedures (including providing notice of the settlement to the settlement class) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Settling Defendant.

37.     Upon the Execution Date, the Plaintiffs shall not pursue the Action against the Settling Defendant and shall not require that they answer or respond to any pleading and shall hold the litigation in abeyance against the Settling Defendant. During the period of time between the Execution Date and the date an order of dismissal is entered as provided for in Paragraph 42 below, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members asserted against the Settling Defendant shall be tolled.

38.     Subject to Paragraph 37 above, at the appropriate time, Plaintiffs shall submit to the Court a motion for: (a) certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; and (c) Preliminary Approval of the Settlement, and authorization to disseminate notice of class certification, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

39.     When Plaintiffs are prepared to issue a Class Notice as contemplated by Paragraph 50, the Settling Parties shall approve the form of notice to be provided to the Settlement Class and submit it to the Court and request that the Court: (i) preliminarily approve the Settlement reflected herein; (ii) conditionally certify the Settlement Class (for settlement purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; (iii) approve the form of notice to be provided to the Settlement Class in the form mutually agreed to by the Settling Parties and submitted in connection with the motion for Preliminary Approval, and find that the form, manner and timing of notice constitutes the best notice practicable under the circumstances, and is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of

Civil Procedure; (iv) direct that notice be provided to the Settlement Class, in accordance with the Settlement; (v) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days following the date Class Notice is initially mailed as per Paragraph 50 of this Agreement, after which no Settlement Class Member shall be allowed to object to the Settlement or exclude himself, herself or itself from the Settlement Class or seek to intervene in the Action; (vi) pending final determination of whether the Settlement should be approved, bar all Settlement Class Members, directly, on a representative basis, or in any other capacity, from commencing or prosecuting against any of the Releasees any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims; (vii) pending final determination of whether the Settlement should be approved, stay all proceedings in the Action as to the Settling Defendant except those related to the effectuation of the Settlement; and (viii) schedule a hearing on Final Approval of the Settlement (which final approval hearing, as referenced herein, shall take place after the deadline for members of the Settlement Class to opt-out or object and no earlier than 90 days after entry of a Preliminary Approval Order and the mailing of Class Notice).

     40.    Within 20 business days after the end of the opt-out period established by the Court and set forth in the Class Notice, Class Counsel shall provide the Settling Defendant a written list of all potential Settlement Class Members who have exercised their right to request exclusion from the class (the "Opt-Out List").

41.     Plaintiffs shall use their best efforts to combine dissemination of notice of the proposed Settlement Class and the Agreement with notice of other settlement agreements. The proposed method of notice of the settlement shall be determined in consultation with a class action administrator and shall be approved by the Court. Within 60 business days after the Execution Date, the Settling Defendant shall supply to Class Counsel, at the Settling Defendant's expense and in such form as kept in the regular course of business (electronic format if available), such names and addresses of potential Settlement Class Members as they have. In the alternative, the Settling Defendant, at its sole option and discretion, may pay Class Counsel an additional $5,000 above and beyond the Settlement Proceeds referenced in Paragraph 22 of this Agreement in lieu of providing the list described in the foregoing sentence, but if the Settling Defendant exercises such option, it must still provide reasonable cooperation to Class Counsel regarding the sending of notice to particular class members about whom Class Counsel inquire.

42.     If the Court preliminarily approves this Agreement, Plaintiffs and the Settling Defendant shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and the Settling Defendant shall agree upon:

(a)     As to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(b)     Directing that, as to the Settling Defendant, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

(c)     Reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

(d)     Enjoining Settlement Class Members, and any person, entity, or official acting on behalf of a Settlement Class Member, from re-asserting Released Claims or seeking an

18

additional recovery payable to a Settlement Class Member based on the facts or transactions alleged in the Complaints;

(e)     Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to the Settling Defendant shall be entered; and

(f)     Requiring Class Counsel to file with the Clerk of the Court a record of potential Settlement Class Members who timely excluded themselves from the class, and to provide a copy of the record to counsel for the Settling Defendant.

43.     This Agreement shall become final only when (a) the Court has entered an order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against the Settling Defendant on the merits with prejudice as to all Settlement Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Final Approval" or "Finally Approved"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and the Settling Defendant shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 47 or 48.

G.      **Release and Discharge**

44.      In addition to and not in lieu of the effect of any final judgment entered in

accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other

valuable consideration as described herein, the Releasees shall be completely released, acquitted,

and forever discharged from any and all claims, demands, actions, suits, causes of action,

judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights,

defenses, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation,

debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in

law or in equity or otherwise, whether class, individual or otherwise in nature, that Releasors, or

each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out

of conduct or allegations concerning any collusion, agreement, or understanding among

Defendants to rig bids or allocate tax liens in connection with the public auction of Tax Sale

Certificates in the State of New Jersey during the Class Period, including, but not limited to, any

conduct alleged, and causes of action asserted, or that could have been alleged or asserted,

whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"),

and/or claims that could have been alleged or asserted, whether or not concealed or hidden, in

any other actions by any Releasor against the Settling Defendant or any Releasee, which arise

from or are predicated on the facts and/or actions described in the Complaints under any federal

or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade

practice, consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including,

without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time

through the end of the Class Period (the "Released Claims"). It is expressly understood and

agreed that this Release and Settlement is intended to cover and does cover not only all known

and unknown, foreseen and unforeseen, suspected or unsuspected injuries, losses and damages,

and the consequences thereof, but also any further injuries, losses and damages which arise from, or are related to, the claims set forth in the Complaints. The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims. However, this Release does not release any Non-Settling Defendant.

45.     In addition to the provisions of Paragraph 44, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 44. Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

46.     The release and discharge set forth in Paragraphs 44 and 45 herein do not include: (a) claims relating to disputes against the Settling Defendant unrelated to the Released Claims; and (b) claims of Settlement Class Members outside of the Class Period against the Settling Defendant ("Excepted Claims").

**H.      Rescission if the Agreement is Not Approved**

47.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then the Settling Defendant and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

48.     In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of the Settling Defendant, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.

49.     In the event any of the Settling Parties elect to rescind this Agreement pursuant to Paragraphs 47 or 48 of this Agreement, or if Final Approval of the Settlement provided for in the Agreement is not granted by the Court, unless otherwise specified in this Agreement, the Settling Parties shall be restored to the position they occupied in this Action immediately prior to entering into this Agreement and any monies paid by the Settling Defendant shall be returned to the Settling Defendant, except for the Settling Defendant's *pro rata* share (each Settling Defendant's *pro rata* share shall be determined by dividing each of the Settling Defendant's settlement payment amounts by the total of all settlement amounts) of those monies that had been expended on costs related to notice and administration of this Agreement prior to the date of termination of the Agreement.

**I.     Notice of Settlement to Class Members**

50.     Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement ("Class Notice") is provided in accordance with the Federal Rules of Civil Procedure and Court order. Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants and/or other sources,

the names and addresses of those potential members of the Settlement Class. Notice of this

Settlement will be issued in accordance with the dates ordered by the Court.

**J.      Miscellaneous**

51.     This Agreement does not settle or compromise any claim by Plaintiffs or any

Settlement Class Member asserted in the Action against any Non-Settling Defendant or any

unnamed co-conspirator other than the Releasees. All rights of any Settlement Class Member

against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other

than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members. The

purchase of Tax Sale Certificates in the State of New Jersey by the Settling Defendant with

respect to real property of Settlement Class Members shall remain in the case against the Non-

Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and

several liability claims against Non-Settling Defendants in the Action or other persons or entities

other than the Releasees. Likewise this Agreement does not settle or compromise any claim or

potential claim by Mooring or Settling Defendant Releasee against any other Defendant (be it

one who has settled or not) or any other party.

52.     The Settling Parties hereto are entering into this Agreement solely to receive the

benefits provided hereunder and to avoid the costs and burdens of potential litigation. This

Agreement shall not constitute or be construed or considered as an admission by the Settling

Defendant or any Settling Defendant Releasee for any purpose or as evidence of liability.

53.     The United States District Court for the District of New Jersey, Trenton Division,

shall retain jurisdiction over the implementation, enforcement, and performance of this

Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute

arising out of or relating to this Agreement or the applicability of this Agreement that cannot be

resolved by negotiation and agreement by Plaintiffs and the Settling Defendant. Plaintiffs and the

Settling Defendant submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement. This Agreement shall be governed by and interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

54.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and the Settling Defendant (and the other Releasees) pertaining to the settlement of the Action against the Settling Defendant only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and the Settling Defendant in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and the Settling Defendant, and approved by the Court.

55.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees. Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

56.     This Agreement may be executed in counterparts by Plaintiffs and the Settling Defendant, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

57.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

58.     In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the Settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the

24

Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by the Settling Defendant.

59.     Neither the Settling Defendant nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

60.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, the Settling Defendant, and Releasees any right or remedy under or by reason of this Agreement.

61.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile, letter by overnight delivery, or by email to:

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**For Mooring**

Jeffrey M. Eilender
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
Tel:  (212) 344-5400
Email: jme@schlamstone.com

62.     Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: February 5, 2015

HAUSFELD LLP

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email:  mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
Email: steve@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*

SCHLAM STONE & DOLAN LLP

Jeffrey M. Eilender
26 Broadway
New York, NY 10004
Tel: (212) 344-5400
Email: jme@schlamstone.com

*Attorneys for Defendant Mooring Tax Asset Group, LLC*

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

IN RE NEW JERSEY TAX SALES
CERTIFICATES ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

**SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND**
**DEFENDANT MICHAEL MASTELLONE**

This Settlement Agreement ("Agreement") is made and entered into this 11th day of

February, 2015 (the "Execution Date"), by and between defendant Michael Mastellone

("Mastellone" or "Settling Defendant") and Plaintiff Class Representatives, as defined herein at

Paragraph 10, both individually and on behalf of a class as described herein at Paragraph 14

("Plaintiffs").

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and

consolidated in the District of New Jersey, on their own behalf and on behalf of the class, against

Mastellone as well as other Defendants ("Action");

WHEREAS, Plaintiffs allege that Mastellone participated in an unlawful conspiracy to

rig bids and allocate real property and water and/or sewer tax liens at tax sale certificate auctions

in the State of New Jersey in violation of New Jersey state law, as well as Section 1 of the

Sherman Act;

WHEREAS, Mastellone denies the allegations made in the Action (except to the extent

Mastellone has admitted liability);

WHEREAS, over a period of time, the Plaintiffs and Mastellone, individually and

collectively, through their respective counsel, engaged in extensive, good faith, and arm's-length

settlement negotiations relating to the claims and the Action, with the settlement evidenced by

this Agreement being the product and result of those negotiations, discovery and analysis by counsel knowledgeable and experienced in class action litigation ("Settlement");

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a Settlement with Mastellone according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the Settlement Class (as defined in Paragraph 14 of this Agreement);

WHEREAS, Mastellone, despite his belief that he has good defenses to the claims alleged in the Action and without admitting any liability or fault (except to the extent he has admitted liability), desires to settle the Action, and thus avoid the expense, inconvenience, distraction of continued litigation and potential risk of the Action, or any action or proceeding relating to the matters being fully settled in this Agreement; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to Mastellone only, without costs as to Plaintiffs or the Settlement Class, subject to the approval of the Court, on the following terms and conditions:

A. Definitions

The following terms, as used in this Agreement, have the following meanings:

1. "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-1893-MAS-TJB.

2. "Class Counsel" and/or "Settlement Class Counsel" shall refer to the law firms of Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

2

3. "Counsel" means both Class Counsel and Mastellone's Counsel, as defined in Paragraphs 2 and 11.

4. "Class Notice" means the notice of this Agreement and of the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Agreement to be provided to the Settlement Class (as defined in Paragraph 14 of this Agreement) pursuant to Paragraph 50 below.

5. "Class Period" means the period from and including January 1, 1998 through February 28, 2009.

6. "Defendant(s)" refers to the persons or entities who are named as Defendants in Plaintiffs' First Amended Consolidated Master Class Action Complaint (the "Complaint") filed on January 6, 2014 in the above-captioned Action, as well as entities named as defendants in subsequent or amended complaints in the Action.

7. "Execution Date" means the date set forth below, immediately above the signature lines to the agreement.

8. "Final Approval" shall have the meaning ascribed to it in Paragraph 43 of this Agreement.

9. "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

10. "Plaintiffs" means Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.

11. "Settling Defendant's Counsel" shall refer to Gary L. Cutler, P.C.

12. "Releasee" or "Settling Defendant Releasee" shall refer, jointly and severally, and individually and collectively, to Mastellone, his immediate family, Park Finance LLC, and any affiliated companies, their parents and subsidiaries, and their past and present officers, directors,

3

and employees, agents, insurers, attorneys, shareholders, partners, associates, members, volunteers, independent contract bidders and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. Releasee shall not include any Non-Settling Defendant, and past and present officers, directors, managers, shareholders, employees, agents, managers, and independent contract bidders shall only be deemed a Releasee or Settling Defendant Releasee pursuant to this Agreement, to the extent they were performing services for Mastellone or Park Finance LLC during the Class Period.

13.    "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, managers, parents, subsidiaries, affiliates, partners, shareholders or other equity interest holders, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, for, under or through them, including, but not limited to, anyone claiming for or through them in any representative action, class action, or state attorney general *parens patriae* action (to the fullest extent the law allows for release of such state attorney general claims in this proceeding).

14.    "Settlement Class" means all persons and/or entities who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%. The Settlement Class does not include Defendants, government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer,

4

director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.

15.     "Settlement Class Member" means each member of the Settlement Class, as defined in Paragraph 14 of this Agreement, who does not timely elect to be excluded from the Settlement Class.

16.     "Non-Settling Defendants" refers to the Defendants other than the Settling Defendant or any Settling Defendant Releasee.

17.     "Settling Parties" shall mean, collectively, the Settling Defendant and each of the Plaintiffs, individually, and on behalf of the Settlement Class.

18.     "Tax Sale Certificate" or "TSC" shall mean a certificate acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water, sewer or other utility charges) from a property owner in the State of New Jersey, along with associated interest and fees.

**B. Settlement Class Certification**

19.     Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the Settlement Class defined in Paragraph 14 above. At the appropriate time, the Settling Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

**C.    Subsequent Modification of Class Definition or Class Period**

20.    The Settling Parties agree that modification of the definition of the Settlement Class may be necessary prior to moving for preliminary approval ("Preliminary Approval") and/or Final Approval of this Agreement, and agree to work in good faith to agree upon and effectuate any such modification. Any such modification shall be made in writing; provided, however, that in the event that Plaintiffs either enter into a settlement agreement with a Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class or Settlement Class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 14 (including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both. In no event shall the Settling Defendant be responsible for any additional notice costs or expenses. It is understood, however, that the Settling Defendant shall have the option and right to rescind this Agreement if the definition of the Settlement Class is narrowed in any way subsequent to the Execution Date of this Agreement, provided that: 1) the Settling Defendant gives Plaintiffs notice in writing seven days before rescinding; and 2) Plaintiffs may revert to the Settlement Class definition contained herein within three days of receiving such notice, after which the Settling Defendant will not be permitted to rescind this Agreement pursuant to this Paragraph.

6

**D.    Settlement Consideration**

### a.  Monetary Consideration

21.    In exchange for the mutual promises and covenants in this Agreement, including without limitation, the Releases set forth in Paragraphs 44-46 below and dismissal with prejudice of the Action as against the Settling Defendant upon Final Approval, the Settling Defendant agrees as follows:

22.    Within 90 days of the Execution Date, the Settling Defendant shall pay the sum of **$115,000** (the "Settlement Proceeds") into an escrow account, which Settlement Class Counsel shall identify to the Settling Defendant by name and account number, managed by Huntington Bank (the "Escrow Agent") and to be held in escrow by the Escrow Agent pursuant to an escrow agreement.

23.    The plan of distribution of the Settlement Proceeds to Settlement Class Members and as otherwise authorized herein shall be the sole responsibility of Class Counsel and will be decided upon at a later date by Settlement Class Counsel as authorized by order of the Court, and notice of such plan of distribution shall be provided to members of the Settlement Class, and shall be authorized by order of the Court. The Settlement Proceeds shall only be disbursed to Settlement Class Members and as otherwise authorized herein pursuant to, and as directed by, an order of the Court authorizing the plan of distribution.

a.    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

b. All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

c. Except as otherwise provided for herein, Releasors shall look solely to the Settlement Proceeds and the discounts set forth in paragraph 24 below, for settlement and satisfaction against the Releasees of all Released Claims (as defined in Paragraph 44 herein), and Releasors shall have no other recovery against the Settling Defendant or any recovery against any of the other Releasees. Use of the Settlement Proceeds shall be limited to payments to Settlement Class Members in relation to their claims in this Action, as well as attorneys' fees, expenses, costs, and notice and administration costs, all of which must be approved by the Court, and/or current and/or future litigation costs, or for any other use specifically authorized by order of the Court.

24. Since the Settling Defendant Releasees may currently be in possession of outstanding Tax Sale Certificates which were acquired during the Class Period:

(a) For any Tax Sale Certificates held by a Settling Defendant Releasee, and issued with respect to real property owned by a Settlement Class Member and not already in a foreclosure proceeding (excluding Tax Sale Certificates held by the Settling Defendant that were (1) acquired outside the Class Period; or (2) issued at an interest rate above 0% due to the existence of a prior lien held by the Settling Defendant Releasees or any of their predecessors or (3) issued with respect to real property owned by an individual or entity that was not a Settlement Class Member at the time Settling Defendant Releasees or any of their predecessors acquired the lien), the Settling Defendant Releasees agree:

8

(1)     Not to initiate foreclosure proceedings for 90 days following Final
        Approval of this Agreement;

(2)     In coordination with Class Counsel, to cause to be sent by first class mail
        within 30 days after Final Approval of this Agreement, and at the Settling
        Defendant's expense, written notice, in language mutually acceptable to
        the Settling Parties, to the property owner of record as stated on said
        TSCs, offering to permit redemption of any such TSCs held by the
        Settling Defendant Releasees by the respective property owner(s) of
        those respective properties in exchange for a one-time payment. The one-
        time payment will equal the redemption amount less a onetime discount
        of 15% of the redemption amount (excluding statutory attorneys' fees)
        redeemed through the municipality. Property owners can accept this
        discounted redemption offer only by making the required discounted
        payment to the municipal tax office within 45 days of such notice.

(3)     To the extent that the Settling Defendant Releasees transfer any Tax Sale
        Certificates between the Execution Date and 30 days after Final Approval
        of this Agreement, Settling Defendant Releasees agree to require the
        purchaser to offer the discounts provided for in this paragraph 24(a), on
        the same terms as those set forth in paragraph 24(a)(2).

(b)     For any Tax Sale Certificates issued with respect to real property owned by a
Settlement Class Member (excluding Tax Sale Certificates held by a Settling Defendant
Releasee that were (1) acquired outside the Class Period; or (2) issued at an interest rate
above 0% due to the existence of a prior lien held by a Settling Defendant Releasee or

9

any of their predecessors or issued with respect to real property owned by an individual or entity that was not a Settlement Class Member at the time Settling Defendant Releaseses or any of their predecessors acquired the lien)  still held by a Settling Defendant Releasee to which foreclosure proceedings have been initiated (but not completed) as of the date of Final Approval of this Agreement, or which Tax Sale Certificates relate to a property the owner of which is under protection of bankruptcy court, the Settling Defendant Releasees agree:

    (1)    In coordination with Class Counsel, to cause to be sent by first class mail within 30 days after Final Approval of this Agreement, and at the Settling Defendant's expense, written notice, in language mutually acceptable to the Settling Parties, to the defendants in such foreclosure actions, or debtors in such bankruptcy proceedings, offering to permit redemption of any such TSCs held by a Settling Defendant Releasee to the respective property owner(s) of those respective properties in exchange for a one-time payment. The one-time payment will equal the redemption amount less a onetime discount of 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice.

    (2)    To the extent that a Settling Defendant Releasee sells or transfers any Tax Sale Certificates between the Execution Date and 30 days after Final Approval of this Agreement, the Settling Defendant Releasees agree to

require the purchaser to offer the discounts provided for in this paragraph

24(b), on the same terms as those set forth in paragraph 24(b)(1).

### b. Cooperation Agreement

25.     Following an order granting Final Approval of this Agreement, the Settling

Defendant shall provide Plaintiffs with any documents (including electronic documents) related

to claims asserted in the Action that the Settling Defendant previously provided to the United

States Department of Justice ("DOJ") as part of its investigation into anticompetitive practices

related to TSCs in the State of New Jersey, and will agree to authenticate such documents for any

trial or proceeding in this Action if requested to do so by Class Counsel.

26.     Nothing in this Agreement shall be construed to preclude the assertion of any

constitutional or other privilege by the Settling Defendant or any other Releasees with respect to

the documents to be provided pursuant to Paragraph 25 of this Agreement. Further, Plaintiffs and

Class Counsel agree not to assert that the Settling Defendant or any other Releasees waived the

attorney-client privilege, work product immunity or any other privilege or protection (including

the right to avoid self-incrimination) with respect to documents provided or identified to Class

Counsel pursuant to this Agreement, nor should anything in this Agreement be construed as an

agreement by any party hereto that any person has agreed to waive any such privilege, immunity

or protection.

27.     The Settling Defendant shall not be required to provide the documents provided

for in Paragraph 25 of this Agreement if the DOJ objects to the Settling Defendant's provision of

such cooperation to Plaintiffs or Class Counsel. However, if Plaintiffs and/or Class Counsel

challenge the United States Department of Justice's objection to the Settling Defendant's

provision of documents under this Agreement, and the Court overseeing this Action overrules the

11

objection of the Department of Justice, the Settling Defendant shall be required to provide the documents as required by Paragraph 25 to this Agreement.

28.     Notwithstanding anything in this Agreement to the contrary, material produced pursuant to Paragraph 25 may be labeled confidential pursuant to a protective order, through which appropriate confidentiality designations can be made, to be entered between the parties to the Action and approved by the Court. To the extent no such protective order is yet in place at the time of final approval, within 30 days of Final Approval, the Parties will agree upon an interim confidentiality agreement that will govern the Settling Defendant's production of documents pursuant to paragraph 25 above, until such time as the parties in the Action agree upon a protective order and it is approved by the Court.

### c.  Notification of this Agreement

29.     Within ten business days of the Execution Date, the Settling Parties shall jointly notify the Court that they have entered into a settlement, and provide the Court with a copy of this Agreement.

### E.     Administrative Costs and Taxes

30.     All costs associated with the Settlement Class notification process, all fees related to administration of this Settlement or management of the Settlement Proceeds, any attorneys' fees and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive payment awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out of the Settlement Proceeds. Other than payment of the Settlement Proceeds, their expenses in providing the documents set forth in Paragraph 25 and the discounts provided in paragraph 24, the Settling Defendant shall have no further financial responsibility to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any other, fees or costs beyond payment of the Settlement Proceeds.

31.     Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge that each Settlement Class Member shall be individually responsible for any and all tax obligations related to any payments received as a result of this Settlement. The Settling Defendant makes no representations about the tax ramifications, if any, of any payments made to Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a result of, this Agreement.

32.     Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Proceeds. Such expenses include past, current and future litigation expenses or expenses related to notice and administration of this Settlement, or settlements with other Defendants. Other than the payment of the Settlement Proceeds, the Settling Defendant shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

33.     Plaintiffs and Releasees agree to treat the Settlement Proceeds as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 (the "Settlement Fund"). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 33 through 35 of the Agreement, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

13

34.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)). Such returns (as well as the election described in Paragraph 33) shall be consistent with Paragraph 33 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 35 hereof.

35.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Settling Defendant or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement Fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 33 through 35 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 35 ("Tax Expenses")), shall be paid out of the Settlement Fund.

**F. Approval of this Agreement and Dismissal of Claims**

36.     Plaintiffs and the Settling Defendant shall use their best efforts to effectuate this Agreement, including, at the appropriate time, seeking Preliminary Approval of the Settlement and securing both the Court's certification of the Settlement Class and the Court's approval of procedures (including providing notice of the settlement to the settlement class) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Settling Defendant.

14

37.     Upon the Execution Date, the Plaintiffs shall not pursue the Action against the Settling Defendant and shall not require that he answer or respond to any pleading and shall hold the litigation in abeyance against the Settling Defendant. During the period of time between the Execution Date and the date an order of dismissal is entered as provided for in Paragraph 42 below, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members asserted against the Settling Defendant shall be tolled.

38.     Subject to Paragraph 37 above, at the appropriate time, Plaintiffs shall submit to the Court a motion for: (a) certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; and (c) Preliminary Approval of the Settlement, and authorization to disseminate notice of class certification, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

39.     When Plaintiffs are prepared to issue a Class Notice as contemplated by Paragraph 50, the Settling Parties shall approve the form of notice to be provided to the Settlement Class and submit it to the Court and request that the Court: (i) preliminarily approve the Settlement reflected herein; (ii) conditionally certify the Settlement Class (for settlement purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; (iii) approve the form of notice to be provided to the Settlement Class in the form mutually agreed to by the Settling Parties and submitted in connection with the motion for Preliminary Approval, and find that the form, manner and timing of notice constitutes the best notice practicable under the circumstances, and is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of

15

Civil Procedure; (iv) direct that notice be provided to the Settlement Class, in accordance with the Settlement; (v) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days following the date Class Notice is initially mailed as per Paragraph 50 of this Agreement, after which no Settlement Class Member shall be allowed to object to the Settlement or exclude himself, herself or itself from the Settlement Class or seek to intervene in the Action; (vi) pending final determination of whether the Settlement should be approved, bar all Settlement Class Members, directly, on a representative basis, or in any other capacity, from commencing or prosecuting against any of the Releasees any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims; (vii) pending final determination of whether the Settlement should be approved, stay all proceedings in the Action as to the Settling Defendant except those related to the effectuation of the Settlement; and (viii) schedule a hearing on Final Approval of the Settlement (which final approval hearing, as referenced herein, shall take place after the deadline for members of the Settlement Class to opt-out or object and no earlier than 90 days after entry of a Preliminary Approval Order and the mailing of Class Notice).

40.    Within 20 business days after the end of the opt-out period established by the Court and set forth in the Class Notice, Class Counsel shall provide the Settling Defendant a written list of all potential Settlement Class Members who have exercised their right to request exclusion from the class (the "Opt-Out List"). In the event that more than that percentage of the Settlement Class indicated in the confidential letter (the "Settlement Opt-Out Percentage Letter") (which would be submitted to the Court *in camera)* of the same date as this Agreement and executed by counsel for the parties to this Agreement elects to opt out of the Class Settlement,

16

the Settling Defendant shall have the right to elect, in his sole and absolute discretion, whether to proceed with the settlement contemplated by this Agreement. If the Settling Defendant elects not to proceed with the settlment pursuant to this provision, then this Agreement will be of no further force or effect and whatever Settlement Proceeds remain after payment of settlement administration costs incurred up through the date of such election shall be returned immediatley to the Settling Defendant that made the particular payment being returned. In the event that a dispute should arise between the parties regarding calculation of the opt-out percentage, that dispute will be promptly submitted ot the Court for resolution in accordance with such procdures as the Court may recommend or adopt. If the Settling Defendant elects not to proceed with the Agreement, Plaintiffs may continue to use the informaton provided by the Settling Defendant pursuant to Paragraph 25 of this Agreement.

    41.     Plaintiffs shall use their best efforts to combine dissemination of notice of the proposed Settlement Class and the Agreement with notice of other settlement agreements. The proposed method of notice of the settlement shall be determined in consultation with a class action administrator and shall be approved by the Court. Within 60 business days after the Execution Date, the Settling Defendant shall supply to Class Counsel, at the Settling Defendant's expense and in such form as kept in the regular course of business (electronic format if available), such names and addresses of potential Settlement Class Members as he has. In the alternative, the Settling Defendant, in his sole option and discretion, may pay Class Counsel an additional $5,000 above and beyond the Settlement Proceeds referenced in Paragraph 22 of this Agreement in lieu of providing the list described in the foregoing sentence, but if the Settling Defendant exercises such option, it must still provide reasonable cooperation to Class Counsel regarding the sending of notice to particular class members about whom Class Counsel inquire.

17

42.    If the Court preliminarily approves this Agreement, Plaintiffs and the Settling

Defendant shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and

the Settling Defendant shall agree upon:

(a)    As to the Action, approving finally this Agreement and its
terms as being a fair, reasonable, and adequate settlement
as to the Settlement Class Members within the meaning of
Rule 23 of the Federal Rules of Civil Procedure and
directing its consummation according to its terms;

(b)    Directing that, as to the Settling Defendant, the Action be
dismissed with prejudice and, except as explicitly provided
for in this Agreement, without costs;

(c)    Reserving exclusive jurisdiction over the settlement and
this Agreement, including the administration and
consummation of this settlement;

(d)    Enjoining Settlement Class Members, and any person,
entity, or official acting on behalf of a Settlement Class
Member, from re-asserting Released Claims or seeking an
additional recovery payable to a Settlement Class Member
based on the facts or transactions alleged in the
Complaints;

(e)    Determining under Federal Rule of Civil Procedure 54(b)
that there is no just reason for delay and directing that the
final judgment of dismissal as to the Settling Defendant
shall be entered; and

(f)    Requiring Class Counsel to file with the Clerk of the Court
a record of potential Settlement Class Members who timely
excluded themselves from the class, and to provide a copy
of the record to counsel for the Settling Defendant.

43.    This Agreement shall become final only when (a) the Court has entered an order

approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final

judgment dismissing the Action against the Settling Defendant on the merits with prejudice as to

all Settlement Class Members and without costs has been entered, and (b) the time for appeal or

to seek permission to appeal from the Court's approval of this Agreement and entry of a final

judgment as described in clause (a) above has expired or, if appealed, approval of this

Agreement and the final judgment have been affirmed in their entirety by the Court of last resort

to which such appeal has been taken and such affirmance has become no longer subject to further

appeal or review ("Final Approval" or "Finally Approved"). It is agreed that neither the

provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C.

§ 1651, shall be taken into account in determining the above-stated times. On the Execution

Date, Plaintiffs and the Settling Defendant shall be bound by the terms of this Agreement, and

this Agreement shall not be rescinded except in accordance with Paragraphs 47 or 48.

### G. Release and Discharge

44.     In addition to and not in lieu of the effect of any final judgment entered in

accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other

valuable consideration as described herein, the Releasees shall be completely released, acquitted,

and forever discharged from any and all claims, demands, actions, suits, causes of action,

judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights,

defenses, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation,

debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in

law or in equity or otherwise, whether class, individual or otherwise in nature, that Releasors, or

each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out

of conduct or allegations concerning any collusion, agreement, or understanding among

Defendants to rig bids or allocate tax liens in connection with the public auction of Tax Sale

Certificates in the State of New Jersey during the Class Period, including, but not limited to, any

conduct alleged, and causes of action asserted, or that could have been alleged or asserted,

whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"),

and/or claims that could have been alleged or asserted, whether or not concealed or hidden, in

19

any other actions by any Releasor against the Settling Defendant or any Releasee, which arise from or are predicated on the facts and/or actions described in the Complaints under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time through the end of the Class Period (the "Released Claims"). It is expressly understood and agreed that this Release and Settlement is intended to cover and does cover not only all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, losses and damages, and the consequences thereof, but also any further injuries, losses and damages which arise from, or are related to, the claims set forth in the Complaints. The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims. However, this Release does not release any Non-Settling Defendant.

45.   In addition to the provisions of Paragraph 44, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 44. Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

46.   The release and discharge set forth in Paragraphs 44 and 45 herein do not include: (a) claims relating to disputes against the Settling Defendant unrelated to the Released Claims; and (b) claims of Settlement Class Members outside of the Class Period against the Settling Defendant ("Excepted Claims").

20

### H. Rescission if the Agreement is Not Approved

47.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then the Settling Defendant and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

48.     In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of the Settling Defendant, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.

49.     In the event any of the Settling Parties elect to rescind this Agreement pursuant to Paragraphs 47 or 48 of this Agreement, or if Final Approval of the Settlement provided for in the Agreement is not granted by the Court, unless otherwise specified in this Agreement, the Settling Parties shall be restored to the position they occupied in this Action immediately prior to entering into this Agreement and any monies paid by the Settling Defendant shall be returned to the Settling Defendant, except for the Settling Defendant's *pro rata* share (each Settling Defendant's *pro rata* share shall be determined by dividing each of the Settling Defendant's settlement payment amounts by the total of all settlement amounts) of those monies that had been expended on costs related to notice and administration of this Agreement prior to the date of termination of the Agreement.

21

### I. Notice of Settlement to Class Members

50.     Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement ("Class Notice") is provided in accordance with the Federal Rules of Civil Procedure and Court order. Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants and/or other sources, the names and addresses of those potential members of the Settlement Class. Notice of this Settlement will be issued in accordance with the dates ordered by the Court.

### J. Miscellaneous

51.     This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any unnamed co-conspirator other than the Releasees. All rights of any Settlement Class Member against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members. The purchase of Tax Sale Certificates in the State of New Jersey by the Settling Defendant with respect to real property of Settlement Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

52.     The Settling Parties hereto are entering into this Agreement solely to receive the benefits provided hereunder and to avoid the costs and burdens of potential litigation. This Agreement shall not constitute or be construed or considered as an admission by the Settling Defendant or any Settling Defendant Releasee for any purpose or as evidence of liability.

22

53.     The United States District Court for the District of New Jersey, Trenton Division, shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and the Settling Defendant. Plaintiffs and the Settling Defendant submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement. This Agreement shall be governed by and interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

54.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and the Settling Defendant (and the other Releasees) pertaining to the settlement of the Action against the Settling Defendant only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and the Settling Defendant in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and the Settling Defendant, and approved by the Court.

55.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees. Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

56.     This Agreement may be executed in counterparts by Plaintiffs and the Settling Defendant, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

23

57.    The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

58.    In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the Settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by the Settling Defendant.

59.    Neither the Settling Defendant nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

60.    Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, the Settling Defendant, and Releasees any right or remedy under or by reason of this Agreement.

61.    Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile, letter by overnight delivery, or by email to the persons and fax numbers, addresses and email addresses below or to any changed address provided by written notice to the other party by the same means:

24

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
      jpizzirusso@hausfeldllp.com
      sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**For Michael Mastellone**

Gary L. Cutler
**GARY L. CUTLER, P.C.**
160 Broadway, Suite 600
New York, NY 10038-4217
Telephone: (212) 227-4358

And

146B Ferry Street, Suite 54
Newark, NJ 07105
Telephone: (973) 735-6667
Facsimile: (973) 735-6663
Email: garycutlerlaw@gmail.com

     62.     Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: February 11, 2015

**HAUSFELD LLP**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
       jpizzirusso@hausfeldllp.com
       sgassman@hausfeldllp.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*

**GARY L. CUTLER, P.C.**

Gary L. Cutler
160 Broadway, Suite 600
New York, NY 10038-4217
Telephone: (212) 227-4358

And

146B Ferry Street, Suite 54
Newark, NJ 07105
Telephone: (973) 735-6667
Facsimile: (973) 735-6663
Email: garycutlerlaw@gmail.com

*Attorneys for Defendant Michael Mastellone*

26

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. | Master Docket No. 3:12-CV-01893-MAS-TJB |

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANTS ROBERT U. DEL VECCHIO AND ROBERT U. DEL VECCHIO PENSION TRUST

This Settlement Agreement ("Agreement") is made and entered into this 17th day of February, 2015 (the "Execution Date"), by and between defendants Robert U. Del Vecchio and Robert U. Del Vecchio Pension Trust ( "Del Vecchio") and Plaintiff Class Representatives, as defined herein at Paragraph 11, both individually and on behalf of a class as described herein at Paragraph 14 ("Plaintiffs").

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and consolidated in the District of New Jersey, on their own behalf and on behalf of the class against Defendants including Del Vecchio ("Action");

WHEREAS, Plaintiffs allege that Del Vecchio participated in an unlawful conspiracy to rig bids and allocate real property and water and/or sewer tax liens at tax sale certificate auctions in the State of New Jersey in violation of New Jersey state law as well as Section 1 of the Sherman Act;

WHEREAS, over a period of time, the Plaintiffs and Del Vecchio, through their respective counsel, engaged in extensive, good faith, and arm's-length settlement negotiations relating to the claims and the Action, with this Agreement being the product and result of those negotiations, discovery and analysis by counsel knowledgeable and experienced in class action litigation;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Del Vecchio according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the Settlement Class (as defined in Paragraph 14 of this Agreement);

WHEREAS, Del Vecchio, despite their belief that they have good defenses to the claims alleged in the Action, desire to settle the Action, and thus avoid the risk, exposure, inconvenience, and distraction of continued litigation of the Action, or any action or proceeding relating to the matters being fully settled in this Agreement; and

WHEREAS, Del Vecchio agrees to fully cooperate with Class Counsel as and to the extent set forth herein;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to Del Vecchio only, without costs as to Plaintiffs or the Settlement Class, subject to the approval of the Court, on the following terms and conditions:

**A. Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.       "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-1893-MAS-TJB.

2.       "Class Counsel" and "Settlement Class Counsel" shall refer to the law firms of Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

3.      "Del Vecchio's Counsel" shall refer to the law firm of Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, P.A.

4.      "Counsel" means both Class Counsel and Del Vecchio's Counsel, as defined in Paragraphs 2 and 3 above.

5.      "Class Notice" means the notice of this Agreement and of the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Agreement to be provided to the Settlement Class (as defined in Paragraph 14 of this Agreement) pursuant to Paragraph 48 below.

6.      "Class Period" means the period from and including January 1, 1998 through February 28, 2009.

7.      "Defendant(s)" refers to the persons or entities who are named as defendants in the Plaintiffs' First Amended Consolidated Master Class Action Complaint (the "Complaint') filed on January 6, 2014 in the above-captioned Action, as well as entities named as defendants in subsequent or amended complaints in the Action.

8.      "Execution Date" means the date set forth below, immediately above the signature lines to the agreement.

9.      "Final Approval" shall have the meaning ascribed to it in Paragraph 40 of this Agreement.

10.      "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

11.      "Plaintiffs" means Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.

12.     "Releasees" shall refer, jointly and severally, and individually and collectively, to Del Vecchio, any affiliated companies, their parents and subsidiaries, and their past and present officers, directors, employees, agents, insurers, attorneys, shareholders, partners, associates, members, volunteers, independent contract bidders, and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. Releasees shall not include any Non-Settling Defendant and independent contract bidders shall only be deemed a Releasee pursuant to this Agreement, to the extent such bidders were performing services for Del Vecchio.

13.     "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, parents, subsidiaries, affiliates, partners, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

14.     "Settlement Class" means all persons and/or entities who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%.  The Settlement Class does not include Defendants, government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.

4

15.    "Settlement Class Member" means each member of the class, as defined in Paragraph 14 of this Agreement, who does not timely elect to be excluded from the Settlement Class.

16.    "Non-Settling Defendants" refers to the Defendants other than Del Vecchio.

17.    "Settling Parties" shall mean, collectively, Del Vecchio and the Plaintiffs, individually, and on behalf of the Settlement Class.

18.    "Tax Sale Certificate" or "TSC" shall mean a certificate acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water or sewer charges) from a property owner in the State of New Jersey, along with associated interest and fees.

**B.  Settlement Class Certification**

19.    Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the Settlement Class defined in Paragraph 14 above.  At the appropriate time, the Settling Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

**C.    Subsequent Modification of Class Definition or Class Period**

20.    The Parties agree that modification of the definition of the Settlement Class may be necessary prior to moving for preliminary and/or final approval of this Agreement, and agree to work in good faith to agree upon and effectuate any such modification.  Any such modification shall be made in writing; provided, however, that in the event that Plaintiffs either enter into a settlement agreement with a Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 14

5

(including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both.  In no event shall Del Vecchio be responsible for any additional notice costs or expenses.

**D.      Settlement Consideration**

> **a.  Monetary Consideration**

21.      In exchange for the mutual promises and covenants in this Agreement, including without limitation, the Releases set forth in Paragraphs 41-43 below and dismissal with prejudice of the Action as against Del Vecchio upon Final Approval, Del Vecchio agrees as follows:

22.      Within 20 days of the Execution Date, Del Vecchio shall pay the sum of **$135,000** (the "Settlement Proceeds") into an escrow account, which Settlement Class Counsel shall identify to Del Vecchio by name and account number, managed by Huntington Bank (the "Escrow Agent") pursuant to an escrow agreement.  The plan of distribution of the Settlement Proceeds to Settlement Class Members shall be the sole responsibility of Class Counsel and will be decided upon at a later date by Settlement Class Counsel, and notice of such plan of distribution shall be provided to members of the Settlement Class, and shall be authorized by order of the Court.  The Settlement Proceeds shall only be disbursed to Settlement Class Members pursuant to an order of the Court authorizing the plan of distribution.

> a.      The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof, or money

market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

b.      All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

c.      Except as otherwise provided for herein, Releasors shall look solely to the Settlement Proceeds for settlement and satisfaction against the Releasees of all Released Claims (as defined in Paragraph 41 herein), and Releasors shall have no other recovery against Del Vecchio or any other Releasee.  Use of the Settlement Proceeds shall be limited to payment to Settlement Class Members in relation to their claims in this Action, as well as attorneys' fees, notice and administration costs, all of which must be approved by the Court, and/or current and/or future litigation costs, or for any other use specifically authorized by order of the Court.

23.     Since Del Vecchio is currently in possession of outstanding Tax Sale Certificates which were acquired during the Class Period:

(a)      For any Tax Sale Certificates issued with respect to real property owned by a Settlement Class Member still held by Del Vecchio not already in foreclosure proceedings, Del Vecchio agrees:

(1)     Not to initiate foreclosure proceedings for 90 days following Preliminary Approval of this Agreement;

(2)     In coordination with Class Counsel, to cause to be sent by first class mail within 30 days after Preliminary Approval of this Agreement, and

7

at Del Vecchio's expense, written notice, in language mutually acceptable to the Settling Parties, to the property owner of record as stated on the said TSCs, offering to permit redemption of any such TSCs held by Del Vecchio by the respective property owner(s) of those respective properties in exchange for a one-time payment.  The one-time payment will equal the redemption amount less a one-time discount equal to 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality.  Property owners can accept this discounted redemption offer only by making the requested payment to the municipal tax office within 45 days of the date of the written notice.

(b)      For any Tax Sale Certificates issued with respect to real property owned by a Settlement Class Member still held by Del Vecchio to which foreclosure proceedings have been initiated (but not completed) as of the date of Preliminary Approval of this Agreement, or which Tax Sale Certificates relate to a property the owner of which is under protection of bankruptcy court, Del Vecchio agrees:

(1)      In coordination with Class Counsel, to cause to be sent by first class mail within 30 days after Preliminary Approval of this Agreement, and at Del Vecchio's expense, written notice, in language mutually acceptable to the Settling Parties, to the defendants in such foreclosure actions, or debtors in such bankruptcy proceedings, offering to permit redemption of any such TSCs held by Del Vecchio to the respective property owner(s) of those respective properties in exchange for a one-time payment.  The one-time payment will equal the redemption amount less a one-time

discount equal to 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the requested payment to the municipal tax office within 45 days of the date of the written notice.

### b. Cooperation Agreement

24.     Following an order granting Final Approval of this Agreement, the Settling Defendant shall provide Plaintiffs with any documents (including electronic documents) related to claims asserted in the Action that the Settling Defendant previously provided to the United States Department of Justice ("DOJ") as part of its investigation into anticompetitive practices related to TSCs in the State of New Jersey, and will agree to provide a declaration or affidavit authenticating such documents for any trial or proceeding in this Action if requested to do so by Class Counsel.

25.     Nothing in this Agreement shall be construed to preclude the assertion of any constitutional or other privilege by Del Vecchio or any individuals who are current or former employees or agents (i.e. *per diem* bidders) of Del Vecchio. Further, Plaintiffs and Class Counsel agree not to assert that Del Vecchio waived the attorney-client privilege, work product immunity or any other privilege or protection (including the right to avoid self-incrimination) with respect to information or documents or testimony provided or identified to Class Counsel pursuant to this Agreement. Nor should anything in this Agreement be construed as an agreement by any Party hereto that any person has agreed to waive any such privilege, immunity or protection.

26.     Del Vecchio shall not be required to provide the cooperation provided for in Paragraph 24 of this Agreement if the United States Department of Justice objects to Del Vecchio's provision of such cooperation to Plaintiffs or Class Counsel.  However, if Plaintiffs and/or Class Counsel challenge the United States Department of Justice's objection to Del Vecchio's provision of cooperation under this Agreement, and the Court overseeing this Action overrules the objection of the Department of Justice, Del Vecchio shall be required to provide all cooperation required by this Agreement.

27.     Notwithstanding anything in this Agreement to the contrary, material produced pursuant to Paragraph 24 may be labeled confidential pursuant to a protective order, through which appropriate confidentiality designations can be made, to be entered between the parties to the Action. To the extent no such protective order is yet in place at the time of final approval, within 30 days of Final Approval, the Parties will agree upon an interim confidentiality agreement that will govern the Settling Defendant's production of documents pursuant to paragraph 24 above, until such time as the parties in the Action agree upon a protective order.

**E.     Administrative Costs and Taxes**

28.     All costs associated with the Settlement Class notification process, all fees related to administration of this Settlement or management of the Settlement Proceeds, any attorneys' fees and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive payment awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out of the Settlement Proceeds.  Del Vecchio shall have no further financial responsibility to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any other, fees or costs beyond payment of the Settlement Proceeds.

29.     Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge that each Settlement Class Member shall be individually responsible for any and all tax obligations related to any payments received as a result of this Settlement.  Del Vecchio makes no representations about the tax ramifications, if any, of any payments made to Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a result of, this Agreement.

30.     Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Proceeds.  Such expenses include past, current and future litigation expenses or expenses related to notice and administration of this settlement, or settlements with other Defendants.  Other than the payment of the Settlement Proceeds, and any expenses associated with its cooperation to be provided pursuant to this Agreement, Del Vecchio shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

31.     Plaintiffs and Releasees agree to treat the settlement fund as being at all times a "qualified settlement fund" within the meaning of Treas.  Reg. § 1.468B-1 (the "Settlement Fund").  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 31 through 33 of the Agreement, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

32.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas.  Reg. § 1.468B-2(k)(l)).  Such returns (as well as the election described in Paragraph 31) shall be consistent with Paragraph 31 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in paragraph 33 hereof.

33.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Del Vecchio or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement Fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 31 through 33 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 33 ("Tax Expenses")), shall be paid out of the Settlement Fund.

**F.  Approval of this Agreement and Dismissal of Claims**

34.     Plaintiffs and Del Vecchio shall use their best efforts to effectuate this Agreement, including, at the appropriate time, seeking preliminary Court approval of the Settlement and securing both the Court's certification of the Settlement Class and the Court's approval of procedures (including providing notice of the settlement to the settlement class) to secure the prompt, complete, and final dismissal with prejudice of the Action as to Del Vecchio.

12

35. Upon the Execution Date, the Plaintiffs shall not pursue the Action against Del Vecchio and shall not require that they answer or respond to any pleading and shall hold the litigation in abeyance against Del Vecchio.  During the period of time between the Execution Date and the date an order of dismissal is entered as provided for in Paragraph 39 below, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members against Del Vecchio shall be tolled.

36. Subject to Paragraph 34 above, at the appropriate time, Plaintiffs shall submit to the Court a motion for: (a) certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel respectively; and (c) preliminary approval of the settlement, and authorization to disseminate notice of class certification, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

37. When Plaintiffs are prepared to issue Notice as contemplated by Paragraph 34, the Settling Parties shall approve the form of notice to be provided to the Settlement Class and submit it to the Court and request that the Court: (i) preliminarily approve the Settlement reflected herein; (ii) conditionally certify the Settlement Class (for settlement purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel respectively; (iii) approve the form of notice to be provided to the Settlement Class in the form mutually agreed to by the Settling Parties and submitted in connection with the motion for preliminary approval, and find that the form, manner and timing of notice constitutes the best notice practicable under the circumstances, and is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure; (iv) direct

13

that notice be provided to the Settlement Class, in accordance with the Settlement; (v) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days following the date Class Notice is initially mailed as per Paragraph 47 of this Agreement, after which no Settlement Class Member shall be allowed to object to the Settlement or exclude himself, herself or itself from the Settlement Class or seek to intervene in the Action; (vi) pending final determination of whether the Settlement should be approved, bar all Settlement Class Members, directly, on a representative basis, or in any other capacity, from commencing or prosecuting against any of the Releasees any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims; (vii) pending final determination of whether the Settlement should be approved, stay all proceedings in the Action as to Del Vecchio except those related to the effectuation of the Settlement; and (viii) schedule a hearing on final approval of the Settlement (which final approval hearing, as referenced herein, shall take place after the deadline for members of the Settlement Class to opt-out or object and no earlier than 90 days after entry of a Preliminary Approval Order and the mailing of Class Notice).

38.    Plaintiffs shall use their best efforts to combine dissemination of notice of the proposed Settlement Class and the Agreement with notice of other settlement agreements.   The proposed method of notice of the settlement shall be determined in consultation with a class action administrator and shall be approved by the Court.  Within 60 business days after the Execution Date, Del Vecchio shall supply to Class Counsel, at Del Vecchio's expense and in such form as kept in the regular course of business (electronic format if available), such names and addresses of potential Settlement Class Members as they have.

39.     If the Court preliminarily approves this Agreement, Plaintiffs and Del Vecchio shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and Del Vecchio shall agree upon:

(a)     As to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(b)     Directing that, as to Del Vecchio, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

(c)     Reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

(d)     Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to Del Vecchio shall be entered; and

(e)     Requiring Class Counsel to file with the Clerk of the Court a record of potential Settlement Class Members who timely excluded themselves from the class, and to provide a copy of the record to counsel for Del Vecchio.

40.     This Agreement shall become final only when (a) the Court has entered an order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against Del Vecchio on the merits with prejudice as to all Settlement Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Final Approval" or "Finally Approved").  It is agreed that neither the

provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Del Vecchio shall be bound by the terms of this Agreement, and the Agreement shall not be rescinded except in accordance with Paragraphs 44 or 45 of this Agreement.

### G. Release and Discharge

41.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other valuable consideration as described herein, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation, debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in law or in equity or otherwise, whether class, individual or otherwise in nature, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of conduct or allegations concerning any agreement or understanding among Defendants to rig bids or allocate tax liens in connection with the public auction of Tax Sale Certificates in the State of New Jersey during the Class Period, including, but not limited to, any conduct alleged, and causes of action asserted, or that could have been alleged or asserted, whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"), and/or claims that could have been alleged or asserted, whether or not concealed or hidden, in any other actions by any Releasee against Del Vecchio, which arise from or are predicated on the facts and/or actions described in the Complaints under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, fraud, RICO,

civil conspiracy law, or similar laws, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time through the end of the Class Period (the "Released Claims"). It is expressly understood and agreed that this Release and settlement is intended to cover and does cover not only all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, losses and damages, and the consequences thereof, but any further injuries, losses and damages which arise from, or are related to, the claims set forth in the Complaints. The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims. However, this Release does not release any Non-Settling Defendant.

42. In addition to the provisions of Paragraph 41, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 41. Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

43. The release and discharge set forth in Paragraphs 41 and 42 herein do not include: (a) claims relating to disputes against Del Vecchio unrelated to the Released Claims; and (b) claims of Settlement Class Members outside of the Class Period against Del Vecchio ("Excepted Claims").

**H.  Rescission if the Agreement is Not Approved**

44.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 39-40 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then Del Vecchio and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

45.     In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraphs 39-40 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of Del Vecchio, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.  If the agreement is rescinded, Plaintiffs may continue to use the information provided by Del Vecchio pursuant to Paragraph 24 of this Agreement.

46.     In the event any of the Settling Parties elect to rescind this Agreement pursuant to Paragraphs 44 or 45 of this Agreement, or if Final Approval of the settlement provided for in the Agreement is not granted by the Court, unless otherwise specified in this Agreement, the Settling Parties shall be restored to the position they occupied in this Action immediately prior to entering into this Agreement and any monies paid by Del Vecchio shall be returned to Del Vecchio, except for Del Vecchio's *pro rata* share of those monies that had been expended on costs related to notice and administration of this Agreement prior to the date of termination of the Agreement.

18

**I.  Notice of Settlement to Class Members**

47.    Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement ("Class Notice") is provided in accordance with the Federal Rules of Civil Procedure and Court order.  Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants and/or other sources, the names and addresses of those potential members of the Settlement Class.  Notice of this Settlement will be issued in accordance with the dates ordered by the Court.

**J.  Miscellaneous**

48.    This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any unnamed co-conspirator other than the Releasees.  All rights of any Settlement Class Member against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members.  The purchase of Tax Sale Certificates in the State of New Jersey by Del Vecchio with respect to real property of Settlement Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

49.    The parties hereto are entering into this Agreement solely to receive the benefits provided hereunder and to avoid the costs and burdens of potential litigation.  This Agreement shall not constitute or be construed or considered as an admission by Del Vecchio for any purpose or as evidence of liability.

19

50.     The United States District Court for the District of New Jersey, Trenton Vicinage shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Del Vecchio.  Plaintiffs and Del Vecchio submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.  This Agreement shall be governed by and interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

51.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and Del Vecchio (and the other Releasees) pertaining to the settlement of the Action against Del Vecchio only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Del Vecchio in connection therewith.  This Agreement may be modified or amended only by a writing executed by Plaintiffs and Del Vecchio, and approved by the Court.

52.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

53.     This Agreement may be executed in counterparts by Plaintiffs and Del Vecchio, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

54.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

55.     In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Del Vecchio.

56.     Neither Del Vecchio nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

57.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Del Vecchio, and Releasees any right or remedy under or by reason of this Agreement.

58.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile, letter by overnight delivery, or by email to:

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**For Del Vecchio:**

Keith A. Bonchi
GOLDENBERG, MACKLER & SAYEGH,
MINTZ, PFEFFER, BONCHI & GILL P.A.
660 New Road, Suite 1-A
Northfield, NJ  08225
Telephone:  (609) 646-0222
keith@gmslaw.com

59.    Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: February 17, 2015

**HAUSFELD LLP**

_____
Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200

**GOLDENBERG, MACKLER &
SAYEGH, MINTZ, PFEFFER, BONCHI
& GILL P.A.**

_____
Keith A. Bonchi
660 New Road, Suite 1-A
Northfield, NJ  08225
Telephone:  (609) 646-0222

22

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**For Del Vecchio:**

Keith A. Bonchi
GOLDENBERG, MACKLER & SAYEGH,
MINTZ, PFEFFER, BONCHI & GILL P.A.
660 New Road, Suite 1-A
Northfield, NJ 08225
Telephone: (609) 646-0222
keith@gmslaw.com

59.   Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: February 17, 2015

**HAUSFELD LLP**

_____
Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200

**GOLDENBERG, MACKLER & SAYEGH, MINTZ, PFEFFER, BONCHI & GILL P.A.**

_____
Keith A. Bonchi
660 New Road, Suite 1-A
Northfield, NJ 08225
Telephone: (609) 646-0222

Facsimile: 202-540-7201
Email:  mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*

keith@gmslaw.com

*Attorneys for Defendant Robert U. Del Vecchio and Robert U. Del Vecchio Pension Trust*

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE NEW JERSEY TAX SALES
CERTIFICATES ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

### SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANTS BBX CAPITAL CORPORATION F/K/A BANKATLANTIC BANCORP, INC., FIDELITY TAX, LLC, HEARTWOOD 55, LLC, MICHAEL DELUCA, GARY I. BRANSE, DAVID JELLEY, PAT CARABALLESE AND PAM INVESTORS

This Settlement Agreement ("Agreement") is made and entered into this 2nd day of March, 2015 (the "Execution Date"), by and between defendants BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley (collectively the "BankAtlantic Defendants"); Pat Caraballese and PAM Investors (collectively "PAM")(collectively the BankAtlantic Defendants and PAM will be referred to herein as "Settling Defendants") and Plaintiff Class Representatives, as defined herein at Paragraph 10, both individually and on behalf of a class as described herein at Paragraph 14 ("Plaintiffs").

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and consolidated in the District of New Jersey, on their own behalf and on behalf of the class, against Defendants, including the Settling Defendants ("Action");

WHEREAS, Plaintiffs allege that the Settling Defendants participated in an unlawful conspiracy to rig bids and allocate real property and water and/or sewer tax liens at tax sale certificate auctions in the State of New Jersey in violation of New Jersey state law, as well as Section 1 of the Sherman Act;

WHEREAS, the Settling Defendants deny the allegations made in the Action;

WHEREAS, the Settling Defendants, and their respective current and former employees, unlike many of the Defendants, have not been criminally charged with participating in the conspiracy alleged in the Action, and it is not expected that they will be criminally charged;

WHEREAS, over a period of time, the Plaintiffs and the Settling Defendants, individually and collectively, through their respective counsel, engaged in extensive, good faith, and arm's-length settlement negotiations relating to the claims and the Action, with the settlement evidenced by this Agreement being the product and result of those negotiations, discovery and analysis by counsel knowledgeable and experienced in class action litigation ("Settlement");

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a Settlement with the Settling Defendants according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the Settlement Class (as defined in Paragraph 14 of this Agreement);

WHEREAS, the Settling Defendants, despite their belief that they have good defenses to the claims alleged in the Action and without admitting any liability or fault, desire to settle the Action, and thus avoid the expense, inconvenience, distraction of continued litigation and potential risk of the Action, or any action or proceeding relating to the matters being fully settled in this Agreement; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled,

2

compromised, and dismissed on the merits with prejudice as to the Settling Defendants and the Settling Defendant Releasees only, without costs as to Plaintiffs or the Settlement Class, subject to the approval of the Court, on the following terms and conditions:

**A. Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-1893-MAS-TJB.

2.      "Class Counsel" and/or  "Settlement Class Counsel" shall refer to the law firms of Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

3.       "Counsel" means both Class Counsel and the Settling Defendants' Counsel, as defined in Paragraphs 2 and 11.

4.      "Class Notice" means the notice of this Agreement and of the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Agreement to be provided to the Settlement Class (as defined in Paragraph 14 of this Agreement) pursuant to Paragraph 50 below.

5.      "Class Period" means the period from and including January 1, 1998 through February 28, 2009.

6.      "Defendant(s)" refers to the persons or entities who are named as Defendants in Plaintiffs' First Amended Consolidated Master Class Action Complaint (the "Complaint') filed on January 6, 2014 in the above-captioned Action, as well as entities named as defendants in subsequent or amended complaints in the Action.

7.      "Execution Date" means the date set forth below, immediately above the signature lines to the agreement.

3

8.      "Final Approval" shall have the meaning ascribed to it in Paragraph 43 of this Agreement.

9.      "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

10.     "Plaintiffs" means Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.

11.     "Settling Defendants' Counsel" shall refer to the law firms of Carella, Byrne, Cecchi, Olstein, Brody & Agnello PC and Greenbaum Rowe Smith & Davis LLP.

12.     "Releasees" or "Settling Defendants Releasee" shall refer, jointly and severally, and individually and collectively, to the Settling Defendants, any past or present  affiliated companies, past or present parents and subsidiaries, and their past and present officers, managers of any manager-run entities, directors, employees, agents, insurers, attorneys, shareholders or other equity interest holders (to the extent they are not Non-Settling Defendants), partners, associates, members, volunteers, independent contract bidders, and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. Releasees shall not include any Non-Settling Defendant, and past and present officers, directors, managers, employees, agents, managers, and independent contract bidders shall only be deemed a Releasee or Settling Defendant Releasee pursuant to this Agreement, to the extent they were performing services for the Settling Defendants during the Class Period.

13.     "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, managers, parents, subsidiaries, affiliates, partners, shareholders or other equity interest holders, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, for, under or through them, including, but not

4

limited to, anyone claiming for or through them in any representative action, class action, or state attorney general *parens patriae* action (to the fullest extent the law allows for release of such state attorney general claims in this proceeding).

14. "Settlement Class" means all persons and/or entities who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%. The Settlement Class does not include Defendants, government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.

15. "Settlement Class Member" means each member of the Settlement Class, as defined in Paragraph 14 of this Agreement, who does not timely elect to be excluded from the Settlement Class.

16. "Non-Settling Defendants" refers to the Defendants other than the Settling Defendants or any Settling Defendant Releasee.

17. "Settling Parties" shall mean, collectively, the Settling Defendants and each of the Plaintiffs, individually, and on behalf of the Settlement Class.

18. "Tax Sale Certificate" or "TSC" shall mean a certificate acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water or sewer charges) from a property owner in the State of New Jersey, along with associated interest and fees.

**B. Settlement Class Certification**

19.     Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the Settlement Class defined in Paragraph 14 above.  At the appropriate time, the Settling Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

C.     **Subsequent Modification of Class Definition or Class Period**

20.     The Settling Parties agree that modification of the definition of the Settlement Class may be necessary prior to moving for preliminary approval ("Preliminary Approval") and/or Final Approval of this Agreement, and agree to work in good faith to agree upon and effectuate any such modification.  Any such modification shall be made in writing; provided, however, that in the event that Plaintiffs either enter into a settlement agreement with a Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class or Settlement Class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 14 (including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both. In no event shall the Settling Defendants be responsible for any additional notice costs or expenses. It is understood, however, that the Settling Defendants shall have the option and right to rescind this Agreement if the definition of the Settlement Class is narrowed in any way subsequent to the Execution Date of this Agreement, provided that: 1) the Settling Defendants give Plaintiffs notice in writing seven days before rescinding; and 2) Plaintiffs may revert to the Settlement Class definition contained herein within three days of receiving such notice, after which the Settling Defendants will not be permitted to rescind this Agreement pursuant to this Paragraph.

**D.** **Settlement Consideration**

    **a. Monetary Consideration**

21.    In exchange for the mutual promises and covenants in this Agreement, including without limitation, the Releases set forth in Paragraphs 44-46 below and dismissal with prejudice of the Action as against the Settling Defendants upon Final Approval, the Settling Defendants agree as follows:

22.    Within 20 days of the Execution Date, the Settling Defendants shall pay the sum of **$500,000** (the "Settlement Proceeds") into an escrow account, which Settlement Class Counsel shall identify to the Settling Defendants by name and account number, managed by Huntington Bank (the "Escrow Agent") and to be held in escrow by the Escrow Agent pursuant to an escrow agreement.  The Settlement Proceeds shall be paid by each of the Settling Defendants as follows:

        (a)    The BankAtlantic Defendants shall pay $400,000.

        (b)    PAM shall pay $100,000.

23.    The plan of distribution of the Settlement Proceeds to Settlement Class Members and as otherwise authorized herein shall be the sole responsibility of Class Counsel and will be decided upon at a later date by Settlement Class Counsel as authorized by order of the Court, and notice of such plan of distribution shall be provided to members of the Settlement Class, and shall be authorized by order of the Court. The Settlement Proceeds shall only be disbursed to Settlement Class Members and as otherwise authorized herein pursuant to, and as directed by, an order of the Court authorizing the plan of distribution.

        a.    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof, or money

market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

b.      All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

c.      Except as otherwise provided for herein, Releasors shall look solely to the Settlement Proceeds and the discounts set forth in paragraph 24 below, for settlement and satisfaction against the Releasees of all Released Claims (as defined in Paragraph 44 herein), and Releasors shall have no other recovery against the Settling Defendants or any recovery against any of the other Releasees. Use of the Settlement Proceeds shall be limited to payments to Settlement Class Members in relation to their claims in this Action, as well as attorneys' fees, expenses, costs, and notice and administration costs, all of which must be approved by the Court, and/or current and/or future litigation costs, or for any other use specifically authorized by order of the Court.

24.      Since the Settling Defendants may currently be in possession of outstanding Tax Sale Certificates which were acquired during the Class Period:

(a)      For any Tax Sale Certificates held by a Settling Defendant and issued with respect to real property owned by a Settlement Class Member and not already in foreclosure proceedings (excluding Tax Sale Certificates held by a Settling Defendant that were (1) acquired outside the Class Period; or (2) issued at an interest rate above 0%

9

due to the existence of a prior lien held by a Settling Defendant or any of their predecessors), the Settling Defendants agree as follows:

(1)     The Settling Defendants agree not to initiate foreclosure proceedings for 90 days following Final Approval of this Agreement;

(2)     In coordination with Settling Defendants' Counsel, Class Counsel will send by first class mail within 30 days after Final Approval of this Agreement, and at the Settling Defendants' expense (which is limited to the cost of postage), written notice, in language mutually acceptable to the Settling Defendants, to the property owner of record as stated on said TSCs, offering to permit redemption of any such TSCs held by the Settling Defendants by the respective property owner(s) of those respective properties in exchange for a one-time payment. The one-time payment will equal the redemption amount less a onetime discount of 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel. The list of property owners referenced above shall be provided to Class Counsel by the Settling Defendants at least 30 days prior to the hearing on Final Approval of the Settlement.

(b)     For any Tax Sale Certificates issued with respect to real property owned by a Settlement Class Member (excluding Tax Sale Certificates held by a Settling Defendant that were (1) acquired outside the Class Period; or (2) issued at an interest rate above 0%

10

due to the existence of a prior lien held by a Settling Defendant or any of their predecessors) still held by a Settling Defendant to which foreclosure proceedings have been initiated (but not completed) as of the date of Final Approval of this Agreement, or which Tax Sale Certificates relate to a property the owner of which is under protection of bankruptcy court, the Settling Defendants agree as follows:

(1)     In coordination with Settling Defendants' Counsel, Class Counsel shall send by first class mail within 30 days after Final Approval of this Agreement, and at the Settling Defendants' expense (which is limited to the cost of postage), written notice, in language mutually acceptable to the Settling Parties, to the defendants in such foreclosure actions, or debtors in such bankruptcy proceedings, offering to permit redemption of any such TSCs held by the Settling Defendants to the respective property owner(s) of those respective properties in exchange for a one-time payment. The one-time payment will equal the redemption amount less a onetime discount of 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel. The list of property owners referenced above shall be provided to Class Counsel by the Settling Defendants at least 30 days prior to the hearing on Final Approval of the Settlement.

### b. Cooperation Agreement

25.     Following an order granting Final Approval of this Agreement, the Settling Defendants may be asked to provide, and to the extent they are asked, Settling Defendants agree to provide Plaintiffs with any documents (including electronic documents) related to claims asserted in the Action that the Settling Defendants previously provided to the United States Department of Justice ("DOJ") as part of its investigation into anticompetitive practices related to TSCs in the State of New Jersey, and will agree to meet and confer with Plaintiffs for the purposes of seeking an agreement with Plaintiffs that would authenticate such documents for any trial or proceeding in this Action if requested to do so by Class Counsel. PAM has disclosed that it is not in possession, custody or control of documents it produced to the DOJ referenced above. However, to the extent that Plaintiffs wish to obtain copies of PAM's documents in the possession of the DOJ, PAM agrees to provide its consent to the DOJ to allow Plaintiffs to copy such documents, and otherwise support Plaintiffs' efforts to obtain such documents.

26.     Nothing in this Agreement shall be construed to preclude the assertion of any constitutional or other privilege by the Settling Defendants or any other Releasees with respect to the documents to be provided pursuant to Paragraph 25 of this Agreement. Further, Plaintiffs and Class Counsel agree not to assert that the Settling Defendants or any other Releasees waived the attorney-client privilege, work product immunity or any other privilege or protection (including the right to avoid self-incrimination) with respect to documents provided or identified to Class Counsel pursuant to this Agreement, nor should anything in this Agreement be construed as an agreement by any party hereto that any person has agreed to waive any such privilege, immunity or protection.

27.     The Settling Defendants shall not be required to provide the documents provided for in Paragraph 25 of this Agreement if the DOJ objects to the Settling Defendants' provision of such cooperation to Plaintiffs or Class Counsel. However, if Plaintiffs and/or Class Counsel challenge the United States Department of Justice's objection to the Settling Defendants' provision of documents under this Agreement, and the Court overseeing this Action overrules the objection of the Department of Justice, the Settling Defendants' shall be required to provide the documents as required by Paragraph 25 to this Agreement.

28.     Notwithstanding anything in this Agreement to the contrary, material produced pursuant to Paragraph 25 may be labeled confidential pursuant to a protective order, through which appropriate confidentiality designations can be made, to be entered between the parties to the Action. To the extent no such protective order is yet in place at the time of final approval, within 30 days of Final Approval, the Parties will agree upon an interim confidentiality agreement that will govern the Settling Defendants' production of documents pursuant to paragraph 25 above, until such time as the parties in the Action agree upon a protective order.

### c.  Notification of this Agreement

29.     Within ten business days of the Execution Date, the Settling Parties shall jointly notify the Court that they have entered into a settlement, and provide the Court with a copy of this Agreement.

### E.   Administrative Costs and Taxes

30.     All costs associated with the Settlement Class notification process, all fees related to administration of this Settlement or management of the Settlement Proceeds, any attorneys' fees and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive payment awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out of the Settlement Proceeds. Other than payment of the Settlement Proceeds, their

expenses in providing the documents set forth in Paragraph 25 and the discounts provided in paragraph 24, the Settling Defendants shall have no further financial responsibility to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any other, fees or costs beyond payment of the Settlement Proceeds.

31.     Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge that each Settlement Class Member shall be individually responsible for any and all tax obligations related to any payments received as a result of this Settlement. The Settling Defendants make no representations about the tax ramifications, if any, of any payments made to Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a result of, this Agreement.

32.     Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Proceeds. Such expenses include past, current and future litigation expenses or expenses related to notice and administration of this Settlement, or settlements with other Defendants. Other than the payment of the Settlement Proceeds, the Settling Defendants shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

33.     Plaintiffs and Releasees agree to treat the Settlement Proceeds as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 (the "Settlement Fund"). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 33 through 35 of the Agreement, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements

14

contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

34.    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas.  Reg. § 1.468B-2(k)(l)). Such returns (as well as the election described in Paragraph 32) shall be consistent with Paragraph 32 and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 34 hereof.

35.    All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Settling Defendants or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 32 through 34 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 35 ("Tax Expenses")), shall be paid out of the Settlement Fund.

**F.  Approval of this Agreement and Dismissal of Claims**

36.     Plaintiffs and the Settling Defendants shall use their best efforts to cause this Agreement to become final, including, at the appropriate time, seeking Preliminary Approval of the Settlement and securing both the Court's certification of the Settlement Class and the Court's approval of procedures (including providing notice of the settlement to the settlement class) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Settling Defendants.

37.     Upon the Execution Date, the Plaintiffs shall not pursue the Action against the Settling Defendants and shall not require that they answer or respond to any pleading and shall hold the litigation in abeyance against the Settling Defendants. During the period of time between the Execution Date and the date an order of dismissal is entered as provided for in Paragraph 42 below, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members asserted against the Settling Defendants in the Action shall be tolled.

38.     Subject to Paragraph 37 above, at the appropriate time, Plaintiffs shall submit to the Court a motion for: (a) certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; and (c) Preliminary Approval of the Settlement, and authorization to disseminate notice of class certification, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

39.     When Plaintiffs are prepared to issue a Class Notice as contemplated by Paragraph 50, the Settling Parties shall approve the form of notice to be provided to the Settlement Class and submit it to the Court and request that the Court: (i) preliminarily approve the Settlement reflected herein; (ii) conditionally certify the Settlement Class (for settlement purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class

Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; (iii) approve the form of notice to be provided to the Settlement Class in the form mutually agreed to by the Settling Parties and submitted in connection with the motion for Preliminary Approval, and find that the form, manner and timing of notice constitutes the best notice practicable under the circumstances, and is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure; (iv) direct that notice be provided to the Settlement Class, in accordance with the Settlement; (v) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days following the date Class Notice is initially mailed as per Paragraph 50 of this Agreement, after which no Settlement Class Member shall be allowed to object to the Settlement or exclude himself, herself or itself from the Settlement Class or seek to intervene in the Action; (vi) pending final determination of whether the Settlement should be approved, bar all Settlement Class Members, directly, on a representative basis, or in any other capacity, from commencing or prosecuting against any of the Releasees any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims; (vii) pending final determination of whether the Settlement should be approved, stay all proceedings in the Action as to the Settling Defendants except those related to the effectuation of the Settlement; and (viii) schedule a hearing on Final Approval of the Settlement (which Final Approval hearing, as referenced herein, shall take place after the deadline for members of the Settlement Class to opt-out or object and no earlier than 90 days after entry of a Preliminary Approval Order and the mailing of Class Notice).

40.     Within 20 business days after the end of the opt-out period established by the Court and set forth in the Class Notice, Class Counsel shall provide the Settling Defendants a written list of all potential Settlement Class Members who have exercised their right to request exclusion from the class (the "Opt-Out List").

41.     Plaintiffs shall use their best efforts to combine dissemination of notice of the proposed Settlement Class and the Agreement with notice of other settlement agreements. The proposed method of notice of the settlement shall be determined in consultation with a class action administrator and shall be approved by the Court. Within 10 days after the Court grants preliminary approval, the Settling Defendants shall supply to Class Counsel, at the Settling Defendants' expense and in such form as kept in the regular course of business (electronic format if available), such names and addresses of potential Settlement Class Members as they have. In the alternative, the Settling Defendants, at their sole option and discretion, may pay Class Counsel an additional $5,000 above and beyond the Settlement Proceeds referenced in Paragraph 22 of this Agreement in lieu of providing the list described in the foregoing sentence, but if the Settling Defendants exercise such option, they must still provide reasonable cooperation to Class Counsel regarding the sending of notice to particular class members about whom Class Counsel inquire.

42.     If the Court preliminarily approves this Agreement, Plaintiffs and the Settling Defendants shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and the Settling Defendants shall agree upon:

> (a)     As to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

18

(b)   Directing that, as to the Settling Defendants, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

(c)   Reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

(d)   Enjoining Settlement Class Members, and any person, entity, or official acting on behalf of a Settlement Class Member, from re-asserting Released Claims or seeking an additional recovery payable to a Settlement Class Member based on the facts or transactions alleged in the Complaints;

(e)   Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to the Settling Defendants shall be entered; and

(f)   Requiring Class Counsel to file with the Clerk of the Court a record of potential Settlement Class Members who timely excluded themselves from the class, and to provide a copy of the record to counsel for the Settling Defendants.

43.   This Agreement shall become final only when (a) the Court has entered an order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against the Settling Defendants on the merits with prejudice as to all Settlement Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Final Approval" or "Finally Approved"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.  On the Execution

Date, Plaintiffs and the Settling Defendants shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 47 or 48.

### G. Release and Discharge

44.     In addition to and not in lieu of the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other valuable consideration as described herein, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights, defenses, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation, debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in law or in equity or otherwise, whether class, individual or otherwise in nature, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of conduct or allegations concerning any collusion, agreement, or understanding among Defendants to rig bids or allocate tax liens in connection with the public auction of Tax Sale Certificates in the State of New Jersey during the Class Period, including, but not limited to, any conduct alleged, and causes of action asserted, or that could have been alleged or asserted, whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"), and/or claims that could have been alleged or asserted, whether or not concealed or hidden, in any other actions by any Releasor against the Settling Defendants or any Releasee, which arise from or are predicated on the facts and/or actions described in the Complaints under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time through the end of the Class Period (the "Released Claims"). It is expressly understood and

20

agreed that this Release and Settlement is intended to cover and does cover not only all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, losses and damages, and the consequences thereof, but also any further injuries, losses and damages which arise from, or are related to, the claims set forth in the Complaints.  The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims. However, this Release does not release any Non-Settling Defendant.

45.     In addition to the provisions of Paragraph 44, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 44. Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

46.     The release and discharge set forth in Paragraphs 44 and 45 herein do not include: (a) claims relating to disputes against the Settling Defendants unrelated to the Released Claims; and (b) claims of Settlement Class Members outside of the Class Period against the Settling Defendants ("Excepted Claims").

**H.  Rescission if the Agreement is Not Approved**

47.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then the Settling Defendants and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

21

48.    In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of the Settling Defendants, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.

49.    In the event any of the Settling Parties elect to rescind this Agreement pursuant to Paragraphs 47 or 48 of this Agreement, or if Final Approval of the Settlement provided for in the Agreement is not granted by the Court, unless otherwise specified in this Agreement, the Settling Parties shall be restored to the position they occupied in this Action immediately prior to entering into this Agreement and any monies paid by the Settling Defendants shall be returned to the Settling Defendants, except for the Settling Defendants' *pro rata* share (each Settling Defendants' *pro rata* share shall be determined by dividing each of the Settling Defendants' settlement payment amounts by the total of all settlement amounts) of those monies that had been expended on costs related to notice and administration of this Agreement prior to the date of termination of the Agreement.

### I.  Notice of Settlement to Class Members

50.    Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement ("Class Notice") is provided in accordance with the Federal Rules of Civil Procedure and Court order. Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants and/or other sources,

the names and addresses of those potential members of the Settlement Class. Notice of this

Settlement will be issued in accordance with the dates ordered by the Court.

**J.   Miscellaneous**

51.     This Agreement does not settle or compromise any claim by Plaintiffs or any

Settlement Class Member asserted in the Action against any Non-Settling Defendant or any

unnamed co-conspirator other than the Releasees. All rights of any Settlement Class Member

against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other

than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members. The

purchase of Tax Sale Certificates in the State of New Jersey by the Settling Defendants with

respect to real property of Settlement Class Members shall remain in the case against the Non-

Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and

several liability claims against Non-Settling Defendants in the Action or other persons or entities

other than the Releasees.

52.     The Settling Parties hereto are entering into this Agreement solely to receive the

benefits provided hereunder and to avoid the costs and burdens of potential litigation. This

Agreement shall not constitute or be construed or considered as an admission by the Settling

Defendants for any purpose or as evidence of liability.

53.     The United States District Court for the District of New Jersey, Trenton Vicinage,

shall retain jurisdiction over the implementation, enforcement, and performance of this

Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute

arising out of or relating to this Agreement or the applicability of this Agreement that cannot be

resolved by negotiation and agreement by Plaintiffs and the Settling Defendants. Plaintiffs and

the Settling Defendants submit to the jurisdiction of the Court for purposes of implementing and

enforcing the Settlement embodied in this Agreement. This Agreement shall be governed by and

interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

54.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and the Settling Defendants (and the other Releasees) pertaining to the settlement of the Action against the Settling Defendants only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and the Settling Defendants in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and the Settling Defendants, and approved by the Court.

55.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees. Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

56.     This Agreement may be executed in counterparts by Plaintiffs and the Settling Defendants, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

57.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

58.     In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the Settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class

24

certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by the Settling Defendants.

59.     Neither the Settling Defendants nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

60.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, the Settling Defendants, and Releasees any right or remedy under or by reason of this Agreement.

61.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile, letter by overnight delivery, or by email to:

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
         jpizzirusso@hausfeldllp.com
         sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**For the BankAtlantic Defendants:**

James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Email: jcecchi@carellabyrne.com

**For PAM**:

Gary K. Wolinetz
**GREENBAUM, ROWE, SMITH
   & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095-0988
Tel: (732) 476-2780
Email: gwolinetz@greenbaumlaw.com

62.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: March 2, 2015

**HAUSFELD LLP**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email:  mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*
\

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**

James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Attorneys for Defendants BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley*

**GREENBAUM, ROWE, SMITH & DAVIS LLP**

Gary K. Wolinetz
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095-0988
Tel: (732) 476-2780
Email: gwolinetz@greenbaumlaw.com

*Attorneys for Defendants Pat Caraballese and PAM Investors*

27

Dated: March 2, 2015

**HAUSFELD LLP**

_____

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email:  mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

_____

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

_Interim Co-Lead Counsel for Plaintiffs and Class_

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**

_____

James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Email: jcecchi@carellabyrne.com

_Attorneys for Defendants BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley_

**GREENBAUM, ROWE, SMITH & DAVIS LLP**

_____

Gary K. Wolinetz
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095-0988
Tel: (732) 476-2780
Email: gwolinetz@greenbaumlaw.com

_Attorneys for Defendants Pat Caraballese and PAM Investors_

Dated: March 2, 2015

**HAUSFELD LLP**

_____

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email:  mhausfeld@hausfeldllp.com
          jpizzirusso@hausfeldllp.com
          sgassman@hausfeldllp.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

_____

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

_Interim Co-Lead Counsel for Plaintiffs and Class_

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**

_____

James E. Cecchi
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Email: jcecchi@carellabyrne.com

_Attorneys for Defendants BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley_

**GREENBAUM, ROWE, SMITH & DAVIS LLP**

_____

Gary K. Wolinetz
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095-0988
Tel: (732) 476-2780
Email: gwolinetz@greenbaumlaw.com

_Attorneys for Defendants Pat Caraballese and PAM Investors_

27

# EXHIBIT F

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE NEW JERSEY TAX SALES
CERTIFICATES ANTITRUST LITIG.

Master Docket No. 3:12-CV-01893-MAS-TJB

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND
## DEFENDANTS RICHARD SIMON TRUSTEE,
## BETTY SIMON TRUSTEE, LLC, AND JOSEPH WOLFSON

This Settlement Agreement ("Agreement") is made and entered into this 2nd day of

March, 2015 (the "Execution Date"), by and between defendants Richard Simon Trustee, Betty

Simon Trustee, LLC, and Joseph Wolfson (collectively the "Wolfson Defendants" or "Settling

Defendants") and Plaintiff Class Representatives, as defined herein at Paragraph 10, both

individually and on behalf of a class as described herein at Paragraph 14 ("Plaintiffs").

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and

consolidated in the District of New Jersey, on their own behalf and on behalf of the class, against

Defendants, including the Settling Defendants ("Action");

WHEREAS, Plaintiffs allege that the Settling Defendants participated in an unlawful

conspiracy to rig bids and allocate real property and water and/or sewer tax liens at tax sale

certificate auctions in the State of New Jersey in violation of New Jersey state law, as well as

Section 1 of the Sherman Act;

WHEREAS, the Settling Defendants deny the allegations made in the Action;

WHEREAS, over a period of time, the Plaintiffs and the Settling Defendants,

individually and collectively, through their respective counsel, engaged in extensive, good faith,

and arm's-length settlement negotiations relating to the claims and the Action, with the

settlement evidenced by this Agreement being the product and result of those negotiations,

discovery and analysis by counsel knowledgeable and experienced in class action litigation ("Settlement");

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a Settlement with the Settling Defendants according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the Settlement Class (as defined in Paragraph 14 of this Agreement);

WHEREAS, the Settling Defendants, despite their belief that they have good defenses to the claims alleged in the Action and without admitting any liability or fault, desire to settle the Action, and thus avoid the expense, inconvenience, distraction of continued litigation and potential risk of the Action, or any action or proceeding relating to the matters being fully settled in this Agreement; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Settling Defendants and the Settling Defendant Releasees only, without costs as to Plaintiffs or the Settlement Class, subject to the approval of the Court, on the following terms and conditions:

**A. Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means and refers to the consolidated action pending in the United States District Court for the District of New Jersey styled *In Re New Jersey Tax Sales Certificates Antitrust Litigation*, Master Docket No. 3:12-CV-1893-MAS-TJB.

2.       "Class Counsel" and/or "Settlement Class Counsel" shall refer to the law firms of Hagens Berman Sobol Shapiro, LLP and Hausfeld LLP.

3.        "Counsel" means both Class Counsel and the Settling Defendants' Counsel, as defined in Paragraphs 2 and 11.

4.       "Class Notice" means the notice of this Agreement and of the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Agreement to be provided to the Settlement Class (as defined in Paragraph 14 of this Agreement) pursuant to Paragraph 50 below.

5.       "Class Period" means the period from and including January 1, 1998 through February 28, 2009.

6.       "Defendant(s)" refers to the persons or entities who are named as Defendants in Plaintiffs' First Amended Consolidated Master Class Action Complaint (the "Complaint') filed on January 6, 2014 in the above-captioned Action, as well as entities named as defendants in subsequent or amended complaints in the Action.

7.       "Execution Date" means the date set forth below, immediately above the signature lines to the agreement.

8.       "Final Approval" shall have the meaning ascribed to it in Paragraph 43 of this Agreement.

9.       "Liaison Counsel" means the law firm of Lite DePalma Greenberg, LLC.

10.      "Plaintiffs" means Gila Bauer as Trustee for the Gila Bauer Revocable Trust, Melissa Jacobs, Frances A. Schmidt and Donald W. Schmidt, and Son, Inc.

11.      "Settling Defendants' Counsel" shall refer to the law firm of Jacobs & Barbone, PA.

12.     "Releasees" or "Settling Defendant Releasees" shall refer, jointly and severally, and individually and collectively, to the Settling Defendants, any affiliated companies, their parents and subsidiaries, and their past and present officers, managers of any manager-run entities, directors, employees, agents, insurers, attorneys, shareholders or other equity interest holders (to the extent they are not Non-Settling Defendants), partners, associates, members, volunteers, independent contract bidders, and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. Releasees shall not include any Non-Settling Defendant, and past and present officers, directors, managers, employees, agents, managers, and independent contract bidders shall only be deemed a Releasee or Settling Defendant Releasee pursuant to this Agreement, to the extent they were performing services for the Settling Defendants during the Class Period.

13.     "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Settlement Class Members and to each of their respective past and present officers, directors, managers, parents, subsidiaries, affiliates, partners, shareholders or other equity interest holders, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, and anyone claiming by, for, under or through them, including, but not limited to, anyone claiming for or through them in any representative action, class action, or state attorney general *parens patriae* action (to the fullest extent the law allows for release of such state attorney general claims in this proceeding).

14.     "Settlement Class" means all persons and/or entities who owned real property in the State of New Jersey and who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above 0%.  The Settlement Class does not include Defendants,

4

government entities or any person or entity in which any Defendant holds a controlling interest, the officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs, successors and assigns of any such person or entity, as well as any immediate family member of any officer, director or employees of any named Defendant that is not a natural person, and any judge or magistrate involved in this matter, as well as members of their immediate family.

15.     "Settlement Class Member" means each member of the Settlement Class, as defined in Paragraph 14 of this Agreement, who does not timely elect to be excluded from the Settlement Class.

16.     "Non-Settling Defendants" refers to the Defendants other than the Settling Defendants or any Settling Defendant Releasee.

17.     "Settling Parties" shall mean, collectively, the Settling Defendants and each of the Plaintiffs, individually, and on behalf of the Settlement Class.

18.     "Tax Sale Certificate" or "TSC" shall mean a certificate acquired by a purchaser at a public auction in New Jersey which represents the right to collect a delinquent property tax or other municipal charge (including water or sewer charges) from a property owner in the State of New Jersey, along with associated interest and fees.

**B.  Settlement Class Certification**

19.     Solely for the purposes of Settlement, providing Class Notice, and for implementing this Agreement, the Settling Parties agree to certification of the Settlement Class defined in Paragraph 14 above.  At the appropriate time, the Settling Parties agree to cooperate in good faith in seeking the Court's approval to certify the aforementioned Settlement Class for purposes of effectuating this Settlement.

C.    **Subsequent Modification of Class Definition or Class Period**

20.    The Settling Parties agree that modification of the definition of the Settlement Class may be necessary prior to moving for preliminary approval ("Preliminary Approval") and/or Final Approval of this Agreement, and agree to work in good faith to agree upon and effectuate any such modification.  Any such modification shall be made in writing; provided, however, that in the event that Plaintiffs either enter into a settlement agreement with a Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class or Settlement Class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 14 (including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both. In no event shall the Settling Defendants be responsible for any additional notice costs or expenses. It is understood, however, that the Settling Defendants shall have the option and right to rescind this Agreement if the definition of the Settlement Class is narrowed in any way subsequent to the Execution Date of this Agreement, provided that: 1) the Settling Defendants give Plaintiffs notice in writing seven days before rescinding; and 2) Plaintiffs may revert to the Settlement Class definition contained herein within three days of receiving such notice, after which the Settling Defendants will not be permitted to rescind this Agreement pursuant to this Paragraph.

D.     **Settlement Consideration**

      a.     **Monetary Consideration**

21.     In exchange for the mutual promises and covenants in this Agreement, including without limitation, the Releases set forth in Paragraphs 44-46 below and dismissal with prejudice of the Action as against the Settling Defendants upon Final Approval, the Settling Defendants agree as follows:

22.     The Settling Defendants shall pay the sum of **$125,000** (the "Settlement Proceeds"), payable in installments as set forth below, into an escrow account, which Settlement Class Counsel shall identify to the Settling Defendants by name and account number, managed by Huntington Bank (the "Escrow Agent") and to be held in escrow by the Escrow Agent pursuant to an escrow agreement. The Wolfson Defendants shall make four equal installment payments. The first installment is due within 60 days following the Execution Date of this Agreement. Each subsequent payment shall be due every two months thereafter.

23.     The plan of distribution of the Settlement Proceeds to Settlement Class Members and as otherwise authorized herein shall be the sole responsibility of Class Counsel and will be decided upon at a later date by Settlement Class Counsel as authorized by order of the Court, and notice of such plan of distribution shall be provided to members of the Settlement Class, and shall be authorized by order of the Court. The Settlement Proceeds shall only be disbursed to Settlement Class Members and as otherwise authorized herein pursuant to, and as directed by, an order of the Court authorizing the plan of distribution.

      a.     The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from

7

these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

b.      All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

c.      Except as otherwise provided for herein, Releasors shall look solely to the Settlement Proceeds and the discounts set forth in paragraph 24 below, for settlement and satisfaction against the Releasees of all Released Claims (as defined in Paragraph 44 herein), and Releasors shall have no other recovery against the Settling Defendants or any recovery against any of the other Releasees. Use of the Settlement Proceeds shall be limited to payments to Settlement Class Members in relation to their claims in this Action, as well as attorneys' fees, expenses, costs, and notice and administration costs, all of which must be approved by the Court, and/or current and/or future litigation costs, or for any other use specifically authorized by order of the Court.

24.      Since the Settling Defendants may currently be in possession of outstanding Tax Sale Certificates which were acquired during the Class Period:

(a)      For any Tax Sale Certificates held by a Settling Defendant and issued with respect to real property owned by a Settlement Class Member and not already in foreclosure proceeding (excluding Tax Sale Certificates held by a Settling Defendant that were (1) acquired outside the Class Period; or (2) issued at an interest rate above 0% due to the existence of a prior lien held by a Settling Defendant or any of their predecessors), the Settling Defendants agree:

8

(1)     Not to initiate foreclosure proceedings for 90 days following Final Approval of this Agreement;

(2)     In coordination with Settling Defendants' Counsel, Class Counsel will send by first class mail within 30 days after Final Approval of this Agreement, and at the Settling Defendants' expense, written notice, in language mutually acceptable to the Settling Parties, to the property owner of record as stated on said TSCs, offering to permit redemption of any such TSCs held by a Settling Defendant by the respective property owner(s) of those respective properties in exchange for a one-time payment. The one-time payment will equal the redemption amount less a one time discount of 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel. The list of property owners referenced above shall be provided to Class Counsel by Settling Defendants at least 30 days prior to the hearing on Final Approval of the Settlement.

(b)     For any Tax Sale Certificates issued with respect to real property owned by a Settlement Class Member (excluding Tax Sale Certificates held by a Settling Defendant that were (1) acquired outside the Class Period; or (2) issued at an interest rate above 0% due to the existence of a prior lien held by a Settling Defendant or any of their predecessors) still held by a Settling Defendant to which foreclosure proceedings have been initiated (but not completed) as of the date of Final Approval of this Agreement, or

9

which Tax Sale Certificates relate to a property the owner of which is under protection of bankruptcy court, the Settling Defendants agree:

> (1)     In coordination with Settling Defendants' Counsel, Class Counsel shall send by first class mail within 30 days after Final Approval of this Agreement, and at the Settling Defendants' expense, written notice, in language mutually acceptable to the Settling Parties, to the defendants in such foreclosure actions, or debtors in such bankruptcy proceedings, offering to permit redemption of any such TSCs held by a Settling Defendant to the respective property owner(s) of those respective properties in exchange for a one-time payment. The one-time payment will equal the redemption amount less a onetime discount of 15% of the redemption amount (excluding statutory attorneys' fees) redeemed through the municipality. Property owners can accept this discounted redemption offer only by making the required discounted payment to the municipal tax office within 45 days of such notice from Class Counsel. The list of property owners referenced above shall be provided to Class Counsel by Settling Defendants at least 30 days prior to the hearing on Final Approval of the Settlement.

**b.  Cooperation Agreement**

25.     Following an order granting Final Approval of this Agreement, the Settling Defendants agree to provide Plaintiffs with any documents (including electronic documents) related to claims asserted in the Action that the Settling Defendants previously provided to the United States Department of Justice ("DOJ") as part of its investigation into anticompetitive

practices related to TSCs in the State of New Jersey, and will agree to authenticate such documents for any trial or proceeding in this Action if requested to do so by Class Counsel.

26.     Nothing in this Agreement shall be construed to preclude the assertion of any constitutional or other privilege by the Settling Defendants or any other Releasees with respect to the documents to be provided pursuant to Paragraph 25 of this Agreement. Further, Plaintiffs and Class Counsel agree not to assert that the Settling Defendants or any other Releasees waived the attorney-client privilege, work product immunity or any other privilege or protection (including the right to avoid self-incrimination) with respect to documents provided or identified to Class Counsel pursuant to this Agreement, nor should anything in this Agreement be construed as an agreement by any party hereto that any person has agreed to waive any such privilege, immunity or protection.

27.     The Settling Defendants shall not be required to provide the documents provided for in Paragraph 25 of this Agreement if the DOJ objects to the Settling Defendants' provision of such cooperation to Plaintiffs or Class Counsel. However, if Plaintiffs and/or Class Counsel challenge the United States Department of Justice's objection to the Settling Defendants' provision of documents under this Agreement, and the Court overseeing this Action overrules the objection of the Department of Justice, the Settling Defendants' shall be required to provide the documents as required by Paragraph 25 to this Agreement.

28.     Notwithstanding anything in this Agreement to the contrary, material produced pursuant to Paragraph 25 may be labeled confidential pursuant to a protective order, through which appropriate confidentiality designations can be made, to be entered between the parties to the Action. To the extent no such protective order is yet in place at the time of final approval, within 30 days of Final Approval, the Parties will agree upon an interim confidentiality

agreement that will govern the Settling Defendants' production of documents pursuant to paragraph 25 above, until such time as the parties in the Action agree upon a protective order.

### c. Notification of this Agreement

29.     Within ten business days of the Execution Date, the Settling Parties shall jointly notify the Court that they have entered into a settlement, and provide the Court with a copy of this Agreement.

## E.     Administrative Costs and Taxes

30.     All costs associated with the Settlement Class notification process, all fees related to administration of this Settlement or management of the Settlement Proceeds, any attorneys' fees and costs the Court awards to Class Counsel and/or Liaison Counsel, and any incentive payment awarded to the Plaintiffs (to the extent such fees, costs and awards are sought) shall be paid out of the Settlement Proceeds. Other than payment of the Settlement Proceeds, their expenses in providing the documents set forth in Paragraph 25 and the discounts provided in paragraph 24, the Settling Defendants shall have no further financial responsibility to the Settlement Class, or to Class Counsel or Liaison Counsel with respect to those, or any other, fees or costs beyond payment of the Settlement Proceeds.

31.     Plaintiffs, Class Counsel and Liaison Counsel expressly agree and acknowledge that each Settlement Class Member shall be individually responsible for any and all tax obligations related to any payments received as a result of this Settlement. The Settling Defendants make no representations about the tax ramifications, if any, of any payments made to Settlement Class Members, Class Counsel, Liaison Counsel, or the Plaintiffs pursuant to, or as a result of, this Agreement.

32.     Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Proceeds. Such expenses include past, current and future litigation expenses or expenses related to notice and administration of this Settlement, or settlements with other Defendants. Other than the payment of the Settlement Proceeds, the Settling Defendants shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

33.     Plaintiffs and Releasees agree to treat the Settlement Proceeds as being at all times a "qualified settlement fund" within the meaning of Treas.  Reg. § 1.468B-1 (the "Settlement Fund"). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraphs 33 through 35 of the Agreement, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

34.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas.  Reg. § 1.468B-2(k)(l)). Such returns (as well as the election described in Paragraph 32) shall be consistent with Paragraph 32 and in all events shall reflect that all Taxes, as defined

below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 34 hereof.

35.      All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Settling Defendants or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement Fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 32 through 34 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 35 ("Tax Expenses")), shall be paid out of the Settlement Fund.

**F.   Approval of this Agreement and Dismissal of Claims**

36.      Plaintiffs and the Settling Defendants shall use their best efforts to effectuate this Agreement, including, at the appropriate time, seeking Preliminary Approval of the Settlement and securing both the Court's certification of the Settlement Class and the Court's approval of procedures (including providing notice of the settlement to the settlement class) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Settling Defendants.

37.      Upon the Execution Date, the Plaintiffs shall not pursue the Action against the Settling Defendants and shall not require that they answer or respond to any pleading and shall hold the litigation in abeyance against the Settling Defendants. During the period of time between the Execution Date and the date an order of dismissal is entered as provided for in Paragraph 42 below, any statutes of limitations concerning the claims of the Plaintiffs and Settlement Class Members asserted against the Settling Defendants in the Action shall be tolled.

38.     Subject to Paragraph 37 above, at the appropriate time, Plaintiffs shall submit to the Court a motion for: (a) certification of the Settlement Class; (b) appointment of Plaintiffs as Settlement Class Representatives and Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; and (c) Preliminary Approval of the Settlement, and authorization to disseminate notice of class certification, and the final judgment contemplated by this Agreement to all potential Settlement Class Members.

39.     When Plaintiffs are prepared to issue a Class Notice as contemplated by Paragraph 50, the Settling Parties shall approve the form of notice to be provided to the Settlement Class and submit it to the Court and request that the Court: (i) preliminarily approve the Settlement reflected herein; (ii) conditionally certify the Settlement Class (for settlement purposes only) and appoint Plaintiffs as Settlement Class Representatives and appoint Class Counsel and Liaison Counsel as Settlement Class Counsel and Settlement Liaison Counsel, respectively; (iii) approve the form of notice to be provided to the Settlement Class in the form mutually agreed to by the Settling Parties and submitted in connection with the motion for Preliminary Approval, and find that the form, manner and timing of notice constitutes the best notice practicable under the circumstances, and is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure; (iv) direct that notice be provided to the Settlement Class, in accordance with the Settlement; (v) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and set a date, not later than 60 days following the date Class Notice is initially mailed as per Paragraph 50 of this Agreement, after which no Settlement Class Member shall be allowed to object to the Settlement or exclude himself, herself or itself from the Settlement Class or seek to intervene in the Action; (vi)

pending final determination of whether the Settlement should be approved, bar all Settlement

Class Members, directly, on a representative basis, or in any other capacity, from commencing or

prosecuting against any of the Releasees any action, arbitration, or proceeding in any court,

arbitration forum, or tribunal asserting any of the Released Claims; (vii) pending final

determination of whether the Settlement should be approved, stay all proceedings in the Action

as to the Settling Defendants except those related to the effectuation of the Settlement; and (viii)

schedule a hearing on Final Approval of the Settlement (which final approval hearing, as

referenced herein, shall take place after the deadline for members of the Settlement Class to opt-

out or object and no earlier than 90 days after entry of a Preliminary Approval Order and the

mailing of Class Notice).

40.     Within 20 business days after the end of the opt-out period established by the

Court and set forth in the Class Notice, Class Counsel shall provide the Settling Defendants a

written list of all potential Settlement Class Members who have exercised their right to request

exclusion from the class (the "Opt-Out List").

41.     Plaintiffs shall use their best efforts to combine dissemination of notice of the

proposed Settlement Class and the Agreement with notice of other settlement agreements. The

proposed method of notice of the settlement shall be determined in consultation with a class

action administrator and shall be approved by the Court. Within 10 days after the Court grants

preliminary approval, the Settling Defendants shall supply to Class Counsel, at the Settling

Defendants' expense and in such form as kept in the regular course of business (electronic

format if available), such names and addresses of potential Settlement Class Members as they

have. In the alternative, the Settling Defendants, at their sole option and discretion, may pay

Class Counsel an additional $5,000 above and beyond the Settlement Proceeds referenced in

Paragraph 22 of this Agreement in lieu of providing the list described in the foregoing sentence, but if the Settling Defendants exercise such option, it must still provide reasonable cooperation to Class Counsel regarding the sending of notice to particular class members about whom Class Counsel inquire.

42.     If the Court preliminarily approves this Agreement, Plaintiffs and the Settling Defendants shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and the Settling Defendants shall agree upon:

(a)     As to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(b)     Directing that, as to the Settling Defendants, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

(c)     Reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

(d)     Enjoining Settlement Class Members, and any person, entity, or official acting on behalf of a Settlement Class Member, from re-asserting Released Claims or seeking an additional recovery payable to a Settlement Class Member based on the facts or transactions alleged in the Complaints;

(e)     Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to the Settling Defendants shall be entered; and

(f)     Requiring Class Counsel to file with the Clerk of the Court a record of potential Settlement Class Members who timely excluded themselves from the class, and to provide a copy of the record to counsel for the Settling Defendants.

43.     This Agreement shall become final only when (a) the Court has entered an order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against the Settling Defendants on the merits with prejudice as to all Settlement Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Final Approval" or "Finally Approved"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.  On the Execution Date, Plaintiffs and the Settling Defendants shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 47 or 48.

### G.  Release and Discharge

44.     In addition to and not in lieu of the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other valuable consideration as described herein, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, judgments, joinders (whether for sole liability, contribution, indemnity, or otherwise), rights, defenses, damages, penalties, punitive damages, costs, expenses, attorney's fees, compensation, debts, dues, accounts, bonds, covenants, agreements, and liability of any nature whatsoever, in law or in equity or otherwise, whether class, individual or otherwise in nature, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of conduct or allegations concerning any collusion, agreement, or understanding among

18

Defendants to rig bids or allocate tax liens in connection with the public auction of Tax Sale Certificates in the State of New Jersey during the Class Period, including, but not limited to, any conduct alleged, and causes of action asserted, or that could have been alleged or asserted, whether or not concealed or hidden, in the complaints filed in the Action (the "Complaints"), and/or claims that could have been alleged or asserted, whether or not concealed or hidden, in any other actions by any Releasor against the Settling Defendants or any Releasee, which arise from or are predicated on the facts and/or actions described in the Complaints under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time through the end of the Class Period (the "Released Claims").  It is expressly understood and agreed that this Release and Settlement is intended to cover and does cover not only all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, losses and damages, and the consequences thereof, but also any further injuries, losses and damages which arise from, or are related to, the claims set forth in the Complaints.  The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims. However, this Release does not release any Non-Settling Defendant.

45.     In addition to the provisions of Paragraph 44, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 44. Each Releasor also expressly and irrevocably waives any and

all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

46.     The release and discharge set forth in Paragraphs 44 and 45 herein do not include: (a) claims relating to disputes against the Settling Defendants unrelated to the Released Claims; and (b) claims of Settlement Class Members outside of the Class Period against the Settling Defendants ("Excepted Claims").

**H.  Rescission if the Agreement is Not Approved**

47.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then the Settling Defendants and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

48.     In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraphs 42-43 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of the Settling Defendants, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading.

49.     In the event any of the Settling Parties elect to rescind this Agreement pursuant to Paragraphs 47 or 48 of this Agreement, or if Final Approval of the Settlement provided for in the Agreement is not granted by the Court, unless otherwise specified in this Agreement, the Settling Parties shall be restored to the position they occupied in this Action immediately prior to

entering into this Agreement and any monies paid by the Settling Defendants shall be returned to the Settling Defendants, except for the Settling Defendants' *pro rata* share (each Settling Defendants' *pro rata* share shall be determined by dividing each of the Settling Defendants' settlement payment amounts by the total of all settlement amounts) of those monies that had been expended on costs related to notice and administration of this Agreement prior to the date of termination of the Agreement.

**I.   Notice of Settlement to Class Members**

50.   Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement ("Class Notice") is provided in accordance with the Federal Rules of Civil Procedure and Court order. Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants and/or other sources, the names and addresses of those potential members of the Settlement Class. Notice of this Settlement will be issued in accordance with the dates ordered by the Court.

**J.   Miscellaneous**

51.   This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any unnamed co-conspirator other than the Releasees. All rights of any Settlement Class Member against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Settlement Class Members. The purchase of Tax Sale Certificates in the State of New Jersey by the Settling Defendants with respect to real property of Settlement Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and

several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

52.     The Settling Parties hereto are entering into this Agreement solely to receive the benefits provided hereunder and to avoid the costs and burdens of potential litigation. Pursuant to Federal Rule of Evidence 408, or any equivalent state rule of evidence or law, this Agreement shall not constitute or be construed or considered as an admission by the Settling Defendants for any purpose or as evidence of liability in any proceeding, criminal, civil or otherwise, except for proceedings to enforce the terms of this Agreement.

53.     The United States District Court for the District of New Jersey, Trenton Vicinage, shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and the Settling Defendants. Plaintiffs and the Settling Defendants submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement. This Agreement shall be governed by and interpreted according to the substantive laws of the State of New Jersey without regard to its choice of law or conflict of laws principles.

54.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and the Settling Defendants (and the other Releasees) pertaining to the settlement of the Action against the Settling Defendants only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and the Settling Defendants in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and the Settling Defendants, and approved by the Court.

55.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees. Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

56.     This Agreement may be executed in counterparts by Plaintiffs and the Settling Defendants, and a facsimile signature or through email of an Adobe PDF will be considered as an original signature for purposes of execution of this Agreement.

57.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

58.     In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the Settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by the Settling Defendants.

59.     Neither the Settling Defendants nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

60.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, the Settling Defendants, and Releasees any right or remedy under or by reason of this Agreement.

61.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile, letter by overnight delivery, or by email to:

**For the Class:**

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
          jpizzirusso@hausfeldllp.com
          sgassman@hausfeldllp.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
Email: steve@hbsslaw.com

Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO LLP**
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980

Email: jasonz@hbsslaw.com

**For the Wolfson Defendants**:

Michael F. Myers
**JACOBS & BARBONE, P.A.**
1125 Pacific Avenue
Atlantic City, NJ 08401
Tel: (609) 348-1125
Email: jacobsbarbone@comcast.net

62.    Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: March 2, 2015

HAUSFELD LLP

Michael D. Hausfeld
James J. Pizzirusso
Seth R. Gassman
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeldllp.com
        jpizzirusso@hausfeldllp.com
        sgassman@hausfeldllp.com

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP

Jason A. Zweig
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs and Class*

JACOBS & BARBONE, P.A.

Michael F. Myers
1125 Pacific Avenue
Atlantic City, NJ 08401
Tel: (609) 348-1125
Email: jacobsbarbone@comcast.net

*Attorneys for Defendants Richard Simon
Trustee, Betty Simon Trustee, LLC, and
Joseph Wolfson*

26

# EXHIBIT G



For thirty years, Gilardi has been the nation's leading expert in legal settlements and claims administration. Established by Dennis and Susan Gilardi in 1984, we are solely dedicated to ensuring that the principles of due process and the needs of clients and claimants are served. We have **administered more than 4,000 matters** and **distributed over $25 billion in assets**, including the administration of the largest and most complex private settlement in history: *Enron Securities Litigation*. In all instances, we have had only one goal in mind – to earn your trust and become your primary partner.

## We offer a full suite of services. We also offer a better way.

As experts in all phases of legal administration, we pride ourselves on our unmatched transparency, service and expertise. Our services include:

| Pre-Settlement Consultation | Data Analysis & Validation | Class Member & Counsel Support |
|---|---|---|
| Website Development | Claims Processing | Legal Notification |
| Call Center | Disbursement | Tax Analysis & Reporting |

## Our methods are tested and our track record is proven.

Through our history, we have served nearly all of the prominent firms in the United States and Canada, and have overseen settlements ranging **from less than 1 million dollars** to **more than 7 billion dollars**. We have also partnered with and performed administration services for numerous government entities, including:

- The U.S. Department Of Justice
- The Federal Trade Commission
- The U.S. Securities and Exchange Commission
- The U.S. Commodity Futures Trading Commission
- The Attorneys' General of every state and various local and county entities

Indeed, our commitment to our people, our market, and our investment in technology driven solutions was recognized when readers of *The Recorder* voted us as the **Best Claims Administrator** in both 2012 and 2013.



# The Gilardi Difference

***We understand the case.*** Our management reflects an experienced, interdisciplinary team of professionals and our operational managers have an average tenure of more than a decade's worth of claims administration specific experience.

***We sweat the details.*** Our processes rely on exhaustive and precise planning, a goal-driven plan and measured and transparent results. We do much of our best work well before the claims process begins.

***We are Independent.*** Our market demands that we have no conflicts of interest that could compromise our services or undermine the basic ethical principles of the legal system. Because of our closely held nature and our commitment to ethical principles and corporate governance, Gilardi has never had a conflict of interest, however remote, in any matter.

***We are Leaders in Technology.*** Our commitment to technological solutions and ongoing investment in technology accelerates the cost efficiency and accuracy of our work, allowing us to exert tight operational controls, while processing work onsite at our central facility.

***We never outsource. Ever.*** Our work is direct and confined. We exercise local control in all matters and do not offshore any portion of our administration work.

***We are here to serve.*** At the end of the day, we understand that each and every settlement is personal: personal to the lawyers who have litigated the matter, personal to the claimants who participate in the claims process and personal to the court responsible for oversight.  We are committed to ensuring that our service also remains a personal one.

# Antitrust

*Law, Hall, Schreiber, et al. v. The National Collegiate Athletic Association* (Nos. 94-cv-02053, 94-cv-02392, and 95-cv-02026) (D. Kan.) ($54.5 million settlement)
Compensation limits for certain Division I coaches.

*In re Rubber Chemicals Antitrust Litigation* (Settlement funds totaling $319.5 million)

Copper Products Antitrust Cases ($83.5 million combined settlement)

*In re Polychloroprene Rubber Antitrust Litigation* (Settlement funds totaling $55.35 million)

*In re Static Random Access Memory (SRAM) Antitrust Litigation* ($39.5 million indirect purchaser settlement; $41 million direct purchaser settlement)

*In re New Motor Vehicles Canadian Export Antitrust Litigation* ($35 million settlement)
Full administration services included online claims filing with VIN verification as well as tracking both consumer and fleet claims in multiple states.

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation* ($105.8 million in settlements with multiple defendants)

*In re Synthroid Marketing Litigation* ($98 million settlement)

*In re McKesson Governmental Entities Average Wholesale Price Litigation* ($82 million settlement)

*In re Cathode Ray Tube (CRT) Antitrust Litigation* (Direct Purchaser class) ($93 million in settlements between the Direct Purchaser Plaintiffs and Defendants CPT ($10 million), Philips ($27 million), Panasonic ($17.5 million), LG ($25 million), and Toshiba ($13.5 million); litigation continues as to remaining Defendants)

*Pecover v. Electronic Arts, Inc.* ($27 million settlement)
Exclusive licensing agreements that allegedly raised the price on certain Electronic Arts video games.

*In re Titanium Dioxide Antitrust Litigation* (Direct Purchaser class) ($163.5 million in settlements between the Direct Purchaser Plaintiffs and Defendants DuPont ($72 million), Huntsman ($6.5 million), Cristal ($50 million), and Kronos ($35 million))

*In re Optical Disk Drive Products Antitrust Litigation* (Direct Purchaser class) ($26 million in settlements thus far; litigation continues as to remaining Defendants)

*In re Hydrogen Peroxide Antitrust Litigation* (Indirect Purchaser class) ($4.2 million in settlements between the Indirect Purchaser Plaintiffs and Defendants Solvay ($2.1 million), Degussa ($950,000), Akzo ($675,000),  FMC ($250,000),  Kemira ($225,000), and  Arkema)

*Stetson v. West Publishing Corp.* ($9.5 million settlement)

*Abid v. Grosvenor Bus Lines* ($3.1 million settlement)

## Consumer Protection and Product Liability

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation* ($1.6 billion settlement) More than 22 million notices mailed.

*In re Mattel, Inc., Toy Lead Paint Products Liability Litigation*
Gilardi received, tracked, and stored returned product and distributed appropriate refunds pursuant to a complex settlement benefits matrix.

*Pappas v. Naked Juice Co.* ($9 million settlement)
Over 700,000 claims generated without direct notice to the class

*Lavender v. Skilled Healthcare Group, Inc.* ($50 million settlement)

*Utility Consumers' Action Network and Eric Taylor v. Sprint Solutions, Inc.* ($2.2 million settlement)

*In re Bank of America Credit Protection Marketing and Sales Practices Litigation* ($20 million settlement)

*In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation* ($7.5 million settlement)

"American Idol"/"Deal or No Deal" Litigation – *Couch v. Telescope Inc./Herbert v. Endemol USA, Inc.* ($51 million combined settlement)

*Stephens v. American Equity Investment Life Insurance Company* ($36 million settlement)

*In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation* ($15 million settlement)

*McCardle v. 24 Hour Fitness USA, Inc.*
Claimants were given access to all 24 Hour clubs regardless of current club access level.

*Clark v. AdvanceMe, Inc.* ($11.5 million settlement)

*CLRB Hanson Industries, LLC v. Google, Inc.* ($20 million settlement)

*White v. Cellco Partnership d/b/a Verizon Wireless* ($21 million settlement)

*Arce v. Kaiser Foundation Health Plan, Inc.* ($9.29 million settlement)

*Budgin v. American Honda Motor Company, Inc.*
Honda reimbursed claimants for cost of replacing defective windshields.

*Daniel v. American Honda Motor Company, Inc.*
Honda reimbursed claimants for cost of replacing defective windshields.

*Bacca v. BMW of North America*
BMW reimbursed claimants for cost of sub-frame inspection and repair.

*Skuro v. BMW of North America/ATX*
Non-Reversionary Fund of $300,000 for Claimants who declined or did not have option of Service Benefit.

*Shin v. BMW of North America*
BMW replaced defective wheels or reimbursed Claimants for cost of replacement.

*Chandran v. BMW of North America*
BMW replaced defective tires at a discount rate and reimbursed Claimants for past replacements.

*Abat v. Chase Bank USA* ($4.9 million settlement)

# Federal Trade Commission Consumer Redress

**Gilardi has been an FTC contract holder for more than 25 years, and our contract was recently renewed for another term.**

*FTC v. Countrywide Home Loans, Inc.* ($108 million redress)
More than 600,000 checks mailed.  Gilardi reconciled the data, calculated distribution amounts, and mailed the first check distribution within 7 weeks of receiving the initial data.

*U.S. v. Select Portfolio Servicing, Inc.* (formerly Fairbanks Capital Holding Corp.) ($40 million redress)

*FTC v. Associates First Capital Corp.* (Citigroup) ($240 million redress)

*FTC v. EMC Mortgage Co. and The Bear Stearns Companies* ($28 million redress)

*FTC v. Ameridebt* ($14.8 million redress)

# Insurance

*Ruiz v. California State Automobile Association Inter-Insurance Bureau* ($6.5 million settlement)
Distribution of Notice to almost 2 million potential class members who paid finance charges to Defendant when they paid their auto/homeowners insurance premiums in installments.

*L.A. Airline, Inc. v. Republic Indemnity Company of California* ($1.85 million settlement)
Alleged artificially inflated workers' compensation premiums.

*Patrick v. California Physicians' Service dba Blue Shield of California* ($20 million settlement)
Blue Shield of California subscribers alleged Defendants misrepresented how copayments and deductibles would be calculated.

Toyota Motor Credit Corporation Collateral Protection Insurance Litigation – *Bassett v. Toyota Motor Credit Corporation/Ganal v. Toyota Motor Credit Corporation* (Approx. $18 million settlement)
Force-placed collateral protection insurance – motor vehicles.

*Coates v. Fidelity Acceptance Corporation* ($11 million settlement)
Force-placed collateral protection insurance – motor vehicles.

*Farber v. Idaho State Insurance Fund* ($2.95 million settlement)
Workers' compensation insurance dividend distribution improperly excluded holders of certain policies.

# Labor and Employment

*Saipan Garment Workers Litigation* ($20 million settlement)
Litigation comprised of cases *Does I v. The Gap, Inc.*, 01-cv-0031 (D. N. Mar. I.), *Does I v. Advance Textile Corp.*, 99-cv-0002 (D. N. Mar. I.), *UNITE v. The Gap, Inc.*, 300474 (Cal. Super. Ct., San Francisco County).  The settlement with several major U.S. clothing retailers, valued at $20 million, includes a $6.4 million in unpaid back wages for 30,000 former and current garment workers, a company code of conduct, independent monitoring, and a $3,000 repatriation fund.

*Mambuki v. Securitas Security Services USA, Inc.* ($15 million settlement)

*Dahingo v. Royal Caribbean* ($18.4 million settlement)

*Adams v. Blockbuster* ($12 million settlement)

*Butler v. Home Depot, Inc.* ($65 million settlement)
Sex discrimination claims brought by female employees of Defendant's West Coast Division Stores.

*"20 Year Pension" Class Settlement* ($160 million settlement)
Alleged miscalculation of retirement benefits for New York City teachers and Board of Education employees.

*Washington Mutual Bank/J.P. Morgan Chase Bank Wage and Hour Cases* ($41 million settlement)
Alleged unpaid wages.

*Vedachalam v. Tata Consultancy Services* ($29.75 million settlement)
This matter involved non-U.S. citizens deputed from India to the United States. Among other services, Gilardi provided a Hindi translation of the notice.

Waste Management Wage and Hour Cases ($15 million settlement)

*USA Petroleum Wage Cases* ($15 million settlement)

*Martin v. FedEx Ground Package Systems, Inc.* ($8.1 million settlement)

*Savala v. Nordstrom* ($12.5 million settlement)

*Madison v. Cedar Fair* ($9 million settlement)

*Rutti v. LoJack Corporation* ($8.1 million settlement)
Average settlement payment of $21,000.

*Cookson v. NUMMI (New United Motor Manufacturing, Inc.) and Toyota* ($6 million settlement)

*Trauth v. Spearmint Rhino Companies Worldwide* ($12.97 million settlement)
Multi-state distribution.

*Mowdy v. Beneto Bulk Transport* ($14 million settlement)

*Castellanos v. The Pepsi Bottling Group* ($9 million settlement)

*Bolanos v. Norwegian Cruise* ($25 million settlement)

*Pedroza v. PacBell* ($4.5 million settlement)

*Erickson v. Old Republic* ($12 million settlement)

*Ingersoll v. Farmland Foods* ($4.25 million settlement)

## Securities and Exchange Commission Administrations

*SEC v. Cardinal Health* ($35 million settlement)

*SEC v. Charles Schwab* ($110 million settlement)

*SEC v. Qwest Communications* ($252 million settlement)

*SEC v. Sayre et al.* ($0.99 million settlement)

*SEC v. Skowron* ($35 million settlement)

## Securities Litigation

*Enron Securities Litigation* ($7.2 billion settlement)
Gilardi facilitated 12 Notice mailings prior to the claims administration process. Researched and identified 66 known eligible securities and hundreds of "other security types" under the sophisticated Plan of Allocation. Eligible securities comprised of common stock, bonds, foreign debt, employee options, listed options, convertible preferred notes.

*AOL Time Warner Securities Litigation* ($2.5 billion settlement)
*Charles Schwab Corporation Securities Litigation (Federal Class and California Class)* ($235 million combined settlement for civil case)

*Cardinal Health, Inc. Securities Litigation* ($600 million settlement)

*Qwest Communications International Securities Litigation* ($445 million settlement)

*Xerox Securities Litigation* ($750 million settlement)

*UnitedHealth Group Securities Litigation* ($925.5 million settlement)
Settlement involved eighteen unique security types comprised of common stock, bonds, listed options, and employee options.

*Deutsche Bank MBS Securities Litigation* ($32.5 million settlement)
Settlement involved two trusts (Deutsche Alt-A Securities Mortgage Loan Trust 2006-AR5 & Deutsche Alt-B Securities Mortgage Loan Trust 2006-AB4) with a total of 52 tranches and multiple CUSIPs.

*Citigroup Mortgage Securities Litigation* ($25 million settlement)
Settlement involved two trusts (Citigroup Mortgage Loan Trust 2007-AR5 & Citigroup Mortgage Loan Trust 2007-WFHE2) with a total of 38 tranches and multiple CUSIPs.

*Canadian Superior Securities Litigation* ($5.2 million settlement.)
Administration was cross-border with multi-currency distribution in the United States and Canada.

*Flowserve Securities Litigation* ($55 million settlement)

*Accredo Health Securities Litigation* ($33 million settlement)

*Sonus Networks Securities Litigation* ($40 million settlement)

*Touch America/Montana Power Litigation* ($58.3 million settlement)
Integrated a Federal, State and ERISA action in one global Notice mailing, managed two separate plans of allocations within one claimant database and facilitated a joint distribution of monies.

*Shuffle Master, Inc. Securities Litigation* ($13 million settlement)

## U.S. Department of Justice Remission and Restitution

**Gilardi currently holds a contract with the DOJ to provide redress and asset forfeiture administrative services.  We were ranked #1 of all respondents to the DOJ's solicitation.**

*U.S. v. Kristine Eubanks* ($1.8 million remission)
In addition to processing the petitions for remission, Gilardi's duties included verifying the petition entries against actual items received and cataloging and maintaining inventory records of submissions.

*U.S. v. Richard Alyn Waage* ($8.6 million remission)
Gilardi inherited aged claimant data and supporting documentation from the IRS and former contractor, normalized information and converted into electronic format to facilitate notice and distribution.

*U.S. v. MoneyGram International* ($100 million remission)

*U.S. v. Qwest Communications* ($44 million remission)

*U.S. v. David A. Smith* (approximately $5.2 million remission)

*U.S. v. ProNetLink* ($7.7 million remission)
The DOJ "piggybacked" the claimant database established in the corresponding civil matter, utilizing a slightly different distribution plan.

# EXHIBIT H



*In Re New Jersey Tax Sales Certificates Antitrust Litigation* – **Suggested Notice Plan**

Gilardi & Co. LLC (Gilardi) and Larkspur Design Group (LDG) are informed the proposed class will be made up of New Jersey residents. Specifically, LDG understands the settlement class is defined as:

> All persons who owned real property in the State of New Jersey who had a Tax Sale Certificate issued with respect to their property that was purchased by a Settling Defendant from January 1998 through February 2009 at a public auction in the State of New Jersey at an interest rate above zero percent.

<u>Direct Notice to Class Members</u>

LDG will cause direct notice to be provided to class members for whom contact information is available. LDG is informed that this information is available for approximately 55%[1] of the Class. Notice postcards will be mailed via First Class Mail and handled according to the procedures below.

Before mailing, Class Member addresses will be updated using the United States Postal Service's National Change of Address system (NCOA). The NCOA system provides updated addresses for all individuals who have filed a change of address with the post office within the past four years. The NCOA system helps to ensure that the notice is mailed to the most current address on file with the USPS and minimizes returned undeliverable mail (RUM).

Any RUM received will be sorted and scanned. For RUM returned without a forwarding address, Gilardi uses Accurint (a division of Lexis-Nexis) to perform a basic "skip trace" search in order to retrieve the most accurate and updated information. We will update our database with the new addresses found and re-mail the Notice to those Class Members.

<u>Publication (Indirect) Notice</u>

To supplement the direct notice mailing, LDG has developed a publication notice plan designed to reach unidentified class members. The proposed publication notice program consists of print publication, online advertising, earned online media, and a party-neutral press release.

LDG will publish the summary notice in the following print publications as follows:

| Frequency | Publication Name | Ad Unit Size |
|---|---|---|
| 1x | Newark Star-Ledger | Approx. 5" x 7" |
| 1x | The Record (Hackensack) | Approx. 5" x 7" |
| 1x | Trentonian | Approx. 5" x 7" |
| 1x | Courier-Post | Approx. 5" x 7" |
| 1x | Atlantic City Press | Approx. 5" x 7" |

---

[1] Based on the data Gilardi and LDG currently have and expect to receive.

LDG will also implement an online advertising program targeting individuals who reside in New Jersey and seek financial information. Specifically, campaigns will be run on the following channels:

- Sponsored link advertising through Google and Yahoo!/Bing
- Banner advertisements on Xaxis, a nationally recognized ad network
- Text link and display advertising on Facebook

Ads will target potential class members on the basis of relevant website content and searches performed. Contextually targeted advertising matches ads based on relevance to advertiser-specified keywords. Sponsored link ads appear on results pages of the major search engines when a user performs a search for an advertiser-specified keyword. These ads help "close the loop" in a notice campaign and direct potential class members to the case website where they can review the full notice and other relevant documents.

LDG also recommends notice via press release; once released, a newswire piece is available for up to 30 days to media outlets for further distribution. An additional benefit to press releases is that they help control the tone and messaging around an announcement.

In addition, as part of our outreach efforts, LDG will assemble a dedicated outreach team to research, monitor, and respond to the target audience via social media and other internet channels. LDG staff will monitor online Blogs, identify individuals influential in areas related to the litigation (i.e. Real Estate Investing), and encourage them to publish or pass on the case website link to their followers. LDG believes this will be an effective tactic not only to generate traffic to the website, but also to instill confidence that the site is credible and secure for claimants to provide their personal information. In this case that would be experts in the fields of real estate in general, real estate investing, social media and class action litigation.

Case Website

Gilardi will implement and maintain a matter-specific website where the long-form notice and other relevant court documents will be posted and available for download.

Telephone and Email Support

Gilardi will provide telephone and written help services through a case-dedicated toll-free line and email address. Our telephone support system will provide class members with case information via interactive menu and provide the option to speak with a live operator. Gilardi staff will also field written inquiries received through USPS mail and the case-dedicated email address.