# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket No. 3:12-CV-01893-MAS-TJB |
|---|---|

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS TO NAMED PLAINTIFFS

---

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com
*Interim Liaison Counsel for Plaintiffs and the Class*

[Additional Counsel on Signature Page]

583882.1

# TABLE OF CONTENTS

I.  INTRODUCTION....................................................................................1

II.  CLASS COUNSEL HAVE VIGOROUSLY PROSECUTED THIS CASE. ...3

  A.  Investigation .................................................................................4

  B.  Pleadings and Motion Practice ........................................................5

  C.  Discovery......................................................................................6

  D.  Settlements....................................................................................8

  E.  Preliminary Approval and Notice.....................................................9

III.  PLAINTIFFS' COUNSELS' APPLICATION FOR AN AWARD OF FEES
    AND REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED. ....10

  A.  Reasonable Notice of the Requested Fees, Litigation Expenses, and
     Incentive Awards and An Opportunity to Object Has Been Given to the
     Class..........................................................................................11

    1.  Summary of the Notice Period................................................11

    2.  Time of Motion for Fees and Expenses and Opportunity to Object..........13

  B.  The Fees Requested by Class Counsel Are Fair and Reasonable. ...............14

    1.  The Requested Fee Award Is Fair and Reasonable under the Percentage-
     of-Fund Method. .....................................................................16

    2.  The Requested Fee Award is Reasonable under the Lodestar Cross-check.
     ...............................................................................................27

  C.  The Request for Reimbursement of Litigation Expenses is Reasonable. .....31

IV.  INCENTIVE AWARDS TO CLASS REPRESENTATIVES ARE
    APPROPRIATE. ................................................................................34

V.  CONCLUSION ..................................................................................36

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alpine Pharmacy, Inc. v. Charles Pfizer & Co.*,
    481 F.2d 1045 (2d Cir. 1973) ...........................................................................14

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006) ......................................................................15, 18

*In re Auto. Refinishing Paint Antitrust Litig.*,
    2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008)...............................20, 21, 31

*Barkouras v. Hecker*,
    2007 U.S. Dist. LEXIS 44615 (D.N.J. June 20, 2007).......................................29

*Batmanghelich v. Sirius XM Radio, Inc.*,
    2011 U.S. Dist. LEXIS 155710 (C.D. Cal. Sept. 13, 2011) ...............................13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)........................................................................................14

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007)...........................................................23, 26

*In re Cendant Corp. Prides Litig.*,
    243 F.3d 722 (3d Cir. 2001) .............................................................................31

*Chakejian v. Equifax Info. Servs., LLC*,
    275 F.R.D. 201 (E.D. Pa. 2011).......................................................................34

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000).......................................................................34

*In re Diet Drugs Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009) ...................................................................15, 16, 18

*In re Fasteners Antitrust Litig.*,
    2014 U.S. Dist. LEXIS 9990 (E.D. Pa. Jan. 27, 2014)...............................*passim*

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013).........................................................................30

583882.1

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ..........................................................*passim*

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) .....................................................................16, 17

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
   296 F.R.D. 351 (E.D. Pa. 2013) ..........................................................13

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012) .....................................................................20, 35

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013) ..........................................................*passim*

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ..........................................................30

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
   426 F.3d 694 (3d Cir. 2005) ..........................................................29

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   2011 U.S. Dist. LEXIS 101995 (D.N.J. Sept. 9, 2011) .....................................28

*Milliron v. T–Mobile USA, Inc.*,
   2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 14, 2009) ...................................23

*Milliron v T-Mobile USA, Inc.*,
   423 F. App'x 131 (3d Cir. 2011) .....................................................................31

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................21

*Nichols v. SmithKline Beecham Corp.*,
   2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005) .....................................24

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983) .....................................................................14

*In re Processed Egg Prods. Antitrust Litig.*,
   2012 U.S. Dist. LEXIS 160764 (E.D. Pa. Nov. 9, 2012) ...................................29

iv

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) ........................................................................15, 16

*Pub. Interest Research Grp. of N.J., Inc. v. Windall*,
    51 F.3d 1179 (3d Cir. 1985) ...................................................................................27

*In re Ravisent Techs., Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005)......................................24

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)................................................................................................14

*In re Remeron Direct Purchaser Antitrust Litig.*,
    2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) .................................*passim*

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003)..................................................................21

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005)...................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ...........................................................................15, 18

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ...........................................................................15, 31

*In re Superior Beverage/Glass Container Consol. Pretrial*,
    133 F.R.D. 119 (N.D. Ill. 1990)............................................................................21

*In re U.S. Bioscience Sec. Litig.*,
    155 F.R.D. 116 (E.D. Pa. 1994)............................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .................................................................................14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................................21

**Rules & Statutes**

Fed. R. Civ. P. 23(h)(1) ..............................................................................11

**Other Authorities**

1 Alba Conte, Attorney Fee Awards § 2.19 (3d ed. 2004) ......................................32

583882.1

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, plaintiffs respectfully move for an award of attorneys' fees, reimbursement of litigation expenses, and incentive awards to the named plaintiffs.  The Court has previously preliminarily approved settlements with all defendants with a total cash value of $9,585,000 (plus interest).[1]  Additionally, all defendants who still hold a tax sales

---

[1] *See* Dkt. No. 276 (Order preliminarily approving five settlements with: 1) CCTS, LLC; CCTS Tax Liens I, LLC; CCTS Tax Liens II, LLC; DSBD, LLC; Pro Capital LLC; David Butler; and David M. Farber (collectively, the "Butler/Farber Defendants"); 2) Burlington Assembly of God/Fountain of Life Center; Mercer S.M.E., Inc.; Susan M. Esposito; and David B. Boudwin (collectively, the "Mercer Defendants"); 3) Richard J. Pisciotta, Jr.; 4) William A. Collins; and 5) Isadore H. May); Dkt. No. 277 (Order preliminarily approving settlement with Robert E. Rothman); Dkt. Nos. 339 , 376 (Magistrate Judge Bongiovanni Report and Recommendation recommending preliminary approval of the following four settlements and Judge Shipp Order adopting R&R: 1) M.D. Sass Investors Services, Inc.; M.D. Sass Tax Lien Management, LLC; M.D. Sass Municipal Partners – I, L.P.; M.D. Sass Municipal Partners – II, L.P.; M.D. Sass Municipal Partners – III, L.P.; M.D. Sass Municipal Partners – IV, L.P.; M.D. Sass Municipal Partners – V, L.P.; and M.D. Sass Municipal Partners – VI, L.P. (collectively, the "Sass Entities"), Vinaya K. Jessani and Stephen E. Hruby (collectively, with the Sass Entities, the "Sass Defendants"); 2) Royal Bancshares of Pennsylvania, Inc.; Royal Bank America; Crusader Servicing Corporation; and Royal Tax Lien Services, LLC (collectively the "Crusader Defendants"); 3) Plymouth Park Tax Services, LLC d/b/a Xspand ("Plymouth"); and 4) Phoenix Funding, Inc. and Benedict Caiola (the "Phoenix Defendants")); Dkt. No. 394 (Order preliminarily approving settlements with: 1) Norman T. Remick; 2) American Tax Funding, LLC; 3) Robert W. Stein; and 4) Lambros Xethalis); and Dkt. No.426 (Order preliminarily approving settlements with 1) CCTS Capital, LLC n/k/a Crestar Capital LLC, and William S. Green (the "Crestar Defendants"); 2) Mooring Tax Asset Group LLC; 3) Michael Mastellone; 4) the Robert U. DelVecchio, Sr. and Robert U. DelVecchio Pension Trust (the "DelVecchio Defendants"); 5) BBX Capital Corporation f/k/a Bank Atlantic Bancorp. Inc., Fidelity Tax LLC,

certificate ("TSC") that they purchased during the Class Period (which includes all but two defendants) will also provide discounts of up to 15% off the redemption amount for Settlement Class Members who redeem TSCs that defendants still hold and that were purchased by defendants during the Class Period.  The discounts provide additional consideration on top of the nearly $10 million in cash.

The achievement of the settlements is the product of the initiative, investigation, and hard work of Interim Class Counsel over the course of nearly four years of litigation.  In light of the substantial benefit conferred upon members of the Settlement Class through the diligence of Interim Class Counse, plaintiffs and Interim Class Counsel respectfully move for an award from the Settlement Fund of attorneys' fees in the amount of 30% of the Settlement Fund, totaling $2,875,500; reimbursement of all accrued litigation expenses in the amount of $83,047.92 incurred over that period; and incentive awards of $3,500 to each of the named plaintiffs.  Because of the complexity and duration of this litigation, requiring investment of 7,109 hours of attorney and staff time to date,[2] even with

---

Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley (collectively, the "BankAtlantic Defendants"); PAM Investors and Pat Caraballese (the "PAM Defendants"); and 7) Richard Simon Trustee, Betty Simon Trustee LLC, and Joseph Wolfson (collectively, the "Wolfson Defendants").

[2] The 7,109 hours expended by Interim Class Counsel was from inception through January 31, 2016.  Interim Class Counsel will be required to spend substantial additional time in connection with the final approval of the settlements and any activities thereafter.

583882.1

an award of 30% in attorneys' fees from the Settlement Fund, plaintiffs' counsel will recover less than 76.7% (a fractional multiplier) of the more than $3,750,782.75 million in time they have invested in this case. *See* Joint Declaration of Settlement Class Counsel and Liaison Counsel ("Joint Decl."), dated February 16, 2016, ¶306; see also Compilation Chart attached hereto (summarizing fees and expenses).

## II. CLASS COUNSEL HAVE VIGOROUSLY PROSECUTED THIS CASE.

In March 2012, the first civil case alleging that defendants and alleged co-conspirators engaged in a conspiracy to unlawfully manipulate interest rates associated with TSCs sold at public auctions throughout New Jersey was filed. Defendants were alleged to have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as various state laws. Certain defendants pled guilty to violating Section 1 of the Sherman Act in related criminal cases. In September 2012, the consolidated civil proceeding, captioned *In re New Jersey Tax Sales Certificates Antitrust Litigation*, No. 3:12-cv-1893-MAS-TJB, was assigned to this Court.

From the beginning of this action, Interim Class Counsel effectively navigated this case through investigation, informal discovery, motion practice, and settlements with the numerous defendants. As outlined in greater detail in the Joint Declaration, Interim Class Counsel obtained the $9,585,000 million in settlement funds and the valuable discount offers through a diligent and thorough prosecution

3

of this case.  These efforts required substantial investment of human and financial resources by Interim Class Counsel (and other plaintiffs' counsel) given the complexity of the facts and legal issues, the number of defendants, and the scope of the conduct.  Interim Class Counsel implemented safeguards to prevent unnecessary work, avoid duplication of effort, and reduce case costs, while also diligently prosecuting this action.  *See, e.g.*, Joint Decl., ¶¶73-74, 98-99.

### A.    Investigation

After Interim Class Counsel learned of criminal investigations suggesting that defendants were violating the antitrust laws through agreements to rig bids on TSCs, beginning in 2012 with the filing of the first complaint in New Jersey Superior Court and continuing over several months with the filing of additional Complaints in federal court, plaintiffs' counsel conducted a thorough investigation. Joint Decl., ¶¶38-39.  With respect to each of these complaints, plaintiffs were required to investigate the facts and the law, identify the proper defendants, and examine illegal conduct with respect to tax lien auctions in other jurisdictions, such as Maryland, where there had been guilty pleas entered by some individuals who had participated in the rigging of tax lien auctions there.  *Id.,* ¶40.

Plaintiffs continued to learn important information about defendants' TSC scheme as they secured the assistance of defendants who settled.  *Id.*, ¶¶49, 57-59. Plaintiffs also learned the identities of several Sass Defendants through their

583882.1

investigation, which included coordinating with the plaintiffs' counsel in a comparable bid-rigging case filed in Illinois. *Id.*, ¶60.

### B.     Pleadings and Motion Practice

Once all of the plaintiffs' actions were consolidated, plaintiffs filed a Consolidated Master Class Action Complaint that was 79 pages in length and contained causes of action under the Sherman Act, the New Jersey Antitrust Act, two causes of action under the New Jersey Tax Lien Law, a claim for unjust enrichment, and a claim for declaratory judgment. *See* Dkt. No. 113. A few defendants then settled early, but most filed motions to dismiss the plaintiffs' complaint under Rule 12(b)(6). Dkt. Nos. 173, 174, 177, 178, 180, 182, 185. Responding to these motions required extensive briefing that Interim Class Counsel coordinated amongst plaintiffs' counsel. A lengthy oral argument followed, Joint Decl., ¶¶84-85, after which the Court granted defendants' motions on October 23, 2013, and dismissed plaintiffs' complaint with leave to replead. Dkt. Nos. 300, 301.

After this initial ruling, plaintiffs conducted further investigation and then filed their First Amended Consolidated Class Action Complaint. Dkt. No. 320. The complaint named two additional defendants: David Jelley, a former BankAtlantic employee, and Lambros Xethalis, a former Mooring employee. Joint Decl., ¶92. In addition, based on the information developed by Interim Class

Counsel, including oral and documentary information provided by settling

defendants, plaintiffs included 73 paragraphs identifying approximately 50

allegedly rigged auctions, and who from each of the defendants attended the

auction and participated in conduct in furtherance of the conspiracy.  *Id.*

On March 14, 2014, those defendants who still had not settled—the Crestar

Defendants, Mooring, the BankAtlantic Defendants, the PAM Defendants, the

Wolfson Defendants, and the DelVecchio Defendants—filed a new round of Rule

12(b)(6) motions.  Dkt. Nos. 340-345.  Defendant Mastellone filed a motion to

stay.  Dkt. No. 347.  Another extensive round of briefing responses and reviewing

reply briefs followed.  Joint Decl., ¶¶98-101.  Following this voluminous briefing,

on October 31, 2014, the Court denied defendant Mastellone's motion to stay and

denied the motions to dismiss in part and granted them in part, dismissing with

prejudice plaintiffs' state law claims while sustaining the Sherman Act claims.  *See*

Dkt. Nos. 374, 375.

## C.    Discovery

While plaintiffs were able to reach settlements with defendants before

extensive formal discovery was necessary, plaintiffs secured a substantial number

of documents from defendants through the settlement negotiation process, as well

as from third parties.  For instance, plaintiffs negotiated with the Butler/Farber

Defendants to make the production of documents they made to the Department of

6

Justice available to plaintiffs. *Id.*, ¶58. This production consisted of over 25,000 pages of materials, including the Butler/Farber Defendants' "bid books" in which they recorded some of their conspiratorial activities by handwritten notation. *Id.*

Additionally, on January 28, 2013, plaintiffs secured a proffer from counsel for William Collins that detailed Collins's participation in, and provided other relevant information concerning, the alleged conspiracy. *Id.*, ¶65. In early March 2013, counsel for Robert Rothman also provided an all-day proffer to plaintiffs at which plaintiffs were able to learn from Rothman's knowledge of the conspiracy. *Id.* Interim Class Counsel also obtained the cooperation of David Butler and David M. Farber and were able to call them directly with questions about the conspiracy, which Interim Counsel did on many occasions throughout the case. *Id.*

Early in the case, plaintiffs filed an open public records request with one of the municipalities in which defendants had rigged auctions, and Interim Class Counsel reviewed the hundreds of pages of documents that they obtained in response. *Id.*, ¶50. Later, in preparation for the filing of plaintiffs' First Amended Consolidated Complaint, Interim Class Counsel conducted further proffers with settling defendants and sent open public record requests to additional municipalities. *Id.*, ¶¶89-90. Through these efforts, plaintiffs were able to name additional defendants in the First Consolidated Amended Complaint and learn more about the defendants' bid-rigging process. *Id.* Plaintiffs also subpoenaed the

7

National Tax Lien Association to determine when defendants attended the same meetings of the Association, a potential additional avenue for proving unlawful collusive conduct.  *Id.*

### D.    Settlements

Several defendants settled at the initial stage of the litigation and provided extensive cooperation, including providing documentary evidence of rigged auctions.  These included the Butler/Farber Defendants, the Mercer Defendants, and defendants Rothman, Pisciotta, Collins, and May.  *See* Dkt. No. 266-2.  After the initial rounds of 12(b)(6) motions, plaintiffs reached settlements with several other defendants.  Those included the Sass Defendants, the Crusader Defendants, the Phoenix Defendants, and Plymouth, *see* Dkt. No.319-2, as well as defendants American Tax Funding, Remick, Stein, and Xetahlis, *see* Dkt. No. 369-2.  All of these defendants, like the initial settling defendants, agreed to provide cooperation against the defendants who remained in the case.  Finally, after the second round of 12(b)(6) motions was denied, plaintiffs achieved settlements each of the remaining defendants.

As discussed in more detail in the Joint Declaration, and in Declarations submitted by plaintiffs in connection with preliminary approval of the settlements, Dkt. No. 266-2, 319-2, 369-2, 399-2, the process of negotiating the settlements was a lengthy and arduous one, in some cases lasting over two years.  Plaintiffs

conducted countless in-person and telephonic meetings with the defendants over the course of the case.  *See, e.g.*, Joint Decl., ¶¶ 107, 117, 127.  These negotiations involved not only Class Counsel, but several other firms representing the Plaintiff Class.  *See, e.g.*, *id.* ¶ 106.  In the case of defendant Mastellone, an all-day mediation with Bruce I. Goldstein, Esq., an experienced mediator appointed by the Court, was necessary before a settlement could be reached.  Dkt. No. 399.  While lengthy and difficult, each of these numerous settlement negotiations proved fruitful not only in securing relief for the Class, but in gaining the cooperation of the settling defendants against the remaining non-settling defendants.  *See, e.g.*, *id.* ¶ 65.

### E.    Preliminary Approval and Notice

Lastly, Interim Class Counsel put a significant amount of work into filing for preliminary approval of each round of settlements.  *See, e.g.*, Joint Decl. ¶¶275, 284, 294.  In later approval proceedings, Interim Class Counsel had to address meritless opposition raised by Arlene Davies (a former plaintiff who later turned against plaintiffs' case) and two other persons.  This involved the filing of several rounds of letter briefs, Dkt. No. 407, 413, 422, and culminated in an oral argument before the Court on October 29, 2015.  *See* Dkt. No. 425.  Ultimately, the Court rejected the arguments of Ms. Davies and the others, and plaintiffs secured preliminary approval of the last settlements.  Dkt. No. 426, 428.  Plaintiffs are

9

seeking final approval of those settlements contemporaneously with this motion for fees, costs, and incentive awards.  Dkt. No. 437.

Plaintiffs engaged Gilardi & Co LLC to assist with the preparation and dissemination of notice to Settlement Class Members.  After working to draft notice documents that would fairly inform Settlements Class Members about the details of the proposed settlements, Interim Class Counsel secured approval of the notice from the Court, Dkt. Nos. 426, 432, and Gilardi then distributed notice to Settlement Class Members as directed by the Court.  Joint Decl., ¶330.

## III.   PLAINTIFFS' COUNSELS' APPLICATION FOR AN AWARD OF FEES AND REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED.

Interim Class Counsel seek Court approval of an award of $2,875,500 in attorneys' fees and $83,047.92 in reimbursement of expenses in connection with their work on behalf of Settlement Class Members in this litigation.  The notices advised Settlement Class Members that this request would be made (and, in fact, stated that up to 33% of the settlement fund might be sought).

The attorneys' fees requested represent 30% of the value of the "common fund" created by the cash portion of the settlements alone—Interim Class Counsel are not seeking fees based on the value of the discount offers that they obtained on behalf of the class.  Additionally, these requested fees represent a negative multiplier on plaintiffs' counsels' collective lodestar—approximately 76.7% of the

10

total fees incurred.  For the reasons set forth below, this fee request is reasonable and should be granted.

### A. Reasonable Notice of the Requested Fees, Litigation Expenses, and Incentive Awards and An Opportunity to Object Has Been Given to the Class.

Federal Rule of Civil Procedure 23(h)(1) provides that "[n]otice of the motion [for attorneys' fees and costs] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Class Counsel has provided reasonable notice of plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards to Named Plaintiffs, and has afforded Class Members an opportunity to object to such motion.

### 1. Summary of the Notice Period

Gilardi & Co LLC, the Court-appointed Claims Administrator, effectuated the notice program ordered by the Court, so that ensured Class Members are apprised of their rights.  Pursuant to the November 4, 2015 Order granting preliminary approval to the last of the settlements, Dkt. No. 428, and the Court's December 18, 2015 Order approving a revised form of the Notice, Dkt. No. 432, on January 14, 2016, Gilardi mailed notice to Class Members.  Joint Decl., ¶330. Gilardi also established a case website that contained a more detailed notice, and set up a P.O. Box, a toll-free number, and an email address, all of which were

active at all times following January 13, 2016.  *Id.*  Further details regarding the notice program and its effectiveness will be provided by Gilardi with plaintiffs' reply papers on their motion for final settlement approval.

The online notice expressly stated that Interim Class Counsel would be seeking Court approval of (i) attorneys' fees of up to one-third of the $9, 585,000 settlement amount, (ii) reimbursement of litigation expenses, and (iii) incentive awards for Class Representatives of up to $5,000.  *See* Ex. 1 to Order of Nov. 4, 2016, Dkt. No. 428 at 15.  In the section entitled "How will the lawyers be paid?" the online notice provides:

> Any fees and expenses approved by the Court will be paid out of the Settlement Fund. To date, Settlement Class Counsel have not received any payment for any work done on this case since it began. You will not be personally responsible for payment of attorneys' fees or expenses for Settlement Class Counsel. Instead, Settlement Class Counsel will ask the Court to approve payment of attorneys' fees in an amount not to exceed one-third of the monetary total of all of the Settlements. Settlement Class Counsel will also seek reimbursement of reasonably incurred expenses. As to the fees and expenses sought by Settlement Class Counsel and approved by the Court, Settlement Class Counsel intend to deduct the fees and expenses from each settlement on a proportional basis. The expenses will be deducted from the Proposed Settlements, following the deduction for attorneys' fees. . . .  These fees would pay Settlement Class Counsel for investigating the facts, litigating the case, and negotiating the Proposed Settlements.

The notice also explains the process of, and sets deadlines for, opting out of the settlement as well as objecting to the settlement.

### 2.   Time of Motion for Fees and Expenses and Opportunity to Object

The schedule approved by the Court required plaintiffs to file this motion for fees, expenses, and incentive awards in advance of the deadline for asserting objections, consistent with Rule 23(f).  *See* Dkt. No. 428 at ¶ 16 (setting forth relevant portion of schedule).  Objections to the settlements or this motion for fees are due no later than March 14, 2016.  *See id.* at ¶ 4.  Accordingly, Settlement Class Members have nearly a month after the filing of this motion to lodge any objections.  Besides being accessible on PACER, this motion and supporting papers will be available on the Settlement website.  *See* Joint Decl., ¶331.

Four weeks is a sufficient amount of time for Settlement Class Members to object to a motion for fees and expenses.  Courts have found far less time to be adequate.  *See, e.g.*, *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 296 F.R.D. 351 (E.D. Pa. 2013) (granting fee award where class members had two weeks to review motion); *Batmanghelich v. Sirius XM Radio, Inc.*, 2011 U.S. Dist. LEXIS 155710, at *5 (C.D. Cal. Sept. 13, 2011) (finding that filing a fee petition and placing it on a settlement website two weeks prior to the objection deadline gave "Class Members adequate time to review the application and object to the attorneys' fees, costs and/or service payment").

13

**B.**     **The Fees Requested by Class Counsel Are Fair and Reasonable.**

Where counsel have recovered funds for the benefit of a class, they are entitled to seek an award of attorneys' fees and reimbursement of litigation expenses from the fund.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 590 (E.D. Pa. 2005); *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 118-20 (E.D. Pa. 1994).  Courts recognize that fee awards out of a common fund in an antitrust case are important because "[i]n the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced."  *Alpine Pharmacy, Inc. v. Charles Pfizer & Co.,* 481 F.2d 1045, 1050 (2d Cir. 1973).  Such private litigation is essential to the enforcement of the antitrust laws.  *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 334 (1979).  Plaintiffs respectfully submit that their requested fee is appropriate, given the nature and extent of Interim Class Counsel's efforts in creating settlements beneficial to the Settlement Class in this hard-fought litigation and the risks assumed by counsel in prosecuting this complex matter with no guarantee of recovery.[3]

---

[3] Class Counsel also ask that the Court authorize them to distribute the fees in a manner that fairly compensates each firm for its contribution to the prosecution of plaintiffs' claims.  *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (affirming the District Court's decision to permit attorneys' fees to be divided according to the discretion of the co-chairs of the Executive Committee and declining to "deviate from the accepted practice of

14

In awarding attorneys' fees, the Court has discretion to apply either the percentage-of-recovery method or the lodestar method. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 (3d Cir. 2011); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-recovery method "applies a certain percentage to the [settlement] fund." *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009) (internal citation and quotation marks omitted). The lodestar method, on the other hand, "multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *In re AT&T Corp.*, 455 F.3d at 164. The lodestar amount may be increased or decreased using a lodestar multiplier "to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005).

In common fund cases like this one, "the percentage-of-recovery method is generally favored." *In re Diet Drugs*, 582 F.3d at 540. The lodestar amount is then used to "cross-check" the percentage-of-recovery calculation. *See In re Fasteners Antitrust Litig.*, 2014 U.S. Dist. LEXIS 9990, at *9 (E.D. Pa. Jan. 27, 2014) ("In practice, courts in the Third Circuit assess requests for attorney's fees in

---

allowing counsel to apportion fees amongst themselves"); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 329 n.96 (3d Cir. 1998) ("The court need not undertake the difficult task of assessing counsels' relative contributions.").

15

antitrust cases using the percentage-of-recovery method, and then cross-check the result with the lodestar method.").

Here, Class Counsel are seeking $2,875,500 in attorneys' fees, which is 30% of the $9,585,000 obtained through the settlements, and is significantly less than the total lodestar incurred by all counsel in the case (76.7%). Plaintiffs' request for a fee award is reasonable under both the percentage-of-recovery method and the lodestar cross-check.

### 1.    The Requested Fee Award Is Fair and Reasonable under the Percentage-of-Fund Method.

In determining whether the requested fee is appropriate under the percentage-of-recovery method, courts in this Circuit consider the following factors:

> (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (10) any innovative terms of settlement.

See In re Diet Drugs, 582 F. 3d at 541 (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000); In re Prudential, 148 F.3d at 336-40). The

percentage-of-recovery factors "need not be applied in a formulaic way." *Gunter*,

223 F.3d at 195 n.1.  Rather, "[e]ach case is different, and in certain cases, one

factor may outweigh the rest." *Id.*  Here, the factors support awarding the

requested attorney fee award.

### The size of the fund created and the number of persons benefited:

Interim Class Counsel were able to secure $9,585,000, plus interest, in

settlement funds.  This represents an outstanding recovery for Settlement Class

Members, particularly in light of the complexity, duration, and expense of ongoing

litigation and the risks of certifying the class, proving the liability of each

defendant, and establishing damages.  In addition to this outstanding monetary

recovery, Interim Class Counsel have secured valuable relief in the form of

discounts to Settlement Class Members who choose to pay off remaining TSCs

following final settlement approval.[4]  This first factor therefore strongly supports

the fee request.

### The absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel:

The deadline by which Settlement Class Members may object or exclude

themselves is March 14, 2016.  To date, however, no one has opted to exclude

themselves, and opposition has only been expressed by three persons—Ms. Davies

---

[4]  As noted, no fees are being sought based on the value created by these discounts.

and one other couple represented by the same counsel.  Joint Decl., ¶248.  The small amount of opposition urges in favor of approval of the fee request.  *See In re Diet Drugs*, 582 F.3d at 541-42 (affirming district court's conclusion that "few objections to the settlement terms and to the fees requested by counsel" weighed in favor of approval of fees sought by plaintiffs' counsel); *In re AT&T*, 455 F.3d at 170 (upholding district court's reasoning that "the absence of substantial objections by class members to the fees requested by counsel strongly supports approval" where eight potential class members objected); *In re Rite Aid*, 396 F.3d at 305 (holding that "[t]he class's reaction to the fee request supports approval of the requested fees" where two class members objected).  Furthermore, in preliminarily approving the final group of settlements, the Court rejected the arguments raised by Ms. Davies and the others.  *See* Dkt. No. 426.

### The skill and efficiency of the attorneys involved:

Interim Class Counsel comprise a group of highly skilled attorneys with significant experience prosecuting complex antitrust class action litigation throughout the United States.  In appointing interim lead counsel in this matter, the Court observed that "Hausfeld and HBSS are firms with relevant class action litigation experience. . . . Hausfeld and HBSS have also performed a great deal of work investigating the facts underlying these cases," and that "LDG has engaged in a substantial amount [of] antitrust litigation in the District of New Jersey."  *See* ,

18

Dkt. No. 108, at 2.  Ultimately, the Court held that "[a]fter careful consideration," Hausfeld, HBSS, and LDG, "[are] best able to represent the interests of the class." *Id.* at 4.

The substantial recovery obtained in the settlements demonstrates that Interim Class Counsel have represented their clients' interests with skill, diligence, and expertise. The history set forth above and further detailed in the Joint Declaration provides an overview of the substantial work counsel undertook and their diligence in investigating defendants' violations, defeating dispositive motions, and carrying out multiple complex settlement negotiations.

Interim Class Counsel have also been careful to litigate this matter in an efficient manner by taking steps to avoid unnecessary duplication, excessive time, and cost expenditures, and they have carefully monitored attorney time and expenses.  Since the inception of this case, all counsel have been required to submit time and expense reports for work performed and expenditures made by their respective firms, broken out on a monthly basis in monthly reports.  Joint Decl., ¶305.  Interim Class Counsel carefully reviewed monthly reports to ensure that they reflected the work assigned and that the expenses were reasonable.  Time and expenses not authorized by Interim Class Counsel or not found to provide benefit to Settlement Class Members have not been submitted for reimbursement. *Id.*

583882.1

Interim Class Counsel have thus acted both skillfully and efficiently. Accordingly, this factor supports the proposed fee award.

**The complexity and duration of the litigation:**

"Antitrust class actions are particularly complex to litigate." *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 743 (E.D. Pa. 2013); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("An antitrust action is a complex action to prosecute."); *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 U.S. Dist. LEXIS 569, at *14 (E.D. Pa. Jan. 3, 2008) ("This litigation, like most antitrust cases, has been exceedingly complex, expensive, and lengthy."). "The legal and factual issues involved are always numerous and uncertain in outcome." This tax lien conspiracy case is no exception. Class Counsel have expended significant time and effort over several years to investigate, prosecute, and eventually settle their claims against the many Defendants. As summarized above and set forth in detail in the Joint Declaration, the complexity of the TSC market and difficult issues of valuation led to long and arduous settlement negotiations with the Defendants.

**The risk of nonpayment:**

Interim Class Counsel have been litigating this matter from the outset with the risk of receiving nothing in return for their efforts. Counsel thus incurred

583882.1

significant risk with the possibility of no additional recovery whatsoever.[5]  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (noting appropriateness of compensating attorneys for accepting the risk of nonpayment); *In re Auto. Paint*, 2008 U.S. Dist. LEXIS 569, at \*14-15 (finding that risk of nonpayment supported award of one-third fee award in antitrust matter).  In addition, Class Counsel have advanced expenses over the past several years that would not have been reimbursed absent a successful result.  *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money. . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award.").

Class Counsel carried this risk despite the fact that "[a]ntitrust litigation in general, and class action litigation in particular, is unpredictable."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998). "The 'best' case can be lost and the 'worst' case can be won, and juries may find liability but no damages.  None of these risks should be underestimated."  *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990). Interim Class Counsel also faced the risk that class certification would be denied, and that defendants could prevail on certain of their affirmative defenses at

---

[5] Interim Class Counsel will also continue to incur significant lodestar and expenses after January 31, 2016, for which they will not receive payment.

583882.1

summary judgment or at trial.  The risk of nonpayment was further increased by the precarious financial condition of several defendants, including ATF, Crusader, Mastellone, and Mooring.  For these reasons, this factor too favors granting plaintiffs' motion for fees and expenses.

**The amount of time devoted to the case by plaintiffs' counsel:**

Class Counsel have expended 4,724.35 hours in this litigation, and all other plaintiffs' counsel have devoted another 2,384.7 hours.  These hours represent a significant commitment of resources to the litigation, and strongly support the requested fee award. The time expended has been necessary to obtain this outstanding result, especially given the opposition of skilled defense counsel throughout the litigation.  Absent the diligence and commitment of Interim Class Counsel and the other attorneys working on this case, plaintiffs would not be poised to obtain this excellent recovery.

Furthermore, as noted above, Class Counsel have monitored the time submissions by all plaintiffs' counsel, to ensure that only time spent on assigned tasks is included, so the significant expenditure of time spent on this case was all necessary to achieving success for the Class.  Given all this, this factor supports approval of this motion.

**The awards in similar cases:**

The 30% fee is a reasonable percentage that falls well within the range of similar awards approved in this Circuit in similar cases. *See In re Fasteners*, 2014 U.S. Dist. LEXIS 9990, at *17 ("Co-Lead Counsel's request for one third of the settlement fund is consistent with other direct purchaser antitrust actions . . . [and] consistent with attorney's fees awards generally granted in this Circuit."); *In re Flonase*, 951 F. Supp. 2d at 752 (citing cases from various Districts granting one-third fee requests and awarding requested fees of one-third of $150 million settlement fund to plaintiffs' counsel); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (finding that a one-third "percentage has regularly been found acceptable in common fund settlements in this District"); *Milliron v. T–Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 101201, at *39-41 (D.N.J. Sept. 14, 2009) (approving attorney fee of 33 1/3%, plus expenses, on common fund amount of $13.5 million); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 339 (E.D. Pa. 2007) (awarding 35% of $39.75 million common settlement fund in Section 2 antitrust action, with a multiplier of 2.5); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013, at *43, *52 (D.N.J. Nov. 9, 2005) (finding that "[a] one third fee from a common fund has been found to be typical by several courts within this Circuit which have undertaken surveys of awards within the Third Circuit and others" and awarding fees of one third of $75

23

million settlement fund); *Nichols v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 7061, at *72-78 (E.D. Pa. Apr. 22, 2005) (awarding 30% of a $65 million dollar common settlement fund achieved in Section 2 antitrust action, equating to a multiplier of 3.15); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005) ("courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses").

Each of the cases cited, while differing in some respects, is similar to the settlement and action here in a number of ways: each was a class action in a court within the Third Circuit involving complex or novel legal or factual matters; most were pending for several years prior to reaching settlement, as is the case here; and, where lodestar multipliers were calculated, the multipliers were close to or greater than the multiplier here. *See In re Fasteners*, 2014 U.S. Dist. LEXIS 9990, at *20-21 (complex antitrust matter litigated for six years; no objections; multiplier of 0.68); *In re Flonase*, 951 F. Supp. 2d at 743, 747-51 ("highly complex" antitrust class action litigated for over four years; no objectors; and multiplier of 2.99); *In re Ravisent Techs.*, 2005 U.S. Dist. LEXIS 6680, at *40-44 (complex securities class action with difficult matters of proof; pending for five years at the time of settlement; no objectors; and multiplier of 3.1); *In re Remeron*, 2005 U.S. Dist. LEXIS 27013, at *32-43 (complex antitrust class action pending for three years; no objections filed; difficult legal and factual questions remained; and multiplier of

24

1.8).  Moreover, *Flonase* ($150 million) and *Remeron* ($75 million) were antitrust

cases involving common funds much larger than that recovered by Class Counsel

in this case, and in each case the respective court awarded one-third of the common

fund as fees—a greater percentage than that sought by plaintiffs here.  *See In re*

*Flonase*, 951 F. Supp. 2d at 752; *In re Remeron*, 2005 U.S. Dist. LEXIS 27013, at

*44-48.

Accordingly, an attorneys' fee award of 30% amply accords with fee awards

in similar cases.

**The value of benefits accruing to class members attributable to the**

**efforts of class counsel as opposed to the efforts of other groups, such as**

**government agencies conducting investigations:**

While the Government did investigate and bring criminal charges against

several of the defendants, the Government's actions did not directly result in a

benefit to any Settlement Class Members.  Only Interim Class Counsel

successfully obtained such benefits.  Additionally, several defendants, including

ATF, Mooring, BankAtlantic, PAM, Phoenix, and Plymouth never faced criminal

charges, meaning that the settlements with those defendants were solely the result

of Interim Class Counsel's efforts rather than government intervention.

**The percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained:**

Interim Class Counsel likely would have negotiated a standard 33% contingent fee had they signed agreements with each member of the Class.  A one-third (or higher) contingency is standard in individual litigation, and could be even higher in antitrust cases, given the complexities and risks involved.  *See In re Ins. Brokerage*, 297 F.R.D. at 156 (determining that in antitrust class action, "Class Counsel's requested 33% fee amount is within the range of privately negotiated contingent fees"); *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 340 (holding that a fee award of 35% of the net settlement fund was comparable to the percentage counsel would have negotiated had the case been subject to a private contingency fee agreement when counsel was retained); *In re Remeron*, 2005 U.S. Dist. LEXIS 27013, at *42-46 (observing that "[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation" and holding that the "requested 33 1/3% fee reflects the market rate in other litigation of this type").

Moreover, "[i]n determining the market price for such services, evidence of negotiated fee arrangements in comparable litigation should be examined."  *Id*.  Indeed, counsel in this case (such as Hausfeld LLP) that handle a significant amount of non-class action contingency work, routinely charge a contingent fee of

33 1/3% or greater in individual litigation.  *See* Joint Decl., ¶306.  That the fee percentage requested here is comparable to the percentage that Interim Class Counsel have negotiated in the marketplace also supports the reasonableness of the fee request.

**Innovative terms of the settlement:**

In addition to the excellent monetary relief that the settlements provide, the settlements provide innovative discount offers by allowing Settlement Class Members to pay off their outstanding liens at a substantial discount.  This relief, which affords additional benefit on top of the nearly $10 million in cash, further justifies awarding Interim Class Counsel's requested fee amount.

For these reasons, the requested fee award is well-justified under the Third Circuit factors.

> **2.    The Requested Fee Award is Reasonable under the Lodestar Cross-check.**

In order to cross-check the percentage-of-recovery award against the lodestar that contributed to that recovery, the Court initially evaluates (1) the reasonableness of counsel's hourly rates and (2) whether the hours were reasonably expended.  *See, e.g.*, *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185, 1188 (3d Cir. 1985).  The Court then multiplies the hours worked by the applicable hourly rates in order to calculate the lodestar.

583882.1

Here, the total lodestar from all counsel from March 2012 through January 2016 is $3,750,782.75, resulting in a fractional multiplier of 76.7% (requested fee award ÷ lodestar).  This confirms the reasonableness of the request for a fee award of 30% of the total settlement amount.

### a.      Class Counsel's Hourly Rates Are Reasonable.

Class Counsel's hourly rates are reasonable, and similar rates have previously been evaluated and approved by courts in this District and Circuit.  *See In re Mercedes-Benz Tele Aid Contract Litig.*, 2011 U.S. Dist. LEXIS 101995, at *19 (D.N.J. Sept. 9, 2011) ("These rates reflect the experience and skill of the lawyers involved and are comparable to rates the courts have approved in similar cases in other metropolitan areas.").  In assessing the reasonableness of an attorney's hourly rate, courts consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *Barkouras v. Hecker*, 2007 U.S. Dist. LEXIS 44615, at *12 (D.N.J. June 20, 2007) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)).  Courts look to the forum in which the District is located to determine the hourly rates that should apply.  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 704 (3d Cir. 2005).

Here, Class Counsel's customary rates, which were used for purposes of calculating the lodestar from March 2012 through January 2016, have been

approved in this District and elsewhere.  The declarations on behalf of each firm

contain a paragraph which sets forth, under oath, that the hourly rates sought are

the usual and customary hourly rates in effect at the time work was performed, and

that that the rates are the same as, or substantially similar to, rates used by the firm

in similar types of actions. *See generally* Individual Firm Declarations, attached to

Joint Declaration; *see also McDonough v. Toys R Us, Inc.*, 80 F  Supp. 3d 626, 656

(E.D. Pa. 2015) (finding that rates charged by plaintiffs' counsel, including the

Hagens Berman firm, "were reasonable" in antitrust case); *In re Ins. Brokerage*

*Antitrust Litig.*, 297 F.R.D. 136, 157 (D.N.J. 2013) (averaging the hourly rate for

firms including Lite DePalma Greenberg and concluding that "this Court will

consider the approximate hourly rate as reasonable"); *In re Processed Egg Prods.*

*Antitrust Litig.*, 2012 U.S. Dist. LEXIS 160764, at *16-17 (E.D. Pa. Nov. 9, 2012)

("[T]he Court finds that the stated hourly rates of these attorneys and staff

[including Hausfeld], some of whom are described as national leaders in the field

of class action litigation, are reasonable.")

>           **b.      The Number of Hours Class Counsel Worked Is**
>                    **Reasonable.**

The number of hours counsel worked is reasonable.  Interim Class Counsel

have taken steps to prevent the duplication of work or inefficiencies that might

have resulted from having multiple firms on the case, and have sought to restrict

time submissions to those efforts that have substantially advanced the litigation.

*See, e.g.*, Joint Decl., ¶¶73-74, 98-99.  To ensure this efficiency, all counsel were

required to submit monthly time and expense reports to Interim Liaison Counsel

throughout the duration of this case.  The attached Compilation Report shows that

counsel spent 7,109.05 hours litigating this case.  *See also* Joint Decl., ¶306.  In

addition, each firm for whom fees or expenses are sought has submitted a

Declaration and individual summary chart setting forth its fees, identifying the

individuals who worked on this litigation (including usual and customary historical

rates and length of experience), and describing each firm's contributions to this

litigation.  *See generally* Individual Firm Declarations, attached to Joint

Declaration.

### c.    Class Counsel's Fee Results in a Fractional Multiplier.

The fee requested represents a fractional multiplier of 76.7%.  A fractional

(or "negative") multiplier provides strong evidence that a requested fee is

reasonable.  *See In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 106 (E.D. Pa. 2013)

("A negative multiplier strongly underscores the risk counsel accepted to prosecute

this case to trial."); *In re Fasteners*, 2014 U.S. Dist. LEXIS 9990, at *21 (finding

that a negative multiplier "confirms the reasonableness of Co-Lead Counsel's

request for attorney's fees"); *see also In re Ins. Brokerage Antitrust Litig.*, 579

F.3d 241, 284-85 (3d Cir. 2009) (affirming fee award and noting that lodestar

multiplier was less than one).  Fee awards representing negative multipliers are

583882.1

well within the range of awards approved by the Third Circuit.  *See, e.g., Sullivan*,

667 F.3d at 333 (affirming lodestar multiplier of approximately 3.3); *Milliron v T-*

*Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011) (affirming award

representing multiplier of 2.21 and commenting that, "[a]lthough the lodestar

multiplier need not fall within any pre-defined range, we have approved a

multiplier of 2.99 in a relatively simple case") (internal citations omitted); *In re*

*Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (approving a

suggested multiplier of three and stating that multipliers "ranging from one to four

are frequently awarded in common fund cases when the lodestar method is

applied") (internal citations omitted); *In re Auto. Paint*, 2008 U.S. Dist. LEXIS

569, at *17-19 (finding the requested fee percent fair and reasonable when lodestar

multiplier was 0.81).

Accordingly, the fee requested is fair and reasonable under either the

percentage-of-recovery or lodestar cross-check method.  For that reason, it is

respectfully requested that the Court grant an award of $2,875,500.

## C.    The Request for Reimbursement of Litigation Expenses is Reasonable.

Class Counsel also request reimbursement of litigation costs and expenses

they incurred on behalf of the class in the amount of $83,047.92.  "Counsel for a

class action is entitled to reimbursement of expenses that were adequately

documented and reasonably and appropriately incurred in the prosecution of the

583882.1

class action." *In re Ins. Brokerage*, 297 F.R.D. at 157-58 (quoting *In re Safety Components Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001)) (internal quotation marks omitted).  Reasonable litigation expenses include, among other things, those for document production, experts and consultants, and depositions. *See, e.g.*, 1 Alba Conte, Attorney Fee Awards § 2.19 (3d ed. 2004).  As detailed below, Interim Class Counsel seek reimbursement of expenses incurred from March 2012 through January 2016 as follows:

| Expense | Amount |
|---|---|
| Individual Firm Paid Expenses (including assessments) | $124,916.74 |
| Minus Remaining Litigation Fund Amount | $41,868.82 |
| **TOTAL** | $83,047.92 |

*See* Joint Decl., ¶¶303, 311-312 and Compilation Chart attached hereto.

Most firms participating in this matter contributed assessments to the Litigation Fund, managed by Hausfeld LLP, to pay litigation expenses incurred collectively by counsel. Joint Decl*.,* ¶310.  Interim Class Counsel are seeking reimbursement of expenses paid or incurred by the Litigation Fund less contributions by the individual law firms to fund the litigation.  To date, the Fund has received $105,000 in contributions from the participating law firms and from several defendants who, as a term of their settlements, contributed to the Fund to defray the cost of building a database for purposes of notice.  *Id.* & Exhibit 22.

Class Counsel have incurred $63,131.18 in common expenses payable by the fund. *Id.*, Ex. 22.

The expenses incurred by the Litigation Fund include the costs of tax preparation fees for tax returns on settlement funds, a vendor that assisted in creating a database of Class Members, a mediator, and a process server. *See* Joint Decl., Ex. 22. Attached as Exhibit 22 to the Joint Declaration is a summary chart outlining the Litigation Fund balance and categories of Litigation Fund expenses paid or incurred from inception of this matter through January 2016. Hausfeld LLP reviewed each Litigation Fund invoice to ensure it was appropriate and accurate. Joint Decl., ¶¶313-314.

Counsel have also individually incurred and paid out-of-pocket case expenses, including Litigation Fund contributions used to cover common litigation costs, totaling $124,916.74 that have not been reimbursed. *See* Compilation Chart. Exhibit 2 to each of the firm Declarations provides a summary of its unreimbursed expenses from inception to January 2016 that the firms submitted to Interim Class Counsel. *Id.* Interim Class Counsel seek reimbursement of these reasonable and necessary litigation expenses, minus the $41,868.82 that remains in the Litigation Fund, for a total reimbursement of $83,047.92.

583882.1

## IV.    INCENTIVE AWARDS TO CLASS REPRESENTATIVES ARE APPROPRIATE.

Incentive awards may be provided to Class representatives as a reward for efforts that benefit the class.  *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 220 (E.D. Pa. 2011); *In re Remeron*, 2005 U.S. Dist. LEXIS 27013, at *50 ("The named plaintiffs spent a significant amount of their own time and expense litigating this action for the benefit of the Class.  As recognized by numerous courts, such efforts should not go unrecognized."); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Incentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'") (quoting *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In evaluating the appropriateness of an award, courts consider (i) the financial, reputational, and personal risks to the plaintiff; (ii) the degree of plaintiffs' litigation responsibilities; (iii) the length of litigation; and (iv) the degree to which the plaintiffs benefitted as class members.  *See Chakejian*, 275 F.R.D. at 220.  Plaintiffs request that each of the four class representatives receive an incentive award of $3,500, totaling $14,000.  These modest awards are well-deserved.

This litigation was commenced in March 2012.  Over the close to four years since, the class representatives have actively participated in many significant aspects of the litigation.  Joint Decl., ¶315.  While the Class representatives did not

583882.1

have to participate in burdensome discovery (which would have justified larger incentive awards), the class representatives did play an active role in the litigation. Class representatives monitored the litigation on behalf of the Class, including reviewing pleadings, motions, and settlements throughout the course of the litigation. *Id.* They also had to preserve numerous documents in the event that the case proceeded to the discovery phase. *Id.* The representatives also placed themselves in the public spotlight by filing this high-profile lawsuit. *Id.* By agreeing to act as class representatives in this litigation, the representatives enabled the achievement of substantial settlements and class relief.

An award of $3,500 to each of the class representatives is well within the range of reasonableness and comparable to incentive awards in courts throughout this Circuit and around the country. *See, e.g.*, *In re Ins. Brokerage*, 282 F.R.D. at 125 (approving incentive awards of $5,000 to all seventeen class representatives); *In re Remeron*, 2005 U.S. Dist. LEXIS 27013, at *50-51 (awarding $30,000 to each of two class representatives, noting that "the amount requested here is similar to amounts awarded in comparable settlements," and citing numerous cases granting awards of upwards of $30,000).

Additionally, none of the Class representatives has been promised an incentive award by Class Counsel. Joint Decl., ¶316. None of the Class representatives has received a windfall in this litigation. The recovery of the Class

representatives, like all other Class Members who have submitted a claim, will be calculated on a pro rata basis. *See id.* ¶¶ 299-300.

For these reasons, it is respectfully requested that the Court award the reasonable sum of $3,500 to each class representative.

## V.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant, in full, their motion for an award of attorneys' fees, reimbursement of expenses, and incentive awards to the named plaintiffs.

**LITE DEPALMA GREENBERG, LLC**

Dated: February 16, 2016          */s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102-5003
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

**LITE DEPALMA GREENBERG, LLC**
Steven J. Greenfogel
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone:  (267) 519-8306
sgreenfogel@litedepalma.com

*Interim Liaison Counsel*

36

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (admitted *pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig (admitted *pro hac vice*)
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: (212) 856-7227
Facsimile: (917) 210-3980
jasonz@hbsslaw.com

**HAUSFELD LLP**
Michael D. Hausfeld (admitted *pro hac vice*)
James J. Pizzirusso (admitted *pro hac vice*)
Braden Beard (admitted *pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006 Tel: 202-540-7200
Facsimile: (202) 540-7201
mhausfeld@hausfeldllp.com
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com

*Interim Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiffs' Notice of Motion for Award of Attorneys' Fees and Reimbursement of Expenses to Plaintiffs' Counsel, and for Incentive Awards to Representative Plaintiffs; Supporting Memorandum of Law and Joint Declarations of Settlement Class and Liaison Counsel in support thereof; proposed form of Order; and Certificate of Service were electronically filed and served upon all counsel via the Court's CM/ECF filing system.


                                          */s/ Bruce D. Greenberg*_____
Dated:  February 16, 2016                 Bruce D. Greenberg

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | **Comprehensive Summary Report: Inception through January 31, 2016** | | | | |
| 2 | | | | | |
| 3 | **Firm** | **Lodestar** | **Expenses (incl. litigation fund assessments)** | **Totals** | **Hours** |
| 4 | | | | | |
| 5 | **Co-Lead & Liaison Counsel** | | | | |
| 6 | Hagens Berman Sobol Shapiro | $ 978,279.00 | $ 21,936.23 | $ 1,000,215.23 | 1,684.75 |
| 7 | Hausfeld LLP | $ 925,209.00 | $ 36,341.51 | $ 961,550.51 | 2,051.40 |
| 8 | Lite DePalma & Greenberg | $ 641,455.00 | $ 13,203.08 | $ 654,658.08 | 988.20 |
| 9 | | | | | |
| 10 | **Other Participating Firms** | | | | |
| 11 | Bailey & Glasser, LLP | $ 76,036.50 | $ 7,566.50 | $ 83,603.00 | 176.75 |
| 12 | Cafferty Clobes Meriwether & Sprengel | $ 174,914.50 | $ 7,417.38 | $ 182,331.88 | 306.90 |
| 13 | Michael R. Perle | $ 329,862.50 | $ 1,943.06 | $ 331,805.56 | 711.40 |
| 14 | Paris Ackerman & Schmierer | $ 38,587.50 | $ 5,607.07 | $ 44,194.57 | 64.90 |
| 15 | Poulos Lopiccolo, PC | $ 41,730.00 | $ 488.10 | $ 42,218.10 | 64.20 |
| 16 | Shepherd Finkelman Miller & Shah | $ 147,830.50 | $ 7,595.97 | $ 155,426.47 | 291.20 |
| 17 | Starr Gern Davison & Rubin, P.C. | $ 44,997.50 | $ 5,016.50 | $ 50,014.00 | 143.50 |
| 18 | Trujillo Rodriguez & Richards | $ 56,993.00 | $ 1,003.70 | $ 57,996.70 | 115.60 |
| 19 | Williams Cuker & Berezofsky | $ 185,709.25 | $ 8,583.78 | $ 194,293.03 | 291.20 |
| 20 | William Riback, LLC | $ 7,250.00 | $ 2,500.00 | $ 9,750.00 | 13.50 |
| 21 | The Wolf Law Firm, LLC | $ 50,754.50 | $ 5,713.86 | $ 56,468.36 | 117.60 |
| 22 | Young Law Group (James McEldrew) | $ 51,174.00 | $ - | $ 51,174.00 | 87.95 |
| 23 | | | | | |
| 24 | **Total** | **$3,750,782.75** | **$ 124,916.74** | **$ 3,875,699.49** | **7,109.05** |