# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket No. 3:12-CV-01893-MAS-TJB |
|---|---|

## JOINT REPLY DECLARATION OF SETTLEMENT CLASS AND LIAISON COUNSEL IN FURTHER SUPPORT OF (1) FINAL APPROVAL OF SETTLEMENTS WITH ALL DEFENDANTS; (2) SETTLEMENT CLASS AND LIAISON COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS TO NAMED PLAINTIFFS; AND (3) THE PLAN OF ALLOCATION

# TABLE OF CONTENTS

<u>**Page**</u>

I.    PRELIMINARY STATEMENT ....................................................................2

II.   DAVIES' LACK OF STANDING TO OBJECT TO ANY OF THE PROPOSED SETTLEMENTS.......................................................................3

III.  HISTORY OF COMMUNICATIONS WITH ROBERT DAVIES .............14

IV.  ADDITIONAL DOCUMENTS ...................................................................23

010311-11  867454 V1

Bruce D. Greenberg, Jason A. Zweig, and Seth R. Gassman hereby declare as follows:

1.      Pursuant to this Court's October 22, 2012 Order, our firms were collectively appointed as interim co-lead counsel and liaison counsel to represent the class in this matter.[1] In addition, pursuant to several orders of the Court, we have also been appointed as settlement co-lead and liaison counsel for each of the settlement classes in this case.[2] We make this reply declaration in further support of: (1) final approval of settlements with all Defendants;[3] (2) Class Counsel's

---

[1] ECF No. 109.

[2] *See* August 13, 2013 Order preliminarily approving Butler/Farber, Pisciotta, May, Burlington, and Collins settlements [ECF No. 276]; August 13, 2013 Order preliminarily approving Rothman settlement [ECF No. 277]; March 11, 2014 Report and Recommendation Recommending Approval and Appointment of Settlement Class Counsel for the Sass, Crusader, Plymouth Park and Phoenix settlements [ECF No. 339] and October 31, 2014 Order adopting Report and Recommendation [ECF No. 376]; January 29, 2015 Order preliminarily approving settlements with Remick, ATF, Stein and Xethalis [ECF No. 394]; and the October 30, 2015 Order preliminarily approving settlements with Crestar, Mooring, Mastellone, Del Vecchio, BankAtlantic, PAM and Wolfson [ECF No. 426].

[3] The complete list of Defendants is: 1) CCTS Capital, LLC n/k/a Crestar Capital, LLC and William S. Green (collectively, Crestar Defendants); 2) American Tax Funding, LLC; 3) BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley; 4) Richard Simon Trustee, Betty Simon Trustee and Joseph Wolfson; 5) Mooring Tax Asset Group, LLC and Lambros Xethalis; 6) Norman T. Remick; 7) Michael Mastellone; 8) Pat Caraballese and PAM Investors; 9) Robert U. Del Vecchio Sr. and Robert U. Del Vecchio Pension Trust; 10) CCTS, LLC, CCTS Tax Liens I, LLC, CCTS Tax Liens II, LLC, DSBD, LLC, Pro Capital LLC, David Butler and David M. Farber; 11) Plymouth Park Tax Services, LLC; 12) M.D. Sass Investors Services, Inc., M.D. Sass Tax Lien Management, LLC, M.D. Sass Municipal Finance Partners – I, L.P., M.D. Sass Municipal Finance Partners – II, L.P., Sass Municipal Finance Partners – III, L.P., Sass Municipal Finance Partners – IV, L.P., Sass Municipal Finance Partners – V,

application for an award of attorneys' fees for all Plaintiffs' counsel, reimbursement of litigation expenses for those firms, and incentive awards for the four named plaintiffs; and (3) final approval for the plan of allocation of the settlement proceeds. We have personal knowledge of the matters set forth in this declaration, and, if called as a witness, each of us could and would competently testify to those matters.

## I.  PRELIMINARY STATEMENT

2.     The purpose of this declaration is to provide the Court with additional information concerning their relationship with purported objector Arlene Davies and her son Robert Davies, and Class Counsel's[4] extensive communications with the Davies concerning the proposed settlements. In addition, we wish to detail the New Jersey state court proceedings the Davies were involved in, and in which they fully litigated and lost any claim they may have possessed in this case. Finally, this

---

L.P., Sass Municipal Finance Partners – VI, L.P. (collectively, "Sass Entities"), Vinaya K. Jessani and Stephen E. Hruby (collectively with the Sass Entities, "Sass Defendants"); 13) Robert E. Rothman; 14) Royal Bancshares of Pennsylvania, Inc., Royal Bank America, Crusader Servicing Corporation, and Royal Tax Lien Services, LLC; 15) William A. Collins; 16) Isadore H. May; 17) Burlington Assembly of God/Fountain of Life Center, Mercer S.M.E., Inc., Susan M. Esposito, and David B. Boudwin; 18) Richard J. Pisciotta, Jr.; 19) Phoenix Funding, Inc. and Benedict Caiola; and 20) Robert W. Stein.

[4] Unless otherwise indicated, all defined terms in this joint reply declaration shall have the same meaning as those in the February 16, 2016 Joint Declaration of Settlement Class and Liaison Counsel in Support of (1) Final Approval of Settlements With All Defendants; (2) Settlement Class and Liaison Counsel's Application for Attorney's Fees, Reimbursement of Litigation Expenses, and Incentive Awards to Named Plaintiffs; and (3) The Plan of Allocation [ECF No. 439].

declaration attaches several additional exhibits Class Counsel wishes to add to the record in this case.

## II.   DAVIES' LACK OF STANDING TO OBJECT TO ANY OF THE PROPOSED SETTLEMENTS

3.     Arlene Davies (and her husband) is the owner of record of the real property located at 412 Second Avenue, West Cape May, New Jersey.[5] In 2007, Ms. Davies failed to pay $4048.04 in property taxes to the municipality in which she lived - the Borough of West Cape May, New Jersey.[6] As a consequence of her failure to pay her property taxes, by operation of New Jersey state law, a lien arose on her property in favor of West Cape May in the amount of the unpaid taxes.[7] By law, this lien is superior to all other interests in her property, including mortgages.[8] New Jersey law requires that municipalities hold public auctions once per year at which they auction off tax liens to bidders.[9] By law, the auctions are "reverse auctions," with the bidding starting at 18% annual interest, and each subsequent bid bringing the interest rate down, in some cases down to zero percent.[10] The winning bidder acquires the right to collect the amount of the lien from the

---

[5] *See* the December 11, 2008 Tax Sale Certificate issued with respect to Ms. Davies' property at ECF No. 450-1.

[6] *Id.*

[7] January 3, 2014 Plaintiffs' First Amended Consolidated Master Class Action Complaint [ECF No. 320] (Amended Complaint), at ¶¶ 90-91.

[8] *Id.,* at ¶ 91.

[9] *Id.*, at ¶¶ 92, 95.

[10] *Id.*, at ¶ 96.

- 3 -

delinquent taxpayer, in addition to subsequent years' property taxes, as well as applicable interest and penalties.[11] The lien is evidenced by a "tax sale certificate" or "TSC," which is provided by the municipality to the winning bidder. If the delinquent taxpayer fails to pay the outstanding taxes and associated interest and penalties, New Jersey law permits the purchaser of the tax lien to foreclose on the delinquent taxpayer's property, and take full possession of the property.[12]

4.     On December 3, 2008, West Cape May auctioned off Ms. Davies' tax lien. The winning bidder, one of the Sass Defendants (M.D. Sass Municipal Finance Partners – V, LLC), paid West Cape May $4872.22 in order to acquire the tax lien on Ms. Davies property.[13] This amount represented $4048.04 in outstanding taxes Ms. Davies had failed to pay, $728.65 in interest, and $95.53 in tax sale-related fees.[14]

5.     Following the Sass Defendants' acquisition of Ms. Davies' tax lien, Ms. Davies could have paid the outstanding taxes, but, for whatever reason, did not, and the Sass Defendants paid additional years of property taxes and other charges on her behalf to West Cape May.

---

[11] *Id.*, at ¶ 93.

[12] *Id.*

[13] ECF No. 450-1.

[14] *Id.*

- 4 -

6.      Because Ms. Davies failed to pay her property taxes for

approximately three years after they acquired Davies' lien, the Sass Defendants

initiated a foreclosure proceeding in the Superior Court of New Jersey, Chancery

Division, Cape May County, against Ms. Davies, as they were allowed to do under

New Jersey state law.[15] On October 12, 2011, Ms. Davies filed a "Contesting

Answer, Defenses and Counterclaim" to the foreclosure complaint.[16] In her

Counterclaims, Ms. Davies asserted, among other things, the following

counterclaim:

### COUNTERCLAIMS

Plaintiff and/or Plaintiff's custodian, and or third parties known to Plaintiff
over which Defendant has no control,
1.      *Engaged in conspiracy to "rig bids" at municipal tax lien auction,
Devised and deployed a scheme and artifice to defraud which*,
2.      used various illicit means, including, but not limited to false
statements by the Plaintiff, and/or one or more of the Plaintiff's corporate
officers, employees, designees Custodians, predecessors, agents or
subsequent assignees of the Plaintiff, and, included
3.      Plaintiff's custodian, U.S. Bank, N.A, and USBancorp, and/or third
parties known to the Plaintiff and Plaintiffs custodian who committed fraud
and/or gave inducements to commit fraud, official misconduct and/or theft
of municipal services, and,
4.      *fraudulently secured or otherwise deceptively allotted Plaintiff "sole
winning bidder" on Defendant's property*,

---

[15] The foreclosure action is captioned *Sass Muni-V, LLC v. Arlene M. Davies*,
Superior Court of New Jersey, Chancery Division, Cape May County, F-4690-11.

[16] A true and correct copy of the October 12, 2011 Contesting Answer,
Defenses and Counterclaims in *Sass Muni-V, LLC v. Arlene M. Davies*, Docket No.
F-4690-11 (Superior Court, Chancery Division, Cape May County) is attached as
Exhibit 1.

5.      *the egregious means of which further fraudulently awarded Plaintiff, Plaintiffs custodian and/or third parties a fraudulently obtained lien, asset, and/or "asset under management" at maximum rate of interest bearing on Defendant's home, resulting in ascertainable loss to Defendant.* [Emphasis added].

7.      In addition to asserting as a counterclaim that Ms. Davies' lien was acquired by one of the Defendants in this class action pursuant to the same bid rigging conspiracy here, Ms. Davies separately asserted the bid-rigging conspiracy as her second affirmative defense.[17] As for the relief requested by Ms. Davies with respect to her counterclaims, she sought rescission of the lien, actual damages, treble damages, attorneys' fees and costs, and declaratory and injunctive relief.[18] This is the same relief sought by Plaintiffs in their Amended Complaint.

8.      At the outset of the New Jersey state foreclosure action, Ms. Davies was *pro se*. While she was *pro se*, the Sass Defendants were successful in obtaining summary judgment against Davies in favor of their foreclosure on her property.[19] Following the initial grant of summary judgment to the Sass Defendants, Davies moved for reconsideration on April 11, 2012.[20] The motion details the same bid-rigging conspiracy that is at issue in this class action,

---

[17] *Id.*, at 3.

[18] *Id.*, at 5-6.

[19] January 2, 2014 Affidavit of Michael Perle in *Sass Muni-V, LLC v. Arlene Davies*, at ¶ 11. A true and correct copy of this affidavit is attached as Exhibit 2.

[20] A true and correct copy of Ms. Davies' April 11, 2012 motion for reconsideration is attached as Exhibit 3.

including discussing the various guilty pleas connected to this class action, and makes clear that Ms. Davies' counterclaim is based on the very same conspiracy and as a result, Ms. Davies was seeking damages to compensate her for her loss.[21]

9.     After summary judgment had been granted against Ms. Davies, but before the Sass Defendants took title to her property, Ms. Davies was able to obtain counsel, Michael Perle, who agreed to take their matter on a *pro bono* basis, in an effort to prevent the Sass Defendants from foreclosing on Ms. Davies' home.[22] Upon Mr. Perle's entry into the case, Mr. Perle moved for, and was successful in obtaining, a temporary restraining order and preliminary injunction, forestalling the state court foreclosure action indefinitely, during the pendency of this class action.[23] This had the effect of forestalling the Sass Defendants' foreclosure on Ms. Davies' property. In addition to representing Ms. Davies *pro bono* for the purpose of obtaining an injunction to prevent foreclosure of her home, Mr. Perle was also one of the Plaintiffs' counsel in this class action. Among other things, Mr. Perle acted as Class Counsel's liaison to the Davies with respect to matters in this case during the period Ms. Davies was a named plaintiff in this class action.

---

[21] *See generally id.*

[22] Exh. 2, ¶ 17.

[23] Exh. 2, ¶¶ 18-19.

10.     At times while Ms. Davies was a named plaintiff, Robert Davies, as further detailed below, communicated his disagreement regarding certain of the settlements, including the settlement with the Sass Defendants, and informed Class Counsel (Jason Zweig and Seth Gassman) that he would instruct his mother to object to the settlements. Because Mr. Perle was also part of the Plaintiffs' counsel team in the class action, and because of Robert Davies' positions with regard to the class settlements, Mr. Perle felt he could no longer represent the Davies in the state court foreclosure proceedings.[24] As a result, on January 2, 2014, Mr. Perle sought to withdraw as counsel to the Davies in both the state court action and this class action. Mr. Perle's application to withdraw in the state court action was ultimately granted on February 18, 2014 by Judge Batten.[25] When Mr. Perle filed his application in early January 2014, Judge Batten issued an order on January 2, 2014, requiring the Davies to find new counsel by February 10, 2014.[26] On May 9, 2014, Judge Bongiovanni also ordered Ms. Davies to find new counsel by May 30, 2014, or else she would be deemed to be *pro se*.[27]

---

[24] Exh. 2, at ¶¶ 23-24.

[25] A true and correct copy of the February 18, 2014 order permitting Mr. Perle to withdraw as counsel from the state court action is attached as Exhibit 4. Mr. Perle also filed a motion to withdraw in this federal class action. *See* ECF No. 355.

[26] A true and correct copy of the January 2, 2014 order requiring the Davies to find new counsel is attached as Exhibit 5.

[27] ECF No. 355.

11.     In January 2014, Hays Gorey, one of the objector's counsel here, contacted Jason Zweig, one of the Class Counsel here, on behalf of the Davies. Mr. Gorey posed several questions to Mr. Zweig about the class action litigation in general, how the New Jersey tax lien market and auctions worked, the settlements reached in the class actions, and Mr. Zweig attempted to answer all of Mr. Gorey's questions. In addition, Mr. Zweig informed Mr. Gorey of the extensive history that Class Counsel had with Robert Davies. Ultimately, Mr. Gorey chose not to assist the Davies in their state foreclosure action forcing them to proceed *pro se*, and choosing instead to appear on their behalf in this class action as purported objector's counsel.

12.     In February 2014, Mr. Gorey also contacted Sass' counsel in Atlantic City to propose a settlement offer in the Davies' state foreclosure action.[28] At this time, Mr. Gorey represented to Sass' counsel that had been engaged to represent Ms. Davies for the limited purpose of trying to negotiate an individual settlement on her behalf.[29] Prior to Mr. Gorey's representation of Ms. Davies, Sass had offered to settle the state foreclosure action by offering in settlement "a reduction in the amount of money due and owing by Ms. Davies pursuant to the tax sale

---

[28] April 6, 2016 Certification of Frederic L. Shenkman, Esq. at ¶ 11. A true and correct copy of the April 6, 2016 Certification of Frederic L. Shenkman, Esq. is attached as Exhibit 6.

[29] *Id.*

certificate."[30] If she had accepted the offer, and paid the discounted amount she owed, she would have been able to eliminate the foreclosure action, and prevent the loss of her home. She declined the offer. Instead, on February 11, 2014, Mr. Gorey proposed that to settle the case, Sass would have to provide a "complete discharge of any indebtedness pursuant to the tax sale certificate held by Sass in the court action and the payment by Sass to Ms. Davies of a 'significant cash payment to compensate her for injury and cover costs.'"[31] In addition, Mr. Gorey stated that, "Ms. Davies would oppose any class settlement and undertake to bring her case to 'wide public attention, actions that could well upset the proposed resolution, if we are not able to negotiate a settlement for her. In the event this were to happen, Sass could lose the benefit of an extremely favorable class settlement.'"[32] Sass did not accept Mr. Gorey's proposal.

13.    In April 2014, in the Sass Defendants' state foreclosure proceeding against Ms. Davies, Sass moved to enjoin Ms. Davies requiring her to "elect her remedy."[33] Sass' motion sought to require Ms. Davies to make a choice – either pursue the same claims that were the subject of this class action in her state court proceeding, or abandon the counterclaim in the state court proceeding in favor of

---

[30] *Id.*, at ¶ 10.

[31] *Id.*, at ¶ 12.

[32] *Id.*, at ¶ 13.

[33] A true and correct copy of Sass' motion to enjoin Davies and supporting memorandum are attached as Exhibit 7.

remaining a member of the class in the class action. On May 1, 2014, Judge Batten, the state court judge overseeing the state foreclosure action, entered an order requiring Ms. Davies to elect to "pursue her remedies against [Sass] in the case at bar or in '*In re New Jersey Tax Sales Certificates Antitrust Litigation*' bearing Master Docket No. 3-12-1893-MAS/TJB . . . ." by filing a letter with the Court in which she set forth which remedy she sought to pursue.[34] Judge Batten also set a trial date in the foreclosure matter for May 14, 2014.[35]

14.    We do not believe that Ms. Davies ever formally submitted a letter as required by Judge Batten in his May 1, 2014 order. Instead, Ms. Davies elected to litigate her counterclaim concerning the bid rigging claims by proceeding to trial in state court on May 14, 2014.

15.    At the outset of the trial, Ms. Davies stated that she had chosen not to retain new counsel, despite being ordered to do so by Judge Batten.[36] In addition, at the outset of the proceedings, Judge Batten noted that Ms. Davies was required to elect her remedies, either proceed in the state foreclosure action on the bid rigging claims, or, pursue those claims in the class action, but not both.[37] Ms.

---

[34] *See* May 1, 2014 Order, a true and correct copy of which is attached as Exhibit 8.

[35] *Id.*

[36] *See* May 14, 2014 trial transcript, at 6. A true and correct copy of the entire May 14, 2014 trial transcript is attached as Exhibit 9.

[37] *Id.*, at 4-6.

Davies acknowledged the issue, but chose to proceed to trial on the merits of her bid-rigging claim before Judge Batten.

16.     At trial, Ms. Davies cross-examined Kirk Allison, a vice-president of the Sass Defendants.[38] In addition, she called her son, Robert Davies, who testified at length, about the information they had, and which they believed, established that Davies' tax lien owned by the Sass Defendants was the subject of the bid-rigging conspiracy alleged in this case.[39] Ms. Davies also submitted numerous documents into the record, which were accepted as evidence at the trial.[40] And finally, Ms. Davies testified on her own behalf.[41]

17.     At the conclusion of the trial, Judge Batten found for the Sass Defendants, and against Ms. Davies. As Judge Batten stated on the record:

> I heard Robert Davies' testimony to the extent of the duration over which his parents and now his mother has owned this particular property.  It is sad.
> On the other hand, fraud has not been demonstrated, certainly not clearly and convincingly.  There has not been established in this record civil conspiracy on the part of the [Sass Defendant] and anyone else who appeared at that tax sale to prove such a civil conspiracy.  [The Davies] would have to prove that the purchaser of a single tax sale certificate conspired civilly with others so that each would not bid.  That has not been proven here, and the fact of the 18 percent yield on each of the 12 certificates sold, while it may justify second and continuing

---

[38] *Id.*, at 15, 20-22.

[39] *Id.*, at 23-67.

[40] *Id.*, at 67-71.

[41] *Id.*, at 72-73.

010311-11  867454 V1

thought, does not establish civil conspiracy and therefore no factual basis for a legal forfeiture of the certificate and amounts paid, again at least not on this record . . .
There is insufficient showing, in fact in this Court's view no showing in the record before the Court, that the parallel criminal investigation and, and what criminal convictions flowed therefrom inhibited the ability of anyone in this case to conduct discovery and to at least establish the relationships, if any, between those individuals who appeared at the December 3, 2008 tax sale . . . as a result the Court can only conclude, sadness of this matter notwithstanding, that [Sass Defendant] is entitled to final judgment here and that the answer, defenses, and counterclaims have been sufficiently – insufficiently proven, and that the answer, any affirmative defenses, and counterclaims here are properly stricken, suppressed, and dismissed, and as a result of matter – this matter is now uncontested, and the Court is satisfied that it is properly returned to the Office of Foreclosure for purposes of further case management consistent therewith.[42]

18.     Following the trial, on May 21, 2014, Judge Batten issued a formal order striking all of Ms. Davies' defenses, including those asserting that her property tax lien had been the subject of the conspiracy alleged in this case, and also dismissed *with prejudice* Ms. Davies' counterclaims based upon the conspiracy alleged in this case.[43]

19.     In March 2016, Class Counsel made an Open Records Act Request to the Borough of West Cape May, New Jersey, for records related to Ms. Davies tax sale certificate. In response, Class Counsel learned that there is no longer a tax lien

---

[42] *Id.,* at 85-87.

[43] A true and correct copy of the May 21, 2014 order is attached as Exhibit 10.

- 13 -

pending on Ms. Davies' property, as that lien had been fully redeemed. Based on the records provided by the Borough of West Cape May in response to the OPRA request, on June 4, 2014, the Pennsylvania State Employees Credit Union issued a check in the amount of $48,278.54, fully redeeming the tax lien that existed on Ms. Davies' property.[44] According to the documents, the $48,278.54 consisted of $26,934.71 in unpaid taxes, $20,066 in interest, and the remainder in various fees.[45] Thus, there is no longer a property tax lien that exists with respect to Ms. Davies' property.

### III.    HISTORY OF COMMUNICATIONS WITH ROBERT DAVIES

20.    Although Ms. Davies is the purported "objector" to the proposed settlements, Robert Davies has acted as her spokesperson since the beginning of this case, and, throughout Class Counsel's relationship with the Davies. This is confirmed by the objection filed by Ms. Davies which attaches a March 2014 power of attorney that Ms. Davies executed, appointing Robert Davies as her representative for all of her real estate matters.[46]

21.    As fully detailed below, Class Counsel have spent innumerable hours talking with Robert Davies, by phone and in-person, in an effort to identify and

---

[44] True and correct copies of Class Counsel's OPRA Request, as well as the documents produced by West Cape May, are attached as Exhibit 11.

[45] *Id.*

[46] *See* ECF No. 450-2.

understand the issues he had with the proposed settlements, so that Class Counsel could try to remedy any legitimate issues that existed with respect to the settlements. After listening to his concerns, and trying to explain the terms of the settlements to Robert Davies, and why the settlements were an excellent outcome for the class in this case, Class Counsel were unable to resolve Davies' issues with the proposed settlements. Robert Davies communicated to Class Counsel several times that unless the settlement included a complete extinguishing of the tax lien that existed on his mother's property, he would refuse to accept any settlement. Mr. Zweig and Mr. Gassman (as well as Mr. Perle) tried to explain to him that such an outcome was not realistic, and probably not even possible.[47] This class action involved collusion over the interest rates associated with the property tax liens auctioned at public tax sale auctions in New Jersey during the relevant time period. Thus, damages were appropriately limited to the interest charged by Defendants. Defendants were not, and could never be, responsible for the fact that a tax lien existed on Davies' property. That a tax lien existed on her property was due to Ms. Davies' failure to pay her property taxes for whatever reason. However, Robert Davies would not accept this explanation.

---

[47]    Once the Court dismissed with prejudice plaintiffs' claims under the New Jersey Tax Sale law (*see* ECF No. 374), which was the only conceivable basis upon which Class Counsel would be able to seek relief in the form of Defendants' forfeiture of the tax lien, Class Counsel are not aware of any legal basis upon which they could have sought the complete extinguishment of the tax lien.

22.     In October 2012, this Court appointed Class Counsel. However, months before that, and before any settlements were even being negotiated with any defendant, Robert Davies made his first communications to Class Counsel. On May 2, 2012, Robert Davies called Jennifer Connolly, a partner at Hagens Berman in Washington, D.C., one of the Class Counsel.[48] The conversation lasted about an hour. During that conversation, Robert Davies berated Ms. Connolly, calling Class Counsel "opportunists" and threatening that he would seek to oppose our forthcoming applications for Class Counsel.  Further, he represented to Ms. Connolly that he would ensure that Senator Chuck Grassley, Republican United States Senator from Iowa, would also oppose the application.[49]

23.     Ultimately, the Davies did not contest Class Counsel's application to be appointed class counsel. On October 11, 2012, the Court held an initial conference at which the Court heard from the parties concerning certain preliminary issues.[50] Both Robert Davies and Arlene Davies appeared at the conference, expressing their desire that Class Counsel seek to obtain a preliminary injunction on a class wide basis against the Defendants from foreclosing on any

---

[48] *See generally* the April 6, 2016 Certification of Jennifer F. Connolly. A true and correct copy of the April 6, 2016 Certification of Jennifer F. Connolly is attached as Exhibit 12.

[49] *Id.*

[50] ECF No. 101.

property subject to a tax lien.[51] Class Counsel represented that they were

investigating this possibility. Ultimately, for the reasons discussed at ¶ 51 of the

February 16, 2016 Joint Declaration of Settlement Class and Liaison Counsel,[52]

Class Counsel determined that they would not be successful in seeking a class wide

injunction and decided not to do so.

24.     Following the appointment of Class Counsel by this Court in October

2012, Class Counsel prepared the Consolidated Master Class Action Complaint,

and, in connection with the filing of this complaint, Ms. Davies was included as a

named class representative.[53] In addition, Class Counsel also negotiated

settlements with several Defendants, including the Butler/Farber Defendants,

Rothman, Pisciotta, Collins, the Mercer Defendants, and May. The Davies were

informed of these settlements by certain of Plaintiffs' counsel who had primary

responsibility for communicating with the Davies, and although they expressed

their displeasure, ultimately agreed to these settlements.

25.     Following the negotiation of these settlements, Class Counsel

continued to prosecute this litigation including negotiating additional settlements

with additional Defendants. One of those negotiations involved the Sass

---

[51] At this point, the Sass Defendants had already commenced foreclosure proceedings against Ms. Davies, as further detailed below.

[52] ECF No. 439.

[53] ECF No. 113, at ¶¶ 19-20.

- 17 -

Defendants and, ultimately, an acceptable class settlement was reached with the Sass Defendants in September 2013. Since the Sass Defendants held the lien on Ms. Davies' property, and had initiated foreclosure proceedings against Ms. Davies in order to redeem the lien, the Davies objected to the negotiations concerning, and the consummation of, this settlement. They insisted that the consideration obtained from Sass was insufficient, especially since it did not involve Sass' complete relinquishment of the Davies' lien, freeing the Davies from all liability.

26.    From approximately August through December 2013, Class Counsel and other Plaintiffs' counsel, had numerous conversations with Robert Davies, collectively lasting many hours, in which they made good faith attempts to try to explain to Robert Davies the merits of the proposed settlements. For example, on October 17, 2013, Jason Zweig and Seth Gassman, representing Class Counsel, spoke to Robert Davies by telephone for about an hour. During that conversation, Class Counsel sought to explain to Robert Davies the benefits of the proposed settlements, including the settlement with the Sass Defendants. Following this discussion, Class Counsel prepared and sent to Robert Davies a detailed letter in which they explained the merits of the proposed settlements, the difficulties that Plaintiffs would face in this case, and generally sought to address the concerns

- 18 -

which the Davies had raised. Finally, the letter apprised the Davies of their rights to formally object to the settlements or opt-out of the settlements.[54]

27.     The Court then held a hearing on October 22, 2013, during which it heard argument on Defendants' various motions to dismiss. Both Robert and Arlene Davies attended the hearing, as did Gila Bauer and Frances and Donald Schmidt, two of the named plaintiffs in this case. At the conclusion of the hearing, the Court read its decision on Defendants' motions to dismiss, granting in part and denying in part the motions to dismiss, but giving Plaintiffs the opportunity to amend their complaint. Following the hearing, in the parking lot outside of the Courthouse, both Robert and Arlene Davies complimented Jason Zweig on his and other Class Counsel's handling of the oral argument on the Defendants' motions to dismiss. An approximate 15 minute conversation between Jason Zweig and the Davies ensued, during which Mr. Zweig assured the Davies that Class Counsel would continue to listen the their concerns and attempt to address the deficiencies that they perceived with the proposed settlements, if any legitimate issues could be identified.

---

[54] Although the communication from Class Counsel to Robert Davies was likely not privileged because Robert Davies was not a client of any of Plaintiffs' counsel, out of an abundance of caution, Plaintiffs have not attached a copy of this letter. In the event the Court wishes to see the correspondence, Plaintiffs would be pleased to produce the letter to the Court for its *in camera* review, or, if the Court determines the letter is not privileged, file the correspondence with the Court in the public docket. The same goes for the communication referenced in ¶ 30 below.

28.    On November 4, 2013, Mr. Zweig and Mr. Gassman had another telephone call with the Davies to discuss the proposed settlements and the litigation. During the conversation, the parties again discussed their disagreements concerning the settlements. No resolution was achieved.

29.    In late 2013, Class Counsel began preparing the amended complaint that the Court allowed to be filed, following the Court's rulings on Defendants' motions to dismiss. In that regard, given that the Davies made it clear they disagreed with the settlements achieved by Class Counsel, and the overall litigation strategy, it no longer was appropriate to have the Davies continue as named plaintiffs. In December 2013, Mr. Zweig and Mr. Gassman again contacted the Davies to try to resolve their differences, in the hopes that a resolution could be achieved and they could continue as named plaintiffs.

30.    On December 12, 2013, Mr. Zweig and Mr. Gassman had a call with the Davies which lasted more than an hour. During that call, Class Counsel informed the Davies that they would not be able to include them as named plaintiffs in the amended complaint since they had such strong disagreements with the performance of Class Counsel in this case. The parties discussed each other's respective positions concerning the settlements, again, but no resolution was achieved. Following that call, on December 18, 2013, Class Counsel wrote to Robert Davies seeking his decision as to whether or not Arlene Davies would

remain as a named plaintiff, and if so, that they agreed with the strategy going forward.  We do not believe we ever received a response from Robert Davies. Ultimately, on January 6, 2014, plaintiffs filed their First Amended Consolidated Master Class Action Complaint, and the Davies were not included as named plaintiffs.

31.     On or about January 15, 2014, Judge Bongiovanni ordered an in-person hearing to be held on March 6, 2014,[55] at which she would hear argument on Plaintiffs' motion for preliminary approval of settlements with the Sass Defendants, Crusader Defendants, Plymouth Park and the Phoenix Defendants.[56] Shortly after Judge Bongiovanni's order was issued, Class Counsel was forwarded an email that was sent by Robert Davies *ex parte* to Judge Bongiovanni's chambers, criticizing Class Counsel.[57] Among other things, the email purported to seek removal of Class Counsel and sanctions against Class Counsel. The email accused Class Counsel of possessing "**outrageous, unreported attorney conflicts of interests, ethical violations, willful negligence and deliberate false statements that have been made to and concealed from the Court by Class**

---

[55] ECF No. 325.

[56] The preliminary approval motion is at ECF No. 319.

[57] A true and correct copy of the January 14, 2014 email from Arlene Davies to Judge Bongiovanni is attached as Exhibit 13. Although the email purports to be from Ms. Davies, it comes from Robert Davies' email address.

**Counsel and Defendants' counsel alike.**" [58] Although the *ex parte* email states

that Class Counsel would be notified and provided a copy of this communication,

no such copy was ever sent, and from the heading of the email, Robert Davies tried

to file the document "under seal."  On January 23, Judge Bongiovanni's chambers

forwarded the email to Class Counsel, along with a note indicating that Mr. Davies

had also called chambers on a number of occasions. [59]

32.    Judge Bongiovanni held a hearing on March 6, 2014. [60] Both Arlene

and Robert Davies appeared at the hearing. Ms. Davies presented oral argument as

to why the proposed settlements should not be approved. Ultimately, on March 11,

2014, Judge Bongiovanni issued a report and recommendation in which she

recommended that the proposed settlements be preliminarily approved. [61] Judge

Shipp adopted the report and recommendation on October 31, 2014. [62] No

objections were filed to Judge Bongiovanni's report and recommendation, and no

appeals were taken of Judge Shipp's order adopting the report and

recommendation.

---

[58] *Id*. at 1 (emphasis in original).

[59] *Id.*

[60] ECF No. 337.

[61] ECF No. 339.

[62] ECF No. 376.

## IV.   ADDITIONAL DOCUMENTS

33.     Attached as Exhibit 14 is a true and correct copy of the January 31, 2016 certification of named plaintiff Donald W. Schmidt, Jr.

34.     Attached as Exhibit 15 is a true and correct copy of the January 23, 2016 certification of named plaintiff Gila Bauer.

35.     Attached as Exhibit 16 is a true and correct copy of the January 20, 2016 certification of named plaintiff Melissa Jacobs.

36.     Attached as Exhibit 17 is a true and correct copy of the January 7, 2016 certification of James Hudson, President of named plaintiff Son, Inc.

37.     Attached as Exhibit 18 is a true and correct copy of the April 6, 2010 decision from the United States Court of Appeals for the Second Circuit in *In re Air Cargo Shipping Services Antitrust Litigation*, No. 09-4813.

We declare under penalty of perjury that the foregoing is true and accurate.

April 12, 2016

_____
Bruce D. Greenberg

_____
Jason A. Zweig

_____
Seth R. Gassman

- 23 -