**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIG. | Civil Action No. 12-1893 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiffs' motions for "Final Approval of All Class Settlements, Final Certification of Settlement Class, and Final Approval of Plan Allocation" and for "Attorneys' Fees and Reimbursement of Expenses to Plaintiffs' Counsel, and for Incentive Awards to Representative Plaintiffs." (ECF Nos. 437, 438.) Arlene M. Davies ("Ms. Davies") and Jerilean Roberts filed objections to the motion for final approval of the class settlements. (ECF Nos. 450, 453.) Plaintiffs filed a reply in support of their motions. (ECF No. 460.) As no objections were filed with respect to the Motion for Attorneys' fees, Reimbursement of Expenses, and Incentive Awards to Named Plaintiffs (ECF No. 438), this motion is deemed unopposed. The Court held a fairness hearing on April 25, 2016. (ECF No. 469.) Having considered the submissions on the record and the arguments presented at the fairness hearing, the Court grants Plaintiffs' motions.

## I.    Background

Plaintiffs filed this putative class action against participants in an alleged bid-rigging conspiracy involving municipal auctions of real property liens in the state of New Jersey. Plaintiffs' First Amended Consolidated Master Class Action Complaint ("FACC") alleges that

Defendants[1] engaged in an unlawful conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, the New Jersey Antitrust Act, N.J.S.A. § 56:9-3, the New Jersey Tax Lien Law, N.J.S.A. § 54:5-63.1, and New Jersey common law.   (FACC ¶ 1, ECF No. 320.) Specifically, Plaintiffs allege that Defendants engaged in a conspiracy to unlawfully manipulate the interest rates associated with Tax Sales Certificates ("TSCs") sold at public auctions in New Jersey.   (*Id.*)   Defendants were also subject to criminal charges for this conduct, and several defendants pled guilty to violating Section 1 of the Sherman Act by participating in a conspiracy to rig bids and allocate customers at certain public tax lien auctions in New Jersey. (Pls.' Opening Br. 3, ECF No. 437-1.)  Likewise, some defendants in this civil action settled early and cooperated with Plaintiffs by participating in proffer sessions and providing documentary evidence.  (Joint Declaration of Settlement Class and Liaison Counsel ("Pls.' Counsel's Decl.") ¶¶ 57- 59, 67, 68, 89, 110, ECF No. 439.)

---

[1] 1) CCTS Capital, LLC n/k/a Crestar Capital, LLC and William S. Green (collectively the "Crestar Defendants"); 2) American Tax Funding, LLC; 3) BBX Capital Corporation f/k/a BankAtlantic Bancorp, Inc., Fidelity Tax, LLC, Heartwood 55, LLC, Michael Deluca, Gary I. Branse, and David Jelley; 4) Richard Simon Trustee, Betty Simon Trustee, and Joseph Wolfson; 5) Robert W. Stein; 6) Mooring Tax Asset Group, LLC ("MTAG") and Lambros Xethalis; 7) Norman T. Remick; 8) Michael Mastellone; 9) Pat Caraballese and PAM Investors; 10) Robert U. Del Vecchio Sr. and Robert U. Del Vecchio Trust; 11) CCTS, LLC, CCTS Tax Liens I, LLC, CCTS Tax Liens II, LLC, DSBD, LLC, Pro Capital LLC, David Butler, and David M. Farber; 12) Plymouth Park Tax Services, LLC; 13) M.D. Sass Investors Services, Inc., M.D. Sass Tax Lien Management, LLC, M.D. Sass Municipal Finance Partners - I, L.P., M.D. Sass Municipal Finance Partners – II, L.P., M.D. Sass Municipal Finance Partners - III, LLC, M.D. Sass Municipal Finance Partners - IV, LLC, M.D. Sass Municipal Finance Partners - V, LLC, M.D. Sass Municipal Finance Partners - VI, LLC, Vinaya J. Jessani, and Stephen E. Hruby; 14) Robert E. Rothman; 15) Royal Bancshares of Pennsylvania, Inc., Royal Bank America, Crusader Servicing Corporation, and Royal Tax Lien Services, LLC; 16) William A. Collins; 17) Isadore H. May; 18) Burlington Assembly of God/Fountain of Life Center, Mercer S.M.E., Inc., Susan M. Esposito, and David B. Boudwin; 19) Richard J. Pisciotta, Jr.; and 20) Phoenix Funding, Inc. and Benedict Caiola (all defendants collectively are referred to as "Defendants").  (FACC 1-2.)

2

## A.     Motions to Dismiss

In March 2013, Defendants moved to dismiss Plaintiffs' complaint.  (ECF Nos. 173, 174,

177, 178, 182, 185, 186, 187, 188, 193.)  Plaintiffs filed an eighty-three page brief in opposition

to all but one of the motions to dismiss.  (ECF No. 242.)  Plaintiffs filed a separate twenty-five

page brief to oppose the remaining motion to dismiss.  (ECF No. 241.)  In September 2013,

Plaintiffs amended their complaint to add additional defendants that they learned about through

their ongoing investigation. (Pls.' Counsel's Decl. ¶ 75.)  Thereafter, Crestar Defendants made a

motion for judgment on the pleadings. (ECF No. 279.)  On October 23, 2013, the Court held oral

argument on the motions to dismiss and also held a settlement conference.  (ECF No. 300.)

Following the settlement conference, the Court issued a decision on the record.  (ECF No. 309.)

The Court made the following rulings:  1) Plaintiffs adequately alleged antitrust standing; 2) the

heightened pleading requirements of Fed. R. Civ. P. 9(b) did not apply to Plaintiffs' antitrust

claims; 3) the conspiracy was adequately pled with respect to those defendants that had pled guilty;

4) the conspiracy was not adequately pled with respect to those defendants that did not plead guilty;

5) the Filed Rate Doctrine did not apply to Plaintiffs' claims; 6) Plaintiffs' declaratory judgment

claim could not stand and was dismissed; 7) N.J.S.A. 54:5-52 did not provide for a stand-alone

cause of action, so it was dismissed with prejudice; 8) Plaintiffs' other state law causes of action

under the New Jersey Tax Sale Law failed and were dismissed without prejudice; 9) Plaintiffs'

unjust enrichment claim failed and was dismissed; 10) Defendants' arguments on statutes of

limitations and fraudulent concealment failed; and 11) MTAG was dismissed without prejudice.

(*See* Oct. 23, 2013 Tr. 75:15-90:11, ECF No. 309.)

Thereafter, Plaintiffs filed the First Amended Consolidated Master Class Action

Complaint, and some of the non-settling defendants filed motions to dismiss. (ECF Nos. 320, 340,

3

341.)  On October 31, 2014, the Court issued a decision granting in part and denying in part the motions to dismiss.  (ECF No. 375.)  Importantly, the Court denied the motions to dismiss with respect to Plaintiffs' antitrust claim but dismissed with prejudice Plaintiffs' unjust enrichment and New Jersey Tax Sale law claims.  (*Id.*)

### B.  Settlements

From the Spring of 2012 through the Spring of 2013, "Lead Counsel intensively negotiated settlements with various counsel representing the Butler/Farber, Rothman, Mercer, Pisciotta, Collins, and May Defendants."  (Pls.' Counsel's Decl. ¶ 105.)  Before finalizing the settlement agreements, lead counsel obtained information from proffer sessions, telephone calls with counsel for defendants, and its own investigations, which included Open Public Records Act ("OPRA") requests.  (*Id.* ¶¶ 49, 50, 57, 58, 59, 60, 61, 62, 67, 68, 110.)  From August 13, 2013 to October 30, 2015, the Court granted preliminary approval for numerous settlements with Defendants in this action, totaling $9,585,000 in cash, plus interest, and discounts for those class members who are still subject to a tax sales certificate.  (ECF Nos. 276, 277, 376, 394, 426.)  Throughout the course of the litigation, lead counsel and certain other Plaintiffs' counsel have kept the named plaintiffs informed of the settlement negotiations as they took place and prior to executing various settlement negotiations with defendants.  (Pls.' Counsel's Decl. ¶ 295.)  Notice of the settlements was disseminated in accordance with the Court's October 30, 2015 Order.  (ECF No. 426.)  (Decl. of Kenneth Jue ("Jue Decl.") ¶¶ 2-7, ECF No. 459; Supplemental Decl. of Kenneth Jue ("Jue Supp. Decl.") ¶¶ 3-4, ECF No. 467.)

### C.  Attorneys' Fees

Fifteen law firms submitted lodestar information and expenses for the period of inception through January 31, 2016.  (Pls.' Counsel's Decl. ¶ 302.)  To date, none of Plaintiffs' attorneys

have received any compensation for work they performed in this case, and have not been reimbursed for any expenses incurred. (*Id.* ¶ 303.) As compensation for work performed in this case, Plaintiffs' Counsel seeks up to 30% of the proposed settlement as fees and reimbursement of $83,047.92 in litigation expenses. (*Id.* ¶¶ 306, 307.) In support of the fee applications, Plaintiffs' Counsel submitted declarations attesting to the work performed during the time period, the hours of work performed, the value of the work performed, and the amount of unreimbursed expenses incurred by each law firm from the period of inception through January 31, 2016. (Pls.' Counsel's Decl., Exs. 22-37, ECF No. 439-1.) Counsel also attested that applying historical rates to the 7,109.05 hours worked yields a total lodestar of $3,750,782 for the applicable work performed in prosecution of this litigation during the relevant time period, which equates to approximately 30% of the available settlement funds. (Pls.' Counsel's Decl. ¶ 306.)

### D.    Named Plaintiffs' Awards

Plaintiffs' Counsel declares that since the inception of this litigation in 2012, the four named plaintiffs have played an active role in this litigation and protected the interests of the Class by monitoring the litigation, reviewing pleadings, motion papers, and settlements, and in some instances, traveling to observe Court proceedings. (*Id.* ¶ 315.) Plaintiffs' Counsel also declares that they did not promise any of the named plaintiffs that they would receive an incentive award for their participation in this litigation. (*Id.* ¶ 316.) To compensate the named plaintiffs for their time and expenses in litigating this action, Plaintiffs' Counsel requests that the Court approve an "incentive award of $3,500 for each of the four named plaintiffs, totaling $14,000." (Pls.' Fees Moving Br. 34, ECF No. 438-1.)

### E.     Fairness Hearing

By Order dated October 30, 2015, the Court approved the class notice and notice plan. (ECF No. 426.)  Thereafter, Plaintiffs moved for "Final Approval of All Class Settlements, Final Certification of Settlement Class, and Final Approval of Plan Allocation" and for "Attorneys' Fees and Reimbursement of Expenses to Plaintiffs' Counsel, and for Incentive Awards to Representative Plaintiffs." (ECF Nos. 437, 438.)  The Court conducted a fairness hearing on April 15, 2016.  (ECF No. 469.)  At the hearing the Court heard arguments from Class Counsel; Mr. Robert Davies, Ms. Davies's son; and Counsel for Ms. Davies.  (*Id.*)  In addition, Ms. Christine Sweeney read a statement onto the record.  (*Id.*)  The Court reserved decision on Plaintiffs' motions.

## II.     <u>Class Certification</u>

As an initial matter, no objections have been raised with respect to class certification for the purpose of settlement.  Nonetheless, the Court shall engage in the two-step analysis prescribed by Federal Rule of Civil Procedure 23 to determine whether to certify the class for settlement purposes.  *See Sheinberg v. Sorensen*, No. 00-6041, 2016 WL 3381242, at *3 (D.N.J. June 14, 2016).

> To certify a settlement class, the plaintiffs must satisfy the four threshold requirements of Rule 23(a) – namely numerosity, commonality, typicality, and adequacy – and one of the subparts of Rule 23(b) – in this case, the requirements of Rule 23(b)(3) that the 'questions of law or fact common to the class members predominate over questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority].

*Yaeger v. Subaru of Am., Inc.*, No. 14-4490, 2016 WL 4541861, at *5 (D.N.J. Aug. 31, 2016).

6

The proposed Settlement Class in all agreements is defined as:

> All persons who owned real property in the State of New Jersey who had a Tax Sale Certificate issued with respect to their property that was purchased by a Defendant during the Class Period at a public auction in the State of New Jersey at an interest rate above zero percent.

(Pls.' Settlement Moving Br. 6, ECF No. 399-1.)  As discussed below, for settlement purposes only, the Court finds that the proposed Settlement Class meets the requirements of Rule 23 and conditionally certifies the Settlement Class.

### A.    Numerosity

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." *Yaeger*, 2016 WL 4541861, at *5.  When examining the potential size of a class, "[p]recise enumeration of the members of a class is not necessary . . . . [and] [i]t is permissible to estimate class size." *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990).  Moreover, "[j]oinder of all members of the class need not be impossible to satisfy Rule 23 . . . [but rather] difficult[ ] or inconvenien[t]." *Id.* at 405-06.  "There is no minimum number . . . " but where a class is likely to exceed forty members, the Rule 23(a) numerosity requirement is generally met. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).  Here, while the exact size of the settlement class is unknown, Plaintiffs assert that the information collected from LienSource and the data supplied by defendants confirms that there are thousands of Settlements Class Members. (Pls.' Opening Br. 26.)  This estimate is sufficient to satisfy the numerosity requirement.   In addition, the proposed Settlement Class is also readily ascertainable as "membership is based upon the objective criterion of ownership of real property in New Jersey for which a TSC was issued and was purchased by a defendant during the Class Period, and for which

the purchase was made at an interest rate above zero percent." (*Id.*) *See Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

### B.   Commonality

In Rule 23(b)(3) cases, such as this one, the Third Circuit has applied "the Rule 23(a)(2) commonality requirement and the 23(b)(3) predominance tests together." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd sub*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998); *see, e.g.*, *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 626 (3d Cir. 1996) ("Because 23(b)(3)'s predominance requirement incorporates the commonality requirement, we will treat them together."). Commonality requires that the "common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *id.* at 353 ("[T]he existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims.") (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 (1982)). Ultimately, "even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc.*, 564 U.S. at 369. Rule 23(b)(3) then requires that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members . . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). Although the predominance requirement is "far more demanding" than Rule 23(a)(2), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997), Rule 23(b)(3) class actions need not

be as cohesive as Rule 23(b)(2) class actions because Rule 23(b)(3) class members have an opportunity to opt out. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998).

Here, the common questions of law or fact include:

a. Whether defendants conspired with others to fix bids and allocate TSCs at auctions in New Jersey in violation of the Sherman Act;

b. Whether defendants' conduct had the anticompetitive effect of reducing and unreasonably restraining the market for the purchase of TSCs;

c. The names of the individuals and entities who participated in the anticompetitive scheme;

d. The duration of the anticompetitive scheme;

e. The effect of defendants' conduct and the extent of injuries sustained; and

f. The amount of damages the anticompetitive scheme caused members of the class.

(Pls.' Opening Br. 27.)   In addition, the Court finds that these questions predominate over individual factual differences between class members as to the specific interest rate on their lien and whether the lien remains outstanding or was foreclosed upon or otherwise extinguished.   In particular, to prove the alleged conspiracy, Plaintiffs would have to focus on Defendants' conduct rather than on any individual factual differences in the class members' conduct.   Thus, the Court finds that the proposed class satisfies the commonality and predominance requirements in Rule 23(a)(2) and Rule 23(b)(3), respectively.

## C.   Adequacy and Typicality

The adequacy and typicality analyses under Rule 23(a)(3) and Rule 23(a)(4), respectively, often merge and can therefore be discussed together. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 186 (3d Cir. 2001) (finding that typicality "criteria tend[s] to merge into [the] analysis of adequacy of representation under [Rule] 23(a).").   The adequacy prong of Rule 23(a)(4) requires two steps of inquiry.   "First, the adequacy inquiry 'tests the qualifications

of the counsel to represent the class.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)). "The second component of the adequacy inquiry seeks 'to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *In re Warfarin*, 391 F.3d at 532). Additionally, "[t]he burden to prove that the representation is not adequate rests with the party challenging the class'[s] representation." *Bizzarro v. Ocean Cty.*, No. 07-5665, 2009 WL 1617887, at *14 (D.N.J. June 9, 2009). Furthermore, "[n]ot every distinction between a class member and a class representative renders the representative inadequate." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Pa 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016).

The typicality analysis correspondingly "focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims." *In re Schering Plough Corp.*, 589 F.3d at 597-98. "[F]actual differences among the claims of the putative class members do not defeat certification." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). In fact, "'[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *In re Prudential*, 148 F.3d at 311 (quoting *Baby Neal*, 43 F.3d at 58).

Here, "[i]t appears there is no conflict or antagonism between the named plaintiffs and the settlement [C]lass members, and there is no substantial prospect that time will be wasted to sort out atypical aspects of any named plaintiff's circumstances or claims." *Yaeger*, 2016 WL 4541861, at *6. While the Court recognizes that there are factual differences between Class

members, such as the particular interest rate on each Class member's tax lien and whether the lien remains outstanding, these factual differences do not render the named plaintiffs inadequate or preclude a finding of typicality. In addition, the named class members include both plaintiffs who have redeemed their liens and plaintiffs who are still subject to the TSCs, so to the extent that their interests diverge, the named Plaintiffs adequately represent both of these interests. (Oct. 29, 2015 Tr. 18:11-15, ECF No. 436.) Moreover, all of the claims of the proposed Class arise from the same alleged bid-rigging conspiracy; thus, the Class members' interests are aligned and the named plaintiffs' claims are typical of the Class claims. Furthermore, as Plaintiffs' Counsel are experienced class action litigators that are familiar with the legal and factual issues involved in this litigation, the Court finds that they were well qualified and adequately represented the interests of the class throughout this litigation, which included substantial motion practice as well as extensive settlement negotiations. (Pls.' Counsel's Decl. ¶ 46.)

### D. Superiority

Finally, with respect to Rule 23(b)(3) requirements, as discussed above, the Court finds that common questions of fact and law predominate over questions affecting individual Class members. In addition, the Court also finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. "Fairness is an explicit criterion for a superiority determination, and . . . must be balanced against any disincentive for class action litigation which might result from" denying class certification. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 761 (3d Cir. 1974). As noted above, it is estimated that the Class contains thousands of members, thus absent certification Plaintiffs would have to conduct individual trials, which would likely prove too costly for individuals and, given the estimated size of the class, too burdensome for the Court. Thus the class action is a superior method of adjudicating these claims. *See, e.g.*,

11

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J. 2005) (finding that class satisfied the superiority requirement where it was "unlikely that individual Class Members would have the resources to pursue successful litigation on their own.").

Having found that the proposed Settlement Class meets the requirements of Rule 23, the Court conditionally certifies the Settlement Class.

## III.   Final Approval of the Settlement

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). Under Federal Rule of Civil Procedure 23(e)(2), a Court may approve settlement of a class action "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The factors that are relevant to the determination of whether a settlement is "fair, reasonable, and adequate" include:

> (1)   the complexity, expense and likely duration of the litigation;
> (2)   the reaction of the class to the settlement;
> (3)   the stage of the proceedings and the amount of discovery completed;
> (4)   the risks of establishing liability;
> (5)   the risks of establishing damages;
> (6)   the risks of maintaining the class action through the trial;
> (7)   the ability of the defendants to withstand a greater judgment;
> (8)   the range of reasonableness of the settlement fund in light of the best possibly recovery; and
> (9)   the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)). "The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). In general, "[c]ourts apply an 'initial presumption of fairness' to settlements that occurred . . . [1] through

arm's-length negotiations by [2] individuals 'experienced in similar litigation,' [3] following 'sufficient discovery,' and [4] that prompted objections from 'only a small fraction of the class.'" *Yaeger*, 2016 WL 4541861, at *7. However, where as here, "the settlement class certification, the proposed settlement, the incentive fees to class representative plaintiffs, and the uncontested cap on reimbursement of attorneys' fees and costs were simultaneously negotiated, there must be a heightened standard of review to determine the fairness of the proposed settlement." *Id.* at *8.

### A.    Complexity, Expense, and Likely Duration of the Litigation

In discussing the complexity, expense and likely duration of this litigation, Plaintiffs' Counsel stated "the only wrongdoing here relates to the interest rate associated with [the property tax] lien[s]." (Apr. 25, 2016 Unofficial Tr. 6:15-16.) In addition, Plaintiffs' Counsel noted that over 5,600 property tax lien auctions took place during the class period, and that not all of these auctions were the subject of a conspiracy. (*Id.* at 6:22-7:6, 16:23-17:4.) Plaintiffs' counsel argued that, absent settlement, class members would have to show: (1) that a particular property tax lien auction was the subject of a conspiracy; and (2) what the lien would have sold for in absence of the conspiracy. (*Id.* at 6:22-7:6.) In addition, Plaintiffs' Counsel asserts that Defendants would have surely opposed class certification and moved for summary judgment. (Pls.' Settlement Reply Br. 11, ECF No. 460.) Objector Ms. Davies, however, argues that "Class Counsel offers nothing to suggest that *this settlement* would be particularly complex or lengthy relative to other class actions." (Objector's Br. 14, ECF No. 450.)[2] The Court disagrees with Ms. Davies. As an initial matter, "[a]n antitrust action is a complex action to prosecute." *In re Ins. Brokerage Antitrust*

---

[2] While the Court consider Ms. Davies's objections in approving the proposed settlements, the Court does not reach the issue of whether Ms. Davies has standing to object. *See Larson v. AT&T Mobility LLC*, 687 F.3d 109, 131 n.34 (3d Cir. 2012) ("Even assuming *arguendo* that they did not have constitutional standing to bring an objection based on adequacy of representation, the District Court still has an independent duty to ensure that all class members are adequately represented.").

*Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012). In addition, the size of the settlement class, which is estimated to include thousands of members, supports settlement. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 388 (stating that "sheer size of the Class supports settlement"). Thus, the Court finds that these facts weigh in favor of settlement.

### B.   Reaction of the Class to Settlement

In evaluating the reaction of the class, courts look primarily to the "objection rate," while considering the potential concern "that the passive victims . . . lacked 'adequate interest and information to voice objections.'" *Yaeger*, 2016 WL 4541861, at *9 (citation omitted). Between January 8, 2016 and March 4, 2016, notice of the settlements was disseminated pursuant to the notice plan approved by the Court. (Jue Decl. ¶¶ 2-7; Jue Supp. Decl. ¶¶ 3-4.)

As evidenced by the number of impressions of the notice of the settlement on internet search advertising, internet banner advertising, and Facebook advertising, in addition to the publication of the notice in newspapers, on the settlement website, and mailing of approximately 100,000 postcard notices, notice of the settlements was widely disseminated. (*Id.*) Following the notice period, out of an estimated class of thousands of members, only three class members opted out of the class, and only two[3] individuals objected to the settlement – Ms. Jerilean Roberts and Ms. Davies. (Pls.' Settlement Reply Br. 15.) In addition, as the subject of this suit affected the interest rate on mortgages for Plaintiffs' homes, it seems more likely than not that most affected people who received notice of settlement would have voiced objections to the settlement to the

---

[3] In Plaintiffs' Reply Brief, which was filed before the Fairness Hearing, Plaintiffs asserted that there were "at most, three objections," Plaintiffs appear to have included Ms. Christine Sweeney in this calculation. Thereafter Ms. Sweeney, however, advised the Court that she did not object to the proposed settlements, and she did not make any objections to the proposed settlements at the Fairness Hearing. (Apr. 25, 2016 Unofficial Tr. 34:23-40:1.) Thus, the Court is aware of only two objections to the proposed settlements.

14

extent that they had objections.  Thus, the Court finds that the low objection rate in this litigation weighs in favor of approving settlement.

### C.    The Stage of the Proceedings and the Amount of Discovery Completed

"The third *Girsh* factor 'captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)).  Here, the parties entered into a settlement before formal discovery commenced.  Other district courts in this Circuit have approved class settlements in the absence of formal discovery.  *See, e.g.*, *McAlarnen v. Swift Transp. Co.*, No. 09-1737, 2010 WL 365823, at *8 (E.D. Pa. Jan. 29, 2010); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012).  In her opposition brief, Ms. Davies, however, argues that "[w]ithout discovery, Class Counsel had no basis to discount the substantial class-wide damages here."  (Objector's Br. 12.) The Court disagrees with Ms. Davies.

Here, Plaintiffs' Counsel argues that Plaintiffs developed an adequate appreciation of the merits of this litigation through informal discovery, in addition to extensive motion practice.  (Pls.' Settlement Reply Br. 9.)  Specifically, Plaintiffs' Counsel asserts that based on the documentary evidence, which included bid books and responses to OPRA requests; proffer sessions with cooperating defendants; and information from criminal proceedings regarding the alleged conspiracy, they gained an appreciation of some of the strengths and weaknesses of this action. (Pls.' Counsel's Decl. ¶¶ 49-50, 57-62, 67-68, 110.)  In particular, Plaintiffs' Counsel noted that not all of the auctions were rigged and that for the auctions that were "rigged," Plaintiffs would be required to demonstrate what the liens would have sold for in a market free from collusion in order

to establish damages.  (Apr. 25, 2016 Unofficial Tr. 6:22-7:24, 16:23-17:4.)  Plaintiffs' Counsel also noted that certain defendants were found not guilty of conspiracy in the criminal case based on the same conduct that is the subject of this action, and that objector Ms. Davies was unable to prevail on her conspiracy claim in state court foreclosure proceedings.  (*Id.* at 13:10-14:6.) Plaintiffs' Counsel argues that these cases demonstrate the difficulties that they identified in proving Plaintiffs' claims.  Based on the substantial informal discovery that Plaintiffs' Counsel conducted, the Court finds that Plaintiffs' Counsel was sufficiently well prepared and informed to engage in robust settlement negotiations.  Thus, notwithstanding the absence of formal discovery in this litigation, the Court finds that this factor weighs in favor of approving the proposed settlements.

### D.    Risks of Establishing Liability and Damages, and Maintaining a Class Action Through Trial

The risks of establishing liability and damages "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319.  As discussed above, here Plaintiffs' Counsel argues that the risk of proving liability is evidenced by the successful motions to dismiss of certain defendants, not guilty verdicts in the criminal case against the Wolfson Defendants, and Ms. Davies's inability to prevail on her counterclaim in the state foreclosure action.  (Pls.' Opening Br. 19-21.)  In addition, they cite the difficulties in certifying a class and note that absent settlement, Defendants would have opposed certification and moved for summary judgment. (Pls.' Settlement Reply Br. 11.)  Ms. Davies, however, argues that "the fact that **fifteen** Defendants pleaded guilty, or were convicted, makes the risk of establishing liability far lower than in a typical class action." (Objector's Br. 15.)  In addition, Ms. Davies argues that "Class Counsel have provided no reason why the calculation of the class's damages has suddenly become more complex" from the time

16

that they calculated damages for the Amended Complaint. (*Id*. at 16.)  The Court disagrees with Ms. Davies.  As Class Counsel argues, to establish liability and damages Plaintiffs must prove not only that a particular auction was rigged but that absent the conspiracy, the interest rate for the lien would have been lower.  Contrary to Ms. Davies's suggestion, Plaintiffs cannot prevail in this showing by relying merely on the allegations in the Amended Complaint.  Moreover, given that Plaintiffs' Counsel has learned that not all of the auctions were rigged (and even in some of the auctions that were rigged the interest rates were not necessarily higher than they would have been absent the conspiracy), the Court agrees that there is a significant risk that Plaintiffs would not be able to prevail on their claims at trial, and that there is a significant risk that Plaintiffs would not be able to maintain a class action through trial.  In addition, with respect to the guilty pleas Ms. Davies cites, the Court finds that these pleas are of limited utility given that they do not identify which auctions were rigged.  (*See* Pls.' Counsel's Decl., Exs. 2-10, ECF No. 439-1.)  Thus the Court finds that the risk of establishing liability and damages and of maintaining a class through trial weigh in favor of approving settlement.

### E.    Ability of Defendants to Withstand a Greater Judgment

The Defendants' ability to withstand a greater judgment is relevant to approval of the settlement where, as here, "[D]efendant[s'] professed inability to pay is used to justify the amount of the settlement." *In re Nat'l Football League Players' Concussion Injury Litig.*, 821 F.3d at 440. Here, Plaintiffs cite the inability of certain individual defendants to withstand greater judgment and argue that this factor weighs in favor of approving settlement.  (Pl.'s Opening Br. 22.)  Ms. Davies, however, argues that because the Defendants are jointly liable, the inability of certain defendants to withstand a greater judgment is not relevant.  (Objectors' Br. 14.)  Rather, Ms. Davies argues that "[t]he relevant inquiry is the financial condition of the Defendants as a whole,

17

regardless of whether certain Defendants may be unable to pay a greater judgment." (*Id*.) Thus, Ms. Davies argues that because Plaintiffs have not shown that the larger corporate defendants would be unable to pay a larger judgment, this factor does not weigh in favor of approving the proposed settlements. The Court agrees with Ms. Davies. Accordingly, this factor does not weigh in favor of approving settlement.

F.    **Range of Reasonableness of Settlement Fund**

Finally, the Court must determine "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. In other words, the Court must determine whether the settlement amount is reasonable in light of both the best possible recovery and the risks of not prevailing at trial. In her opposition, Ms. Davies argues that the Court does not have the requisite information to determine the reasonableness of the settlement amount, and in addition, the information that is available suggests that the settlement award is inadequate. (Objector's Br. 8-12.) With respect to the range of reasonableness, Plaintiffs' Counsel asserts that from their review of the bid books and proffer sessions with certain defendants, they have since learned that not all of the auctions at issue were rigged, and even for those auctions in which Defendants conspired, some of the rates that resulted did not exceed the rate that would have been expected in the absence of a conspiracy. Ms. Davies's counsel, however, contends that without access to the bid books, Ms. Davies, as well as the Court, is unable to determine Plaintiffs' damages. (Objectors' Br. 8.) The Court agrees that it is not possible to predict the precise value of damages that Plaintiffs would recover if successful. The absence of this information does not, however, preclude the Court from evaluating the reasonableness of the proposed settlements. *See Yaeger*, 2016 WL 4541861, at *11 (finding that "[i]t is not possible to forecast the precise value

18

of the damages plaintiffs would likely recover if successful" but concluding that settlement was reasonable.).

Arguing that the information that is available suggests that the settlement is inadequate, Ms. Davies provides the following description of her calculation of the best possible recovery:

> One year's interest at 18% on $200 million of Tax Sales Certificates amounts to $36 million annually. That is almost $400 million over the Class Period. Trebling this number yields damages over $1.2 billion. On top of that, the class would be entitled to prejudgment interest from 1998-2009 to present.

(Objectors' Br. 9-10 (emphasis omitted).) As an initial matter, the Court exercises its discretion to evaluate the comparison of potential single damages of the class rather than treble damages. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011) (stating that a district court is not required to consider treble damages in assessing the fairness of a proposed settlement and finding no abuse of discretion where the district court used single damages to assess the fairness). Thus, accepting Ms. Davies's calculations the Court evaluates the reasonableness of the settlement fund in light of a best possible recovery of $400 million. Given the significant risks of establishing liability, damages, and maintaining a class action, as discussed above, the Court finds that the settlements, which include cash settlements that are approximately 2.5% of the best possible recovery in addition to a discounted rate on outstanding liens, fall within the range of reasonableness. *See also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re AT&T Corp. Sec. Litig.*, No. 00-5364, 2005 WL 6716404, at *6 (D.N.J. Apr. 25, 2005) ("In the present case, although the best possible recovery had yet to be determined, a recovery of $ 100,000,000 represents a material percentage considering the significant risks

19

[p]laintiffs faced in establishing liability."). Thus, this factor weighs in favor of approving the proposed settlements.

Finally, the Court also finds that additional factors weigh in favor of approving the proposed settlements, such as the ability of Class members to opt out of the settlements. In addition, as the Court noted during the hearing on Plaintiffs' motion for preliminary approval of certain proposed settlements, the Court finds that experienced counsel engaged in arms length negotiations. (Oct. 29, 2015 Tr. 52:16-19; 54:4-9.)

Having found that the majority of the factors considered weigh in favor of approving the settlements, the Court approves the proposed settlements.

## IV.    **Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards**

Under Rule 23(h)(1) of the Federal Rules of Civil Procedure, Plaintiffs' Counsel must direct notice of the motion for attorneys' fees to Class members in a reasonable manner. Fed. R. Civ. P. 23(h)(1). Here, as discussed above, Plaintiffs' Counsel's notice was distributed pursuant to the approved notice plan. (Pls.' Fee Moving Br. 11-12.) The section of the on-line notice titled "How will the lawyers be paid?" provided:

> Any fees and expenses approved by the Court will be paid out of the Settlement Fund. To date, Settlement Class Counsel have not received any payment for any work done on this case since it began. You will not be personally responsible for payment of attorneys' fees or expenses for Settlement Class Counsel. Instead, Settlement Class Counsel will ask the Court to approve payment of attorneys' fees in an amount not to exceed one-third of the monetary total of all the Settlements. Settlement Class Counsel will also seek reimbursement of reasonably incurred expenses. As to the fees and expenses sought by Settlement Class Counsel and approved by the Court, Settlement Class Counsel intend to deduct the fees and expenses from each settlement on a proportional basis. The expenses will be deducted from the Proposed Settlements, following the deduction for attorneys' fees . . . . These fees would pay Settlement Class Counsel for investigating the facts, litigating the case, and negotiating the Proposed Settlements.

(Nov. 4, 2015 Order, Ex. 1 ("Long Form Notice") 15, ECF No. 428.) The notice also provided the procedure for opting out and making objections to the proposed Settlements. (*Id.* at 13-16.) No objections were made with respect to the Motion for Attorneys' Fees, Reimbursement of Litigation Expenses and Incentive Awards. After careful consideration, the Court makes the following findings of fact and conclusions of law pursuant to Rules 23(h)(3) and 52(a) of the Federal Rules of Civil Procedure:

1.   Plaintiffs' Counsel submitted declarations of the time expended, the services rendered, and the current billing rates charged to clients, together with expenses incurred in pursuing this class action, all in compliance with Rule 54(d) of the Federal Rules of Civil Procedure. (Pls.' Counsel's Decl., Exs. 22-37, ECF No. 439-1.)

2.   These submissions are summarized as follows:

   a.   Class Counsel have expended 4,724.35 hours in this litigation, and all other plaintiffs' counsel have devoted another 2,384.7 hours.

   b.   The lodestar from Plaintiffs' Counsel from March 2012 through January 2016 of $3,750,782.

   c.   Counsel incurred costs and expenses of $83,047.92 on behalf of this class in this action.

3.   The documentation submitted in support of the request for attorneys' fees adequately describes the services rendered, the hourly rate of each attorney and paralegal performing services, and

the expenses incurred, all based upon contemporaneous billing records.

## A.     Attorneys' Fees, Costs, and Expenses

"Attorneys' fees are typically assessed through the percentage-of-recovery method or through the lodestar method." *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). In antitrust cases like this one, the percentage-recovery method is generally favored and the lodestar method is used to crosscheck this calculation. *Id.* "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in the lodestar multiplier." *Id.* If the multiplier is too high, the court should reconsider its calculation. *Id.*

When analyzing whether a requested fee is appropriate under the percentage-of-recovery method, a district court generally considers the following factors:

(1)    the size of the fund created and the number of persons benefitted;

(2)    the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

(3)    the skill and efficiency of the attorneys involved;

(4)    the complexity and duration of the litigation;

(5)    the risk of nonpayment;

(6)    the amount of time devoted to the case by plaintiffs' counsel; and

(7)    the awards in similar cases.

*Id.* at 165 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

First, the Court finds that the award of nearly ten million dollars in addition to discounts on outstanding liens for the benefit of thousands of class members justifies an attorneys' fee award of approximately three million dollars. Second, the lack of objections to the requested fee in the present case justifies the award. Third, the history of this litigation, which, as discussed above, has included extensive motion practice and informal discovery; Plaintiffs' Counsel's submissions,

which detail the work performed in connection with this litigation; and Plaintiffs' Counsel's familiarity with antitrust and class action litigation, which the Court recognized in its decision appointing interim lead counsel (Mem. Op. 2, ECF No. 108), justify the award. Fourth, as discussed above, this litigation pertained to complex issues in terms of proving conspiracy claims and included extensive motion practice. Thus, the Court finds that this factor also justifies the award. Fifth, as detailed in Plaintiffs' Counsel's submissions, counsel has expended significant resources in terms of attorney time and costs to litigate this matter and to date have not received any compensation. Thus, the Court finds that both the risk of non-payment and the amount of time devoted to the litigation justify the award. Finally, the Court finds that the approximately thirty percent fee that is sought here falls within the range of awards approved in similar cases. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (stating that a thirty-three percent fee award "has regularly been found acceptable in common fund settlements in this District") (collecting cases).

Having found that the percentage-recovery-fee sought is appropriate, the Court cross checks the fee award by applying the lodestar analysis. "The lodestar analysis is performed by 'multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys.'" *Id.* at 156. Here, Plaintiffs' Counsel's billing rates range from approximately $275 to $980. (Pls.' Counsel's Decl., Exs. 23-37.) Considering the blended billing rate, the Court finds that Plaintiffs' Counsel's hourly rates are reasonable based on the seniority of the attorneys and the given geographical area. Likewise, the Court finds that the hourly rates of the support staff are also reasonable. In addition, the Court notes that Plaintiffs' Counsel tried to avoid duplicating efforts and to ensure efficiency by requiring all counsel to

submit monthly time and expense reports to the Interim Liaison Counsel throughout the duration of this case. Dividing the proposed fee award by the product of the total hours and the blended billing rate, the lodestar multiplier is 76.7%. This negative multiplier confirms the reasonableness of the requested fee award. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284-85 (3d Cir. 2009) (affirming fee award noting that lodestar multiplier was less than one). Likewise, having reviewed Plaintiffs' submissions detailing their expenses, which include costs of tax preparation fees for tax returns of the settlement funds, a vendor that assisted in creating a database of Class Members, a mediator, and a process server, the Court finds that the expenses totaling $83,047.92 are reasonable.

**B.    Incentive Awards**

Finally, the Court approves incentive award payments of $3,500 to each of the four Class Representatives. "Incentive awards are 'important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.'" *O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *31 (D.N.J. Aug. 9, 2012) (quoting *O'Connor v. A.R. Res., Inc.*, No. 08-1703, 2012 WL 12743, at *9 (D. Conn. Jan. 4, 2012)). Here, the Court accepts the representations of Plaintiffs' Counsel that the named plaintiffs played an active role in this litigation and protected the interests of the Class by monitoring the litigation, reviewing pleadings, motion papers, and settlements, and in some instances, traveling to observe Court proceedings. (Pls.' Counsel's Decl. ¶ 315.) The Court also accepts Plaintiffs' Counsel's representation that they did not promise the named plaintiffs an incentive award. (*Id.* ¶ 316.) The requested incentive award of $3,500 is within the range of reasonableness of comparable incentive awards in courts in this Circuit. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 125 (approving an

incentive award of $5,000 for each of the seventeen named plaintiffs); *Varacallo*, 226 F.R.D. at 259 (awarding $3,000 to named plaintiff minimally involved in case preparation). Moreover, the named plaintiffs' duties are not at an end, rather they must continue to monitor the administration of the settlement, and thus should be compensated for these tasks.

## V.    Conclusion

For the reasons discussed above, the Court grants Plaintiffs' motions for "Final Approval of All Class Settlements, Final Certification of Settlement Class, and Final Approval of Plan Allocation" and for "Attorneys' Fees and Reimbursement of Expenses to Plaintiffs' Counsel, and for Incentive Awards to Representative Plaintiffs."


s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** September 30, 2016