UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NEW JERSEY TAX SALES CERTIFICATES ANTITRUST LITIGATION | Master Docket No. 3:12-CV-01893-MAS-TJB |

**CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE MOTION OF THE HAMILTON LINCOLN LAW INSTITUTE'S CENTER FOR CLASS ACTION FAIRNESS FOR LEAVE TO FILE A BRIEF AS *AMICUS CURIAE***

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com
*Liaison Counsel for Plaintiffs and the Class*

[Additional Counsel on Signature Page]

833579.2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTORY STATEMENT ..........................................................................1

ARGUMENT .............................................................................................................3

The CCAF cannot satisfy any of the standards required of an *amicus curiae* ..........3

    A.    The CCAF lacks a "special interest" in this case ..................................5

    B.    The class is adequately represented and does not need CCAF's input.6

    C.    The proposed *amicus* is not timely or useful ......................................10

    D.    The CCAF is completely partial to the outcome here.........................10

CONCLUSION .......................................................................................................11

# **TABLE OF AUTHORITIES**

*Bernstein v. Township of Freehold*,
    2008 WL 11510751 (D.N.J. Jan. 4, 2008) ....................................................... 5

*Dwelling Place Network v. Murphy*,
    2020 WL 3056305 (D.N.J. June 9, 2020) ........................................................ 5

*Granillo v. FCA US LLC*,
    2018 WL 4676057 (D.N.J. Sept. 28, 2018) ............................................. 3, 5, 6

*In re Petrobras Securities Litig.*,
    786 Fed. Appx. 274 (2d Cir. 2019) ................................................................. 1

*In re Valeant Pharms. Int'l Inc. Sec. Litig.*,
    2017 U.S. Dist. LEXIS 66037 (D.N.J. Apr. 28, 2017) .................................... 4

*Islamic Society of Basking Ridge v. Township of Bernards*,
    226 F. Supp. 3d 320 (D.N.J. 2016) .............................................................. 4-5

*Kaplan v. St. Peter's Healthcare Sys.*,
    2014 U.S. Dist. LEXIS 131569 (D.N.J. Sept. 19, 2014) ................................ 5

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*,
    149 F.R.D. 65 (D.N.J. 1993) ............................................................... 4, 6, 11

*Sciotto v. Marple Newton School Dist.*,
    70 F. Supp. 2d 553 (E.D. Pa. 1999) ................................................................ 3

*Wayne Land & Mineral Group, LLC v. Delaware River Basin Comm'n*,
    2016 WL 7256945 (M.D. Pa. Dec. 15, 2016) ................................................. 4

## INTRODUCTORY STATEMENT

In its motion for leave to file a brief as *amicus curiae* in this Court, the Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF") misrepresents its business model. The CCAF states it that "represents class members *pro bono* in class actions where class counsel employs unfair class action procedures."[1] That is not so. The CCAF's mission and business model is to object to class-action settlements,[2] particularly settlements involving *cy pres,* and then seek a fee award from the court for doing so.[3] Those who get paid for their legal services—whether by a court award or by a client—are not operating *pro bono*.

The CCAF apparently believes that misrepresenting itself as a magnanimous *pro bono* operation will enhance its case for *amicus* status.[4] This misrepresentation alone is grounds to deny the CCAF's motion.

Aside from that misrepresentation, the proposed *amicus* brief is unhelpful, meets none of the four factors courts use to evaluate motions for leave to file

---

[1] ECF No. 525-1, at 3 (emphasis in original).

[2] A Westlaw search for "Center for Class Action Fairness" resulted in 72 hits.

[3] *See, e.g., In re Petrobras Securities Litig.*, 786 Fed. Appx. 274 (2d Cir. 2019) (discussing district court's denial of the CCAF's fee request and citing other cases where the CCAF was awarded fees for representing objectors).

[4] Regardless of whether this Court allows the CCAF to file a brief as amicus curiae here, the CCAF would not be entitled to fees as it is not representing an objector and has no standing to pursue fees or any appeal.

*amicus*, and should be rejected. It is completely untethered from the current status of this case. Indeed, the foundation of the CCAF's argument, which (among other things) misstates the result achieved in this action, is remarkably similar to the lone objection filed in this case, which this Court and the Third Circuit previously rejected. The Court should exercise its virtually unlimited discretion and deny the CCAF's motion.

In addition to failing to satisfy the standards applicable to a motion for leave to file an *amicus* brief, the proposed *amicus* fails on the merits. While the CCAF's arguments about *cy pres* might arguably have some relevance when applied to the class at large, those arguments have no merit because the class at large is not in issue. Instead, the only class members at issue here are those who filed valid and timely claim forms by the claim deadline in August 2016, *see* July 18, 2019 Supplemental Declaration of Kenneth Jue on Behalf of Settlement Administrator (ECF No. 517), Exh. G, and who, as will be demonstrated below, have already received over 100% of their claimed damages, trebled, more than they could have won had the case been litigated successfully through trial. Given that result, they would have no basis to object to the distribution of the remaining settlement monies via *cy pres*. Critically, the CCAF fails to address the actual posture of this case, instead reverting to boilerplate anti-*cy pres* commentary that has no application to the current situation.

833579.2

There is also no need for this proposed *amicus* or its arguments in favor of a second distribution of the remaining funds to those class members who filed timely and valid claim forms instead of *cy pres*. Plaintiffs' pending motion, which the CCAF purports to address, <u>itself suggested</u> a second distribution as an alternative, leaving the ultimate choice of disposition of the remaining funds to the sound discretion of the Court (though, as plaintiffs' moving brief showed, when claiming class members have been fully compensated through a settlement, *cy pres* is the more appropriate method of distributing remaining funds). Thus, even before or without the arguments of the proposed *amicus*, if the Court had any concerns about the proposed *cy pres*, it could simply order that the remaining funds be distributed to class members. The CCAF thus adds nothing to the options before the Court.

## ARGUMENT

### The CCAF cannot satisfy any of the standards required of an *amicus curiae*.

There is no specific rule that governs the appearance of an *amicus curiae* in a District Court. *Granillo v. FCA US LLC*, 2018 WL 4676057, at *4 (D.N.J. Sept. 28, 2018). Often, courts are guided by applications of Federal Rule of Appellate Procedure 29, which governs *amici* in appellate courts. *Id.*

District Courts have broad discretion in deciding whether to allow participation by proposed *amici*. *Sciotto v. Marple Newton School Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999). Participation as *amicus* at the trial court, as

opposed to an appellate court, is the exception and not the rule. *Wayne Land & Mineral Group, LLC v. Delaware River Basin Comm'n*, 2016 WL 7256945, at *1 (M.D. Pa. Dec. 15, 2016). *See also Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993) ("At the trial level, where the issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level where such participation has become standard procedure."). It is the movant's burden to show a "particularized kind of special interest" appropriate for *amicus curiae* status. *Wayne Land*, 2016 WL 7256945, at *2.

Typically, courts will grant *amicus* status only when the following conditions are present: 1) the movant has a "special interest" in the particular case; 2) the movant's interest is not represented competently or at all in the particular case; 3) the information proffered by the movant is timely and useful; and 4) the movant is not partial to a particular outcome in the case. *Id*. The CCAF cannot meet any of these four factors.

The CCAF argues that it should be granted *amicus* status because this Court granted such status to <u>other</u> applicants in <u>other</u> cases involving <u>other</u> facts, law, and purported interests of the applicants there.[5] That is no basis for granting *amicus*

---

[5] *See* ECF No. 525-1 at 1 (*citing In re Valeant Pharms. Int'l Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 66037 (D.N.J. Apr. 28, 2017); *Islamic Society of Basking Ridge*

833579.2

status to the CCAF here, since the CCAF cannot satisfy even one of the four factors in the test governing *amicus* participation laid out in the precedents.

### A. The CCAF lacks a "special interest" in this case.

The CCAF has no special interest in this case. The special interest required must be one "which would be ultimately and directly affected by the Court's ruling on the substantive matter before it." *Granillo*, 2018 WL 4676057, at *5. *See also Bernstein v. Township of Freehold,* 2008 WL 11510751 at *6-7 (D.N.J. Jan. 4, 2008) (Court denied proposed *amicus* status to ACLU since it lacked a "special interest"); *Dwelling Place Network v. Murphy*, 2020 WL 3056305, at *2 (D.N.J. June 9, 2020) (proposed *amicus* rejected where it lacked special interest).

The potential *amicus* must show more than simply a generalized interest in all cases of a similar subject matter. *Id*. Yet, all the CCAF can establish here is a generalized interest objecting to settlements with *cy pres* awards, as it indisputably has done repeatedly. The CCAF has no special interest in tax liens or even antitrust law, the particular underlying subject matters of this case. And, even if the CCAF did have a sufficient interest here, any such interest is vitiated by the fact that plaintiffs' motion to distribute the remaining settlement funds affects only to those

---

*v. Township of Bernards*, 226 F. Supp. 3d 320 (D.N.J. 2016); *Kaplan v. St. Peter's Healthcare Sys.*, 2014 U.S. Dist. LEXIS 131569 (D.N.J. Sept. 19, 2014)).

- 5 -

class members who have already claimed, and who received at least 100% of their damages, trebled.

The only interest that the CCAF has here is pecuniary: its business model is to object to class action settlements, often to settlements involving *cy pres*, and to seek compensation by courts if the objection is successful (despite the CCAF's current claim that it represents client s *pro bono*). Although the CCAF is not seeking and has no right to seek a fee here, the CCAF's overall business model would be bolstered if this Court were to grant the CCAF's motion so that the CCAF could point to its "successful" argument. But that narrow, dollar-driven interest is not the type of "special interest" required for a movant to be granted *amicus* status. The CCAF thus fails part one of the four-part test for *amici curiae*.

### B. The class is adequately represented and does not need CCAF's input.

"In general, courts tend to reject proposed *amicus* briefs when parties are 'adequately represented by competent counsel.'" *Granillo*, 2018 WL 4676057 at *5. *See also Liberty Lincoln Mercury, Inc.,* 149 F.R.D. at 82. Here, Class Counsel has more than adequately represented the interests of the class for over eight years.

This Court previously found that Class Counsel have adequately represented the class by appointing them as Class Counsel. ECF No. 475, ¶9. Class Counsel have steered this case from inception to near-completion, overcoming the resistance of the numerous defendants, represented by topnotch defense counsel,

- 6 -

and defeating, in this Court and in the Third Circuit, a lone objector's challenge to the excellent settlements that Class Counsel achieved.

Class Counsel's protection of the members of the Class has been paramount and neither Class Counsel nor any class members need the "assistance" of the CCAF now. Indeed, with respect to those class members who filed timely and valid claims, they have likely received over 100% of their trebled damages. To illustrate the point, a brief review of what this case was about is necessary.

New Jersey municipalities auction tax liens on real property at least once a year. ECF No. 320, at ¶¶ 2, 3, 95.[6] In exchange for paying the overdue property taxes or other municipal charges for a given property, the person or entity who wins the auction for a particular tax obligation receives a tax sale certificate ("TSC"), which represents a first-priority lien on the delinquent taxpayer's property. *Id.* at ¶¶ 4, 97. If the lien is not redeemed within a period of time, the lienholder may foreclose on the property. *Id.*

The New Jersey Tax Sale Law, N.J.S.A. 54:5-1, *et seq.* is designed to foster competitive bidding at auctions in order to drive the interest rate down, thereby minimizing the liability for delinquent homeowners. ECF No. 320, at ¶¶ 4, 5, 96,

---

[6] ECF No. 320 was the operative First Amended Consolidated Master Class Action Complaint. Although these statements come from that pleading, these allegations are not in dispute.

98. In a fully competitive auction free of collusion, the interest rates may be bid down, as TSC purchasers compete with each other for the TSC. *Id.* at ¶ 4.

In this case, it was alleged that defendants conspired to eliminate competition by rigging tax lien auctions throughout New Jersey. *Id.* at ¶ 102. Defendants systematically conspired to refrain from bidding against one another by allocating, among themselves, the liens being auctioned. *Id.* This had the effect of artificially inflating the interest rate associated with each lien.

The claims that survived motion practice were those alleging that the plaintiffs paid more in interest on the liens than they otherwise would have. For example, if a plaintiffs' lien was purchased at 18% interest, but plaintiffs could show the lien would have been purchased at 10% interest in a market free from collusion, the plaintiff's damages would be the delta between the 18% and 10% interest rate, or 8% of interest. The lien itself (the result of a property owner's non-payment of property taxes or other charges) was not the product of a conspiracy. The potential damage arising from the claim in this case related to the interest on the lien. On a lien of $5000, at an 18% interest rate, annual interest would be $900. At 10% interest, the annual interest would be $500. So, this hypothetical plaintiff's damages would be $400 per year.

A real world example showing that class members who claimed under the settlements in this case have been amply compensated is the claim of the individual

with claim number NJTS1-100780946. This person received an initial distribution of $48,513.83. *See* July 18, 2019 Supplemental Declaration of Kenneth Jue (ECF No. 517) Exh. G, at 1. This individual had a tax lien issued on his/her property in the amount of $6,643.37 at an 18% interest rate in 2007. *See* the accompanying Declaration of Bruce D. Greenberg, Exh. A (claim documentation submitted by claimant NJTS1-100780946, with all identifying information redacted). Assuming that all of the interest was the result of defendants' illegal behavior, this individual's single damages would be about $1,195.80 (that is, 18% of $6,643.37) per year, and trebled would be $3,587.42 per year. Given that the lien was purchased in 2007, and the settlements were approved in 2016, there were nine years of damages at $3,587.42 per year, which amounts to $32,286.78. Therefore, this individual received significantly more than he/she could have recovered at trial, even if they prevailed on every issue and received treble damages.

In its proposed *amicus* brief, the CCAF contends that Class Counsel's contention that class members received all of their damages is "neither supported by the evidence nor credible." ECF No. 525-2, at 2. The CCAF's contention (which is erroneous even on its own terms) is based on the class as a whole. However, the class as a whole is not at issue here. Only those class members who filed valid and timely claims have any interest in the remaining funds. And of those, as explained above, each has received their full treble damages and then

- 9 -

833579.2

some. They have no valid complaint about the extremely successful outcome of the case for them, and they do not need the CCAF to try to manufacture such a non-existent claim.

### C. The proposed *amicus* is not timely or useful

Here, the claims deadline has long since passed and plaintiffs' motion to distribute the remaining settlement monies relates only to those class members who (as shown above) have been fully compensated. The CCAF engages in misdirection by arguing about the class as a whole, and claiming that the class as a whole were getting only a small percentage of their damages. This is the same argument made by the objector, which this Court and the Third Circuit rightly rejected. That objection has even less merit now, years later, and given that plaintiffs' motion for distribution relates only to those who have received more than their full damages. The CCAF thus flunks the third part of the *amicus* test too.

### D. The CCAF is completely partial to the outcome here.

The CCAF is very partial to the outcome here; it seeks to eliminate *cy pres* awards in class-action litigation generally and opposes such an award here. As the CCAF has noted in its motion papers, it has a long history of objecting to proposed *cy pres* distributions. That is its business model. If this Court were to find *cy pres* inappropriate here, it would create authority that the CCAF would use in the future to divert funds away from *cy pres*, representing a potential financial benefit for the

833579.2

CCAF. Therefore, the CCAF has a direct interest in the outcome of this case, meaning that the CCAF cannot satisfy the fourth prong of the test for participation as an *amicus*. *See Liberty Lincoln Mercury*, 149 F.R.D. at 82-83.

## CONCLUSION

For the reasons set forth above, the motion of CCAF for leave to file a brief as *amicus curiae* should be denied, and the Court should select a method for distribution of the remaining settlement funds as proposed by plaintiffs.

**LITE DEPALMA GREENBERG, LLC**

Dated: July 6, 2020

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102-5003
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig (admitted *pro hac vice*)
555 Fifth Avenue, 17th Floor
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**HAUSFELD LLP**
James J. Pizzirusso (admitted *pro hac vice*)
Seth R. Gassman (admitted *pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
mhausfeld@hausfeldllp.com
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com

*Class Counsel*

- 11 -

833579.2